**VENABLE LLP**
Angel A. Garganta (SBN 163957)
Email: agarganta@venable.com
Robert L. Meyerhoff (SBN 298196)
Email: rlmeyerhoff@venable.com
Cody S. Lonning (SBN 301972)
Email: cslonning@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone:    415.653.3750
Facsimile:    415.653.3755

Attorneys for Defendant
POST FOODS, LLC

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE KROMMENHOCK, and STEPHEN HADLEY, on behalf of themselves, all others similarly situated, and the general public,<br><br>        Plaintiffs,<br><br><br>        v.<br><br><br>POST FOODS, LLC,<br><br>        Defendant. | CASE NO.: 3:16-cv-04958-WHO<br><br>**DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, STAY THIS ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION**<br><br>Date:      January 18, 2017<br>Time:     2:00 p.m.<br>Dept:     Courtroom 2<br>Judge:   Hon. William H. Orrick<br><br>Action Filed:    August 29, 2016<br>Trial Date:     None. |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ....................................................................................................1

PRELIMINARY STATEMENT .......................................................................................2

PLAINTIFFS' ALLEGATIONS ......................................................................................3

REGULATORY BACKGROUND ...................................................................................5

LEGAL ARGUMENT .....................................................................................................8

I.      All of Plaintiffs' Claims Are Expressly Preempted ...............................8

II.     All of Plaintiffs' Claims Are Also Preempted under the Doctrine of
        Conflict Preemption ..............................................................................11

III.    Alternatively, Plaintiffs' Claims Relating to the "Healthy," "Good
        Source," "Fiber," "Whole Grain," "Multi-Grain," "No High Fructose Corn
        Syrup," and "Antioxidant" Labeling Statements Are Expressly Preempted ......13

IV.     As a Matter of Law, the Products Do Not Contain Any Health Claims that
        Violate Federal or State Law .................................................................16

V.      Plaintiffs Fail to State Any Claim for Relief .........................................17

        A.      No Reasonable Consumer Would Be Misled by Post's Labeling
                Statements or Its Purported Failure to Disclose the Amount of, and
                Alleged Dangers of, Added Sugar ...........................................17

        B.      No Reasonable Consumer Could Be Misled Regarding the
                Products' Sugar Content Because that Content is Disclosed .................20

        C.      Many of the Challenged Statements Are Non-Actionable Puffery ........21

VI.     Plaintiffs Lack Standing to Seek Injunctive Relief ..............................22

VII.    Plaintiffs Lack Standing to Bring Claims for Unpurchased Products ...............23

VIII.   Plaintiffs Lack Standing to Challenge Post's Website, Press Releases, and
        Statements Purportedly Directed at Children .......................................24

IX.     Alternatively, the Court Should Stay this Action Under the Primary
        Jurisdiction Doctrine ............................................................................24

CONCLUSION ..............................................................................................................25

i

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                      Page(s)

*Ackerman v. Coca-Cola Co.*,
   No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010)...................................16

*Alamilla v. Hain Celestial Grp., Inc.*,
   30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ............................................................................18

*Ang v. Bimbo Bakeries USA, Inc.*,
   No. 13-CV-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ...........................23

*Ascencio v. ADRU Corp.*,
   No. C 12-04884 WHA, 2014 WL 204212 (N.D. Cal. Jan. 6, 2014).......................................22

*Backus v. Nestlé USA, Inc.*,
   167 F. Supp. 3d 1068, 1072–73 (N.D. Cal. 2016) ......................................................10, 11, 12

*Brazil v. Office of Pers. Mgmt.*,
   35 F. Supp. 3d 1101, 1111 (N.D. Cal. 2014) (Orrick, J.) ........................................................11

*Bronson v. Johnson & Johnson, Inc.*,
   No. C 12-04184 CRB, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ..................................23

*Bruton v. Gerber Prod. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013) ................................................................................24

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 F. App'x 113 (9th Cir. 2012) ........................................................................................13

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) .................................................................13, 14, 15, 16

*Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*,
   24 F. Supp. 3d 750, 758 (N.D. Ill. 2014) ............................................................................11

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   No. 12-04000 SC, 2013 WL 1739451 (N.D. Cal. Apr. 22, 2013).........................................22

*In re: Coca-Cola Prod. Mktg. & Sales Practices Litig. (No. II)*,
   No. 14MD02555JSWMEJ, 2016 WL 6245899 (N.D. Cal. Oct. 26, 2016) ...........................19

*Eckler v. Neutrogena Corp.*,
   238 Cal. App. 4th 433 (2015) ...............................................................................................12

*Farina v. Nokia Inc.*,
   625 F.3d 97 (3d Cir. 2010)....................................................................................................12

ii

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

*Gitson v. Trader Joe's Co.*,
   No. 13-CV-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013)..................................21

*Gorenstein v. Ocean Spray Cranberries, Inc.*,
   No. CV 09-5925-GAF, 2009 WL 10201128 (C.D. Cal. Dec. 18, 2009) ..................................9

*Gubala v. CVS Pharmacy, Inc.*,
   No. 14 C 9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015) .................................................10

*Gubala v. CVS Pharmacy, Inc.*,
   No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) .................................................17

*Haggag v. Welch Foods, Inc.*,
   No. CV 13-00341-JGB OPX, 2014 WL 1246299 (C.D. Cal. Mar. 24, 2014).......................17

*Ham v. Hain Celestial Grp., Inc.*,
   70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014) (Orrick, J.) ...................................................22, 24

*Kardovich v. Pfizer, Inc.*,
   97 F. Supp. 3d 131, 138 (E.D.N.Y. 2015) ...........................................................................19

*Lanovaz v. Twinings N. Am., Inc.*,
   No. C-12-02646-RMW, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014) ........................................17

*Luman v. Theismann*,
   647 F. App'x 804 (9th Cir. 2016) .........................................................................................22

*Manchouck v. Mondelez Int'l Inc.*,
   No. C 13-02148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013), *aff'd*,
   603 F. App'x 632 (9th Cir. 2015) .........................................................................................20

*Mills v. Giant of Md., LLC*,
   508 F.3d 11 (D.C. Cir. 2007) ...............................................................................................19

*Morgan v. Wallaby Yogurt Co., Inc.*,
   No. 13-CV-00296-WHO, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013)..................................21

*Nemphos v. Nestle Waters N. Am., Inc.*,
   775 F.3d 616 (4th Cir. 2015) ..................................................................................................9

*P.E.T.A. v. Whole Foods Mkt. Cal., Inc.*,
   No. 15-CV-04301 NC, 2016 WL 1642577 (N.D. Cal. Apr. 26, 2016) .............................21, 24

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003)..................................................................................20

*Red v. The Kroger Co.*,
   No. CV 10-01025 DMG MANX, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) .................8, 9

*Romero v. Flowers Bakeries, LLC*,
  No. 14-CV-05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015) ...................................24

*Rushing v. Williams-Sonoma, Inc.*,
  No. 16-CV-01421-WHO, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) .............................23

*S.F. v. Archer-Daniels-Midland Co.*,
  No. 13-CV-634S, 2014 WL 1600414 (W.D.N.Y. Apr. 21, 2014), *aff'd*, 594 F.
  App'x 11 (2d Cir. 2014)...........................................................................................................18, 19

*Salazar v. Honest Tea, Inc.*,
  74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014)...........................................................................21

*Savalli v. Gerber Prod. Co.*,
  No. 15-61554-CIV, 2016 WL 5390223 (S.D. Fla. Sept. 20, 2016)........................................20

*Seufert v. Merck Sharp & Dohme Corp.*,
  2016 WL 3369512, --- F. Supp. 3d --- (S.D. Cal. May 11, 2016) ........................................13

*Simpson v. Kroger Corp.*,
  219 Cal. App. 4th 1352 (2013) ................................................................................................21

*Swearingen v. Amazon Pres. Partners, Inc.*,
  No. 13-CV-04402-WHO, 2014 WL 3934000 (N.D. Cal. Aug. 11, 2014) .............................25

*Turek v. Gen. Mills, Inc.*,
  754 F. Supp. 2d 956 (N.D. Ill. 2010), *aff'd as modified*, 662 F.3d 423 (7th Cir.
  2011) ........................................................................................................................................10

*Victor v. R.C. Bigelow, Inc.*,
  No. 13-CV-02976-WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29, 2016) .............................22

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................................................................10

*Weiss v. Kroger Co.*,
  No. CV 14-3780-R, 2014 WL 5114608 (C.D. Cal. Aug. 8, 2014)..........................................21

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015), *appeal dismissed* (Mar. 14,
  2016) ........................................................................................................................................20

*Yumul v. Smart Balance, Inc.*,
  No. CV 10-00927 MMM, 2011 WL 1045555 (C.D. Cal. Mar. 14, 2011) .............................13

