**VENABLE LLP**
Angel A. Garganta (SBN 163957)
Email: agarganta@venable.com
Robert L. Meyerhoff (SBN 298196)
Email: rlmeyerhoff@venable.com
Cody S. Lonning (SBN 301972)
Email: cslonning@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone:   415.653.3750
Facsimile:   415.653.3755

Attorneys for Defendant
POST FOODS, LLC

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE KROMMENHOCK, and STEPHEN HADLEY, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>POST FOODS, LLC,<br><br>Defendant. | CASE NO.: 3:16-cv-04958-WHO<br><br>**DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, STAY THIS ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION**<br><br>Date:          February 15, 2017<br>Time:          2:00 p.m.<br>Dept:          Courtroom 2<br>Judge:         Hon. William H. Orrick<br><br>Action Filed:     August 29, 2016<br>Trial Date:       None. |

# **TABLE OF CONTENTS**

Page

NOTICE OF MOTION.................................................................................................1

PRELIMINARY STATEMENT ..................................................................................2

PLAINTIFFS' ALLEGATIONS ................................................................................3

REGULATORY BACKGROUND .............................................................................5

LEGAL ARGUMENT ................................................................................................8

I.     All of Plaintiffs' Claims Are Expressly Preempted.............................8

II.    All of Plaintiffs' Claims Are Also Preempted under the Doctrine of
       Conflict Preemption ...........................................................................11

III.   Alternatively, Plaintiffs' Claims Relating to the "Healthy," "Good
       Source," "Fiber," "Whole Grain," "Multi-Grain," "No High Fructose Corn
       Syrup," and "Antioxidant" Labeling Statements Are Expressly Preempted ......13

IV.    As a Matter of Law, the Products Do Not Contain Any Labeling Claims
       that Violate Federal or State Law ......................................................16

V.     Plaintiffs Fail to State Any Claim for Relief under the CLRA, UCL, or
       FAL.....................................................................................................19

       A.     No Reasonable Consumer Would Be Misled by Post's Labeling
              Statements or Its Purported Failure to Disclose the Amount of, and
              Alleged Dangers of, Added Sugar .........................................19

       B.     No Reasonable Consumer Could Be Misled Regarding the
              Products' Sugar Content Because that Content is Disclosed................21

       C.     Many of the Challenged Statements Are Non-Actionable Puffery .......22

VI.    Plaintiffs' Breach of Warranty Claims Fail as a Matter of Law Because
       There Has Been No Breach..................................................................23

       A.     Post Did Not Breach Any Purported Express Warranty.......................23

       B.     Post Did Not Breach Any Implied Warranty of Merchantability...........24

       C.     Plaintiffs' Warranty Claims Should Be Dismissed Because the
              Products Disclose the Presence and Amount of Sugar ..........................25

VII.   Plaintiffs Lack Standing to Seek Injunctive Relief............................26

VIII.  Plaintiffs Lack Standing to Bring Claims for Unpurchased Products ...............27

IX.    Plaintiffs Lack Standing to Challenge Post's Website, Press Releases, and
       Statements Purportedly Directed at Children .......................................28

X.     Plaintiffs' Claims Should Be Dismissed with Prejudice ...................................29

i

XI.     Alternatively, the Court Should Stay this Action Under the Primary
        Jurisdiction Doctrine...................................................................................................29

CONCLUSION...............................................................................................................................30

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010)...............................16, 17

*Alamilla v. Hain Celestial Grp., Inc.*,
   30 F. Supp. 3d 943 (N.D. Cal. 2014) ...................................................................19

*Ang v. Bimbo Bakeries USA, Inc.*,
   No. 13-CV-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014).............................27

*Ascencio v. ADRU Corp.*,
   No. C 12-04884 WHA, 2014 WL 204212 (N.D. Cal. Jan. 6, 2014)......................................26

*Backus v. Gen. Mills, Inc.*,
   122 F. Supp. 3d 909 (N.D. Cal. 2015) ...........................................................24, 25

*Backus v. Nestlé USA, Inc.*,
   167 F. Supp. 3d 1068 (N.D. Cal. 2016) ...................................................10, 11, 12

*Baxter v. Salton, Inc.*,
   No. C10-1442 MJP, 2011 WL 888017 (W.D. Wash. Mar. 14, 2011) ...................................29

*Brazil v. Office of Pers. Mgmt.*,
   35 F. Supp. 3d 1101 (N.D. Cal. 2014) (Orrick, J.) .....................................................11

*Bronson v. Johnson & Johnson, Inc.*,
   No. C 12-04184 CRB, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ...................................27

*Bruton v. Gerber Prod. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013) ...................................................................28

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 F. App'x 113 (9th Cir. 2012) .............................................................................13

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ..................................................................*passim*

*Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*,
   24 F. Supp. 3d 750 (N.D. Ill. 2014) .........................................................................11

*Chin v. Gen. Mills, Inc.*,
   No. CIV. 12-2150 MJD/TNL, 2013 WL 2420455 (D. Minn. June 3, 2013).........................25

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   No. 12-04000 SC, 2013 WL 1739451 (N.D. Cal. Apr. 22, 2013) ...........................................22

iii

*In re: Coca-Cola Prod. Mktg. & Sales Practices Litig. (No. II)*,
No. 14MD02555JSWMEJ, 2016 WL 6245899 (N.D. Cal. Oct. 26, 2016) ............................19

*Cruz v. Anheuser-Busch, LLC*,
No. CV 14-09670 AB ASX, 2015 WL 3561536 (C.D. Cal. June 3, 2015)............................23

*Eckler v. Neutrogena Corp.*,
238 Cal. App. 4th 433 (2015) .............................................................................................12

*Farina v. Nokia Inc.*,
625 F.3d 97 (3d Cir. 2010).................................................................................................12

*Frenzel v. AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ..................................................................................25

*Gelber v. Stryker Corp.*,
788 F. Supp. 2d 145 (S.D.N.Y. 2011)..................................................................................18

*Gitson v. Trader Joe's Co.*,
No. 13-CV-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013)................................21

*Gorenstein v. Ocean Spray Cranberries, Inc.*,
No. CV 09-5925-GAF, 2009 WL 10201128 (C.D. Cal. Dec. 18, 2009) ................................9

*Griggers v. Equitable Life Assur. Soc'y of U.S.*,
343 F. Supp. 2d 1190 (N.D. Ga. 2004) ...............................................................................28

*Gubala v. CVS Pharmacy, Inc.*,
No. 14 C 9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015) .........................................10, 11

*Gubala v. CVS Pharmacy, Inc.*,
No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) ..............................................18

*Hadley v. Kellogg Sales Co.*,
Case No. 16-CV-04955-LHK (N.D. Cal.) ............................................................................29

*Haggag v. Welch Foods, Inc.*,
No. CV 13-00341-JGB OPX, 2014 WL 1246299 (C.D. Cal. Mar. 24, 2014)........................17

*Ham v. Hain Celestial Grp., Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) (Orrick, J.) ...........................................................26, 28

*Hawkins v. Kellogg Co.*,
No. 16-CV-0147-JAH (JMA), 2016 WL 7210381 (S.D. Cal. Dec. 13, 2016) ......................10

*Kardovich v. Pfizer, Inc.*,
97 F. Supp. 3d 131 (E.D.N.Y. 2015) ...................................................................................19

*Lam v. Gen. Mills, Inc.*,
859 F. Supp. 2d 1097 (N.D. Cal. 2012) ...............................................................................22

*Lanovaz v. Twinings N. Am., Inc.*,
    No. C-12-02646-RMW, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014) .........................................17

*Long v. Graco Children's Prod. Inc.*,
    No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ...............................22

*Luman v. Theismann*,
    647 F. App'x 804 (9th Cir. 2016) .......................................................................................26

*Manchouck v. Mondelez Int'l Inc.*,
    No. C 13-02148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013), *aff'd*,
    603 F. App'x 632 (9th Cir. 2015) .......................................................................................20

*McCullagh v. Merrill Lynch & Co.*,
    No. 01 CIV.7322 DAB, 2004 WL 744484 (S.D.N.Y. Apr. 7, 2004) .....................................28

*McKinniss v. Sunny Delight Beverages Co.*,
    No. CV0702034-RGKJCX, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ...........................23

*Mills v. Giant of Md., LLC*,
    508 F.3d 11 (D.C. Cir. 2007) ...............................................................................................20

*Morgan v. Wallaby Yogurt Co., Inc.*,
    No. 13-CV-00296-WHO, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013).................................21

*Nemphos v. Nestle Waters N. Am., Inc.*,
    775 F.3d 616 (4th Cir. 2015) ..................................................................................................9

*P.E.T.A. v. Whole Foods Mkt. Cal., Inc.*,
    No. 15-CV-04301 NC, 2016 WL 1642577 (N.D. Cal. Apr. 26, 2016) ...........................22, 28

*Pelman v. McDonald's Corp.*,
    237 F. Supp. 2d 512 (S.D.N.Y. 2003).................................................................................20

*Red v. Gen. Mills, Inc.*,
    No. 215CV02232ODWJPR, 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015).........................24

*Red v. The Kroger Co.*,
    No. CV 10-01025 DMG MANX, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ....................9

*Romero v. Flowers Bakeries, LLC*,
    No. 14-CV-05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015) .................................28

*Rushing v. Williams-Sonoma, Inc.*,
    No. 16-CV-01421-WHO, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) .............................27

*Salazar v. Honest Tea, Inc.*,
    74 F. Supp. 3d 1304 (E.D. Cal. 2014)..................................................................................22

v

*Savalli v. Gerber Prod. Co.*,
No. 15-61554-CIV, 2016 WL 5390223 (S.D. Fla. Sept. 20, 2016).........................20

*Seufert v. Merck Sharp & Dohme Corp.*,
2016 WL 3369512, --- F. Supp. 3d (S.D. Cal. May 11, 2016) ...............................13

*Shein v. Canon U.S.A., Inc.*,
No. CV 08-07323 CAS EX, 2009 WL 1774287 (C.D. Cal. June 22, 2009) ..........................24

*Simpson v. California Pizza Kitchen, Inc.*,
989 F. Supp. 2d 1015 (S.D. Cal. 2013).........................25

*Simpson v. Kroger Corp.*,
219 Cal. App. 4th 1352 (2013) ..............................21

*Swearingen v. Amazon Pres. Partners, Inc.*,
No. 13-CV-04402-WHO, 2014 WL 3934000 (N.D. Cal. Aug. 11, 2014) ...........................29

*Turek v. Gen. Mills, Inc.*,
754 F. Supp. 2d 956 (N.D. Ill. 2010), *aff'd as modified*, 662 F.3d 423 (7th Cir. 2011) .......................................10

*Victor v. R.C. Bigelow, Inc.*,
No. 13-CV-02976-WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29, 2016) ...........................26

