**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Counsel for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE KROMMENHOCK and STEPHEN HADLEY, on behalf of themselves, all others similarly situated, and the general public,<br><br>        Plaintiffs,<br><br>              v.<br><br>POST FOODS LLC,<br><br>        Defendant. | Case No. 3:16-cv-04958-WHO (JSC)<br><br>**PLAINTIFFS' OPPOSITION TO POST FOODS, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:        February 15, 2017<br>Time:        2:00 p.m.<br>Dept:        Courtroom 2<br>Judge:      Hon. William H. Orrick |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

FACTS .................................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    PLAINTIFFS PLAUSIBLY STATE CONSUMER FRAUD CLAIMS ............2

    A.    That Other Nutrients are in or Absent from the Cereals Does
Not Render Plaintiffs' Claims Implausible................................................2

    B.    FDA Statements do Not Render Plaintiffs' Claims Implausible ..............3

    C.    Plaintiffs Plausibly Allege Post Had a Duty to Disclose
Material Information Regarding the Sugar in its Cereals .......................5

    D.    The Challenged Statements Should Not Be Dismissed as Mere
Puffery .......................................................................................................6

II.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED................................................8

    A.    The Statutory Scheme .................................................................................8

    B.    Post Has Not Met Its Burden of Overcoming the Strong
Presumption Against Preemption..............................................................9

        1.    There is No Express Preemption .................................................10

            a.    Statements that Violate Regulations .................................11

            b.    Statements that are Not Regulated ....................................15

        2.    Plaintiffs' Claims are Not Conflict Preempted............................20

III.    PLAINTIFFS STATE A CLAIM FOR BREACH OF EXPRESS
WARRANTY ...............................................................................................21

IV.    PLAINTIFFS STATE A CLAIM FOR BREACH OF IMPLIED
WARRANTY ...............................................................................................23

V.    PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF...........24

VI.    PLAINTIFFS MAY CHALLENGE UNPURCHASED PRODUCTS.............27

VII.    THE COURT SHOULD DECLINE TO STAY THE CASE UNDER
THE PRIMARY JURISDICTION DOCTRINE..............................................29

CONCLUSION ...................................................................................................................30

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. ConAgra Foods, Inc.*,
  2013 WL 4737421 (N.D. Cal. Sept. 3, 2013) ...................................................................22

*Allen v. Hylands, Inc.*,
  2012 WL 1656750 (C.D. Cal. May 2, 2012) .......................................................................7

*Altria Group, Inc. v. Good*,
  555 U.S. 70 (2008)............................................................................................................10

*Anderson v. Seaworld Parks and Entm't, Inc.*,
  2016 WL 4076097 (N.D. Cal. Aug. 1, 2016) ..........................................................25, 26

*Ang v. Bimbo Bakeries USA, Inc.*,
  2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)..................................................................28

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  2012 WL 2990766 (N.D. Cal. July 20, 2012)...................................................................29

*Astiana v. Hain Celestial Group, Inc.*,
  783 F.3d 753 (9th Cir. 2015) ....................................................................................14, 29

*Backus v. Gen. Mills, Inc.*,
  122 F. Supp. 3d 909 (N.D. Cal. 2015) .............................................................................24

*Bates v. Dow Agrosciences, LLC*,
  544 U.S. 431 (2005)..........................................................................................................10

*Bishop v. 7-Eleven*,
  651 Fed. App'x 657 (9th Cir. 2016) .................................................................................15

*Blue Buffalo Co. v. Nestle Purina Petcare Co.*,
  2015 WL 3645262 (E.D. Mo. June 10, 2015) ....................................................................7

*Boswell v. Costco Wholesale Corp.*,
  --- F.3d. ----, 2016 WL 3360701 (C.D. Cal. June 6, 2016) ............................................26

*Brazil v. Dole Food Co., Inc.*,
  2013 WL 5312418 (N.D. Cal. Sep. 23, 2013) ..........................................................27, 28

ii

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011) ................................................................27

*Bruton v. Gerber Prods. Co.*,
    2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ..................................................6

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...........................................11, 20, 30

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ........................................................................9

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992).................................................................................9, 13

*Circle Click Media LLC v. Regus Mgt. Group LLC*,
    2013 WL 1739451 (N.D. Cal. Apr. 22, 2013) ................................................8

*Cnty. of Santa Clara v. Astra USA, Inc.*,
    588 F.3d 1237 (9th Cir. 2009) ....................................................................30

*Coe v. Gen. Mills*,
    2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ...............................................7

*Cook, Perkiss, & Liehe, Inc., v. N. Cal. Collection Serv.*,
    911 F.2d 242 (9th Cir. 1990) ........................................................................6

*Cortina v. Goya Foods, Inc.*,
    94 F. Supp. 3d 1174 (S.D. Cal. 2015)............................................................6

*Cruz v. Anheuser-Busch, LLC*,
    2015 WL 3561536 (C.D. Cal. June 3, 2015) ................................................22

*Dorsey v. Rockhard Labs., LLC*,
    2014 WL 4678969 (C.D. Cal. Sept. 19, 2014) .............................................28

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .................................................................14, 16

*Fagan v. Neutrogena Corp.*,
    2014 WL 92255 (C.D. Cal. Jan. 8, 2014) .....................................................16

iii

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................................................5

*Fisher v. Monster Beverage Corp.*,
    125 F. Supp. 3d 1007 (C.D. Cal. 2013) .......................................................29

*Forcellati v. Hyland's, Inc.*,
    876 F. Supp. 2d 1155 (C.D. Cal. 2012) .......................................................28

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*,
    2009 WL 2462505 (E.D. Cal. Aug. 11, 2009) ...............................................7

*Ham v. Hain Celestial Group*,
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) ........................................................25

*Hauter v. Zogarts*,
    14 Cal. 3d 104 (1975) ................................................................................23

*Henderson v. J.M. Smucker Co.*,
    2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ........................................11, 16

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ....................................................................15

*Hitt v. Ariz. Beverage Co., LLC*,
    2009 WL 449190 (S.D. Cal. Feb. 4, 2009) ..................................................15

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ..........................................................21

*In re Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) .............................................................................10

*In re Ferrero Litig.*,
    278 F.R.D. 552 (S.D. Cal. 2011) ................................................................12

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ..................................................22, 23

*Jones v. Nutiva, Inc.*,
    2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) ....................................7, 23, 29

iv

*Kanfer v. Pharmacare US, Inc.*,
   142 F. Supp. 3d 1091 (S.D. Cal. 2015)..............................................................29

*Kwikset v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ......................................................................................15

*Larsen v. Trader Joe's Co.*,
   917 F. Supp. 2d 1019 (N.D. Cal. 2013) .............................................................13

*Lilly v. Jamba Juice Co.*,
   2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)....................................................25

*McKinnis v. Sunny Delight Beverage Co.*,
   2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .....................................................23

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*,
   2015 WL 510919 (N.D. Cal. Feb. 5, 2015) ........................................................29

*Newcal Indus., Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) .............................................................................6

*P.E.T.A v. Whole Foods Mkt. Cal., Inc.*,
   2016 WL 1642577 (N.D. Cal. Apr. 26, 2016) ......................................................7

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003) ..................................................................6

*Perez v. Nidek*,
   711 F.3d 1109 (9th Cir. 2013) ...........................................................................21

*Pinon v. Tristar Prods., Inc.*,
   2016 WL 4548766 (E.D. Cal. Sept. 1, 2016).....................................................26

*Red v. Kraft Foods, Inc.*,
   2012 WL 5504011 (C.D. Cal. Oct. 25, 2012).....................................................27

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) .....................................................................9, 19, 29

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)........................................................................25

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Rushing v. Williams-Sonoma, Inc.*,
   2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) .......................................................25, 27, 29

*S.F. v. Archer-Daniels-Midland Co.*,
   2014 WL 1600414 (W.D.N.Y. Apr. 21, 2014) .................................................................6

*Salazar v. Honest Tea, Inc.*,
   74 F. Supp. 3d 1304 (E.D. Cal. 2014) ............................................................................7

*Sciortino v. Pepsico, Inc.*,
   108 F. Supp. 3d 780 (2015) ....................................................................................10, 20

*Shein v. Canon U.S.A., Inc.*,
   2009 WL 1774287 (C.D. Cal. June 22, 2009) ..............................................................23

*Simpson v. Cal. Pizza Kitchen, Inc.*,
   989 F. Supp. 2d 1015 (S.D. Cal. 2013)..........................................................................24

*Swearingen v. Amazon Pres. Partners, Inc.*,
   2014 WL 1100944 (N.D. Cal. Mar. 18, 2014)...............................................................15

*Trazo v. Nestle USA, Inc.*,
   2013 WL 408328 (N.D. Cal. Aug. 9, 2013) ..................................................................10

*W. Emulsions, Inc. v. BASF Corp.*,
   2007 WL 1839718 (C.D. Cal. Jan. 19, 2007) ...............................................................24

*Weiss v. Kroger Co.*,
   2014 WL 5114608 (C.D. Cal. Aug. 8, 2014)...................................................................7

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...................................................................................7, 27

*Wyeth v. Levine*,
   555 U.S. 555 (2009).......................................................................................................9

*Zeisel v. Diamond Foods, Inc.*,
   2010 WL 9509506 (N.D. Cal. Sept. 3, 2010) ................................................................14

*Zupnik v. Tropicana Prods., Inc.*,
   2010 WL 6090604 (C.D. Cal. Feb. 1, 2010) ...........................................................13, 14

vi

1

**Statutes**

104 Stat. 2353, 2364 (1990) ................................................................................. 10

21 U.S.C. §§ 301 *et seq.* ....................................................................................... 8

21 U.S.C. § 331(a) .................................................................................................. 8

21 U.S.C. § 331(b) .................................................................................................. 8

21 U.S.C. § 331(c) .................................................................................................. 8

21 U.S.C. § 331(g) .................................................................................................. 8

21 U.S.C. § 331(k) .................................................................................................. 8

21 U.S.C. § 343(a)(1) ...................................................................................... passim

21 U.S.C. § 343(q) ................................................................................................ 20

21 U.S.C. § 343(r)(1) .............................................................................................. 9

21 U.S.C. § 343(r)(1)(B) ........................................................................................ 9

21 U.S.C. § 343(r)(2)(A) ........................................................................................ 9

21 U.S.C. § 343(r)(3)(A) ........................................................................................ 9

21 U.S.C. § 343-1 ................................................................................................. 13

21 U.S.C. § 343-1 note (1) ................................................................................... 10

21 U.S.C. § 362(a) ................................................................................................ 14

21 U.S.C. § 379e(b)(5)(B) .................................................................................... 21

21 U.S.C. § 393(b)(2)(A) ........................................................................................ 8

Cal. Com. Code § 2314(2)(c) ............................................................................... 23

