**VENABLE LLP**
Angel A. Garganta (SBN 163957)
Email: agarganta@venable.com
Brian A. Featherstun (SBN 292625)
Email: bafeatherstun@venable.com
Cody S. Lonning (SBN 301972)
Email: cslonning@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone:    415.653.3750
Facsimile:    415.653.3755

Attorneys for Defendant
POST FOODS, LLC

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE KROMMENHOCK, and STEPHEN HADLEY, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>POST FOODS, LLC,<br><br>Defendant. | CASE NO.: 3:16-cv-04958-WHO<br><br>**POST FOODS LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, STAY THIS ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION**<br><br>Date:    February 15, 2017<br>Time:    2:00 p.m.<br>Dept:    Courtroom 2<br>Judge:    Hon. William H. Orrick<br><br>Action Filed:    August 29, 2016<br>Trial Date:    None. |

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...........................................................................................................2

I.     PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BECAUSE THEY SEEK TO IMPOSE OBLIGATIONS THAT FDA HAS CONSIDERED AND REJECTED ..................................................................................................2

        A.     Section 343(a) Does Not Save Plaintiffs' Claims From Preemption..................4

II.    PLAINTIFFS' CLAIMS ARE CONFLICT PREEMPTED BECAUSE THEY FRUSTRATE FDA'S INTENT..................................................................................5

III.   PLAINTIFFS' CLAIMS RELATED TO SPECIFIC TERMS FAIL BECAUSE THOSE TERMS COMPLY WITH FDA REGULATIONS OR RAISE ONLY MERE NON-MISLEADING TECHNICAL VIOLATIONS ...........................................7

        A.     Post's Label Statements Comply With Applicable FDA Regulations.................7

        B.     Plaintiffs' Only Remaining Challenges Raise Two Mere Technical Violations On A Single Product ...............................................................11

IV.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THAT A REASONABLE CONSUMER WOULD BE MISLED ...........................................................................12

        A.     Plaintiffs Rely On A Duty To Warn That Does Not Exist As A Matter Of Law ..................................................................................................12

        B.     Many of the Challenged Statements Are Puffery ...............................................15

V.     PLAINTIFFS' BREACH OF WARRANTY CLAIMS FAIL .......................................16

VI.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF........................17

VII.  PLAINTIFFS LACK STANDING TO BRING CLAIMS FOR UNPURCHASED PRODUCTS OR BASED ON ADVERTISEMENTS THEY DID NOT SEE .............18

VIII. ALTERNATIVELY, A STAY UNDER PRIMARY JURISDICTION IS WARRANTED ...............................................................................................19

CONCLUSION.......................................................................................................20

1

2

## **<u>TABLE OF AUTHORITIES</u>**

3

**Page(s)**

4

**Cases**

5

*Ackerman v. Coca-Cola Co.*,
No. 09-395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010).......................................................1

6

*Backus v. Nestlé USA, Inc.*,
167 F. Supp. 3d 1068 (N.D. Cal. 2016) ..............................................................................2, 3

7

8

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ...............................................................................................17

9

10

*Brazil v. Office of Pers. Mgmt.*,
35 F. Supp. 3d 1101( N.D. Cal. 2014) ...................................................................................5

11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ..........................................................................................................4

12

13

*Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*,
24 F. Supp. 3d 750 (N.D. Ill. 2014) ......................................................................................3

14

15

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...............................................................................................................17

16

17

*In re: Coca-Cola Prod. Mktg. & Sales Practices Litig. (No. II)*,
No. 14MD02555JSWMEJ, 2016 WL 6245899 (N.D. Cal. Oct. 26, 2016) ...........................14

18

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) ...................................................................................18

19

20

*Cortina v. Goya Foods, Inc.*,
94 F. Supp. 3d 1174 (S.D. Cal. 2015)...................................................................................15

21

22

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .................................................................................................5

23

*Gorenstein v. Ocean Spray Cranberries, Inc.*,
No. CV 09-5925 GAF(CWx), 2010 WL 10838229 (C.D. Cal. Jan. 29, 2010) .......................5

24

25

*Gubala v. CVS Pharm., Inc.*
No 14 C 9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015) .............................................3, 4

26

*Ham v. Hain Celestial Grp., Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) .............................................................................17, 19

27

28

*Hawkins v. Kellogg Co.*,
No. 16-CV-0147-JAH (JMA), 2016 WL 7210381 (S.D. Cal. Dec. 13, 2016) .........................3

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

*Kane v. Chobani*,
   645 Fed. App'x 596 (9th Cir. 2016) ...................................................................20

*Kardovich v. Pfizer, Inc.*,
   97 F. Supp. 3d 131 (E.D.N.Y. 2015) ..................................................................15

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010) ............................................................................19

*Lam v. Gen. Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) ..............................................................16

*Mills v. Giant of Md., LLC*,
   508 F.3d 11 (D.C. Cir. 2007) ..............................................................................14

*Morgan v. Wallaby Yogurt Co., Inc.*,
   No. 13-CV000296-WHO, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013) ................13

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003) .................................................................15

*In re Quaker Oats Labeling Litig.*,
   No. 10-502, 2012 WL 1034532 (N.D. Cal. Mar. 28, 2010) ...................................7

*Rahman v. Mott's LLP*,
   No. CV 13–3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014)......................18

*Rushin v. Williams-Sonoma, Inc.*,
   No. 16-cv-01421-WHO, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) ...............19

*S.F. v. Archer-Daniels-Midland Co.*,
   No. 13–CV–634S, 2014 WL 1600414 (W.D.N.Y. Apr. 21, 2014) ........................15

*Salazar v. Honest Tea, Inc.*,
   74 F. Supp. 3d 1304 (E.D. Cal. 2014)..................................................................16

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-CV-02976-WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29, 2016) ..............18

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ............................................................................18

*Williams v. Gerber Prods., Co.*,
   552 F.3d 934 (9th Cir. 2008) ..............................................................................16

*Yumul v. Smart Balance, Inc.*,
   No. CV 10-00927 MMM, 2011 WL 1045555 (C.D. Cal. Mar. 14, 2011) ..............17

*Zupnik v. Tropicana Prods, Inc.*,
   No 09-CV-6130, 2010 WL 6090604 (C.D. Cal. Feb. 1, 2010) ...............................5

**V E N A B L E   L L P**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**Statutes**

21 U.S.C. § 343-1(a) ...................................................................................................2

