UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE KROMMENHOCK, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>POST FOODS, LLC,<br><br>        Defendant. | Case No.  16-cv-04958-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 44 |

## INTRODUCTION

Plaintiffs Debbie Krommenhock and Stephen Hadley bring this putative class action on behalf of a class of California consumers who purchased "high-sugar" cereal products manufactured by defendant Post Foods, LLC ("Post").  According to plaintiffs, those products' labels contain health and wellness claims that are false and misleading due to the cereals' high added sugar content.  Under plaintiffs' sprawling theories, Post's labels violate various California consumer protection statutes because the cereal labels' falsely and misleadingly suggest the cereals are healthy but they are not because consumption of excessive amounts of added sugar can cause adverse health conditions.  Post moves to dismiss, arguing that plaintiffs' claims are preempted by federal law, none of the challenged labeling claims are illegal, no reasonable consumer could be misled by the alleged health and wellness claims, and plaintiffs lack standing to pursue many of their legal theories.  Preemption does not apply to most of plaintiffs' claims.  Post's motion is granted in part and denied in part as outlined below.

## BACKGROUND

## I.    REGULATORY SCHEME

### A.    Food Product Labeling

The Federal Food, Drug, and Cosmetic Act ("FDCA") was enacted in 1938 and prohibits

the misbranding of food.  The Food and Drug Administration ("FDA") enforces the FDCA and develops regulations governing the labeling of food products.  Congress amended the FDCA in 1990 through the passage of the Nutritional Labeling and Education Act ("NLEA"). The purpose of the NLEA was to "'clarify and to strengthen [FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods.'" *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 880 (11th Cir.1997) (quoting H.R.Rep. No. 101–538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337).  The various subsections of 21 U.S.C. § 343 set forth the conditions under which food is deemed "misbranded." In general, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular." The Sherman Law expressly incorporates the FDCA (as amended by NLEA) as California's own law.  Cal. Health & Safety Code § 110100.

### B.    Food and Drug Administration Rulemaking on Added Sugar

In early 2012, the FDA initiated its rule-making process to amend regulations governing nutrition labeling of conventional food products.  In May 2016, the FDA issued a final rule which, among other things, revised food labeling requirements regarding "added sugars."  The provisions relevant here require manufacturers to include on the Nutrition Facts Panel ("Panel") "the gram amount of 'added sugars' in a serving of a product, establishing a Daily Reference Value (DRV), and requiring the percent Daily Value (DV) declaration for added sugars."  81 Fed. Reg. 33,741, at 33,744.  Additionally, the final rule requires the Nutrition Facts Panel to change "Sugars" to "Total Sugars" and requires that "Includes 'X'g Added Sugars" be indented and declared directly below "Total Sugars" on the label.  81 Fed. Reg. 33,741, at 33,744.  The final rule became effective on July 26, 2016, and sets a compliance date of July 26, 2018,[1] to allow manufacturers a two-year window "to analyze products and to review, update, change, and print labels."  81 Fed. Reg. 33,741, at 33,967.

The final rule establishes a DRV of 10 percent of total calories from added sugar, despite

---

[1] The July 26, 2018 compliance date applies only to manufacturers with more than $10 million in annual food sales; manufacturers with less than $10 million in annual food sales must comply with the final rule by July 26, 2019.  81 Fed. Reg. 33,741, at 33,967.

the American Heart Association's recommendation that the maximum amount be 5 percent.[2] 81

Fed. Reg. 33,741, at 33,849. Responding to the AHA's recommendation, the FDA stated "[w]e

disagree that the DRV for added sugars should be lower than 10 percent of calories or that there is

adequate evidence at this time to set a DRV for added sugars of less than 5 percent calories," and

noted that the 10 percent figure "is more realistic considering current consumption of added sugars

in the United States." 81 Fed. Reg. 33,741, at 33,849. The FDA also declined to convey that the

DRV of 10 percent "is a maximum rather than a recommended amount," noting that "such

language would not be appropriate because we do not require this information for other nutrients

with DRVs." 81 Fed. Reg. 33,741, at 33,829.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Post is the third largest cereal manufacturer in the United States, and produces, markets,

and sells the 44 cereal products at issue in this case.[3] FAC ¶¶ 110, 118. Plaintiffs Debbie

Krommenhock and Stephen Hadley are California residents and consumers of Post's cereal

products.[4] FAC ¶¶ 4-5, 335, 356. Plaintiffs allege that Post falsely and misleadingly labels its

---

[2] *See* FAC ¶ 17 n.10 & ¶ 26 n. 17.

[3] Plaintiffs challenge labeling claims made on 44 different Post cereal products that Post markets and sells under four main cereal lines:
  (1) "Post Selects/Great Grains Cereals" including: Selects Blueberry Morning; Great Grains Blueberry Morning; Selects Cranberry Almond Crunch; Selects/Great Grains Cranberry Almond Crunch; Great Grains Cranberry Almond Crunch; Selects Banana Nut Crunch; Great Grains Banana Nut Crunch; Selects/Great Grains Raisins, Dates & Pecans; Great Grains Raisins, Dates & Pecans; Selects Maple Pecan Crunch; Selects/Great Grains Crunchy Pecans; Great Grains Crunchy Pecans; Great Grains Blueberry Pomegranate; Protein Blend: Honey, Oats & Seeds; and Protein Blend: and Cinnamon Hazelnut.
  (2) "Post Honey Bunches of Oats Cereals" including: Honey Roasted; Raisin Medley; With Almonds; With Pecan Bunches; With Cinnamon Bunches; With Apples & Cinnamon Bunches; With Vanilla Bunches; With Real Strawberries; With Real Peaches; Fruit Blends – Banana Blueberry; Fruit Blends – Peach Raspberry; Tropical Blends – Mango Coconut; Whole Grain Honey Crunch; Whole Grain with Vanilla Bunches; Greek Honey Crunch; Greek Mixed Berry; Honey Roasted Granola; Raspberry Granola; Cinnamon Granola; and Protein Granola with Dark Chocolate.
  (3) "Post Shredded Wheat" including Honey Nut; Crunch!; and Lightly Frosted.
  (4) "Single-Variety Post Cereals" including Raisin Bran; Bran Flakes; Alpha-Bits; Golden Crisp; Honeycomb; and Waffle Crisp.
FAC ¶ 110.

[4] Krommenhock purchased six of 44 Post cereals at issue; Hadley purchased 30, but "believes he may also have purchased" six other cereals at issue. FAC ¶¶ 359, 363. Post alleges that eight of the products at issue were not purchased by either plaintiff. Mot. 3; Garganta Decl., Ex. 1 (Dkt.

high-sugar cereals[5] with health and wellness statements which "suggest its cereals are healthy food choices" when in fact these cereals contain high amounts of added sugar, "such that their regular consumption is likely to contribute to excess added sugar consumption and, thereby, increased risk for and contraction of chronic disease." FAC ¶¶ 114, 116. Plaintiffs allege that Post employs its "longtime practice of intentionally and strategically marketing high-sugar cereals with health and wellness claims that both deceptively suggest the products are healthy, and deceptively omit the dangers of consuming the products" to "artificially and fraudulently inflate" the price and market demand for its high-sugar cereals. FAC ¶ 323, 378.

As background for their allegations, plaintiffs cite to numerous scientific studies and medical publications to show that excess sugar intake is associated with various adverse health conditions and diseases including metabolic syndrome, type 2 diabetes, cardiovascular disease, liver disease, and obesity. FAC ¶¶ 40-109. When purchasing Post's high-sugar cereals, plaintiffs read and relied on Post's deceptive labeling claims suggesting that its cereals were healthy, and as a result, plaintiffs' suffered monetary damages and "bodily injury in the form of increased risk of CHD, stroke, and other morbidity." FAC ¶¶ 347, 355, 376, 384. One of the main sources of support plaintiffs rely on is the American Heart Association's recommendation of a DRV of 5 percent total calories from added sugar. FAC ¶ 26. According to the AHA Scientific Statement, sugar in excess of this amount is not safe and impacts the health of the liver among other organs. *Id*. ¶¶ 26-30.

After laying out allegations regarding the dangers of consumption of high amounts of sugar and identifying the challenged marketing claims for each of the 44 products, plaintiffs assert Post violates California law in numerous ways as described below.

---

No. 44-3). According to Post, as of December 2016, 21 of these cereal products are no longer sold or distributed by Post. Arrington Decl. ¶ 2 (Dkt. No. 44-1).

[5] Plaintiffs define "high-sugar cereals" as "those that contribute significantly more than 5 percent of calories from sugar, and thus whose regular consumption is likely to contribute to increased risk of illness." FAC ¶ 116.

4

**A.    Health and Wellness Claims that are Deceptive in Light of the High Sugar Content**

Plaintiffs allege that Post makes a number of deceptive and misleading claims on its cereal labels that are deceptive and misleading *because* of the high level of sugar in those products.  The claims, according to plaintiffs, either directly state or "strongly suggest" health benefits from consuming the cereal products.

**1.    "Healthy," "Nutritious," or "Wholesome"**

Plaintiffs challenge the use of the terms "healthy," "nutritious," or "wholesome" on 28 of the products.  FAC ¶ 221.  Plaintiffs argue that use of these terms is false or highly misleading because consumption of these high sugar cereals is "decidedly unhealthy" and the consequence of consumptions are increased risk for chronic diseases.  *Id*. ¶ 222.[6]

**2.    Promote Bodily Health, Prevention of Disease or Weight Loss**

Plaintiffs challenge the use of terms that suggest Post cereals help promote digestive health on two flavors of Post Great Grains Digestive Blend.  FAC ¶¶ 229-233.   Plaintiffs argue that the statements are misleading because the high level of sugar content in those cereals increase the risk of chronic disease (which substantially harms both the digestive system and overall human health).  *Id*. ¶¶ 231-233.

Plaintiffs also challenge the use of terms disclosing protein and fiber, particularly in connection with suggestions regarding improved metabolic function, because those statements convey that the products – two flavors of Post Great Grains Protein Blend and Bran Flakes cereal – will  promote weight loss when, given their sugar content, they promote weight gain.  FAC ¶¶ 234-239.

