1  **FAEGRE BAKER DANIELS LLP**
   TARIFA B. LADDON (SBN 240419)
2  *tarifa.laddon@faegrebd.com*
   HOWARD D. RUDDELL (SBN 281510)
3  *howard.ruddell@faegrebd.com*
   11766 Wilshire Boulevard, Suite 750
4  Los Angeles, CA  90025
   Telephone:     +1.310.500.2090
5  Facsimile:     +1.310.500.2091

6  SARAH L. BREW (admitted pro hac vice)
   *sarah.brew@faegrebd.com*
7  AARON D. VAN OORT (admitted pro hac vice)
   *aaron.vanoort@faegrebd.com*
8  COURTNEY A. LAWRENCE (admitted pro hac vice)
   *courtney.lawrence@faegrebd.com*
9  NICHOLAS J. NELSON (admitted pro hac vice)
   *nicholas.nelson@faegrebd.com*
10 90 South Seventh Street, Suite 2200
   Minneapolis, MN 55402-3901
11 Telephone:     +1.612.766.7000
   Facsimile:     +1.612.766.1600
12

13 Attorneys for Defendant Post Foods, LLC

14

15                 **UNITED STATES DISTRICT COURT**

16                **NORTHERN DISTRICT OF CALIFORNIA**

17 DEBBIE KROMMENHOCK and STEPHEN        Case No. 3:16-CV-04958-WHO
   HADLEY, on behalf of themselves, all others
18 similarly situated, and the general public,     Hon. William H. Orrick

19                               Plaintiffs,     **POST FOODS LLC'S MOTION AND**
                                                 **NOTICE OF MOTION TO DISMISS**
20          v.                                   **THE SECOND AMENDED**
                                                 **COMPLAINT, AND BRIEF IN**
21 POST FOODS, LLC,                              **SUPPORT**

22                               Defendant.

23                                               Date:      January 10, 2018
                                                 Time:      2:00 P.M.
24                                               Dept:      4

25                                               Action Filed:    August 29, 2016
26                                               Trial Date:      None Set

27

28

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION ................................................................................................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED .................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 2

BACKGROUND AND STATEMENT OF FACTS ....................................................................... 3

STANDARD OF REVIEW ............................................................................................................ 4

ARGUMENT .................................................................................................................................. 4

I.      Plaintiffs Cannot Use Consumer-Protection Laws To Censor Or Punish Post's Truthful Speech About The Ingredients And Attributes Of Its Cereals. ......................................................................................................... 4

      A.    The First Amendment and California Constitution protect Post's speech. ................................................................................................ 5

            1.    The government may not prohibit commercial speech on an issue of legitimate dispute. ......................................................... 5

            2.    The Ninth Circuit has held that the First Amendment protects both sides of the debate over the health effects of added sugar. ......................................................................................... 7

            3.    Post's actual speech, as opposed to Plaintiffs' mischaracterization of it, is even more clearly entitled to protection. ..................................................................................... 11

      B.    California statutory law protects Post's speech. .......................................... 12

II.     Plaintiffs' Claims Are Expressly Preempted By The FDA's Definition Of "Healthy"—Which Post's Cereals Satisfy. ............................................................. 13

III.    The Challenged Statements Are True, Specifically Authorized By Federal Law, Or Otherwise Not Actionable ...................................................................... 15

      A.    Many challenged statements are literally true and not misleading. ........... 15

            1.    "No High Fructose Corn Syrup" is completely truthful. ................. 15

            2.    Many other labels accurately identify product ingredients. ........... 16

      B.    Many challenged statements are nutrient-content claims protected by federal law. .................................................................................................. 17

            1.    Label statements discussing fiber, whole grains, or other nutrients are federally protected nutrient-content claims. .............. 18

            2.    "Reduced Cancer Risk" is a federally protected health claim......... 21

      C.    To the extent the statements are not protected on the grounds described above, they are puffery on which no claim can be based. .......... 22

1

        D.     Plaintiffs plead that they never purchased a box of Shredded Wheat
Honey Nut cereal with the packaging error they allege. ............................. 26

2

IV.    Plaintiffs Did Not Remedy The Reasons The Court Previously Dismissed
The Warranty Claims So They Should Be Dismissed Again, This Time

3

With Prejudice. ...................................................................................................... 27

4

CONCLUSION ............................................................................................................................. 30

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Alliance for Natural Health v. Sebelius,*
  786 F. Supp. 2d 1 (D.D.C. 2011) ...............................................6

*American Beverage Ass'n v. San Francisco,*
  187 F. Supp. 3d 1123 (N. D. Cal. May 17, 2016) ........................8

*American Beverage Ass'n v. San Francisco,*
  871 F.3d 884 (9th Cir. 2017)................................................ passim

*Association of National Advertisers v. Lungren,*
  809 F. Supp. 747 (N.D. Cal. 1992) .........................................12

*Backus v. Gen. Mills, Inc.,*
  122 F. Supp. 3d 909 (N.D. Cal. 2015) .....................................30

*Bioganic Safety Brands, Inc. v. Ament,*
  174 F. Supp. 2d 1168 (D. Colo. 2001) ......................................6

*Bland v. Abbott Laboratories,*
  2012 WL 32577 (W.D. Ky. Jan. 6, 2012) ................................23

*Blue Buffalo Co. v. Nestle Purina Petcare Co.,*
  2015 WL 3645262 (E.D. Mo. June 10, 2015)...........................23

*Brown v. Abbott Laboratories,*
  2011 WL 4496154 (N.D. Ill. Sept. 27, 2011)...........................23

*Chacanaca v. Quaker Oats Co.,*
  752 F. Supp. 2d 1111 (N.D. Cal. 2014) ...................................18

*Coe v. General Mills, Inc.,*
  2016 WL 4208287 (N.D. Cal. Aug. 10, 2016)..........................26

*Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service Inc.,*
  911 F.2d 242 (9th Cir. 1990)....................................................22

*Davis v. HSBC Bank Nevada, N.A.,*
  691 F.3d 1152 (9th Cir. 2012)..................................................17

*Delacruz v. Cytosport, Inc.,*
  2012 WL 2563857 (N.D. Cal. June 28, 2012) .................... passim

*Ebeid ex rel. U.S. v. Lungwitz,*
  616 F.3d 993 (9th Cir. 2010).....................................................4

*Fraker v. KFC Corp.*,
   2006 U.S. Dist. LEXIS 79049 (S.D. Cal. Oct. 19, 2006).........................................................23

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. Mar. 21, 2017)...........................................................4, 17, 19

*Hadley v. Kellogg Sales Co.*,
   2017 WL 3453391 (N.D. Cal. Aug. 10, 2017) ................................................................. passim

*Ibanez v. Florida Department of Business & Professional Regulation*,
   512 U.S. 136 (1994) ....................................................................................................................6

*In re Clorox Consumer Litigation*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...............................................................................22, 30

*In re Cutera Seurities Litigation*,
   610 F.3d 1103 (9th Cir. 2010)......................................................................................................4

*In re GNC Corp.*,
   789 F.3d 505 (4th Cir. 2015).......................................................................................................13

*In re Intrexon Corp. Securities Litigation*,
   2017 WL 732952 (N.D. Cal. Feb. 24, 2017)...............................................................................25

*In re Quaker Oats Labeling Litigation*,
   2012 WL 1034532 (N.D. Cal. Mar. 28, 2012) ............................................................................22

*In re R.M.J.*,
   455 U.S. 191 (1982) ....................................................................................................................6

*In re Sony PS3 Other OS Litigation*,
   551 F. App'x 916 (9th Cir. 2014)..........................................................................................17, 29

*In re Yahoo! Inc. Securities Litigation*,
   2012 WL 3282819 (N.D. Cal. Aug. 10, 2012).............................................................................24

*International Dairy Foods Ass'n v. Boggs*,
   622 F.3d 628 (6th Cir. 2010).......................................................................................................6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)......................................................................................................4

*Korolshteyn v. Costco Wholesale Corp.*,
   2017 WL 3622226 (S.D. Cal. Aug. 23, 2017) ....................................................................2, 3, 13

*Kwan v. SanMedica International*,
   854 F.3d 1088 (9th Cir. 2017)....................................................................................................13

*Lam v. Gen. Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) .....................................................................................16

*Matal v. Tam*,
  137 S. Ct. 1744 (2017) ...................................................................................6

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) .......................................................................................5

*Newcal Industries, Inc. v. Ikon Office Solutions*,
  513 F.3d 1038 (9th Cir. 2008)......................................................................22

*Pearson v. Shalala*,
  164 F.3d 650 (D.C. Cir. 1999) .......................................................................6

*Peel v. Atty Regulatory & Disciplinary Commission*,
  496 U.S. 91 (1990) .......................................................................................11

*PETA v. Whole Foods*,
  2016 WL 1642577 (N.D. Cal. Apr. 26, 2016) ..............................................24

*Rasmussen v. Apple Inc.*,
  27 F. Supp. 3d 1027 (N.D. Cal. 2014) ..........................................................25

*Reed v. NBTY, Inc.*,
  2014 WL 12284044 (C.D. Cal. Nov. 18, 2014) ............................................13

*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995) .......................................................................................5

*Salazar v. Honest Tea, Inc.*,
  74 F. Supp. 3d 1304 (E.D. Cal. 2014) ..........................................................24

*Simpson v. California Pizza Kitchen, Inc.*,
  989 F. Supp. 2d 1015 (S.D. Cal. 2013) .........................................................30

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997).......................................................................24

*Truxel v. General Mills, Inc.*,
  No. 4:16-cv-04957-JSW, ECF 60 (N.D. Cal. Sept. 20, 2017) ........................4

*Tylka v. Gerber Products*,
  1999 WL 495126 (N.D. Ill. June 29, 1999) ..................................................23

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013)...........................................................24

*Virginia Board of Pharmacy v. Virginia Citizens Consumer Council*,
  425 U.S. 748 (1976) .....................................................................................12

*Weiss v. Kroger Co.*,
  2014 WL 5114608 (C.D. Cal. Aug. 8, 2014) ................................................23

*Whitaker v. Thompson*,
  248 F. Supp. 2d 1 (D.D.C. 2002) ..........................................................7

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008)..................................................16, 23

*Young v. Johnson & Johnson*,
  2012 WL 1372286 (D.N.J. Apr. 19, 2012) .........................................22

**STATE CASES**

*Bronco Wine Co. v. Jolly*,
  29 Cal. Rptr. 3d 462 (Cal. Ct. App. 2005) ........................................7

*Gerawan Farming, Inc. v. Lyons*,
  12 P.3d 720 (Cal. 2000) ....................................................................7