*Zakaria v. Gerber Prod. Co.*,
  No. LA CV15-00200 JAK EX, 2015 WL 3827654 (C.D. Cal. June 18, 2015) ....................16

**Statutes**

21 U.S.C.A. § 343-1(a) ...................................................................................................................7

**Other Authorities**

21 C.F.R. § 101.9 ...............................................................................................................6, 8, 9

21 C.F.R. § 101.13 .........................................................................................................11, 13, 15

21 C.F.R. § 101.14 ...............................................................................................................14, 15

21 C.F.R. § 101.54 ...................................................................................................................12

21 C.F.R. § 101.65 ...................................................................................................................11

21 C.F.R. § 101.81 ...................................................................................................................14

58 Fed. Reg. 2,229 (Jan. 6, 1993) ...........................................................................................15

58 Fed. Reg. 2,478 (Jan. 6, 1993) ...........................................................................................14

79 Fed. Reg. 11879 (Mar. 3, 2014) ............................................................................................5

80 Fed. Reg. 34,650 (June 17, 2015) .........................................................................................7

81 Fed. Reg. 33,741 (May 27, 2016) ................................................................................. *passim*

81 Fed. Reg. 66,562 (Sept. 28, 2016) .......................................................................................25

Restatement (Second) of Torts § 402A (1965) ........................................................................17

v

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on January 18, 2017, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick, United States District Judge, in Courtroom 2 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Post Foods, LLC ("Post") will and hereby does move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Complaint of Plaintiffs Debbie Krommenhock and Stephen Hadley ("Plaintiffs") for failure to state a claim and lack of standing.

Post moves to dismiss the Complaint in its entirety as expressly preempted, preempted under the doctrine of conflict preemption, and because no reasonable consumer would be misled by the challenged labeling statements. In addition, Post moves to dismiss Plaintiffs' challenges to express and implied nutrient content claims and health claims because those challenges are expressly preempted, and moves to dismiss Plaintiffs' challenges to allegedly impermissible health claims because Post was legally permitted to make those claims. Post moves to dismiss for lack of standing Plaintiffs' request for injunctive relief, their claims relating to products they did not purchase, and their claims relating to statements made on Post's website and in its press releases as well as to statements purportedly directed to children. In the alternative, Post moves to stay this case pending FDA's completion of its rulemaking process on the redefinition of "healthy" in food labeling.

This motion is based on this notice of motion and motion, the following Memorandum of Points and Authorities, the accompanying Declarations of Angel A. Garganta, Mark Arrington, and Jamie Ohrt, the accompanying Request for Judicial Notice, the pleadings on file in this matter, the Reply that Post intends to file, any material of which this Court takes judicial notice, and any further argument the Court might allow.

1

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY THIS ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Post sells fortified, nutrient-dense cereals that provide consumers and their families with significant amounts of numerous beneficial nutrients, including fiber, whole grains, iron, zinc, and folic acid.  Post's cereals also contain added sugar, but deliver it in a food the Food and Drug Administration ("FDA") has found can "contribute beneficial nutrients into the diet" and be "incorporate[d] . . . into a healthy dietary pattern," notwithstanding its added sugar content. Despite this, Plaintiffs challenge hundreds of truthful statements on the labels of 54 Post cereals as "incompatible" with the purportedly "significant dangers" of "excessive added sugar."

On May 27, 2016, FDA completed a lengthy, exhaustive rulemaking process in which FDA, *inter alia*, reviewed the scientific evidence on added sugar, established a Daily Recommended Value ("DRV") for added sugar (and rejected suggestions that the DRV be a lower amount), and added a disclosure requirement for added sugar on the Nutrition Facts Panel, with a compliance date of July 26, 2018 (the "NFP Final Rule").  Although FDA was concerned about the excessive consumption of added sugar in certain foods such as sugar-sweetened beverages, FDA did not establish these requirements because foods such as Post's cereals are, as Plaintiffs allege, "unhealthy."  Rather, FDA found that cereals such as Post's "contain significant amounts of beneficial nutrients as well as added sugar," and sought to provide consumers with information on "how to incorporate those foods into a healthy dietary pattern."

The NFP Final Rule is also significant for what FDA refused to do.  FDA did not require manufacturers to make this new disclosure of added sugar until July 26, 2018, and rejected comments urging that it require warning labels for products with added sugar.  Despite FDA's unambiguous decision on both issues, Plaintiffs assert that Post was "under a duty to disclose" (a) the amount of added sugar (*i.e.,* sugar added during processing or preparation, as opposed to naturally occurring in the food) in the cereals, and (b) the alleged "dangers of added sugar in its products."  While Plaintiffs may be dissatisfied with the NFP Final Rule, they cannot use state law to impose requirements not identical to those imposed by FDA or to create obstacles to the accomplishment of federal objectives. Thus Plaintiffs' state law claims, which condition Post's

liability on the presence of added sugar in its cereals in amounts that Plaintiffs (but not FDA) consider to be "excessive," are preempted both expressly and under the doctrine of conflict preemption.

In addition to being expressly preempted and conflict preempted in its entirety, Plaintiffs' Complaint challenges numerous FDA-permitted express or implied nutrient content or health claims, and thus those challenges are expressly preempted. Similarly, Plaintiffs wrongly contend that Post makes impermissible health claims, but the only health claims Post makes on its cereals are permitted under federal law. Plaintiffs' claims should also be dismissed because no reasonable consumer could be misled about the supposed dangers of Post's cereals. In any event, a number of the challenged statements are non-actionable puffery. Plaintiffs also lack standing to seek injunctive relief, to bring claims for products they did not purchase, and to challenge statements on Post's website and press releases as well as statements purportedly directed to children on which they do not allege they relied. Alternatively, the Court should stay this case pending FDA's redefinition of "healthy" in food labeling.

At base, this case is an ill-advised attempt to make an end-run around FDA's carefully-considered rules governing added sugar disclosures. Plaintiffs' Complaint improperly seeks to invalidate numerous lawful statements, and impose on Post a labeling regime that FDA has already rejected. It should be dismissed with prejudice.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs filed their Complaint on August 29, 2016. Dkt. No. 1. Plaintiffs, both California residents, purport to represent a class of California consumers challenging the labeling claims of 54 different Post products (the "Products"), including 18 products that neither of them purchased, and allege that they suffered economic as well as bodily injury "in the form of increased risk of CHD, stroke, and other morbidity." *Id.* at ¶¶ 355, 358, 385, 387; *see also* Declaration of Angel Garganta, Ex. 1 (List of Products not Purchased).

Plaintiff Stephen Hadley allegedly purchased 30 Products "over the past several years." *See id.* at ¶¶ 361, 365, 370, 373; *see also* Garganta Decl., Ex. 2 (List of Products Allegedly Purchased and or which Allegedly May Have Been Purchased). He alleges that he "may also

3

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY THIS ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

1    have purchased" six other Products.  *Id*. at ¶¶ 362, 366; Garganta Decl., Ex. 2.  Plaintiff Debbie

2    Krommenhock allegedly purchased six Products over approximately the past two years, all of

3    which Mr. Haldey also allegedly purchased.  *Id*. at ¶ 338; *see also* Garganta Decl., Ex. 2.

4          Plaintiffs allege that Post has "a policy and practice of marketing high-sugar cereals with

5    health and wellness claims," and that those claims are deceptive because Post "fails to warn

6    consumers of the known dangers of consuming its high-sugar cereals."  *Id*. at ¶ 2, p. 115

7    (emphasis omitted).  According to Plaintiffs, Post is "under a duty to disclose" the "amount and

8    dangers of added sugar in its products."  *Id*. at ¶ 276.  Instead, Post allegedly "failed to

9    adequately warn consumers" and "deceptively omit[ted] the dangers of consuming the products."