*Viggiano v. Hansen Nat. Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) ..............................10, 22, 23, 24

*Weiss v. Kroger Co.*,
No. CV 14-3780-R, 2014 WL 5114608 (C.D. Cal. Aug. 8, 2014).........................22

*Workman v. Plum Inc.*,
141 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015), *appeal dismissed* (Mar. 14, 2016) .......................................20

*Yumul v. Smart Balance, Inc.*,
No. CV 10-00927 MMM, 2011 WL 1045555 (C.D. Cal. Mar. 14, 2011) ...........................13

*Zakaria v. Gerber Prod. Co.*,
No. LA CV15-00200 JAK EX, 2015 WL 3827654 (C.D. Cal. June 18, 2015) ....................16

**Statutes**

7 U.S.C. § 5341.........................................................................................6

21 U.S.C. § 301.........................................................................................9

21 U.S.C. § 343-1(a)...............................................................................9

21 U.S.C. § 343(r)(2)(G)........................................................................16

**Other Authorities**

21 C.F.R. § 101.9 ...........................................................................................................6, 10, 12

21 C.F.R. § 101.13 .................................................................................................... *passim*

21 C.F.R. § 101.14 ...................................................................................................16, 17

21 C.F.R. § 101.54 ...................................................................................................14, 15

21 C.F.R. § 101.65 .............................................................................................13, 14, 15

21 C.F.R. § 101.75 ........................................................................................................16

21 C.F.R. § 101.81 ........................................................................................................16

58 Fed. Reg. 2,229 ........................................................................................................18

58 Fed. Reg. 2,478 ........................................................................................................17

77 Fed. Reg. 7,946 ..........................................................................................................6

79 Fed. Reg. 11,879 ........................................................................................................6

80 Fed. Reg. 34,650 ......................................................................................................12

80 Fed. Reg. 44,303 ........................................................................................................6

81 Fed. Reg. 33,741 ................................................................................................. *passim*

81 Fed. Reg. 66,562 ......................................................................................................29

Fed. R. Civ. P. 12(b)(1) ...................................................................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on February 15, 2017, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick, United States District Judge, in Courtroom 2 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Post Foods, LLC ("Post") will and hereby does move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the First Amended Complaint ("FAC") of Plaintiffs Debbie Krommenhock and Stephen Hadley ("Plaintiffs") for failure to state a claim and lack of standing.

Post moves to dismiss the FAC in its entirety as expressly preempted, preempted under the doctrine of conflict preemption, and because no reasonable consumer would be misled by the challenged labeling statements and Plaintiffs have not plausibly alleged any warranties were breached.  In addition, Post moves to dismiss Plaintiffs' challenges to express and implied nutrient content claims and health claims because those challenges are expressly preempted, and moves to dismiss Plaintiffs' challenges to allegedly impermissible nutrient content claims and health claims because Post was legally permitted to make those claims.  Post moves to dismiss for lack of standing Plaintiffs' request for injunctive relief, their claims relating to products they did not purchase, and their claims relating to statements made on Post's website and in its press releases as well as to statements purportedly directed to children.  Dismissal should be with prejudice, because any amendment to correct the FAC's deficiencies would be futile.  In the alternative, Post moves to stay this case pending FDA's completion of its rulemaking process on the redefinition of "healthy" in food labeling.

This motion is based on this notice of motion and motion, the following Memorandum of Points and Authorities, the accompanying Declarations of Angel A. Garganta, Mark Arrington, and Jamie Ohrt, the accompanying Request for Judicial Notice, the pleadings on file in this matter, the Reply that Post intends to file, any material of which this Court takes judicial notice, and any further argument the Court might allow.

1

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Post sells fortified, nutrient-dense cereals that provide consumers and their families with significant amounts of numerous beneficial nutrients, including fiber, whole grains, iron, zinc, and folic acid. Post's cereals also contain added sugar, but deliver it in a food the Food and Drug Administration ("FDA") has found can "contribute beneficial nutrients into the diet" and be "incorporate[d] . . . into a healthy dietary pattern," notwithstanding its added sugar content. Despite this, Plaintiffs challenge hundreds of truthful statements on the labels of 44 Post cereals as "incompatible" with the purportedly "significant dangers" of "excessive added sugar."

On May 27, 2016, FDA completed a lengthy, exhaustive rulemaking process in which FDA, *inter alia*, reviewed the scientific evidence on added sugar, established a Daily Reference Value ("DRV") for added sugar (and rejected suggestions that the DRV be a lower amount), and added a disclosure requirement for added sugar on the Nutrition Facts Panel, with a compliance date of July 26, 2018 (the "NFP Final Rule"). Although FDA was concerned about the excessive consumption of added sugar in certain foods such as sugar-sweetened beverages, FDA did not establish these requirements because foods such as Post's cereals are, as Plaintiffs allege, "unhealthy." Rather, FDA found that cereals such as Post's "contain significant amounts of beneficial nutrients as well as added sugar," and sought to provide consumers with information on "how to incorporate those foods into a healthy dietary pattern."

The NFP Final Rule is also significant for what FDA refused to do. FDA did not require manufacturers to make this new disclosure of added sugar until July 26, 2018, and rejected comments urging that it require warning labels for products with added sugar. Despite FDA's unambiguous decision on both issues, Plaintiffs assert that Post was "under a duty to disclose" (a) the amount of added sugar (*i.e.,* sugar added during processing or preparation, as opposed to naturally occurring in the food) in the cereals, and (b) the alleged "dangers of added sugar in its products." While Plaintiffs may be dissatisfied with the NFP Final Rule, they cannot use state law to impose requirements not identical to those imposed by FDA or to create obstacles to the accomplishment of federal objectives. Plaintiffs' state law claims, which condition Post's

2

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

1    liability on the presence of added sugar in its cereals in amounts that Plaintiffs (but not FDA)

2    consider to be "excessive," are preempted both expressly and under the doctrine of conflict

3    preemption.

4            In addition to being expressly preempted and conflict preempted in its entirety, the FAC

5    challenges numerous FDA-permitted express or implied nutrient content or health claims, and

6    those challenges are independently expressly preempted.  Plaintiffs wrongly contend that Post

7    makes impermissible nutrient content claims and health claims, but the only nutrient content

8    claims and health claims Post makes on its cereals are permitted under federal law.  Plaintiffs'

9    claims should also be dismissed because no reasonable consumer could be misled about the

10   supposed dangers of Post's cereals, and because Post did not breach any express or implied

11   warranties.  And a number of the challenged statements are non-actionable puffery.  Plaintiffs

12   also lack standing to seek injunctive relief, to bring claims for products they did not purchase,

13   and to challenge statements on Post's website and press releases as well as statements

14   purportedly directed to children on which they do not allege they relied.  Alternatively, the Court

15   should stay this case pending FDA's redefinition of "healthy" in food labeling.

16           At base, this case is an ill-advised attempt to make an end-run around FDA's carefully-

17   considered rules governing added sugar disclosures.  Plaintiffs' FAC improperly seeks to

18   invalidate numerous lawful statements, and impose on Post a labeling regime that FDA has

19   already rejected.  It should be dismissed with prejudice.

20                                **PLAINTIFFS' ALLEGATIONS**

21           Plaintiffs filed their Original Complaint on August 29, 2016 (Dkt. No. 1), and Post

22   moved to dismiss on October 31.  Dkt. No. 26.  On November 14, 2016, Plaintiffs filed the FAC.

23   Dkt. No. 217.  Both California residents, Plaintiffs purport to represent a class of California

24   consumers challenging the labeling claims of 44 different Post products (the "Products"),

25   including 8 products that neither of them purchased, and allege that they suffered economic as

26   well as bodily injury "in the form of increased risk of CHD, stroke, and other morbidity."  *Id*. at

27   ¶¶ 335, 355, 358, 362, 384, 367, 370; *see also* Declaration of Angel Garganta, Ex. 1 (List of

28   Products not Purchased).

Plaintiff Stephen Hadley allegedly purchased 30 Products "over the past several years." *See id.* at ¶¶ 361, 362, 365, 370, 373; *see also* Garganta Decl., Ex. 2 (List of Products Allegedly Purchased and or which Allegedly May Have Been Purchased).  He alleges that he "may also have purchased" six other Products.  FAC, ¶¶ 359, 363; Garganta Decl., Ex. 2.  Plaintiff Debbie Krommenhock allegedly purchased six Products over approximately the past two years, all of which Mr. Hadley also allegedly purchased.  *Id.* at ¶ 335; *see also* Garganta Decl., Ex. 2.

Plaintiffs allege that Post has "a policy and practice of marketing high-sugar cereals with health and wellness claims," and that those claims are deceptive because Post "fails to warn consumers of the known dangers of consuming its high-sugar cereals."  FAC, ¶ 2, p. 114 (emphasis omitted).  According to Plaintiffs, Post is "under a duty to disclose" the "amount and dangers of added sugar in its products."  *Id.* at ¶ 264.  Instead, Post allegedly "failed to adequately warn consumers" and "deceptively omit[ted] the dangers of consuming the products."  *Id.* at ¶¶ 292, 323; *see also id.* at ¶ 243 (Post "intentionally also de-emphasizes, hides, obscures, and otherwise omits. . . . [the Products' alleged] high sugar content.").[1]

Moreover, the sugar content of the cereal is disclosed on the Products in multiple places.  *See, e.g., id.* at ¶ 211 (displaying "6g sugar" per serving on the front of the package); *id.* at ¶ 217 (displaying "12g sugar" per serving on the front of the package).  *See also* Declaration of Jamie Ohrt, Exs. 1-44.[2]  The Products also disclose the amount of sugar per serving on the Nutrition Facts Panel, located on the side label of each Product.  *See* Ohrt Decl. Exs. 1-44.  Many of the Products contain images or statements which clearly refer to the presence of sugar.  *See, e.g.,* FAC, ¶ 213 (a bear wearing a shirt with the words "SUGAR BEAR"); *id.* at ¶ 194(c) ("honey-sweet crunch"); *id.* at ¶ 214(a) ("Sweetened Puffed Wheat Cereal"); *id.* at ¶ 216(a) ("Sweetened Corn Oat Cereal"); *id.* at ¶ 221(i) ("sweet pecans").  Some of the Products are named in such a

---

[1] Plaintiffs also allege that one of the Products, Waffle Crisp, "is made with partially hydrogenated vegetable oil" that contains artificial trans fat (FAC, ¶¶ 105-109, 286), and that Post's alleged marketing to children of Waffle Crisp is "immoral, malicious, oppressive, and egregious" because artificial trans fat is "a substance so deadly that the FDA has banned it with a phase-out deadline of 2018" (*id.* at ¶¶ 284, 288).