Cal. Com. Code § 2314(2)(f) ............................................................................... 23

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Cal. Com. Code § 2315 .......................................................................................23

Cal. Com. Code § 2316(b) ..................................................................................23

Cal. Health & Safety Code §§ 109875 *et seq.* ....................................................8

Cal. Health & Safety Code § 110100(a) ...............................................................8

Cal. Health & Safety Code § 110660 ..................................................................13

Cal. Health & Safety Code § 110670 ....................................................................8

Cal. Health & Safety Code § 111730 ..................................................................14

Pub. L. No. 101-535, § 6(c)(1) ...........................................................................10

**Regulations**

21 C.F.R. § 1.21(a)...............................................................................................19

21 C.F.R. § 101.13(b).......................................................................................8, 17

21 C.F.R. § 101.13(b)(2)(i)............................................................................16, 17

21 C.F.R. § 101.13(i)(1)......................................................................................11

21 C.F.R. § 101.13(i)(3)............................................................................11, 12, 18

21 C.F.R. § 101.14(a)(1)......................................................................................17

21 C.F.R. § 101.14(a)(5)......................................................................................13

21 C.F.R. § 101.14(d)(2)......................................................................................19

21 C.F.R. § 101.14(d)(2)(ii)................................................................................19

21 C.F.R. § 101.14(d)(2)(iii)...............................................................................19

21 C.F.R. § 101.14(e)......................................................................................17, 19

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

21 C.F.R. § 101.56(g)(4) ...................................................................................................18

21 C.F.R. § 101.60(c) ...................................................................................................11, 12

21 C.F.R. § 101.65(a)(2) ................................................................................................11

21 C.F.R. § 101.65(c) .....................................................................................................11

21 C.F.R. § 101.65(d)(1)(ii) ..........................................................................................16

21 C.F.R. § 101.65(d)(2) ................................................................................................30

21 C.F.R. § 101.75 ..........................................................................................................19

21 C.F.R. § 101.77 ..........................................................................................................19

21 C.F.R. § 101.81 ..........................................................................................................19

21 C.F.R. § 101.81(c)(2)(A) ..........................................................................................20

21 C.F.R. § 101.81(c)(2)(C) ..........................................................................................20

21 C.F.R. §§ 101.9(c)(1)-(8) .........................................................................................17

21 C.F.R. § 101.9(c)(6)(iii) ...........................................................................................21

**Other Authorities**

136 Cong. Rec. S-16609 (1990) ....................................................................................10

56 Fed. Reg. 60,421 (Nov. 27, 1991) ..........................................................................8, 9

58 Fed. Reg. 2,229  (Jan. 6, 1993) ................................................................................12

60 Fed. Reg. 57,120 (Nov. 13, 1995) ...........................................................................13

81 Fed. Reg. 33,741 (May 27, 2016) .....................................................................3, 15, 21

81 Fed. Reg. 66,562 (Sept. 28, 2016) ...........................................................................30

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Post provides no salient reason for dismissal. Plaintiffs allege in great detail facts demonstrating reasonable consumers could be misled by claims that Post's high-sugar foods are healthy. Post mischaracterizes FDA statements regarding sugar, which are not entitled to deference on a motion to dismiss anyway. The challenged statements are not puffery, especially considered in their full context. Plaintiffs challenge only labeling statements that either are not governed by FDA regulations, or violate them, and so do not impose any non-identical requirements; thus, the claims are not preempted. There is no conflict preemption since plaintiffs' claims present no obstacle. Plaintiffs can represent purchasers of the few products they did not purchase because the products and legal claims are substantially similar. Plaintiffs have standing to seek injunctive relief because they will be injured in the future absent such relief. Finally, the Court should not stay the case in deference to FDA's primary jurisdiction because its recent solicitation of comments has no impact on this case.

## **FACTS**

"Excessive consumption of added sugar is toxic to the human body." (First Am. Compl. ("FAC") ¶ 1.) Scientific evidence demonstrates that "any amount above approximately 5% of daily caloric intake[ ] greatly increases the risk of heart disease, diabetes, liver disease, and a wide variety of other chronic morbidity." (*Id.*; *see also id.* ¶¶ 20-104.) Nevertheless, "Post leverages a policy and practice of marketing high-sugar cereals and bars with health and wellness claims" (*id.* ¶ 2; *see also id.* ¶¶ 122-218 & App. 1 (identifying challenged claims)). Sometimes Post expressly represents its products are "healthy," "nutritious," or "wholesome." (*See id.* ¶¶ 219-21.) Other times, it claims its foods will help promote bodily health or weight loss, and prevent disease. (*See id.* ¶¶ 228-30, 234, 239.) Sometimes Post is more suggestive, touting the cereals' whole grain, fiber, and "real" ingredient content (*id.* ¶¶ 241-42), or the absence of high fructose corn syrup (*id.* ¶¶ 253-56), and claiming the cereals are "simple," "less processed," "whole foods" (*see id.* ¶¶ 258-61).

In their combined effect of conveying the message that the challenged products are healthy, these statements and practices "are deceptive because they are incompatible with the dangers of the excessive sugar consumption to which these foods contribute." (*Id.* ¶ 2.)

1

Moreover, "[i]n emphasizing the supposedly beneficial ingredients or other aspects of its cereals," Post "intentionally also minimizes, de-emphasizes, obscures, and otherwise omits material information regarding the products' detrimental . . . high sugar content." (*Id.* ¶ 243; *see also id.* ¶¶ 253-57 (emphasizing absence of high fructose corn syrup (HFCS) is deceptive because it falsely suggests products contain "healthy" forms of sugar).)

Plaintiffs purchased Post's high-sugar cereals in reliance on the products' health and wellness claims, and were injured because the products were *not* healthy. (*See id.* ¶¶ 335-84.) They allege Post violated California's False Advertising Law ("FAL"), Consumers Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and breached express and implied warrantied in violation of the California Commercial Code. (*Id.* ¶¶ 394-423.) Plaintiffs filed this action on behalf of a putative class of California purchasers (*id.* ¶ 385), "primarily to enjoin Post from using deceptive health and wellness claims to market high-sugar cereals" (*id.* ¶ 3), but also to recover the class's monetary damages (*see id.* ¶ 424).

## ARGUMENT

## I.   PLAINTIFFS PLAUSIBLY STATE CONSUMER FRAUD CLAIMS

### A.   That Other Nutrients are in or Absent from the Cereals Does Not Render Plaintiffs' Claims Implausible

Post asserts plaintiffs' claims are implausible because plaintiffs supposedly "rely on studies of ingredients . . . not even present in the Products," namely HFCS (Mot. at 19 (citing 1 of "91 written sources" (*id.* at 5) in Complaint)). But HFCS is a form of added sugar, and plaintiffs allege Post's labeling claims are misleading in light of their added sugar content. (*Compare* FAC ¶ 257.) Moreover, the FAC alleges it is "incorrect[ ]" that "HFCS is a substantially more dangerous form of added sugar than other forms" (*id.* ¶ 255). Plaintiffs also allege that the invert sugar in some Post cereals (*see id.* App. 1 at 1, 8, 25) "is extremely similar to HFCS" (FAC ¶ 256). Nor are plaintiffs' claims implausible because the cereals have fiber or other nutrients (*see* Mot. at 19-20 & n.12); plaintiffs allege Post's cereals are unhealthy *notwithstanding* their other ingredients, since they "contain [such] high amounts of sugar . . . that their regular consumption is likely to contribute to . . . increased risk for and

contraction of disease" (FAC ¶ 114). And plaintiffs do not allege fructose in fruit is "not problematic" merely because "[f]ruit also comes packaged with nutrients" (Mot. at 19 n.12). Rather, the FAC alleges "eating the fructose in fruit is not problematic" because it is "encased in the fruit's fiber," "slow[ing] . . . uptake," while "adding fiber to foods that are high in sugar does not replicate this effect, because the sugar and fiber remain separate . . . ." (FAC ¶ 25.)

## B.   FDA Statements do Not Render Plaintiffs' Claims Implausible

Plaintiffs partially rely on the AHA's recommendation to allege that sugar intake exceeding 5% of calories is sufficiently unhealthy to render Post's health and wellness claims misleading, because it is based on scientific evidence concerning the physiological effects of sugar consumption. (*See* FAC ¶ 26 (citing AHA Scientific Statement (discussing science behind recommendation) (Persinger Decl. Ex. 1)); *see also id.* ¶¶ 27-28, 30, 32, 34-36.)

Post nevertheless contends plaintiffs' claims are implausible because they are "premise[d]" on the AHA's "recommendation of . . . 5% of total calories from added sugar," which the "FDA[ ] reject[ed]" (Mot. at 20; *see also id.* at 9, 11, 12).[1] This argument suffers many defects. To start, Post mischaracterizes FDA's findings in asserting it determined "that neither added sugar itself nor the amount of added sugar in the Products is dangerous" (Mot. at 20). As FDA explained, "recommend[ations] that individuals should consume 5 percent or less of total calories from added sugar . . . are not consistent with those of U.S. consensus reports," 81 Fed. Reg. 33,741, 33,849 (May 27, 2016), "showing that Americans, on average, are consuming 13.4 percent of calories from added sugars," *id.* Thus, "[a] DRV of 10 percent of total calories is *more realistic considering current consumption of added sugars in the United States as well as added sugars in the food supply.*" *Id.* (emphasis added).

Indeed, FDA's promulgating a 10% added sugar DRV and disclosure requirement was in response to a 2015 Dietary Guidelines Advisory Committee Report finding that "when added sugars in foods and beverages exceeds 3% to 9% of total calories . . . a healthful food

---

[1] That FDA has said some "cereal . . . *can be* a part of [a] 'healthful dietary pattern[]'" (Mot. at 20 (emphasis added, citation omitted)), does not mean *all cereals* are *always* healthy, or that plaintiffs cannot plausibly allege *Post's high-sugar cereals* are unhealthy.

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

pattern may be difficult to achieve" (RJN Fact 16). The underlying data show an average of 5.9% of calories can have this effect. (*See* Persinger Decl. ¶ 9.)

Plaintiffs offer extensive scientific evidence supporting their allegation that Post's cereals contain a sufficient amount of sugar that their "regular consumption" is likely to "contribute" to increased risk or contraction of morbidity. (FAC ¶¶ 20-104.) Hence, consumers would plausibly be misled by labeling claims stating or suggesting the products are healthy. That remains true regardless of any supposed FDA conclusion, as "there is no basis on a motion to dismiss to conclude FDA is so infallible that it is wholly implausible for plaintiffs to contend [sugar] present[s] a health risk." *See In re Quaker Oats Labeling Litig.*, 2012 WL 1034532, at *2 (N.D. Cal. Mar. 28, 2012) ["*Quaker*"].[2] This principle is particularly applicable here in light of recent evidence that "[t]he sugar industry paid scientists in the 1960s to play down the link between sugar and heart disease and promote saturated fat as the culprit," and that this had lasting effects on FDA policy. (*See* RJN Facts 1-15.)