21 U.S.C. § 343(a) .................................................................................................4, 5

21 U.S.C. § 343(r)(2)(G) .........................................................................................11

**Other Authorities**

21 C.F.R. § 101.13(b)(2)(i) .......................................................................................9

21 C.F.R. § 101.13(b)(2)(ii) ...........................................................................8, 9, 10

21 C.F.R. § 101.14(a)(4) ......................................................................................1, 17

21 C.F.R. § 101.14(a)(5) ............................................................................................8

21 C.F.R. § 101.14(d)(2)(iv) ....................................................................................11

21 C.F.R. § 101.65(c)(1) ...................................................................................7, 8, 9

21 C.F.R. § 101.75(c) ...............................................................................................11

21 C.F.R. § 101.9(b)(6) ............................................................................................10

21 C.F.R. § 101.9(d)(8)(iii) ......................................................................................10

21 C.F.R. § 101.9(b)(9) ............................................................................................10

21 C.F.R. § 101.13(f)(5) ...........................................................................................10

21 C.F.R. § 101.13(q)(5)(iii) ....................................................................................10

21 C.F.R. § 101.13(b)(2)(iii)(F) ...............................................................................10

21 C.F.R. § 101.54(g)(4) ..........................................................................................11

21 C.F.R. § 101.13(c)(1)(ii) ......................................................................................10

21 C.F.R. § 101.61(b)(1)(ii) ......................................................................................10

21 C.F.R. § 101.62(b)(1)(ii) ......................................................................................10

21 C.F.R. § 101.62(c)(1)(ii) .......................................................................................10

21 C.F.R. § 101.62(d)(1)(i)(B) ..................................................................................10

77 Fed. Reg. 7946 ......................................................................................................4

81 Fed. Reg. 33,741 ...................................................................................................2

81 Fed. Reg. 33,742 ............................................................................................ *passim*

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

81 Fed. Reg. 66,562 ..............................................................................................20

Restatement (Second) of Torts § 402A (1965) ......................................................14

Fed. R. Civ. P. 12(b)(1)........................................................................................18

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

V E N A B L E  L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

## PRELIMINARY STATEMENT

This case is ripe for dismissal, with prejudice.  All of Plaintiffs' claims are preempted because FDA has issued regulations governing the disclosure of added sugar.  During its rulemaking, FDA considered and rejected the 5% DRV Plaintiffs admit they rely upon, declined to require any affirmative warnings about the alleged dangers of sugar anywhere on product packaging, and provided manufacturers until 2018 to disclose added sugar content.  Plaintiffs nonetheless ask this Court not only to hold Post liable for not providing the very disclosures and warnings that FDA rejected, but also for making any statements that Plaintiffs perceive as implying the Products are "healthy" because Post has not provided those disclosures and warnings.  These are "requirements" that are not "identical" to FDA's regulations, and are both express and conflict preempted.  Plaintiffs' challenges to specific label statements similarly fail, either because Post's statements comply with FDA regulations or, as to only a single product, raise only non-actionable technical, non-misleading violations.

Plaintiffs do not plausibly allege how consumers could be misled, given that the amount of sugar is both clearly disclosed on the Nutrition Facts Panels of all the Products and elsewhere on the labels of many Products.  Their claims that numerous true and otherwise accurate statements that have nothing to do with sugar  are somehow misleading because they do not warn of the "dangers" of added sugar also fail in light of FDA's rejection of such warnings.  Faced with that, Plaintiffs are left to rely on a theory that Post was somehow obligated to warn about the dangers of *overconsuming* sugar.  But claims based on failure to warn about the risk of overconsumption fail as a matter of law, when, as here, the risks are well-known. There is no duty to warn of the obvious.  Similarly, Plaintiffs' claim that Post breached "health" warranties due to "excessive" sugar fails because sugar content is disclosed, FDA rejected Plaintiffs' subjective definition of "excessive," and such claims are preempted. [1]

---

[1] Plaintiffs challenge numerous FDA-regulated "healthy" and nutrient content label claims based on the use of sugar.  But FDA has never listed sugar as a "disqualifying" nutrient that would preclude those claims.  21 C.F.R. § 101.14(a)(4); *see also Ackerman v. Coca-Cola Co.*, No. 09-395, 2010 WL 2925955, at *8 (E.D.N.Y. July 21, 2010).  Plaintiffs' attacks on these claims are therefore preempted.

Plaintiffs admit they never saw or relied on statements on Post's website or directed towards children and, as a result, they lack standing to pursue claims based on them.  Their injunctive relief claim should be dismissed because Plaintiffs cannot be "deceived" in the future now that they are aware of the supposed "deception."  Finally, and alternatively, a stay under primary jurisdiction is appropriate here because FDA is currently reviewing the circumstances under which the use of "healthy" and broadly related terms on product labeling may be misleading.

## ARGUMENT

## I. PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BECAUSE THEY SEEK TO IMPOSE OBLIGATIONS THAT FDA HAS CONSIDERED AND REJECTED

Plaintiffs cannot use state consumer protection laws to create food labeling obligations, either "directly or indirectly," that are not "identical" to what Congress and FDA require.  *See, e.g.*, 21 U.S.C. § 343-1(a); *Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1076 (N.D. Cal. 2016).  FDA recently engaged in extended rule-making regarding added sugar, culminating in its May, 2016 Final Rule.  *See* NFP Final Rule, 81 Fed. Reg. 33,742. [2]  Plaintiffs are therefore dead wrong that their case merely asserts consumer protection claims in the "absence of regulation." *See, e.g.* Opposition ("Opp.") at 15.  Instead, Plaintiffs want to use California's consumer protection laws to conduct an end-run around FDA's rulemaking, not only to impose disclosure and warning requirements beyond and even directly contrary to what FDA chose, but also to prohibit Post from making any statements (even if true and accurate) that Plaintiffs believe suggest the Products are "healthy" unless such warnings are given.  But under FDA's rulemaking, these disclosures, warnings, and prohibitions either do not need to be made until 2018, or are not required at all.  That is far from "identical" and triggers textbook preemption.

Plaintiffs allege that the Products are misleadingly labeled because they contain "excessive" sugar, which they define as any amount above the American Heart Association's 5% Daily Recommended Value ("DRV").  *See* Opp. at 3.  But Plaintiffs do not dispute that, during its rulemaking, FDA directly considered and rejected this same 5% DRV because "it is possible to

---

[2] Post's opening brief inadvertently cited to the NFP Final Rule at 81 Fed. Reg. 33,741, rather than 81 Fed. Reg. 33,742.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

construct a healthful dietary pattern that includes more than five percent of calories from added sugar." *See* 81 Fed. Reg. 33,742, at 33,849.   Requiring label changes on the ground sugar content is "excessive" based on the same threshold FDA rejected is not an "identical" requirement and is preempted.   Plaintiffs' opposition ignores the cases cited in Post's opening brief holding that preemption is appropriate when "the FDA specifically considered and rejected a proposal to enforce stricter requirements for labeling products." *See, e.g.*, *Gubala v. CVS Pharm., Inc.* No 14 C 9039, 2015 WL 3777627, at *4 (N.D. Ill. June 16, 2015); *see also* Opening Brief ("Op. Br.") at 8-11.