**3.    Whole Grain, Fiber, and "Real" Ingredients**

Plaintiffs challenge the use of language that while not expressly claiming to be healthy, nutritious or wholesome, imply the same thing through suggestion.  FAC ¶ 240.  The challenged

---

[6] In their Opposition, plaintiffs argue they have challenged Post's use of a "nutrition benefits" decal, which appears as a small rectangle on some high-sugar cereals and contains a bullet point list of the purportedly healthy aspects of the cereals.  Oppo. at 18.  Plaintiffs argue this decal and its claimed "nutrition benefits" are deceptive because they mislead consumers to believe that the statements listed in the decal are in fact "nutrition benefits" and its use is misleading for the same reasons as Post's "healthy" claims.  *Id*.  However, no mention of the "decal" is made in the FAC.

phrases include use of: "grain," "fiber," and "real" (e.g., "real bananas"). *Id.* ¶ 241.[7]

### 4. Whole Grains Council Stamp

Plaintiffs challenge the use of the trade organization "Whole Grains Council" stamp on the Post cereal packages. FAC ¶¶ 244-249. Under the organization's requirements, the stamp can only be used on foods containing 8g or more of fiber. Plaintiffs allege that the use of the stamp is deceptive because it implies "independent verification" that the cereals at issue are "healthy" when the added sugar makes them unhealthy. *Id.* ¶ 249.

### 5. Protein Claims Based on Use of Milk

Plaintiffs challenge Post's practice of making representations about the amount of protein a serving contains on its packaging, when those representations are based on use of milk with the cereal. FAC ¶ 252. Plaintiffs note the representation often comes with a disclaimer, but argue the disclaimer is not effective because it is the larger font "Xg PROTEIN" that catches consumers' eyes and not the disclaimer in smaller font that the protein amount is based on use of milk. *Id.* Plaintiffs argue that when viewed on the package as a whole, the representation misleadingly suggests the cereals make a "more significant contribution" to a nutritious meal than they do. *Id.* ¶ 251. It is deceptive according to plaintiffs because given the high amount of sugar, its consumption is likely to increase the risk of chronic disease. *Id.* ¶ 252.

### 6. No High Fructose Corn Syrup or use of Honey

Plaintiffs challenge Post's use of the phrases "no high fructose corn syrup" ("HFCS") or "natural wildflower honey" on its cereal labels, arguing that Post is attempting to leverage consumers' aversion to HFCS by deceptively suggesting its cereals are healthier because there is no HFCS or honey is used, when added sugar in any form causes an increased risk of chronic health conditions. FAC ¶¶ 253-257. Plaintiffs allege this strategy is meant to confuse consumers and make them believe that some forms of sugar are healthier than others. *Id.* ¶ 256.

### 7. Simple, Whole Foods, Less Processed

In order to "capitalize" on consumers' preference for fresh or less processed foods,

---

[7] Plaintiffs allege that "whole grain" appears more than 125 times on the challenged products' labels and "multi-grain" appears over 10 times. FAC ¶ 118.

United States District Court
Northern District of California

plaintiffs assert that Post affirmatively misrepresents that several of its products are fresh and less processed. FAC ¶¶ 258-263. Plaintiffs focus on seven of Post's products that tout "less processed nutrition" and argue that those statements are false or highly misleading because some contain blueberries that are sweetened with added sugar and all contain "highly-processed" added sugars, and that the statements falsely suggest the cereals are healthy food options which is untrue because of the added sugar content. *Id*. ¶¶ 259-263.

### 8. Omit and Downplay Sugar Content

More generally, plaintiffs allege that Post's omission of material information regarding the added sugar content and the dangers of high sugar consumption makes the use of the "health" claims illegal under California law. Plaintiffs identify four product claims specifically: (i) Post Great Grains Digestive Blend: Vanilla Graham is "sweetened with a hint of vanilla flavor," suggesting that the product is low in both added sugar and "bad" forms of sugar; (ii) Honey Bunches of Oats Cereal contains just "a Touch of Honey!" is false and misleading, where the products contain as much as 12g of sugar per serving; (iii) Post Honey Bunches of Oats – With Real Peaches is a "LIGHTLY SWEETENED CEREAL," despite that more than 25 percent of the cereal by weight is sugar, and that 26.7 percent of the product's calories come from its added sugar; and (iv) Post Shredded Wheat Lightly Frosted is only "lightly frosted"—or sweetened— despite that it contains 12g of sugar, which is more than 20 percent of the product's weight, and accounts for nearly 25 percent of its calories. FAC ¶¶ 266-269. Plaintiffs assert that these statements misleadingly imply low sugar content, when the content is actually high. *Id*. ¶ 270.[8]

---

[8] Plaintiffs' FAC also alleges that that Post intentionally markets some of its high sugar cereal to children – Honey-Comb, Waffle Crisp, Golden Crisp, and Alpha-Bits – through the use of cartoon characters and claims about child nutrition needs. FAC ¶¶ 271-283. Plaintiffs argue that by targeting children Post's conduct is an "unfair and immoral" business practice, especially where the cereal are implied to be healthful in light of the childhood obesity and type 2 diabetes epidemics. *Id*. Relatedly, plaintiffs challenge Post's marketing of specific cereals to children, even though they contain trans fats, a substance "so deadly" the FDA has banned its use as of 2018. FAC ¶ 284. Plaintiffs specifically identify Waffle Crisp as a product marketed to children representing that it contains "Iron & Zinc for Growth" – implying health benefits from consumption – but also contains trans fat. *Id*. ¶ 286. In their Opposition, plaintiffs make clear that these allegations are not the basis for stand-alone claims, but examples of Post's intent for punitive damages. Oppo. 29 n.16.

**B.** **Violations of FDA Regulations**

Plaintiffs also allege Post's label statements violate the federal FDCA (as implemented under various FDA regulations), and therefore, violate the California Sherman Law, Cal. Health & Safety Code § 109875 *et seq*.

**1.** **False and Misleading**

Plaintiffs argue that by their failure to disclose material facts regarding the added sugar levels – specifically the high levels of added sugar and the adverse health consequents from consumption of sugar – all of the complained of "health and wellness" statements identified above are "false and misleading" under 21 U.S.C. § 343(a) and the parallel California provision, Cal. Health & Safety Code § 110660, which prohibit any label that is "false or misleading in any particular." FAC ¶¶ 294-297.

**2.** **Impermissible Health Claims**

Plaintiffs contend that specific claims are impermissible "health claims" regulated under the NLEA, 21 C.F.R. §§ 101.14(a)(1), 101.14(e). The challenged "health claims" are:

- "Diets rich in fiber help keep you fuller longer which is important for weight management," "help you burn more calories," and "enhance your metabolism," because "protein generally requires about 25% more energy to digest" (as well as related statements suggesting eating the product will "increase your metabolism by 10%," or otherwise representing the product will promote weight loss) as touted in Great Grains Protein Blend: Honey, Oats & Seeds and Great Grains Protein Blend: Cinnamon Hazelnut;

- "Heart Health: Diets rich in whole grain foods and low in saturated fat and cholesterol may help reduce the risk of heart disease and certain cancers" in Shredded Wheat – Lightly Frosted.

- "FIBER TO HELP WITH WEIGHT MANAGEMENT," and "Experts recommend diets rich in fiber to help keep you satisfied while you exercise and cut calories to lose weight."; in Bran Flakes.

FAC ¶¶ 204(i), 299(a)-(b), (n)-(o). [9]

---

[9] In the FAC, plaintiffs also alleged that specific statements on identified Honey Bunches of Oats

8

Plaintiffs allege that the metabolism and weight claims made for the Great Grain and Bran Flakes products are "disease or health-related conditions" that do not comply with 21 C.F.R. § 101.14. *Id.* ¶¶ 300-302. The statements regarding the heart disease and cancers on the Shredded Wheat- Lightly Frosted label allegedly violate 21 C.F.R. § 101.77(c)(2)(D). *Id.* ¶ 305.

### 3. Unlawful Nutrient Claims

Plaintiffs also assert that Post is making nutrient claims – claims which expressly or implicitly characterize the level of a nutrient required to be listed in the "nutrient box label" by the FDA. Plaintiffs challenge the following:

- "No high fructose corn syrup" as violating 21 C.F.R. § 101.13(e), which regulates the manner in which a manufacturer can claim the absence of nutrient.

- "Xg Protein" as violating 21 C.F.R. § 101.13(i)(3) where X includes protein from milk (as used in Post Great Grains Cranberry Almond Crunch; Post Great Grains Banana Nut Crunch; and Post Great Grains Protein Blend: Honey, Oats & Seeds);

- A "Delicious way to boost your daily intake of . . . natural antioxidants" in the Shredded Wheat – Lightly Frosted Label. FAC ¶ 204(i).[10]

- Font size/prominence as violating 21 C.R.F. § 101.13(f) because the nutrient claim is unduly prominent.[11]

### C. Deceptive Website & Misleading Public Statements

Plaintiffs also contend that Post has made a number of "deceptive" statements regarding

---

and Shredded Wheat products were impermissible health claims under 21 C.F.R. § 101.75(c)(2)(E) and 21 C.F.R. § 101.77(c)(2)(F). FAC ¶ 299(c) – (n), 303-304. In their Opposition, plaintiffs withdrew these more specific health claims, but continue to allege the statements are more generally misleading in light of their sugar content under 21 U.S.C. § 343(a). Oppo. 19 n.11.

[10] Plaintiffs do not lay out a stand-alone "natural antioxidant" nutrient claim with respect to Shredded Wheat – Lightly Frosted in the "nutrient claim" section of the FAC. Instead it is only mentioned at ¶ 204i. In their Opposition, plaintiffs clarify that they are asserting it as an express nutrient claim. Oppo. 18. However, because this claim is not alleged in the FAC's section regarding express or implied health and nutrient claims, I will not address it here and plaintiffs are given leave to amend.

[11] Plaintiffs do not identify the labels that suffer from the alleged "font-size/predominance" infirmity.

9

these products on its website, which consumers are invited to "visit" by language on the side of the cereal boxes. Plaintiffs identify website statements of "nourishing goodness" and a listing of Post's "values" as including "goodness," "no HFCS," "nutritious," and "whole grains" as a source of vitamins and nutrients, and "digestive health." FAC ¶¶ 310-318. Plaintiffs allege that these statements – both alone and in combination – mislead consumers into believing that Post's cereals are healthy and contain only a "moderate" amount of sugar. *Id*. ¶ 317. Plaintiffs also complain about specific health, wellness, and nutrition statements made for Alpha-Bits, Golden Crisp, Great Grains, Honey Bunches of Oats, Honeycomb, Bran Flakes, Raisin Bran, Post Selects, Shredded Wheat, and Waffle Crisp cereals on product-specific pages of Post's website. *Id*. ¶ 319. Similarly, plaintiffs complain about statements made in two press releases regarding the Great Grains products and their impact on metabolism and digestion. FAC ¶¶ 320-322.[12]

Plaintiffs also allege that Post knows or reasonably should know that consumers may eat more than one serving of cereal at a time, further impacting their health risk. *Id*. ¶¶ 328-334.