*Intel Corp. v. Hamidi*,
  71 P.3d 296 (Cal. 2003) ....................................................................5

*Kleffman v. Vonage Holdings Corp.*,
  232 P.3d 625 (Cal. 2010) ................................................................12

*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*,
  133 Cal. Rptr. 2d 207 (Cal. Ct. App. 2003) ...................................12

*People v. Chandler*,
  332 P.3d 538 (Cal. 2014) ................................................................12

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
  950 P.2d 1086 (Cal. 1998) ..............................................................12

*Welton v. Los Angeles*,
  556 P.2d 1119 (Cal. 1976) ..............................................................12

**FEDERAL STATUTES**

21 U.S.C. § 343-1(a)(4)-(5)..................................................14, 15

21 U.S.C. § 343(r)(1)(B) ..................................................................22

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200..........................................................3

Cal. Bus. & Prof. Code § 17500...........................................................3

Cal. Civ. Code § 1750 .......................................................................3

Cal. Comm. Code § 2313-14.............................................................3

Cal. Comm. Code § 2316(3)(b).............................................................................29

**RULES**

Fed. R. Civ. P. 8 ...................................................................................................4

Fed. R. Civ. P. 9 ...................................................................................................4

Fed. R. Civ. P. 12 .................................................................................................1

**REGULATIONS**

21 C.F.R. § 101.13 ..........................................................................................18, 19

21 C.F.R. § 101.14 ................................................................................................22

21 C.F.R. § 101.65 ................................................................................................14

21 C.F.R. § 101.76 ................................................................................................22

21 C.F.R. § 184.1866 .........................................................................................8, 11

81 Fed. Reg. 33,742, 33,760 (May 27, 2016) (to be codified at 21 C.F.R. pt. 101.) ......................11

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution, amendment I.............................................................. passim

California Constitution, article 1, sec. 2......................................................5, 7, 12

**OTHER AUTHORITIES**

29 Fed. Reg. 11180, 11904 (Mar. 3, 2015) ............................................................8

*Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definitions of Terms,* 58 Fed. Reg. 2302, 2371-72 (Jan. 6, 1993) ............................................19

79 Fed. Reg. 11879, 11904 (Mar. 3, 2014) ............................................................9

81 Fed. Reg. 33, 742, 33,760 (May 27, 2016) ....................................................8, 11

*Use of the Term "Healthy" in the Labeling of Human Food Products,* 81 Fed. Reg. 66,562 (Sept. 28, 2016) .....................................................................14

U.S. Dep't of Health & Human Servs., "Scientific Report of the 2015 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Health and Human Services and the Secretary of Agriculture" (Feb. 2015), pt. D., Chapter 1 ...........................................................................................8, 9

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on January 10, 2018, at 2:00 P.M., or as soon thereafter as the matter may be heard before the Hon. William H. Orrick, Post Foods, LLC will move pursuant to Fed. R. Civ. P. 12 to dismiss the Second Amended Complaint (SAC). The SAC's claims are foreclosed by the free-speech guarantees of the U.S. and California constitutions and the limits for protected speech built into California's consumer-protection laws. The challenged label statements are truthful, protected by FDA regulations, and/or nonactionable puffery. This motion is based on all the pleadings and briefing in this matter as well as any further argument the Court may allow.

## STATEMENT OF THE ISSUES TO BE DECIDED[1]

1.      Do the free-speech guarantees of the U.S. and California Constitutions preclude Plaintiffs from using California state law to censor or punish Post for allegedly expressing a protected view on the healthiness of its cereals?

2.      To state a claim under California's consumer-protection laws, "plaintiffs must allege that all reasonable experts in the field agree that the representations are false," but the SAC cites several authorities, including the FDA, who agree that presweetened breakfast cereals can be healthy. Do Plaintiffs' consumer protection claims fail as a matter of California law?

3.      The FDA defines the characteristics a food must have to qualify as "healthy," and Post's cereals meet that definition. Are Plaintiffs' challenges to "healthy" claims preempted?

4.      Is it a breach of California consumer-protection law to truthfully identify ingredients that a breakfast cereal does or does not have?

5.      To the extent that Plaintiffs base their state-law fraud claims on Post's implied nutrient-content claims regarding fiber and other nutrients, are those claims preempted?

6.      Did Plaintiffs fail to correct the issues that caused the Court to dismiss their warranty claims?

---

[1] Because Plaintiffs are challenging more than 200 labeling claims on 34 varieties of Post cereal, an exhaustive statement of the issues would be unduly lengthy. This statement covers the principal issues presented. Subsidiary issues are discussed below.

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

Plaintiffs claim that during the four-year class period, the boxes for 34 different Post

3

cereals made hundreds of different representations about the cereals' attributes and ingredients that

4

implied a more general message that the cereals they contained were "healthy." Plaintiffs argue

5

that this implied message was false because the cereals contained too much added sugar.

6

Post is entitled to judgment as a matter of law on Plaintiffs' claim because, to the extent its

7

boxes delivered an implied message that its cereal was healthy, that message was protected speech

8

under the U.S. and California Constitutions. The very most the SAC shows (and this is being

9

generous) is that a debate is raging on the health effects of added sugar. The Ninth Circuit just

10

held, however, that the First Amendment protects both sides of that debate and precludes

11

government action that "unduly burdens and chills protected commercial speech" contributing to

12

it. *Am. Bev. Ass'n v. San Francisco*, 871 F.3d 884, 897 (9th Cir. 2017). The Ninth Circuit thus

13

struck down a San Francisco ordinance requiring soda makers to add warnings that "[d]rinking

14

beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay," *id.* at 888,

15

finding that the warnings were "contrary to statements by the FDA that added sugars are generally

16

recognized as safe, and can be part of a healthy dietary pattern when not consumed in excess

17

amounts," *id.* at 895 (internal quotation marks and citations omitted). Since the science on sugar is

18

not settled, the First Amendment precluded San Francisco from imposing on sellers its "disputed

19

policy views." *Id.* at 895, 896. In the same way here, Plaintiffs cannot use California's consumer-

20

protection laws to impose their "disputed policy views" about sugar on Post. Post is legally

21

entitled to speak about the healthiness of its cereals without being censored or punished, so

22

Plaintiffs' claim should be dismissed.

23

California's consumer-protection law also requires dismissal for similar reasons. Recent

24

decisions make clear that consumer-protection claims cannot stand against statements taking sides

25

on issues of bona fide debate. *See Korolshteyn v. Costco Wholesale Corp.*, 2017 WL 3622226, at

26

*3-6 (S.D. Cal. Aug. 23, 2017). It is not enough for plaintiffs to plead that *some* scientific

27

evidence supports their viewpoint and demand that a defendant substantiate the truth of its

28

statement. Instead, they must plead that essentially *all* the scientific evidence is on their side.

2

1   Under this standard, Plaintiffs lose because their own SAC reveals substantial evidence supporting

2   *Post*.

3         Many portions of Plaintiffs' claims also fail for more specific reasons, including

4   preemption, undisputed factual accuracy, and puffery. To the extent the Court finds it necessary to

5   reach these more discrete issues, it should dismiss all of the implicated claims with prejudice.

6             **BACKGROUND AND STATEMENT OF FACTS**

7         Plaintiffs sue under California's consumer-protection and warranty laws (FAL, UCL, and

8   CLRA; Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1750; Cal. Comm. Code §

9   2313-14), alleging that Post's cereal labels are false and misleading. As the Court has explained,

10   "the crux of plaintiffs' theory is that Post is using statements implying a product is healthy when it

11   is not, given the added sugar content." Order on Mot. to Dismiss, ECF 88 at 19.

12         The SAC was filed after the Court's June 1, 2017 dismissal of certain claims from the First

13   Amended Complaint. *See* ECF 88. The Court dismissed some claims as preempted, *id.* at 18-22,

14   noted that "the [preemption] analysis set forth in this Order would apply to other statements," and

15   ordered counsel to "meet and confer to agree to the universe of permitted nutrient claims that are

16   subject to preemption." *Id.* at 20 n.19. The Court dismissed Plaintiffs' warranty claims (with leave

17   to amend) because they did not sufficiently identify the terms of the alleged warranties. *Id.* at 34-

18   35. The Court also gave Post leave to argue that the challenged statements are puffery. *Id.* at 32-

19   33.

20         The SAC challenges approximately two hundred label statements on 34 different Post

21   cereals. The cereals range from Raisin Bran to Honey Bunches of Oats, and from Bran Flakes to

22   Honeycomb. The statements vary widely, but some of the more common are "4 Wholesome

23   Grains,"[2] "a Touch of Honey,"[3] "No High Fructose Corn Syrup,"[4] and a Whole Grains Council

24

25

---

26   [2] SAC ¶¶ 159, 165, 168, 171, 176, 180, 188, 191, 194, 197.

27   [3] SAC ¶¶ 159, 165, 168, 171, 176, 180, 188, 191, 194, 197.

28   [4] SAC ¶¶ 183, 199, 201, 203, 205, 215, 222, 224, 228, 233.

stamp[5] indicating the amount of whole grain in a product. Plaintiffs allege that every single challenged statement "suggest[s], both individually and especially in the context of the label as a whole, that the product is healthy."[6] Plaintiffs allege that these statements "are false, or at least highly misleading, because, due to their high added sugar content, consumption of these cereals is decidedly *unhealthy*." SAC ¶ 237.

Plaintiff Hadley is a named plaintiff in parallel suits brought by the same counsel against Kellogg and General Mills. In the suit against Kellogg, Judge Koh has issued two opinions on motions to dismiss. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. Mar. 21, 2017) and 2017 WL 3453391 (N.D. Cal. Aug. 10, 2017). Post cites the relevant parts of those decisions below. In the suit against General Mills, Judge White dismissed Hadley's claims in part and adopted the rulings in this case and the case against Kellogg. *Truxel v. General Mills, Inc.*, No. 4:16-cv-04957-JSW, ECF 60 (N.D. Cal. Sept. 20, 2017).

## STANDARD OF REVIEW

"Rule 9(b)'s heightened pleading standards [govern] claims for violations of the CLRA and UCL." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Because Plaintiffs "allege a unified course of fraudulent conduct," their complaint "as a whole must satisfy the particularity requirement." *Kearns*, 567 F.3d at 1125; *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Combined with Rule 8, Rule 9 requires Plaintiffs to "plead facts sufficient to plausibly articulate 'with particularity the circumstances constituting fraud.'" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (quoting Fed. R. Civ. P. 9(b)).