10   *Id*. at ¶¶ 276, 304, 326; *see also id*. at ¶ 255 (Post "intentionally also de-emphasizes, hides,

11   obscures, and otherwise omits. . . .  [the Products' alleged] high sugar content.").[1]

12         It is clear, however, that the sugar content of the cereal is disclosed on the Products in

13   multiple places.  *See, e.g., id*. at ¶ 223 (displaying "6g sugar" per serving on the front of the

14   package); *id*. at ¶ 229 (displaying "12g sugar" per serving on the front of the package).  *See also*

15   Declaration of Jamie Ohrt, Exs. 1-54.[2]  In addition, the Products also disclose the amount of

16   sugar per serving on the Nutrition Facts Panel, located on the side label of each Product.  *See*

17   Ohrt Decl. Exs. 1-54.  Many of the Products also contain images or statements which clearly

18   refer to the presence of sugar.  *See, e.g.,* Compl., ¶ 225 (a bear wearing a shirt with the words

19   "SUGAR BEAR"); *id*. at ¶ 201(c) ("honey-sweet crunch"); *id*. at ¶ 226(a) ("Sweetened Puffed

20   Wheat Cereal"); *id*. at ¶ 228(a) ("Sweetened Corn Oat Cereal"); *id*. at ¶ 233(i) ("sweet pecans");

21   *id*. at ¶ 229 ("sweetened multi-grain cereal").  In addition, many of the Products are named in

22   such a way as to indicate the presence of sugar.  *See, e.g., id*. at ¶ 215 ("Good Mornings Frosted

23   Flakes"); *id*. at ¶ 227 ("Honey-Comb"); *id*. at ¶ 236 ("Honey Bunches of Oats").

24

25   [1] Plaintiffs also allege that one of the Products, Waffle Crisp, "is made with partially
     hydrogenated vegetable oil" that contains artificial trans fat (Compl., ¶¶ 106-110, 298), and that

26   Post's alleged marketing to children of Waffle Crisp is "immoral, malicious, oppressive, and
     egregious" because artificial trans fat is "a substance so deadly that the FDA has banned it with a

27   phase-out deadline of 2018" (*id*. at ¶ 296).
     [2] Post's Request for Judicial Notice sets forth the basis on which the Court can take judicial

28   notice of Exhibits 1-54 to the Ohrt Declaration and Exhibits 3-6 and 8-9 to the Garganta
     Declaration.

In support of their claims that the Products pose "significant dangers" and cause bodily injury, Plaintiffs point to 91 written sources, which they allege constitute "compelling evidence" that "convincingly show[s]" the dangers of sugar.  *Id.* at ¶¶ 1-2, 12 & n.1 – 105 & n.87.  Not one of those sources studied, or even mentions, any of the challenged Post Products, and most concern the effects of consuming sugar-sweetened beverages.  *See generally, id.*  Only a small minority make reference to cereals, and even those do suggest that the consumption of fortified, nutrient-dense cereals such as the Products can contribute to good health.  *See, e.g.,* ¶ 17 n.6 (Garganta Decl., Ex. 3, at xi) (recommending that individuals ages 50 years and over "[c]onsume foods fortified with vitamin B12, such as fortified cereals"); *id.* at ¶ 20 n.13 (Garganta Decl., Ex. 4, at 13) (noting that a diet with increased amounts of "fruit, vegetables, and cereals contributed the most to estimated reduced risk of total mortality").

The American Heart Association ("AHA")'s 2009 Scientific Statement on which, as explained below, Plaintiffs' claims hinge, found that "presweetened cereals may have a positive impact" on diet quality, and recognized that "when sugars are added to otherwise nutrient-rich foods, such as sugar-sweetened dairy products like flavored milk and yogurt and sugar-sweetened cereals, the quality of children's and adolescents' diets improves."  *Id.* at 1012, 1016. And the only study cited that focuses on cereal studied consumption patterns, not health effects. Compl., ¶ 334 n.95 (Garganta Decl., Ex. 6, at 71-72).  In any event, that study, while noting that there are "potential negative effects" of <u>excessive</u> consumption of sweetened cereal, also stated that there "are positive health benefits for children who consume . . . cereals for breakfast" and that "[s]tudies have consistently found that higher consumption of cereals is associated with improved micronutrient intake."  Compl., ¶ 334 n.95 (Garganta Decl., Ex. 6, at 71-72).

## REGULATORY BACKGROUND

### *FDA Rulemaking on Added Sugar*

In February of 2012, FDA announced its intention to propose a new rule to "amend labeling regulations . . . to provide updated nutrition information on the label to assist consumers in maintaining healthy dietary practices" and to "modernize the nutrition information found on the Nutrition Facts label."  Food Labeling: Revision to the Nutrition and Supplement Facts

Labels, 77 Fed. Reg. 7946, at 7953 (Feb. 13, 2012).  On March 3, 2014, FDA issued that proposed rule.  Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 79 Fed. Reg. 11879, 11880 (Mar. 3, 2014).  Among other things, FDA proposed to "require the declaration of 'added sugars,'" in order to "provide consumers with information they need to implement the dietary recommendations" of the Dietary Guidelines for Americans ("DGA") from 2010.[3]  *Id.* at 11904.  FDA recognized that "added sugars can increase the palatability of nutrient-dense foods," and stated that "disclosure of added sugars on the label may allow consumers to plan and construct their diets to include small amounts of added sugars and still consume adequate amounts of necessary nutrients."  *Id.*  In July of 2015, FDA issued a revised proposed rule, in which it proposed to also establish a DRV of 10% of total energy intake from added sugars.  Food Labeling: Revision of the Nutrition and Supplement Facts Labels; Supplemental Proposed Rule, 80 Fed. Reg. 44303 (July 27, 2015).

On May 27, 2016, FDA issued its final rule, which it described as "the result of significant stakeholder engagement" and the product of an information-gathering process that involved conducting several consumer studies and reviewing more than 300,000 comments from the scientific community, consumers, industry, and others.  *Id.*  Food Labeling: Revision of the Nutrition and Supplement Facts Panel, 81 Fed. Reg. 33,741, at 33744 (May 27, 2016) (the "NFP Final Rule").  The NFP Final Rule revised food labeling requirements to require, on the Nutrition Facts Panel, a "declaration of the gram amount of 'added sugars' in a serving of a product, establishing a Daily Reference Value (DRV), and requiring the percent Daily Value (DV) declaration for added sugars."  *Id.* at 33,744.[4]

FDA established a DRV of 10% of total calories from added sugar, *i.e.*, 50 grams for adults and children 4 and up.  *Id.* at 33,820.  In doing so, FDA rejected adopting the AHA's recommendation of a DRV of 5% of total calories from added sugar because it was "not

[3] The Dietary Guidelines for Americans is a joint publication of the U.S. Department of Health and Human Services and the U.S. Department of Agriculture.  7 U.S.C.A. § 5341.

[4] "Added Sugars" are defined as those sugars that are "either added during the processing of foods, or are packaged as such."  21 C.F.R. § 101.9(c)(6)(iii).

1    consistent with those of U.S. consensus reports" and that a higher DRV "is more realistic

2    considering current consumption of added sugars in the United States as well added sugars in the

3    food supply."  NFP Final Rule, 81 Fed. Reg. 33,741, at 33,849.  FDA also rejected suggestions

4    by commenters that FDA require a statement to consumers "that the DRV of 10 percent of

5    calories from added sugars is a maximum amount rather than a recommended amount." *Id*. at

6    33,829.

7         FDA noted that the new requirement for declaration of added sugar was "not based on a

8    specific relationship between added sugars and disease risk," and distinguished its rationale for

9    requiring an added sugar declaration from its rationale supporting "other mandatory nutrients to

10   date which generally relates to the intake of a nutrient and a risk of chronic disease."  *Id*. at

11   33767.   In fact, FDA drew a distinction between cereal and other foods that "<u>contain significant

12   amounts of beneficial nutrients as well as added sugar</u>," and those foods that "contain added

13   sugars . . . but few or no essential nutrients and no dietary fiber."  *Id*. at 33,818 (emphasis added).

14   Unlike those foods with added sugar but no nutrients, FDA determined cereals such as Post's can

15   and should be included in healthy dietary patterns:

16        [D]ried fruits, yogurt, and cereal . . . contain significant amounts of beneficial
         nutrients as well as added sugars. The declaration of added sugars will enable
17        consumers to understand the relative significance of the added sugars content in a
         serving of dried fruit, yogurt, cereal, and other foods that may contribute
18        beneficial nutrients to the diet and determine how to incorporate those foods into
         a healthy dietary pattern and meet their nutrient needs within calorie limits.
19

20   *Id*.  According to FDA, "there is room for Americans to include limited amounts of added sugar

21   in their eating patterns," and "[h]ealthy eating patterns can also accommodate" nutrient-dense

22   foods such as "whole-grain breakfast cereals, as long as added sugars do not exceed 10 percent

23   per day."  *Id*.  FDA also announced in its intention "to educate consumers that <u>the amount of

24   added sugars in a serving of a product should be considered along with other information on the

25   label</u> when constructing a healthy dietary pattern." *Id*. (emphasis added).

26        The NFP Final Rule became effective on July 26, 2016, but set a compliance date of July

27   26, 2018, to give manufacturers "time to analyze products for which there may be new

28   mandatory nutrient declarations, make any required changes to the Nutrition Facts label (which

may be coordinated with other planned label changes), review and update records of product labels, and print new labels." *Id*. at 33,967.