[2] Post's Request for Judicial Notice sets forth the basis on which the Court can take judicial notice of Exhibits 1-44 to the Ohrt Declaration and Exhibits 3-5 and 7-9 to the Garganta Declaration.

way as to indicate the presence of sugar.  *See, e.g. id*. at ¶ 215 ("Honeycomb"); *id*. at ¶ 224 ("Honey Bunches of Oats").

In support of their claims that the Products pose "significant dangers" and cause bodily injury, Plaintiffs point to 91 written sources, which they allege constitute "compelling evidence" that "convincingly show[s]" the dangers of sugar.  *Id*. at ¶¶ 1-2, 11 & n.1 – 104 & n.87.  Not one of those sources studied, or even mentions, any of the challenged Post Products, and most concern the effects of consuming sugar-sweetened beverages.  *See generally, id.*  Only a small minority make reference to cereals, and those that do suggest that the consumption of fortified, nutrient-dense cereals such as the Products can contribute to good health.  *See, e.g.,* ¶ 16 n.6 (Garganta Decl., Ex. 3, at xi) (recommending that individuals ages 50 years and over "[c]onsume foods fortified with vitamin B12, such as fortified cereals"); *id*. at ¶ 19 n.13 (Garganta Decl., Ex. 4, at 13) (noting that a diet with increased amounts of "fruit, vegetables, and cereals contributed the most to estimated reduced risk of total mortality").

The American Heart Association ("AHA")'s 2009 Scientific Statement on which, as explained below, Plaintiffs' claims hinge, found that "presweetened cereals may have a positive impact" on diet quality, and recognized that "when sugars are added to otherwise nutrient-rich foods, such as sugar-sweetened dairy products like flavored milk and yogurt and sugar-sweetened cereals, the quality of children's and adolescents' diets improves."  *Id*. at 1012, 1016. And the only cereal study cited studied consumption patterns, not health effects.  FAC, ¶ 331 n.95 (Garganta Decl., Ex. 5, at 71-72).  While that study noted "potential negative effects" of excessive consumption of sweetened cereal, it also stated that there "are positive health benefits for children who consume . . . cereals for breakfast" and that "[s]tudies have consistently found that higher consumption of cereals is associated with improved micronutrient intake."  *Id*.

## REGULATORY BACKGROUND

### *FDA Rulemaking on Added Sugar*

In February of 2012, FDA announced its intention to propose a new rule to "amend labeling regulations . . . to provide updated nutrition information on the label to assist consumers in maintaining healthy dietary practices" and to "modernize the nutrition information found on

5

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

the Nutrition Facts label." Food Labeling: Revision to the Nutrition and Supplement Facts Labels, 77 Fed. Reg. 7946, at 7953 (Feb. 13, 2012). On March 3, 2014, FDA issued that proposed rule. Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 79 Fed. Reg. 11879, 11880 (Mar. 3, 2014). Among other things, FDA proposed to "require the declaration of 'added sugars,'" in order to "provide consumers with information they need to implement the dietary recommendations" of the Dietary Guidelines for Americans from 2010.[3] *Id.* at 11904. FDA recognized that "added sugars can increase the palatability of nutrient-dense foods," and stated that "disclosure of added sugars on the label may allow consumers to plan and construct their diets to include small amounts of added sugars and still consume adequate amounts of necessary nutrients." *Id.* In July of 2015, FDA issued a revised proposed rule, proposing to also establish a DRV of 10% of total energy intake from added sugars. Food Labeling: Revision of the Nutrition and Supplement Facts Labels; Supplemental Proposed Rule, 80 Fed. Reg. 44303 (July 27, 2015).

On May 27, 2016, FDA issued its final rule, which it described as "the result of significant stakeholder engagement" and the product of an information-gathering process that involved conducting several consumer studies and reviewing more than 300,000 comments from the scientific community, consumers, industry, and others. Food Labeling: Revision of the Nutrition and Supplement Facts Panel, 81 Fed. Reg. 33,741, at 33,744 (May 27, 2016) (the "NFP Final Rule").[4] The NFP Final Rule revised food labeling requirements to require, on the Nutrition Facts Panel, a "declaration of the gram amount of 'added sugars' in a serving of a product, establishing a Daily Reference Value (DRV), and requiring the percent Daily Value

---

[3] The Dietary Guidelines for Americans is a joint publication of the U.S. Department of Health and Human Services and the U.S. Department of Agriculture. 7 U.S.C. § 5341.

[4] Many of the studies cited by Plaintiffs in the Amended Complaint were actually considered by FDA in its rulemaking relating to the labeling of products containing added sugar. *See, e.g.,* FAC, ¶ 17 n.10 (referencing Johnson R.K., Appel L.J., Brands M., et al. "Dietary Sugars Intake and Cardiovascular Health: A Scientific Statement from the American Heart Association." Circulation. 2009); NFP Final Rule, 81 Fed. Reg. 33,741, at 33973 (identifying the same study as a reference).

1  (DV) declaration for added sugars." *Id*. at 33,744.[5]

2      FDA established a DRV of 10% of total calories from added sugar, *i.e.*, 50 grams for

3  adults and children 4 and up.  *Id*. at 33,820.  In doing so, FDA <u>rejected</u> the AHA's

4  recommendation of a DRV of 5% of total calories from added sugar because it was "not

5  consistent with those of U.S. consensus reports" and that a higher DRV "is more realistic

6  considering current consumption of added sugars in the United States as well added sugars in the

7  food supply."  NFP Final Rule, 81 Fed. Reg. 33,741, at 33,849.  FDA also rejected suggestions

8  by commenters that FDA require a statement to consumers "that the DRV of 10 percent of

9  calories from added sugars is a maximum amount rather than a recommended amount." *Id*. at

10  33,829.

11      FDA noted that the new requirement for declaration of added sugar was "not based on a

12  specific relationship between added sugars and disease risk," and distinguished its rationale for

13  requiring an added sugar declaration from its rationale supporting declarations for certain other

14  nutrients, "which generally relates to the intake of a nutrient and a risk of chronic disease."  *Id*. at

15  33767.  In fact, FDA drew a distinction between foods that "<u>contain significant amounts of</u>

16  <u>beneficial nutrients as well as added sugar</u>," such as cereal, and those foods that "contain added

17  sugars . . . but few or no essential nutrients and no dietary fiber."  *Id*. at 33,818 (emphasis added).

18  Unlike those foods with added sugar but no nutrients, FDA determined that cereals such as

19  Post's can and should be included in healthy dietary patterns:

20        [D]ried fruits, yogurt, and cereal . . . contain significant amounts of beneficial
      nutrients as well as added sugars. The declaration of added sugars will enable

21        consumers to understand the relative significance of the added sugars content in a
      serving of dried fruit, yogurt, cereal, and other foods that may contribute

22        beneficial nutrients to the diet and determine how to incorporate those foods into
      a healthy dietary pattern and meet their nutrient needs within calorie limits.

23

24  *Id*.  According to FDA, "there is room for Americans to include limited amounts of added sugar

25  in their eating patterns," and "[h]ealthy eating patterns can also accommodate" nutrient-dense

26  foods such as "whole-grain breakfast cereals, as long as added sugars do not exceed 10 percent

27   

28  [5] "Added Sugars" are defined as those sugars that are "either added during the processing of
foods, or are packaged as such."  21 C.F.R. § 101.9(c)(6)(iii).

per day." *Id*. FDA also announced its intention "to educate consumers that <u>the amount of added</u> <u>sugars in a serving of a product should be considered along with other information on the label</u> <u>when constructing a healthy dietary pattern.</u>" *Id*. (emphasis added).

The NFP Final Rule became effective on July 26, 2016, but set a compliance date of July 26, 2018, to give manufacturers "time to analyze products for which there may be new mandatory nutrient declarations, make any required changes to the Nutrition Facts label (which may be coordinated with other planned label changes), review and update records of product labels, and print new labels." *Id*. at 33,967.

In the NFP Final Rule, FDA noted that "[s]everal comments suggested that we require various warning statements on the label related to added sugars to warn consumers of the negative health effects of added sugars." NFP Final Rule, 81 Fed. Reg. 33,741, at 33,829. Indeed, examples of the suggested warnings sought to link added sugar to the very same purported health risks of which Plaintiffs complain. *Compare id*. (suggesting that warning statements link added sugar to obesity, type II diabetes, and cardiovascular disease) *with* FAC, ¶ 70 (alleging that excessive sugar consumption leads to obesity, type II diabetes, and cardiovascular disease). FDA expressly rejected those suggestions, finding that the warnings suggested were "not consistent with [FDA's] review of the evidence," and that FDA does "not require warning labels or disclaimers for other nutrients on the label." NFP Final Rule, 81 Fed. Reg. 33,741, at 33,829.

## LEGAL ARGUMENT

### I.   All of Plaintiffs' Claims Are Expressly Preempted

All of Plaintiffs' claims are expressly preempted by federal law because Plaintiffs seek to impose three requirements that are not identical to those required by FDA: (1) a prohibition on any language on the Products' labels that, even if true and accurate, Plaintiffs perceive as a suggestion that the Products are healthy; (2) a disclosure of the Products' added sugar content (as opposed to a disclosure of total sugar content) at the present time or any time prior to July 26, 2018; and (3) a disclosure of the alleged dangers of added sugar. *See* FAC, ¶ 113 (alleging that the challenged labeling statements "suggest that the cereals are healthy"); *id*. at ¶ 264 ("Post is

1    under a duty to disclose" the "amount and dangers of the added sugar in its products.").

2          "Congressional intent is the ultimate touchstone of every preemption case," and with

3    regard to the federal Nutrition Labeling and Education Act ("NLEA"), "Congress set out to

4    create uniform national standards regarding the labeling of food and to prevent states from

5    adopting inconsistent requirements with respect to the labeling of nutrients." *Red v. The Kroger*

6    *Co.*, No. CV 10-01025 DMG MANX, 2010 WL 4262037, at *3 (C.D. Cal. Sept. 2, 2010).  The

7    NLEA's express preemption clause prohibits, *inter alia*, any state from "directly or indirectly

8    establish[ing] under any authority" any "requirement for the labeling of food" which is not

9    "identical" to the requirements of the federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et*

10   *seq.* (the "FDCA"), and its implementing regulations.  21 U.S.C. § 343-1(a).  The term

11   "'requirement' in the NLEA's preemption provisions must be read broadly . . . [to] include[]

12   statutes, regulations, standards, and other obligations arising from state law" (*see Nemphos v.*

13   *Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624 (4th Cir. 2015)), encompassing claims brought by

14   private plaintiffs under state consumer protection and warranty statutes.  *See Gorenstein v.*

15   *Ocean Spray Cranberries, Inc.*, No. CV 09-5925-GAF, 2009 WL 10201128, at *3 (C.D. Cal.