In any event, sugar accounts for 15.2% to 56% of the cereals' calories, and the products average 24% of calories from sugar. (*See* FAC App. 1.) Those foods whose labels expressly say they are "healthy," "nutritious," or "wholesome" average 21.7% of calories from sugar. (*Id.* ¶ 223.) And cereal eaters frequently consume multiple servings at once, so "Post's high-sugar cereals in reality contribute significantly more sugar to their consumers' diets than even the high amount in a single serving suggests." (*Id.* ¶ 332; *see id.* ¶¶ 328-34.) Accordingly, FDA choosing a DRV equivalent to 10% of calories, rather than 5%, is beside the point. For example, given consumers' actual eating habits, a typical breakfast of Post's *Raisin Bran* might provide a consumer 49.4g of sugar (2.6 servings X 19g), nearly 99% of FDA's 50g

---

[2] Judge Seeborg's decision in *Quaker* was prescient. Less than two years after Quaker claimed FDA had "'thoroughly evaluated and rejected the key scientific premises' underlying plaintiff's theory of liability," *see* 2012 WL 1034532, at *2, the agency "issued a Tentative Determination Regarding Partially Hydrogenated Oils" in which it "identifie[d] significant health risks," and ruled trans fats were no longer "generally recognized as safe (GRAS) for any use in food," 75 Fed. Reg. 67169, 67169 (Nov. 8, 2013); *see also* 80 Fed. Reg. 34650 (June 17, 2015) (Final Determination Regarding PHOs).

4

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

DRV (*see* FAC ¶ 329, App. 1 at 28).[3]

In sum, while FDA took into account a variety of factors in setting a current DRV equivalent to 10% of calories, the *science* nevertheless shows—and FDA's decision does not undermine, but supports—a strong correlation between increased risk of morbidity and added sugar consumption above 5% of calories. Moreover, plaintiffs allege this correlation, which is accepted as true, and allege that, given the high levels of added sugar in the Post cereals, "their regular consumption is likely to contribute to excess added sugar consumption, and thereby increased risk for and contraction of chronic disease" (FAC ¶ 114). Thus, it is plausible plaintiffs are entitled to relief under California's consumer protection statutes for being misled by labeling claims stating or suggesting that the products are healthy.

### C. Plaintiffs Plausibly Allege Post Had a Duty to Disclose Material Information Regarding the Sugar in its Cereals

A duty to disclose material facts arises:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (quotation omitted).

Plaintiffs allege Post was "in a superior position to know of the dangers presented by the sugars in its cereals, as it is a global food company whose business depends upon food

---

[3] Post also argues plaintiffs fail to allege its cereals are unhealthy because "[n]ot one of the 30 Products for which the sugar content is alleged in the FAC" has "greater than 16 grams of sugar per serving, which is below the 'safe' threshold of . . . 38 grams per day for men and 25 grams for women" (Mot. at 20 n.13). Besides overlooking that 26 cereals contain in a single serving more sugar than is recommended for children in an entire day (*see* FAC App. 1), and omitting a product with 19 grams (*see id.* at 28), and disregarding that consumers frequently eat multiple servings (*see id.* ¶¶ 328-34), Post's argument ignores the "possible consequences of cumulative exposure" to the added sugar in its cereals. *See Quaker*, 2012 WL 1034532, at *2 ("even if FDA had clearly and specifically found that trans fats are safe in small quantities . . . that would not justify dismissing the complaint . . . as implausible").

1  science and policy," but it "actively concealed material facts not known to plaintiff[s] and the
2  class." (*Id.* ¶ 264; *see also id.* ¶¶ 310-22.) These "deceptive omissions concern human health,
3  and . . . the detrimental health consequences of consuming [Post's] products" (*id.* ¶ 264).
4  Plaintiffs' allegations thus state an actionable omission claim. *See Cortina v. Goya Foods,*
5  *Inc.*, 94 F. Supp. 3d 1174, 1192-93 (S.D. Cal. 2015). Post nevertheless argues it has "no duty
6  to warn 'of the obvious and "widely known" risks of consuming a particular food,'" including
7  that "overconsumption of added sugar is harmful to consumers' health" (Mot. at 20 (quotation
8  omitted)). Plaintiffs, however, are "not [ ] nutritionist[s] or food scientist[s], but rather [ ] lay
9  consumer[s] who did not have the specialized knowledge that Post had," and were thus
10  "unaware of the extent to which consuming high amounts of added sugar in any form
11  adversely affects blood cholesterol levels and increased risk of CHD, stroke, and other
12  morbidity, or what amount of sugar might have such an effect." (FAC ¶¶ 346, 375.)

13      Post's reliance on *S.F. v. Archer-Daniels-Midland Co.*, 2014 WL 1600414 (W.D.N.Y.
14  Apr. 21, 2014) and *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003) (*see*
15  Mot. at 20-21) is misplaced, because, unlike here, there was no allegation in those product
16  liability (not false advertising) cases that the defendants affirmatively misrepresented that the
17  foods are healthy while actively concealing contrary material facts.

18      **D.**    **The Challenged Statements Should Not Be Dismissed as Mere Puffery**

19      A statement is puffery only "if the claim is extremely unlikely to induce consumer
20  reliance." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).
21  None of the label claims Post calls puffery (*see* Mot. at 22-23) are so "outrageous" or
22  "exaggerated as to preclude reliance by consumers." *Cook, Perkiss, & Liehe, Inc., v. N. Cal.*
23  *Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990). Instead, many expressly promise health
24  benefits, and thus are among the most reliance-inducing claims imaginable, since "consumers
25  rely on health-related claims on food products in making purchasing decisions," *Bruton v.*
26  *Gerber Prods. Co.*, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014).

27      Other statements are more suggestive that the foods are healthy, like claims that the
28  products are made with "Great Grains" (all *Great Grains* varieties), have "GOODNESS . . .

6

1    IN EVERY BOWL" (*Honey Bunches of Oats Cereal – Greek Honey Crunch* and *Greek*
2    *Mixed Berry*), have "an ingredient list that is so good, we have nothing to hide," (*Shredded*
3    *Wheat Honey Nut* and *Shredded Wheat Lightly Frosted*), and are "one of the simple things
4    you can do to feel good each day" (*Shredded Wheat Honey Nut* and *Shredded Wheat Lightly*
5    *Frosted*). Yet other statements Post calls puffery characterize the amount of sugar in the
6    products, like "a Touch of Honey!," and "just a touch of wildflower honey" (varieties of
7    *Honey Bunches of Oats*) (*see* Garganta Decl. Ex. 6, at 27-28, 30, 32, 35-36, 40, 42, 56). While
8    these statements "may require a certain amount of contextualization to evaluate . . . this does
9    not render them insusceptible to verification." *Allen v. Hylands, Inc.*, 2012 WL 1656750, at
10   *4 (C.D. Cal. May 2, 2012). And plaintiffs allege that the accused statements are misleading
11   in the context of the packaging *as a whole*. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934,
12   939 n.3 (9th Cir. 2008). "[W]here at least some actionable statements have been pled, a claim
13   cannot be dismissed on the ground that some statements constitute mere puffery." *Franklin*
14   *Fueling Sys., Inc. v. Veeder-Root Co.*, 2009 WL 2462505, at *7 (E.D. Cal. Aug. 11, 2009);
15   *see also Coe v. Gen. Mills*, 2016 WL 4208287, at *5-6 (N.D. Cal. Aug. 10, 2016) (claims that
16   Cheerios Protein provided a "Great Start" not puffery in context of label as a whole); *Jones*
17   *v. Nutiva, Inc.*, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016).

18        Post relies on inapposite cases. *See Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304,
19   1317-18 (E.D. Cal. 2014) (While certain representations standing on their own were puffery,
20   "Honest Tea" is "not mere puffery" because "defendant sets out to paint itself as honest and
21   bases virtually its entire product image on that characteristic."); *P.E.T.A v. Whole Foods Mkt.*
22   *Cal., Inc.*, 2016 WL 1642577, at *4 (N.D. Cal. Apr. 26, 2016) ("taste representations" were
23   puffery); *Blue Buffalo Co. v. Nestle Purina Petcare Co.*, 2015 WL 3645262, at *10 (E.D. Mo.
24   June 10, 2015) ("an opinion about *quality* . . . not capable of being proven true or false" was
25   puffery (emphasis added)); *Weiss v. Kroger Co.*, 2014 WL 5114608, at *3 (C.D. Cal. Aug. 8,
26   2014) ("There's a whole lot of goodness contained in each and every tiny sunflower seed"
27   was the *only* challenged advertising claim). And while "simple" may be hard to verify when
28   examining whether contracts are "simple," *see Circle Click Media LLC v. Regus Mgt. Group*

7

*LLC*, 2013 WL 1739451, at *10 (N.D. Cal. Apr. 22, 2013), simplicity is not difficult to test in the context of statements concerning food, like "Post Shredded Wheat is one of the simple things you can do to feel good each day," alongside other claims touting the products' "nutrition benefits," and other purported health benefits. (Garganta Decl. Ex. 6, at 63-66.)

## II.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

### A.   The Statutory Scheme

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA"), empowers FDA to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," *id.* § 393(b)(2)(A). The Act prohibits the distribution and sale of misbranded foods. *Id.* §§ 331(a)-(c), (g), (k). Foods are misbranded when they meet one of the definitions for misbranding under § 343, including where their labels are "false or misleading in any particular," *id.* § 343(a)(1), or where they make nutrient content or health claims in violation of the Act and its implementing regulations. *See id.* § 343(r); 21 C.F.R. §§ 101.13-101.14, 101.54-101.83.[4]

FDA has promulgated "general principles and procedures to govern the use of nutrient content claims." *See* 56 Fed. Reg. 60,421, 60,422 (Nov. 27, 1991). Its authority to do so derives from sections of the FDCA that "prohibit labeling that: (1) Is false or misleading in that it fails to reveal material facts with respect to consequences that may result from use of the food and (2) uses terms to characterize the level of any nutrient in a food that have not been defined by regulation by FDA." *Id.* at 60423 (citing 21 U.S.C. §§ 321(n), 343(a), 343(r), 371(a)). Thus, one of FDA's primary purposes in promulgating nutrient content claim regulations was "[t]o ensure that consumers are not misled and are given reliable information." *Id.*

Regarding such claims, the FDCA "states that a food is misbranded if it bears a claim in its label or labeling that either expressly or implicitly characterizes the level of any nutrient

---

[4] California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.* ("Sherman Law"), incorporates federal food labeling laws and regulations into state law. *See*, *e.g.*, *id.* §§ 110100(a), 110670.

of the type required to be declared as part of the nutrition labeling, unless such claim has been specifically defined (or otherwise exempted) by regulation." 56 Fed. Reg. at 60422. Thus, "the general rule is that 'nutrient content claims' are not permitted on food labels." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). Rather:

> A food shall be deemed to be misbranded [ . . . ] if it is . . . offered for sale and for which a claim is made in the label or labeling of the food which expressly or by implication[ ] (A) characterizes the level of any nutrient which is of the type required . . . . to be in the label or labeling of the food unless the claim is made in accordance with subparagraph (2)[.]