Plaintiffs also allege that Post is currently "under a duty to disclose" the "amount and dangers of added sugar in its Products." [3] *See* FAC at ¶ 264.   This claim is preempted for two reasons.   *First*, FDA gave manufacturers until 2018 to include added sugar disclosures. *See* 81 Fed. Reg. 33,742.   Claims seeking disclosure of added sugar prior to 2018 are therefore preempted. *See Backus* at 1072-73 (plaintiff's claims preempted because she sought to impose an immediate ban when FDA chose a compliance period of three years); *Hawkins v. Kellogg Co.*, No. 16-CV-0147-JAH (JMA), 2016 WL 7210381, at *9 (S.D. Cal. Dec. 13, 2016) (same).   *Second*, any requested warning of the alleged dangers of added sugar is a preempted non-"identical" requirement because FDA affirmatively considered and *rejected* such a requirement.   *See* 81 Fed. Reg. 33,742, at 33,829.   During its rulemaking, FDA received "[s]everal comments suggest[ing] that we require various warning statements on the label related to added sugars to warn consumers of the negative health effects of added sugars." *Id.*   FDA rejected any such warning because they were "not consistent with [FDA's] review of the evidence." *Id.*   This rejection included any statements linking added sugar to obesity, type II diabetes, or cardiovascular disease, the same purported health risks on which Plaintiffs base their Complaint. *Compare id. with* FAC, ¶ 70 (alleging excessive sugar consumption leads to obesity, type II diabetes, and cardiovascular disease).   Plaintiffs cannot use consumer protection laws to impose a labeling requirement FDA

---

[3] While Plaintiffs' Opposition now argues they do not seek to "requir[e] Defendant to disclose the presence of [added sugar] on its product labels," (Opp. at 16) (second alteration in original), this claim is contrary to the plain language of their Complaint (*see* FAC at ¶ 264 (Post "omits material information regarding the ***amount and dangers*** of the added sugar in its Products" and is therefore "***under a duty to disclose this information*** to consumers") (emphasis added)).

considered and rejected.  *See Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014) (preemption applied because "[d]uring the rulemaking process, the FDA considered but rejected [the requested] disclosure requirement.").

Plaintiffs also want to prohibit Post from making *any* statements Plaintiffs believe suggest the Products are healthy "through labeling statements outside of the Nutrition Facts box" unless Post satisfies the alleged "duty to warn [that] arose here."  *See* Opp. at 16.  This attempt to characterize FDA's added sugar regulations as limited to the Nutrition Facts box misconstrues the scope of FDA's review.  FDA did not regulate *only* the Nutrition Facts box, but rather undertook a wholesale evaluation of the proper regulation of added sugar on product labeling as a whole, considering over 300,000 comments from numerous sources in order to "amend labeling regulations . . . to provided updated nutrition information."  Food Labeling: Revision to the Nutrition and Supplement Facts Labels, 77 Fed. Reg. 7946, 7953 (Feb. 13, 2012).  FDA ultimately declined to require any warnings about added sugar *anywhere* on a product's labeling, or to otherwise bar manufacturers from representing products as healthy due to the presence of added sugar.  Imposing such limitations or requirements now through an alleged state law duty to warn is not an "identical" requirement.  *See Gubala*, at *4 (N.D. Ill. 2015) (claims preempted because they "would require defendants to label their products in a particular way [when] [t]he NLEA does not include such a labelling requirement."); *cf. Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) ("safe harbor" bars claims under UCL where "the Legislature has permitted certain conduct or considered a situation and concluded no action should lie.").

At bottom, while Plaintiffs may not like the regulations FDA issued, that does not lessen their preemptive effect.  Because Plaintiffs seek to use California's consumer protection laws to impose labeling requirements, and those requirements are not "identical" to the regulations FDA promulgated, Plaintiffs' claims are expressly preempted.

A.    Section 343(a) Does Not Save Plaintiffs' Claims From Preemption

Plaintiffs also argue that their claims are not preempted because they challenge only statements that are "false or misleading in any particular," and such claims are permitted under 21 U.S.C. § 343(a).  *See* Opp. at 13.  This argument misconstrues the law.  Section 343(a) is a catch-

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**V E N A B L E  L L P**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

all provision that allows for challenges that labels are false or misleading "*without [FDA] having promulgated regulations* that address the specific false or misleading aspect of the particular label." *Zupnik v. Tropicana Prods, Inc.*, No 09-CV-6130, 2010 WL 6090604, at *2 (C.D. Cal. Feb. 1, 2010) (emphasis added). This section recognizes FDA cannot possibly articulate every possible labeling permutation and reserves the right to challenge false and/or misleading labeling in the *absence* of regulation. That is not the case here, as FDA has conducted an extensive review of the proper regulation of added sugar, as well as many of the individual labeling terms Plaintiffs challenge, and promulgated its chosen regulations. Where, as here, FDA has spoken on an issue, the NLEA's preemption clause prohibits imposing labeling requirements beyond what FDA has prescribed. Allowing Plaintiffs to nonetheless use Section 343(a) to challenge labels that comply with FDA's regulations for sugar or other nutrients or ingredients would allow the exception to swallow the rule. *See Gorenstein v. Ocean Spray Cranberries, Inc.*, No. CV 09-5925 GAF(CWx), 2010 WL 10838229 (C.D. Cal. Jan. 29, 2010) ("To construe Section 343(a) to . . . authorize plaintiffs to sue for any alleged mislabeling of a [product] would eviscerate the strict preemption requirements of Section 343-1.")

Plaintiffs' own cases highlight Section 343(a)'s limitations. For example, *Ebner v. Fresh, Inc.* involved the omission of a supplemental statement not otherwise addressed in FDA's regulations. *See Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016). The court permitted the claim to proceed under Section 343(a) because, given FDA's silence, it would "not amount to something "different from or in addition to" what federal law already requires." *Id*. at 965. And while *Zeisel v. Diamond Foods, Inc.* stated the general proposition that state law can, in some cases, prohibit false or misleading labeling, it found the plaintiff's claims not preempted only because the challenged nutrient content claims did not comply with express FDA regulations, so the suit did not seek a requirement that was not "identical" to FDA's. No. 10-1192, 2010 WL 9509506, at *1 (N.D. Cal. Sept. 3, 2010).

## II.   **PLAINTIFFS' CLAIMS ARE CONFLICT PREEMPTED BECAUSE THEY FRUSTRATE FDA'S INTENT**

Plaintiffs' claims are also preempted under the doctrine of conflict preemption because they would "stand[] as an obstacle to the accomplishment and execution of the full purposes and

1  objectives of Congress." *Brazil v. Office of Pers. Mgmt.*, 35 F. Supp. 3d 1101, 1111 (N.D. Cal.

2  2014).   Plaintiffs claim they challenge only "voluntary" statements made on Post's packaging.

3  Opp. at 20.   As an initial matter, this is false, as FDA has regulated sugar labeling and Post complies

4  with that regulation.   *See supra* Section I.   And many of the challenged statements are also

5  independently regulated by FDA, and comply with those regulations as well.   *See infra* Section

6  III.   As such, Plaintiffs do not challenge statements "not governed by FDA regulations, and

7  [statements] that violate them."  Opp. at 20.

8      Regardless, the theory on which Plaintiffs challenge Post's statements is that Post has

9  misled consumers by making statements Plaintiffs believe represent the Products as "healthy"

10  without warning of the alleged "dangers" of consuming "excess" sugar.  *See generally* FAC.  But

11  FDA has rejected any such warning or disclosure requirements.  *See* 81 Fed. Reg. 33,742, at

12  33,829.  Therefore, in addition to being expressly preempted, Plaintiffs' claims conflict with

13  FDA's stated goal of regulating added sugar, and are conflict preempted as well.

14      FDA also recognized the practical implications a new wave of regulations imposes on

15  manufacturers and the need to allow time to bring products into compliance.   Requiring a

16  disclosure of added sugar now, as Plaintiffs seek to do by suing prior to 2018's compliance date,

17  conflicts with FDA's goal of allowing time to "analyze products for which there may be new

18  mandatory nutrient declarations," "review and update product labels," "make any required changes

19  to the Nutrition Facts label" and "print new labels."  *See* 81 Fed. Reg. 33,742, at 33,967.