Based on all of these allegations, plaintiffs assert that Post violated:

(i) California's False Advertising Law ("FAL," Cal. Bus. & Prof. Code § 17500) prohibiting untrue or misleading statements because the health and wellness claims were untrue and misleading in light of the products' sugar content;

(ii) California Consumer Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750 et seq.) prohibiting deceptive practices in the sale of goods because: (a) Post represented the products to have qualities they did not have (§ 1770(a)(5)); (b) Post represented the goods were of a particular standard, quality, or grade and were not (§ 1770(a)(7)); (c) Post advertised goods with intent not to sell them as advertised (§ 1770(a)(9)); and (d) Post represented the products were supplied in accordance with representations about the products and were not (§ 1770(a)(16));

(iii) California's Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17200)

---

[12] In their Opposition, plaintiffs make clear that they are not asserting stand-alone claims based on the website or other public statements. Oppo. 29 n.16. Instead, plaintiffs include these statements in their FAC to demonstrate Post's longstanding policy, practice, and strategy to market its high-sugar cereals as healthy. FAC ¶¶ 323-327.

prohibiting unlawful, unfair, or fraudulent business practices by: (a) fraudulently using the health and wellness claims on products containing high amounts of added sugar; (b) unfairly labeling products in an unethical and unscrupulous manner in violation of public policy; and (c) unlawfully labeling products in violation of the FAL, the CLRA, the FDCA, and the Sherman Law;

(iv) Breach of Express Warranty under California law based on 90 identified affirmations of fact and promises conveying that the products would be healthy and nutritious when they were not; and

(v) Breach of Implied Warranty under California law based on Post's acts and omissions in the sale, marketing and promotion of these high-sugared cereals.

Post moves to dismiss the FAC for five main reasons: (1) plaintiffs' claims are preempted by federal law; (2) Post's cereal products do not contain any labeling statements that violate federal or state law; (3) plaintiffs fail to state a claim for relief under the UCL, FAL, or CLRA; (4) Post did not breach any express or implied warranty; and (5) plaintiffs lack standing to seek injunctive relief, bring claims for unpurchased products, and challenge Post's advertising statements directed at children. Mot. 1. In the alternative, Post requests that I stay this case under the doctrine of primary jurisdiction. Mot. 29-30.[13]

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint "does not need detailed factual allegations," but

---

[13] Post requests that I take judicial notice of the scientific references identified by plaintiffs in their FAC and copies of the actual labels for the products identified by plaintiffs, under the incorporation by reference doctrine. Dkt. No. 48. Plaintiffs do not oppose those requests and as these documents are identified and relied on by plaintiffs in their FAC, the request is GRANTED. Post also requests that I take judicial notice of the FDA guidance. Plaintiffs do not oppose and as the request covers public records whose accuracy cannot be reasonably questioned, it is GRANTED.

instead only needs enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012). If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

## I.     PREEMPTION

Post argues that plaintiffs' claims should be dismissed with prejudice because they are preempted by federal law on the bases of express and conflict preemption. "Express preemption exists when a statute explicitly addresses preemption." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). Conflict preemption occurs when it would be "impossible for a private party to comply with both state and federal requirements," *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

### A.     Preemption under the NLEA Generally

The Nutrition Labeling and Education Act amended the Food Drug and Cosmetic Act in 1990 to "establish[] uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages." *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014). NLEA contains an express preemption provision, providing "that no state may 'directly or indirectly establish . . . any requirement for the labeling of food that is not identical' to the federal requirements." *Id.* at 664-65 (quoting 21 U.S.C. § 343–1(a)(5)). "Section 343-1(a)(4) expressly preempts any state or local 'requirement for nutrition labeling of food that is not identical to the requirement of section 343(q)'" while § 343-1(a)(5) "preempts state or local governments from imposing any requirement on nutrient content claims made by a food purveyor 'in the label or labeling of food that is not identical to the requirement of section 343(r).'" *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010).

"The phrase 'not identical to' means 'that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food that are not imposed by or contained in the applicable federal regulation or differ from those specifically imposed by or contained in the applicable federal regulation.'" *Lilly v. ConAgra Foods, Inc.*, 743 F.3d at 664 (quoting 21 C.F.R. § 100.1(c)(4)) (internal brackets and ellipses omitted). "NLEA also provides, however, that it does not preempt any state law unless the law is 'expressly preempted,'" and (as relevant here) "[t]he NLEA does not preempt state law-based causes of action that are identical to the federal labeling requirements." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). In other words, "preemption only occurs where application of state laws would impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA. If a lawsuit asserts that a manufacturer has violated the FDCA (as amended by NLEA) and does not seek to impose additional or contrary burdens to those imposed under the FDCA, the claims raised under state law are not preempted." *Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 1056480, at *4 (N.D. Cal. Mar. 10, 2015) (collecting cases).

California expressly incorporates the provisions of the FDCA (as amended by NLEA) in the Sherman Law. CAL. HEALTH & SAFETY CODE § 110100. State laws are not preempted if they "are equal to, or substantially identical to, requirements imposed by or under" federal law. 21 C.F.R. § 808.1(d)(2). Accordingly, the NLEA "has been repeatedly interpreted not to preempt requirements imposed by state law that effectively parallel or mirror the relevant sections of the NLEA." *Lanovaz v. Twinings N. Am., Inc., No.* C-12-02646-RMW, 2013 WL 675929, at *3 (N.D. Cal. Feb. 25, 2013) (citing cases); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013) ("Courts in this district have repeatedly refused to find preemption 'where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the FDCA.'") (citations and internal punctuation omitted).

Where a plaintiff challenges a labeling statement that has been approved by the FDA under the FDCA, however, such a claim may be preempted. *See Pratt v. Whole Foods Mkt. California, Inc.*, No. 5:12-CV-05652-EJD, 2014 WL 1324288, at *5 (N.D. Cal. Mar. 31, 2014) ("Courts in this district have generally found express preemption under the FDCA only when: (1) the FDA

13

requirements with respect to a particular food label or package are clear; and (2) the product label or package at issue is in compliance with that policy, such that plaintiff necessarily seeks to enforce requirements in excess of what the FDCA, NLEA, and the implementing regulations require.").

## B. FDA Regulation of Nutrient Content Claims and Health Claims Generally

"The FDA has promulgated regulations regarding three specific kinds of claims: express nutrient content claims; implied nutrient content claims; and health claims." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) (citing 21 C.F.R. §§ 101.13, 101.14). An express nutrient content claim is a direct statement about the level or range of the nutrient in the food, such as "low sodium" or "contains 100 calories." 21 C.F.R. § 101.13(b)(1). A food product label may include an express nutrient claim provided that it "does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), in which case no disclaimer is required." 21 C.F.R. § 101.13(i)(3).

An implied nutrient content claim "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')" and might also suggest that the food is compatible with a healthy or nutritional diet because of its nutrient content. 21 C.F.R. § 101.13(b)(2)(i)-(ii).

A health claim is an express or implied labeling statement that "characterizes the relationship of any substance to a disease or health-related condition." Section 101.14(e) provides in relevant part that health claims are prohibited on food labels "unless: (1) The claim is specifically provided for in subpart E of this part; and (2) The claim conforms to all general provisions of this section as well as to all specific provisions in the appropriate section of subpart E of this part; . . ." 21 C.F.R. § 101.14(e).

"Under the FDA regulations, the general rule is that 'nutrient content claims' are not permitted on food labels," subject to certain exceptions. *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015); *see* 21 C.F.R. § 101.13(b) (nutrient content claims may "not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and

with the applicable regulations in subpart D of this part . . .").  Among the nutrient claims

authorized by the FDA are "statements about the amount or percentage of a nutrient that are

consistent with the labeling regulations (e.g., 'less than 3 g of fat per serving'), similar statements

that include a disclaimer (e.g., 'only 200 mg of sodium per serving, not a low sodium food'), or

statements that do not characterize the level of nutrient and are not false or misleading (e.g., '100

calories')." *Reid,* 780 F.3d at 959–60 (citing § 101.13(i)).

FDA regulations also require food packaging to include the Nutrition Facts Panel, where

companies disclose information about the presence of certain nutrients in the food product. *Id.* §

101.9(c).  For purposes of FDA regulations, the required claims made inside the Panel do not

constitute "nutrient content claims" even though the label plainly contains information about

nutrient content. *Id.* § 101.13(c).  However, "a requirement to state certain facts in the nutrition

label is not a license to make that statement elsewhere on the product." *Reid,* 780 F.3d at 960.

### C.     Express Preemption of Plaintiffs' Health and Wellness Claims

Post argues that plaintiffs' claims are expressly preempted because plaintiffs seek to

impose three labeling requirements that are not identical to those recently promulgated by the

FDA in its final rule on added sugar.  Mot. 8-11.  According to Post, the "non-identical"

requirements sought by plaintiffs are: (1) prohibiting labeling statements on Post's cereals that

suggest the products are "healthy"; (2) requiring disclosure of the added sugar content (as opposed

to disclosure of the total sugar content) on Post's cereals prior to the effective date of the FDA

regulation; and (3) requiring a disclosure statement on Post cereal labels warning of the alleged

dangers of consuming added sugars.  Mot. 8. [14]

### 1.     Prohibiting Statements that Products are "Healthy"

Plaintiffs' FAC challenges numerous labeling statements that either expressly or impliedly

suggest that Post cereals are healthy, contending that these statements are deceptive and

---

[14] Post also contends that challenges to certain statements are expressly preempted because they express or implied nutrient content or specific health symptom claims that are permitted under FDA regulations.  Mot. 21.  I evaluate those claims separately below to determine whether they are permitted by the FDA (and therefore preempted) or contrary to the FDA regulations (and therefore not preempted).

15

misleading in light of the products' high added sugar content. Post asserts that all of the claims are preempted in light of the FDA's recent rulemaking setting a recommended level of added sugar consumption at 10 percent of calories and imposing requirements for disclosure of added sugars in the Nutrient Fact Panel effective in 2018. The analysis of whether preemption bars plaintiffs' claims "turns on whether the challenged statements are authorized by the FDA's regulations or other pronouncements of similar legal effect." *Reid*, 780 F.3d at 959.