## ARGUMENT

**I.   Plaintiffs Cannot Use Consumer-Protection Laws To Censor Or Punish Post's Truthful Speech About The Ingredients And Attributes Of Its Cereals.**

Plaintiffs are attempting to use the authority of this Court and California law to punish Post for making specific, truthful statements about its breakfast cereals that Plaintiffs allege suggested

---

[5] SAC ¶¶ 126, 130, 134, 137, 141, 144, 148, 152, 159, 165, 168, 171, 176, 180, 183, 188, 191, 194, 197, 199, 201, 203, 205, 207, 209, 211, 215, 217, 222, 224, 228, 231.

[6] SAC ¶¶ 126, 130, 134, 137, 141, 144, 148, 152, 159, 165, 168, 171, 176, 180, 183, 188, 191, 194, 197, 199, 201, 203, 205, 207, 209, 211, 215, 217, 222, 224, 228, 231, 233.

the implicit, broader message that the cereals were healthy. The Court should reject Plaintiffs'

attempt because Post's right to speak about its cereal is protected by the free-speech guarantees of

the U.S. and California Constitutions, and indeed by California's consumer-protection laws. Under

all those laws, government power may be used to suppress speech only if the evidence is so one-

sided on a topic that it leaves no room for reasonable debate. But on the topic of the health effects

of added sugar, the Ninth Circuit recently held that reasonable debate is *permitted* because the

evidence is *not* so one-sided. *Am. Bev. Ass'n v. San Francisco*, 871 F.3d 884 (9th Cir. 2017).

Because the public has a compelling interest in receiving the truthful information that Post

communicated about its cereals' attributes and ingredients, Plaintiffs' claims must be dismissed.

**A.  The First Amendment and California Constitution protect Post's speech.**

**1.  The government may not prohibit commercial speech on an issue of
legitimate dispute.**

The First Amendment protects commercial speech because a "consumer's interest in the

free flow of commercial information may be as keen, if not keener by far, than his interest in the

day's most urgent political debate." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481-82 (1995).

That protection extends to private suits, because "the use of government power ... *by an award of

damages or an injunction in a private lawsuit*, is state action that must comply with First

Amendment limits." *Intel Corp. v. Hamidi*, 71 P.3d 296, 311 (Cal. 2003) (emphasis in original);

*see New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964).

Because Plaintiffs' claims attempt to suppress or punish speech, they are subject to

heightened scrutiny. "The level of scrutiny for burdens placed on commercial speech depends on

the nature of the regulation at issue." *Am. Beverage*, 871 F.3d at 891. Because "disclosure

requirements trench much more narrowly on advertiser's interests than do flat prohibitions of

speech," the Ninth Circuit holds that they can be sustained when they involve "purely factual and

uncontroversial" statements. *Id.* at 891-92. Prohibitions or restrictions, in contrast, are subject to

the higher standard of intermediate scrutiny: they must directly advance "a substantial interest, and

[they] must be narrowly drawn." *Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017) (internal quotation

marks omitted). States may of course prohibit false or misleading commercial speech, and they

may require a "potentially misleading" statement to be "presented in a way that is not deceptive," as long as the "restrictions [are] no broader than reasonably necessary to prevent the deception." *In re R.M.J.*, 455 U.S. 191, 203 (1982). But courts "cannot allow [a state's] rote invocation of the words 'potentially misleading' to supplant the [state's] burden to demonstrate that the harms it recites are real." *Ibanez v. Fla. Dep't of Bus. & Prof. Reg.*, 512 U.S. 136, 146 (1994). A state cannot evade "First Amendment protection by simply declaring the speech 'inherently misleading;'" rather, "[t]he restricted speech must *actually be* inherently misleading." *Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168, 1180 (D. Colo. 2001) (emphasis added).

In the context of product labeling, the First Amendment allows the government to censor a statement or punish its use only if the statement has been proven false by settled science. If the science is subject to ongoing debate, a jury cannot censor speech on either side. "Where the evidence supporting a [label] claim is inconclusive, the First Amendment permits the claim to be made." *Alliance for Natural Health v. Sebelius*, 786 F. Supp. 2d 1, 24 (D.D.C. 2011) (discussing *Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999)). Perhaps the best example of this principle is *International Dairy Foods Ass'n v. Boggs*, 622 F.3d 628 (6th Cir. 2010). Ohio had tried to ban labels stating that milk from cows raised without artificial hormones was "rbST free" or "artificial hormone free." *Id.* at 635-37. The state considered these statements misleading because artificial hormones had not been detected in milk, even when cows were given the hormones. *Id.* at 632-33, 636-37. But the Sixth Circuit struck down the regulation because it was "still very much an open question" whether "'rbST free' ... informs consumers of a meaningful distinction" between different kinds of milk, or instead "misleads them into believing that" such a distinction exists. *Id.* at 637. Because the scientific debate was ongoing, the Sixth Circuit concluded that the claims were protected under the First Amendment. *Id.*; *see also Whitaker v. Thompson*, 248 F. Supp. 2d 1, 10 (D.D.C. 2002) ("complete ban of a [dietary-supplement label] claim" is permitted by the First Amendment only "when there [is] almost no qualitative evidence in support of the claim").

California's free-speech protections "are even broader and greater" than the First Amendment's, including with respect to commercial speech. *Gerawan Farming, Inc. v. Lyons*, 12 P.3d 720, 735 (Cal. 2000) (internal quotation marks omitted). As *Gerawan Farming* explained,

article I is not modeled on the First Amendment but reflects a separate historic tradition under which States regulated advertisements as misleading "only to the extent that they were not immunized by the doctrine of caveat emptor." 12 P.3d at 737, 738. Thus, although no California courts have squarely addressed whether the federal and California state constitutional tests are different, *see Bronco Wine Co. v. Jolly*, 29 Cal. Rptr. 3d 462, 471 n.8 (Cal. Ct. App. 2005), giving broad protection to Post's specific, truthful statements is compelled by California's constitutional tradition favoring "wide and unrestrained commercial speech," *Gerawan Farming,* 12 P.3d at 738.

In short, Plaintiffs can state viable claims only by pleading that the evidence on the health effects of eating the challenged cereals is so one-sided that there is no room for reasonable debate.

### 2. The Ninth Circuit has held that the First Amendment protects both sides of the debate over the health effects of added sugar.

Plaintiffs cannot meet the First Amendment and article I standards for bringing their claims because the Ninth Circuit recently held that both sides of the debate over the health effects of added sugar receive First Amendment protection, and that holding is controlling here.

The Ninth Circuit decision arose out of a San Francisco ordinance that required sugar-sweetened beverages to bear a warning label stating, "Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay." *Am. Beverage*, 871 F.3d at 888. The beverage manufacturers challenged the ordinance. The district court ruled for San Francisco, but the Ninth Circuit reversed and enjoined the ordinance for violating the First Amendment.

Applying the lower standard governing government-mandated disclosures, the Court of Appeals asked whether San Francisco's warning contained only "purely factual and uncontroversial information" and concluded that it did not. *Id.* at 893. "[R]ather than being purely factual and uncontroversial," the court held, "the warning ... convey[s] San Francisco's disputed policy views." *Id.* at 895, 896. The warning was "contrary to statements by the FDA that added sugars are 'generally recognized as safe,' 21 C.F.R. § 184.1866, and 'can be part of a healthy dietary pattern when not consumed in excess amounts,' 81 Fed. Reg. 33, 742, 33,760 (May 27, 2016)." 871 F.3d at 895. Similarly, the FDA had found that "added sugars ... are no more likely to cause weight gain in adults than any other source of energy." *Id.* at 895-96 (quoting 29 Fed. Reg.

11180, 11904 (Mar. 3, 2015)). In light of this evidence, the Court held that the San Francisco label was "one-sided," and compelling it was incompatible with the First Amendment. *Id.* at 896.

That holding controls this case. If San Francisco could not meet the lower standard for compelling disclosures stating that added sugar is unhealthy, then *a fortiori* Plaintiffs cannot meet the higher standard for suppressing or punishing speech expressing the opposing viewpoint—that a food with added sugar is healthy. Similarly, if the First Amendment protects both sides of the debate over the health effects of soda, then *a fortiori* it protects both sides of the debate over the health effects of breakfast cereal. A 20-ounce, single-serving bottle of soda provides *65 grams* of sugar,[7] and 47 percent of the total added sugar consumed by Americans comes from beverages.[8] In contrast, Post's challenged cereals contain only 5 to 14 grams of added sugar per serving, SAC ¶ 122, and only 8 percent of the added sugar in Americans' diets comes from breakfast cereal and breakfast bars.[9]

Plaintiffs' pleadings place this case firmly within the scope of *American Beverage*. This Court previously analyzed whether Plaintiffs had pleaded a "plausible scientific basis" that added sugar makes the cereals unhealthy, applying the standard for stating a claim on the merits. ECF 88 at 30. But the standard for complying with the First Amendment is different and much higher. Under that standard, Plaintiffs must plausibly plead not just that the cereals are "unhealthy," but that the evidence in support of that view is so overwhelmingly one-sided that speech on the other side may be banned. Plaintiffs have not pleaded that, and they could not possibly plead it.

Indeed, judicially noticeable government sources, along with the materials cited in the SAC,[10] provide substantial evidence that breakfast cereals are **healthy**—making that viewpoint a

---

[7] *Am. Bev. Ass'n v. San Francisco*, 187 F. Supp. 3d 1123, 1138 (N. D. Cal. May 17, 2016).

[8] U.S. Dep't of Agric. & U.S. Dep't of Health & Human Servs., "Scientific Report of the 2015 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Health and Human Services and the Secretary of Agriculture" (Feb. 2015) (hereinafter "2015 Dietary Guidelines Advisory Committee Report"), Part D., Chapter 1, at 44 (cited at SAC ¶ 19 n.13) (Declaration of Nicholas J. Nelson ("Nelson Decl."), Ex. 1).

[9] *Id.*

[10] The Court has taken judicial notice of materials cited in the First Amended Complaint, as well as the FDA's relevant guidance letter. ECF 88 at 11 n.13. The additional materials cited herein are

protected one under the First Amendment. Ready-to-eat breakfast cereals are among the most
nutrient-dense foods on the market,[11] and medical and public-health authorities endorse them as a
valuable source of nutrition. Adding modest amounts of sugar to nutrient-dense foods can *promote*
healthy diets by getting people to eat more of those foods.[12] "[W]hen sugars are added to
otherwise nutrient-rich foods, such as ... sugar-sweetened cereals, the quality of children's and
adolescents' diets *improves*."[13] As the USDA notes, breakfast cereals can also help address the
public-health concern that people are not getting enough vitamin D, calcium, dietary fiber, or
iron.[14] Other authorities cited in the SAC agree:

- "Soft drinks, sugar, and sweets are more likely to have a negative impact on diet quality, whereas dairy foods, milk drinks, and presweetened cereals may have a positive impact." AHA Scientific Statement at 1016 (Nelson Decl. Ex. 2) (cited at SAC ¶17).