In the NFP Final Rule, FDA noted that "[s]everal comments suggested that we require various warning statements on the label related to added sugars to warn consumers of the negative health effects of added sugars." NFP Final Rule, 81 Fed. Reg. 33,741, at 33,829. Indeed, examples of the suggested warnings sought to link added sugar to the very same purported health risks of which Plaintiffs complain. *Compare id*. (suggesting that warning statements link added sugar to obesity, type II diabetes, and cardiovascular disease) *with* Compl., ¶ 71 (alleging that excessive sugar consumption leads to obesity, type II diabetes, and cardiovascular disease). FDA rejected those suggestions, however, finding that the warnings suggested were "not consistent with [FDA's] review of the evidence," and that FDA does "not require warning labels or disclaimers for other nutrients on the label." NFP Final Rule, 81 Fed. Reg. 33,741, at 33,829.

## **LEGAL ARGUMENT**

### **I.    All of Plaintiffs' Claims Are Expressly Preempted**

All of Plaintiffs' claims are expressly preempted by federal law because Plaintiffs seek to impose three requirements that are not identical to those required by FDA: (1) a prohibition on any labeling statement, even if true and accurate, which Plaintiffs perceive as suggesting the Products are healthy; (2) a disclosure of the Products' added sugar content (as opposed to a disclosure of total sugar content) at the present time or any time prior to July 26, 2018; and (3) a disclosure of the alleged dangers of added sugar. *See* Compl., ¶ 117 (alleging that the challenged labeling statements "suggest that the cereals are healthy, when in fact they are not"); *id*. at ¶ 276 ("Post is under a duty to disclose" the "amount and dangers of the added sugar in its products.").

"Congressional intent is the ultimate touchstone of every preemption case," and with regard to the federal Nutrition Labeling and Education Act ("NLEA"), "Congress set out to create uniform national standards regarding the labeling of food and to prevent states from adopting inconsistent requirements with respect to the labeling of nutrients." *Red v. The Kroger Co.*, No. CV 10-01025 DMG MANX, 2010 WL 4262037, at *3 (C.D. Cal. Sept. 2, 2010). The

1  NLEA's express preemption clause prohibits, *inter alia*, any state from "directly or indirectly

2  establish[ing] under any authority" any "requirement for the labeling of food" which is not

3  "identical" to the requirements of the federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et*

4  *seq.* (the "FDCA"), and its implementing regulations.  21 U.S.C.A. § 343-1(a).  The term

5  "'requirement' in the NLEA's preemption provisions must be read broadly . . . [to] include[]

6  statutes, regulations, standards, and other obligations arising from state law" (*see Nemphos v.*

7  *Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624 (4th Cir. 2015)), encompassing claims brought by

8  private plaintiffs under state consumer protection statutes.  *See Gorenstein v. Ocean Spray*

9  *Cranberries, Inc.*, No. CV 09-5925-GAF, 2009 WL 10201128, at *3 (C.D. Cal. Dec. 18, 2009).

10  The term "identical" is interpreted in a similarly broad fashion.  *See Red*, 2010 WL 4262037, at

11  *4 (finding that any requirement not identical to federal law is preempted, even if it is

12  "'equivalent to' or 'fully consistent with' federal law").

13      Plaintiffs' claim that the Products' labeling statements are misleading because the

14  Products contain added sugar in amounts Plaintiffs consider "excessive," and which allegedly

15  render the Products unhealthy, is expressly preempted.  Plaintiffs' allegation that the Products

16  are unhealthy rests on the AHA-recommended DRV for added sugar.  *See* Compl., ¶ 1 (defining

17  excessive added sugar as "any amount" above 5%).  But FDA <u>considered and rejected</u> adopting

18  that DRV for added sugar, choosing a higher DRV instead.  *See* NFP Final Rule, 81 Fed. Reg.

19  33,741, at 33,849.  And while Plaintiffs argue that the Products' labeling statements, which

20  provide additional information on other nutrients and attributes, mislead consumers, FDA has

21  determined that added sugar content should be considered by consumers <u>along with other</u>

22  <u>information on the label</u> in foods such as the Products to construct healthy dietary patterns.  *Id*. at

23  33,818.  Thus, Plaintiffs seeks to use state law claims to impose a requirement not identical to

24  those of FDA's (*i.e.*, that Post should be prohibited from providing additional information which

25  FDA believes consumers should consider, because the Products allegedly fail to comply with a

26  DRV for added sugar which FDA rejected).

27      Plaintiffs' demand that Post presently disclose the amount of added sugar in the Products

28  also imposes a requirement that is not identical to that of FDA.  FDA <u>currently</u> requires that the

sugar content of the Products be disclosed as follows: "[a] statement of the number of grams of sugars in a serving" must be placed on the Nutrition Facts Panel, "indented and expressed to the nearest gram." 21 C.F.R. § 101.9(c)(6)(ii). Post has fully complied with this longstanding requirement to disclose the total sugar content of the Products. But Plaintiffs seek to presently require Post to also disclose the added sugar content of the Products. *See* Compl., ¶ 276. This is a "requirement," in that it would be an obligation arising from the CLRA, FAL, and UCL, and it would not be "identical," in that a finding that Post is liable would be based on its failure to disclose added sugar, which FDA does not currently require it to disclose. As such, Plaintiffs' claims are expressly preempted. *See Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1072–73 (N.D. Cal. 2016) (plaintiff's claims were preempted because she sought to impose an immediate ban when FDA itself chose a compliance period of three years); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 890 (C.D. Cal. 2013) ("As FDA regulations explicitly authorized [defendant] to label the product as it did, any state law requiring [defendant] to use additional or different labeling would not be at identical to FDA regulations and would be preempted.").

Plaintiffs' demand that Post disclose the alleged dangers of added sugar similarly imposes a requirement which is not identical to federal law. The FDA does not require that products containing sugar or added sugar have such warnings, and thus Plaintiffs' attempt to require them is a preempted "not identical" requirement. *See Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 961–62 (N.D. Ill. 2010), *aff'd as modified*, 662 F.3d 423 (7th Cir. 2011) (dismissing as preempted claims which would have required a disclosure "non-identical to and materially different from the current NLEA requirements"); *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *4 (N.D. Ill. June 16, 2015) (finding plaintiffs' claims preempted because they "would require defendants to label their products in a particular way," but "[t]he NLEA does not include such a labelling requirement").

Express preemption of Plaintiffs' claims is particularly appropriate in this case because FDA considered, and rejected, both the AHA-recommended DRV and the disclosure of the alleged dangers of added sugar that Plaintiffs demand. *See* NFP Final Rule, 81 Fed. Reg. 33,741, at 33,829; *see also Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *4

1  ("Further supporting preemption . . . is the fact that the FDA specifically considered and rejected

2  a proposal to enforce stricter requirements for labeling products" along the lines of what

3  plaintiffs sought.); *Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d

4  750, 758 (N.D. Ill. 2014) (finding that plaintiffs' claims, which sought a disclosure requirement,

5  were preempted where "[d]uring the rulemaking process, the FDA considered but rejected [such]

6  disclosure requirement").  This entire action should accordingly be dismissed, with prejudice.

7  **II.      All of Plaintiffs' Claims Are Also Preempted under the Doctrine of Conflict**

8  **         Preemption**

9       Plaintiffs' claims should also be dismissed with prejudice as preempted under the

10  doctrine of conflict preemption.  "Conflict preemption occurs . . . where the state law stands as

11  an obstacle to the accomplishment and execution of the full purposes and objectives of

12  Congress."  *Brazil v. Office of Pers. Mgmt.*, 35 F. Supp. 3d 1101, 1111 (N.D. Cal. 2014) (Orrick,

13  J.); *see also Backus*, 167 F. Supp. 3d at 1072 (same).  Prohibiting labeling statements unrelated

14  to the Products' added sugar content, requiring disclosure of the Products' added sugar levels at

15  the present time (and not, as FDA requires, beginning in 2018), and mandating a warning of the

16  alleged dangers of the Products would conflict with federal objectives.

17       As an initial matter, barring Post from making the challenged labeling statements would

18  stand as an obstacle to executing the purposes and objectives of the federal rulemaking on added

19  sugar.  FDA has determined that cereals such as the Products can be incorporated into healthy

20  dietary patterns, and that the amount of added sugars in a product "should be considered along

21  with other information on the label when constructing a healthy dietary pattern."  NFP Final

22  Rule, 81 Fed. Reg. 33,741, at 33,818 (emphasis added).  The relief Plaintiffs seek in this case,

23  however, would prevent Post from including information (*e.g.,* nutrient and ingredient content)

24  which FDA believes should be provided.

25       Further supporting a finding of conflict preemption is the fact that, as explained above,

26  the chief basis for Plaintiffs' contention that the Products pose are unhealthy is that the amount

27  of added sugar in the Products allegedly exceeds the AHA-recommendation.  *Compare* Compl.,

28  ¶ 1 (defining excessive added sugar as "any amount above approximately 5% of daily caloric

intake") *with* NFP Final Rule, 81 Fed. Reg. 33,741, at 33849 ("We disagree that the DRV for added sugars should be lower than 10 percent of calories or that there is adequate evidence at this time to set a DRV for added sugars of less than 5 percent of calories."). Because Plaintiffs' claims condition a finding of liability against Post on a DRV for added sugar that FDA has refused to adopt, their claims would be an obstacle to federal objectives and thus preempted.