16   Dec. 18, 2009).  The term "identical" is interpreted in a similarly broad fashion.  *See Red*, 2010

17   WL 4262037, at *4 (finding that any requirement not identical to federal law is preempted, even

18   if it is "'equivalent to' or 'fully consistent with' federal law").

19         Plaintiffs' claim that the Products' labeling statements are misleading because the

20   Products contain added sugar in amounts Plaintiffs consider "excessive," and which allegedly

21   render the Products unhealthy, is expressly preempted.  Plaintiffs' allegation that the Products

22   are unhealthy rests on the AHA-recommended DRV for added sugar.  *See* FAC., ¶ 1 (defining

23   excessive added sugar as "any amount" above 5%).  But FDA <u>considered and rejected</u> adopting

24   that DRV for added sugar, choosing a higher DRV instead.  *See* NFP Final Rule, 81 Fed. Reg.

25   33,741, at 33,849.  And while Plaintiffs argue that the Products' labeling statements, which

26   provide additional information on other nutrients and attributes, mislead consumers, FDA has

27   determined that added sugar content should be considered by consumers <u>along with other</u>

28   <u>information on the label</u> in foods such as the Products to construct healthy dietary patterns.  *Id.* at

9

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

1  33,818.  Thus, Plaintiffs seeks to use state law claims to impose a requirement not identical to

2  those of FDA's.

3       Plaintiffs' demand that Post presently disclose the amount of added sugar in the Products

4  also imposes a requirement that is not identical to that of FDA.  FDA <u>currently</u> requires that the

5  sugar content of the Products be disclosed as follows: "[a] statement of the number of grams of

6  sugars in a serving" must be placed on the Nutrition Facts Panel, "indented and expressed to the

7  nearest gram."  21 C.F.R. § 101.9(c)(6)(ii).  Post has fully complied with this longstanding

8  requirement to disclose the total sugar content of the Products.  But Plaintiffs seek to require Post

9  to also disclose the added sugar content of the Products.  *See* FAC, ¶ 264.  This is a

10  "requirement," in that it would be an obligation arising from the CLRA, FAL, and UCL, and it

11  would not be "identical," in that a finding that Post is liable would be based on its failure to

12  disclose added sugar, which FDA does not currently require it to disclose.  As such, Plaintiffs'

13  claims are expressly preempted.  *See Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1072–73

14  (N.D. Cal. 2016) (plaintiff's claims were preempted because she sought to impose an immediate

15  ban when FDA chose a compliance period of three years); *Hawkins v. Kellogg Co.*, No. 16-CV-

16  0147-JAH (JMA), 2016 WL 7210381, at *9 (S.D. Cal. Dec. 13, 2016) (same); *see also Viggiano*

17  *v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 890 (C.D. Cal. 2013) ("As FDA regulations

18  explicitly authorized [defendant] to label the product as it did, any state law requiring

19  [defendant] to use additional or different labeling would not be at identical to FDA regulations

20  and would be preempted.").

21       Plaintiffs' demand that Post disclose the alleged dangers of added sugar similarly

22  imposes a requirement that is not identical to federal law.  FDA does not require that products

23  containing added sugar have such warnings, and Plaintiffs' attempt to require them is a

24  preempted "not identical" requirement.  *See Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 961–

25  62 (N.D. Ill. 2010), *aff'd as modified*, 662 F.3d 423 (7th Cir. 2011) (dismissing as preempted

26  claims which would have required a disclosure "non-identical to and materially different from

27  the current NLEA requirements"); *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL

28  3777627, at *4 (N.D. Ill. June 16, 2015) (finding plaintiffs' claims preempted because they

10

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-cv-04958-WHO

1  "would require defendants to label their products in a particular way," but "[t]he NLEA does not

2  include such a labelling requirement").

3       Express preemption of Plaintiffs' claims is particularly appropriate in this case because

4  FDA considered, and rejected, both the AHA-recommended DRV and the disclosure of the

5  alleged dangers of added sugar that Plaintiffs demand.  *See* NFP Final Rule, 81 Fed. Reg. 33,741,

6  at 33,829; *see also Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *4

7  ("Further supporting preemption . . . is the fact that the FDA specifically considered and rejected

8  a proposal to enforce stricter requirements for labeling products" along the lines of what

9  plaintiffs sought.); *Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d

10  750, 758 (N.D. Ill. 2014) (finding that plaintiffs' claims, which sought a disclosure requirement,

11  were preempted where "[d]uring the rulemaking process, the FDA considered but rejected [such]

12  disclosure requirement").  This entire action should accordingly be dismissed, with prejudice.

13      II.    **All of Plaintiffs' Claims Are Also Preempted under the Doctrine of Conflict**

14          **Preemption**

15       Plaintiffs' claims should alternatively be dismissed with prejudice as preempted under the

16  doctrine of conflict preemption.  "Conflict preemption occurs . . . where the state law stands as

17  an obstacle to the accomplishment and execution of the full purposes and objectives of

18  Congress."  *Brazil v. Office of Pers. Mgmt.*, 35 F. Supp. 3d 1101, 1111 (N.D. Cal. 2014) (Orrick,

19  J.); *see also Backus*, 167 F. Supp. 3d at 1072 (same).  Prohibiting language on the Products'

20  labels that is completely unrelated to the Products' added sugar content, requiring disclosure of

21  the Products' added sugar levels at the present time, and mandating a warning of the alleged

22  dangers of the Products would conflict with federal objectives.

23       As an initial matter, barring Post from making the challenged labeling statements would

24  stand as an obstacle to executing the purposes and objectives of the federal rulemaking on added

25  sugar.  FDA has determined that cereals such as the Products can be incorporated into healthy

26  dietary patterns, and that the amount of added sugars in a product "should be considered along

27  with other information on the label when constructing a healthy dietary pattern."  NFP Final

28  Rule, 81 Fed. Reg. 33,741, at 33,818.  The relief Plaintiffs seek in this case, however, would

1    prevent Post from including information (*e.g.,* nutrient and ingredient content) which FDA

2    believes should be provided.

3    　　　　Further supporting a finding of conflict preemption is Plaintiffs' contention (*see supra* at

4    p. 9–11) that the Products are unhealthy because the amount of added sugar in the Products

5    allegedly exceeds the AHA-recommendation.  *Compare* FAC, ¶ 1 (defining excessive added

6    sugar as "any amount above approximately 5% of daily caloric intake") *with* NFP Final Rule, 81

7    Fed. Reg. 33,741, at 33849 ("We disagree that the DRV for added sugars should be lower than

8    10 percent of calories or that there is adequate evidence at this time to set a DRV for added

9    sugars of less than 5 percent of calories.").  Because Plaintiffs' claims condition a finding of

10   liability against Post on a DRV for added sugar that FDA has <u>refused to adopt</u>, their claims are

11   an obstacle to federal objectives and thereby preempted.

12   　　　　Requiring disclosure of added sugar content now would also conflict with federal

13   objectives.  FDA has determined that manufacturers such as Post will be required to disclose

14   added sugar content on the Nutrition Facts Panel beginning in July of 2018.  *See* 21 C.F.R. §

15   101.9(c)(6)(iii).  FDA decided on that date because "industry might need some time to analyze

16   products for which there may be new mandatory nutrient declarations, make any required

17   changes to the Nutrition Facts label . . . , review and update records of product labels, and print

18   new labels."  NFP Final Rule, 81 Fed. Reg. 33,741, at 33,967.  Plaintiffs effectively seek to

19   impose a different requirement, namely, that Post disclose the added sugar content of the

20   Products now.  *See* FAC, ¶ 264.  But "[w]hen Congress charges an agency with balancing

21   competing objectives, it intends the agency to use its reasoned judgment to weigh the relevant

22   considerations and determine how best to prioritize between these objectives."  *Farina v. Nokia*

23   *Inc.*, 625 F.3d 97, 123 (3d Cir. 2010); *see also Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th

24   433, 459 (2015) (plaintiff's labeling challenge was preempted because it seeks to "compel

25   compliance with a federal requirement before the federal agency requires").[6]

26   

27   [6] To extent that Plaintiffs' claims relating to Waffle Crisp or any other Product are based on the
     alleged presence of artificial trans fat, those claims should  also be dismissed on the grounds of

28

1    Finally, FDA has considered and rejected the requirement that manufacturers disclose

2  the alleged dangers of added sugars that Plaintiffs seek to impose through their state law claims.

3  *See supra*, p. 8.  Requiring that disclosure would conflict with FDA's objectives; Plaintiffs' state

4  law claims, which seek to require such disclosure, are preempted under the doctrine of conflict

5  preemption.  *See Seufert v. Merck Sharp & Dohme Corp.*, 2016 WL 3369512, --- F. Supp. 3d, ---

6  , at *6 (S.D. Cal. May 11, 2016) (finding plaintiffs' claims preempted under the doctrine of

7  conflict preemption because "[t]he warning sought by Plaintiffs . . . is the same risk the FDA has

8  considered" and found insufficient to require a warning).

9    **III.**   **Alternatively, Plaintiffs' Claims Relating to the "Healthy," "Good Source,"**

10      **"Fiber," "Whole Grain," "Multi-Grain," "No High Fructose Corn Syrup,"**

11      **and "Antioxidant" Labeling Statements Are Expressly Preempted**

12    Plaintiffs' challenges as to labeling statements that are nutrient content claims are

13  expressly preempted, and should be dismissed with prejudice.  There are two types of nutrient

14  content claims: (1) express; and (2) implied.  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d

15  1111, 1117 (N.D. Cal. 2010).  An express nutrient content claim is "a direct statement about the

16  level (or range) of a nutrient in a food," and an implied nutrient content claim is one that

17  "describes food or an ingredient in a manner that suggests that a nutrient is absent or present in a

18  certain amount, (e.g., 'high in oat bran')" or that "[s]uggests that the food, because of its nutrient

19  content, may be useful in maintaining healthy dietary practices and is made in association with

20  an explicit claim or statement about a nutrient . . . ." 21 C.F.R. § 101.13(b).  State law

21  challenges to nutrient content claims are expressly preempted.  *See Carrea v. Dreyer's Grand Ice*

22  *Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012).

23    Plaintiffs' challenges to the implied nutrient content claim "healthy" are expressly

24  preempted, because FDA regulations define the use of that term and "related terms (e.g.,

25

26  conflict preemption.  FDA has set a compliance date of 2018 for the removal of PHOs from
   foods such as the Products, and Plaintiffs' effort to enforce an earlier compliance date is

27  preempted under the doctrine of conflict preemption.  *See* Final Determination regarding
   Partially Hydrogenated Oils, 80 Fed. Reg. 34,650, 34,651 (June 17, 2015); *Backus*, 167 F. Supp.

28  3d at 1074 (finding claims relating to artificial trans fat preempted).