21 U.S.C. § 343(r)(1). Except under certain circumstances not relevant here, such nutrient content claims "(i) may be made only if the characterization of the level made in the claim uses terms which are defined in regulations of the Secretary," 21 U.S.C. § 343(r)(2)(A).

A food is also misbranded if its label "characterizes the relationship of any nutrient . . . to a disease or health-related condition unless the claim is made in accordance with subparagraph (3) or (5)(D)." 21 U.S.C. § 343(r)(1)(B). Subparagraph 5(D) is not relevant here, while subparagraph (3) provides that a health claim "may only be made" if, *inter alia*, "the claim meets the requirements of the [applicable] regulations," *see id.* § 343(r)(3)(A).

## B.    Post Has Not Met Its Burden of Overcoming the Strong Presumption Against Preemption

Pursuant to the Supremacy Clause, federal law preempts state law when Congress enacts a statute that explicitly preempts state law. *See Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citation omitted). There are two "cornerstones" of preemption jurisprudence:

> First, the purpose of Congress is the ultimate touchstone in every pre-emption case. . . . Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations, citations and alterations omitted). This presumption demands courts give preemption statutes "narrow reading[s]." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992). Where there are "plausible

9

alternative reading[s]" of an express preemption provision, courts "have a **duty** to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005) (emphasis added); *see also Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 798 (N.D. Cal. 2015) ("[T]he Court typically must 'accept the reading that disfavors pre-emption,' if such reading is plausible." (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008))).

The strong presumption against preemption "applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Altria Group*, 555 U.S. at 77 (citation omitted). "[C]onsumer protection laws" and "[l]aws regulating the proper marketing of food, including the prevention of deceptive sales practices, are . . . within states' historic police powers." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008) ["*Salmon Cases*"] (internal quotations, citation and alterations omitted). Congress was therefore careful to ensure that the NLEA is "sensitive to the regulatory roles played by the States" and "refined to provide national uniformity where it is most necessary, but otherwise preserving State regulatory authority where it is appropriate." 136 Cong. Rec. S-16609 (1990). Thus, the NLEA contains a "savings clause" providing that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted," Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (1990), 21 U.S.C. § 343-1 note (1). As a result, "plaintiffs can avoid preemption if they show either that the labeling material they challenge does not constitute a [regulated claim] or, if it does, that the product effectively is 'misbranded,'" *Quaker*, 2012 WL 1034532, at *2.

### 1.     There is No Express Preemption

"[P]reemption is an affirmative defense, not an element of Plaintiffs' claims," and thus Post "bears the burden of establishing that preemption applies." *See Trazo v. Nestle USA, Inc.*, 2013 WL 408328, at *6 (N.D. Cal. Aug. 9, 2013). The Court should not find preemption absent "focused, clear, and rigorous analysis" demonstrating it applies, especially where "the FAC asserts each claim against the packaging collectively," so that "even if . . . preemption rendered certain statements non-actionable, such a ruling would not result in the dismissal of any claim." *See Henderson v. J.M. Smucker Co.*, 2011 WL 1050637, at *4 n.5 (C.D. Cal.

10

Mar. 17, 2011). Here, plaintiffs challenge labeling statements that either are not regulated by the FDCA, or violate the regulations, rendering the products misbranded. Accordingly, plaintiffs' claims are not expressly preempted. *See Quaker*, 2012 WL 1034532, at *2.

### a.   Statements that Violate Regulations

Post represents that some of its cereals contain "no high fructose corn syrup." (*See* FAC App. 1 at 12-15, 19-21, 24, 26-31.) As Post concedes, this is an implied nutrient content claim (Mot. at 15 (citing *Chacanaca v. Quaker Oats Co*., 752 F. Supp. 2d 1111, 1127 (N.D. Cal. 2010[5])). Accordingly, under 21 C.F.R. §§ 101.65(a)(2) & (c), it may only be made "consistent with a definition for a claim, as provided in subpart D . . . for the nutrient that the label addresses." 21 C.F.R. § 101.13(i)(1). Subpart D does not prescribe a nutrient content claim for high fructose corn syrup, so Post's use violates § 101.13(i)(1).[6] If, on the other hand, "no high fructose corn syrup" "does not . . . implicitly characterize the level of the nutrient in the food," it may be used only if "it is not false or misleading in any respect," *id.* § 101.13(i)(3). Because Post uses the phrase in a deceptive manner (*see* FAC ¶¶ 253-57), plaintiffs state a claim for violation of § 101.13(i)(3). In addition, construed as a sugar content claim regulated by § 101.60 despite being implicit rather than express, its use on the Post products violates the applicable requirements. Section 101.60(c) regulates "[u]se of terms *such as* 'sugar free,' 'free of sugar,' 'no sugar,' [and] 'zero sugar,'" 21 C.F.R. § 101.60(c) (emphasis added). "A food may not be labeled with such terms unless" it (i) "contains less than 0.5 g of sugars . . . per reference amount customarily consumed and per labeled serving,"

---

[5] Although the court found a challenge to "no high fructose corn syrup" preempted, that was based on a theory that artificial trans fat should act as a disqualifying nutrient. *See id.* at 1121-22. Here plaintiff alleges, not that the products' sugar disqualifies them from bearing this claim, but that the claim *violates* 21 C.F.R. §§ 101.13(i)(1), 101.13(i)(3), or 101.60(c).

[6] Post argues the unremarkable proposition that the Court should not ascribe disqualifying status to sugar or trans fat to prohibit nutrient content and health claims that otherwise comply with the regulations. (Mot. at 15-16, 17.) But, as demonstrated herein, plaintiffs challenge labeling statements that are either not regulated nutrient content or health claims, or are claims that violate the regulations, so this argument is misplaced.

---

11

(ii) "contains no ingredient that is a sugar or is generally understood to contain sugars," and (iii) "is labeled 'low calorie' or 'reduced calorie' or bears a relative claim of special dietary usefulness," s*ee id.* Post's cereals using a "no high fructose corn syrup" claim violate every prong. (*See* Persinger Decl. Ex. 8.)

Post also represents that the cereals contain a certain number of grams of protein, which is an express nutrient content claim that "does not in any way implicitly characterize the level of the nutrient," and thus may be used only if "it is not false or misleading in any respect," 21 C.F.R. § 101.13(i)(3). Suggesting that a food "makes a more significant contribution . . . than it actually does" is actionable under California's consumer protection statutes. *See In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011) (certifying class where a predominating question was whether defendant "misrepresented that Nutella . . . makes a more significant contribution to a balanced breakfast than it actually does"). Plaintiff alleges Post "represent[s] that some of its . . . cereals provide the amount of protein that is actually provided only when the cereal is combined with a serving of milk" (FAC ¶ 250), which "misleadingly suggest[s] that the Post cereals make a more significant contribution to a nutritious meal than is the case" (*id.* ¶ 251). And while Post attempts to "use[ ] a disclaimer to explain that only some of the protein comes from the actual cereal product," it "is ineffective . . . because the eye naturally catches only the large '[ ] PROTEIN' representation" (*see id.* ¶¶ 250, 308). Thus, plaintiffs plausibly allege Post's use is "false or misleading," in violation of 21 C.F.R. § 101.13(i)(3).[7]

Post argues that claims like "important for weight management," "help with weight management," "helps you burn more calories," and "enhance your metabolism" are not health claims, and thus do not violate regulations prohibiting unauthorized health claims. (Mot. at 18.) Post is wrong that these are not health claims because they supposedly do not refer to

_____

[7] Although FDA in 1993 "recognize[d] that it would be helpful to make comparisons of foods in their prepared state" (*see* Mot. at 19), FDA also stated it "d[id] not agree with the comments that . . . FDA should require nutrition information on an 'as prepared' basis," in part because FDA "cannot regulate products as effectively on an 'as prepared' basis." 58 Fed. Reg. 2,229, 2,284 (Jan. 6, 1993). "As prepared" claims are therefore "voluntary information," *id.*, that must not be false or misleading in any particular," 21 U.S.C. § 343(a)(1).

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

"any disease or health-related condition" (Mot. at 17-18). "[D]isease or health related condition means damage to an organ, part, structure, or system of the body such that it does not function properly . . . or a state of health leading to such dysfunctioning." 21 C.F.R. § 101.14(a)(5). It hardly needs be said that metabolism and weight management are "state[s] of health" leading to the "disease or health-related condition" of obesity, among other morbidity. Because Subpart E does not authorize such health claims, Post's cereals are misbranded. (*See* FAC ¶¶ 301-302). But if Post is correct that these statements are not unauthorized health claims, then they are just unregulated statements to which preemption does not apply.

In addition, plaintiffs' claims are not preempted because they seek to impose identical requirements to provisions of the FDCA and Sherman Law that prohibit "false or misleading" labeling. *See* 21 U.S.C. § 343(a)(1); Cal. Health & Safety Code § 110660; *accord Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1023 (N.D. Cal. 2013) ("the FDCA and California law contain *identical* prohibitions on false or misleading labeling" (citations omitted)). Congress carefully chose to exclude § 343(a) from the NLEA, *see* 21 U.S.C. § 343-1, intentionally leaving a place for state law to concurrently regulate behavior that violates both state false advertising laws and the FDCA because the labeling is "false and misleading in any particular." 21 U.S.C. § 343(a)(1). "State-law prohibitions on false statements of material fact do not create diverse, nonuniform, and confusing standards," *Cipollone*, 505 U.S. at 529. "Because Congress has also allowed states . . . to pass statutes identical to § 343(a), a private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a), just as FDA would be able to sue to enforce § 343(a) itself." *Zupnik v. Tropicana Prods., Inc.*, 2010 WL 6090604, at *2 (C.D. Cal. Feb. 1, 2010).