20      Moreover, many of the challenged labeling statements have nothing to do with added sugar,

21  but instead provide information about a wide variety of other nutrients such as fiber, whole grains,

22  and ingredients like almonds and blueberries.  *See generally*, FAC.  Holding Post liable for making

23  these statements would frustrate FDA's intent because FDA has made clear it believes "the amount

24  of added sugars in a serving of a product <u>should be considered along with other information on the</u>

25  <u>label</u> when constructing a healthy dietary pattern."  81 Fed. Reg. 33,742, at 33,818.  Barring Post

26  from making statements about other nutrients and ingredients in its Products would undermine

27  FDA's goal of providing information to consumers to inform their dietary patterns.

28

**V E N A B L E   L L P**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

Plaintiffs are also wrong that setting the DRV at 5% of total calories, rather than the 10% that FDA chose, does not in conflict with FDA's objective.  Opp. at 21.  FDA considered and rejected the 5% DRV recommendation.  *See* Op. Br. at 8.  Plaintiffs' attempted end-run around this decision by using state law to impose the same 5% DRV FDA affirmatively rejected turns the rulemaking process on its head – it is simply not credible to argue that the purpose of a law is furthered by doing the very thing it rejected.  *See* 81 Fed. Reg. 33,742, at 33,849 ("We disagree that the DRV for added sugars should be lower than 10 percent of calories.")  Unsurprisingly, courts have rejected similar arguments.  *See Gubala*, at *4.

### III.    PLAINTIFFS' CLAIMS RELATED TO SPECIFIC TERMS FAIL BECAUSE THOSE TERMS COMPLY WITH FDA REGULATIONS OR RAISE ONLY MERE NON-MISLEADING TECHNICAL VIOLATIONS

Recognizing that challenges to specifically regulated labeling terms are preempted (*see In re Quaker Oats Labeling Litig.*, No. 10-502, 2012 WL 1034532, at *3 (N.D. Cal. Mar. 28, 2010)), Plaintiffs argue that specific individual labeling claims on Post's products are either not regulated or violate the regulations.  *See* Opp. at 11.  They are wrong on both counts.  The specific individual terms Plaintiffs challenge either are regulated and comply with the terms of FDA regulations, or, in the case of two statements found only on a single Product, present nothing more than mere technical violations that are not misleading as a matter of law.

### A.    Post's Label Statements Comply With Applicable FDA Regulations

High Fructose Corn Syrup: Plaintiffs contend that "no high fructose corn syrup" violates FDA regulations because subpart D of the regulations does not "prescribe a nutrient content claim for high fructose corn syrup."  Opp. at 11.  This is wrong for two reasons.  *First*, "no high fructose corn syrup" is a permitted "particular implied nutrient content claim."  Particular implied nutrient content claims are defined under 21 C.F.R. § 101.65(c)(1), which, contrary to Plaintiffs' assertion, is part of subpart D.  *Id.* ("Claims about the food or an ingredient therein that suggest that a nutrient or an ingredient is absent or present in a certain amount (e.g., 'high in oat bran') are implied nutrient content claims") (emphasis added).  *Second*, Plaintiffs apparently interpret the regulations to require subpart D to specifically enumerate nutrient content claims for each substance involved in a claim.  While health claims (found in separate subsection E) cannot be used unless they are

1   specifically defined in the regulations, nutrient content claims in subsection D are defined more

2   broadly to allow for a diversity of claims.  For example, the regulations routinely use "high in oat

3   bran" as an example of a permissible nutrient content claim even though subpart D lacks a

4   definition for "oat bran."[4]  *Id.*; Op. Br. at 15.

5       <u>Metabolism and Weight Management</u>:   Plaintiffs contend that labels mentioning

6   metabolism or weight management violate the regulations because "metabolism and weight

7   management are 'states of health' leading to the disease or health-related condition of obesity" or,

8   alternatively, are "unregulated statements to which preemption does not apply."  Opp. at 12.  This

9   is wrong, both under the plain meaning of the regulations and the definitions of these terms

10   themselves.  The regulations define "disease or health-related condition" to mean "damage to an

11   organ, part, structure, or system of the body such that it does not function properly (e.g.,

12   cardiovascular disease), or a state of health leading to such dysfunctioning (e.g., hypertension)."

13   *See* 21 C.F.R. § 101.14(a)(5), Op. Br. at 17–18.  Neither "metabolism," the internal chemical

14   process that occurs within every human body regardless of health, nor "weight management," the

15   conceptual idea of managing one's weight to a certain level, involve "damage" or "dysfunction,"

16   and neither "lead[] to the disease or health-related condition of obesity."  *See* Opp. at 13.  Instead,

17   metabolism and weight management help *avoid* obesity, by managing weight and burning calories,

18   and do not cause "damage" or "dysfunction."

19       <u>Healthy</u>:  Plaintiffs argue that Post's use of the word "healthy" (and its variations) violates

20   FDA regulations because it either does not accompany a statement about a nutrient and its "level,"

21   or is part of a non-compliant health claim.[5]  Opp. at 16-17.  This is also wrong for two reasons.

22

23   [4] Plaintiffs also argue that "no high fructose corn syrup" violates the regulations because it is
     deceptive and even if it "does not . . . implicitly characterize the level of the nutrient in the food,

24   it may be used only if it is not false or misleading."  Opp. at 11 (internal quotation marks omitted).
     As explained above, Section 343(a) does not permit "non-identical" state law claims where, as

25   here, FDA has promulgated regulations.  And even if the statement did not qualify as a nutrient
     content claim, it would not be deceptive.  Post's products contain no high fructose corn syrup, and

26   Plaintiffs do not allege otherwise.

27   [5] Plaintiffs list the following label statements: "each serving [of Honeycomb] helps start the day
     in a healthy way," "WHOLE GRAINS FOR YOUR HEALTHY LIFESTYLE," "Iron & Zinc for
     Growth," "DIETARY FIBER TO HELP MAINTAIN DIGESTIVE HEALTH."   As already

28   discussed, statements about the maintenance of digestive health are not health claims, but rather
     implied nutrient content claims under 21 C.F.R. § 101.13(b)(2)(ii).

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

*First*, statements suggesting that a food "may help consumers maintain healthy dietary practices" are not required to incorporate statements about the nutrient's "level," but merely incorporate an "explicit claim or statement about a nutrient." *See* 21 C.F.R. § 101.13(b)(2)(ii) (defining one type of implied nutrient content claim). Plaintiffs appear to be thinking about a different type of implied nutrient content claim, which requires the suggestion that "a nutrient is absent or present <u>in a certain amount</u>." *See* 21 C.F.R. § 101.13(b)(2)(i) (emphasis added). Under the plain language of the relevant regulation, disclosure of a "certain amount" is not required. *Second*, Plaintiffs are simply wrong that the challenged statements do not accompany a statement about a nutrient; Plaintiffs' own cited Honeycomb example is followed immediately by: "An Excellent Source of 6 B Vitamins, A Total of 10 Essential Vitamins and Minerals, 8g Whole Grain per Serving, Low in Fat and Cholesterol Free." *See* Op. Br., Ohrt Decl., Ex. 43; Garganta Decl., Ex. 6 at 75. Plaintiffs cannot selectively ignore parts of labels that undercut their claims.