Post's argument hinges in large part on the plaintiffs' reliance on the AHA's Scientific Statement that added sugars should be limited to 5 percent of the DRV. Post notes that the FDA specifically considered and rejected setting the recommended DRV at 5 percent in light of the scientific evidence before the FDA, and instead settled on the recommended 10 percent of calories "considering current consumption of added sugars in the United States." 81 Fed. Reg. 33,741, at 33,849.

That plaintiffs rely in part (and not exclusively) on the AHA 5 percent recommendation to provide a plausible scientific basis for their allegations that consuming excess amounts of added sugars creates significant health risks does not mean those claims are preempted because the FDA chose not to set its DRV at 5 percent considering current consumption patterns and based on the scientific evidence before it. Plaintiffs' claims, when properly construed, are not that the cereal manufacturers should be required to list any particular facts about sugar in either the Nutrition Facts Panel or on the other parts of the labels, but that the use of various identified health and wellness claims misleadingly convey to consumers that the products are healthy, when they are not given the high levels of added sugar. There is no evidence that the FDA in its final rule set out to proscribe or prohibit statements regarding health or wellness in connection with an analysis of added sugars. Nor is there evidence that the FDA concluded that consumption of added sugar in the amounts in the challenged products was healthy. Instead, the evidence is that the FDA adopted the 10 percent added-sugar DRV to be used in the FDA mandated Nutrition Facts Panel based on the evidence before it and as "realistic" based on current consumption pattern.

Plaintiffs' claims that defendant's use of health and wellness claims on its labels make those labels false and misleading *because* consumption of levels of added sugar in defendant's

16

products is unhealthy are not preempted claims.

### 2. Requiring Disclosure of Added Sugar Content

Post also argues that plaintiffs' claims are preempted because the relief (in part) that plaintiffs seek for the false and misleading health and wellness claims on their cereal labels is the disclosure of exactly how much added sugar is in the cereals, a proposition that the FDA expressly considered and mandated does not have to occur before 2018. It is true that when reviewing the FAC there are instances where plaintiffs want to require Post to add the amount of added sugar to its labels. *See, e.g.*, FAC ¶ 264. In their Opposition, plaintiffs back away from any such direct demand and clarify that they are not seeking an "injunction" or otherwise seeking to force Post to disclose the amount of added sugars in advance of the FDA's requirement. Oppo. 16.

Instead, when read closely, plaintiffs' claims regarding Post's failure to disclose added sugar is allegedly actionable under California's consumer protection statutes only because Post makes the other unregulated claims regarding health and wellness that according to plaintiffs falsely convey the health benefits of the cereals. It is that false conveyance of health benefits that, according to plaintiffs, triggers the obligation to disclose the high levels of added sugar. I agree with Post that any claim premised solely on the failure of Post to disclose the amount of added sugar in the products on their labels would tread directly on the FDA's new rule and its determination that such disclosure is not required until 2018 for a manufacturer of Post's size.[15] Treating plaintiffs' claims as akin to an omissions by material misstatement claim, plaintiffs are not arguing that Post *must* disclose the added sugar content. Instead, they allege that Post cannot continue to use those voluntary health and wellness statements because they are misleading in light of the added sugar content. The FDA did not consider those issues and arguments in its rulemaking.[16] These omissions-based claims are not preempted.

---

[15] Although even if such a claim were alleged, the issue would be one of conflict not express preemption. *See Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1074 (N.D. Cal. 2016).

[16] The remedy for such a claim would not necessarily be a requirement that the added sugar content be disclosed. Instead, the remedy could be (if these claims survive and are proved) a prohibition against making health and wellness claims on the packages of cereal with certain levels of added sugar.

United States District Court
Northern District of California

### 3. Requiring a Warning of the Dangers of Added Sugar

Relatedly, Post challenges the claims in the FAC that Post had a "duty to warn" consumers about the dangers of consuming excess amounts of added sugar like those in its cereals. FAC ¶¶ 289 – 292. Post points out that the FDA in its rulemaking proceedings rejected calls to revise its proposed rule to mandate specific suggested warning labels regarding added sugars because the specific proposed "statements are not consistent with our review of the evidence . . ., and we do not require warning labels or disclaimers for other nutrients on the label. Furthermore, some added sugars can be included as part of a healthy dietary pattern." 81 FR 33742-01 at 33,829.

The FDA's failure to "revise its rule" to adopt the label warnings suggested by a few commentators, however, does not mean that a "failure to warn" type of claim suggested by plaintiffs is expressly preempted, absent evidence that consideration of this type of affirmative warning was the focus of the FDA's rulemaking. It appears that the FDA's focus was updating the Nutrition Facts Panel to disclose added sugars and include a DRV.[17] Moreover, plaintiffs clarify in their opposition that they "do not allege Post was obligated to warn merely because its cereals have excessive sugar levels, but because Post *affirmatively misrepresented that the cereals are healthy* through labeling statements outside the Nutrition Facts Panel." Oppo. 16 (emphasis in original). As above, this type of consumer protection claim is not expressly preempted based on the record before me regarding the scope of the FDA's rulemaking.

### 4. Reliance on Otherwise Permissible Implied Nutrient Content Claims

Relatedly, Post challenges plaintiffs' reliance on statements as part of their 21 U.S.C. § 343(a) argument (that when read in context with other portions of the label and in light of the added sugar content of the products, Post's label is false or misleading) that Post contends are

---

[17] Post relies on *Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d 750, (N.D. Ill. 2014). However, in that case the FDA was considering what type of disclosures regarding the source of bottled water to require, and concluded that source-disclosures were required for bottled water *except* for purified water. *Id.* at 758. Therefore, plaintiffs' claim based on the "failure to disclose the source" of the purified water at issue in that case was preempted. Nor is the theory of this case similar to *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *4 (N.D. Ill. June 16, 2015). In that case, the plaintiffs challenged how a manufacturer complied with FDA-mandated requirements to disclose nutrient content, arguing for a disclosure regarding protein that was in addition to (and expressly rejected by) the nutrient claim disclosure for protein adopted by the FDA.

nutrient content claims expressly permitted by the FDA. *See* Mot 13-15 (challenging use of (1) "healthy way" on Honeycomb, FAC ¶ 216(c); (2) "good source" of fiber claim on Great Grains Blueberry Morning, FAC ¶ 132(f); (3) identification of a specific gram serving of fiber on Raisin Bran, FAC ¶ 206(e); (4) "10g or more" whole grains per serving on Honey Bunches of Oats – with Almonds, FAC ¶ 165); (5) "no high fructose corn syrup" on Bran Flakes, FAC ¶ 207; and (6) "antioxidant" on Great Grains Cranberry Almond Crunch, FAC ¶ 207).

Plaintiffs cannot rely on FDA-approved nutrient claims *as part* of the basis for their § 343(a) false and misleading claim. But the crux of plaintiffs' theory is that Post is using statements implying a product is healthy when it is not, given the added sugar content. As explained in *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1122 (N.D. Cal. 2010), the FDA has approved the use of implied nutrient claims in certain circumstances, but prohibits even true implied nutrient content claims where the product contains another "disqualifying" nutrient that exceeds an amount established by regulation. *Id.* at 1122. The FDA has identified disqualifying nutrients, including total fat, saturated fat, cholesterol, and sodium. Sugar is not one of them. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *8 (E.D.N.Y. July 21, 2010) ("As a matter of federal law, therefore, the presence of sugar is not a disqualifying nutrient which would prohibit the defendants from 'touting the purported benefits' [] of the other ingredients in their beverage, whether through health claims or express or implied claims of nutrient content."). In *Chacanaca*, the court concluded that plaintiffs could *not challenge* defendant's use of a statement indicating that the product included "whole grain oats" – an implied nutrient claim – under the theory that because the product also contained "hydrogenated vegetable oil makes these claims, to the extent they suggest Chewy Bars are nutritionally healthful, misleading," where hydrogenated vegetable oil was not a disqualifying ingredient. *Id.*

Plaintiffs claim they avoid the *Chacanaca* problem because they "challenge labeling statements that are either not regulated nutrient content or health claims, or are claims that violate the regulations, so this argument is misplaced." Oppo. 11 n. 6. The only "stand-alone" FDA-regulated nutrient or health content claims challenged by plaintiffs that violate the regulations are

19

identified in paragraphs 298 through 309 of the FAC.[18] The adequacy of those claims will be addressed below in Section II.

As to the former, I will address the examples identified by defendant in its Motion in turn.[19]

Use of the term "healthy":  The example identified by Post is the phrase "each serving helps start the day in a healthy way" on Honeycomb, FAC ¶ 216(c), which Post claims is a permissible nutrient claim under 21 C.F.R. § 101.65(d)(2).  Mot. 14.  Plaintiffs, respond that the regulation at issue only governs labelling claims that "suggest" that "a food because of its nutrient content may help consumers maintain healthy dietary practices" when made "in connection with an explicit or implicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams of fat')." 21 C.F.R. § 101.65(d)(1).  They ignore, however, that the "healthy" phrase they rely on is, according to Post, "followed immediately" by a specific listing of nutrients present in the product. Reply at 9; Garganta Decl., Ex. 6 at 75 ("An Excellent Source of 6 B Vitamins, A Total of 10 Essential Vitamins and Minerals, 8g Whole Grain per Serving, Low in Fat and Cholesterol Free.").  Because Post makes its "healthy" statement "in connection with an explicit or implicit claim or statement about a nutrient" on the Honeycomb label, this statement is a permissible nutrient content claim and cannot be relied on by plaintiffs in support of their false and misleading argument.[20]

---

[18] By "stand-alone," I mean claims that do not depend on the level of added sugar in the products to be actionable.  The claims asserted at paragraphs 298 through 309 of the FAC do not depend on added sugar content, but are alleged to be independently actionable in violation of specifically identified FDA regulations.  In their Opposition, plaintiffs appear to argue that there are additional stand-alone claims.  See, e.g., Oppo. 18 (discussing use of "antioxidant").  To be clear, plaintiffs will only be able to pursue the stand-alone claims identified in the subsections 7b. & 7c. (paragraphs 298 – 309) of their FAC, and for any additional claims they have been given leave to amend.