- "Studies have consistently found that higher consumption of RTE [ready-to-eat] cereals is associated with improved micronutrient intake, which supports the recommendation to promote RTE cereals to youth." Jennifer L. Harris, et al., "Effects of Serving High-Sugar Cereals on Children's Breakfast-Eating Behavior," *Pediatrics*, Vol. 127, Issue 1 (Jan. 2011), at 72 (Nelson Decl., Ex. 3) (cited at SAC ¶ 320).

What makes Post's statements even more clearly protected is Plaintiffs' failure to cite *any*
study showing that *any* breakfast cereal (let alone any of Post's) is unhealthy or associated with

---

also an integral part of the Second Amended Complaint or otherwise subject to judicial notice, as
set forth in Post's Request for Judicial Notice, filed simultaneously herewith.

[11] 2015 Dietary Guidelines Advisory Committee Report, ranking of foods for nutrients including
Vitamin D (Table D1.5, at 93), calcium (Table D1.6, at 94), dietary fiber (Table D1.8, at 97), and
iron (Table D1.9, at 99) (Nelson Decl., Ex.1).

[12] 79 Fed. Reg. 11879, 11904 (Mar. 3, 2014)

[13] Johnson, R.K,, et al., on behalf of the American Heart Association Nutrition Committee of the
Council on Nutrition, Physical Activity, and Metabolism and Council on Epidemiology and
Prevention, "Dietary Sugars Intake and Cardiovascular Health: A Scientific Statement from the
American Heart Association" *Circulation*, Vol. 120, 1011 (2009) (hereinafter "AHA Scientific
Statement"), at 1012 (emphasis added) (Nelson Decl., Ex. 2) (cited at SAC ¶ 17 n.10).

[14] U.S. Department of Health and Human Services and U.S. Department of Agriculture, *2015-
2020 Dietary Guidelines for Americans*, 8th Ed., December 2015 (hereinafter *2015-2020 Dietary
Guidelines*), at 60-61 & Appx. 11-13 (Nelson Decl., Ex. 5); *see also* 2015 Dietary Guidelines
Advisory Committee Report at  Part D, Chapter 1, at 14-16 (Nelson Decl. Ex. 1)

any of the health risks they attribute to added sugar. The lone cereal study they cite addresses only the quantity of cereal children eat when offered a choice.[15] SAC ¶ 320.

For their claim, Plaintiffs rely on studies that address sugar-sweetened beverages or sugar generally. They argue that those studies show that added sugar is "toxic" and support the inference that breakfast cereals containing it are unhealthy. SAC ¶¶ 1, 41-104. This kind of inference cannot satisfy the standard for using government force to shut down the conversation over sugar in cereal. The gap between the science and Plaintiffs' conclusions is too wide to rule out reasonable debate. Indeed, the SAC's cited sources expressly acknowledge inconsistencies and uncertainty:

- "[T]he quality of the evidence for an association between an increase in free sugars intake and increased body weight was considered to be low." World Health Organization, "Sugars intake for adults and children: Guideline," (March 4, 2015), at 3 (Nelson Decl., Ex. 4) (cited at SAC ¶ 17 n. 10).

- "[E]vidence is inconsistent regarding the positive association between sugar-sweetened beverage consumption and obesity.... [I]t is unlikely that a single food or food group is primarily causal." AHA Scientific Statement, at 1014 (Nelson Decl., Ex. 2) (cited at SAC ¶ 17 n.10).

- "[E]pidemiological studies at this stage provide an incomplete, sometimes discordant appraisal of the relationship between fructose or sugar intake and metabolic/cardiovascular diseases .... Regarding the relationship between fructose or sucrose intake and cardiovascular risk factors or type 2 diabetes, the evidence is even sparser." Tappy, L., et al., "Metabolic Effects of Fructose and the Worldwide Increase in Obesity," *Physiology Review*, Vol. 90, 23-46, at 39 (2010) (Nelson Decl., Ex. 6) (cited at SAC ¶ 11 n.1). "There is, however, no unequivocal evidence that fructose intake at moderate doses is directly related with adverse metabolic effects." *Id.* at 23-24 (abstract).

- "Widely discrepant conclusions have emerged, ranging from strong or convincing evidence for an association [between drinking sugar-sweetened beverages and body weight] to evidence described as inconclusive or equivocal." Te Morenga, L., et al., "Dietary sugars and body weight: systematic review and meta-analyses of randomized controlled trials and cohort studies," *BMJ* (Jan. 2013), at 7 (Nelson Decl., Ex. 7) (cited at SAC ¶ 43).

The government has gone further in noting the limits of the anti-sugar research. The USDA guidelines recognize that there has *not* been a "Tolerable Upper Intake Level set by the Institute of Medicine" above which added sugar would be toxic. *2015-2010 Dietary Guidelines*, at xiii n.2

---

[15] The only Post cereal tested in that study, Cocoa Pebbles, is not at issue in this action. Harris, Effects of Serving High-Sugar Cereals" at 72 (Nelson Decl., Ex. 3).

(Nelson Decl., Ex. 5). The FDA has noted that science "do[es] not support a cause and effect relationship between added sugars consumption and risk of obesity or heart disease,"[16] and that"[t]he current evidence on added sugars does not show a linear relationship with chronic disease risk, and therefore, the evidence does not support limiting added sugars to as little in the diet as possible."[17] Finally, as the Ninth Circuit noted, the FDA acknowledges "that added sugars are 'generally recognized as safe,' 21 C.F.R. § 184.1866, and 'can be part of a healthy dietary pattern when not consumed in excess amounts,' 81 Fed. Reg. 33, 742, 33,760 (May 27, 2016)." *Am. Beverage*, 871 F.3d at 895.

In sum, even on the pleadings, and even taking all inferences in favor of Plaintiffs, the very most that the SAC alleges is that there is an ongoing debate over the health effects of added sugar. On that record, Plaintiffs' claims are foreclosed by the First Amendment and article I.

### 3. Post's actual speech, as opposed to Plaintiffs' mischaracterization of it, is even more clearly entitled to protection.

The analysis to this point has assumed that the Court must accept Plaintiffs' allegation that Post made a broad claim that its challenged cereals are healthy. Under the correct analysis, however, the Court is not bound by Plaintiffs' characterization of Post's speech because "[w]hether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law" for the court. *Peel v. Atty Reg. & Disc. Comm'n*, 496 U.S. 91, 108 (1990) (plurality). Thus, "it is the role of this court to ... determine whether the [allegedly-misleading] commercial messages in question warrant any First Amendment protection." *Ass'n of Nat'l Advertisers v. Lungren*, 809 F. Supp. 747, 756 (N.D. Cal. 1992).

When the First Amendment and article I are applied to the actual statements Post made on its cereal boxes, rather than Plaintiffs' mischaracterization of those statements, the case for dismissal is even clearer. As detailed in Section III below, the actual statements on Post's cereal boxes are specific, accurate descriptions of its products' attributes, including such statements as

---

[16] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,760 (May 27, 2016) (to be codified at 21 C.F.R. pt. 101.)

[17] *Id.* at 33,840.

1    "no high-fructose corn syrup" and "wholesome Almonds." *See infra* at 18-20. The public interest

2    in receiving the information conveyed by these specific, accurate statements about the contents of

3    Post's cereals is compelling. *See Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Cncl.*,

4    425 U.S. 748, 764-65 (1976). Plaintiffs therefore cannot censor or punish this speech, and their

5    claims must be dismissed.

6         **B.  California statutory law protects Post's speech.**

7         The Court can avoid the constitutional issues by applying the built-in protections in

8    California's consumer-protection laws for commercial speech on debated matters. "[C]ourts

9    should, if reasonably possible, construe a [California] statute in a manner that avoids any doubt

10   about its constitutional validity."[18] Such a construction is possible here, because a plaintiff cannot

11   state a California consumer-protection claim merely by pointing to scientific disagreement about

12   whether the defendant's statements are true. Scientific *consensus*, or close to it, must show that the

13   statements are *not* true. Plaintiffs have not pleaded that here, so their claims fail.

14        California's "Legislature has expressly permitted prosecuting authorities, but not private

15   plaintiffs, to require substantiation of advertising claims." *Nat'l Council Against Health Fraud,*

16   *Inc. v. King Bio Pharm., Inc.,* 133 Cal. Rptr. 2d 207, 214 (Cal. Ct. App. 2003). Thus, only

17   prosecutors can assert the claim that a seller has no proof that its labels are true. Private plaintiffs,

18   in contrast, must *disprove* the labels. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095 (9th Cir.

19   2017). Under this rule, "[d]isputes over the quality and credibility of the substantiation for the

20   claims on Defendants' products are not properly brought before the Court in a suit by private

21   plaintiffs," *Reed v. NBTY, Inc.,* 2014 WL 12284044, at *14 (C.D. Cal. Nov. 18, 2014). If evidence

22   exists on both sides, the private suit fails. The rule, best articulated by Judge Bencivengo just two

23   months ago, is that:

24

25   [18] *Kleffman v. Vonage Hldgs. Corp.*, 232 P.3d 625, 637 (Cal. 2010) (emphasis and citations
     omitted). *See also People v. Chandler*, 332 P.3d 538, 560-61 (Cal. 2014) (construing statute to
26   avoid First-Amendment questions); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 950 P.2d
     1086, 1112 (Cal. 1998) (construing UCL to avoid constitutional question); *Welton v. Los Angeles*,
27   556 P.2d 1119, 1123 (Cal. 1976) (construing commercial-speech regulation to avoid First-
28   Amendment difficulty).

1

> to state a false advertising claim on a theory that representations have been proven
> to be false, plaintiffs must allege that all reasonable experts in the field agree that
> the representations are false. If plaintiffs cannot do so because the scientific
> evidence is equivocal, they have failed to plead that the representations based on
> this disputed scientific evidence are false.

2

3

4 *Korolshteyn v. Costco Wholesale Corp*., 2017 WL 3622226, at *3 (S.D. Cal. Aug. 23, 2017). "To

5 hold otherwise would require a defendant to affirmatively prove the truth of, i.e., to substantiate,

6 its advertising claims to avoid liability for false advertising, which a private plaintiff is not

7 allowed to require." *Id*. at *6. The *Korolshteyn* court noted that the United States Court of Appeals

8 for the Fourth Circuit has applied this same rule under California law, *In re GNC Corp.,* 789 F.3d

9 505, 515 (4th Cir. 2015) (no claim where "some reasonable experts disagree" that defendants'

10 statements were false), and found unpersuasive the plaintiff's argument "that this case is not the

11 law in the Ninth Circuit." 2017 WL 3622226, at *3.