Requiring disclosure of added sugar content now would also conflict with federal objectives. FDA has determined that manufacturers such as Post should be required to disclose added sugar content on the Nutrition Facts Panel beginning in July of 2018. *See* 21 C.F.R. § 101.9(c)(6)(iii). FDA decided on that date because "industry might need some time to analyze products for which there may be new mandatory nutrient declarations, make any required changes to the Nutrition Facts label (which may be coordinated with other planned label changes), review and update records of product labels, and print new labels." NFP Final Rule, 81 Fed. Reg. 33,741, at 33,967. Plaintiffs effectively seek to impose a different requirement, namely, that Post disclose the added sugar content of the Products now. *See* Compl., ¶ 276. But "[w]hen Congress charges an agency with balancing competing objectives, it intends the agency to use its reasoned judgment to weigh the relevant considerations and determine how best to prioritize between these objectives." *Farina v. Nokia Inc.*, 625 F.3d 97, 123 (3d Cir. 2010); *see also Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 459 (2015) (plaintiff's labeling challenge was preempted because it seeks to "compel compliance with a federal requirement before the federal agency requires").[5]

Finally, FDA has considered and rejected the requirement that manufacturers disclose the alleged dangers of added sugars that Plaintiffs seek to impose through their state law claims. *See supra*, p. 8. Requiring that disclosure would conflict with FDA's objectives, and thus

---

[5] To extent that Plaintiffs' claims relating to Waffle Crisp or any other Product are based on the alleged presence of artificial trans fat, those claims should be also dismissed on the grounds of conflict preemption. FDA has set a compliance date of 2018 for the removal of PHOs from foods such as the Products, and Plaintiffs' effort to enforce an earlier compliance date is preempted under the doctrine of conflict preemption. *See* Final Determination regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34,650, 34,651 (June 17, 2015); *Backus*, 167 F. Supp. 3d at 1074 (finding claims relating to artificial trans fat preempted).

1   Plaintiffs' state law claims, which seek to require such disclosure, are preempted under the

2   doctrine of conflict preemption.  *See Seufert v. Merck Sharp & Dohme Corp.*, 2016 WL

3   3369512, --- F. Supp. 3d, ---, at *6 (S.D. Cal. May 11, 2016) (finding plaintiffs' claims

4   preempted under the doctrine of conflict preemption because "[t]he warning sought by Plaintiffs

5   . . . is the same risk the FDA has considered" and found insufficient to require a warning).

6       **III.    Alternatively, Plaintiffs' Claims Relating to the "Healthy," "Good Source,"**

7           **"Fiber," "Whole Grain," "Multi-Grain," "No High Fructose Corn Syrup,"**

8           **and "Antioxidant" Labeling Statements Are Expressly Preempted**

9       Plaintiffs' challenges as to labeling statements which are nutrient content claims are

10  expressly preempted, and should be dismissed with prejudice.  There are two types of nutrient

11  content claims: (1) express; and (2) implied.  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d

12  1111, 1117 (N.D. Cal. 2010).  An express nutrient content claim is "a direct statement about the

13  level (or range) of a nutrient in a food," and an implied nutrient content claim is one that

14  "describes food or an ingredient in a manner that suggests that a nutrient is absent or present in a

15  certain amount, (e.g., 'high in oat bran')" or that "[s]uggests that the food, because of its nutrient

16  content, may be useful in maintaining healthy dietary practices and is made in association with

17  an explicit claim or statement about a nutrient . . . ."  21 C.F.R. § 101.13(b).  State law

18  challenges to nutrient content claims are expressly preempted.  *See Carrea v. Dreyer's Grand Ice*

19  *Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012).

20      Plaintiffs' challenges to the implied nutrient content claim "healthy" are expressly

21  preempted, because FDA regulations define the use of that term and "related terms (e.g.,

22  'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' 'healthiest," "healthily,' and

23  'healthiness')" as implied nutrient content claims.  21 C.F.R. § 101.65(d)(2); *see also Yumul v.*

24  *Smart Balance, Inc.*, No. CV 10-00927 MMM, 2011 WL 1045555, at *9 (C.D. Cal. Mar. 14,

25  2011) ("Because [plaintiff] seeks to enjoin [defendant] from labeling its product 'healthy'—

26  something the FDA regulations expressly permit [it] to do—a liability finding in this case would

27  impose a requirement 'that is not identical' to federal law requirements.").  For example, the

28  statement "healthy mornings" on Selects Great Grains Raisins, Dates, and Pecans (Compl., ¶

144; Ohrt Decl., Ex. 8) is an implied nutrient content claim, as is the statement "each serving helps start the day in a healthy way" on Honeycomb (Compl., ¶ 228(c); Ohrt Decl., Ex. 53).  The Court should dismiss Plaintiffs' challenges to these statements, as well as other similar statements.  *See* Garganta Declaration, Ex. 7 at pp. 10-11, 20-21, 22-23, 24-26, 79.

Plaintiffs' challenges to "high" and "good source" nutrient content claims are expressly preempted, because FDA regulations define use of that term on food labeling as a nutrient content claim.  21 C.F.R. § 101.54(b)-(c).  For example, Plaintiffs challenge the "good source of fiber" statement on Great Grains Blueberry Morning (Compl., ¶ 132(f); Ohrt Decl., Ex. 2), but that claim is a "good source" nutrient content claim under section 101.54(c).  Thus, the Court should dismiss Plaintiffs' challenge to that statement, as well as other similar statements. *See* Garganta Declaration, Ex. 7 at pp. 2, 5, 8, 12, 16, 18, 21-22, 25-26, 29-31, 73, 78-79.

Plaintiffs' challenges to the nutrient content claim "fiber" are expressly preempted, because FDA regulations define use of that term on food labeling as a nutrient content claim. *See* 21 C.F.R. § 101.54(d) (titled "'Fiber' claims").  For example, "Fiber 8g per serving" on Raisin Bran (Compl., ¶ 218; Ohrt Decl., Ex. 49) is a "fiber" nutrient content claim.  The Court should dismiss Plaintiffs' challenge to that statement, as well as other similar statements.  *See* Garganta Declaration, Ex. 7 at pp. 2, 4, 5, 8, 10, 12, 15, 16, 18, 21-22, 25-26, 28, 30, 66, 73.

Plaintiffs' challenges to the implied nutrient content claims "whole grain," "multi-grain," and the Whole Grain Council stamp are expressly preempted, because those terms describe the Products in a manner that suggests that whole grains are present in a certain amount.  *See* 21 C.F.R. 101.65(c) ("high in oat bran" is an implied nutrient content claim); *Chacanana*, 752 F. Supp. 2d at 1121 ("made with whole grain oats" is an implied nutrient content claim).  Moreover, the FDA has stated the term "whole wheat" can constitute an implied nutrient content claim.  Food Labeling Questions and Answers, 1994 WL 16188668, at *37.  In this case, the challenged labeling claims "whole grain," "multi-grain," and the Whole Grain Council Stamp,[6]

_____

[6] FDA has stated that "front-of-package symbols can at times constitute nutrient content claims." Guidance for Industry: Dear Manufacturer Letter regarding Front-of-Package Symbols, 2008 WL 6654484, at *1.

among others, are implied nutrient content claims in the context of the other statements on the labels.  For example, on Honey Bunches of Oats – with Almonds, the Whole Grain Council stamp that Plaintiffs challenge states that the Product contains "10g or more per serving" and "eat 48g or more of whole grains daily" (Compl., ¶ 170; Ohrt Decl., Ex. 20), and thus implies that whole grains are present above a certain amount.  Similarly, on Honey Bunches of Oats – Morning Energy Cinnamon Crunch, Plaintiffs challenge the statement "over 2/3 of your day's WHOLE GRAIN" (*See* Compl., ¶ 199(c); Ohrt Decl., Ex. 34), which also implies that whole grains are present in a certain amount.  The Court should dismiss Plaintiffs' challenges to these two statements, as well as other similar statements.  *See* Garganta Declaration, Ex. 7 at pp. 1, 3-21, 24-25, 28-46, 48-57, 59, 61-65, 73-77, 79.

Plaintiffs' challenges to the implied nutrient content claim "no high fructose corn syrup" are expressly preempted, because it describes the ingredient in a manner that suggests that it is absent from the Products.  *See Chacanaca*, 752 F. Supp. 2d at 1127; *see also* 21 C.F.R. § 101.65(c).  Thus, the Court should dismiss Plaintiffs' challenge to "no high fructose corn syrup" on the Goodmorening Products (Compl., ¶¶ 213-216; Orht Decl., Exs. 43-48), and their challenges to other similar statements.  *See* Garganta Declaration, Ex. 7 at pp. 33, 35, 37-38, 41, 43, 51, 53, 62, 65-75, 77-78, 80.