13

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' 'healthiest," "healthily,' and 'healthiness')" as implied nutrient content claims.  21 C.F.R. § 101.65(d)(2); *see also Yumul v. Smart Balance, Inc.*, No. CV 10-00927 MMM, 2011 WL 1045555, at *9 (C.D. Cal. Mar. 14, 2011) ("Because [plaintiff] seeks to enjoin [defendant] from labeling its product 'healthy'—something the FDA regulations expressly permit [it] to do—a liability finding in this case would impose a requirement 'that is not identical' to federal law requirements.").  For example, the statement "each serving helps start the day in a healthy way" on Honeycomb (FAC, ¶ 216(c); Ohrt Decl., Ex. 43) is an implied nutrient content claim.  The Court should dismiss Plaintiffs' challenges to that statement and other similar statements with prejudice.  *See* Garganta Declaration, Ex. 6 at p. 75.

Plaintiffs' challenges to "high" and "good source" nutrient content claims are expressly preempted, because FDA regulations define use of those terms in food labeling as a nutrient content claim.  21 C.F.R. § 101.54(b)-(c).  For example, Plaintiffs challenge the "good source of fiber" statement on Great Grains Blueberry Morning (FAC, ¶ 132(f); Ohrt Decl., Ex. 2), but that claim is a permitted "good source" nutrient content claim under section 101.54(c).  Thus, the Court should dismiss Plaintiffs' challenge to that statement and other similar statements with prejudice.  *See* Garganta Declaration, Ex. 6 at pp. 2, 6, 9, 12, 16, 18, 21-24, 74.

Plaintiffs' challenges to the nutrient content claim "fiber" are expressly preempted, because FDA regulations define use of that term on food labeling as a nutrient content claim.  *See* 21 C.F.R. § 101.54(d) (titled "'Fiber' claims").  For example, "Fiber 8g per serving" on Raisin Bran (FAC, ¶ 206(e); Ohrt Decl., Ex. 39) is a "fiber" nutrient content claim.  The Court should dismiss Plaintiffs' challenge to that statement and other similar statements with prejudice.  *See* Garganta Declaration, Ex. 6 at pp. 2-14, 16-24, 48, 50, 53, 59, 63, 65, 67, 69.

Plaintiffs' challenges to the implied nutrient content claims "whole grain," "multi-grain," and the Whole Grain Council stamp are expressly preempted, because those terms describe the Products in a manner that suggests that whole grains are present in a certain amount.  *See* 21 C.F.R. 101.65(c) ("high in oat bran" is an implied nutrient content claim); *Chacanana*, 752 F. Supp. 2d at 1121 ("made with whole grain oats" is an implied nutrient content claim).

1  Moreover, FDA has stated the term "whole wheat" can constitute an implied nutrient content

2  claim.  Food Labeling Questions and Answers, 1994 WL 16188668, at *37.  In this case, the

3  challenged labeling claims "whole grain," "multi-grain," and the Whole Grain Council Stamp,[7]

4  among others, are implied nutrient content claims in the context of the other statements on the

5  labels.  For example, on Honey Bunches of Oats – with Almonds, the Whole Grain Council

6  stamp that Plaintiffs challenge states that the Product contains "10g or more per serving" and

7  "eat 48g or more of whole grains daily" (FAC, ¶ 165; Ohrt Decl., Ex. 18), implying that whole

8  grains are present above a certain amount.  The Court should dismiss Plaintiffs' challenges to

9  this statement and other similar statements with prejudice.  See Garganta Declaration, Ex. 6 at

10  pp. 1, 3-21, 23-31, 33, 35, 37-55, 57-58, 60, 62-63, 67-70, 75.

11      Plaintiffs' challenges to the implied nutrient content claim "no high fructose corn syrup"

12  are expressly preempted, because it describes the ingredient in a manner that suggests that it is

13  absent from the Products.  See Chacanaca, 752 F. Supp. 2d at 1127; see also 21 C.F.R. §

14  101.65(c).  Thus, the Court should dismiss Plaintiffs' challenge to "no high fructose corn syrup"

15  on Post's Bran Flakes (Compl., ¶ 207; Orht Decl., Ex. 40) and their challenges to other similar

16  statements with prejudice.  See Garganta Declaration, Ex. 6 at pp. 26, 29, 31, 34, 36, 47, 49, 51,

17  52, 58, 63-64, 66-67, 68, 72-73, 76.

18      Plaintiffs' challenges to "antioxidant" nutrient content claims are expressly preempted

19  because FDA regulations permit the use of those claims.  See 21 C.F.R. § 101.54(g).  Thus, the

20  Court should dismiss Plaintiffs' challenge to the statement "an excellent source of antioxidant

21  vitamins C and E" on Great Grains Cranberry Almond Crunch (FAC, ¶ 319(c); Ohrt Decl., Ex. 5)

22  and other similar statements with prejudice.  See Garganta Declaration, Ex. 6 at pp. 6-7, 63.

23      Post is not required to disclose the alleged presence of sugar, added or otherwise, in order

24  to make express or implied nutrient content claims on the Products' labels.  Under 21 C.F.R. §

25  101.13, if a nutrient content claim is made about a food and that food contains certain levels of

26

27  _____

[7] FDA has stated that "front-of-package symbols can at times constitute nutrient content claims."
28  Guidance for Industry: Dear Manufacturer Letter regarding Front-of-Package Symbols, 2008
   WL 6654484, at *1.

1   fat, saturated fat, cholesterol, or sodium, "then that food must bear a statement disclosing that the

2   nutrient exceeding the specified level." *Id*. at (h)(1).  Neither that regulation, nor any other,

3   requires a sugar-related disclosure in order for a food to bear a nutrient content claim.  *See*

4   *Ackerman*, 2010 WL 2925955, at *3 (sugar disclosure not required); *see also Chacanaca*, 752 F.

5   Supp. 2d at 1122 (trans fats disclosure not required).

6           **IV.    As a Matter of Law, the Products Do Not Contain Any Labeling Claims that**

7                    **Violate Federal or State Law**

8           Plaintiffs allege that some of the Products contain improper labeling claims which violate

9   FDA regulations governing health claims and nutrient content claims.  FAC, ¶¶ 297-308.

10  Plaintiffs are wrong, and their challenges to these claims should be dismissed.

11          To begin with, these challenges should be dismissed because Plaintiffs have failed to

12  allege that these purported regulatory violations caused them any harm.  A plaintiff bringing

13  California consumer protection claims must "establish causation for purposes of Article III

14  standing" (*Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *8

15  (N.D. Cal. Sept. 23, 2013)), and courts in this district routinely dismiss such claims when based

16  on an "illegal product" theory.  *See, e.g., id.* at *8; *Swearingen v. Amazon Pres. Partners, Inc.*,

17  No. 13-CV-04402-WHO, 2014 WL 1100944, at *2 (N.D. Cal. Mar. 18, 2014); *Thomas v. Costco*

18  *Wholsale Corp.*, No. 5:12-CV-02908-EJD, 2014 WL 1323192, at *8 (N.D. Cal. Mar. 31, 2014);

19  *Pratt v. Whole Food Mkt. Cal., Inc.*, No. 5:12-CV-05652-EJD, 2015 WL 5770799, at *5 (N.D.

20  Cal. Sept. 30, 2015).  In this case, Plaintiffs merely point to purported technical violations of

21  FDA regulations (FAC, ¶¶ 297-308), but do not allege that they suffered any injury as a result.

22          As to specific purported violations, Plaintiffs' challenges to health claims relating to heart

23  disease and diabetes (*see* FAC, ¶¶ 299(c-n)) fail because drawing a relationship between whole

24  grains and the risk of heart disease is a permissible health claim (*see* 21 C.F.R. § 101.81), and

25  drawing a relationship between whole grains and the risk of diabetes is permitted by FDA as

26  what is known as a "permissible qualified health claim."  *See* Post's Garganta Decl., Ex. 7

27  (FDA's Response Letter to ConAgra's Qualified Health Claim Petition); *see also Zakaria v.*

28  *Gerber Prod. Co.*, No. LA CV15-00200 JAK EX, 2015 WL 3827654, at *2 (C.D. Cal. June 18,

2015).[8]  Moreover, Plaintiffs' specific allegations of purported noncompliance with FDA

regulations (*see* FAC, ¶¶ 303-305) are without merit because each of these challenged health

claims is a compliant "approved health claim" permitted under the Food and Drug

Administration Modernization Act of 1997, Public Law 105-115 (S 830) ("FDAMA"), in the

section codified at 21 U.S.C. § 343(r)(2)(G).  *See id.* (providing that a health claim may be made

"for which the Secretary has not promulgated a regulation" if that claim is based on an

"authoritative statement" of "a scientific body of the U.S. government with responsibility for

public health protection or nutrition research"); *see also* Garganta Decl., Ex. 8 (United States

Food and Drug Administration, Guidance for Industry: A Food Labeling Guide (11. Appendix C:

Health Claims), Labeling & Nutrition (August 20, 2015) (listing health claims authorized by an

authoritative statement under FDAMA).  And while FDA regulations prohibit health claims in

foods with certain "disqualifying nutrients" at certain levels (*i.e.*, total fat, saturated fat,

cholesterol, or sodium), 21 C.F.R. § 101.14(a)(4), neither added sugar nor artificial trans fat are

"disqualifying nutrients."  *See Chacanaca*, 752 F. Supp. 2d at 1123; *Ackerman v. Coca-Cola

Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *8 (E.D.N.Y. July 21, 2010).[9]

Plaintiffs also argue that "important for weight management," "help with weight

management," "help you burn more calories," and "enhance your metabolism," which allegedly

were made on three Products, are impermissible health claims because "metabolism and weight

are 'disease or health-related conditions.'"  FAC, ¶¶ 299(a-b), (o), 300-302.  But health claims

"characterize[] the relationship of any substance to a disease or health-related condition," 21

---

[8] In addition, the depiction of whole grains and a heart in two adjacent circles on a number of Products (*see, e.g.*, Ohrt Decl., Ex. 16; *see also* Garganta Decl., Ex. 6 at 26, 30, 33-34, 40) is a permitted health claim because it is used in conjunction with a valid reference statement, and thus Plaintiffs' challenges to it are preempted.  *See* 21 C.F.R. § 101.75(c) (permitting health claims related to the risk of coronary heart disease); *see also* 21 C.F.R. § 101.14(d)(2)(iv) (providing that for health claims, "the principal display panel of the label or labeling may bear the reference statement" directing the consumer to another location on the label for additional information).

[9] In fact, FDA has expressly rejected efforts to define "added sugars" as a disqualifying nutrient. *See* Food Labeling; General Requirements for Health Claims for Food, 58 Fed. Reg. 2,478, at 2,491 (Jan. 6, 1993) ("[I]t would not be appropriate to limit health claims on foods on the basis of added sugars.").