Since plaintiffs allege Post's labeling is false and misleading, rejecting their claims as preempted would contravene the NLEA's promise that "[t]he only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements on matters that are covered by [21 U.S.C. § 343-1]." 60 Fed. Reg. 57,120, 57,120 (Nov. 13, 1995). "Congress presumably chose to include § 343(a) in the statutory scheme in order to allow FDA to target specific false or misleading labels without having

13

promulgated regulations that address the specific false or misleading aspect of the particular label." *Zupnik*, 2010 WL 6090604, at *2. Thus, in *Zeisel v. Diamond Foods, Inc.*, the court held that "claims premised upon allegations that a label is 'false or misleading in any particular' do not fall within the scope of Section 343-1(a)," so that "[b]ased on the plain language of Section 343-1(a) . . . . to the extent [plaintiff's claims] allege [defendant's] labels are false or misleading, they are not expressly preempted by the NLEA," 2010 WL 9509506, at *2 (N.D. Cal. Sept. 3, 2010).

The Ninth Circuit recently adopted this reasoning in *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), a case challenging cosmetic labeling also regulated under the FDCA. In *Ebner*, plaintiff alleged defendant failed to disclose that only 75% of the product was accessible. 838 F.3d at 964. The "district court held that Plaintiff's claim that Fresh was required to include supplemental statements regarding product accessibility was preempted by the FDCA." *Id.* The court found "[t]his argument misconstrues Plaintiff's claim." *Id.* "In challenging [defendant's] omission of supplemental statements about product weight, Plaintiff seeks to enforce § 111730 of California's Sherman [Law]," which "states that '[a]ny cosmetic is misbranded if its labeling is false or misleading in any particular.'" *Id.* at 964-65 (quoting Cal. Health & Safety Code § 111730). This language "is virtually identical to the language in the FDCA," under 21 U.S.C. § 362(a). 838 F.3d at 965. Because "both the federal FDCA and California's Sherman Law prohibit the false or misleading labeling of a cosmetic," plaintiff was "'not asking [defendant] to modify or enhance any aspect of its cosmetics labels that are required by federal law.'" *Id.* (quoting *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 758 (9th Cir. 2015)). "Rather, the state-law duty that Plaintiff seeks to enforce . . . is *identical* to [defendant's] duty under the FDCA. . . to avoid false or misleading labeling." *Id.* "Because the Sherman Law does not amount to something 'different from or in addition to' what federal law already requires . . . preemption does not bar Plaintiff's claim." *Id.*

Finally, this case is easily distinguishable from the "illegal products" theory cases Post cites (Mot. at 16 (citations omitted)), where consumers did not purchase the products in reliance on the challenged claims, but instead only "rel[ied] on [the defendant] to sell a

14

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

product which did not violate labeling laws," *Swearingen v. Amazon Pres. Partners, Inc.*, 2014 WL 1100944, at \*2 (N.D. Cal. Mar. 18, 2014) (record citation omitted). Plaintiffs do not allege mere "technical violations of FDA regulations" that did not injure them (Mot. at 16). Rather, they allege Post uses some of the most highly-regulated aspects of food labeling—nutrient content and health claims—in violation of regulations enacted expressly to ensure consumers are not misled. (*See generally* FAC ¶¶ 241-43, 253-57, 264-70, 293-309.) "[T]he legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (citing *Kwikset v. Super. Ct.*, 51 Cal. 4th 310, 333 (2011)); *see also Bishop v. 7-Eleven*, 651 Fed. App'x 657, 658 (9th Cir. 2016) (reversing dismissal where plaintiff alleged he was misled by a nutrient content claim that violated regulations).

### b.   Statements that are Not Regulated

Post argues plaintiffs' claims are preempted because they are premised on the AHA recommendation for added sugar, which FDA did not adopt, and thus supposedly "impose [ ] requirement[s] not identical to" FDA's (*id.* at 9-10). FDA's recent actions, however, impose no requirements on statements outside the Nutrition Facts box at all, and are thus irrelevant to whether the challenged claims are expressly preempted. *See Hitt v. Ariz. Beverage Co., LLC*, 2009 WL 449190, at \*4 (S.D. Cal. Feb. 4, 2009) ("the breadth of the FDCA and FDA's regulatory labeling scheme does not support a finding of express preemption, which requires explicit statutory language preempting Plaintiff's claims").

Post next asserts plaintiffs' purported demand that it "disclose the . . . dangers of added sugar" is preempted because FDA recently elected not to require certain proposed warnings. (*See* Mot. at 10-11.) The proposals FDA rejected were all linked to the new requirement for an added sugar disclosure in the Nutrition Facts box. FDA noted it has never done this for any nutrient. *See* 81 Fed. Reg. at 33,829. Of course, there are an infinite number of regulations FDA could hav*e* enacted, but did not. The *absence* of a regulation does not have preemptive force. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 286 (1995). Instead, "plaintiff's claims,

15

1    if proved, 'would simply require Defendant to truthfully state'" material information, "or not

2    sell its products; such relief would not impose a state requirement that is 'different from or in

3    addition to, or that is otherwise not identical with' that of the FDCA." *See Fagan v.*

4    *Neutrogena Corp.*, 2014 WL 92255, at *1 (C.D. Cal. Jan. 8, 2014) (quotation omitted).

5        Moreover, Plaintiffs do not allege Post was obligated to warn merely because its cereals

6    have excessive sugar levels, but because Post *affirmatively misrepresented that the cereals*

7    *are healthy* through labeling statements outside the Nutrition Facts box. Nothing about FDA

8    declining to require a particular proposed warning in the Nutrition Facts box preempts

9    plaintiffs' claims that a duty to warn arose here as a result of Post's affirmative

10   misrepresentations. *See Ebner*, 838 F.3d at 964 (rejecting argument that claim was preempted

11   by absence of FDA regulation imposing disclosure requirement on cosmetics manufacturers).

12       Post's argument that plaintiffs' claims are preempted because they supposedly seek "a

13   disclosure of the Products' added sugar content . . . prior to July 26, 2018" (Mot. at 8; *see*

14   *also id.* at 10) "suggests a false choice," since plaintiffs "seek[] to enjoin Defendant from

15   using the *particular* statements at issue; the FAC does not pray for an injunction requiring

16   Defendant to disclose the presence of [added sugar] on its product labels." *See Henderson*

17   2011 WL 1050637, at *4.

18       Post argues plaintiffs' challenges to its use of "healthy" are preempted "because FDA

19   regulations define the use of that term and 'related terms . . .'" (Mot. at 13-14 (citing 21 C.F.R.

20   § 101.65(d)(2)). But section 101.65 governs only the use of "healthy" *as a nutrient content*

21   *claim*, meaning it must be "made in connection with an explicit or implicit claim or statement

22   about a nutrient (e.g., 'healthy, contains 3 grams of fat')," 21 C.F.R. § 101.65(d)(1)(ii). Post's

23   statement that "each serving [of Honeycomb] helps start the day in a healthy way" (Mot. at

24   14), makes no reference to any nutrients, nor characterizes their level, and therefore is not a

25   nutrient content claim. And although some "healthy" statements mention "whole grains,"

26   whole grains are not "a nutrient of the type required to be in nutrition labeling under 101.9,"

27   and thus cannot form the basis of a nutrient content claim unless they suggest *dietary fiber* is

28   present "in a certain amount," *see* 21 C.F.R. § 101.13(b)(2)(i), which they do not. (*See, e.g.,*

16

Garganta Decl. Ex. 6 at 70 ("WHOLE GRAINS FOR YOUR HEALTHY LIFESTYLE")). Other claims that mention nutrients, like "Iron & Zinc for Growth" (*id.* at 76), do not characterize their level. (*See also id.* at 72, 73.) Nor does that claim use the word "healthy."

Other claims Post asserts are preempted "healthy" nutrient content claims, such as "DIETARY FIBER TO HELP MAINTAIN DIGESTIVE HEALTH," are actually health claims because, rather than "characterize *the level* of a nutrient," 21 C.F.R. § 101.13(b), they instead "characterize[] the relationship of a[ ] substance to a disease or health-related condition," *id.*§ 101.14(a)(1). (*See* Garganta Decl. Ex. 6 at 69; *see id.* at 48-50, 59, 65.) Such health claims, however, are *unauthorized*, *see* 21 C.F.R. § 101.14(e),[8] and thus not preempted.

Post also asserts that "whole grain," "multi-grain," and the Whole Grain Council stamp are expressly preempted implied nutrient content claims (Mot. at 14). This argument is wrong for two reasons. First, whole grain is not a "nutrient of the type required to be in nutrition labeling under 101.9," 21 C.F.R. § 101.13(b); *see also id.* §§ 101.9(c)(1)-(8) (prescribing nutrition labeling requirements for "the following nutrients": Calories, Fat, Cholesterol, Sodium, Fluoride, Carbohydrate, Dietary Fiber, Soluble Fiber, Insoluble Fiber, Total Sugars, Added Sugars, Sugar Alcohol, Protein, and Vitamins and minerals). Thus, statements that suggest whole grain is present in a certain amount are *not* implied nutrient content claims. Second, while whole grains imply the presence of *dietary fiber*—a nutrient that *is* required to be in nutrition labeling under § 101.9(c)—the challenged statements do not suggest dietary fiber is present in any "certain amount," 21 C.F.R. § 101.13(b)(2)(i). Instead of regulated nutrient content claims, the whole grain statements plaintiffs challenge are akin to the ingredient statements the court in *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1142 (C.D. Cal. 2010) held were not nutrient content claims. ("Made with Real Vegetables" was not a nutrient content claim "because [it] do[es] not suggest 'that a nutrient is absent or present in a certain amount'"). Thus, "there [is] no obvious argument for express preemption." *Id.*

---

[8] Foods may not bear health claims under this provision "unless: (1) The claim is specifically provided for in subpart E of this part; and (2) The claim conforms to all general provisions of this section as well as to all specific provisions in the appropriate section of subpart E[.]"

Post also argues that plaintiffs' challenges to the statement "nutrition benefits," are preempted because Post follows this with phrases like "0g Trans Fat, 14g Whole Grain Per Serving," which plaintiffs *do not challenge*.[9] (*See* Garganta Decl. Ex. 6 at 1, 4, 8, 11, 14, 32, 63, 67; Mot. at 14.) That "14g Whole Grain Per Serving" might characterize the level of fiber in the cereal, however, does not permit Post to refer to this as a "nutrition benefit." Instead, "nutrition benefits" is an unregulated, voluntary claim not subject to express preemption. Similarly, plaintiffs do not challenge the statements that accompany the Whole Grain Council decal, but rather the decal itself. (FAC ¶¶ 244-49.) To the extent the design elements and other aspects of the decal that are *not regulated* could render the accompanying "10g or more per serving" statement misleading, however, it would be actionable under § 101.13(i)(3).