<u>Grain-Based</u>: Plaintiffs argue that claims based on statements involving "whole grain," "multi-grain," and the Whole Grain Council stamp[6] are not preempted because (1) "whole grain" is not a nutrient, and (2) while "whole grain" implies the presence of dietary fiber, the statements at issue do not characterize the nutrient amount. Opp. at 17. Plaintiffs err once again by focusing only on the term "nutrient." Under subsection D of the regulations, statements characterizing the level of an <u>ingredient</u> also qualify as implied nutrient content claims. *See* 21 C.F.R. § 101.65(c)(1) (implied nutrient content claims include suggestion that "a nutrient <u>or an ingredient</u> is absent or present in a certain amount (e.g., 'high in oat bran')") (emphasis added). Because "whole grain" and its variations refer to "ingredients," as permitted under the regulations, Plaintiffs' claims fail. *See* Op. Br. at 14-15.

<u>Nutrition Decal</u>: Plaintiffs argue that their challenge to Post's "nutrition benefit" decal is not preempted because Plaintiffs only challenge half of the decal (i.e. the heading). Opp. at 18 and n.9. Though Plaintiffs readily admit that the "nutrition benefit" heading they are challenging is made in conjunction with other statements, they ask the Court to ignore the content to which the

---

[6] Plaintiffs later argues that they do not challenge the "statements that accompany the Whole Grain Council decal, but rather the decal itself." Opp. at 18. The statements Plaintiffs are trying to avoid are part of and printed directly into the decal. *See* Op. Br. at 15 (citing Garganta Decl., Ex. 6).

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1   heading refers.  *Id.*  This argument is belied by Plaintiffs' own argument that consumers evaluate

2   food labels "as a whole," and each of the label statements they challenge are accompanied by

3   nutrient content claims.[7]  *See* Op. Br. at Ohrt Decl., Ex. 1, 2, 3, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 19,

4   38, 39, 42 (challenged labels); Garganta Decl., Ex. 6 at 1, 2, 4, 6, 7, 8, 9, 11, 12, 14, 16, 18, 21–

5   24, 32, 63, 67, 74 (chart detailing nutrition content claims).  Specifically, Plaintiffs argue that Post

6   cannot use "nutrition benefit" together with statements about nutrients and ingredients.  But the

7   regulations allow a label to characterize a food and its nutrients as nutritionally beneficial.  *See* 21

8   C.F.R. § 101.13(b)(2)(ii) (defining one type of implied nutrient content claim as a suggestion that

9   "the food, because of its nutrient content, may be useful in maintaining healthy dietary practices

10   and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy,

11   contains 3 grams (g) of fat")").  Similar to the example provided in the regulations, Post's nutrition

12   benefit decal employs the phrase "nutrition benefits" to introduce the nutrient content claims that

13   follow: "0g Trans Fat, 14g Whole Grain Per Serving."  Op. Br., Ohrt Decl., Ex. 1; Garganta Decl.,

14   Ex. 6.

15   <u>Heart Health Claims</u>:  Plaintiffs argue their challenges to Post's heart health claims should

16   be permitted because (1) Post does not specify which label statements about heart disease are

17   permissible health claims and therefore does not meet its "burden to show preemption;" (2) the

18   label statements are required to reference soluble fiber; (3) to the extent they are permissible claims

19   under FDAMA, they violate other federal provisions; and (4) FDAMA does not preempt the

20   "accompanying statements and depictions."  Opp. at 19–20, n.11.  Plaintiffs are wrong on all

21   counts.  *First*, Post's motion does, clearly, specify which claims are permissible claims.  *See* Op.

22   Br. at 16 (citing FAC, ¶¶ 299 (c–n)).  *Second*, the relevant claims are permissible under FDAMA,

---

23

24   [7] Plaintiffs also use this reasoning to challenge Post's "as prepared" nutrient content claims.
    Plaintiffs admit that labels indicating that certain products contain specific levels of protein on an

25   "as prepared" basis is a nutrient content claim, but argue that the labels are misleading because
    consumers will see "only the large '[ ] PROTEIN' representation," but will somehow miss "WITH

26   MILK* See Nutrition Facts Panel," that appears directly beneath.  Opp. at 12; Op. Br., Ohrt Decl,
    Exs. 5, 7, 14; Garganta Decl., Ex. 6, at 6, 9, 20; *see also* Op. Br. at 18–19, and n.10.  If so, FDA
    would have to rewrite many of its regulations, which require precisely these types of disclosures.

27   *See* 21 C.F.R. § 101.9(d)(8)(iii), 21 C.F.R. § 101.9(b)(6), 21 C.F.R. § 101.9(b)(9), 21 C.F.R. §
    101.13(f)(5), 21 C.F.R. § 101.13(q)(5)(iii), 21 C.F.R. § 101.13(b)(2)(iii)(F), 21 C.F.R. §

28   101.54(g)(4), 21 C.F.R. § 101.13(c)(1)(ii), 21 C.F.R. § 101.61(b)(1)(ii), 21 C.F.R. §
    101.62(b)(1)(ii), 21 C.F.R. § 101.62(c)(1)(ii), 21 C.F.R. § 101.62(d)(1)(i)(B).

V E N A B L E  L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

which lacks a requirement to reference soluble fiber.  *See* Food and Drug Administration Modernization Act of 1997, Public Law 105-115 (S 830) ("FDAMA"), in the section codified at 21 U.S.C. § 343(r)(2)(G) (providing that a health claim may be made "for which the Secretary has not promulgated a regulation" if that claim is based on an "authoritative statement" of "a scientific body of the U.S. government with responsibility for public health protection or nutrition research"); *see also* Garganta Decl., Ex. 8 (identifying authoritative statements).  Third, Plaintiffs' argument that authorized FDAMA claims violate other federal statutes is without merit because FDAMA actually requires the specific wording of each claim.  *See id.*  Fourth, and finally, the accompanying statements and depictions to which Plaintiffs refer[8] are not regulated solely by FDAMA, but also by <u>both</u> 21 C.F.R. § 101.75(c), which permits health claims related to the risk of coronary heart disease, including graphic depictions, and 21 C.F.R. § 101.14(d)(2)(iv), which allows statements to direct the consumer to another location on the label for additional information.  Op. Br. at 17, n.8.

**B.**   <u>Plaintiffs' Only Remaining Challenges Raise Two Mere Technical Violations On A Single Product</u>

Plaintiffs' last remaining challenges attack two technical labeling violations.  *See* Opp. 18–19.  What Plaintiffs fail to mention is that these violations are found only on a single product, Shredded Wheat Lightly Frosted.  *Compare* Opp. at 18 *with* Op. Br., Garganta Decl., Ex. 6 at 63.  Despite this, Plaintiffs argue as though this should preserve their case as to all forty-four challenged Products.  Opp. at 18–19.  Not so.  These allegations are nothing more than mere technical violations that are not misleading as a matter of law, and should be dismissed.