[19] Post identifies a few discrete examples of what it contends are preempted nutrient claims in its Motion at 13-15 and refers to others in Exhibit 6 of the Garganta Declaration.  See generally id.  I will limit my analysis in this Order to the examples specifically identified in the Motion.  The parties cannot avoid the page limitations for briefs by relying on declarations.  However, the analysis set forth in this Order would apply to other statements identified in the Garganta Declaration.  Counsel should meet and confer to agree to the universe of permitted nutrient claims that are subject to preemption and may not form the basis of plaintiffs' claims going forward.

[20] Plaintiffs do not allege that this particular statement, when considered in its full context with the nutrients identified, otherwise violates 21 C.F.R. § 101.13.

20

Use of term "good source" of fiber:  The example identified by Post is the term "good source" of fiber on Great Grains Blueberry Morning, FAC ¶ 132(f), which Post argues complies with 21 C.F.R. § 101.54(b)-(c).  Mot. 14.  Post points out that this "good source" of fiber claim is immediately followed by "20g of whole grains."  Ohrt Decl., Ex. 2.  In Opposition, plaintiffs do not address this specific claim, but note more generally that in order to make an implied nutrient claim with respect to "fiber," there must a suggestion that dietary fiber is present "in a certain amount" under 21 C.F.R. § 101.13(b)(2)(i).  Oppo. 16.  Post has done that with respect to the Great Grains Blueberry Morning.

Use of a specific gram serving of fiber:  The example identified by Post is the use of a specific gram serving of fiber on Raisin Bran, FAC ¶ 206(e), which Post contends is permitted under 21 C.F.R. § 101.54(d).  Plaintiffs respond that they are not challenging the "Fiber 8g per serving" statement, and instead are challenging Post's phrase "Raisin Bran is a delicious way to boost your daily intake of whole grain and fiber."  Oppo. 18 n.9 (citing FAC ¶ 206(e)).  Plaintiffs cannot challenge statements disclosing a specific gram serving of fiber and have disclaimed their intent to do so.

Use of a specific gram serving of whole grains, multi-grain, and use of the "Whole Grain Council Stamp:  The example identified by Post is the use of Whole Grains Council Stamp ("Stamp") indicating that the product contains "10g or more" whole grains per serving and "eat 48g or more of whole grains daily" on Honey Bunches of Oats – with Almonds, FAC ¶ 165, which Post contends are permissible statements under 21 C.F.R. § 101.65(c).  With respect to the use of "whole grains," plaintiffs again argue that because the term "whole grain" is not a regulated nutrient under 21 C.F.R. § 101.13(b), those statements cannot be preempted unless "whole grains" is used in a way in a particular statement to suggest dietary fiber is present "in a certain amount" under 21 C.F.R. § 101.13(b)(2)(i).  Oppo. 17.  In the actual statements identified by Post above, the amount of dietary fiber is implied and, therefore, plaintiffs' challenge is permitted.

With respect to the challenge to the Whole Grains Council Stamp itself, plaintiffs argue

1   that they *do not* challenge the statements within the stamp disclosing actual per serving grams of

2   whole grains, but the use of the Stamp itself because "it implies independent verification that the

3   cereals are healthy" despite the fact the Council is an industry trade group and the added sugar

4   makes the cereals unhealthy.  Oppo. 18; FAC ¶¶ 244-249.  Post responds that the use of the Stamp

5   itself cannot be considered apart from the disclosure *within* the stamp of the grams of whole grains

6   per serving (implying dietary fiber).  Reply 9 n.6.

7         There is no evidence that the Stamp itself has been approved by the FDA (although

8   the FDA has determined that use of "symbols" can sometimes constitute nutrient content claims).

9   Mot. 15 n. 7.  Moreover, whether the use of the Stamp itself conveys something other than the

10   implied fiber content is not something appropriate for determination on this motion.  Plaintiffs

11   may pursue claims based on the use of the Stamp at this juncture.[21]

12         The only preempted "health and wellness" claims are nutrient content claims that have

13   been expressly permitted by the FDA.  Plaintiffs cannot rely on nutrient content claims that are

14   permitted by the FDA as part of their effort to characterize Post's cereal labels as false and

15   misleading in light of the cereals' added sugar content.

16       **D.**    **Conflict Preemption**

17         Post also argues that the challenged claims are conflict preempted in light of the FDA's

18   recent rulemaking proceedings and final rule on added sugar.  Mot. 11.  Plaintiffs respond that

19   conflict preemption does not bar the challenged claims based on Post's voluntary health and

20   wellness statements because their claims "cannot possibly" present an obstacle to the achievement

21   of Congress' objectives; rather, "requiring Post to disclose additional material information when

22

23   [21] Post also challenges plaintiffs' ability to rely on "No High Fructose Corn Syrup" statements as a
basis for their "misleading in light of the added sugar content" argument.  In opposition, plaintiffs

24   clarify that their only HFCS claim is based on the violation of express regulations.  That claim will
be addressed below.  Oppo. 11 n.5.  Similarly, Post challenges plaintiffs' reliance on the use of

25   "antioxidant" on Great Grains Cranberry Almond Crunch, FAC ¶ 319(c), which Post argues is
permitted under 21 C.F.R. § 101.54(g).  Mot. 15.  In opposition, plaintiffs clarify that the only

26   "antioxidant" challenge is the use of that term on one brand of Shredded Wheat in violation  of a
specific regulation, as to which plaintiffs have been given leave to amend.  Oppo. 18; FAC ¶ 204i.

27   Finally, in reply Post challenges plaintiffs' ability to rely on the "nutrition decal" present on a
number of the labels.  Reply 9-10.  That argument was not argued in Post's Motion (but apparently

28   identified in the Garganta Declaration) and is not expressly pleaded in the FAC.  I will not address
it now.

affirmatively misrepresenting its cereals are healthy furthers the objectives of the [FDA's] added

sugar rulemaking." Oppo. 21. As noted above, plaintiffs have disclaimed any intent to impose

affirmative labeling requirements on Post that are inconsistent with those of the FDA. They

merely seek to hold Post liable for its false and misleading health and wellness claims in light of

the products' added sugar; an area that has not been subject to federal rulemaking.[22] These claims

are not subject to conflict preemption.

## II. WHETHER PLAINTIFFS CAN STATE VIOLATION OF FEDERAL OR STATE LABELLING LAWS

As noted above, plaintiffs also challenge a number of "stand-alone" health and nutrient

claims that both sides agree are regulated by the FDA. I will address each set of these claims in

turn.

### A. Specific Health Claims

Health claims regulated by the FDA are those which "expressly or by implication . . .

characterize[] the relationship of any substance to a disease or health-related condition." 21

C.F.R. § 101.14(a)(1). Such claims must be "complete, truthful, and not misleading." *Id*. §

101.14(d)(2)(iii). Most health claims based on the benefits of consuming a particular nutrient

substance "must specify the daily dietary intake necessary to achieve the claimed effect, as

established in the regulation authorizing the claim." *Id*. § 101.14(d)(2)(vii). Health claims must

also conform "to all specific provisions in the appropriate section." *Id*. § 101.14(e)(2).

The stand-alone health claims alleged by plaintiffs are found in paragraphs 299 – 305 of

the FAC. Post first argues that the challenged health claims relating to heart disease at paragraph

299 c. – n. are impermissible, as the FDA allows claims that draw a connection between whole

grains and the risk of heart disease.[23] In their Opposition, plaintiffs withdraw these as stand-alone

---

[22] Post repeatedly asserts that plaintiffs are attempting to require or impose on them a limit of added sugar at the 5 percent DRV level, that was expressly rejected by the FDA. *See, e.g*., Reply 7. That is not accurate. Plaintiffs rely on the 5 percent DRV recommendation of the AHA as part of their evidence to plausibly show that excessive consumption of added sugar creates significant health risks.

[23] These claims are made on the labels of nine varieties of Honey Bunches of Oats and two varieties of Shredded Wheat. FAC ¶ 299 c. – n.

impermissible health claims. Oppo. 19 n.11.[24]

### 1.   Metabolism and Weight Claims on Great Grains and Bran Flakes

Plaintiffs challenge the following metabolism and weight claims:

- "Diets rich in fiber help keep you fuller longer which is important for weight management"

- "help you burn more calories"

- "enhance your metabolism," because "protein generally requires about 25% more energy to digest" (as well as related statements suggesting eating the product will "increase your metabolism by 10%," or otherwise representing the product will promote weight loss);

- "FIBER TO HELP WITH WEIGHT MANAGEMENT," and

- "Experts recommend diets rich in fiber to help keep you satisfied while you exercise and cut calories to lose weight."

These claims are made on the labels of Post's Great Grains Protein Blend: Honey, Oats & Seeds, Great Grains Protein Blend: Cinnamon Hazelnut, and on Bran Flakes, and allegedly violate 21 C.F.R. § 101.14. FAC ¶¶ 299(a)-(b), 299(o), 300-301.

Plaintiffs argue that these statements are health claims because metabolism and weight are "disease or health-related conditions" under 21 C.F.R. § 101.14(a)(5), which defines "disease or health-related conditions" to include "a state of health leading to such dysfunctioning (e.g., hypertension)." According to plaintiffs, comments about metabolism and its connection to weight maintenance are "states of health" leading to obesity among other morbidity. Oppo. 12-13. Because these claims are not expressly approved by the FDA – linking consumption of fiber and whole grains to better functioning metabolism and weight maintenance – they are impermissible. *Id.* at 13. Post responds that these statements are not health claims at all because "[n]either 'metabolism,' the internal chemical process that occurs within every human body regardless of

---

[24] In their Opposition, plaintiffs argue these "heart health" statements might violate some other regulations. However, those claims are not pleaded in the FAC. Oppo. 19 n.11. Plaintiffs are given leave to amend to plead violations of specific regulations, if they are able to do so, for these heart health claims. Relatedly, while plaintiffs withdrew their claims asserted in paragraphs 303-304 of the FAC (Oppo. 19 n.11), they do not address their claim in paragraph 305 regarding the statement about diets high in fiber and the risk of cancer. It is unclear whether plaintiffs intend to keep that claim in this case. Post does not address that claim in its briefing. I do not address it in this Order.

health, nor 'weight management,' the conceptual idea of managing one's weight to a certain level, involve 'damage' or 'dysfunction,' and neither 'lead[] to the disease or health-related condition of obesity.'" Reply 8. However, if these are not expressly regulated health claims, then they possibly are implied nutrient claims or even simply voluntary, unregulated claims. But in any event, Post makes no argument (in its briefs) that any of the above claims are *expressly* regulated claims. Therefore, no argument has been made that these statements cannot, at the very least, form part of the basis of plaintiffs' false and misleading theory.