12    The standard under California's substantiation rule dovetails with the constitutional

13 standards: Plaintiffs cannot state a claim based on allegations of a scientific *debate* about added

14 sugar's alleged dangers; they must plead scientific *consensus.* As Plaintiffs have failed to do that,

15 their consumer-protection claims must be dismissed with prejudice under California law.

16                              *       *       *

17    Three bodies of law—federal and state, constitutional and statutory—bar Plaintiffs' claims

18 against Post's speech, and that is a good thing. Allowing such claims would weaponize consumer-

19 protection laws and allow interest groups as well as other private parties to use the coercive power

20 of the state to stifle one side of a debate. That is not the right path. Plaintiffs may join the debate

21 on added sugar if they wish. But they cannot make Post's side of the debate illegal. Their

22 consumer-protection claims should be dismissed with prejudice.

23 **II.    Plaintiffs' Claims Are Expressly Preempted By The FDA's Definition Of "Healthy"—**
**Which Post's Cereals Satisfy.**

24

25    As this Court previously held, "[w]here a plaintiff challenges a labeling statement that has

26 been approved by the FDA ... such a claim may be preempted." ECF 88 at 13; *see* 21 U.S.C.

27 § 343-1(a)(4)-(5). Plaintiffs claim that Post may not communicate that its cereals are "healthy"

28

---

13

because they contain added sugar, but the FDA has defined when a food is "healthy" for labeling

purposes—and the challenged cereals meet that definition. Plaintiffs' claims are thus preempted.

FDA regulations expressly authorize a food manufacturer to "use the term 'healthy' ... on

the label" as long as the food meets detailed requirements for its contents. 21 C.F.R.

§ 101.65(d)(2). For many foods, including breakfast cereal, a "healthy" product may contain at

most 60mg cholesterol, 480mg sodium, 3g total fat, 1g saturated fat, and 15% of calories from

saturated fat. *Id.* § 101.65(d)(2)(i)(F). It also must include at least 10% of the recommended daily

intake of vitamin A or C, calcium, iron, protein, or fiber. *Id.* More recently, the FDA has updated

the fat-related requirements, formally exercising enforcement discretion to allow foods with a fat

profile of "predominantly" poly- and monounsaturated fats to be described as "healthy," and

instituting a rulemaking to codify that treatment.[19] The FDA has never required a product to meet

limits on sugar content as a prerequisite for making a "healthy" claim.

The pleadings show that every one of the 34 cereals challenged by the SAC qualifies as

healthy. The labels reproduced in the SAC demonstrate that all the cereals satisfy the criteria for

cholesterol, sodium, and vitamin or mineral content. (Declaration of Jamie Ohrt, Exs. 1-33.) As to

fat, 19 of the 34 challenged cereals satisfy the total fat and saturated fat criteria contained in the

regulation,[20] and the other 15 (mostly granolas and Great Grains cereals with nuts)[21] satisfy the

FDA's alternative criteria for poly- and monounsaturated fat.[22]

Although the cereals meet the FDA's specifications for being labeled "healthy," Plaintiffs

still claim that the labels violate California law by "suggest[ing] the cereals are healthy, when they

---

[19] *See Use of the Term "Healthy" in the Labeling of Human Food Products*, 81 Fed. Reg. 66,562 (Sept. 28, 2016); *Use of the Term "Healthy" in the Labeling of Human Food Products: Guidance for Industry* at 3, 5 (Sept. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM521692.pdf (Nelson Decl., Ex. 8).

[20] *See* Ohrt Decl., Exs. 1, 6, 9, 11, 13-18, 20-21, 27-33.

[21] *See* Ohrt Decl., Exs. 2-5, 7-8, 10, 12, 19, 22-26.

[22] For two packages that were used for a few months—HBO Vanilla Bunches from August-December 2012 and HBO Real Strawberries from August-November 2012—the record does not include the Nutrition Facts Panel. *See* SAC ¶¶ 177, 184. But Plaintiffs do not plead that the nutrition content of the cereals was different during that short period.

1    are not" because of their added sugar. SAC ¶ 116.[23] This claim is preempted because it seeks to

2    impose a state-law added-sugar criterion for making a "healthy" claim that the FDA does not

3    require. "[N]o State," however, "may directly or indirectly establish … any requirement" for the

4    nutrition labeling of food "that is not identical to" the federal Food, Drug and Cosmetic Act and its

5    implementing regulations. 21 U.S.C. § 343-1(a)(4)-(5). All of Plaintiffs' challenges to the words

6    "healthy" and "health" are preempted.[24]

7            In addition, Plaintiffs' challenges to other words that Plaintiffs contend *mean* "healthy" are

8    also preempted. Plaintiffs cannot have it both ways on this point: if they want to expand their

9    claims by arguing that other statements mean "healthy," they cannot argue that "healthy"

10   preemption does not apply to those statements. Judge Koh suggested that the FDA's regulation of

11   the word "healthy" covers similar terms such as "nutritious," "wholesome" "best choice," and

12   "good for you." *Hadley II*, 2017 WL 3453391, at *18. The Court should apply the same rule:

13   Plaintiffs' claims are preempted because they seek to define "healthy" differently than the FDA

14   does. Those claims should be dismissed with prejudice.

15   **III.    The Challenged Statements Are True, Specifically Authorized By Federal Law, Or
             Otherwise Not Actionable.**
16
             **A.  Many challenged statements are literally true and not misleading.**
17
             As the Court recognized, a claim does not exist under California's consumer-protection

18   laws unless a "reasonable consumer" would perceive a statement as "false" or "misleading." ECF

19   88 at 29 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Under that

20   standard, Plaintiffs cannot state claims against Post's statements that were plainly true.

21
                    **1.   "No High Fructose Corn Syrup" is completely truthful.**
22
             First, Plaintiffs cannot state a claim against Post's truthful statements that its cereals

23   contained no high fructose corn syrup. In Hadley's parallel case against Kellogg, Judge Koh held

24   that "Defendant's statement that the product lacks high fructose corn syrup is not false and does

25
     ─────────────────────
26   [23] *See also* SAC ¶¶ 126, 130, 134, 137, 141, 144, 148, 152, 159, 165, 168, 171, 176, 180, 183, 188,
     191, 194, 197, 199, 201, 203, 205, 207, 211, 215, 217, 222, 224, 228, 231, 233.
27
     [24] SAC ¶¶ 148a, 148h, 152a, 152i, 159b, 165b, 168b, 171b, 176b, 180b, 188b, 191b, 194b, 199c-d,
28   201c-d, 215i-m, 217b, 222c, 222g, 224a, 224d, 224e, 231c.

─────────────────────

not misrepresent the contents of the product." *Hadley II*, 2017 WL 3453391, at *20; *see Delacruz v. Cytosport, Inc.*, 2012 WL 2563857, at *8 (N.D. Cal. June 28, 2012) ("0g trans fat" did not imply absence of other fats); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) ("gluten free" did not imply general healthfulness or absence of oils, sugar, or corn syrup). This Court should follow Judge Koh's approach and dismiss Plaintiffs' challenges to "no high fructose corn syrup" labels.[25] Plaintiffs do not contend that any of the products so labeled actually contained any high fructose corn syrup, and truthfully saying that a product lacks HFCS does not imply either that it lacks other ingredients or that all of its ingredients are "healthy." These statements did not mislead reasonable consumers.

### 2.  Many other labels accurately identify product ingredients.

Many of Plaintiffs' challenged claims involve Post's accurate identification of the product's ingredients—fruits, nuts, seeds, or grains—along with descriptions of *those ingredients* as wholesome or nutritious. For instance, Great Grains labels stated that the various products contain "nutritious blueberries," SAC ¶¶ 126b, 144b; "wholesome Almonds," ¶¶ 130b, 134c, 148b, 152b; "nutritious Cranberries," ¶ 130c; "wholesome Walnuts," ¶ 134b; "wholesome Pecans," ¶¶ 137b, 141b; "wholesome walnuts and almonds," ¶ 134f; "naturally nutritious Raisins & Dates," ¶ 137c; "nutritious Pumpkin Seeds," ¶ 148c; "nutritious Hazelnuts," ¶ 152c; or "wholesome hazelnuts, almonds, and multi grain clusters with real cinnamon," ¶ 152g. Plaintiffs do not dispute that each identified fruit, nut, or seed was actually wholesome or nutritious. Their argument is that these specific representations implied that either *other* ingredients or the cereals as a whole *also* were wholesome or nutritious. But the law does not allow that leap.

Simply identifying ingredients does not represent that the product as a whole is "healthy." In Plaintiff Hadley's parallel lawsuit against Kellogg, Judge Koh specifically rejected this type of argument, holding that "'MADE WITH Real Fruit' is a factually true statement" that "does not reference the presence, or lack thereof," of other ingredients such as trans fat, and "would not cause a reasonable consumer to believe that the Nutri-Grain bars are free of trans fat." *Hadley I*,

---

[25] SAC ¶¶ 159a, 165a, 168a, 171a, 176a, 180a, 183a, 188a, 191a, 194a, 197a, 199a, 201a, 203a, 205a, 215f, 222a, 222b, 224b, 228a, 233a.

243 F. Supp. 3d at 1093; *see also Delacruz*, 2012 WL 1215243, at *8 ("25g Protein" did not imply absence of fat or allegedly unhealthy oils). Nor does Post's description of the specific ingredients as "healthy" or "wholesome" imply that the product as a whole had those characteristics. Under California law, a seller may point out the good qualities of its product without being deemed to have implied a broader representation that the good qualities will result in a net benefit to the product's users. *See Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1162 (9th Cir. 2012) (advertisements about credit-card cash rewards did not imply the absence of annual fees, even though "an annual fee could offset the cash value of any rewards").

In addition to the Great Grains labels listed above, Plaintiffs challenge other labels on the same logic, and their claims fail for the same reasons. Plaintiffs allege that the Great Grains products included the following label language at some point:

> We gently steam, roll and bake our whole grains to help maintain the full flavor and nutrition of our flakes [or, on some products, "We gently crack the whole wheat berry and add a mix of grains to our flakes"], while some of the competition add artificial sweeteners and flavors along with isolated fiber to their flakes. We then add in nutritious fruits and nuts [or "nuts and seeds," depending on the product] and balance them with our grains for a great taste that's irresistible.