Plaintiffs' challenges to "antioxidant" nutrient content claims are expressly preempted because FDA regulations permit the use of those claims.  *See* 21 C.F.R. § 101.54(g).  Thus, the Court should dismiss Plaintiffs' challenge to the statement "an excellent source of antioxidant vitamins C and E" on Great Grains Cranberry Almond Crunch (Compl. ¶ 138; Ohrt Decl., Ex. 5), and their challenges to other similar statements.  *See* Garganta Declaration, Ex. 7 at pp. 5-6, 65.

Post is not required to disclose the alleged presence of sugar, added or otherwise, in order to make express or implied nutrient content claims on the Products' labels.  Under 21 C.F.R. § 101.13, if a nutrient content claim is made about a food and that food contains certain levels of fat, saturated fat, cholesterol, or sodium, "then that food must bear a statement disclosing that the nutrient exceeding the specified level."  *Id*. at (h)(1).  Neither that regulation, nor any other, requires sugar-related disclosure in order for a food to bear a nutrient content claim.  *See*

15

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

1  *Ackerman*, 2010 WL 2925955, at *3 (sugar disclosure not required); *see also Chacanaca*, 752 F.

2  Supp. 2d at 1122 (trans fats disclosure not required).

3      **IV.**    **As a Matter of Law, the Products Do Not Contain Any Health Claims that**

4                  **Violate Federal or State Law**

5         Plaintiffs allege that some of the Products contain improper health claims which violate

6  21 C.F.R. 101.14 and corresponding California law.  Compl., ¶¶ 305-311.  Plaintiffs are wrong.

7  Their challenges to these claims should be dismissed, with prejudice.

8         First, Plaintiffs challenge the supposed health claim made on two Products: "[b]y

9  consuming at least 48g of whole grains per day, you can support healthy digestion and reduce the

10  risk of several chronic diseases like heart disease and diabetes."  Compl. ¶ 305.  Drawing a

11  relationship between whole grains and the risk of heart disease is a permissible health claim,

12  however (*see* 21 C.F.R. § 101.81), and drawing a relationship between whole grains and the risk

13  of diabetes is permitted by FDA as what is known as a "permissible qualified health claim."  *See*

14  Post's Garganta Decl., Ex. 8 (FDA's Response Letter to ConAgra's Qualified Health Claim

15  Petition); *see also Zakaria v. Gerber Prod. Co.*, No. LA CV15-00200 JAK EX, 2015 WL

16  3827654, at *2 (C.D. Cal. June 18, 2015).[7]  And while FDA regulations prohibit health claims in

17  foods with certain "disqualifying nutrients" at certain levels (*i.e.*, total fat, saturated fat,

18  cholesterol, or sodium), 21 C.F.R. § 101.14(a)(4), neither added sugar nor artificial trans fat are

19  "disqualifying nutrients."  *See Chacanaca*, 752 F. Supp. 2d at 1123; *Ackerman v. Coca-Cola*

20  *Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *8 (E.D.N.Y. July 21, 2010).[8]

21

22  ------------------------

23  [7] In addition, the depiction of whole grains and a heart in two adjacent circles on a number of
Products (*see, e.g.*, Ohrt Decl., Ex. 18; *see also* Garganta Decl., Ex. 7 at 33, 37, 39, 41, 43, 47) is
a permitted health claim because it is used in conjunction with a valid reference statement, and

24  thus Plaintiffs' challenges to it are preempted.  *See* 21 C.F.R. § 101.75(c) (permitting health
claims related to the risk of coronary heart disease); *see also* 21 C.F.R. § 101.14(d)(2)(iv)

25  (providing that for health claims, "the principal display panel of the label or labeling may bear
the reference statement" directing the consumer to another location on the label for additional

26  information).

27  [8] In fact, the FDA has expressly rejected efforts to define "added sugars" as a disqualifying
nutrient.  *See* Food Labeling; General Requirements for Health Claims for Food, 58 Fed. Reg.

28  2,478 at 2,491 (Jan. 6, 1993) ("[I]t would not be appropriate to limit health claims on foods on
the basis of added sugars.").

16

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

Second, Plaintiffs argue that "help you burn more calories" and "enhance your metabolism," which were made on two Products, are impermissible health claims because "metabolism and weight are 'disease or health-related conditions.'"  Compl., ¶¶ 310-11.  But health claims "characterize[] the relationship of any substance to a disease or health-related condition," 21 C.F.R. § 101.14, and neither of these statements does that because neither refers to any disease or health-related condition.  *See Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 46822, at *8 (N.D. Cal. Jan. 6, 2014) ("Because the label does not say anything about a disease, the court finds that the label does not make disease-related health claim," and "[g]eneral claims that a food is healthy are not health-related claims.").[9]

Third, Plaintiffs claim that some of the Products violate 21 C.F.R. § 101.13(i)(3) because "the nutrient content claim 'Xg PROTEIN' is made prominently on the cereal's packaging," but the "'Xg' includes a contribution from milk."  Compl., ¶ 312.  However, Plaintiffs acknowledge that the Products contain "a disclaimer to explain that only some of the protein comes from the actual cereal product" (*id*. at ¶ 262), and FDA permits and even "encourage[s] manufacturers to voluntarily provide nutrient information on their products on an as prepared basis."  *See* Food Labeling; Serving Sizes, 58 Fed. Reg. 2,229, 2,284 (Jan. 6, 1993) (stating that "FDA recognizes that it would be helpful to make comparisons of foods in their prepared state.").  Because Post is permitted and even encouraged to provide nutrient information (*i.e.,* protein per serving) on an as-prepared basis (*i.e.,* with milk), the Products do not violate 21 C.F.R. § 101.13(i)(3).[10]

## V.      Plaintiffs Fail to State Any Claim for Relief

### A.      No Reasonable Consumer Would Be Misled by Post's Labeling

---

[9] To the extent the Court cannot determine as a matter of law whether those claims are implied health claims, "the Court should apply the doctrine of primary jurisdiction and defer to the FDA for a determination of whether the . . . [l]abel constitutes an implied health claim."  *See Haggag v. Welch Foods, Inc.*, No. CV 13-00341-JGB OPX, 2014 WL 1246299, at *4 (C.D. Cal. Mar. 24, 2014).

[10] While Plaintiffs do not specifically challenge "Xg PROTEIN" as misleading (*see* Plaintiffs' Appendix), to the extent they did, any such challenge would be preempted because that statement is an implied nutrient content claim.  *See Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *6 (N.D. Ill. Mar. 15, 2016) ("[T]he statement '26 grams of high-quality protein' appearing on the front label of the Product is a nutrient content claim.").

<u>Statements or Its Purported Failure to Disclose the Amount of, and</u>

<u>Alleged Dangers of, Added Sugar</u>

No reasonable consumer would be misled by the challenged labeling statements, or by Post's purported failure to disclose the Products' added sugar content or the alleged dangers of added sugar, because Plaintiffs have not plausibly alleged that the Products are unhealthy.

As an initial matter, Plaintiffs fail to plausibly allege that either the Products themselves or the amount of added sugar in them are unhealthy.  According to Plaintiffs, added sugar is fructose, and fructose is akin to a "poison," except that fructose "in fruit is not problematic [because] . . . the fiber [in fruit] slows the sugar's uptake," and because "[f]ruit also comes packaged with nutrients, like vitamins, that are beneficial for health."  Compl., ¶ 14-15, 23, 26. The Complaint also makes clear, however, that the Products also contain high levels of fiber (which slows the sugar's uptake), and other nutrients like vitamins that are "beneficial to health." *See, e.g.,* Compl., ¶ 253 (noting the Products' whole grain and fiber content).  Plaintiffs themselves have pleaded that fructose delivered with fiber and other nutrients is "not problematic" (*id*. at ¶ 26), and thus have not plausibly alleged that the Products are unhealthy or dangerous.  *See Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim."); *S.F. v. Archer-Daniels-Midland Co.*, No. 13-CV-634S, 2014 WL 1600414, at *7 (W.D.N.Y. Apr. 21, 2014), *aff'd*, 594 F. App'x 11 (2d Cir. 2014) (dismissing plaintiff's failure to warn claims because "fructose is a naturally occurring compound, found in everyday, commonly-consumed fruits like grapes and pears").