C.F.R. § 101.14, and none of these statements does that because none refers to any disease or

health-related condition within the meaning of the regulation. *See* 21 C.F.R. § 101.14(a)(5)

("Disease or health-related condition means damage to an organ, part, structure, or system of the

body such that it does not function properly (e.g., cardiovascular disease), or a state of health

leading to such dysfunctioning (e.g., hypertension)."); *see also Whitaker v. Thompson*, 248 F.

Supp. 2d 1, 3 (D.D.C. 2002) ("'Health claims' are statements that describe a relationship

between a nutrient, such as calcium, and a disease or health-related condition, such as

osteoporosis.").

Plaintiffs also argue that, under 21 C.F.R. § 101.13(e), the phrase "no high fructose corn

syrup" can only be used when a Product has been "specially processed, altered, formulated, or

reformulated so as to lower the amount of the nutrient in the food, remove the nutrient from the

food, or not include the nutrient in the food."  FAC ¶ 306-307.  That regulation only applies to

the terms "free" and "low," however.  21 C.F.R. § 101.13(e)(1); *see also N.Y. State Rest. Ass'n v.

N.Y. City Bd. of Health*, 556 F.3d 114, 120 (2d Cir. 2009) ("FDA Regulations define nutrient

content claims for a range of <u>specific</u> descriptive terms such as 'free,' 'low' 'good source,'

'antioxidant,' and 'high potency.'") (emphasis added).  Since the challenged statements contain

neither "free" nor "low," they do not violate the regulation.

Finally, Plaintiffs claim that some of the Products violate 21 C.F.R. § 101.13(i)(3)

because "the nutrient content claim 'Xg PROTEIN' is made prominently on the cereal's

packaging," but the "'Xg' includes a contribution from milk."  FAC, ¶ 308. [10]  However,

Plaintiffs acknowledge that the Products contain "a disclaimer to explain that only some of the

protein comes from the actual cereal product" (*id.* at ¶ 250), and FDA permits and even

"encourage[s] manufacturers to voluntarily provide nutrient information on their products on an

---

[10] While Plaintiffs do not specifically challenge "Xg PROTEIN" as misleading (*see* Plaintiffs' Appendix), to the extent they did, any such challenge would be preempted because that statement is an implied nutrient content claim. *See Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *6 (N.D. Ill. Mar. 15, 2016) ("[T]he statement '26 grams of high-quality protein' appearing on the front label of the Product is a nutrient content claim.").

18

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

as prepared basis."  *See* Food Labeling; Serving Sizes, 58 Fed. Reg. 2,229, 2,284 (Jan. 6, 1993)

(stating that "FDA recognizes that it would be helpful to make comparisons of foods in their

prepared state").  Because Post is permitted and even encouraged to provide nutrient information

(*i.e.,* protein per serving) on an as-prepared basis (*i.e.,* with milk), the Products do not violate 21

C.F.R. § 101.13(i)(3).[11]

**V.      Plaintiffs Fail to State Any Claim for Relief under the CLRA, UCL, or FAL**

        A.      No Reasonable Consumer Would Be Misled by Post's Labeling

                Statements or Its Purported Failure to Disclose the Amount of, and

                Alleged Dangers of, Added Sugar

Plaintiffs' California consumer protection claims should be dismissed because no

reasonable consumer would be misled by the challenged labeling statements, or by Post's

purported failure to disclose the Products' added sugar content or the alleged dangers of added

sugar, because Plaintiffs have not plausibly alleged that the Products are unhealthy.

The scientific sources Plaintiffs cite, including the AHA 2009 Scientific Statement,

recognize that the nutrients in the Products are beneficial and even essential to health (*see supra*,

p. 5), and they rely on studies of ingredients which they admit are not even present in the

Products.  *See* FAC, ¶ 15 n.5 (Garganta Decl., Ex. 9) (finding that the "[c]onsumption of high-

fructose corn syrup in beverages may play a role in the epidemic of obesity"); *id*. at ¶ 253

(alleging that high fructose corn syrup is "absent" from the Products).  Where, as here, "[t]he

scientific materials presented by plaintiffs" do not undercut defendant's labeling statements,

plaintiffs "fail[] to raise a plausible claim that [defendant's] representations are false, deceptive,

or misleading."  *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 138 (E.D.N.Y. 2015).[12]

[11] Plaintiffs' allegation that certain unidentified Products are labeled in violation of 21 C.F.R. § 101.13(f) because certain unspecified nutrient content claims are too large and/or "unduly prominent" (FAC, ¶ 309) is too "vague and conclusory" to state a claim for relief.  *See Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 164 (S.D.N.Y. 2011) (dismissing "an action for violating FDA regulations [because] plaintiffs have failed to set forth facts to plausibly allege how defendants violated these provisions").

[12] Moreover, according to Plaintiffs, added sugar is fructose, and fructose is akin to a "poison," except that fructose in fruit is "not problematic" in part because "[f]ruit also comes packaged

19

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

1    In addition, any argument that the labeling statements are misleading because the

2  Products are unhealthy is undercut by (a) FDA's determination that "cereal, and other foods that

3  contain significant amounts of beneficial nutrients as well as added sugar"  can be a part of

4  "healthful dietary patterns," and (b) FDA's rejection of the AHA's recommendation of a DRV of

5  5% of total calories from added sugar, a recommendation on which Plaintiffs premise their

6  claims.  NFP Final Rule, 81 Fed. Reg. 33,741, at 33,818, 33,849.  FDA's determination that

7  neither added sugar itself nor the amount of added sugar in the Products[13] is dangerous is

8  relevant to whether a reasonable consumer could be misled by the Products' labels.  *See In re:*

9  *Coca-Cola Prod. Mktg. & Sales Practices Litig. (No. II)*, No. 14MD02555JSWMEJ, 2016 WL

10  6245899, at *3 (N.D. Cal. Oct. 26, 2016) (collecting cases).

11    Because neither the FAC, nor the studies it cites, nor FDA, have found that the Products

12  or the added sugar in them is unhealthy, Plaintiffs' claim for relief ultimately rests on their

13  theory that the <u>overconsumption</u> of added sugar is harmful to consumers' health.  *See* FAC, ¶ 1.

14  But Post is under no duty to warn of "the obvious or 'widely known' risks of consuming a

15  particular food."  *Mills v. Giant of Md., LLC*, 508 F.3d 11, 12 (D.C. Cir. 2007); *see also*

16  Restatement (Second) of Torts § 402A (1965) ("[A] seller is not required to warn with respect to

17  products, or ingredients in them, which are only dangerous, or potentially so, <u>when consumed in</u>

18  <u>excessive quantity</u>, or over a long period of time, when the danger, or potentiality of danger, is

19  generally known and recognized.") (emphasis added); *S.F. v. Archer-Daniels-Midland Co.*, No.

20  13–CV–634S, 2014 WL 1600414, at *7 (W.D.N.Y. Apr. 21, 2014) (dismissing plaintiffs' claim

21  because the studies they cite conclude that "it is the <u>over-consumption</u> of fructose that may lead

22  to increased obesity and other adverse health effects") (emphasis added).  Here, obesity and

23  ───────────────

24  with nutrients, like vitamins, that are beneficial for health."  FAC, ¶ 13-1, 25, 28.  But the FAC
   makes clear that the Products also contain high levels of fiber and other nutrients like vitamins

25  that are "beneficial to health."  *See* FAC, ¶ 241 (noting the Products' whole grain and fiber
   content); *see also Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014)

26  ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim.").

27  [13] Not one of the 30 Products for which the sugar content is alleged in the FAC (*id.* at ¶¶ 223-24)
   contains a total sugar content (much less an added sugar content) of greater than 16 grams per

28  serving, well below Plaintiffs' alleged "safe" threshold for daily added sugar consumption of 38
   grams per day for men and 25 grams per day for women.  FAC, ¶ 26.

1    diabetes are purportedly among the "known dangers" of "long-term consumption of excess

2    sugar" (FAC, ¶ 27, p. 114:3-4), and Post cannot mislead consumers as to that which is widely-

3    known. *See Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 532 (S.D.N.Y. 2003) (the

4    dangers of overconsumption of sugar are well-known and thus "liability based on over-

5    consumption is doomed").

                    B.    No Reasonable Consumer Could Be Misled Regarding the Products'

                            Sugar Content Because that Content is Disclosed

8    Plaintiffs' consumer protection claims should also be dismissed because no reasonable

9    consumer would be misled about the Products' contents. Where "[t]he products at issue do not

10   display any affirmative misrepresentations," a reasonable consumer can be expected to look at

11   the "the back panel of the products, which listed all ingredients in order of predominance, as

12   required by the FDA." *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015),

13   *appeal dismissed* (Mar. 14, 2016); *see also Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148

14   WHA, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir.

15   2015) (no reasonable consumer could be misled by defendant's statements about fruit content

16   where defendant's products "contain the fruits depicted and described on the front of the

17   packaging"); *Savalli v. Gerber Prod. Co.*, No. 15-61554-CIV, 2016 WL 5390223, at *1 (S.D.

18   Fla. Sept. 20, 2016) ("[F]ederal law places certain requirements on the contents of labels . . . . In

19   turn, to understand what they are purchasing, reasonable consumers should . . . read the label.").

20   There are no affirmative misrepresentations on the Products' labels. Plaintiffs merely

21   allege that Post intentionally "de-emphasizes, hides, obscures, and otherwise omits material

22   information regarding the products'. . . [alleged] high sugar content." FAC, ¶ 243. But a

23   reasonable consumer can be expected to look at the Products' labels to determine the ingredients

24   and those ingredients' prominence in the Products. Each of the Products not only discloses the

25   sugar content in the exact location where FDA requires it to be disclosed (*i.e.*, the Nutrition Facts

26   Panel), *see* Ohrt Decl., Exs. 1-44, but also goes further and contains a prominently-placed

27   banner, often on the front panel, which also discloses the sugar content. *See, e.g.,* Great Grains

28   Blueberry Morning (*id*. at ¶ 130; Ohrt Decl., Ex. 1); Selects Great Grains Crunchy Pecans (*id*. at

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

¶ 148; Ex. 11); Waffle Crisp (*id.* at ¶ 217; Ex. 44); *see also* Ohrt Decl., Exs. 1-2, 12, 19-20, 24, 35-36, 38, 39-40, 41, 43. Many of the Products also have statements that refer to the presence of sugar (*see, e.g.,* FAC, ¶ 213 (Ohrt Decl., Ex. 42) (a bear wearing a shirt with the words "SUGAR BEAR"), or names which do the same. *Id.* at ¶ 215 (Ohrt Decl., Ex. 43) ("Honeycomb"); *see also id.* at ¶¶ 160-198 (Ohrt Decl., Exs. 18-35) ("Honey Bunches of Oats" Products).