Post similarly argues that its antioxidant claims are preempted, but, other than in one instance Post does not claim is preempted (*see* FAC ¶ 204i), plaintiffs do not challenge those claims, only statements preceding those claims, such as "It's whole foods from the field to your bowl, with whole grains, fiber and nutritious ingredients in every bite!" (*see* Garganta Decl. Ex. 6 at 7), and "NATURAL ADVANTAGE" (*id.* at 63).[10] In any event, "[n]utrient content claims using the term 'antioxidant'" may only be used when "[t]he names of the *nutrients* that are the subject of the claim are included as part of the claim (e.g., 'high in antioxidant vitamins C and E')," 21 C.F.R. § 101.56(g)(4), which is not the case here.

Next, citing an FDA guidance letter, Post asserts that "Plaintiffs' challenges to health claims relating to . . . diabetes . . . fail because drawing a relationship between whole grains and risk of diabetes is permitted as . . . a 'permissible qualified health claim.'" (Mot. at 16 (citing FDA's Response Letter to ConAgra's Qualified Health Claim Petition, Dkt. No. 44-9).) In the letter, "FDA conclude[d] that there is very limited credible scientific evidence for

---

[9] Post also wrongly asserts that Plaintiffs challenge the fiber claims that follow the "nutrition benefits" claim. (*Compare* Mot. at 14 (claiming Plaintiffs' challenge "Fiber 8g per serving" (citing FAC ¶ 206(e)) *with* FAC ¶ 206 (listing challenged claims).)

[10] Post employs this same tactic with regard to "high" and "good source" claims that plaintiffs do not challenge. (*See* Garganta Decl. Ex. 6 at 2, 6, 9, 1216, 18, 21-24, 74.)

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

a qualified health claim for whole grains and type 2 diabetes," but said it would "consider exercising its enforcement discretion" regarding such statements, "provided that the qualified claim is appropriately worded so as not to mislead consumers." (Dkt. No. 44-9, at 23.)

Post's claim—"Help Promote Healthy Blood Sugar Levels: A recent study has shown that higher whole grain consumption reduces the risk of Type 2 Diabetes by 21%" (FAC 204(q); Garganta Decl. Ex. 6 at 65)—is vastly different from the qualified claims approved by FDA. Further, that FDA would "consider exercising its enforcement discretion" is insufficient to "foreclose state law challenges to health claims that do not comply with existing rules." *See Reid*, 780 F.3d at 965; *see also id.* at 964 ("'enforcement guidelines' like those set forth in the FDA's letter 'are beyond the *Chevron* pale,'" and have no preemptive effect (quotation omitted)).

Post also argues that "challenges to health claims relating to heart disease . . . fail because drawing a relationship between whole gains and the risk of heart disease is a permissible health claim" (Mot. at 16 (citing 21 C.F.R. § 101.81)). Post does not identify the labeling claims to which it refers, nor explain how they supposedly meet the requirements of section 101.81, and has therefore failed to carry its burden to show preemption.[11] (*See generally* Mot. at 16; Garganta Decl. Ex. 6.) It appears, however, that the labeling claims Post

---

[11] After reviewing Post's motion, plaintiffs concede that the cereals identified in paragraph 299(c)-(n) of the FAC bear claims that appear to comply with a claim approved under FDAMA (*see* Mot. at 17; Garganta Decl. Ex. 6 at 26, 28, 31, 32, 34, 37, 40, 42, 44, 59, 61), even if they do not comply with §§ 101.75 or 101.77. Thus, plaintiffs withdraw the allegations in paragraphs 303-304 of the FAC. The challenged statements nevertheless still violate *other* provisions, including 21 U.S.C. § 343(a)(1), and 21 C.F.R. §§ 1.21(a), and 101.14(d)(2)(ii), (iii), & (e). (*See* FAC ¶¶ 295-97.) Nor do FDAMA approved health claims preempt the accompanying statements and depictions, such as "Heart Healthy" (*see*, *e.g.*, Garganta Decl. Ex. 6 at 26), or the "depiction[s] of heart in circle" (*id.*), or "whole grains in a circle" (*id.* at 26-27). Post argues such depictions are preempted under 21 C.F.R. § 101.14(d)(2), which provides that, "[w]hen FDA has adopted a regulation *in subpart E* . . . providing for a health claim, firms may make claims based on the regulation . . . provided that" several conditions are met, *id.* (emphasis added). (*See* Mot. at 17 n.8.) This regulation does not apply to health claims adopted under FDAMA, rather than promulgated by FDA in subpart E.

19

1   may be addressing violate the regulations because they fail to "state[ ] that diets that are low

2   in saturated fat and cholesterol *and that include soluble fiber* from certain foods 'may' . . .

3   reduce the risk of heart disease," and fail to "use[ ] term 'soluble fiber' qualified by the name

4   of the eligible source of soluble fiber," 21 C.F.R. §§ 101.81(c)(2)(A), (C) (emphasis added).

### 2. Plaintiffs' Claims are Not Conflict Preempted

6        Post contends plaintiffs' claims are conflict preempted. (Mot. at 11-13.) "[T]here are

7   two types of conflict preemption: (1) impossibility preemption and (2) obstacle preemption."

8   *Sciortino*, 108 F. Supp. 3d at 808. Post invokes only the latter. (*See* Mot. at 11.) "Obstacle

9   preemption arises where 'the challenged state law stands as an obstacle to the

10  accomplishment and execution of the full purposes and objectives of Congress. [ ] What is a

11  sufficient obstacle is a matter of judgment, to be informed by examining the federal statute

12  as a whole and identifying its purpose and intended effects.'" *Sciortino*, 108 F. Supp. 3d at

13  808 (internal citation and quotation omitted).

14       Post asserts California's consumer protection laws are preempted because they

15  supposedly "stand as an obstacle to executing the purposes and objectives of the federal

16  rulemaking on added sugar." (Mot. at 11-13.) Post contends this is so, first, because plaintiffs

17  purportedly "seek to prevent Post from including information . . . which FDA believes should

18  be provided" (Mot. at 12). But plaintiffs challenge only *voluntary* statements (both those not

19  governed by FDA regulations, and those that violate them). *C.f. Chacanaca*, 752 F. Supp. 2d

20  at 1116-17 (contrasting "'nutrition information' . . . that *must* be disclosed about certain

21  nutrients in food products" pursuant to 21 U.S.C. § 343(q), with claims about "*voluntary*

22  statements about nutrient content or health information a manufacturer chooses to include on

23  a food label or packaging"). Claims challenging voluntary statements cannot possibly

24  "stand[] as an obstacle and execution of the full purposes and objectives of Congress."

25  *Sciortino*, 108 F. Supp. 3d at 808. Rather than conflict with the FDCA, if plaintiffs prove

26  liability, their claims will be consistent with the requirement that all labeling be not "false or

27  misleading in any particular," 21 U.S.C. § 343(a)(1). *See Sciortino*, 108 F. Supp. 3d at 811

28  ("Obstacle preemption does not apply" where "the [state-law] warning at issue. . . is entirely

20

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    consistent with [21 U.S.C. § 379e(b)(5)(B)]'s purpose of eliminating the risk of cancer caused

2    by foods."); *c.f. Perez v. Nidek*, 711 F.3d 1109, 1118 (9th Cir. 2013) (no implied preemption

3    "insofar as the state-law duty parallels a federal-law duty" (internal citations omitted)).[12]

4        Post contends "FDA has considered and rejected the requirement that manufacturers

5    disclose the alleged dangers of added sugars" and argues that "[r]equiring that disclosure

6    would conflict with FDA's objectives[.]" (Mot. at 13.) But FDA's objective in regulating an

7    added sugar disclosure was "to provide information to assist consumers with food purchases

8    that can reduce their intake of added sugars and enable them to achieve a healthy dietary

9    pattern," "characterized in part by lower amounts of added sugars," which is "strongly

10   associated with a reduced risk of chronic disease." 81 Fed. Reg. at 33,762. Thus, rather than

11   stand as an obstacle, requiring Post to disclose additional material information when

12   affirmatively misrepresenting its cereals are healthy furthers the objectives of the added sugar

13   rulemaking. The same is true of FDA's setting a DRV for sugar at 10% of calories, rather

14   than 5%. (*See* Mot. at 12.) That the science shows consuming 5% or more calories from sugar

15   renders Post's health and wellness claims misleading does not stand as an obstacle to FDA's

16   objective of "reduc[ing] . . . intake of added sugars and enabl[ing] [consumers] to achieve a

17   healthy dietary pattern." Thus, FDA's recent rulemaking "should not lightly be construed to

18   'sweep away' state laws concerning health and safety, which are matters traditionally subject

19   to state regulation." *See Sciortino*, 108 F. Supp. 3d at 211 (citations omitted).

20   **III.   PLAINTIFFS STATE A CLAIM FOR BREACH OF EXPRESS WARRANTY**

21       The elements of a claim for breach of warranty are: "(1) the seller's statements

22   constitute an affirmation of fact or promise or a description of the goods; (2) the statement

23   was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra*

24   *Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (quotation and citation omitted).

25

26   ───────────────

27   [12] Post's argument that "Plaintiffs . . . seek *to impose a different requirement*" from 21 C.F.R.
     § 101.9(c)(6)(iii), "namely, that Post disclose the added sugar content of the Products now"
28   instead of by July of 2018, is actually an express preemption argument, which fails for the
     reasons discussed above: this is not what plaintiffs seek at all. *See supra*, Part II.B.1.b.

21

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1      Plaintiffs allege Post expressly warranted its cereals as healthy (FAC ¶ 412); that they

2  relied on these representations (*id.* ¶¶ 343, 361, 366, 369, 372, 411); and that "Post breached

3  its express warranties by selling products that are not healthy, and not heart healthy" (*id.* ¶

4  413). These allegations state a claim for breach of express warranty. *See In re Ferrero Litig.*,

5  794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) ["*Ferrero*"] (allegation that "a healthy and

6  balanced breakfast," was deceptive because Nutella was primarily sugar and saturated fat

7  stated claim for breach of express warranty); *Allen v. ConAgra Foods, Inc.*, 2013 WL

8  4737421, at *11 (N.D. Cal. Sept. 3, 2013).

9      Post's arguments do not compel a contrary conclusion. First, Post regurgitates its

10  arguments that the challenged statements supposedly constitute puffery or are preempted

11  nutrient content or health claims (*see* Mot. at 23), but those arguments should be rejected for

12  the reasons already discussed, *see supra*, Parts I, II. Next, Post asserts that "Plaintiffs fail to

13  plausibly allege that any of [the] warranties have been breached," because "none of the

14  statements alleged to be warranties mention sugar or added sugar, much less the level of either

15  in the Products" (Mot. at 24). But "Plaintiffs' theory of breach is that the . . . express

16  warranties were breached because the Products are '*not healthy, and not heart healthy*'" (Mot.