Plaintiffs contend that antioxidant claims must specify a nutrient that is the subject of the claim.  *Id.* at 18; *see also* 21 C.F.R. § 101.54(g)(4) (regulating antioxidants).  Plaintiffs do not allege that this product *lacks* antioxidants (i.e. that the label is false), or that they relied on this particular statement in making their purchasing decision.  Instead, they merely complain that a qualifier identifying the specific antioxidants is not also included with "antioxidants."  Opp. at 18.

---

[8] "Heart Healthy . . . or the depictions of heart in circle . . . or whole grains in a circle."  Opp. at 19, n.11.

Similarly, Plaintiffs challenge a single statement regarding diabetes because there is not a sufficient disclaimer stating that scientific studies regarding diabetes are "limited." *Id.* at 19. Again, Plaintiffs do not allege they relied on this particular statement, or that that the challenged labeling claim is false, only that it lacks an accompanying qualifier. Because the challenged antioxidant claim and diabetes claim on this single product involve nothing more than mere technical violations, they are legally insufficient to maintain Plaintiffs' claims. *See* Op. Br. at 16 (citing law).

## IV.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THAT A REASONABLE CONSUMER WOULD BE MISLED

### A.   Plaintiffs Rely On A Duty To Warn That Does Not Exist As A Matter Of Law

Plaintiffs still fail to plausibly allege how a reasonable consumer could be misled by the challenged labeling. They do not contend that even a single statement on any of the challenged Product labels is actually false. *See generally* Opp. They instead allege that dozens of literally true statements regarding nutrients and ingredients having nothing to do with sugar are nonetheless "misleading" due to the presence of "excess" sugar because Post fails to meet its supposed "duty" to warn of the "dangers" of *overconsuming* sugar in the Products. *See, e.g.*, FAC at ¶ 1 ("***Excessive*** consumption of added sugar is toxic to the human body) (emphasis added); Opp. at 4 ("[C]ereal eaters frequently consume multiple servings at once."). This alleged "duty" does not exist as a matter of law, for at least four reasons: (1) the sugar content of the Products is already clearly disclosed, often on the front labels; (2) FDA considered and rejected any link to the "alleged dangers" Plaintiffs would require warnings for; (3) the potential dangers of overconsuming sugar are well known, and there is no duty to warn of the obvious; and (4) none of the scientific studies in Plaintiffs' Complaint concern Post's Products, and the only studies that mention cereals at all actually note their benefits when not consumed excessively.

The Sugar Content of the Products Is Disclosed: There is no dispute Post discloses the sugar content found in each Product on the Nutrition Facts Panel. *See* Op. Br. at 21 (citing Ohrt Decl., Exs. 1-44). Likewise, many of the Products make other references to sugar in their labeling as well, either through additional banners disclosing the sugar content or names and pictures such as "Sugar Bear" that refer to the presence of sugar. *See* Op. Br. at 21-22 (citing Ohrt Decl.). There

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1   can be no material omission about sugar content where, as here, it is accurately disclosed on the

2   Products' labeling, both in the Nutrition Facts box and on prominently-placed banners, often on

3   the front panel. *See* Op. Br. at 21-22. Post cited numerous cases holding that California consumer

4   protection claims cannot be sustained where the challenged ingredient is clearly and accurately

5   disclosed in this manner. *See id.* Plaintiffs do not respond to these cases, and do not cite a single

6   case to the contrary. *See* Opp. at 2-6. This failure is unsurprising, as courts have recognized that

7   explicit disclosures like those Post makes can dispel any consumer confusion because if "a

8   reasonable consumer was concerned about the sugar content, he or she can see how much sugar is

9   in a product next to the ingredient list." *See Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-

10   CV000296-WHO, 2013 WL 5514563, at *8 (N.D. Cal. Oct. 4, 2013). And any argument that the

11   Product' labels are misleading because they do not also disclose *added* sugar content is preempted

12   until 2018. *See supra*, Section I.

13       <u>FDA Rejected That Added Sugar In And Of Itself Is Dangerous</u>: Post's alleged "duty to

14   warn" is one FDA rejected by opting not to require any warning about sugar. S*ee* 81 Fed. Reg.

15   33,742, at 33,829. Indeed, FDA went a step further and explicitly noted it would be *inconsistent*

16   with the evidence to warn that added sugars are dangerous. *See id.* ("[s]everal comments suggested

17   that we required various warning statements on the label related to added sugars to warn consumers

18   of the negative health effects of added sugar . . . ***[such warnings are] not consistent with [FDA's]***

19   ***review of the evidence***.") (emphasis added). Among the alleged health risks FDA refused to link

20   to added sugar were obesity, type II diabetes, and cardiovascular disease, which Plaintiffs allege

21   make Post's labeling misleading. *See id.*

22       Plaintiffs nonetheless contend that Post had a duty to disclose the allegedly unhealthy or

23   dangerous effects of the Products because Post was "in a superior position to know of the dangers

24   presented by the sugars in its cereal." *See* Opp. at 5-7. This claim that the mere presence of added

25   sugars in cereal presents a danger has also been rejected by FDA. FDA stated that, while it would

26   require added sugar content to be listed by 2018, this requirement "is not related to an independent

27   relationship between added sugar and risk of chronic disease." 81 Fed. Reg. 33,742, at 33,804.

28   That is, FDA did not find any independent link between added sugar and disease. *Id.* FDA drew

a distinction between foods such as Post's cereals that "contain significant amounts of beneficial nutrients as well as added sugar" and those that do not. *Id.* at 33,818. It drew this distinction because it found foods such as "dried fruits, yogurt, and cereal . . . contain significant amounts of beneficial nutrients as well as added sugars" which FDA believed "contribute beneficial nutrients to the diet." *Id.* FDA stated that "there is room for Americans to include limited amounts of added sugar in their eating patterns" which can accommodate nutrient dense foods such as "whole grain breakfast cereals, as long as added sugars do not exceed 10 percent per day." *Id.* FDA's determinations on these issues are highly relevant to whether a reasonable consumer could be misled. *See In re: Coca-Cola Prod. Mktg. & Sales Practices Litig. (No. II)*, No. 14MD02555JSWMEJ, 2016 WL 6245899, at *3 (N.D. Cal. Oct. 26, 2016) (collecting cases explaining that FDA's determinations are relevant to whether a reasonable consumer could be misled by product labeling).