### 2. Diabetes Claims

Plaintiffs also challenge the following:

- "Help Promote Healthy Blood Sugar Labels: A recent study has shown that higher whole grain consumption reduces the risk of Type 2 Diabetes by 21%".

This claim is made on the label of Shredded Wheat – Lightly Frosted. FAC ¶ 299(n).

Plaintiffs do not identify the regulation this statement allegedly violates, either in the FAC or in their Opposition. In its Motion, Post argues that under 21 C.F.R. § 101.81, "drawing a relationship between whole grains and the risk of diabetes is permitted by FDA as what is known as a 'permissible qualified health claim.'" In support, Post relies upon an FDA guidance letter, where the FDA determined that there was "very limited credible scientific evidence for a qualified health claim for whole grains and type 2 diabetes" but allowed one manufacturer to use the following claim: "Whole grains may reduce the risk of type 2 diabetes, although the FDA has concluded that there is very limited scientific evidence for this claim." Garganta Decl., Ex. 7. Post argues that under the Food and Drug Administration Modernization Act of 1997, at 21 U.S.C. § 343(r)(2)(G), a health claim may be made "for which the Secretary has not promulgated a regulation" if that claim is based on an "authoritative statement" of "a scientific body of the U.S. government with responsibility for public health protection or nutrition research" and points back to the FDA guidance letter. Mot. 16-17.

The challenged statement Post uses is very different from the statement approved in the FDA guidance letter, and contains none of the required qualifying language. In Reply, Post characterizes this as only a "technical" violation, and considering that plaintiffs do not specifically

allege that they saw this claim, it is "legally insufficient to maintain Plaintiffs' claims." Reply 12. This claim is thin but plausible and at this juncture I will allow it to remain. *See Reid*, 780 F.3d at 965 (rejecting preemption of state law labelling claim based on FDA guidance letter containing only "tentative and non-committal terms" and committing FDA only "to consider the exercise of enforcement discretion").

### B. Specific Nutrient Claims

A nutrient content claim is a claim on a food product that "expressly or implicitly characterizes the level of a nutrient" of the type required to be disclosed under 21 C.F.R. §§ 101.9 or 101.36. *See also* 21 C.F.R. § 101.13(b). Only those nutrient claims (or their synonyms) that are specifically defined in the FDA regulations may be used on a label; all other claims are prohibited. *See* 21 C.F.R. § 101.13(b).

#### 1. HFCS

Plaintiffs allege that each time Post uses the phrase "no high fructose corn syrup" it does so in violation of 21 C.F.R. § 101.13(e), which regulates how manufacturers can claim the absence of a nutrient. FAC ¶ 307. Plaintiffs allege the following statements, made on a variety of Post's cereals, are impermissible:

- "Contains no high fructose corn syrup";
- "Our Post Promise | No High Fructose Corn Syrup";
- "No High Fructose Corn Syrup Unlike Kellogg's Frosted Mini-Wheats Bite Size Cereal";
- "That means vitamin and mineral fortified Post Shredded Wheat Honey Nut contains no High fructose corn syrup or artificial ingredients";
- "unlike some other frosted wheat cereals, Post Shredded Wheat contains no high fructose corn syrup"; and
- "contains NO HIGH FRUCTOSE Corn Syrup unlike Kellogg's Raisin Bran."

FAC ¶¶ 161, 163, 165, 169, 172, 186, 188, 190, 192, 200, 204, 206, 208, 212, 214, 218, 319(g). [25]

---

[25] Plaintiffs also allege that Post's dedicated webpage for its Raisin Bran cereal contains a banner stating "No High Fructose Corn Syrup," and the further claim that, "[a]s part of Post's

Specifically, plaintiffs allege that these statements are impermissible because "none of Post's food products in their natural state contain high fructose corn syrup, a man-made sweetener, and Post never indicates that, for example, cereal is naturally HFCS-free." FAC ¶ 307. Both sides appear to agree that disclosures regarding HFCS are implied nutrient claims. Oppo. 11; Reply 7.

Under 21 C.F.R. § 101.13(e)(1), a food may be labeled as "free" of or "low" in a nutrient only if that food has "been specially processed, altered, formulated, or reformulated so as to lower the amount of the nutrient in the food, remove the nutrient from the food, or not include the nutrient in the food, (e.g., 'low sodium potato chips')." 21 C.F.R. § 101.13(e)(1). Foods that are normally low in or free of a nutrient may only make a statement that refers to all foods of that type, to avoid implying the food differs from other foods of the same type – for example, the claim "kale, a fat-free food" is permissible, while "fat-free kale" is not. *See* 21 C.F.R. § 101.13(e)(2).

Post argues that 21 C.F.R. § 101.13(e)(1) only applies to the terms "free" and "low" and therefore the challenged statements do not violate the regulation. The FDA recognizes that synonyms for "free" include "Zero", "No," "Without," "Trivial Source of," and "Dietarily Insignificant Source of." *See* Appendix A: Definitions of Nutrient Content Claims to the FDA's Guidance for Industry: A Food Labeling Guide http://www.fda.gov/downloads/Food/GuidanceRegulation/UCM265446.pdf. [26] Post's argument is not persuasive.[27]

## 2. Protein

Plaintiffs allege that Post violates 21 C.F.R. § 101.13(i)(3) when they advertise the amount

_____

commitment to goodness, we don't use high-fructose corn syrup in Post Raisin Bran – or any of our products." FAC ¶ 319(g). But as noted above, the website statements cannot be relied on to sustain plaintiffs' false and misleading theory.

[26] In their Opposition, plaintiffs also allege the HFCS statements also violate §§ 101.13(i)(1), 101.13(i)(3), and 101.60(c). These allegations are not alleged in the FAC.

[27] In *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2017 WL 1065293 (N.D. Cal. Mar. 21, 2017), Judge Koh dismissed with leave to amend a similar claim on the grounds that plaintiff had not adequately pleaded what the "natural state" of the cereals at issue were or that other related products do not typically contain HFCS. *Id*. at *18-20. These arguments were not raised by Post in this case and I will not reach them. However, when amending, plaintiffs should consider the concerns identified by Judge Koh.

of protein in a serving, where the grams of protein include contribution from milk, on three varieties of Great Grain cereals. FAC ¶ 308. Section 101.13(i)(3) provides that "the label or labeling of a product may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), in which case no disclaimer is required." 21 C.F.R. § 101.13(i)(3).

Plaintiffs allege that the "Xg PROTEIN" statements are impermissible because they falsely and misleadingly suggest that the cereals make a more significant contribution to meeting the RDV of protein than they actually do. Oppo. 12. Post points out, as plaintiffs acknowledge, that immediately adjacent to the Xg Protein statements Post provides a disclaimer explaining that only some of the protein comes from the cereal itself and more comes from added milk. Mot. 18; FAC ¶ 250. Post argues, therefore, that the Xg Protein statements are permissible "as prepared" claims expressly allowed by the FDA.

These disclosures are "ineffective" according to plaintiffs, because "the eye naturally catches only the large '[ ] PROTEIN' representation.'" Oppo. 12 (relying on SAC ¶¶ 250, 308). However, as shown by Post's exhibits (Ohrt Decl., Exs. 5, 7, 14), the "with milk" disclosures not only immediately follow the Xg disclosure, they are approximately the same font size, color, and prominence as the "protein" disclosure. Given the undisputed way in which Post makes the protein with milk disclosures (and in absence of any argument that Post's actual use somehow disqualifies these statements from protection as "prepared as" claims permitted by the FDA), I conclude that there is nothing misleading about them.

Judge Koh reached a similar decision recently in *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2017 WL 1065293 (N.D. Cal. Mar. 21, 2017). She dismissed the allegations that the protein claims were misleading because "the symbols for cereal and milk are approximately the same size as the lettering indicating '9g Protein' and are located directly below the '9g Protein' amount in the same bordered area." *Id.* at *17. Because "the information concerning the amount of protein originating from milk and cereal is located directly below the allegedly misleading statement . . . [a] reasonable consumer viewing this infographic would conclude that the amount

28

of protein represented comes from a combination of cereal and milk." *Id.*

The stand-alone claims based on disclosed protein content "as prepared" as DISMISSED with prejudice.[28]

## III.   CLRA, UCL, AND FAL CLAIMS

Post challenges plaintiffs' ability to state claims under the three consumer protection statutes at issue (the CLRA, FAL and UCL), arguing that (i) no reasonable consumer could plausibly have been misled by its labels' failure to disclose the amount of and alleged dangers of sugar and (ii) no reasonable consumer could plausibly have been misled because Post disclosed the total sugar content of its cereals in the Nutrition Facts Panel on each package of cereal.[29]

The "reasonable consumer" standard governs misrepresentation and omission claims under California's UCL fraudulent and unfair prongs as well as under the FAL and CLRA. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A plaintiff must show that consumers are "likely to be deceived" by the challenged statements. *Id.* (citation omitted). As the Ninth Circuit noted, "[t]he California Supreme Court has recognized that these laws prohibit not only [statements] which are false, but also [statements] which, although true, [are] either actually misleading or which ha[ve] a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (quotation marks and brackets omitted).

### A.   Not Plausible as a Matter of Law

Post argues that the essential allegations of plaintiffs' case – that Post marketed and intentionally conveyed that its cereal products are healthy when in fact they are not and in doing

---

[28] Plaintiffs allege that "many" of Post's products violate 21 C.F.R. § 101.13(f) because they make nutrient content claims that have undue prominence, given their font size. FAC ¶ 399. Plaintiffs do not identify any particular labels/products that suffer from this problem. This claim, therefore, is dismissed with leave to amend to identify the specific labels/products.

[29] Judge Koh dismissed the "misleading" and "fraudulent" claims plaintiff asserted under the FAL, CLRA and UCL in *Hadley v. Kellogg Sales Co*, agreeing with defendant that plaintiff had inadequately alleged the amount of added sugar in defendant's products and inadequately alleged that the amount of sugar in each of those products was excessive to the point of being unhealthy. *Hadley v. Kellogg Sales Co*., No. 16-CV-04955-LHK, 2017 WL 1065293, at *7 (N.D. Cal. Mar. 21, 2017). These arguments were not made by Post in this case and I do not reach them. However, when amending their claims in this case, plaintiffs should address the deficiencies identified by Judge Koh in the *Kellogg* case.

so misled consumers – are not plausible and Post's representations or omissions could not have misled a reasonable consumer.