SAC ¶¶ 126d, 130e, 134e, 137e, 141d, 144d, 148f, 152f. Similarly, labels on most varieties of Honey Bunches of Oats stated "4 Wholesome Grains." *Id.* ¶¶ 159f, 165f, 168f, 171f, 176f, 180f, 188f, 191f, 194f, 197c. Shredded Wheat Honey Nut labels stated, "We make it easy to understand what is in your food—we start with the goodness of whole grain wheat," and "Our flavor comes from 100% whole grain wheat, honey, almonds, molasses and real sugar." *Id.* ¶ 215d, f. Plaintiffs' challenges to these statements fail for the same reasons.

**B. Many challenged statements are nutrient-content claims protected by federal law.**

In addition to being protected across-the-board by the FDA's definition of "healthy," *see supra* at 16-17, many of Post's label statements are also protected on narrower preemption grounds.

**1. Label statements discussing fiber, whole grains, or other nutrients are federally protected nutrient-content claims.**

This Court previously held that "Plaintiffs cannot rely on FDA-approved nutrient claims as part of the basis for their § 343(a) false and misleading claim," because "the FDA has identified disqualifying nutrients, including total fat, saturated fat, cholesterol, and sodium," whose presence in a product triggers special restrictions on implied nutrient claims—but "[s]ugar is not one of them." ECF 88 at 19 (emphasis omitted); *see* 21 C.F.R. § 101.13(h).[26] The Court's previous order held that a few label statements identified in Post's brief were protected by federal law and noted that the same analysis "would apply to other statements" not identified in Post's brief. *Id.* at 20 n.19. As the Court ordered, the parties met and conferred on this issue, but the SAC continues to challenge many label statements that are protected by federal law.

Many of the challenged label statements are nutrient content claims because they (1) make "direct statement[s] about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories,'" 21 C.F.R. § 101.13(b)(1); (2) "[d]escribe[] the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')," *id.* § 101.13(b)(2)(i); or (3) "[s]uggest[] that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and [are] made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." *Id.* § 101.13(b)(2)(ii). Many of the labels state or "imply the product contains fiber and is healthier as a result." *Hadley II*, 2017 WL 3453391, at *17. Judge Koh dismissed claims against such statements in *Hadley. Id.* at *17-18. Judge Koh also correctly recognized that statements about whole grain and whole wheat indicate the presence of fiber, and so also are implied nutrient

---

[26] The Court stated that the FDA "prohibits even true implied nutrient content claims where the product contains another 'disqualifying' nutrient." ECF 88 at 19. Technically, a 'disqualifying' nutrient only "requires that a 'disclaimer' accompany the content claim, rather than prohibit[ing] the content claim entirely." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1122 n.7 (N.D. Cal. 2014); *see* 21 C.F.R. § 101.13(h). But for present purposes, the point is the same: the FDA restricts nutrient-content claims when a food contains certain other components, but added sugar is not one of those components.

content claims. *Id.*[27] Label statements need not "claim that Defendant's products are 'high' in fiber explicitly"; they are protected if "the context and other statements on the box imply" fiber content. *Id.* at *17.

That precludes many of Plaintiffs' claims here. As the federal nutrient-content regulations require, all of the label language in the following table states or suggests that a nutrient is present in a certain amount in the cereal, or states or implies that a cereal will help maintain a healthy diet and is associated with explicit and/or implicit claims about a nutrient (usually, but not always, fiber or whole grain). They are all nutrient content claims that receive federal protection:

### Protected Nutrient-Content Claims Challenged by Plaintiffs' SAC

| Cereal | Label Statements |
| --- | --- |
| GG Blueberry Morning, Cranberry Almond Crunch, Banana Nut Crunch, Protein Blends (Honey Oats Seeds, and Cinnamon Hazelnut) | Why less processed? Quite simply, because it's good for you! We gently crack the whole wheat berry and add a mix of grains to our flakes, while some of the competition add artificial sweeteners and flavors along with isolated fiber to their flakes. We then add in nutritious fruits and nuts and balance them with our grains for a great taste that's irresistible. <u>The result? A crispy, delicious, less processed whole grain cereal that's high in natural fiber.</u>[28, 29] SAC ¶¶ 126c-d, 130d-e, 134d-e, 148e-f, 152e-f; Ohrt Decl., Exs. 2-3, 7-8. |
| GG Raisins Dates & Pecans; GG Crunchy Pecans; GG Blueberry Pomegranate | Why less processed? Quite simply, because it's good for you! We gently steam, role and bake our whole grains to help maintain the full flavor and nutrition of our flakes, while some of the competition add artificial sweeteners and flavors along with isolated fiber to their flakes. We then add in nutritious fruits and nuts and balance them with our grains for a great taste that's irresistible. <u>The result? A crispy, delicious, less processed whole grain cereal</u> |

---

[27] *Accord* 21 C.F.R. § 101.13(b)(2) ("high in oat bran" is implied nutrient content claim); *Guidance for Industry and FDA Staff: Whole Grain Label Statements* at 7 (Feb. 2006), https://www.fda.gov/ohrms/dockets/98fr/06d-0066-gdl0001.pdf (Nelson Decl., Ex. 9) ("factual statements about whole grains on the label of the products" are nutrient content claims); *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definitions of Terms*, 58 Fed. Reg. 2302, 2371-72 (Jan. 6, 1993) ("contains whole wheat" implies that a food is "a good source of fiber").

[28] The SAC omits many of the statements about nutrient content, even though they are inseparable parts of the challenged label statements. The chart's <u>underlining</u> shows what the SAC omitted. *See* Ohrt Decl., Exs. 1-8, 20-21, 27-30.

[29] The Blueberry Morning label states "a good source of fiber" instead of "high in natural fiber." Ohrt Decl., Ex. 1.

MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:16-cv-04958-WHO

| | | |
|---|---|---|
| | | that's high in natural fiber. SAC ¶¶ 137d-e, 141d-e, 144c-d; Ohrt Decl., Exs. 4-6. |
| | GG Protein Blends (Honey Oats & Seeds, and Cinnamon Hazelnut) | • Fiber: Consume fiber. Diets rich in fiber help keep you fuller longer which is important for weight management. Great Grains Protein Blend can help keep you satisfied with the staying power of <u>an excellent source of</u> fiber. SAC ¶¶ 148i, 152j; Ohrt Decl., Exs. 7-8.<br><br>• Start your day with the less processed whole grain nutrition of Great Grains Protein Blend to help jumpstart your metabolism. SAC ¶¶ 148i, 152j; Ohrt Decl., Exs. 7-8.<br><br>• <u>As a good source of protein</u>, Great Grains Blend can actually help enhance your metabolism! SAC ¶¶ 148i, 152j; Ohrt Decl., Exs. 7-8. |
| | HBO Whole Grain Honey Crunch; HBO Whole Grain Vanilla Bunches | • <u>4 grams of fiber:</u> Fiber fills you up, helps keep you satisfied, and is important to help maintain digestive health. SAC ¶¶ 199d, 201d; Ohrt Decl., Exs. 20-21.<br><br>• Whole Grains—good for your family, good for your health, good for you. SAC ¶¶ 199c, 201c; Ohrt Decl., Exs. 20-21.<br><br>• <u>Over 2/3 of your day's whole grain:</u> Whole grains are an important part of a balanced diet, but on average, Americans eat less than 1 serving of whole grains per day." SAC ¶¶ 199d, 201d; Ohrt Decl., Exs. 20-21.<br><br>• Rich in nutrients: Honey Bunches of Oats Whole Grain Cereal is rich in nutrients <u>such as iron and folic acid</u>—important for moms-to-be and growing children." SAC ¶¶ 199d, 201d; Ohrt Decl., Exs. 20-21. |
| | Shredded Wheat Honey Nut | • Natural source of fiber: <u>Every bowl contains 6 grams of natural fiber from whole grain wheat. Never artificial fiber.</u> SAC ¶ 215h; Ohrt Decl., Ex. 27.<br><br>• THE BISCUIT OF BENEFITS / Post Shredded Wheat Honey Nut is made with 100% whole grain wheat, for a natural source of fiber. <u>It is also low in fat and sodium and cholesterol free.</u> So what does this mean in terms of health benefits for you? They are so plentiful, the cereal could be renamed Biscuit of Benefits! SAC ¶ 215k; Ohrt Decl., Ex. 27.<br><br>• Digestive Health: Diets rich in fiber have many benefits and are important for maintaining digestive health. SAC ¶ 215m; Ohrt Decl., Ex. 27.<br><br>• We make it easy to understand what is in your food—it's just the (or, "we start with the") wholesome goodness of whole grain wheat. SAC ¶ 215d-e; Ohrt Decl., Ex. 27. |
| | Shredded Wheat Crunch! | Post Shredded Wheat CRUNCH combines bite sized 100% natural whole grain wheat with granola cluster crunch for delicious heart healthy |

MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:16-cv-04958-WHO

| | | |
|---|---|---|
| | | satisfaction. Goodness you can taste! SAC ¶ 217b; Ohrt Decl., Ex. 28. |
| | Raisin Bran | Fiber is good for digestive health. SAC ¶ 222g; Ohrt Decl., Ex. 29. |
| | Bran Flakes | • Dietary Fiber to Help Maintain Digestive Health. SAC ¶ 224a; Ohrt Decl., Ex. 30.<br><br>• The Importance of Whole Grain and Fiber. Whole Grains for Your Healthy Lifestyle. Whole grains provide fiber and other important nutrients to keep you healthy. SAC ¶ 224c-e; Ohrt Decl., Ex. 30.<br><br>• Getting enough fiber in your diet helps naturally regulate your digestive system. Choose a diet rich in a variety of fiber containing foods such as whole grain cereals, breads, and pastas and fruits and vegetables. SAC ¶ 224f; Ohrt Decl., Ex. 30.<br><br>• Fiber to Help with Weight Management. Experts recommend diets rich in fiber to help keep you satisfied while you exercise and cut calories to lose weight. Diets rich in fiber are usually lower in calories and larger in volume than low fiber diets, and require more chewing which helps promote a feeling of fullness and satisfaction after eating.[30] SAC ¶ 224g-h; Ohrt Decl., Ex. 30. |

### 2.   "Reduced Cancer Risk" is a federally protected health claim.

Plaintiffs still challenge at least one statement that is an authorized health claim under federal law. That challenge is preempted. When the FDA publishes regulatory findings "characteriz[ing] the relationship of any nutrient ... to a disease or a health-related condition," 21 U.S.C. § 343(r)(1)(B), that authorizes food manufacturers to make "labeling statements ... based on, and consistent with, the conclusions set forth in the regulations," so long as "[t]he claim is complete, truthful, and not misleading." 21 C.F.R. § 101.14(d)(2)(i), (iii). As long as labels meet that standard, they need not exactly reproduce FDA-approved language. *See Young v. Johnson & Johnson*, 2012 WL 1372286, at *5 (D.N.J. Apr. 19, 2012); *In re Quaker Oats Labeling Litig.*, 2012 WL 1034532, at *3 (N.D. Cal. Mar. 28, 2012); *Hadley II*, 2017 WL 3453391, at *16.