Moreover, the scientific sources Plaintiffs cite, including the AHA 2009 Scientific Statement, recognize that the nutrients in the Products are beneficial and even essential to health (*see supra*, p. 5), and they rely on studies of ingredients which they admit are not even present in the Products.  *See* Compl., ¶ 16 n.5 (Garganta Decl., Ex. 9) (finding that the "[c]onsumption of high-fructose corn syrup in beverages may play a role in the epidemic of obesity"); *id*. at ¶ 265 (alleging that high fructose corn syrup is "absent" from the Products).  Where, as here, "[t]he scientific materials presented by plaintiffs" do not undercut defendant's labeling statements,

plaintiffs "fail[] to raise a plausible claim that [defendant's] representations are false, deceptive, or misleading." *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 138 (E.D.N.Y. 2015).

In addition, any argument that the labeling statements are misleading because the Products are unhealthy is undercut by (a) FDA's determination that "cereal, and other foods that contain significant amounts of beneficial nutrients as well as added sugar" and can be a part of "healthful dietary patterns," and (b) FDA's rejection of the AHA's recommendation of a DRV of 5% of total calories from added sugar, a recommendation on which Plaintiffs premise their claims. NFP Final Rule, 81 Fed. Reg. 33,741, at 33,818, 33,849. FDA's determination that neither added sugar itself nor the amount of added sugar in the Products[11] is dangerous is relevant to whether a reasonable consumer could be misled by the Products' labels. *See In re: Coca-Cola Prod. Mktg. & Sales Practices Litig. (No. II)*, No. 14MD02555JSWMEJ, 2016 WL 6245899, at *3 (N.D. Cal. Oct. 26, 2016) (collecting cases).

Because neither the Complaint, nor the studies it cites, nor the FDA have found that the Products or the added sugar in them is unhealthy, Plaintiffs' claim for relief ultimately rests on their theory that the <u>overconsumption</u> of added sugar is harmful to consumers' health. *See* Compl., ¶ 1. But Post is under no duty to warn of "the obvious or 'widely known' risks of consuming a particular food." *Mills v. Giant of Md., LLC*, 508 F.3d 11, 12 (D.C. Cir. 2007); *see also* Restatement (Second) of Torts § 402A (1965) ("[A] seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, <u>when consumed in excessive quantity</u>, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized.") (emphasis added); *S.F.*, 2014 WL 1600414, at *7 (dismissing plaintiffs' claim because the studies they cite conclude that "it is the <u>over-consumption</u> of fructose that may lead to increased obesity and other adverse health effects") (emphasis added). Here, obesity and diabetes are purportedly among the "known dangers" of

---

[11] In any event, not one of the 31 Products for which the sugar content is alleged in the Complaint (*id.* at ¶ 235) contains a total sugar content (much less an added sugar content) of greater than 16 grams per serving, well below even Plaintiffs' alleged "safe" threshold for daily added sugar consumption of 38 grams per day for men and 25 grams per day for women. Compl., ¶ 27.

1   "long-term consumption of excess sugar" (Compl., ¶ 28, p. 115:3-4), and Post cannot mislead

2   consumers as to that which is widely-known.  *See Pelman v. McDonald's Corp.*, 237 F. Supp. 2d

3   512, 532 (S.D.N.Y. 2003) (the dangers of overconsumption of sugar are well-known and thus

4   "liability based on over-consumption is doomed").

5               B.      No Reasonable Consumer Could Be Misled Regarding the Products'

6                       Sugar Content Because that Content is Disclosed

7               Plaintiffs' claims should also be dismissed because no reasonable consumer would be

8   misled about the Products' contents.  Where "[t]he products at issue do not display any

9   affirmative misrepresentations," a reasonable consumer can be expected to look at the "the back

10  panel of the products, which listed all ingredients in order of predominance, as required by the

11  FDA." *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015), *appeal dismissed*

12  (Mar. 14, 2016); *see also Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148 WHA, 2013 WL

13  5400285, at *3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015) (no

14  reasonable consumer could be misled by defendant's statements about fruit content where

15  defendant's products "contain the fruits depicted and described on the front of the packaging");

16  *Savalli v. Gerber Prod. Co.*, No. 15-61554-CIV, 2016 WL 5390223, at *1 (S.D. Fla. Sept. 20,

17  2016) ("[F]ederal law places certain requirements on the contents of labels . . . . In turn, to

18  understand what they are purchasing, reasonable consumers should—well, read the label.").

19              There are no affirmative misrepresentations on the Products' labels.  Instead, Plaintiffs

20  allege that Post intentionally "de-emphasizes, hides, obscures, and otherwise omits material

21  information regarding the products'. . . [alleged] high sugar content." Compl., ¶ 255.  But a

22  reasonable consumer can be expected to look at the Products' labels to determine the ingredients

23  and those ingredients' prominence in the Products.  Each of the Products not only discloses the

24  sugar content in the exact location where FDA requires it to be disclosed (*i.e.*, the Nutrition Facts

25  Panel), *see* Ohrt Decl., Exs. 1-54, but also goes further and contains a prominently-placed

26  banner, often on the front panel, which also discloses the sugar content. *See, e.g.,* Great Grains

27  Blueberry Morning (*id*. at ¶ 131; Ohrt Decl., Ex. 1); Selects Great Grains Crunchy Pecans (*id*. at

28  ¶ 149; Ex. 11); Waffle Crisp (*id*. at ¶ 229; Ex. 54); *see also* Ohrt Decl., Exs. 1-2, 12, 21-22, 26,

20

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

36, 39-40, 42, 43-48, 51, 53. In addition, many of the Products also have statements which refer to the presence of sugar (*see, e.g.,* Compl., ¶ 225 (Ohrt Decl., Ex. 52) (a bear wearing a shirt with the words "SUGAR BEAR"); *id.* at ¶ 201(c) (Ohrt Decl., Ex. 36) ("honey-sweet crunch")), or names which do the same. *See, e.g., id.* at ¶ 215 (Ohrt Decl., Ex. 48) ("Good Morenings Frosted Flakes"); *id.* at ¶ 227 (Ohrt Decl., Ex. 53) ("Honey-Comb"); *see also id.* at ¶¶ 165-205 (Ohrt Decl., Exs. 18-41) ("Honey Bunches of Oats" Products).

In *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-CV-00296-WHO, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013), this Court dismissed plaintiffs' UCL, CLRA, and FAL claims because the product's "sugar content is listed right next to the ingredients list," and if "a reasonable consumer was concerned about sugar content, he or she can see how much sugar is in a . . . product next to the ingredient list." *Id.* at *8. Other cases confirm that where there is an explicit disclosure which would dispel any consumer confusion, California consumer protection claims cannot stand. *See, e.g., Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2013 WL 5513711, at *6 (N.D. Cal. Oct. 4, 2013) (reasonable consumer could not be deceived into believing that soy milk was derived from cows where there was an explicit disclaimer that the product was dairy free); *Simpson v. Kroger Corp.*, 219 Cal. App. 4th 1352, 1371–72 (2013) (reasonable consumer could not believe that products contained only butter because the top and side labels disclosed "that the products contain both butter and canola or olive oil").

### C.   Many of the Challenged Statements Are Non-Actionable Puffery

Many of the labeling statements Plaintiffs challenge are non-actionable puffery. The statement "a touch of honey" and other similar statements (*see* Garganta Decl., Ex. 7 at pp. 34-35, 37, 39, 41, 43, 47, 48, 49, 57-60) are puffery. *See Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014) (finding that "kiss of honey" and a "tad of honey" were "more blatant forms of puffery"). Similarly, the "goodness" statements and other similar statements (*see* Garganta Decl., Ex. 7 at pp. 2, 5, 8, 12, 16, 18, 20, 24, 28, 30, 51, 53, 55-56, 62, 66) are puffery. *See Weiss v. Kroger Co.*, No. CV 14-3780-R, 2014 WL 5114608, at *3 (C.D. Cal. Aug. 8, 2014) ("a whole lot of goodness contained in each and every tiny sunflower seed" was puffery); *P.E.T.A. v. Whole Foods Mkt. Cal., Inc.*, No. 15-CV-04301 NC, 2016 WL 1642577, at

21

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

*3 (N.D. Cal. Apr. 26, 2016) ("Great-Tasting Meat From Healthy Animals," and "Raised Right

Tastes Right" were puffery).  So are Plaintiffs' challenges to "simple" statements and other

statements (*see* Garganta Decl., Ex. 7 at pp. 57-60, 63, 74) that "vague, [and] highly subjective."

*See Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-04000 SC, 2013 WL 1739451, at

*10 (N.D. Cal. Apr. 22, 2013) ("simple" amounts to puffery).

## VI.   Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs' request for injunctive relief should be dismissed with prejudice for lack of

standing because Plaintiffs cannot be deceived by the Products' labeling again (as they allegedly

were).  "To maintain standing, Plaintiffs must show a sufficient likelihood that they will be

injured by [defendant] again in a similar way and that the future injury can be redressed by

injunctive relief." *Luman v. Theismann*, 647 F. App'x 804, 807 (9th Cir. 2016).  "Consumers

who were misled by deceptive food labels lack standing for injunctive relief because there is no

danger that they will be misled in the future." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d

1188, 1196 (N.D. Cal. 2014) (Orrick, J.).