In *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-CV-00296-WHO, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013), this Court dismissed plaintiffs' UCL, CLRA, and FAL claims because the product's "sugar content is listed right next to the ingredients list," and if "a reasonable consumer was concerned about sugar content, he or she can see how much sugar is in a . . . product next to the ingredient list." *Id.* at *8. Other cases confirm that where there is an explicit disclosure which would dispel any consumer confusion, California consumer protection claims cannot stand. *See, e.g., Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2013 WL 5513711, at *6 (N.D. Cal. Oct. 4, 2013) (reasonable consumer could not be deceived into believing that soy milk was derived from cows where there was an explicit disclaimer that the product was dairy free); *Simpson v. Kroger Corp.*, 219 Cal. App. 4th 1352, 1371–72 (2013) (reasonable consumer could not believe that products contained only butter because the top and side labels disclosed "that the products contain both butter and canola or olive oil").

C.   Many of the Challenged Statements Are Non-Actionable Puffery

Many of the labeling statements Plaintiffs challenge are non-actionable puffery. The statement "a touch of honey" and other similar statements (*see* Garganta Decl., Ex. 6 at pp. 27-28, 30, 32, 35-36, 40, 42, 44, 56) are puffery. *See Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014) (finding that "kiss of honey" and a "tad of honey" were "more blatant forms of puffery"). Similarly, the "goodness" statements and other similar statements (*see* Garganta Decl., Ex. 6 at pp. 47, 49, 51-52, 56, 58-60, 64-66, 68) are puffery. *See Weiss v. Kroger Co.*, No. CV 14-3780-R, 2014 WL 5114608, at *3 (C.D. Cal. Aug. 8, 2014) ("a whole lot of goodness contained in each and every tiny sunflower seed" was puffery); *P.E.T.A. v. Whole Foods Mkt. Cal., Inc.*, No. 15-CV-04301 NC, 2016 WL 1642577, at *3 (N.D. Cal. Apr. 26, 2016) ("Great-Tasting Meat From Healthy Animals," and "Raised Right Tastes Right" were

1    puffery).  So are Plaintiffs' challenges to "simple" statements and other statements (*see* Garganta

2    Decl., Ex. 6 at pp. 2, 5-6, 9, 12, 16, 18, 20, 23, 48, 50) that are "vague, [and] highly subjective."

3    *See Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-04000 SC, 2013 WL 1739451, at

4    *10 (N.D. Cal. Apr. 22, 2013) ("simple" amounts to puffery); *Blue Buffalo Co. v. Nestle Purina*

5    *Petcare Co.*, No. 4:15 CV 384 RWS, 2015 WL 3645262, at *10 (E.D. Mo. June 10, 2015)

6    ("Balanced Nutrition" is mere puffery").

7    **VI.    Plaintiffs' Breach of Warranty Claims Fail as a Matter of Law Because**

8    **There Has Been No Breach**

9    A.    Post Did Not Breach Any Purported Express Warranty

10    Plaintiffs' express warranty claims should be dismissed because Plaintiffs have not

11    plausibly alleged that any purported warranty has been breached.  "To plead a cause of action for

12    breach of express warranty, a plaintiff must allege the exact terms of the warranty . . . and a

13    breach of that warranty."  *See Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1106 (N.D. Cal.

14    2012) (dismissing breach of warranty claims where plaintiffs alleged that the products were

15    "promoted, marketed, advertised, packaged, and labeled as healthful and having particular health

16    characteristics").  A statement which is puffery "cannot support liability under a claim for breach

17    of warranty."  *Long v. Graco Children's Prod. Inc.*, No. 13-CV-01257-WHO, 2013 WL

18    4655763, at *10 (N.D. Cal. Aug. 26, 2013); *see also Viggiano v. Hansen Nat. Corp.*, 944 F.

19    Supp. 2d 877, 894 (C.D. Cal. 2013) (affirmations of fact or promises which are "mere puffery"

20    because they have "no concrete, discernable meaning . . . cannot give rise to a breach of warranty

21    claim").

22    First, many of the 90 statements which Plaintiffs identify as express warranties at

23    paragraph 412 of the FAC are mere puffery.  For example, "a smart, filling choice" (FAC, ¶ 412)

24    does not have a "concrete, discernable meaning," and thus cannot give rise to an express

25    warranty claim.  *See Viggiano*, 944 F. Supp. 2d at 894.  In addition, a number of other purported

26    affirmations of fact or promises (*see e.g.*, FAC, ¶ 412 ("fiber packed")) are nutrient content

27    claims or health claims and as such are preempted.  *See supra*, section III.

28    Moreover, to the extent any of the statements Plaintiffs identify actually constitute

23

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

1    express warranties, Plaintiffs fail to plausibly allege that any of those warranties have been

2    breached.  Plaintiffs' theory of breach is that the 90 different purported express warranties were

3    breached because the Products are "not healthy, and not heart healthy" (*id.* at ¶ 413) due the

4    presence of alleged "excessive added sugar" (*id.* at ¶¶ 1-3).  But none of the statements alleged to

5    be warranties mention sugar or added sugar, much less the level of either in the Products.

6    Instead, these statements merely describe various characteristics of the Products in ways which

7    Plaintiffs do not allege are false.  To the extent the statements are express warranties, they

8    promise only what they expressly state, not whatever Plaintiffs' subjectively believe them to

9    mean.  *See Cruz v. Anheuser-Busch, LLC*, No. CV 14-09670 AB ASX, 2015 WL 3561536, at *9

10   (C.D. Cal. June 3, 2015) (dismissing express warranty claim where "[t]he depictions on the . . .

11   Product labels make no explicit guarantee about the product being low in calories or low in

12   carbohydrates" and yet Plaintiffs "blindly surmise that a promise [was made] that the Products

13   would contain an unknown amount of calories and carbohydrates based on the term 'light'").

14          For example, Plaintiffs assert that "scoops of wholesome Almonds" is an express

15   warranty (*id.* at ¶ 412) and that Post breached that warranty (*id.* at ¶ 413).  But nowhere do

16   Plaintiffs allege that the Products do not contain scoops of almonds, or that the almonds in the

17   Products are not wholesome.  As such, they have failed to allege that any purported express

18   warranty Post made to them was breached.  *See McKinniss v. Sunny Delight Beverages Co.*, No.

19   CV0702034-RGKJCX, 2007 WL 4766525, at *6 (C.D. Cal. Sept. 4, 2007) (finding no breach of

20   express warranty where "Defendant's products do contain concentrated fruit juice from each of

21   the fruits depicted on the labels in quantities that are disclosed on the back of those label"); *see*

22   *also Shein v. Canon U.S.A., Inc.*, No. CV 08-07323 CAS EX, 2009 WL 1774287, at *3 (C.D.

23   Cal. June 22, 2009) (dismissing express warranty claim because "plaintiffs do not allege that the

24   ink cartridges did not contain the volume of ink represented on the packaging" and "because the

25   packaging accurately states the amount of ink in the cartridges, there is no false statement to

26   support a claim of breach of express warranty").

27          B.     Post Did Not Breach Any Implied Warranty of Merchantability

28          The Court should also dismiss Plaintiffs' implied warranty claim because there has been

24

no breach.  The implied warranty of merchantability "provides the consumer with only a

<u>minimum</u> level of protection against product defects; it does not guarantee a perfect product."

*Red v. Gen. Mills, Inc.*, No. 215CV02232ODWJPR, 2015 WL 9484398, at *6 (C.D. Cal. Dec.

29, 2015) (emphasis in original) (finding that the alleged inclusion of artificial trans fats "does

not render the product totally unfit for the basic purpose of consumption"); *Backus v. Gen. Mills,*

*Inc.*, 122 F. Supp. 3d 909, 932 (N.D. Cal. 2015) (dismissing implied warranty claim because

plaintiff had "not plausibly alleged that the [products] were unfit for even the most basic degree

of ordinary use" despite the fact that his "Complaint is full of citations to scientific studies

discussing the dangers of increased ingestion of" artificial trans fats); *Viggiano*, 944 F. Supp. 2d

at 896 ("[Plaintiff] does not allege any facts suggesting that the soda is not merchantable or fit

for use . . . ; he has not, for example, alleged that the beverage was not drinkable, that it was

contaminated or contained foreign objects, etc.").

      As an initial matter, Plaintiffs have not alleged that the Products are unfit (much less

"totally unfit") for their basic purpose or ordinary use as a cereal.  Moreover, Plaintiffs'

allegation that Post is liable because the Products "did not conform to promises and affirmations

made" on the Products' labels (FAC, ¶ 421) is in the language of express, not implied, warranty.

Because Plaintiffs do and cannot allege that the Products are unfit for their basic purpose or

ordinary use, their breach of implied warranty claim should be dismissed.

      C.    <u>Plaintiffs' Warranty Claims Should Be Dismissed Because the Products</u>

                  <u>Disclose the Presence and Amount of Sugar</u>

      Plaintiffs' express and implied warranty claims should also be dismissed because the

Products' labels disclose the sugar content of the Products.  Under the California Commercial

Code, "[w]ords . . . relevant to the creation of an express warranty and words . . . tending to

negate or limit warranty shall be construed wherever reasonable as consistent with each other."

*Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1019 (N.D. Cal. 2014) (quoting Cal. Com. Code §

2316(1)); *see also Chin v. Gen. Mills, Inc.*, No. CIV. 12-2150 MJD/TNL, 2013 WL 2420455, at

*7 (D. Minn. June 3, 2013) (dismissing breach of express warranty claims under New York and

New Jersey law because a single statement "cannot be viewed in isolation and must be read in

the context of the entire package, including the ingredient panel" and "the specific terms included in the ingredient list must inform the more general term" that plaintiffs challenge).  In this case, even if any of the challenged statements warranted that the Products contain any particular level of sugar (which, as explained above, they do not), the Products' sugar content disclosures on the labels clarify precisely how much sugar the Products contain.  Thus, those disclosures negate any express warranty inconsistent with them.

Plaintiffs' breach of implied warranty claim should similarly be dismissed under the California Commercial Code, which provides that "[w]hen the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him."  Cal. Comm. Code § 2316(b).  Under California law, a food label "that discloses the presence of an [allegedly] unhealthy ingredient precludes liability under the implied warranty of merchantability." *Backus*, 122 F. Supp. 3d at 931; *see also Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1026–27 (S.D. Cal. 2013) (dismissing implied warranty claim because the products were "clearly labeled as including [the allegedly harmful ingredients] per FDA labeling requirements . . . [and] [t]herefore Plaintiff had a sufficient opportunity to examine [them] prior to purchase").  In this case, Plaintiffs had a sufficient opportunity to review the Products' labels prior to purchase, and each reveals the amount of the allegedly unhealthy ingredient (*i.e.*, sugar).