17  at 24 (emphasis added)). Therefore, plaintiffs need only allege the statements warrant that the

18  cereals are healthy, which plaintiffs do in detail (*see id.* ¶¶ 219-239, 410-413). *Cruz v.*

19  *Anheuser-Busch, LLC*, 2015 WL 3561536 (C.D. Cal. June 3, 2015), is distinguishable. Unlike

20  that plaintiff, who "blindly surmise[d] that a promise [was made] that the Products would

21  contain an unknown amount of calories . . . based on the term 'light,'" *id.*, at *9, plaintiffs

22  here do not allege the claims warranted that the products had a certain sugar content, but that

23  Post falsely warranted its products were healthy.

24      And plaintiffs allegations are not based on "whatever Plaintiffs' subjectively believe

25  [the warranties] to mean" (Mot. at 24), but on Post's express statements that its cereals are

26  "healthy," "heart healthy," and "wholesome nutrition." (*See* FAC ¶ 412; *see also id.* ¶ 118.)

27  Post asserts plaintiffs fail to allege it breached the warranty, "scoops of wholesome Almonds"

28  because "nowhere do Plaintiffs allege that the Products do not contain scoops of almonds, or

22

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   that the almonds in the Products are not wholesome" (Mot. at 24). But Post recognizes that

2   "a single statement cannot be viewed in isolation and must be read in the context of the entire

3   package" (Mot. at 25-26 (quotation omitted)). Here, in addition to "direct, express claims that

4   some of its cereals are . . . 'wholesome'" (FAC ¶ 240)—which "[c]onsumers interpret. . . to

5   mean the same thing as[ ] . . . 'healthy'" (*id.* ¶ 219)—"[a] major strategy Post employs is

6   'calling out' the supposedly beneficial aspects of its cereals" (*id.* ¶ 241).

7         Post's cases are distinguishable, as neither involved "false statement[s] to support a

8   claim of breach of express warranty" (*see* Mot. at 24 (quoting *Shein v. Canon U.S.A., Inc.*,

9   2009 WL 1774287, at *3 (C.D. Cal. June 22, 2009), and citing *McKinnis v. Sunny Delight*

10  *Beverage Co.*, 2007 WL 4766525, at *5 (C.D. Cal. Sept. 4, 2007)). In contrast, Plaintiffs base

11  their claims on no less than "90 statements" (*see* Mot. at 23).

12  **IV.   PLAINTIFFS STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY**

13        "'Merchantability has several meanings . . . : the product must "[conform] to the

14  promises or affirmations of fact made on the container or label," and must be "fit for the

15  ordinary purposes for which such goods are used."'" *Ferrero*, 794 F. Supp. 2d at 1118

16  (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code §§ 2314(2)(c),

17  (f))). Plaintiffs allege Post breached the implied warranty of merchantability because its high-

18  sugar foods "did not conform to the promises and affirmations made on the container or label

19  of the goods," as required by § 2314(2)(f). (*See* FAC ¶ 421.) Posts cases do not involve §

20  2314(2)(f), addressing only whether the products are "fit for their ordinary purpose[ ]" under

21  § 2314(2)(c), or "fit[ ] for [a] particular purpose" under Cal. Com. Code § 2315. (*See* Mot. at

22  25.) Because plaintiffs "are bringing their claim under a different definition of

23  merchantability," the Court should "decline[] to dismiss Plaintiffs' claim for breach of the

24  implied warranty of merchantability." *See Ferrero*, 794 F. Supp. 2d at 1118; *Jones*, 2016 WL

25  5210935, at *9.

26        Post asserts that Cal. Com. Code § 2316(b) bars plaintiffs' implied warranty claims

27  because plaintiffs supposedly "had a sufficient opportunity to review the Products' labels

28  prior to purchase, and each reveals the amount of . . . sugar[ ]," (Mot. at 26). But this

23

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

disclosure does nothing to cure Post's warranties that its cereals are healthy *notwithstanding* their sugar content. *See W. Emulsions, Inc. v. BASF Corp.*, 2007 WL 1839718, at *5 (C.D. Cal. Jan. 19, 2007) ("While an examination by a buyer may preclude a finding of implied warranty, that is not the case when defects in the product could not be revealed upon a 'reasonably prudent examination.'" (citation omitted)).

Post's reliance on *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909 (N.D. Cal. 2015), and *Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015 (S.D. Cal. 2013), is misplaced. (*See* Mot. at 26.) Those cases involved claims that a defendant's *mere use* of an ingredient rendered the products unfit for consumption, which could have been discovered upon reading the ingredients.

## V.    PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF

"During the last decade, as consumer interest in healthy eating has grown, . . . Post has intentionally positioned itself . . . as a purportedly 'healthy' brand of processed food, by using various labeling statements to suggest its cereals are healthy" (FAC ¶ 113). "As with any company [its] size . . . Post makes occasional changes in product offerings . . . formulations, and product labeling and packaging." (*Id.* ¶ 115.) "Regardless of such changes, however . . . dating back . . . into at least the mid-2000s, Post has maintained, and to this day actively maintains a policy and practice of labeling high-sugar cereals . . . with various health and wellness claims that suggest the cereals are healthy, when they are not." (*Id.* ¶ 116.)

"Plaintiff Stephen Hadley has been a frequent cereal eater for many years" and because he is relatively health-conscious," he "has generally tried to choose healthy options, and has been willing to pay more for cereals he believes are healthy." (*Id.* ¶ 356.) Similarly, plaintiff Debbie Krommenhock "was seeking products that were healthy to consume" (*id.* ¶ 344). "[P]laintiffs have enjoyed Post's products in the past." (*Id.* ¶ 120.) If they could be assured . . . that, if a Post cereal's label sets forth health and wellness claims, the product does *not* contain excess sugar, they would consider purchasing Post cereals bearing such claims in the future." (*Id.*) In addition:

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1
2
3
4
5

    if plaintiffs could be assured that *un*healthy Post cereals—those high in added sugar—are appropriately priced, rather than artificially inflated in price due to Post's use of misleading health and wellness claims, plaintiffs might, under certain circumstances, consider purchasing Post cereals in the future "eyes wide open," for example to consume in careful moderation as a reward or treat, to accommodate food allergies or preferences for guests, or due to cost, convenience, or circumstances beyond control . . . .

6
7

(*Id.* ¶ 121.) These allegations give plaintiff standing to seek injunctive relief. *See Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *5 (N.D. Cal. Mar. 18, 2015).

8
9
10
11
12
13
14

    "[R]ecent cases in this court have found standing for injunctive relief claims where '[w]ithout injunctive relief, [plaintiff] could never rely with confidence on product labeling when considering whether to purchase Defendants' product.'" *See Rushing v. Williams-Sonoma, Inc.*, 2016 WL 4269787, at *10 (N.D. Cal. Aug. 15, 2016) (Orrick, J.) (quoting *Lilly*, 2015 WL 1248027, at *5). Post's assertion that plaintiffs "lack [ ] standing because [they] cannot be deceived by the Products labeling again" (Mot. at 26) "misapprehend[s] the nature of the injury suffered by the consumer," *see Lilly*, 2015 WL 1248027, at *3. That is becuase:

15
16
17
18

    When a consumer discovers that a representation about a product is false, she doesn't know that another, later representation by the same manufacturer is also false. She just doesn't know whether or not it's true. A material representation injures the consumer not only when it is untrue, but also when it is *unclear* whether or not is true.

19
20
21
22
23
24
25

*Id.* ("The Court is not persuaded by those courts that have . . . conclu[ded] that injunctive relief is not available for a consumer who is aware of the misrepresentation" (disagreeing with case on which Post relies (*see* Mot. at 26), *Ham v. Hain Celestial Group*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014)); *see also Anderson v. Seaworld Parks and Entm't, Inc.*, 2016 WL 4076097, at *7 (N.D. Cal. Aug. 1, 2016) (Court was "unwilling to hold, as a matter of law, that a plaintiff could never pursue a claim for prospective injunctive relief under UCL or FAL merely because the plaintiff now knows the truth about the alleged misrepresentation.").

26
27
28

    Absent injunctive relief, plaintiffs will be injured because they will be unable to rely with confidence on Post's health and wellness claims. *See Lilly*, 2015 WL 1248027, at *4; *see also Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (plaintiffs

had standing to seek injunctive relief where they "stated [an] intent to purchase" since, "[s]hould plaintiffs encounter the denomination 'All Natural' on an Arizona beverage at the grocery store today, they could not rely on that representation with any confidence"); *Pinon v. Tristar Prods., Inc.*, 2016 WL 4548766, at *6 (E.D. Cal. Sept. 1, 2016).

Further, if, rather than avoid unhealthy Post cereals, plaintiffs want to purchase them "eyes wide open" (*see* FAC ¶ 121), absent injunctive relief, plaintiffs will be unable to do so at a fair market price, since the price is currently inflated due to the misleading labels (*see id.* ¶¶ 121, 349-50). *See Anderson*, 2016 WL 4076097, at *8 ("in light of the Plaintiffs' allegations that they would have paid less for tickets . . . if they had known the truth, . . . the Court concludes these three Plaintiffs have sufficiently alleged facts . . . to show they have standing to seek injunctive relief on behalf of the class").

While some courts have assumed shoppers would never purchase a food containing an objectionable ingredient in the future, such holdings are unrealistic. People are not binary. They make purchasing decisions based on a wide variety of considerations, which change over time and in response to different stimuli. Thus, that plaintiffs are "relatively health-conscious" and have "generally tried to choose healthy options" (FAC ¶ 356) does not render it implausible that, having "enjoyed Post's products in the past" (*id.* ¶ 120), they "might, under certain circumstances, consider purchasing [them] in the future" (*id.* ¶ 121), especially given their ubiquity (*see id.* ¶ 111).[13] This is especially so because there "appear[s] to be a 'safe' threshold of daily added sugar consumption" (*id.* ¶ 26). Potentially purchasing Post products in the future, for example, "to consume in careful moderation as a reward or treat" (*id.* ¶ 121), is consistent with avoiding the "*regular consumption*" plaintiffs allege is harmful (*see id.* ¶¶ 114, 116, 226, 233, 237, 304, 334). There is no basis at this stage to find plaintiffs'

---

[13] A court recently recognized this reality in rejecting a coconut oil seller's argument that plaintiffs had implausibly alleged reliance because they had not alleged they stopped using coconut oil. *Boswell v. Costco Wholesale Corp.*, --- F.3d. ----, 2016 WL 3360701, at *6 (C.D. Cal. June 6, 2016). As the court explained, "the fact Plaintiffs may consciously choose to purchase an unhealthy product in the future does not undermine their claim for reliance *at the time* of the purchases in question," *id.*

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

allegations of future purchase intent implausible, especially construing the FAC in their favor.