There Is No Duty To Warn Of Known Dangers: Faced with FDA's rejection of an independent link between the mere consumption of added sugar and health dangers, and FDA's acknowledgement of the healthful dietary contributions found in nutrient-dense cereals like Post's Products, Plaintiffs are left to their last-ditch argument. In an attempt to avoid FDA's findings, Plaintiffs argue Post had a duty to warn about "excessive consumption" and "cumulative exposure" to added sugar. *See* FAC at ¶ 1; Opp. at 5, n.3. But it is well-settled there is no duty to warn of "the obvious or 'widely known' risks of consuming a particular food." *Mills v. Giant of Md., LLC*, 508 F.3d 11, 12 (D.C. Cir. 2007); *see also* Restatement (Second) of Torts § 402A (1965) ("[A] seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized.") (emphasis added). While Plaintiffs now claim to be "unaware" of sugar's health risks (*see* Opp. at 5-6), this self-serving claim is not plausible. Plaintiffs' FAC admits that many of the purported health risks they complain of, such as obesity and diabetes, are among the "known dangers" of "long term consumption of excess sugar." *See* FAC, ¶ 27, p. 114:3-4. Post has no duty to warn Plaintiffs of dangers of which they were admittedly aware. And multiple courts agree that, because the dangers

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

of excessive consumption of sugar are "well-known," there is no duty to warn of that danger.  *See Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 532 (S.D.N.Y. 2003) (the dangers of overconsumption of sugar are well-known and thus "liability based on over-consumption is doomed"); *see also S.F. v. Archer-Daniels-Midland Co.*, No. 13–CV–634S, 2014 WL 1600414, at *7 (W.D.N.Y. Apr. 21, 2014) (dismissing plaintiffs' claim because the studies they cite conclude that "it is the <u>over-consumption</u> of fructose that may lead to increased obesity and other adverse health effects") (emphasis added).[9]

 <u>Plaintiffs Rely On Irrelevant Scientific Studies</u>:  Plaintiffs concede that none of studies cited in their Complaint involved the Products at-issue here.  *See* Opp. at 2. They likewise concede that these studies focused on ingredients other than sugar, including ingredients like high fructose corn syrup that are not even present in the Products.  S*ee* Opp. at 2.  And the small minority of studies that even mention cereals actually acknowledge their health benefits. *See* Op. Br. at 5 (recommending people fifty years and older "consume foods fortified with vitamin B12, such as fortified cereals" and diets with increased amounts of "fruit, vegetables, and cereals contributed the most to estimated reduced risk of total mortality.").  As Post explained in its opening brief, where "[t]he scientific materials presented by plaintiffs" do not undercut defendant's labeling statements, "plaintiffs fail[] to raise a plausible claim that [defendant]'s representations are false, deceptive, or misleading." *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 138 (E.D.N.Y. 2015).

 B. <u>Many of the Challenged Statements Are Puffery</u>

 Courts find statements are puffery if they are "vague," "highly subjective," or "lack any clear, objective indication of their levels."  *See, e.g., Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014).  Because many of the challenged statements, such as "touch," "goodness," and "simple" cannot be objectively measured, courts have found these statements are

---

[9] Plaintiffs attempt to distinguish these cases by arguing that they are products liability, rather than false advertising, cases.  *See* Opp. at 6.  This is a distinction without a difference.  The key question in each of these cases, as here, was whether the defendant had a duty to warn the public of the alleged health dangers of sugar.  They did not, because those dangers were well-known to the public.  *See Archer-Daniels-Midland*, 2014 WL 1600414, at *7; *Pelman*, 237 F. Supp. 2d at 532.  In contrast, Plaintiffs' case *Cortina v. Goya Foods, Inc.* involved allegations the defendant omitted material information regarding health risks that were not well-known the public.  *See Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1196 (S.D. Cal. 2015).

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

puffery. *See* Op. Br. at 22-23 (citing cases).  Plaintiffs attempt to avoid these holdings by relying on *Williams v. Gerber Products Co.* to argue the challenged statements cannot be puffery because Plaintiffs allege they are misleading in the context of the package as a whole.  *See* Opp. at 6-7. But *Williams* only allowed claims based on statements the court noted were "arguably puffery" to proceed because they were coupled with affirmative misrepresentations that certain ingredients were present when they were not.  *See Williams v. Gerber Prods., Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008).   Here, Plaintiffs have not alleged that Post's labels contain such affirmative misrepresentations, nor can they.

## V.     PLAINTIFFS' BREACH OF WARRANTY CLAIMS FAIL

Plaintiffs initially challenged 90 labeling statements on alleged breach of warranty grounds.  *See* FAC at ¶ 412.  In their Opposition, Plaintiffs retreat and concede that their claims are based on "Post's express statements that its cereals are "healthy," "heart healthy," and "wholesome nutrition"" and their "theory of breach is that the express warranties were breached because the Products are not healthy and not heart healthy."[10]  Opp. at 21.   Accordingly, at a minimum, Plaintiffs' claims for breach of warranty relating to any challenged labeling that does not include these terms should be dismissed.  *See Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1106 (N.D. Cal. 2012) ("To plead a cause of action for breach of express warranty, a plaintiff must allege the *exact terms* of the warranty.").

All of Plaintiffs' breach of warranty claims also still fail for multiple independent reasons. First, Plaintiffs' theory is the Products are not "healthy," "heart healthy," and "wholesome nutrition" due to allegedly excessive sugar content.  *See* Opp. at 22.  But Plaintiffs acknowledge that individual statements "cannot be viewed in isolation and must be read in the context of the entire package" (Opp. at 23) and the Products accurately disclose their total sugar content.  *See* Op. Br. at 21-22.  Any claim this disclosure is somehow inadequate is preempted.  *See supra,* Sections I, II.  Second, Plaintiffs' claim that sugar consumption above 5% DRV is "excessive" has

---

[10] Plaintiffs now concede the Products are fit for their ordinary purpose.  *See* Opp. at 23.  To avoid dismissal of their implied warranty claims, Plaintiffs make clear they are alleging breach of implied warranty only based on the "promises or affirmations made on the container or label," language nearly identical to express warranty.  *Id.*  Therefore, both their express and implied warranty claims rise and fall together with those express statements.

been rejected by FDA.  *See supra,* Sections I, II, IV.  Third, the claim that Products labeled "healthy" breach warranties due to sugar content is preempted by FDA regulations, which identify only fat, saturated fat, cholesterol, and sodium as "disqualifying nutrients" precluding "healthy" and nutrient content claims.  *See* 21 C.F.R. § 101.14(a)(4).  Post's labels comply with those regulations. *See supra,* Section III; *Yumul v. Smart Balance, Inc.*, No. CV 10-00927 MMM, 2011 WL 1045555, at *9 (C.D. Cal. Mar. 14, 2011) (consumer protection claims challenging compliant labeling are preempted).  Plaintiffs' breach of warranty claims should accordingly be dismissed.

## VI.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiffs lack Article III standing because they cannot be deceived by the Products' labeling again (as they allegedly already were).  *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014) (Orrick, J.) ("Consumers who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future.").  Faced with this barrier, Plaintiffs argue that they have standing to seek an injunction because if they ever sought to purchase Post cereal again (1) Plaintiffs would be unable to determine if the products have been reformulated, or if they continue to be allegedly deceptively labeled; and (2) continued allegedly deceptive labeling would force Plaintiffs to pay a price premium should Plaintiffs desire a "reward or treat."  Opp. at 24–25 (citing FAC at ¶ 121).  Both arguments rely on conjecture, which cannot confer standing.