Post argues first that the scientific studies relied on by plaintiffs to support their allegations regarding the dangers of sugar consumption are inapposite because many of them discuss products not in Post's cereals (*e.g.*, high fructose corn syrup). Mot. at 19. However, plaintiffs argue that there are other studies which address forms of added sugar *other than* HFCS and also point to evidence that HFCS and other forms of added sugars create similar health risks. *See, e.g.*, FAC ¶ 256. Unlike the case relied on by Post, *Kardovich v. Pfizer, Inc.,* No. 13-CR-7378 RRM VVP, 2015 WL 1506996, at *6-7 (E.D.N.Y. Mar. 31, 2015), there is no "mismatch" between plaintiffs' theory of harm and the scientific materials relied on. At this juncture, relevant studies supporting plaintiffs' theory (at least in part) have been alleged, and determining the full extent of that support is not appropriate on a motion to dismiss. *See, e.g., Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 1056480, at *9 (N.D. Cal. Mar. 10, 2015).

Post then argues that some of plaintiffs' studies and the FDA's new rule support Post, because those studies recognize that many features of Post's cereal – whole grains, added vitamins – provide significant nutritional benefits and even cereal that has added sugar "can be" part of "healthful dietary patterns." 81 FR at 33818, 33849.[30] As above, however, this is not the appropriate time to weigh the competing harms and benefits from Post's products or address whether Post knows (as alleged by plaintiffs) that its products are typically overconsumed. It is sufficient that plaintiffs have a plausible scientific basis for their consumer protection claims. *Gallagher*, 2015 WL 1056480, at *9.[31]

---

[30] I agree with Post that the FDA's final rule and what the FDA considered in its rulemaking process is relevant. Mot. 10 (relying on *In re: Coca-cola Prod. Mktg. & Sales Practices Litig. (No. II)*, No. 14MD02555JSWMEJ, 2016 WL 6245899, at *3 (N.D. Cal. Oct. 26, 2016)). But as noted above, the final rule focused primarily on establishing a recommended (not a mandated) percent DRV and what is needed to be disclosed in the Nutritional Facts Panel. It did not address the claims raised here – that Post misled consumers into believing their cereals were healthy by using specific, prominent marketing statements.

[31] Post places too much reliance on *S.F. v. Archer-Daniels-Midland Co.*, No. 13-CV-634S, 2014 WL 1600414, at *7 (W.D.N.Y. Apr. 21, 2014), *aff'd sub nom. S.F. v. Archer Daniels Midland Co.*, 594 F. App'x 11 (2d Cir. 2014). That was a product liability case, based on defendants' manufacturer of HFCS which plaintiffs alleged was an unreasonably dangerous product. The

Finally, defendants argue that because the risks from overconsuming sugar are widely known, Post cannot plausibly have misled consumers. But Post posits the wrong disclosure; the crux of plaintiffs' claims is that Post's use of prominent marketing terms expressly or implicitly advertising the products as healthy were misleading because the amount of sugar in the product made those claims false.

### B.      Not Plausible Given Other Disclosures

Similarly, Post argues because it did not make any affirmative misrepresentations on its labels, consumers are expected to look at the Nutrition Fact Panel to answer their questions about products where the sugar content for all of the challenged products was disclosed. *See, e.g.,* *Workman v. Plum Inc*., 141 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015), appeal dismissed (Mar. 14, 2016) (dismissing labelling claims where the "products at issue do not display any affirmative misrepresentations. They merely show pictures of featured ingredients contained in the puree pouch and fruit bars. No reasonable consumer would expect the size of the flavors pictured on the label to directly correlate with the predominance of the pictured ingredient in the puree blend."). Here, however, plaintiffs have alleged affirmative misrepresentations – either express or implied – that the challenged products are healthy, which they assert is false or misleading given the added sugar content.

The claim here is more akin to the one in *Williams v. Gerber Prod. Co*., 552 F.3d 934 (9th Cir. 2008), where misrepresentations on the front of a package about its contents could have been dispelled by reviewing the Nutrition Facts Panel on the back. Because the "features" on the front of the package could deceive a reasonable consumer, that the actual ingredients were disclosed on the back in the Panel did not defeat the claim on a motion to dismiss. *Id*. at 939 (rejecting argument "that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print

question here is not whether plaintiffs plausibly allege facts to show added sugar is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it," but instead whether plaintiffs have plausibly alleged that added sugar created health risks such that Post's "health" claims were misleading.

on the side of the box.").[32]

## C. Statements are Puffery

Finally, Post contends that many of the statements at issue are mere non-actionable puffery. "Advertisements that amount to 'mere puffery' are not actionable because no reasonable consumer relies on puffery. Factual representations, however, are actionable." *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) (citations omitted). The Court may determine as a matter of law whether a statement is puffery. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F. 2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so."); *see, e.g., Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) ("original" and "classic" non-actionable); *Viggiano v. Hansen Natural Corp.*, No. 12-cv-10747 MMM, 2013 WL 2005430, at *11 n.42 (C.D. Cal. May 13, 2013) ("premium all-natural flavors" non-actionable, the term "premium" "has no concrete, discernable meaning in the diet soda context"); *Fraker v. KFC Corp.*, 2006 U.S. Dist. LEXIS 79049, at *9-11 (S.D. Cal. Oct. 19, 2006) ("highest quality ingredients," "balanced diet plan," and "part of a sensible diet" non-actionable ); *but see Rojas v. Gen. Mills, Inc.*, No. 12-CV-05099-WHO, 2014 WL 1248017, at *6 (N.D. Cal. Mar. 26, 2014) (terms "all natural" and "natural" not mere puffery and actionable).

Of the allegedly misleading statements identified by plaintiffs, defendants contend the following are mere puffery: (i) "touch of honey" and similar statements; (ii) "goodness" and similar statements; (iii) "simple" statements and related statements. Defendants, however, only identify the actual specific statements they contend are puffery in a 77 page chart submitted by defense counsel. Gargana Decl., Ex. 6. Moreover, defendants appear to single out statements as non-actionable puffery when plaintiffs' claim is that those statements combined with others on the same package *together* express or convey the health claim. Courts have repeatedly emphasized

---

[32] The fact that for *some* of the products, the sugar content is also shown on the front panel in a banner at the top of the box, may undercut the strength of plaintiffs' claims as to *those* particular boxes, but it is premature to make that determination at this juncture.

that in order to assess whether a statement is mere puffery, it must be considered in the context of the whole label.  *See, e.g., Williams*, 552 F.3d at 939 (acknowledging that standing on its own "nutritious" could be considered puffery, but where the "statement certainly contributes, however, to the deceptive context of the packaging as a whole" and "given the context of this statement" motion to dismiss denied); *Coe v. Gen. Mills, Inc.*, No. 15-CV-05112-TEH, 2016 WL 4208287, at *5 (N.D. Cal. Aug. 10, 2016) (considering statements in context of other representations on the package and declining to dismiss "a great start to your day," "start your school day right," and "kick-start your day" as mere puffery); *Jones v. Nutiva, Inc*., No. 16-CV-00711-HSG, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016) ("considered in the context of Defendant's entire Virgin Coconut Oil label, this statement could 'certainly contribute [ ] ... to the deceptive context of the package as a whole.'"); *but see Salazar v. Honest Tea, Inc*., 74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014) (on their own, a "tad" and a "kiss" are "vague and non-specific terms that lack any clear, objective indication of their levels.").

The motion to dismiss is DENIED on this argument.  However, if defendant moves to dismiss again following any amendment by plaintiffs, defendant may re-raise this argument, as long as it considers the challenged statements in the context of other related statements on the same labels to show why, in their full context, the statements are mere puffery.[33]

## IV.    BREACH OF WARRANTY

### A.    Breach of Express Warranty

Post argues plaintiffs' express warranty claim fails as a matter of law because plaintiffs have not plausibly alleged a breach, puffery claims cannot support an express warranty claim, and the products at issue disclose the amount of sugar they contain "clarifying" any otherwise applicable warranty promise.

A plaintiff asserting a breach of warranty claim must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *See*

---

[33] If defendant raises this challenge again, defendant shall make this argument and explain which specific representations it challenges in its *brief*, and not by reference to an attached declaration.

33

*Weinstad v. Dentsply Int'l, Inc.*, 180 Cal.App. 4th 1213, 1227 (2010). Statements on a food label can create an express warranty. *See, e.g., Brown v. Hain Celestial Grp., Inc.*, 11-cv-03082–LB, 2012 WL 6697670, at *16 (N.D. Cal. Dec. 22, 2012) ("All Natural & Organic" cosmetic products); *Vicuna v. Alexia Foods, Inc.*, 11-cv-6119–PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("All Natural" label on potatoes was an express warranty that they did not have artificial ingredients).

Plaintiffs assert that 90 identified statements constitute "affirmations" of fact, promises or description of the cereals at issue, creating express warranties. Those statements include that the products support health digestion systems; promote healthy bones and teeth by helping the body to absorb calcium; contains "nutritious" nuts or berries, contain natural sweet raisins and dates; and are lightly frosted. FAC ¶ 412. Plaintiffs breach of warranty claims suffer from a number of deficiencies.

Defendants point out that for the vast majority of these statements, plaintiffs do not explain why or how Post breached a warranty as to those specific phrases (*i.e.*, that Post did not deliver what was promised). In Opposition, plaintiffs do not address this issue head on, and instead characterize their express warranty claims as based on Post's claims that its products were "healthy" or "heart healthy" or wholesome" and "nutritious." Oppo. 20-23. Plaintiffs, theory, apparently, is that some of these separate statements when read together with other statements create the warranty of a "healthy" product. However, plaintiffs cite no apposite cases supporting their attempt to stitch together multiple different representations on a package to form a basis for a breach of warranty claim.[34] Moreover, the products whose labels allegedly contain the challenged statements are not identified in the warranty sections of the FAC, making it hard to identify which

---

[34] The cases plaintiffs rely on deal with at most a few discrete labelling statements plaintiffs contended created express warranties. *See, e.g.*, Jones v. Nutiva, Inc., No. 16-CV-00711-HSG, 2016 WL 5210935, at *9 (N.D. Cal. Sept. 22, 2016) (statements including "Superfood," "Coconut is one of the world's most nourishing foods," "is 'better than butter,'" and is "A nutritious substitute in baking"); *Allen v. ConAgra Foods, Inc.*, No. 13-CV-01279-JST, 2013 WL 4737421, at *11 (N.D. Cal. Sept. 3, 2013) ("fat free" and "calorie free"); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (the challenged statement that product was part of a "healthy and balanced breakfast" was "sufficiently specific and unequivocal to constitute an affirmative of fact or promise").

of the 90 statements go together to form a warranty for a specific product. It may be that plaintiffs will be able to specifically identify statements whose appearance on the same label (*e.g.*, their proximate location on the label, the same font is used) suffice when read together to create a warranty that a product is healthy or wholesome, but the FAC does not do so.