That bars Plaintiffs' challenge to the label on Shredded Wheat Honey Nut, which states "Reduced Cancer Risk: <u>Low fat diets rich in fiber-containing grain products, fruits, and vegetables</u>

---

[30] The Court previously noted that claims related to metabolism and weight management "possibly are implied nutrient claims." ECF 88 at 24-25. Judge Koh reached the same conclusion. *Hadley II*, 2017 WL 3453391, at *17-18 ("Fiber … plays an important part in your digestive health" was a protected nutrient content claim).

<u>may reduce the risk of some types of cancer, a disease associated with many factors.</u>" SAC ¶¶ 214, 215n; Ohrt Decl., Ex. 27. Plaintiffs omit the <u>underlined</u> language from their SAC—but the FDA has approved those exact words. 21 C.F.R. § 101.76(e)(1). The label's accompanying "Reduced Cancer Risk" language is "based on, and consistent with" that conclusion, as authorized by § 101.14(d)(2)(i), and therefore is "not misleading," as required by § 101.14(d)(2)(iii). Plaintiffs' challenge to this statement is preempted.

### C.  To the extent the statements are not protected on the grounds described above, they are puffery on which no claim can be based.

If Post's challenged claims say anything meaningful, they are protected for the reasons given above. If they do not, they are non-actionable puffery. "[C]laims which are either vague or highly subjective" are puffery. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990); *see Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("a general subjective claim" is puffery while a "quantifiable" claim is not). Puffery is not actionable under California's consumer-fraud or warranty statutes. *See In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012). Many of Plaintiffs' claims involve statements about "nutrition," which courts frequently hold are puffery.[31] Similar words like "balanced," "goodness," "wholesome," and "smart" are also puffery.[32] Under this analysis, the following labels are non-actionable puffery:

---

[31] *Gerber Prods.*, 552 F.3d at 939 n.3 ("[N]utritiousness can be difficult to measure concretely"); *Brown v. Abbott Labs.*, 2011 WL 4496154, at *4 (N.D. Ill. Sept. 27, 2011) ("count on Similac for nutrition you can trust" was puffery); *Tylka v. Gerber Prods.*, 1999 WL 495126, at *8-9 (N.D. Ill. June 29, 1999) ("optimum nutrition" was puffery because "nutrition is a nebulous concept").

[32] *Hadley II*, 2017 WL 3453391, at *26 ("one good decision leads to another" on cereal package was puffery); *Blue Buffalo Co. v. Nestle Purina Petcare Co.*, 2015 WL 3645262, at *10 (E.D. Mo. June 10, 2015) ("100% Complete and Balanced Nutrition" was puffery); *Bland v. Abbott Labs.*, 2012 WL 32577, at *2-3 (W.D. Ky. Jan. 6, 2012) ( "the balance of protein, minerals, and other nutrients that helps give babies a strong start in life" was puffery); *Fraker v. KFC Corp.*, 2006 U.S. Dist. LEXIS 79049, at *7-10 (S.D. Cal. Oct. 19, 2006) ("You can enjoy fast food as part of a sensible balanced diet" was puffery); *Tylka*, 1999 WL 495126, at *8-9 ("most wholesome nutritious safe foods" and "learning to eat smart from the start" were puffery); *Weiss v. Kroger Co.*, 2014 WL 5114608, at *3 (C.D. Cal. Aug. 8, 2014) ("a whole lot of goodness contained in each and every tiny sunflower seed" was puffery).

1  **Great Grains products:** The Great Grains tagline is "Less processed nutrition you can

2  see," SAC ¶¶ 126a, 130a, 134a, 137a, 141a, 144a; Ohrt Decl., Exs. 1-8, and the context of the

3  cereal boxes is consistent with that. Each package contains images of the cereal's primary

4  ingredients on the front panel (e.g., for Cranberry Almond Crunch: almonds, cranberries, flakes,

5  and clusters), under the phrase "Less processed nutrition you can see" and the flavor name. The

6  packages identify certain ingredients, such as cranberries, almonds, pecans, or grains, and describe

7  them as "wholesome" or "nutritious." *See supra* at 18-19; SAC ¶¶ 125-153; Ohrt Decl., Exs. 1-8.[33]

8  This context adds no specifics beyond the (true) fact that these ingredients are in the product. The

9  other statements on the package indicate, both individually and collectively in context, that Post

10 uses "gentl[e]" cooking methods and "nutritious" ingredients that result in "less processed" food

11 with "a great taste that's irresistible." SAC ¶¶ 126c-d, 130d-f, 134d-g, 137d-f, 141c-e, 144c-e,

12 148e-g, 152e-h; Ohrt Decl., Exs. 1-8. None suggests how one could objectively measure

13 gentleness, "nutritiousness," or the greatness or irresistibility of a product's taste.[34] More

14 fundamentally, to the extent the overall context reinforces the message of "less processed

15 nutrition," there is no objective way to answer the questions, "*how much* less processed *than*

16 *what*?" *Cf. Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) ("Less is

17 More" was puffery).

18     **Honey Bunches of Oats products** used two primary label layouts. SAC ¶¶ 154-58, 160-

19 67; Ohrt Decl., Exs. 9-19. Both included a large central image of a honey dipper surrounded by the

20 title "Honey Bunches of Oats." The first layout also included the encircling words "Crispy Flakes,

21 Crunchy Oat Clusters & a Touch of Honey!," and on the side of the box, "A delicious, wholesome

22 start to your day!," as well as a "heart healthy" statement and a Whole Grains Council Stamp.

23

---

24 [33] One cereal, Great Grains Honey, Oats, and Seeds, also states that it is "[s]weetened with a kiss

25 of honey." SAC ¶ 148d. That statement remains puffery in this context for the same reasons it is
   puffery on Honey Bunches of Oats labels. *See infra* at 26.

26 [34] *See PETA v. Whole Foods*, 2016 WL 1642577, at *3-4 (N.D. Cal. Apr. 26, 2016) ("Great-

27 Tasting Meat From Healthy Animals" was puffery); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp.
   2d 877, 894 (C.D. Cal. 2013) ("premium" was puffery); *In re Yahoo! Inc. Sec. Litig.*, 2012 WL

28 3282819, at *18 (N.D. Cal. Aug. 10, 2012) ("great investment" was puffery).

MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 3:16-cv-04958-WHO

1   SAC ¶ 154; Ohrt Decl., Ex. 9. Multiple courts have held that "touch of honey" and similar phrases

2   are puffery because "a reasonable consumer would not be able to determine what is meant by a

3   'touch.'" *Hadley II*, 2017 WL 3453391, at \*25-26; *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d

4   1304, 1317 (E.D. Cal. 2014). In this context, the statements on the side of the box do not suggest

5   that a "touch" is any ascertainable amount. Even if these difficult-to-spot statements could hint at a

6   smaller amount of sweetener, their impact is swamped by the large depiction of a honey dipper

7   centered on the front of the box—as well as by the product's name. The unmistakable message, to

8   the extent there is one, is that honey is present in some unspecified amount. That is puffery.

9        The second general box layout states "4 Wholesome ☺ Grains and 9 essential vitamins and

10   minerals" in the upper right-hand corner. *See, e.g.*, SAC ¶ 155; Ohrt Decl., Ex. 9. Whether a grain

11   is "Wholesome ☺" cannot be determined by any objective assessment in the abstract, and the

12   surrounding label does nothing to suggest any standard of measurement.

13        The sides of **Raisin Bran** packages included the phrases "where nutritious and delicious

14   live in harmony" and "natural advantage" at the same times that the Whole Grains Council Stamp

15   appeared, all on the side of the box, and "No High Fructose Corn Syrup" appeared on the front of

16   the box. SAC ¶ 218; Ohrt Decl., Ex. 29. Other than truthfully suggesting that Raisin Bran contains

17   whole grains but not high-fructose corn syrup, this context does not generate any objective

18   criterion for assessing whether the cereal was "nutritious" or "delicious," let alone whether the two

19   were "in harmony" or created a "natural advantage." Many courts have held similar phrases to be

20   puffery.[35] Also, for a portion of the proposed class period, the back of the Raisin Bran box

21   included a word search game, where two of the words to be found were "healthy" and "nutritious."

22   (SAC ¶¶ 219-20; Ohrt Decl., Ex. 29). No reasonable consumer would expect verifiable

23   information from that context.

24        **Honeycomb** boxes, for part of the class period, included the phrase "Nutritious Sweetened

25   Corn Oat Cereal" in small type below the cereal name, which was printed in very large blue letters

26   on the front of a bright yellow box. SAC ¶¶ 229-30; Ohrt Decl., Ex. 32. The only other challenged

27   _____
[35] *In re Intrexon Corp. Sec. Litig.*, 2017 WL 732952, at \*3 (N.D. Cal. Feb. 24, 2017); *Rasmussen*

28   *v. Apple Inc.*, 27 F. Supp. 3d 1027, 1031, 1042-43 (N.D. Cal. 2014).

statements on the Honeycomb package are "Why Vitamin D" on the side of the box, and the Whole Grains Council Stamp on the top flap. SAC ¶ 229; Ohrt Decl., Ex. 32. Again, other than correctly suggesting that the cereal contains Vitamin D and whole grains, these statements do not suggest any objective way to assess how "nutritious" the product was.

The other challenged products also included puffery statements, as follows:

**HBO Whole Grain products**: "Whole Grains—good for your family, good for your health, good for you;" "Rich in nutrients…important for moms-to-be and growing children;" and "Starting your day with a bowl of HBO Whole Grain Cereal is a smart step toward eating a balanced diet." SAC ¶¶ 199, 201. These statements appear on the back of the box, surrounded by images of flowers. *Id.* ¶¶ 198, 200; Ohrt Decl., Exs. 20-21. That context does not provide any criterion for quantifying these statements.