Plaintiffs attempt to plead around Article III's standing requirement, alleging that (a) if a

the Products did "not contain excess sugar, they would consider purchasing Post cereals bearing

such claims in the future," and/or (b) "if plaintiffs could be assured that unhealthy Post cereals—

those high in added sugar—are appropriately priced, . . . [they might] consider purchasing [them]

in the future." Compl., ¶¶ 121-122.  But a plaintiff's standing to seek injunctive relief does not

turn on whether they will again purchase the products at issue, but rather whether they will again

be misled by those products' labeling.  *See Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-

WHO, 2016 WL 4502528, at *6 (N.D. Cal. Aug. 29, 2016) (holding that a plaintiff in a food

labeling class action "cannot establish that he is likely to suffer the same injury in the future

because . . . there is no danger that they will be misled in the future").[12]

---

[12] Plaintiffs' request for injunctive relief should also be dismissed because Plaintiffs seek to "enjoin Post's policy and practice generally, including but not necessarily limited to the products, labels, and label claims challenged herein," Compl., ¶ 120 (emphasis in original), but injunctive relief "must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law." *Ascencio v. ADRU Corp.*, No. C 12-04884 WHA, 2014 WL 204212, at *9 (N.D. Cal. Jan. 6, 2014).

1    In addition, a number of the Products have been discontinued, and thus Plaintiffs lack

2   standing to seek injunctive relief as to those Products.  Where a defendant discontinues products

3   on which plaintiffs bring claims, "this renders moot Plaintiffs' request for injunctive relief

4   related to those products."  *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013

5   WL 1629191, at *1 (N.D. Cal. Apr. 16, 2013).  Plaintiffs lack standing to seek injunctive relief

6   as to the discontinued Products identified in the Declaration of Mark Arrington.  *Id*. at ¶ 2.  Their

7   claims for injunctive relief as to those Products should be dismissed.

8    **VII.    Plaintiffs Lack Standing to Bring Claims for Unpurchased Products**

9    Plaintiffs' claims as to the Products that they did not purchase should be dismissed with

10   prejudice for lack of standing because the purchased and unpurchased Products' labels vary in

11   appearance, in placement on the challenged statements on the label, and in the other information

12   contained on the label.  A plaintiff in a consumer class action has standing to bring claims for

13   products she did not purchase only if the products she did not purchase are "substantially

14   similar" to the products she did purchase.  *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-

15   WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014); *Rushing v. Williams-Sonoma, Inc.*,

16   No. 16-CV-01421-WHO, 2016 WL 4269787, at *4 (N.D. Cal. Aug. 15, 2016) (same).  Whether

17   purchased and unpurchased products are "substantially similar" turns on whether "the resolution

18   of the asserted claims will be identical between the purchased and unpurchased products."  *Id*.

19   Where the claim that a reasonable consumer would be misled requires an "analysis of the

20   appearance of the label, the misrepresentation's placement on the label, and other information

21   contained on the label," "a consumer may only be allowed to pursue those claims for products

22   with identical labels."  *Id*.

23    In this case, Plaintiffs' claims require such an analysis.  As an initial matter, Plaintiffs do

24   not allege that they purchased any Great Grains Digestive Blends (Compl., ¶ 123(a)(xiv)-(xv),

25   Honey Bunches of Oats Fruit or Tropical Blends (*id*. at ¶ 123(b)(x)-(xii), Honey Bunches of Oats

26   Morning Energy (*id*. at ¶ 123(b)(xvii)-(xviii), or Post Good Morenings Post Cereals (*id*. at ¶

27   123(d)(i)-(vi).  In addition, Plaintiffs base their claims not on a single statement shared across the

28   Products' labels, but instead on dozens of different statements which vary among the Products,

1   and further allege that the statements are misleading "especially in the context of the label as a

2   whole." *See, e.g.,* Compl., ¶¶ 130, 132.  The placement of the challenged statements on the label

3   also varies, *inter alia*, in size and location.  *Compare id*. at ¶ 137 ("less processed" appears on

4   the front label) *with id*. at ¶ 162 ("less processed" appears on the back label).[13]

### VIII.   Plaintiffs Lack Standing to Challenge Post's Website, Press Releases, and Statements Purportedly Directed at Children

7        Plaintiffs' claims relating to Post's website and press releases should be dismissed for

8   lack of standing because Plaintiffs do not alleged that they relied on either.  "A party does not

9   have standing to challenge statements or advertisements that she never saw."  *Ham v. Hain*

10  *Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014) (dismissing challenges to

11  alleged misrepresentations on defendant's website or Facebook because she did not allege she

12  viewed either); *see also Bruton v. Gerber Prod. Co.*, 961 F. Supp. 2d 1062, 1091 (N.D. Cal.

13  2013) (no standing for claims based on advertisements that plaintiff did not view).  Plaintiffs

14  allege that "Post uses the Post Website to further its deceptive marketing of high-sugar cereals as

15  healthy" (Compl., ¶ 314) and that "Post has also periodically issued press releases furthering its

16  misleading health and wellness messaging of its cereals" (*id*. at ¶ 323), but nowhere do Plaintiffs

17  allege that they viewed, much less relied, on either.

18       Plaintiffs also lack standing to challenge Post's purported marketing of its Products to

19  children (Compl., ¶¶ 283-295), because they do not allege that they purchased any of the

20  Products in reliance on that alleged marketing to children.  *See Romero v. Flowers Bakeries,*

21  *LLC*, No. 14-CV-05189-BLF, 2015 WL 2125004, at *4 (N.D. Cal. May 6, 2015) (dismissing

22  claims because plaintiff "failure to plead her actual reliance on [particular] misrepresentations").

### IX.   Alternatively, the Court Should Stay this Action Under the Primary Jurisdiction Doctrine

25       To the extent the Court does not dismiss Plaintiffs' claims, it should stay this action

---

[13] Under the same analysis, Plaintiffs lack standing to bring claims relating to the six Products that Mr. Hadley alleges he "believes he may also have purchased" (Compl., ¶¶ 362, 366). *Cf. P.E.T.A.*, 2016 WL 362229, at *4 (dismissing plaintiffs' claims where defendants argued that "it is not evident from the [complaint] exactly which . . . Products are implicated").

1   pending completion of FDA's recently-announced public process for the redefinition of

2   "healthy" in food labeling.  The primary jurisdiction doctrine "allows courts to stay proceedings

3   or to dismiss a complaint without prejudice pending the resolution of an issue within the special

4   competence of an administrative agency."  *Swearingen v. Amazon Pres. Partners, Inc.*, No. 13-

5   CV-04402-WHO, 2014 WL 3934000, at *2 (N.D. Cal. Aug. 11, 2014).  On September 28, 2016,

6   FDA announced "the establishment of a docket to receive information and comments on the use

7   of the term 'healthy' in the labeling of human food products."  *See* Use of the Term "Healthy" in

8   the Labeling of Human Foods Products; Request for Information and Comments, 81 Fed. Reg.

9   66,562 at 66,562 (Sept. 28, 2016).  FDA's request for comments is broad, and indicates that

10  FDA's rulemaking will address issues central to this case.  *Id.* (stating that FDA is "particularly

11  interested" in, *inter alia*, "when, if ever, the use of the term 'healthy' may be false or

12  misleading," and what "other words or terms might be more appropriate (*e.g.,* 'nutritious')" than

13  "healthy" to characterize foods which contribute to healthy dietary practices).

14      Plaintiffs allege that "Post has intentionally positioned itself in the market as a

15  purportedly 'healthy' brand of processed food," and uses "various health and wellness claims

16  that suggest the cereals are healthy," including use of the term "nutritious."  Compl., ¶¶ 114, 117,

17  163.  In fact, Plaintiffs challenge each Product's label as "suggesting, both individually and

18  especially in the context of the label as a whole, that the product is healthy."  *See, e.g.,* ¶¶ 158,

19  161.  In light of the broad scope of FDA's request for comments and the centrality of "healthy"

20  to Plaintiffs' claims, a stay pending FDA's redefinition of "healthy" is appropriate here.

21                                  **CONCLUSION**

22      For the foregoing reasons, this Court should dismiss the Complaint with prejudice, or, in

23  the alternative, stay this action pending FDA's redefinition of "healthy" in food labeling.

24  DATED:  October 31, 2016                    Respectfully submitted,

25                                              **VENABLE LLP**

26                                      By:  /s/ Angel A. Garganta
                                             Angel A. Garganta (SBN 163957)

27                                              Attorneys for Defendant Post Foods, LLC

28