**VII.   Plaintiffs Lack Standing to Seek Injunctive Relief**

Plaintiffs' request for injunctive relief should be dismissed with prejudice for lack of standing because Plaintiffs cannot be deceived by the Products' labeling again (as they allegedly were).  "To maintain standing, Plaintiffs must show a sufficient likelihood that they will be injured by [defendant] again in a similar way and that the future injury can be redressed by injunctive relief." *Luman v. Theismann*, 647 F. App'x 804, 807 (9th Cir. 2016).  "Consumers who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014) (Orrick, J.).

1    Plaintiffs attempt to plead around Article III's standing requirement, alleging that (a) if

2    the Products did "not contain excess sugar, they would consider purchasing Post cereals bearing

3    such claims in the future," and/or (b) "if plaintiffs could be assured that unhealthy Post cereals—

4    those high in added sugar—are appropriately priced, . . . [they might] consider purchasing [them]

5    in the future."  FAC, ¶¶ 120-12.  But a plaintiff's standing to seek injunctive relief does not turn

6    on whether they will again purchase the products at issue, but rather whether they will again be

7    misled by those products' labeling.  *See Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO,

8    2016 WL 4502528, at *6 (N.D. Cal. Aug. 29, 2016) (holding that a plaintiff in a food labeling

9    class action "cannot establish that he is likely to suffer the same injury in the future because . . .

10   there is no danger that they will be misled in the future").[14]

11   In addition, a number of the Products have been discontinued, and thus Plaintiffs lack

12   standing to seek injunctive relief as to those Products.  Where a defendant discontinues products

13   on which plaintiffs bring claims, "this renders moot Plaintiffs' request for injunctive relief

14   related to those products."  *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013

15   WL 1629191, at *1 (N.D. Cal. Apr. 16, 2013).  Plaintiffs lack standing to seek injunctive relief

16   as to the discontinued Products identified in the Declaration of Mark Arrington.  *Id*. at ¶ 2.  Their

17   claims for injunctive relief as to those Products should be dismissed.

18   **VIII.   Plaintiffs Lack Standing to Bring Claims for Unpurchased Products**

19   Plaintiffs' claims as to the Products that they did not purchase should be dismissed with

20   prejudice for lack of standing because the purchased and unpurchased Products' labels vary in

21   appearance, in placement on the challenged statements on the label, and in the other information

22   contained on the label.  A plaintiff in a consumer class action has standing to bring claims for

23   products she did not purchase only if the products she did not purchase are "substantially

24   similar" to the products she did purchase.  *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-

25

26   [14] Plaintiffs' request for injunctive relief should also be dismissed because Plaintiffs seek to
     "enjoin Post's <u>policy and practice generally</u>, including but not necessarily limited to the

27   products, labels, and label claims challenged herein," FAC, ¶ 119 (emphasis in original), but
     injunctive relief "must be narrowly tailored to remedy only the specific harms shown by a

28   plaintiff, rather than to enjoin all possible breaches of the law."  *Ascencio v. ADRU Corp.*, No. C
     12-04884 WHA, 2014 WL 204212, at *9 (N.D. Cal. Jan. 6, 2014).

1   WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014); *Rushing v. Williams-Sonoma, Inc.*,

2   No. 16-CV-01421-WHO, 2016 WL 4269787, at *4 (N.D. Cal. Aug. 15, 2016) (same).  Whether

3   purchased and unpurchased products are "substantially similar" turns on whether "the resolution

4   of the asserted claims will be identical between the purchased and unpurchased products."  *Id.*

5   Where the claim that a reasonable consumer would be misled requires an "analysis of the

6   appearance of the label, the misrepresentation's placement on the label, and other information

7   contained on the label," "a consumer may only be allowed to pursue those claims for products

8   with identical labels."  *Id*.

9           In this case, Plaintiffs' claims require such an analysis.  As an initial matter, Plaintiffs do

10   not allege that they purchased Honey Bunches of Oats Fruit or Tropical Blends (FAC, ¶

11   122(b)(x)-(xii).  In addition, Plaintiffs base their claims not on a single statement shared across

12   the Products' labels, but instead on dozens of different statements which vary among the

13   Products, and further allege that the statements are misleading "especially in the context of the

14   label as a whole."  *See, e.g., id*. at ¶¶ 129, 131, 132.  The placement of the challenged statements

15   on the label also varies, *inter alia*, in size and location.  *Compare id*. at ¶ 136 ("less processed"

16   appears on the front label) *with id*. at ¶ 158 ("less processed" appears on the back label).[15]

17   **IX.    Plaintiffs Lack Standing to Challenge Post's Website, Press Releases, and**

18   **Statements Purportedly Directed at Children**

19           Plaintiffs' claims relating to Post's website and press releases should be dismissed with

20   prejudice for lack of standing because Plaintiffs do not alleged that they relied on either.  "A

21   party does not have standing to challenge statements or advertisements that she never saw."

22   *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014) (dismissing

23   challenges to alleged misrepresentations on defendant's website or Facebook because she did not

24   allege she viewed either); *see also Bruton v. Gerber Prod. Co.*, 961 F. Supp. 2d 1062, 1091

25   (N.D. Cal. 2013) (no standing for claims based on advertisements that plaintiff did not view).

26

27   [15] Under the same analysis, Plaintiffs lack standing to bring claims relating to the six Products
     that Mr. Hadley alleges he "believes he may also have purchased" (FAC, ¶¶ 359, 363).  *Cf.*

28   *P.E.T.A.*, 2016 WL 362229, at *4 (dismissing plaintiffs' claims where defendants argued that "it
     is not evident from the [complaint] exactly which . . . Products are implicated").

28

DEFENDANT POST FOODS, LLC'S MOTION TO DISMISS THE FAC, OR, IN THE ALTERNATIVE, STAY THIS
ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION – CASE NO. 3:16-CV-04958-WHO

1  Plaintiffs allege that "Post uses the Post Website to further its deceptive marketing of high-sugar

2  cereals as healthy" (FAC, ¶ 311) and that "Post has also periodically issued press releases

3  furthering its misleading health and wellness messaging of its cereals" (*id.* at ¶ 320), but nowhere

4  do Plaintiffs allege that they viewed, much less relied, on either.

5      Plaintiffs also lack standing to challenge Post's purported marketing of its Products to

6  children (FAC, ¶¶ 271-283), because they do not allege that they purchased any of the Products

7  in reliance on that alleged marketing to children.  *See Romero v. Flowers Bakeries, LLC*, No. 14-

8  CV-05189-BLF, 2015 WL 2125004, at *4 (N.D. Cal. May 6, 2015) (dismissing claims because

9  plaintiff "failure to plead her actual reliance on [particular] misrepresentations").

10      **X.      Plaintiffs' Claims Should Be Dismissed with Prejudice**

11      The FAC should be dismissed with prejudice because amendment would be futile.  Leave

12  to amend is properly denied where there is "little reason to believe that an amended complaint

13  containing state law claims . . . would itself escape the . . . preemption bar." *McCullagh v.*

14  *Merrill Lynch & Co.*, No. 01 CIV.7322 DAB, 2004 WL 744484, at *2 (S.D.N.Y. Apr. 7, 2004);

15  *see also Griggers v. Equitable Life Assur. Soc'y of U.S.*, 343 F. Supp. 2d 1190, 1193 (N.D. Ga.

16  2004) (holding that amendment is futile if preemption applies); *Baxter v. Salton, Inc.*, No. C10-

17  1442 MJP, 2011 WL 888017, at *2 (W.D. Wash. Mar. 14, 2011) (same).  Because Plaintiffs'

18  claims should be dismissed as preempted, any amendment would be futile.  Moreover, Plaintiffs

19  have now had the opportunity to amend their Complaint to correct the deficiencies identified in

20  Post's original motion to dismiss.  Dismissal of this amended Complaint should accordingly be

21  with prejudice.[16]

22      **XI.     Alternatively, the Court Should Stay this Action Under the Primary**

23              **Jurisdiction Doctrine**

24      To the extent the Court does not dismiss this action, it should stay it pending completion

25

26  [16] Judge Koh so noted in *Hadley v. Kellogg Sales Co.*, Case No. 16-CV-04955-LHK (N.D. Cal.),
   a case brought the same plaintiffs' counsel on the same theory: "Plaintiff has now amended the
27  complaint in light of the deficiencies identified in Defendant's [first] motion to dismiss. Thus, if
   the Court grants any future motion to dismiss the amended complaint based on these
28  deficiencies, the Court will dismiss the amended complaint with prejudice."  Dkt. No. 31 at 2.

1   of FDA's recently-announced public process for the redefinition of "healthy" in food labeling.

2   The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint

3   without prejudice pending the resolution of an issue within the special competence of an

4   administrative agency."  *Swearingen v. Amazon Pres. Partners, Inc.*, No. 13-CV-04402-WHO,

5   2014 WL 3934000, at *2 (N.D. Cal. Aug. 11, 2014).  On September 28, 2016, FDA announced

6   "the establishment of a docket to receive information and comments on the use of the term

7   'healthy' in the labeling of human food products."  *See* Use of the Term "Healthy" in the

8   Labeling of Human Foods Products; Request for Information and Comments, 81 Fed. Reg.

9   66,562 at 66,562 (Sept. 28, 2016).  FDA's request for comments is broad, and indicates that

10  FDA's rulemaking will address issues central to this case.  *Id.* (stating that FDA is "particularly

11  interested" in, *inter alia*, "when, if ever, the use of the term 'healthy' may be false or

12  misleading," and what "other words or terms might be more appropriate (*e.g.,* 'nutritious')" than

13  "healthy" to characterize foods which contribute to healthy dietary practices).

14      Plaintiffs allege that "Post has intentionally positioned itself in the market as a

15  purportedly 'healthy' brand of processed food," and uses "various health and wellness claims

16  that suggest the cereals are healthy," including use of the term "nutritious."  FAC, ¶¶ 113, 116,

17  161.  In fact, Plaintiffs challenge each Product's label as "suggesting, both individually and

18  especially in the context of the label as a whole, that the product is healthy."  *See, e.g. id.* at ¶¶

19  156, 158.  In light of the broad scope of FDA's request for comments and the centrality of

20  "healthy" to Plaintiffs' claims, a stay pending FDA's redefinition of "healthy" is appropriate.

21                                  **CONCLUSION**

22      For the foregoing reasons, this Court should dismiss the FAC with prejudice, or, in the

23  alternative, stay this action pending FDA's redefinition of "healthy" in food labeling.

24  DATED:  December 16, 2016                    Respectfully submitted,

25                                              **VENABLE LLP**

26                                  By:  /s/ Angel A. Garganta
                                         Angel A. Garganta (SBN 163957)

27                                      Attorneys for Defendant Post Foods, LLC

28