Moreover, cases holding that a consumer will not suffer future injury where she can determine whether future claims are true by examining the ingredients, *compare Rushing*, 2016 WL 4269787, at *10 (distinguishing cases where "plaintiffs now know . . . that 'evaporated cane juice' is sugar or that 'ascorbic acid' is not natural and, therefore, they will not be harmed in the future by purchasing products whose labels disclose those ingredients" (citations omitted)), are inconsistent with the Ninth Circuit's admonition in *Williams*, that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." 552 F.3d at 939. Such decisions shift the burden to defrauded plaintiffs to thoroughly read the ingredient list *prior to every single future purchase* to avoid injury since, "'[w]ithout injunctive relief, [plaintiff] could never rely with confidence on [defendants'] product labeling" alone, *see Rushing*, 2016 WL 4269787, at *10.[14]

## VI.   PLAINTIFFS MAY CHALLENGE UNPURCHASED PRODUCTS

Post contends plaintiffs "lack standing to bring claims for unpurchased products," (Mot.at 27 (header capitalization disregarded)). Post's "legal argument is flawed" because "the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'" *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) (quotation omitted); *see also Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418, at *7 (N.D. Cal. Sep. 23, 2013) (plaintiff was "not asserting

---

[14] The Court should reject Post's attempt to moot plaintiffs' claims for injunctive relief as to supposedly discontinued products by introducing evidence beyond the pleadings (*see* Mot. at 27 (citing declaration of Mark Arrington)). Even if the Court considers this extraneous evidence, it does not establish that Post has removed entirely the threat of future injury relating to these products, because Post nowhere guarantees that such varieties will not be reintroduced, or that it will not create a substantially similar cereal with the same challenged labeling claims. *C.f. Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *1 (C.D. Cal. Oct. 25, 2012) (court order binding party from using challenged claims on precise packaging identified in operative complaint was insufficient to moot claims for injunctive relief).

27

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

standing to sue over injuries he did not suffer; rather, [plaintiff] asserts that the injuries he suffered as a result of buying the Purchased Products and the injuries suffered by the unnamed class members who purchased the Substantially Similar Products are one and the same."). Accordingly, courts frequently reserve this analysis for class certification. *See*, *e.g.*, *Dorsey v. Rockhard Labs., LLC*, 2014 WL 4678969, at *3-4 (C.D. Cal. Sept. 19, 2014); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012).

But some courts have addressed the issue at the pleading stage. If the Court undertakes the analysis now, Post concedes plaintiffs may "bring claims for products . . . 'substantially similar' to the products [they] did purchase" (*see* Mot. at 27 (citation omitted)). Each of the eight cereals plaintiffs did not purchase is substantially similar to one or more they did. (*See* Persinger Decl. Ex. 11.) For example, while neither plaintiff purchased Honey Bunches of Oats Fruit Blends – Peach Raspberry (*see* Dkt. No. 44-3 at No. 3), plaintiff Hadley purchased at least nine other varieties of Honey Bunches of Oats Cereal (*see* Dkt. No. 44-4, at Nos.12-20), which differ mainly in the flavor ingredient(s) added to distinguish each variety, such as "almonds" or "pecan bunches" (*see* Dkt. No. 33-1, at 12-21). Further, each of these cereals have similar sugar content. (*See* FAC App. 1.) And regardless of "occasional changes in product . . . varieties[ ], . . . formulations, and product labeling and packaging" (*id.* ¶ 115), Post injured purchasers of each cereal through the same behavior: "labeling high-sugar cereals—those that contribute significantly more than 5% of calories from sugar, and thus whose regular consumption is likely to contribute to increased risk of illness—with various health and wellness claims that suggest the cereals are healthy, when they are not" (*id.* ¶ 116). *See Brazil*, 2013 WL 5312418, at *7 ("claims that [plaintiff] was misled by the improper use of the term 'all natural' on Dole Mixed Fruit in Cherry Gel," and "the injury he suffers as a result of that misrepresentation is not meaningfully distinguishable from the injury suffered by an individual who is misled by the use of the term 'all natural' on Dole Mixed Fruit in Black Cherry or Peach"); *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014) (allowing plaintiff to challenge claims on 28 unpurchased products where, like here, "[t]he injury allegedly suffered by plaintiffs is identical to the injury suffered

28

1  by consumers who purchased the other products"); *Astiana v. Dreyer's Grand Ice Cream,*

2  *Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012).[15]

3          Finally, because plaintiffs allege their purchased products are "exemplary of . . . Post's

4  longtime practice" (*see* FAC ¶¶ 323-24), even if plaintiffs did not have standing to challenge

5  non-purchased foods, the allegations should not be dismissed because they support these

6  allegations. *C.f. Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, 2015 WL 510919,

7  at *11 (N.D. Cal. Feb. 5, 2015) (refusing to strike "materials [that] may be relevant to class

8  certification and absent class members' reliance on Defendant's promotional materials").[16]

9  **VII.  THE COURT SHOULD DECLINE TO STAY THE CASE UNDER THE**

10        **PRIMARY JURISDICTION DOCTRINE**

11         Primary jurisdiction in food cases is highly disfavored where FDA does not appear

12 imminently about to resolve a question that is key to the litigation. *See Fisher v. Monster*

13 *Beverage Corp.*, 125 F. Supp. 3d 1007, 1031 (C.D. Cal. 2013); *Reid*, 780 F.3d at 967

14 (inappropriate where "case ultimately turns on . . . whether a reasonable consumer would be

15 misled"); *Astiana*, 783 F.3d at 760-61 ("not required when a referral to the agency would

---

16 [15] Post's reliance on *Rushing* is misplaced. (Mot. at 28.) There, plaintiff challenged
17 defendants' thread count representations on two bedding sets, but had only purchased one.
18 The Court concluded plaintiff lacked standing to challenge the other because the sheet counts
   on the two sets were alleged to be false and misleading *for a different reason*. *See Rushing*,
19 2016 WL 4269787, at *3-4.
20

21 [16] Plaintiffs allege Post "used its website . . . and other online fora to spread misinformation
22 about the dangers of consuming the added sugar in its products" (FAC at 119 (header
   capitalization disregarded), and further "made misleading public statements concerning high-
23 sugar cereals" (*id.* at 134 (header capitalization disregarded); *see generally id.* ¶¶ 310-22).
   Post argues plaintiffs lack standing to challenge website statements and statements in press
24 releases because they "do not allege that they relied on either" (Mot. at 28). But "even though
25 Plaintiff[s] ha[ve] not alleged that [they] personally relied on Defendant's website . . . these
   materials may be relevant," *see Musgrave*, 2015 WL 510919, at *11; *see also Jones*, 2016
26 WL 5210935, at *6. And these allegations, as well as those regarding Post's "malicious,
27 immoral, and oppressive" marketing of high-sugar cereals to children, are also relevant to
   establishing Post's intent, for punitive damages (*see id.* ¶ 416). *C.f. Kanfer v. Pharmacare*
28 *US, Inc.*, 142 F. Supp. 3d 1091, 1108 (S.D. Cal. 2015).

29

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  significantly postpone a ruling that a court is otherwise competent to make"); *Chacanaca*,

2  752 F. Supp. 2d at 1124 ("[P]laintiffs . . . assert that defendant has . . . marketed a product

3  that could mislead a reasonable consumer. . . . [T]his is a question 'courts are well-equipped

4  to handle.'" (quotation omitted)). At the motion to dismiss stage, courts must "apply a

5  standard derived from Rule 12(b)(6) jurisprudence: whether the complaint plausibly asserts

6  a claim that would not implicate the doctrine." *Cnty. of Santa Clara v. Astra USA, Inc.*, 588

7  F.3d 1237, 1251-52 (9th Cir. 2009), *rev'd on other grounds sub nom.*, 131 S. Ct. 1342 (2011).

8       Post nevertheless claims "a stay pending FDA's redefinition of 'healthy' is

9  appropriate" based on FDA "announc[ing] 'the establishment of a docket to receive

10 information and comments on the use of the term "healthy" in the labeling of human food

11 products.'" (Mot. at 30 (quoting 81 Fed. Reg. 66,562, 66,562 (Sept. 28, 2016).) This

12 announcement, however, is irrelevant. FDA made the announcement in response to a petition

13 requesting amendments to 21 C.F.R. § 101.65(d)(2), which governs the use of "healthy" in

14 connection with a statement about a food's nutrients. *See* 81 Fed. Reg. at 66,564. Thus, the

15 petition and FDA's solicitation of comments has nothing to do with plaintiffs' challenges to

16 labeling statements that do not use the word "healthy," but merely "imply a food is 'healthy'"

17 (Mot. at 23). Moreover, even if FDA enacts every amendment requested, none would affect

18 plaintiffs' claims. *See* 81 Fed. Reg. at 66,564 (requested amendment would allow "healthy"

19 nutrient content claims despite disqualifying levels of *fat*, where the fat comes from certain

20 whole foods). Thus, even if the requested amendments were imminent—and they are not,

21 since FDA has only agreed to receive comments, and may never propose a rule change—the

22 analysis would not change. (*See* Persinger Decl. Ex. 9 (declining to stay or dismiss case under

23 primary jurisdiction doctrine because nothing in FDA's statements gave "any indication that

24 potential changes to the applicable regulation would being Defendant's Product into

25 compliance" (citing 81 Fed. Reg. at 66,564)).)

26                                **CONCLUSION**

27      The Court should deny Post's motion, but if it is inclined to grant the motion in any

28 respect, plaintiffs respectfully request it be without prejudice and with leave to amend.

30

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

Dated: January 13, 2017          /s/ Jack Fitzgerald

2

**THE LAW OFFICE OF JACK FITZGERALD, PC**

3

JACK FITZGERALD

*jack@jackfitzgeraldlaw.com*

4

TREVOR M. FLYNN

*trevor@jackfitzgeraldlaw.com*

5

MELANIE PERSINGER

6

*melanie@jackfitzgeraldlaw.com*

Hillcrest Professional Building

7

3636 Fourth Avenue, Suite 202

8

San Diego, California 92103

Phone: (619) 692-3840

9

Fax: (619) 362-9555

10

***Counsel for Plaintiffs and the Putative Class***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)

PLAINTIFFS' OPPOSITION TO POST FOODS' MOTION TO DISMISS FIRST AMENDED COMPLAINT