In order to establish prospective injunctive relief, a plaintiff must demonstrate a "real and immediate threat of repeated injury."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  The alleged threat cannot be "conjectural" or "hypothetical."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks and citations omitted).  Both of Plaintiffs' arguments hinge on hypothetical scenarios in which Plaintiffs might consider purchasing Post products.  FAC ¶ 120–21 ("If [Plaintiffs] can be assured . . . they **would consider** purchasing Post cereals," and Plaintiffs "**might, under certain circumstances, consider** purchasing Post cereals in the future . . .") (emphases added).  These hypotheticals are inadequate to establish Article III standing as a matter of law.  *Rahman v. Mott's LLP*, No. CV 13–3482 SI, 2014 WL 5282106, *6 (N.D. Cal. Oct. 15, 2014) ("[A] plaintiff may not manufacture standing for

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

V E N A B L E  L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

injunctive relief simply by expressing an intent to purchase the challenged product in the future."). Indeed, this Court has already rejected just this type of argument. *See Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2016 WL 4502528, at *6 (N.D. Cal. Aug. 29, 2016) ("[Plaintiff] has not plausibly alleged an intent to purchase [defendants] products in the future" and therefore cannot establish that there is a "sufficient likelihood" that he will be injured in the future as required to establish Article III standing."); *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 981 (C.D. Cal. 2015) ("Plaintiffs' equivocal, speculative assertion that they 'may consider' or 'will consider' purchasing [defendant's products] in the future if they are not mislabeled does not satisfy [Article III's] standard.").

Plaintiffs also lack standing to seek injunctive relief as to Products that have been discontinued.  They incorrectly claim that Post attempts to introduce evidence regarding discontinued products beyond the pleadings.  *See* Opp. at 27 n. 14.  They are wrong as a matter of law.  *See, e.g.*, *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdiction attacks [for lack of standing] can be either facial or factual.").  Their claims for injunctive relief as to discontinued products (*see* Op. Br. at 27) should accordingly be dismissed.

## VII. PLAINTIFFS LACK STANDING TO BRING CLAIMS FOR UNPURCHASED PRODUCTS OR BASED ON ADVERTISEMENTS THEY DID NOT SEE

Plaintiffs concede that they did not purchase eight of the Products they now sue on, but argue they still have standing to pursue claims as to these Products.  *See* Opp. at 27-29.  Not so. Unlike cases Plaintiffs cite, this case does not involve the same allegedly deceptive statement being made across numerous products, such as the same "natural" or "organic" label appearing on a variety of products.  *See id.* at 27.  Instead, Plaintiffs argue they were allegedly deceived by a variety of different labeling statements that vary significantly across Post's different Products.  The sheer volume of differing statements Plaintiffs challenge is best shown by the fact that their Amended Complaint requires over sixty pages, several hundreds of paragraphs, and a lengthy Appendix to describe the full spectrum of labeling claims that Plaintiffs challenge.

Critically, Plaintiffs do not allege that the specific challenged labeling statements are uniform, or even similar, between the Products purchased and those that were not.  Instead, Plaintiffs argue that because the Products "differ mainly in the flavor ingredients(s)" and allegedly

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

"have similar sugar content," they have standing.  *See* Opp. at 28.  This argument reflects a fundamental misunderstanding of the applicable law.  A plaintiff can pursue claims for unpurchased products only if "resolution of *the asserted claims* will be identical between the purchased and unpurchased products."  *See Rushin v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2016 WL 4269787, at *4 (N.D. Cal. Aug. 15, 2016) (emphasis added); Here, Plaintiffs' challenges focus on specific labeling statements, not only ingredients.  Having failed to establish the challenged labels are similar, Plaintiffs cannot bring claims for products they have not purchased.

Similarly, Plaintiffs concede they do not allege reliance on the statements made on Post's website or directed towards children.  *See* Opp. at 29 n. 16.  *See Bruton v. Gerber Prods. Co.*, No. 12-2412, 2014 WL 17211, at *9 (N.D. Cal. Jan. 15, 2014) (plaintiffs "do[] not have standing to assert claims based on statements [they] did not view."); *see also Phillips v. Apple, Inc.*, No. 15-4879, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016) (same).  Courts have "an independent obligation to examine standing to determine whether it comports with the case or controversy requirement of Article III" which is "the irreducible constitutional minimum."  *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010).  A party asserting federal jurisdiction "bears the burden of establishing [standing] at every stage of the litigation."  *Id.*  Because Plaintiffs concede they did not see or rely upon these statements, they lack standing as a matter of law.  *Ham* 70 F. Supp. 3d at 1197.

## VIII.   ALTERNATIVELY, A STAY UNDER PRIMARY JURISDICTION IS WARRANTED

As Plaintiffs acknowledge, FDA recently opened a comment period regarding the proper regulation of "healthy" labeling.  *See* Opp. at 30.  FDA has made clear the scope of this review is broad and that FDA is "particularly interested" in "when, if ever, the use of the term 'healthy' may be false or misleading," as well as what "other words or terms might be more appropriate (*e.g.*, 'nutritious')" than "healthy" to characterize foods which contribute to healthy dietary practices." *See* Use of the Term "Healthy" in the Labeling of Human Foods Products; Request for Information and Comments, 81 Fed. Reg. 66,562, at 66,562 (Sept. 28, 2016).  FDA's decisions on this issue

1    could be highly relevant here, as Plaintiffs' claims rest entirely on Post's use of "healthy," along

2    with other terms Plaintiffs claim misleadingly "characterize" the Products as healthy.

3          The Ninth Circuit has recognized that FDA's pending evaluation of a particular aspect of

4    labeling warrants a stay under the doctrine of primary jurisdiction.  *See Kane v. Chobani*, 645 Fed.

5    App'x 596 (9th Cir. 2016).  Only one of the cases cited by Plaintiffs involved a comparable active

6    review.  *See* Opp. at 29-30.  The Alameda Superior Court's decision in *Dacorsky v. Premier*

7    *Organics* (*see* Persinger Decl. Ex. 9) is not binding on this Court, and appears to conflict with the

8    Ninth Circuit's decision in *Kane*.  There, the Ninth Circuit ordered a stay because "the FDA [had]

9    issued a request for comments regarding the use of "natural" in connection with food product

10   labeling."  *Id.*  Because FDA has now opened a comment period on the regulation of "healthy"

11   claims, if this Court does not dismiss this case entirely, it should conserve judicial resources by

12   staying it pending FDA's ongoing review.[11]

13                                   **CONCLUSION**

14         Post respectfully requests that the Court dismiss Plaintiffs' Complaint.  Dismissal should

15   be with prejudice because Plaintiffs have already had the opportunity to amend in response to

16   Post's first motion to dismiss, and further amendment would be futile.  Alternatively, Post

17   respectfully requests the Court stay this case under the doctrine of primary jurisdiction.

18

19   DATED:  January 27, 2017            **VENABLE LLP**

20                                       By:    /s/ Angel A. Garganta
21                                              Angel A. Garganta
                                                505 Montgomery St., Suite 1400
22                                              San Francisco, CA 94111
                                                Telephone: (415) 653-3750
23                                              Facsimile: (415) 653-3755

24                                              Attorneys for Defendant Post Foods, LLC

25   _____

26   [11] Plaintiffs' claimed prescience of what FDA's ultimate decision on "healthy" and similar claims
     might be, *see* Opp. at 30, is nothing more than pure conjecture.  The uncertainty regarding what
27   FDA's ultimate decision will be is precisely why a stay is warranted, as it may go directly to the
     viability of Plaintiffs' claims.  Primary jurisdiction encourages deference to an administrative
28   agency in such circumstances, particularly on issues under active consideration.  *See Kane v.
     Chobani*, 645 Fed. App'x at 596.

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750