In addition, plaintiffs failure to identify which products contain what warranties. This makes it impossible to identify the products that are at issue under this cause of action. Plaintiffs must identify what express warranties they are claiming as to each product.

The breach of warranty claim is dismissed with leave to amend. If plaintiffs choose to amend, they shall identify the exact representations that allegedly form a warranty for each product at issue.

### B.  Breach of Implied Warranty

Plaintiffs allege that Post has breached the implied warranty of merchantability because the products do not conform to the "promises or affirmations of fact" made on their labels. Oppo. 23.[35] This theory suffers from the same defect as plaintiffs' currently pleaded express warranty claim; the claim is cobbled together from numerous statements across numerous unidentified labels/products. Therefore, the implied warranty claim fails and must be dismissed with leave to amend as well. *See, e.g., Jones v. Nutiva, Inc*., No. 16-CV-00711-HSG, 2016 WL 5210935, at *9 (N.D. Cal. Sept. 22, 2016) (analyzing express and breach claims based on affirmations of fact under same standard).

## V.  STANDING

### A.  Injunctive Relief

Post argues that plaintiffs lack standing to sue for injunctive relief because they now know – as expressly disclosed in their FAC – that: (a) Post's cereals contain high sugar levels; (b) the dangers of added sugars; and (c) where to look on the label (Nutritional Fact Panel) to determine how much sugar is in a serving. Numerous judges in this District, including me, have concluded

---

[35] Plaintiffs clarify that they do not rely on the alternate theory for beach of the implied warranty; goods not fit for the ordinary purposes for which such goods are used. Oppo. 23; *see, e.g., Jones v. Nutiva, Inc*., 2016 WL 5210935, at *9; *Backus v. Gen. Mills, Inc*., 122 F. Supp. 3d 909, 933 (N.D. Cal. 2015), appeal dismissed (Jan. 26, 2016).

United States District Court
Northern District of California

that where plaintiffs challenge food labels as false and misleading in light of the actual product ingredients, those plaintiffs may lack standing to seek injunctive relief where there is no likelihood that they will be deceived by the challenged conduct in the future. *See, e.g.*, *Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296-WHO, 2014 U.S. Dist. LEXIS 34548, at *21 (N.D. Cal. Mar. 13, 2014) ("Here, I am limited to only granting damages since the plaintiffs now know what evaporated cane juice is and have unambiguously stated that they would not have purchased the product had they known it contained added sugar. They cannot plausibly allege that they would purchase the challenged products in the future if they were properly labeled."); *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-CV-04291-SI, 2016 WL 4382544, at *13 (N.D. Cal. Aug. 17, 2016) ("Plaintiffs' case is predicated on the premise that they would not have purchased the food products in question if they had known that ECJ was sugar. Given this, the Court has difficulty envisioning how plaintiffs could amend their complaint to allege plausibly that, now knowing the products to contain added sugar, they will purchase the products in the future.").

More recently, some judges in this District have found standing where a consumer would not be able to reasonably rely on a defendant's labeling in the future and also expressed an intent to purchase a future product if it were properly labelled. *See, e.g., Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015). Relatedly, I have found standing to seek injunctive relief in a labeling case where the veracity of the claims on the labels could not be easily or readily verified by looking to other information on the label or otherwise. *See, e.g., Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-01421-WHO, 2016 WL 4269787, at *10 (N.D. Cal. Aug. 15, 2016) ("where because of the nature of the product and the necessity of scientific testing to confirm the product is not as advertised, a consumer cannot easily assess the veracity of a defendant's representation when considering a future purchase. This distinguishes this case from other product labelling cases where plaintiffs now know, for example, that 'evaporated cane juice' is sugar or that 'ascorbic acid' is not natural and, therefore, they will not be harmed in the future by purchasing products whose labels disclose those ingredients.").

Here, plaintiffs expressly allege that they were both unaware of the dangers of sugar in general and high-sugar cereals in particular, were seeking products "that were healthy to consume,

36

that is, whose consumption would not increase [the] risk of CHD, stroke, and other morbidity," and "would not have purchased Post cereals and granolas if [they] knew that [Post's] labeling claims were false and misleading in that the products were not as healthy as represented." FAC ¶¶ 344-355, 373-384. The thrust of plaintiffs' case therefore is that high-sugar cereals are dangerous, especially when over-consumed, and that Post should not be able to make claims that its products are "healthy" or "nutritious" at all or only able to do so when disclosing more prominently their "high sugar" levels.

As to their future intent, plaintiffs aver that they would be willing to purchase Post's cereals in the future if they were accurately described and the cereals were either (i) reformulated to reduce added sugar, or (ii) priced lower so they could be purchased as a treat. FAC ¶¶ 120-121. These reasons are not directly related to the injunctive relief they seek – to force defendant to stop using the health and wellness claims on products with excessive added sugar. Judge Koh found one of these reasons insufficient to allege standing to seek injunctive relief: "An injunction on Defendant's food labeling practices might prevent a plaintiff from consuming a mislabeled product, but the Court has no control over whether the price of a product will be changed to an 'appropriate' level." *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2017 WL 1065293, at *23 (N.D. Cal. Mar. 21, 2017).

Plaintiffs' injunctive relief claim is DISMISSED with leave to amend, so that plaintiffs may attempt to plead an intent to purchase that is consistent with the injunctive relief sought in this action. *See, e.g.*, *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-CV-04291-SI, 2016 WL 4382544, at *13 (N.D. Cal. Aug. 17, 2016) (granting leave to amend to allege facts supporting standing to seek injunctive relief in a sugar mislabeling case).[36]

---

[36] Post argues that 21 of the 44 products have been discontinued as of December 2016. Mot. 27; Declaration of Mark Arrington [Dkt. No. 44-1] ¶ 2. Plaintiffs object to this extraneous evidence and argue that because Post has not guaranteed these products and their misleading label claims will not be introduced, plaintiffs claim is still live. Oppo. 27 n.14. Even if I were to consider the Arrington Declaration on the merits (as a 12(b)(1) jurisdictional challenge), it would be premature on this undeveloped record to resolve this issue. Plaintiffs should at least be given the chance to take discovery to uncover why the products were discontinued and whether there are plans to introduce them in the future with similar labelling.

### B.      Standing for Unpurchased Products

Post also challenges plaintiffs' standing to sue over products they did not purchase.  As my prior opinions in food labeling cases have explained, plaintiffs have standing to sue over "unpurchased products" when the label statements challenged are very similar to the statements on the labels of the unpurchased products *and* there are no material differences between the products that would significantly alter the reasonable consumer analysis.  *See, e.g., Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014) ("the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products. That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products.").  That plaintiffs purchased different types of cereals with different ingredients, therefore, is not legally significant in and of itself.  *See, e.g., Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 1056480, at *10 (N.D. Cal. Mar. 10, 2015) ("Defendants have not shown that because some of the Supplements have additional vitamins/minerals or have different amounts of vitamins/minerals, the consumers' claims are different or that consumers will suffer different injuries as a result of the materially identical Statements.").  Nor is the fact that slightly different words are used to convey the challenged health and wellness statements or the fact that the placement of those words varies across the products necessarily determinative.

While Post identifies a number of differences between the specific words used and their placement on various packages, Mot. 10, Post does not show that any of those differences are material, either to the analysis under the reasonable consumer standard or to the injuries allegedly suffered by plaintiffs.  At this juncture, plaintiffs have standing to pursue claims based on the materially similar misleading statements found on the packages of the materially similar unpurchased products.[37]

---

[37] Post also challenges plaintiffs' standing to pursue claims based on statements made on Post's website, in Post's press releases, and statements directed to children.  FAC ¶¶ 310-322; Mot. 28-29.  Plaintiffs admit in their Opposition that they do not rely on these statements as independently actionable, but instead rely on them to show that Post's conduct is malicious, immoral and oppressive as relevant to punitive damages.  Oppo. 29 n.16.  Plaintiffs, therefore, are limited to

## VI.    PRIMARY JURISDICTION

In the alternative to dismissal with prejudice, Post asks me to stay the case pending "completion" of the FDA's rulemaking regarding the use of "healthy" on food labels, which was announced on September 28, 2016. In its notice, the FDA explained it was opening a docket to receive information and comments on whether and how to amend the current guidelines (specifically) 21 CFR § 101.65(d) which "establishes the parameters for use of the implied nutrient content claim 'healthy' or related terms." 81 FR 66562, 66564.

The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Application of the primary jurisdiction doctrine "is a matter of the court's discretion." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d at 1124.

Here, the FDA has very recently opened the discussion over whether and how to revise a specific nutrient claim guideline for "healthy" claims. There is no evidence that final action (or any further clarification as to the scope of the FDA's review of the regulation at issue) is imminent. And it is unclear how much (if any) impact the FDA's action would have on the claims in this case. In that light, I cannot say that efficiencies would be served by staying this case under the primary jurisdiction doctrine. This case shall proceed.

## CONCLUSION

Post's motion to dismiss is DENIED in part and GRANTED in part. It is denied on the basis of preemption, except that plaintiffs may not rely in support of their false and misleading theory on FDA-approved nutrient content claims. Plaintiffs' stand-alone claim based on disclosed protein content is dismissed with prejudice. Plaintiffs' warranty claims and injunctive relief claims are dismissed with leave to amend. Plaintiffs have adequately alleged their FAL, CLRA, and UCL claims based on fraudulent or misleading health and wellness claims, and Post's motion is denied on those claims. However, in their Second Amended Complaint (necessitated by the

those uses for the website, press releases, and "directed to children" statements.

need to replead the warranty and injunctive relief claims), plaintiffs shall address the deficiencies identified by Judge Koh in *Hadley v. Kellogg Sales Co*., No. 16-CV-04955-LHK, 2017 WL 1065293, at *7 (N.D. Cal. Mar. 21, 2017).

**IT IS SO ORDERED.**

Dated: June 1, 2017

William H. Orrick
United States District Judge