**HBO Greek products**: "A touch of wildflower honey;" "Wholesome nutrition;" and "Goodness and taste in every bowl." SAC ¶¶ 203, 205. Other than the Whole Grains Council Stamp and "No High Fructose Corn Syrup" statement, these are the only challenged statements on the packaging. *Id.*; Ohrt Decl., Ex. 22-23. Neither those true statements nor anything else in the context provides any criterion for measuring how much is a "touch," or for quantifying "wholesomeness," "nutrition," or "goodness."

**HBO Granolas (except dark chocolate)**: "It's the perfect combination of wholesome goodness and honey-sweet crunch that everyone in the entire family will love." SAC ¶¶ 207, 209. The only other claim challenged claim is the Whole Grains Council Stamp. *Id.* Nothing in the context provides any criterion for measuring "goodness" or whether people "will love" the product.

**HBO Protein Granola with Dark Chocolate**: "Helps Fuel Your Body with Sustained Energy;" and "just a touch of wildflower honey." SAC ¶ 211. The only other challenged statement is the Whole Grains Council Stamp. *Id.*; Ohrt Decl., Exs. 24-25. As explained above, multiple courts have determined that "touch of honey" is unmeasurable puffery. *See supra* at 26. Multiple courts have also held that phrases similar to "Helps Fuel Your Body with Sustained Energy" are puffery. *Coe v. General Mills, Inc.*, 2016 WL 4208287, at *5-6 (N.D. Cal. Aug. 10, 2016); *Delacruz*, 2012

WL 1215243, at *6. Again, nothing in the context lends meaning to these essentially puffing statements.

***Shredded Wheat Honey Nut***: "Post Shredded Wheat is one of the simple things you can do to feel good each day," SAC ¶ 215(j), and the following longer statement:

> An ingredient list that is so good, we have nothing to hide. Wouldn't it be great if it were easy to understand what is in your food? With Post Shredded Wheat, it's easy to be confident about your breakfast choice.

*Id.* ¶ 215b-c. There is no objective way to assess whether a person "feel[s] good" or what "simple things" can be done to induce that feeling. That could reasonably describe either eating low-sugar foods or indulging in high-sugar ones. The rest of the box only confirms that "feel good" is not quantifiable: it suggests "acts of goodness" like serving "your spouse ... a surprise breakfast in bed" and "picking up one piece of trash every day." *Id.* ¶¶ 212-14; Ohrt Decl., Ex. 27. The statement about being "confident about your breakfast choice" is similar to "one good decision leads to another," which Judge Koh held is puffery. *Hadley II*, 2017 WL 3453391, at *26. The context confirms the intuitive point that "confidence" is not quantifiable: by suggesting that Shredded Wheat eaters can easily read and confidently understand the ingredient list, the statement does not say anything about the contents of the food but simply points consumers to that list for further inquiry.

For all these reasons, if the Court does not find that the above-listed statements are protected from attack on the other grounds described in this brief, it should hold that they are meaningless puffery that cannot support Plaintiffs' claims.

> **D.  Plaintiffs plead that they never purchased a box of Shredded Wheat Honey Nut cereal with the packaging error they allege.**

There is one challenged label statement to which the above grounds for dismissal do not apply—but Plaintiffs admit that they never purchased cereal whose package contained that statement. Starting in March 2017, the back of the Honey Nut Shredded Wheat box stated, in small print, that the cereal contained "No Sugar" and "0g of sugars per serving." SAC ¶¶ 214, 215g; Ohrt Decl., Ex. 27. As the cereal's name indicated, it did contain added sugars, and the front of the box and the Nutrition Facts Panel accurately disclosed the amount of sugar. SAC ¶ 214;

Ohrt Decl., Ex. 27. The error arose during printing, when the back label panel for regular Shredded Wheat was inadvertently used. No previous boxes of Shredded Wheat Honey Nut contained this error. *See* SAC ¶¶ 212, 213; Ohrt Decl., Ex. 27.

Neither Plaintiff bought a box of Shredded Wheat Honey Nut with this error. Krommenhock's last purchase of this cereal came around "June 2016," while Hadley's was in "summer 2015," SAC ¶¶ 328, 355. Plaintiffs allege that "Post introduced the packaging" with the label error much later, around March 2017. *Id.* ¶ 214.

Nor do Plaintiffs' purchases of other cereals allow them to sue over this one. As the Court previously stated, Plaintiffs do not "have standing to sue over 'unpurchased products'" unless "the label statements challenged are very similar to the statements on the labels of the unpurchased products." ECF 88 at 38. Here, the "Zero Sugar" statement presents a very different reasonable-consumer analysis than the other challenged statements because it is a simple case of inaccuracy. Most of Plaintiffs' claims require analyzing what if any health benefits or attributes a reasonable consumer would interpret the label statements as implying, and whether the cereal had those attributes. In contrast, the only question about the "Zero Sugar" statement is whether a reasonable consumer would have given credence to it at all, given the product's name, the other accurate statements on the box about sugar, and its location on the back panel. The difference is material and precludes Plaintiffs from challenging the "Zero Sugar" statement on cereal boxes they did not purchase.

## IV.    Plaintiffs Did Not Remedy The Reasons The Court Previously Dismissed The Warranty Claims So They Should Be Dismissed Again, This Time With Prejudice.

The Court previously dismissed Plaintiffs' warranty claims[36] for two reasons. First, the First Amended Complaint simply listed all the label statements and "fail[ed] to identify which products contain what warranties." ECF 88 at 35. Second, "plaintiffs cite[d] no apposite cases supporting their attempt to stitch together multiple different representations on a package to form a basis for a breach of warranty claim" and did not "specifically identify statements whose

---

[36] The Court held that Plaintiffs' implied-warranty claims stand or fall with their express-warranty claims. ECF 88 at 35.

appearance on the same label (*e.g.,* their proximate location on the label, the same font is used) suffice when read together to create a warranty that a product is healthy or wholesome." *Id.* at 34-35. The SAC does not remedy these defects, and Plaintiffs' warranty claims should therefore be dismissed again, now with prejudice.

The SAC now groups the challenged statements together by *product*, but it still fails to identify which statements appeared on the *same label* for a product— and since the labels varied over time, Plaintiffs end up mixing and matching statements that never appeared together. Consider, for example, Plaintiffs' allegations about Honey Bunches of Oats. SAC ¶ 399i. Of the three snippets of language that Plaintiffs claim together formed a warranty, two—"Heart Healthy" and "heart depictions"—allegedly appeared on boxes of Honey Bunches of Oats Honey Roasted and Honey Bunches of Oats with Almonds for only three months of the five-plus-year class period. *Id.* ¶¶ 154-164. The other statement is the single word "wholesome," which was part of the longer phrase "4 Wholesome ☺ Grains and 9 essential vitamins and minerals." *Id.* ¶¶ 154-64, 399i; Ohrt. Decl., Exs. 9-10. That phrase appeared on boxes only *after* the heart-related images were removed. SAC ¶¶ 154-164; Ohrt Decl., Exs. 9-10; *see also* SAC ¶¶ 166-194; Ohrt Decl., Exs. 11-18.

The SAC makes a similar error regarding Raisin Bran. Of the four statements that Plaintiffs allege composed a warranty, one—"where delicious and nutritious live in harmony"— allegedly appeared on the side of the box for the first five months of the proposed class period, without any of the other statements. *Compare* SAC ¶ 399q *with id.* ¶ 218. At that point the box was redesigned, this statement was removed, and Post added a word search game on the back of the box that included the stand-alone words "healthy" and "nutritious." Plaintiffs now claim that this word search was an express warranty. *Id.* ¶¶ 219-220. A separate section on the back of the redesigned box included bullet points with small type, one of which stated that Raisin Bran "has 8g of natural fiber, making it an Excellent Source. Fiber is good for digestive health." *Id.*; Ohrt Decl., Ex. 29.

Similar disparities exist with many of the other challenged cereals, but it is not the Court's (or Post's) job to review the images in the SAC to examine how they are *not* alike. As the Court

previously stated, it was Plaintiffs' job to explain how these statements *could* be combined to form warranties. As this Court previously recognized, a warranty claim may not be based on "disparate statements" unless the claimant explains how they combine to "include all the 'exact terms' that would create an express warranty" of the kind alleged. *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 919 (9th Cir. 2014); *see* ECF 88 at 34-35. Plaintiffs have failed to do that. They offer no explanation at all, let alone a plausible one, of how Post's label statements combine to suggest *any* terms, let alone "exact" ones. The challenged label statements appeared at different times, all over the boxes, in many different type sizes and styles, and most of them are just snippets of much longer (and even more disparate) statements. The warranty claims must be dismissed.

Plaintiffs' implied-warranty claim should be dismissed for the additional reasons that Plaintiffs had ample opportunity to examine the cereal packages and learn the sugar content for themselves. *See* Cal. Comm. Code § 2316(3)(b) ("When the buyer before entering into the contract has examined the goods .... as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him."). Under California law, a food label that "discloses the presence of an [allegedly] unhealthy ingredient precludes liability under the implied warranty of merchantability." *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 931 (N.D. Cal. 2015); *see Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1026-27 (S.D. Cal. 2013) (dismissing implied-warranty claim where products were "clearly labeled as including [the allegedly harmful ingredients ... [and t]herefore Plaintiff had a sufficient opportunity to examine [them] prior to purchase").

In addition, most of Plaintiffs' warranty claims must be dismissed for the reasons developed above. First, many of Post's label statements were strictly true—so even if those statements were warranties, they were not breached. Post provided a list of those statements above. *See supra* at 18-20. Second, many of the label statements were nutrient-content claims or health claims—indeed, on Plaintiffs' theory *all* the label statements were "healthy" claims. The FDA regulates what these claims signify about a product's contents, and Post's cereals comply with those regulations. To the extent Plaintiffs contend that California warranty law requires a

1  *different* set of product contents based on the same regulated label statements, their warranty

2  claims are preempted. Post listed above the statements that are covered by preemption. *See supra*

3  at 16-17, 20-24. Finally, to the extent the statements have so little content that they are puffery,

4  they are likewise incapable of creating a warranty. *See In re Clorox Consumer Litig.*, 894 F. Supp.

5  2d 1224, 1235 (N.D. Cal. 2012). Post listed the statements falling within this category as well. *See*

6  *supra* at 24-29.

7  **CONCLUSION**

8       Plaintiffs' SAC should be dismissed in its entirety with prejudice.

9  DATED: November 3, 2017                    **FAEGRE BAKER DANIELS LLP**

10

11                                    By:  */s/ Tarifa B. Laddon*

11                                            Tarifa B. Laddon

12                                            Howard D. Ruddell
    Sarah L. Brew

13      Aaron D. Van Oort
    Courtney A. Lawrence

14      Nicholas J. Nelson

15      Attorneys for Defendant POST FOODS, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28