1

**THE LAW OFFICE OF JACK FITZGERALD, PC**

2
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*

3
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*

4
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*

5
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202

6
San Diego, California 92103
Phone: (619) 692-3840

7
Fax: (619) 362-9555

8
*Counsel for Plaintiffs and the Putative Class*

9

10

11
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

12

13
DEBBIE KROMMENHOCK and STEPHEN
HADLEY, on behalf of themselves, all others

14
similarly situated, and the general public,

15
          Plaintiffs,

16
                    v.

17
POST FOODS LLC,

18
          Defendant.

19

Case No. 3:16-cv-04958-WHO (JSC)

**PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**REDACTED FOR PUBLIC FILING**

Judge:      Hon. William H. Orrick
Date:       January 10, 2018
Time:       2:00 p.m.
Dept:       4

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................ii

INTRODUCTION ............................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

FACTS ............................................................................................................................. 2

ARGUMENT .................................................................................................................... 3

    I.      THE FIRST AMENDMENT DOES NOT PROTECT POST'S MISLEADING
           SPEECH ............................................................................................................... 3

    II.     PLAINTIFFS' CLAIMS ARE NOT EXPRESSLY PREEMPTED ..................................... 13

           A.     Plaintiffs' Challenges to Post's Use of "Healthy" are Not Preempted ..................... 13

           B.     As Post's Brief Demonstrates, Plaintiffs do not Challenge Nutrient
                Content Claims .............................................................................................. 16

    III.    PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED AS CHALLENGING
           "TRUTHFUL" STATEMENTS ...................................................................... 20

           A.     Post's Use of "No High Fructose Corn Syrup" is Plausibly Misleading ................... 20

           B.     "Wholesome" and "Nutritious" Ingredient Statements are Plausibly
                Misleading .................................................................................................. 22

    IV.    PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED AS CHALLENGING
           PUFFERY ....................................................................................................... 24

    V.     PLAINTIFFS MAY ASSERT A CLAIM UNDER THE UCL'S "UNLAWFUL"
           PRONG BASED ON POST'S FALSE STATEMENT THAT *SHREDDED
           WHEAT HONEY NUT* CONTAINED "NO ADDED SUGAR" ............................ 27

    VI.    PLAINTIFFS' WARRANTY CLAIMS ARE PROPERLY PLED ................................. 28

CONCLUSION ............................................................................................................... 30

i

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Allen v. ConAgra Foods, Inc.*,
   2013 WL 4737421 (N.D. Cal. Sept. 3, 2013) .......................................................................... 28

4

5

*Alliance for Natural Health v. Sebelius*,
   786 F. Supp. 2d 1 (D.D.C. 2011) ............................................................................................ 8, 9

6

7

*Am. Beverage Ass'n v. City & County of San Francisco*,
   871 F.3d 884 (9th Cir. 2017) ............................................................................................. passim

8

9

*Backus v. Gen. Mills, Inc.*,
   122 F. Supp. 3d 909 (2015) ...................................................................................................... 30

10

11

*Bates v. Dow Agrosciences, LLC*,
   544 U.S. 431 (2005) .................................................................................................................. 20

12

13

*Benson v. Kwikset Corp.*,
   152 Cal. App. 4th 1254 (2007) ................................................................................................... 3

14

*Bietsch v. Sergeant's Pet Care Prods., Inc.*,
   2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) .......................................................................... 25

15

16

*Bioganic Safety Brands, Inc. v. Ament*,
   174 F. Supp. 2d 1168 (D. Colo. 2001) ...................................................................................... 5

17

18

*Bruton v. Gerber Prods. Co.*,
   2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ........................................................................... 25

19

*Bruton v. Gerber Prods. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013) ..................................................................................... 4

20

21

*Cent. Hudson Gas & Elec. v. Public Serv. Comm'n*,
   447 U.S. 557 (1980) .................................................................................................................... 3

22

23

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. Oct. 14, 2010) .................................................................... 25

24

25

*Chae v. SLM Corp.*,
   593 F.3d 936 (9th Cir. 2010) .................................................................................................... 19

26

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992) .................................................................................................................. 20

27

28

*Coe v. General Mills, Inc.,*
    2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ................................................................ 24

*Davis v. HSBC Bank Nev., N.A.,*
    691 F.3d 1152 (9th Cir. 2012) ............................................................................ 22, 23

*Day v. AT & T Corp.,*
    63 Cal. App. 4th 325 (1998) .......................................................................................... 20

*Fla. Bar v. Went For It, Inc.,*
    515 U.S. 618 (1995) .......................................................................................................... 3

*Fleminger, Inc. v. U.S. Dep't of Health & Human Servs.,*
    854 F. Supp. 2d 192 (D. Conn. 2012) ...................................................................... 3, 10

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.,*
    2009 WL 2462505 (E.D. Cal. 2009) .............................................................................. 24

*Hadley v. Kellogg Sales Co.,*
    --- F. Supp. 3d ----, 2017 WL 3453391 (N.D. Cal. Aug. 10, 2017) ....................... passim

*Henderson v. J.M. Smucker Co.,*
    2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) .............................................................. 24

*Hoffman v. Capital Cities/ABC, Inc.,*
    255 F.3d 1180 (9th Cir. 2011) ......................................................................................... 3

*Hunter v. Nature's Way Prods., LLC,*
    2016 WL 4262188 (S.D. Cal. Aug. 12, 2016) .............................................................. 28

*In re Ferrero Litig.,*
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ................................................................... 11, 28

*In re GNC Corp.,*
    789 F.3d 505 (4th Cir. 2015) .................................................................................. 5, 6, 7

*In re Milo's Dog Treats Consol. Cases,*
    9 F. Supp. 3d 523 (W.D. Pa. 2014) ............................................................................... 24

*In re NJOY, Inc. Consumer Class Action Litig.,*
    2015 WL 12732461 (C.D. Cal. May 27, 2015) ............................................................ 27

*In re Quaker Oats Labeling Litig.,*
    2012 WL 1034532 (N.D. Cal. Mar. 28, 2012) ......................................................... 7, 18

*Int'l Dairy Foods Ass'n v. Boggs,*
    622 F.3d 628 (6th Cir. 2010) ......................................................................................... 10

iii

*Jones v. Nutiva, Inc.*,
  2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) ............................................... 28, 30

*Jones v. Nutiva, Inc.*,
  2017 WL 3617104 (N.D. Cal. Aug. 23, 2017) .................................................... 24

*Jordan v. Jewel Food Stores, Inc.*,
  743 F.3d 509 (7th Cir. 2014) ..................................................................... 4, 13

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ......................................................................... 3, 6, 13, 20

*Korolshteyn v. Costco Wholesale Corp.*,
  2017 WL 3622226 (S.D. Cal. Aug. 23, 2017) ........................................................ 6

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) ..................................................... passim

*Matal v. Tam*,
  137 S. Ct. 1744 (2017) ............................................................................. 4

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ............................................................................... 19

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
  559 U.S. 229 (2010) ............................................................................... 4

*Mullins v. Premier Nutrition Corp.*,
  178 F. Supp. 3d 867 (N.D. Cal. Apr. 15, 2016) ........................................... 6, 7, 10

*Native Am. Arts, Inc. v. Village Originals, Inc.*,
  25 F. Supp. 2d 876 (N.D. Ill. 1998) ............................................................ 13

*Pearson v. Shalala*,
  130 F. Supp. 105 (D.D.C. 2001) ................................................................. 9

*Pearson v. Shalala*,
  164 F.3d 650 (D.C. Cir. 1999) .................................................................... 9

*Red v. Kraft Foods, Inc.*,
  2011 WL 938297 (C.D. Cal. Jan. 13, 2011) ...................................................... 20

*Salazar v. Honest Tea, Inc.*,
  2015 WL 75223 (E.D. Cal. Jan. 6, 2015) .......................................................... 4

*Simpson v. Cal. Pizza Kitchen, Inc.*,
  989 F. Supp. 2d 1015 (S.D. Cal. 2013)........................................................... 30

iv

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*Stutzman v. Armstrong*,
   2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) ................................................................. 3

*Thompson v. W. States Med. Ctr.*,
   535 U.S. 357 (2002) .......................................................................................................... 4

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) .......................................................................................................... 5

*Vaccarino v. Midland Nat. Life Ins. Co.*,
   2014 WL 572365 (C.D. Cal. Feb. 3, 2014) ..................................................................... 30

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................................................ 24

*Whitaker v. Thompson*,
   248 F. Supp. 2d 1 (D.D.C. 2002) .................................................................................. 8, 9

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .................................................................................... 5, 6, 24

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ........................................................................................................ 19

*Zakaria v. Gerber Prods. Co.*,
   2015 WL 4379743 (C.D. Cal. July 14, 2015) ................................................................ 5, 6

*Zauderer v. Office of Disciplinary Counsel of Supreme Ct. of Ohio*,
   471 U.S. 626 (1985) ........................................................................................................ 13


**Statutes**

21 U.S.C. § 343-1 note (1) ................................................................................................... 20

Cal. Comm. Code § 2316(3)(b) ........................................................................................... 30


**Rules**

Fed. R. Civ. P. 15(a)(2) ........................................................................................................ 30


**Regulations**

21 C.F.R. § 1.21 .................................................................................................................... 23

21 C.F.R. § 101.13 .......................................................................................................... 17, 28

v

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

21 C.F.R. § 101.13(b) ..................................................................................... 17

21 C.F.R. § 101.14(c) ..................................................................................... 9

21 C.F.R. § 101.54(b) ..................................................................................... 16, 18

21 C.F.R. § 101.54(d) ..................................................................................... 16

21 C.F.R. § 101.65(d) ..................................................................................... passim

21 C.F.R. § 101.65(d)(1)(ii) ........................................................................... 2, 14

21 C.F.R. § 101.65(d)(2) ................................................................................ 13, 14

**Other Authorities**

59 Fed. Reg. 24,232 (May 10, 1994) ............................................................. 14

81 Fed. Reg. 33,742 (May 27, 2016) ............................................................. 11

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

1

## INTRODUCTION

Post did not previously seek dismissal on First Amendment grounds, but does now, ostensibly based on the Ninth Circuit's recent decision in *Am. Beverage Ass'n v. City & County of San Francisco*, 871 F.3d 884 (9th Cir. 2017) ["*American Beverage*"]. But that decision merely applies settled First Amendment jurisprudence to facts that, while perhaps tangentially relevant because they involve sugar to some extent, have no real bearing on the issues in this case. Post ignores that misleading advertising, including that which is literally true but may nevertheless deceive, enjoys no First Amendment protection. Because plaintiffs plausibly allege Post's advertising is misleading, there is no constitutional basis for dismissal.

Nor are plaintiffs' claims preempted by 21 C.F.R. § 101.65(d), which only regulates "healthy" terms when used in connection with a claim about a nutrient, unlike the statements plaintiffs challenge. And as Post's motion actually demonstrates, plaintiffs have avoided challenging permitted nutrient content claims. Post's preemption argument is that by using a non-challenged nutrient content claim in a greater context, such as in the middle of a sentence, or in a sentence that is part of a larger paragraph, that transforms all surrounding material into preempted nutrient content claims, as well. That argument is contrary to the strong presumption against preemption and the NLEA's savings clause.

Nor should plaintiffs' claims regarding statements like "no high fructose corn syrup" and "wholesome almonds" be dismissed as challenging "truthful" representations. Even if literally true, plaintiffs plausibly allege these statements are deceptively couched, so they are actionable. And none of plaintiffs' claims should be dismissed as challenging mere puffery, since the challenged statements convey a concrete impression that the products are healthy, which plaintiff alleges is demonstrably false and misleading.

Finally, plaintiffs' warranty claims are adequately pled. Post's criticism elevates form over function in demanding that the allegations not only identify the warranty statements for each product, but also each different label version. This is unnecessary where every label is pictured, already providing that information.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Is the reasonable consumer standard governing claims under California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA) unconstitutional because it does not require a defrauded consumer to plead that a statement has been "proven false by settled science"?

1

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

2.      Where federal regulations permit a manufacturer to use the term "healthy" as an implied nutrient content claim only where the claim is "made in connection with an explicit or implicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams of fat')," 21 C.F.R. § 101.65(d)(1)(ii), are plaintiffs' challenges to Post's use of term "healthy" *not* in connection with a claim or statement about a nutrient, expressly preempted by § 101.65(d)?

3.      Should plaintiffs' claims concerning labeling statements like "no high fructose corn syrup" and "wholesome almonds" be dismissed as challenging "truthful" statements despite plaintiffs' plausible allegations that the statements are couched in a manner that misleadingly suggests the cereals are healthy?

4.      Where a labeling statement plaintiffs challenge is not a nutrient content claim, can Post convert the statement into a preempted nutrient content claim by asserting that the statement is "inseparable from" an actual nutrient content claim that plaintiffs do not challenge?

5.      Where plaintiffs allege Post uses phrases that include terms like "wholesome" and "nutritious" to convey a health message, should any of plaintiff's claims be dismissed as challenging mere puffery?

6.      Can plaintiffs assert a claim under the UCL's "unlawful" prong based on Post's false statement that *Shredded Wheat Honey Nut* contained "No Added Sugar"?

7.      Are plaintiffs' warranty claims, identifying the alleged warranties for each challenged product, adequately pled, where the Second Amended Complaint depicts each label version of each product?

## FACTS

"Excessive consumption of added sugar is toxic to the human body." (Second Am. Compl. ("SAC") ¶ 1.) Scientific evidence demonstrates that "any amount above approximately 5% of daily caloric intake[ ] greatly increases the risk of heart disease, diabetes, liver disease, and a wide variety of other chronic morbidity." (*Id.*; *see also id.* ¶¶ 20-104.) Nevertheless, "Post leverages a policy and practice of marketing high-sugar cereals with health and wellness claims" (*id.* ¶ 2; *see also id.* ¶¶ 124-233 & App. 1 (identifying challenged claims)). Sometimes Post expressly represents its products are "healthy," "nutritious," or "wholesome." (*See id.* ¶¶ 234-37.) Other times, it claims its foods will help promote bodily health or weight loss, and prevent disease. (*See id.* ¶¶ 238-44.) Sometimes Post is more suggestive, touting the cereals' whole grain, fiber, and "real" ingredient content (*id.* ¶¶ 246-47), or the absence of high fructose corn syrup (*id.* ¶¶ 254-57), and claiming the cereals are "simple," "less processed," "whole foods" (*see id.* ¶¶ 258-63).

2

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

In their combined effect of conveying the message that the challenged products are healthy, these statements and practices "are deceptive because they are incompatible with the significant dangers of the excessive sugar consumption to which these foods contribute." (*Id.* ¶ 2.) Moreover, "[i]n emphasizing the supposedly beneficial ingredients or other aspects of its cereals," Post "intentionally also de-emphasizes, hides, obscures, and otherwise omits material information regarding the products' detrimental . . . high added sugar content." (*Id.* ¶ 247; *see also id.* ¶¶ 254-57 (emphasizing absence of high fructose corn syrup is deceptive because it falsely suggests products contain "healthy" forms of sugar).)

Plaintiffs purchased Post's high-sugar cereals in reliance on their health and wellness claims, and were injured because the products were *not* healthy. (*See id.* ¶¶ 324-80.) They allege Post violated California's UCL, FAL, and CLRA, and breached express and implied warranties. (*Id.* ¶¶ 381-410.) Plaintiffs filed the action on behalf of a putative class of California purchasers (*id.* ¶ 372), "primarily to enjoin Post from continuing to engage in its practice of using deceptive health and wellness claims to market high-sugar cereals" (*id.* ¶ 3), but also to recover the class's monetary damages (*see id.* ¶ 411).

## ARGUMENT

## I. THE FIRST AMENDMENT DOES NOT PROTECT POST'S MISLEADING SPEECH

Post's constitutional argument fails because plaintiffs plausibly allege the challenged labeling claims and omissions are misleading, and "[c]ommercial speech that is false or misleading is afforded no First Amendment protection at all." *Stutzman v. Armstrong*, 2013 WL 4853333, at *14 (E.D. Cal. Sept. 10, 2013) (citing *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2011) (citing *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623-24 (1995))); *see also Cent. Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980) ["*Central Hudson*"] ("For commercial speech to [be protected], it at least must concern lawful activity and not be misleading."). California's Constitution likewise "does not prohibit the imposition of sanctions for misleading commercial advertisements." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 959 (2002).

There is a reason Post does not and cannot cite a single false advertising action that was dismissed at the pleading stage on constitutional grounds. "In analyzing commercial speech, the first step is to determine whether it involves lawful activity and is not misleading." *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1268 (2007) (citing *Kasky*, 27 Cal. 4th at 952); *accord Fleminger, Inc. v. U.S. Dep't of Health & Human Servs.*, 854 F. Supp. 2d 192, 195 (D. Conn. 2012) ("As a 'threshold matter,' the Court must determine

3

'whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment." (quoting *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002))).

Because misleading speech enjoys no protection, in a false advertising case, this "first step" naturally collapses into the merits; thus, if a "plaintiff has alleged defendant's label was both unlawful and misleading," those "allegations are sufficient at this early stage for plaintiff's claims to survive" a First Amendment challenge. *Salazar v. Honest Tea, Inc.*, 2015 WL 75223, at *6 (E.D. Cal. Jan. 6, 2015); *accord Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1093 (N.D. Cal. 2013) ("To the extent that Defendants attempt to . . . invok[e] a First Amendment defense, the Court finds such arguments inappropriate for a motion to dismiss . . . ."); *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 522 (7th Cir. 2014) (After determining that challenged statements were commercial speech, holding "[t]his defeats [defendant's] constitutional defense, permitting [plaintiff's] case to go forward," while noting that plaintiff's false endorsement claim under the Lanham Act "requires proof that [defendant's] ad caused a likelihood of confusion," and "express[ing] no opinion on the substance of [plaintiff's] claims . . . .").

Despite citing *American Beverage* for the proposition that "the level of scrutiny . . . depends on the nature of the regulation," and quoting the decision's statement of the standard for *disclosures* (Mot. at 5), Post omits its statement of the standard for "[p]rohibitions or restrictions" (*id.*), instead citing *Matal v. Tam*, 137 S. Ct. 1744 (2017), for the proposition that such regulation is "subject to the higher standard of intermediate scrutiny" (Mot. at 5). By doing so, Post cleverly side skirts this crucial threshold question articulated in *Central Hudson* and restated in *American Beverage*, since intermediate scrutiny only applies in the first instance to the restriction of "*nonmisleading* commercial speech regarding lawful activity," 871 F.3d at 891 (emphasis added) (quoting *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010)).

Post's only response to this legal reality is to argue that speech may not be restricted based only on "rote invocation" or "simply declaring" that speech is misleading (Mot. at 6 (citations omitted)). Here, of course, the Court will not "censor or punish" Post's speech unless and until plaintiffs demonstrate that the speech is potentially or inherently misleading, or unlawful, within the meaning of California's consumer protection statutes. In litigation (as opposed to agency rulemaking of the sort challenged in the cases Post cites), the trial process ensures that any "restricted speech . . . *actually [is]* . . . misleading" (*id.* (emphasis in

4

original) (quoting *Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168, 1180 (D. Colo. 2001))).

Post knows that "[s]tates may of course prohibit false or misleading commercial speech" (*id.* at 5). Commercial speech is misleading under the UCL, FAL, and CLRA when it is likely to deceive a reasonable consumer. *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 962-63 (N.D. Cal. 2017) (Orrick, J.) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "[T]hese laws prohibit not only [statements] which are false, but also [statements] which, although true, [are] either actually misleading or which ha[ve] a capacity, likelihood or tendency to deceive or confuse the public." *Id.* at 963 (internal alterations in original) (quoting *Williams*, 552 F.3d at 938 (quotation marks and brackets omitted)).

Contrary to Post's assertion that "the First Amendment allows the government to censor a statement or punish its use only if the statement has been proven false by settled science" (Mot. at 6), the U.S. Supreme Court has made clear that the First Amendment does not interfere with a "State's dealing effectively" with "deceptive or misleading" commercial speech, even when it is "not provably false, or even wholly false," *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976).[1]

Post cites *In re GNC Corp.*, 789 F.3d 505 (4th Cir. 2015) ["*GNC*"], for the proposition that there is "no claim where 'some reasonable experts disagree' that defendants' statements were false" (Mot. at 13). This non-binding decision, however, is "not persuasive," because there are "no California cases consistent with its holding," and because "[u]nder California law, a false advertising claim may be stated under the UCL or CLRA where 'members of the public are likely to be deceived' by an advertisement that is either 'false' or 'although true, is either actually misleading or . . . has a capacity, likelihood or tendency to deceive or confuse the public.'" *See Zakaria v. Gerber Prods. Co.*, 2015 WL 4379743, at *3 (C.D. Cal. July 14, 2015) (quoting *Williams*, 552 F.3d at 938). Here, the Court has already held that plaintiffs plausibly allege the challenged labeling claims are either false or misleading under the UCL, FAL, and CLRA's reasonable consumer standard. *Krommenhock*, 255 F. Supp. 3d at 962-65.

Post adopts its erroneous "proven false by settled science" standard, not from First Amendment

---

[1] Post claims it is challenging the "as-applied constitutionality" of the UCL, FAL, and CLRA (Dkt. No. 98 at 1). But Post is really arguing that the reasonable consumer standard for stating a claim under the UCL, FAL, and CLRA falls short of what the U.S. and California Constitutions require. (*See* Mot. at 8 ("This Court previously analyzed whether Plaintiffs had pleaded a 'plausible scientific basis' that added sugar makes the cereals unhealthy, *applying the standard for stating a claim on the merits*. . . . But *the standard for complying with the First Amendment is different and much higher*." (emphases added and record citation omitted))).

5

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

jurisprudence, but from case law involving the prohibition on private claims for lack of substantiation (what Post terms California's "statutory law"). (*See* Mot. at 12-13.) Besides not involving First Amendment issues, the cases on which Post relies are distinguishable, involving theories only that efficacy claims on dietary supplements were literally false, whereas here plaintiffs allege Post's labeling claims and omissions of material information are *either* literally false or at least highly *misleading* (and in some cases unlawful).

For example, Post cites *Korolshteyn v. Costco Wholesale Corp.*, 2017 WL 3622226 (S.D. Cal. Aug. 23, 2017), for what is required "to state a false advertising claim on a theory that representations have been proven to be false" (Mot. at 13 (quoting *Korolshteyn*, 2017 WL 3622226, at *3)), but that is not plaintiffs' sole theory here. *See Korolshteyn*, 2017 WL 3622226, at *5 (noting that "Plaintiff is *only* alleging . . . that the Label Claims are literally false," and explaining that "[w]hen the scientific evidence is equivocal, it is impossible to prove that an advertised claim is either literally true or literally false" (emphasis added)); *cf. Zakaria*, 2015 WL 4379743, at *3 ("[T]he falsehood alleged by Plaintiff is not that all experts agree that Defendant's products lack a health benefit, but rather that the product in fact lacks that benefit. . . . If some reasonable experts incorrectly had opined that [the challenged product] had this health benefit, this would not necessarily bar the claim."). It was this distinction that led the Honorable Richard Seeborg to reject last year a defendant's argument that, under *GNC*, a "reasonable difference of scientific opinion" mandated summary judgment in its favor. *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 893-95 (N.D. Cal. Apr. 15, 2016). As Judge Seeborg explained:

> [T]he Fourth Circuit [in *GNC*] did not address whether . . . evidence [of a disagreement among experts] is sufficient to prove an advertising claim is *misleading*. [*GNC*, 789 F.3d] at 516 ("[W]e need not decide today whether any of the representations made on the [defendants'] products are misleading, because Plaintiffs chose not to include such allegations in the [complaint].") [Plaintiff] has asserted that Premier's claims about the benefits of drinking Joint Juice are false *and* misleading, and therefore tees up the question the Fourth Circuit circumvented: Do advertising claims have "the capacity, likelihood or tendency to deceive or [to] confuse the public" if the vast weight of scientific evidence undermines those claims?

*Id.* at 894 (quoting *Williams*, 552 F.3d at 938 (citing *Kasky*, 27 Cal. 4th at 951)).

Judge Seeborg answered this question in the affirmative. Noting that "[t]he UCL and CLRA are 'intentionally broad' to promote the underlying purpose of consumer protection," *id.* (quotation omitted), he found that "California authorities . . . embrace the view that 'a manufacturer may not hold out the opinion of

6

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

a minority of scientists as if it reflected broad scientific consensus.'" *Id.* (quoting *GNC*, 789 F.3d at 516). "Accordingly, even if a reasonable expert testifies that the scientific literature is equivocal, a plaintiff may prevail under the UCL and CLRA if she proves that the expert is nevertheless incorrect." *Id.*

Here, plaintiffs allege "[t]he scientific evidence is compelling" that "[e]xcessive consumption of added sugar is toxic to the human body," including evidence from "[e]xperimentally sound, peer-reviewed studies and meta-analyses . . . ." (SAC ¶ 1.) They allege "there is *substantial* scientific evidence that excess sugar consumption causes metabolic syndrome, cardiovascular disease, type 2 diabetes, and other morbidity." (*Id.* at p. 12 (emphasis added, header capitalization disregarded).) And they *incorporate* substantial evidence into the Complaint. (*Id.* ¶¶ 20-104.) This is sufficient for plaintiffs to allege that Post's health and wellness claims are *false*, and far more than necessary to allege they are *misleading*.

Nevertheless, Post quotes snippets from various sources, arguing they show some amount of "debate" over the net health implications of consuming sweetened cereal. (Mot. at 8-11.) Several are from the FDA, an organization not "so infallible that it is wholly implausible for plaintiffs to contend that [added sugars] present a health risk." *See In re Quaker Oats Labeling Litig.*, 2012 WL 1034532, at *2 (N.D. Cal. Mar. 28, 2012) ["*Quaker*"]. This is particularly true in light of recent evidence that "[t]he sugar industry paid scientists in the 1960s to play down the link between sugar and heart disease and promote saturated fat as the culprit instead" (Fitzgerald Decl. ¶ 3), and that this had lasting effects on FDA policy (*see id.* ¶¶ 2-13 & Exs. 1-5).

Indeed, just 10 days ago, researchers at the University of California San Francisco's Philip R. Lee Institute for Health Policy Studies published evidence that, in the 1960s and 70s, the Sugar Research Foundation intentionally hid links it uncovered between sugar consumption and heart disease and bladder cancer. As the researchers explained in the article's abstract:

> In 1965, the Sugar Research Foundation (SRF) secretly funded a review in the *New England Journal of Medicine* that discounted evidence linking sucrose consumption to blood lipid levels and hence coronary heart disease (CHD). SRF subsequently funded animal research to evaluate sucrose's CHD risks [("Project 259")]. . . . Project 259 found a statistically significant decrease in serum triglycerides in germ-free rats fed a high sugar diet compared to conventional rats fed a basic . . . diet . . . . The results suggested to SRF that gut microbiota have a causal role in carbohydrate-induced hypertriglyceridemia. A study comparing conventional rats fed a high-sugar diet to those fed a high-starch diet suggested that sucrose consumption might be associated with elevated levels of . . . an enzyme previously associated with bladder cancer in humans. SRF terminated Project 259 without publishing the results. The sugar industry did not disclose evidence of harm from

7

animal studies that would have (1) strengthened the case that the CHD risk of sucrose is greater than starch and (2) caused sucrose to be scrutinized as a potential carcinogen. (*See* Fitzgerald Decl. Ex. 6, at 1.)

A recent meta-analysis also demonstrates weakness in the "science" on which Post relies to claim there is a "debate." Noting that "[t]he [sugar sweetened beverage (SSB)] industry has opposed . . . initiatives [relating to curbing added sugar consumption], claiming that causation is scientifically controversial," last year, another UCSF researcher, Dr. Dean Schillinger, "comprehensively surveyed the literature to determine whether experimental studies that found no association between SSBs and obesity- and diabetes-related outcomes (negative studies) are more likely than positive studies to have received financial support from this industry." (Fitzgerald Decl. Ex. 7, at 895.) Reviewing studies from January 2001 to July 2016, Schillinger identified 60 examining the effects of SSB consumption on obesity and diabetes. Twenty-six described no associations, while 34 described positive associations. (*Id.* at 896.) "Studies funded by the SSB industry were significantly more likely to be negative [than] independently funded ones: 25 of 26 studies (96.2%) had funding ties to this industry, whereas only 1 of 34 positive studies (2.9%) had such ties," (*id.*). Thus, "experimental studies that have financial conflicts with the SSB industry are much more likely than independently funded ones to find no relationship between SSB consumption and metabolic outcomes." (*Id.*)

As the Court previously found, here "relevant studies supporting plaintiffs' theory (at least in part) have been alleged, and determining the full extent of that support is not appropriate on a motion to dismiss." *Krommenhock*, 255 F. Supp. 3d at 963 (citation omitted). In fact, the Court specifically addressed the types of statements to which Post again clings, holding that "this is not the appropriate time to weigh the competing harms and benefits from Post's products," *id.*; *accord Hadley v. Kellogg Sales Co.*, --- F. Supp. 3d ----, 2017 WL 3453391, at *8 (N.D. Cal. Aug. 10, 2017) ["*Hadley II*"] ("Given the scientific studies supporting the negative health consequences of added sugar and the factual dispute over the typical consumption of Defendant's products, the Court cannot conclude on the instant motion to dismiss that a reasonable consumer would not find Defendant's products to be unhealthy . . . .").

In pressing its novel "proven false by settled science" standard, Post also overstates the holdings in *Alliance for Natural Health v. Sebelius*, 786 F. Supp. 2d 1 (D.D.C. 2011), and *Whitaker v. Thompson*, 248 F. Supp. 2d 1 (D.D.C. 2002). (*See* Mot. at 6 (Asserting these cases stand for proposition that, "[w]here the evidence supporting a [label] claim is inconclusive, the First Amendment permits the claim to be made.").)

8

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*Alliance for Natural Health* involved a challenge to the FDA's response to a petition for health claims on dietary supplements relating to a connection between cancer risk and vitamin intake. The case actually support *plaintiffs* position. On a motion for summary judgment—not a pleading motion—the *Alliance for Natural Health* court noted that the FDA has the power to authorize health claims "only when it determines, based on the totality of publicly available scientific evidence . . . that there is significant scientific agreement . . . that the claim is supported by such evidence." *Id.* at 4 (quoting 21 C.F.R. § 101.14(c)). This standard had previously been interpreted to permit the FDA to restrict health claims "where evidence in support of a claim is outweighed by evidence against the claim," and where "evidence in support of the claim is *qualitatively* weaker than evidence against the claim." *Id.* at 6 (quoting *Pearson v. Shalala*, 164 F.3d 650, 659 n.10 (D.C. Cir. 1999) ["*Pearson I*"]). But because there must be a """reasonable fit" between the governments goals' of protecting public health and preventing consumer fraud and 'the means chosen to advance those goals,'" the FDA cannot "reject[] . . . plaintiffs' proposed health claims without consideration of disclaimers." *See id.* (quoting *Pearson I*, 164 F.3d at 656-58). Applying these principles, when the FDA regulates health claims, "unless that evidence [in support of a claim] is 'outweighed by evidence against the claim' or is 'qualitatively weaker' than evidence against the claim, the claim 'may not be absolutely prohibited.'" *Id.* at 7 (quoting *Pearson v. Shalala*, 130 F. Supp. 105, 114-15 (D.D.C. 2001)).

As relates to the portion of *Alliance for Natural Health* that Post cites, the FDA had, in response to plaintiffs' petition, approved certain health claims, but required qualifications that "effectively negate[d] any relationship between cancer risk and vitamin intake." *Id.* at 24. Since "the FDA [had] found that four of the qualified claims . . . were supported by some credible scientific evidence," *id.* at 23, the court found "[t]he FDA's rewording . . . appears to disavow the FDA's own conclusions that those claims were supported by credible evidence." *Id.* at 24. Invoking the *Pearson* principles, the court noted that "[w]here the evidence supporting a claim is inconclusive," as the FDA's research showed, "the FDA cannot require a disclaimer that simply swallows the claim." *Id.* It was this same problem—the FDA's failure to follow its own review protocols and to adequately consider disclaimers—that led to the court preliminarily enjoining the FDA in *Whitaker*, 248 F. Supp. 2d 1. *See Alliance for Natural Health*, 786 F. Supp. 2d at 8 (discussing *Whitaker*).

*Alliance for Natural Health* and *Whitaker* are inapposite; the question in this case is not whether credible scientific evidence supports Post's labeling claims, but whether the claims are likely to mislead

9

reasonable consumers. Moreover, unlike agency rulemaking in which unilateral decisions can be made behind quiet doors with little oversight, the litigation process includes evidentiary limitations and a burden of proof on which a false advertising plaintiff must prevail in a public trial before a jury before the commercial speech alleged to be misleading will be restricted. *Cf. Fleminger*, 854 F. Supp. 2d at 215 (interpreting Supreme Court precedent to "stand for the proposition that there must be some actual or real validation that the speech restriction does in fact advance the government's interest").

To the extent an analogy may be drawn, however, the FDA health claim cases Post cites demonstrate that a labeling claim may be misleading, and thus properly restricted, where the evidence supporting the claim is either "outweighed by" or "qualitatively weaker" than the evidence against the claim. *Cf. Mullins*, 178 F. Supp. 3d at 894 ("even if a reasonable expert testifies that the scientific literature is equivocal, a plaintiff may prevail under the UCL and CLRA if she proves that the expert is nevertheless incorrect").

Similarly inapposite is *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628 (6th Cir. 2010) (*see* Mot. at 6), because there the evidence was equivocal whether the "rbST free" claim "informs consumers of a meaningful distinction" or instead "misleads them into believing that" such a distinction exists. *Id.* at 637. Here, plaintiffs have plausibly alleged that Post's labeling claims and omissions are false and misleading.

Finally, Post's heavy reliance on *American Beverage* is seriously misplaced, as the facts of the case and decision bear little relation and relevance to the issues here, despite that both cases concern, at some level, sugar consumption. *American Beverage* does not, as Post asserts, support the broad proposition that "both sides of the debate over the health effects of added sugar receive First Amendment protection" (Mot. at 7)—or even that there is such a debate. Rather, Post is self-servingly imprecise in characterizing the "debate" in *American Beverage* as concerning something so broad as "the health effects of added sugar" or "the science on sugar" (Mot. at 2, 7, 11). As the Ninth Circuit explained, however, San Francisco's proposed warning was "controversial as that term is used in the *Zauderer* framework" only because it "provides the *unqualified* statement that '[d]rinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay'. . . and therefore conveys the message that sugar-sweetened beverages contribute to these health conditions *regardless of the quantity consumed or other lifestyle choices*." 871 F.3d at 895 (emphases added, statutory citation omitted). This unqualified statement was contrary to the FDA's generally recognizing sugar as safe, and stating that sugar "can be a part of a healthy dietary pattern *when not consumed in excess*

10

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*amounts*," *id.* (emphasis added) (quoting 81 Fed. Reg. 33,742, 33,760 (May 27, 2016)).

Noting that the city's experts "state[d] that 'there is a clear scientific consensus' that sugar-sweetened beverages contribute to obesity and diabetes through '*excessive* caloric intake' and 'by adding *extra* calories to the diet,'" the Ninth Circuit found their testimony did "not directly challenge the Associations' expert that 'when consumed as part of a diet that balances caloric intake with energy output, consuming beverages with added sugar does not contribute to obesity or diabetes.'" *Id.* (emphasis added). Thus, it was "[b]ecause San Francisco's warning does not state that *overconsumption* of sugar-sweetened beverages contributes to obesity, diabetes, and tooth decay, or that consumption of sugar-sweetened beverages *may* contribute to obesity, diabetes, and tooth decay, [that] the accuracy of the warning is in reasonable dispute." *Id.*

Whereas the Ninth Circuit suggested that San Francisco's warning would have been fair and truthful if it stated that *excessive* sugar consumption contributes to obesity and diabetes, that is exactly plaintiffs' allegation here: the Post cereals contain an excessive amount of sugar, one that is likely to contribute to excessive added sugar consumption by those who regularly eat the cereals, such that expressly or implicitly representing that they are healthy, and omitting material information about the detrimental health effects of their added sugars, is likely to deceive a reasonable consumer. (*See*, *e.g.*, SAC ¶¶ 114, 116, 237, 247, 264-67.) *Compare Hadley II*, 2017 WL 3453391, at *8 ("[A]t the very least, Plaintiff has alleged that eating Defendant's products would require the individual to eat lower sugar foods throughout the rest of the day to maintain a daily percentage of added sugar intake that is below the two thresholds for added sugar mentioned in the instant suit. . . . This is especially true if, as Plaintiff alleges, a non-negligible number of people typically consume, in a single meal, double the amount of cereal in a single serving." (citing *In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) ["*Ferrero*"] (plaintiff adequately alleged Nutella was unhealthy because even though a single serving had only 30% to 50% of the DRV for fat it "creat[ed] the high probability that the child w[ould] therefore exceed his or her recommended daily allowance" (docket citations omitted)))).

The *American Beverage* court also found San Francisco's warning misleading because it was "required exclusively on advertisements for sugar-sweetened beverages, and not on advertisements for other products with equal or greater amounts of added sugars and calories." 871 F.3d at 895. Thus, "the warning conveys the message that sugar-sweetened beverages are less healthy than other sources of added sugars and

11

calories and are more likely to contribute to obesity, diabetes, and tooth decay than other foods." *Id.* San Francisco had "[a]cknowledg[ed] . . . [a] debate over whether sugar-sweetened beverages pose unique health risks," but argued that "because people are more likely to over-consume sugar-sweetened beverages than other foods," they "uniquely contribute to obesity, diabetes, and tooth decay," *id.* at 896. The Ninth Circuit found, however, that "the warning does not communicate" that "consumption of sugar-sweetened beverages gives rise to unique behavior risks," instead "impl[ying] that there is something inherent about sugar-sweetened beverages that contributes to these health risks in a way that other sugar-sweetened products do not, regardless of consumer behavior." *Id.* As a result, "the warning requires the Associations to convey San Francisco's disputed policy views." *Id.* If anything, this portion of the *American Beverage* decision is consistent with plaintiffs' allegations that the added sugar in the Post cereals is just as harmful as that in sugar-sweetened beverages. (*See, e.g.,* SAC ¶¶ 254-257.)

Post relies extensively on *American Beverage*, but overstates the decision and its holding. For example, Post claims that "San Francisco could not meet the lower standard for compelling disclosures stating that added sugar is unhealthy" (Mot. at 8), but that is not what the warning said, instead singling out sugar-sweetened beverage consumption as uniquely contributing to disease, without even mentioning this occurs with excessive consumption. Moreover, the Ninth Circuit did not purport to protect a "viewpoint" that "a food with added sugar is healthy" (*id.*): unlike Post, soda manufacturers have the good sense not to claim that their foods are healthy; they just did not want to be uniquely forced to say, with 20% of their advertising space, that their products were *unhealthy*. Similarly, the Ninth Circuit made no such broad proclamation that "the First Amendment protects both sides of the debate over the health effects of soda" (*id.*), instead only discussing the debate over whether sugar-sweetened beverages are *uniquely* unhealthy.

The "debate" in this lawsuit is not whether excessive added sugar consumption is healthy—clearly it is not—or even whether Post's cereals themselves are healthy; but instead whether, in light of the totality of the scientific evidence, advertising as healthy foods whose added sugar accounts for roughly 15-40% of their calories is likely to deceive a reasonable consumer. *See Hadley II*, 2017 WL 3453391, at *8 ("[W]hile AHA and FDA recommendations may be relevant to the issues in this case, the case is not about whether 5% or 10% of calories from added sugar is a more reasonable threshold for a daily sugar consumption limit, but whether it is misleading for Kellogg to label foods with the challenged health and wellness claims when

12

20%-40% of their calories come from added sugar." (record citation omitted)).

In *Kasky*, the California Supreme Court rejected as "misdirected" a constitutional challenge similar to Post's here. In that case, Nike had responded to criticism about its labor force's working conditions by issuing public statements that workers were provided humane conditions and living wages, which plaintiff alleged was false. *See* 27 Cal. 4th at 945-48. Reviewing *Central Hudson* and its progeny, *id.* at 952-70, the *Kasky* court noted that "[c]ommercial speech, because it is both more readily verifiable by its speaker and more hardy than noncommercial speech, can be effectively regulated to suppress false and actually or inherently misleading messages without undue risk of chilling public debate." *Id.* at 969. Because Nike's statements were commercial speech, the court "reject[ed] Nike's argument that regulating its speech to suppress false and misleading statements is impermissible because it would restrict or disfavor expression of one point of view (Nike's) and not the other point of view (that of the critics of Nike's labor practices)," explaining that this argument is "misdirected because the regulations in question do not suppress points of view but instead suppress false and misleading statements of fact." *Id.* at 967; *cf. Jordan*, 743 F.3d at 516 ("advertising which links a product to a current public debate is not entitled to the constitutional production afforded noncommercial speech" (quoting *Zauderer v. Office of Disciplinary Counsel of Supreme Ct. of Ohio*, 471 U.S. 626, 637 n.7 (1985) (quotation omitted))); *Native Am. Arts, Inc. v. Village Originals, Inc.*, 25 F. Supp. 2d 876, 880-81 (N.D. Ill. 1998) (Explaining that "[c]ommercial speech is protected in so far as it serves an informational function, but loses its protection if it deceives, misleads, or constitutes fraudulent activity," and denying motion to dismiss on First Amendment grounds where state consumer fraud statute "only regulates the purely commercial aspect [of defendant's merchandise] stemming from potential false advertising that is unprotected conduct.").

Because plaintiffs have sufficiently alleged Post made false and misleading statements, which may validly be restricted if plaintiffs prove their claims, Post's constitutional challenge should be rejected.

## II.   PLAINTIFFS' CLAIMS ARE NOT EXPRESSLY PREEMPTED

### A.   Plaintiffs' Challenges to Post's Use of "Healthy" are Not Preempted

Post argues that 21 C.F.R. § 101.65(d)(2) authorizes every use of the word "healthy" on the challenged products, and every use of any synonym for "healthy." (Mot. at 13-15; *see also id.* at 15 n.24 (identifying specific claims Post asserts are challenged).) Post is wrong on both accounts.

13

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

1    Taking its contentions in reverse order, § 101.65(d)(2) only regulates the "use [of] the term 'healthy'

2    or related terms (e.g., 'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' 'healthiest,' 'healthily,'

3    and 'healthiness')," 21 C.F.R. § 101.65(d)(2). As the parenthetical list in the regulation demonstrates, "related

4    terms" means terms that use the root word, "health," not any term with a synonymous meaning.

5    Post is also wrong that plaintiffs' challenges to many labeling claims that use the term "healthy" are

6    preempted by § 101.65(d). This section only regulates "healthy" when "made in connection with an explicit

7    or implicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams of fat')." 21 C.F.R. §

8    101.65(d)(1)(ii). The FDA has explained that "healthy" is regulated as an implied nutrient content claim

9    "only if the term 'healthy' is accompanied by language or graphic material or is otherwise presented in a

10   context that explicitly or implicitly suggests that the food has a particular *nutrient profile*," that is, "a nutrient

11   profile that would be helpful to consumers in structuring a diet that conforms to dietary guidelines." 59 Fed.

12   Reg. 24,232, 24,235 (May 10, 1994). Such a nutrient profile may occur where a product is eligible to bear a

13   favorable nutrient content claim, such as "high in fiber" or "low in fat," since qualification to use those terms

14   is based on dietary guidelines. Thus, for example, this Court found one of Post's uses of "healthy" was an

15   implied nutrient content claim under § 101.65(d)(2) where the phrase in question was "followed immediately

16   by a specific listing of nutrients present in the product," which included "An Excellent Source of 6 B

17   Vitamins," and "Low in Fat," among others. *Krommenhock*, 255 F. Supp. 3d at 956-57 (internal quotation

18   marks and record citation omitted).[2]

19   Here, several of the "healthy" labeling statements to which Post contends plaintiffs' challenges are

20   preempted by § 101.65(d) are not nutrient content claims because either they are not made in connection with

21   a claim or statement that suggests the product has a nutrient profile helpful in meeting dietary guidelines, or

22   because they are health claims—and unauthorized ones that plaintiffs challenge as unlawful.[3]

23   • "HELPS SUPPORT A HEALTHY METABOLISM," and "Support a Healthy Metabolism" (SAC

24

25   [2] The claim the Court dismissed, "Start the Day in a HEALTHY Way" on Post's *Honeycomb* cereal, inadvertently was left in the Second Amended Complaint. (SAC ¶ 231c.) After noticing this, on October 10, 2017, plaintiffs' counsel advised Post's counsel of the error and withdrew the allegation. (Fitzgerald Decl. ¶ 21.)

27   [3] Nevertheless, after further review, plaintiffs withdraw their challenge as set forth in paragraph 224d of the Second Amended Complaint, and strike the language indicated from the following challenged phrase: "Whole Grains – good for your family, ~~good for your health~~, good for you" (SAC ¶¶ 199c, 201c).

¶¶ 148a, 148h, 152a, 152i): These claims appear on Post's *Great Grains Protein Blends* cereals, the first as a prominent front-of-box claim, the second as a header on the back of the box. (*See id.* at pp. 55-56, 58-59.) The phrases are not nutrient content claims because they are unlawful health claims. (*See id.* ¶¶ 295-96.)

• "Heart Healthy" and "Heart Health" (*id.* ¶¶ 159b, 165b, 168b, 171b, 176b, 180b, 188b, 191b, 194b, 215l, 217b): This phrase is not an implied nutrient content claim because the term "healthy" is used in connection with the term "heart," turning the phrase into a *health claim. See Krommenhock*, 255 F. Supp. 3d at 952 ("A health claim is an express or implied labeling statement that 'characterizes the relationship of any substance to a disease or health-related condition.'"); *Hadley II*, 2017 WL 3453391, at *15. Plaintiffs allege Post's use of this health claim is unlawful. (SAC ¶¶ 294, 297-98.)

• "Honey Bunches of Oats Whole Grain Cereal has it all. . . . . Fiber fills you up, helps keep you satisfied and is important to help maintain digestive health. **Rich in nutrients:** Honey Bunches of Oats Whole Grain Cereal is rich in nutrients . . . important for moms-to-be and growing children. . . . Whole grains are an important part of a balanced diet, but on average, Americans eat less than 1 serving of whole grains per day" (*id.* ¶¶ 199d, 201d): Here, the use of the word "health" is in the phrase, "Fiber . . . is important to help maintain digestive health." Plaintiffs allege this is an unlawful health claim. (*Id.* ¶ 294e.)

• "Bite-sized health tip" (*id.* ¶ 215i): This statement appears as a header on the back of *Post Shredded Wheat Honey Nut*, above a paragraph stating "Nutritionists recommend eating at least 48 grams of whole grains a day. Instead of counting servings, enjoy one bowl of Post Shredded Wheat Honey Nut. With 48 grams of whole grains per serving, you'll get 100% of what you need for the day in just one bowl!" Although this statement discusses the amount of whole grain (an ingredient) present, that alone does not suggest anything about the product's *nutrient profile*—for example, that it is "high" in or "a good source of" fiber (a nutrient). Accordingly, "Bite-sized health tip" is not an explicit or implicit claim about the product's nutrient profile, and not regulated by § 101.65(d).

• "Post Shredded Wheat is one of the simple things you can do to feel good each day" (*id.* ¶ 215j): This appears on the back of Post *Shredded Wheat Honey Nut*. Because it does not use the term "healthy" or a related "health" term, it is not regulated by § 101.65(d), so plaintiffs' challenges are not preempted.

• "THE BISCUIT OF BENEFITS / Post Shredded Wheat Honey Nut is made with 100% whole grain wheat, for a natural source of fiber. . . . So what does this mean in terms of health benefits for you? They are

15

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

so plentiful, the cereal could be renamed the Biscuit of Benefits!" (*id.* ¶ 215k): The use of the term "health" is not made in connection with any statement suggesting the product is helpful in achieving dietary guidelines, since merely noting the product is "made with 100% whole grain wheat, for a natural source of fiber" does not indicate how much fiber is in the product, and whether the amount assists in meeting dietary guidelines. Thus, the term is not regulated by § 101.65(d), and plaintiffs' challenges are not preempted.

• "Digestive Health: Diets rich in fiber have many benefits and are important for maintaining digestive health" (*id.* ¶ 215m): This is not a nutrient content claim, but rather an unlawful health claim. (*See id.* ¶ 294b.) *Compare Krommenhock*, 255 F. Supp. 3d at 959 (discussing plaintiffs' misbranding claims as they relate to statements concerning digestive health and weight management).

• "Healthy" (SAC ¶ 222c): this appears in a list of words to be found in a "Goodness Word Search" on the back of the Post *Raisin Bran* box, and is not made in connection with any claim or statement suggesting anything about the product's nutrient profile. (*See id.* at p. 98.)

• "Fiber is good for digestive health" (*id.* ¶ 222g): Plaintiffs allege this is an unauthorized and unlawful health claim. (*See id.* ¶¶ 294f, 296.)

• "[CONTAINS] DIETARY FIBER TO HELP MAINTAIN DIGESTIVE HEALTH" (*id.* ¶ 224a): This statement appears prominently on the front of Post *Bran Flakes* (*see id.* at p. 99). Although it states that the product "contains" fiber, it does not convey anything about the product's nutrient profile or ability to assist in meeting dietary guidelines, and thus is not a preempted implied nutrient content claim under § 101.65(d). Moreover, plaintiffs allege this is an authorized and unlawful health claim. (SAC ¶¶ 294g, 296.)

**B.     As Post's Brief Demonstrates, Plaintiffs do not Challenge Nutrient Content Claims[4]**

Post acknowledges that "[t]he SAC omits . . . [challenges to] statements about nutrient content" (Mot. at 19 n.28), but argues that some of plaintiffs' challenges are preempted because the language they challenge is supposedly "inseparable from" nutrient content claims that plaintiffs do not challenge.

For example, "high in fiber" is a nutrient content claim. *See* 21 C.F.R. §§ 101.54(b) & (d). Plaintiffs

---

[4] Plaintiffs had mistakenly believed the health claim with which "Reduced Cancer Risk" was associated was promulgated under the Food and Drug Administration Modernization Act, rather than Subsection E of Title 21 of the Code of Federal Regulations, and that the phrase was unlawful as a result. (*See* SAC ¶ 294b; *compare id.* ¶ 297.) After reviewing Post's motion, plaintiffs withdraw their challenge to "Reduced Cancer Risk" as set forth in paragraph 215n of the Second Amended Complaint. (*See* Mot. at 21-22.)

challenge the following statement on *Great Grains* products:

> Why less processed? Quite simply, because it's good for you! We gently crack the whole wheat berry and add a mix of grains to our flakes, while some of the competition add artificial sweeteners and flavors along with isolated fiber to their flakes. We then add in nutritious fruits and nuts and balance them with our grains for a great taste that's irresistible.

(*See, e.g.*, SAC ¶ 126c-d.) That statement is followed on the packaging by the following two sentences: "The result? A crispy, delicious, less processed whole grain cereal that's high in natural fiber." (*See id.* at p. 44 (*Great Grains Blueberry Morning* packaging).) Although plaintiffs do not challenge the "high in . . . fiber" phrase, Post argues the phrase renders the entire paragraph a preempted nutrient content claim. Nothing in the challenged language replicated above, however, makes a direct statement about the level or range of a nutrient, describes the food or an ingredient in a manner suggesting a nutrient is absent or present in a certain amount, or is made in association with an explicit claim or statement about a nutrient. The challenged language clearly is not a nutrient content claim as defined in 21 C.F.R. § 101.13(b).

The table stretching from pages 19 to 21 of Post's brief shows Post repeatedly attempting to leverage nutrient content claims that plaintiffs do not challenge by asserting that these unchallenged statements transform all the surrounding language into nutrient content claims, even though the surrounding language does not meet the definition of a nutrient content claim under 21 C.F.R. § 101.13, as demonstrated below.

| Product(s) | Language Challenged | Direct Statement about Level or Range of Nutrient? | Nutrient Absent or Present in Certain Amount? | Made in Association with Explicit Nutrient Claim? |
|---|---|---|---|---|
| GG Blueberry Morning, Cranberry Almond Crunch, Banana Nut Crunch, and Protein Blends | Why less processed? Quite simply, because it's good for you! We gently crack the whole wheat berry and add a mix of grains to our flakes, while some of the competition add artificial sweeteners and flavors along with isolated fiber to their flakes. We then add in nutritious fruits and nuts and balance them with our grains for a great taste that's irresistible. (SAC ¶¶ 126c-d, 130d-e, 134d-e, 148e-f, 152e-f.) | No | No | No |
| GG Raisins Dates & Pecans, Crunchy Pecans, Blueberry Pomegranate | Why less processed? Quite simply, because it's good for you! We gently steam, roll and bake our whole grains to help maintain the full flavor and nutrition of our flakes, while some of the competition add artificial sweeteners and flavors along with isolated fiber to their flakes. We then add in nutritious fruits and nuts and balance them with our grains for a great taste that's irresistible. (SAC ¶¶ 137d-e, 141c-d, 144c-d.) | No | No | No |

17

| Product(s) | Language Challenged | Direct Statement about Level or Range of Nutrient? | Nutrient Absent or Present in Certain Amount? | Made in Association with Explicit Nutrient Claim? |
|---|---|---|---|---|
| GG Protein Blends | Fiber: Consume fiber. Diets rich in fiber help keep you fuller longer which is important for weight management. Great Grains Protein Blend can help keep you satisfied with the staying power of . . . fiber. (SAC ¶¶ 148i, 152j.) | No | Yes[5] | No |
| | Start your day with the less processed whole grain nutrition of Great Grains Protein blend to help jumpstart your metabolism. (SAC ¶¶ 148i, 152j.) | No | No | No |
| | Great Grains can actually help enhance your metabolism. (SAC ¶¶ 148i, 152j.) | No | No | No |
| HBO Whole Grain Honey Crunch & Vanilla Bunches | Fiber fills you up, helps keep you satisfied, and is important to help maintain digestive health. (SAC ¶¶ 199d, 201d.) | No | No | No |
| | Whole Grains—good for your family, ~~good for your health~~, good for you. (SAC ¶¶ 199c, 201c.)[6] | No | No | No |
| | Whole grains are an important part of a balanced diet, but on average, Americans eat less than 1 serving of whole grains per day. (SAC ¶¶ 199d, 201d.) | No | No | No |
| | Rich in nutrients: Honey Bunches of Oats Whole Grain Cereal is rich in nutrients . . . important for moms-to-be and growing children." (SAC ¶¶ 199d, 201d.) | No | No | No |
| Shredded Wheat Honey Nut | Natural source of fiber (SAC ¶ 215h). | No | No | No |
| | THE BISCUIT OF BENEFITS / Post Shredded Wheat Honey Nut is made with 100% whole grain wheat, for a natural source of fiber. . . . So what does this mean in terms of health benefits for you? They are so plentiful, the cereal could be renamed Biscuit of Benefits! (SAC ¶ 215k.) | No | No | No |
| | Digestive Health: Diets rich in fiber have many benefits and are important for maintaining digestive health. (SAC ¶ 215m.) | No | Yes[7] | No |
| | We make it easy to understand what is in your food—it's just [or "we start with"] the wholesome goodness of whole grain wheat. (SAC ¶¶ 215d-e.) | No | No | No |

---

[5] By referring to "[d]iets rich in fiber," and noting that the product is "an excellent source of natural fiber" (a statement that plaintiffs do not challenge), Post suggests the product is high in fiber, *i.e.*, contains 20% or more of the RDV. *See* 21 C.F.R. § 101.54(b). Plaintiffs allege, however, that by referring to weight management, this is an unlawful health claim (SAC ¶ 294d), which, if in violation of the regulations, cannot be preempted. *See Quaker*, 2012 WL 1034532, at *2 ("plaintiffs can avoid preemption if they show . . . that the product effectively is 'misbranded'").

[6] Partially withdrawn as noted in footnote 3 above (and shown stricken through here).

[7] Plaintiffs allege this statement is an unauthorized, and therefore unlawful health claim. (SAC ¶ 294b.)

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

| Product(s) | Language Challenged | Direct Statement about Level or Range of Nutrient? | Nutrient Absent or Present in Certain Amount? | Made in Association with Explicit Nutrient Claim? |
|---|---|---|---|---|
| Shredded Wheat Crunch! | Post Shredded Wheat CRUNCH combines bite sized 100% natural whole grain wheat granola cluster crunch for delicious heart healthy satisfaction. Goodness you can taste! (SAC ¶ 217b.)[8] | No | No | No |
| Raisin Bran | Fiber is good for digestive health. (SAC ¶ 222g.) | No | No | No |
| Bran Flakes | Dietary Fiber to Help Maintain Digestive Health (SAC ¶ 224a.)[9] | No | No | No |
| | The Importance of Whole Grain and Fiber. (SAC ¶ 224c.) | No | No | No |
| | ~~Whole Grains for Your Healthy Lifestyle~~. (SAC ¶ 224d.)[10] | No | No | Yes |
| | Whole grains provide fiber and other important nutrients to keep you healthy. (SAC ¶ 224e.) | No | No | No |
| | Getting enough fiber in your diet helps naturally regulate your digestive system. Choose a diet rich in a variety of fiber containing foods such as whole grain cereals, breads, and pastas and fruits and vegetables. (SAC ¶ 224f.) | No | No | No |
| | Fiber to Help with Weight Management. Experts recommend diets rich in fiber to help keep you satisfied while you exercise and cut calories to lose weight. Diets rich in fiber are usually lower in calories and larger in volume than low fiber diets, and require more chewing which helps promote a feeling of fullness and satisfaction after eating. (SAC ¶ 224g-h.)[10] | No | No | No |

Pursuant to the Supremacy Clause, federal law preempts state law when Congress enacts a statute that explicitly preempts state law. *See Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citation omitted). There are two "cornerstones" of preemption jurisprudence:

> First, the purpose of Congress is the ultimate touchstone in every pre-emption case. . . . Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations, citations and alterations omitted); *c.f. Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("Congress does not cavalierly pre-empt state-law causes of action."). Thus, courts must give preemption statutes "narrow reading[s]." *Cipollone v. Liggett Group,*

---

[8] Plaintiffs allege this statement is an unauthorized, and therefore unlawful health claim. (SAC ¶ 294c.)

[9] Plaintiffs allege this statement is an unauthorized, and therefore unlawful health claim. (SAC ¶ 294g.)

[10] Withdrawn, as noted in footnote 3 above.

19

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

*Inc.*, 505 U.S. 504, 518 (1992). Where there are "plausible alternative reading[s]" of an express preemption provision, courts "have a *duty* to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosci., LLC*, 544 U.S. 431, 449 (2005) (emphasis added). As regards food labeling, the Nutrition Labeling and Education Act of 1990 contains a "savings clause" requiring it "not be construed to preempt any provision of State law, unless such provision is expressly preempted," Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (1990); 21 U.S.C. § 343-1 note (1). Unsurprisingly, Post provides no authority for its assertion that voluntary, non-regulated language can be considered "inseparable from" a regulated nutrient content claim, and thereby, that challenges to that unregulated language can be preempted by association. In light of both the strong presumption against preemption and the NLEA's savings clause, Post's argument should be rejected. *Cf. Red v. Kraft Foods, Inc.*, 2011 WL 938297, at *4 (C.D. Cal. Jan. 13, 2011) ("To the extent that the 'Support[s] Kid's Growth and Development' statement can be divorced from the 'good source' [nutrient content] claim, Plaintiffs have adequately alleged that it . . . is misleading based on their claim that the consumption of the products at issue is, overall, unhealthy.").

## III.   PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED AS CHALLENGING "TRUTHFUL" STATEMENTS

Post contends California's reasonable consumer standard precludes challenging statements that are "plainly true." (Mot. at 15.) But it cites no supporting authority, and for good reason. California prohibits "not only advertising which is false, but also advertising which although true, is either actually misleading or which has the capacity, likelihood or tendency to deceive or confuse the public." *Kasky*, 27 Cal. 4th at 951 (alterations and citation omitted). Thus, "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information is actionable," *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998); *accord Krommenhock*, 255 F. Supp. 3d at 963.

### A.   Post's Use of "No High Fructose Corn Syrup" is Plausibly Misleading

Although Post did not previously challenge plaintiffs' allegations that its "no high fructose corn syrup" claims mislead consumers (*see* Dkt. No. 26), it now argues for the first time that "truthfully saying a product lacks HFCS does not imply either that it lacks other ingredients or that all of its ingredients are 'healthy,'" so that "[t]hese statements did not mislead reasonable consumers." (Mot. at 16.) However, plaintiffs do not allege the statement misled consumers into believing the cereals lacked other ingredients or

contained only healthy ingredients. Instead, they allege "Post has capitalized on consumer aversion toward high fructose corn syrup by touting the absence of that ingredient, deceptively suggesting *that its cereals are healthier* because HFCS is absent." (SAC ¶ 254 (emphasis added).) Plaintiffs allege "[t]his strategy leverages consumer confusion over the relative dangers of different forms of sugar, inasmuch as many consumers incorrectly believe that HFCS is a substantially more dangerous form of sugar than other forms." (*Id.* ¶ 255.)

Although Mr. Hadley asserted similar allegations against Kellogg, Judge Koh dismissed these challenges as implausible, for two reasons. First, she found the allegations amount to an assertion that the "no high fructose corn syrup" claim "distract[s] consumers from the fact that added sugar with a similar chemical composition is in the product." *Hadley II*, 2017 WL 3453391, at *20. This was not actionable because the statement "is not false and does not misrepresent the contents of the product." *Id.* Second, Judge Koh found "Plaintiff makes no allegations that Defendant's labels state that the lack of high fructose corn syrup in Defendant's products causes Defendant's products to be healthier." *Id.*

Plaintiffs believe Judge Koh's decision on this issue is erroneous, as the allegations in both cases are sufficient to state a claim at the pleading stage that the statement is misleading. Specifically, plaintiffs allege that "many consumers incorrectly believe that HFCS is a substantially more dangerous form of sugar than other forms," some "also incorrectly believe there are 'healthy' forms," and many "are not even aware that some more obscure ingredients *are* added sugars" (SAC ¶¶ 255-56). Since "[i]n reality, added sugar in virtually any form contains toxic fructose, and thus has essentially the same detrimental health effects," "even if literally true, Post's 'no high fructose corn syrup' representations are highly misleading." (*Id.* ¶ 257.)

Alternatively, this case may be distinguishable from *Hadley* in the context in which the "no high fructose claim" is presented. Whereas Judge Koh found there was no allegation that Kellogg's "labels state that the lack of high fructose corn syrup . . . causes Defendant's products to be healthier," 2017 WL 3453391, at *20, here the phrase almost always appears in conjunction with the introductory beneficent remark, "Our Post Promise." (*See* SAC ¶¶ 159a, 165a, 168a, 171a, 176a, 222a, 228a, 233a.) The phrase also appears in the following manner, suggesting the product is healthy for its lack of HFCS: "Our flavor comes from 100% whole grain wheat, honey, almonds, molasses and real sugar. That means vitamin and mineral fortified Post

21

Shredded Wheat Honey Nut contains no high fructose corn syrup or artificial ingredients." (SAC ¶ 215f.)[11]

## B.    "Wholesome" and "Nutritious" Ingredient Statements are Plausibly Misleading

Post argues that where its labels describe a cereal's ingredients, rather than the cereal itself, as "nutritious" or "wholesome," plaintiffs' claims depend on a legally-prohibited "leap." Citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012), Post claims that "[u]nder California law, a seller may point out the good qualities of its product without being deemed to have implied a broader representation that the good qualities will result in a net benefit" (Mot. at 16-17). But *Davis* is easily distinguishable.

In *Davis*, Best Buy had marketed a Reward Zone Program MasterCard (RZMC) "as providing the cardholder . . . with the ability to obtain reward certificates as well as exclusive bonus point offers to earn rewards more rapidly." 691 F.3d at 1158. The plaintiff signed up, failed to read terms that disclosed an annual fee, and incurred an annual fee for five years. He sued, alleging "that Best Buy's advertising was misleading because it failed to disclose the existence of an annual fee." *Id.* at 1161. The Ninth Circuit easily found "that no reasonable consumer would have been deceived by these advertisements into thinking that no annual fee would be imposed." *Id.* This was because "Davis d[id] not allege that Best Buy's advertisements contained any statements that were actually false. He d[id] not suggest, for example, that the advertisement stated that the RZMC would be free," *id.* at 1162. Nor did "the advertisement's failure to mention the annual fee,

---

[11] If the Court nevertheless finds plaintiffs' current allegations inadequate, they would respectfully request leave to amend, as plaintiffs could add further allegations based on information learned in discovery. Specifically, Post's consumer research revealed that "███████████████████████████████████████████████████████████████████████████████" (Fitzgerald Decl. Ex. 8, at KP2562), and so a "███████████████" trend has emerged with "███████████████████████████████████████" (*id.* at KP2561). Research Post purchased in 2014 recognized the "███████████████████████████████████████████████████████████████████████ " which meant that "███████████████████████████████████" (*id.* at KP2622). "███████████████████████████████████████████████████████████████████████████████████████████████ *Id.* Thus, Post chose its "no high fructose corn syrup" claims specifically to appeal to the consumer trend of ████████████████████████████████████████████████████████████████████████████████████ (*See id.* at KP2613 (listing "████████████████" as a "████████████████████████████"); *see also* Fitzgerald Decl. Ex. 9, at KP5542 (███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.) A good example of this is Post's *Raisin Bran*, for which Post sees ████████████████████████████████████████████████████████████ (Fitzgerald Decl. Ex. 10, at KP2909.) Post's *Shredded Wheat Honey Nut* similarly touts the absence of high fructose corn syrup, and ████████████████████████████████████ surveyed consumers made were that the product "███████████████████████████" ( ██ %) and "███████████████" ( ██ %). (Fitzgerald Decl. Ex. 11, at KP1406. *See also* Fitzgerald Decl. Ex. 12, at KP3523 ( "█████████████" is a "████████████████" of *Great Grains* cereals).)

22

standing alone, support[] a reasonable belief that there was no annual fee[] [g]iven the advertisement's legible disclaimer that '[o]ther restrictions may apply,'" *id.* Finally, with respect to Davis's "content[ion] that the omission of the annual fee was misleading because the promise of reward certificates beginning with the first purchase implied that no offsetting charges would operate to 'nullify' those rewards," the court found it "defies common sense to claim that this tradeoff," wherein "an annual fee could offset the cash value of any rewards," "would mislead a rational consumer to conclude that any credit card that offers rewards for spending must therefore not have associated costs of ownership," *id.*

The present case bears no resemblance to the facts in *Davis*. Unlike in *Davis*, Post has not included a disclaimer that would convey truthful information about the dangers of the products' added sugar content. To the contrary, Post "deceptively omits, intentionally distracts from, and otherwise downplays the cereals' high added sugar content" (SAC at p. 111 (header capitalization omitted); *see also id.* ¶ 264). The Court previously upheld "[t]hese omissions-based claims," *see Krommenhock*, 255 F. Supp. 3d at 954, as did Judge Koh, *see Hadley II*, 2017 WL 3453391, at *10; *see also id.*, at *34 ("Once Defendant emphasizes that a product is healthy, the fact that the product contains excess added sugar that is unhealthy becomes '[m]aterial in light of other representations' that have been made. . . . Therefore, to the extent that Defendant's products contain statements that misleadingly imply the health benefits of Defendant's products . . . the Court finds that those statements may give rise to an omission claim." (quoting 21 C.F.R. § 1.21)).

Here plaintiffs allege that a number of health and wellness labeling claims, individually and especially in their combined effect in the context of the packaging as a whole, mislead reasonable consumers into believing the products are healthy, when in fact their added sugar content makes their regular consumption likely to contribute to excessive added sugar intake, and thereby increased risk for disease. The challenged paragraph Post replicates on page 17 of its brief, which it argues should be dismissed as "truthful," is emblematic. The clear message is that its *Great Grains* cereals are healthier than other options because they are less processed and include more "nutritious" ingredients. In this context, prominently emphasizing the "nutritious[ness]" or "wholesome[ness]" of its ingredients is part-and-parcel of Post's misleading health message.[12]

---

[12] For this reason, Post's reliance on *Hadley I* and *Delacruz* (Mot. at 16-17) is also misguided. Both courts found that identifying one ingredient would not imply the lack of another. Here, plaintiffs allege that Post's

23

**IV.    PLAINTIFFS' CLAIMS SHOULD NOT BE DISMISSED AS CHALLENGING PUFFERY**

Post argues that several of plaintiffs' claims should be dismissed as challenging mere puffery, namely those challenging statements about "nutrition," "balanced," "goodness," "wholesome," and "smart." (Mot. at 22.) Oddly, Post cites *Williams* for the proposition that "courts frequently hold [these words] are puffery" (*id.* & n.31), but *Williams* actually explained that "nutritious" was *not* puffery in that case because the statement certainly contributes . . . to the deceptive context of the packaging as whole," 552 F.3d at 939 n.3; *cf. Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 895 n.42 (C.D. Cal. 2013) ("[T]he term 'nutritious,' applied to food products . . . . clearly describes the healthfulness of the food.").

Given the holding in *Williams*, "where there are multiple statements at issue, [courts] must consider the packaging as a whole," which is true "even if certain statements would be non-actionable on their own," *Henderson v. J.M. Smucker Co.*, 2011 WL 1050637, at \*4 (C.D. Cal. Mar. 17, 2011) (citing *Williams*, 552 F.3d at 939 n.3, and declining to strike individual statements as puffery on a motion to dismiss); *accord In re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 532 (W.D. Pa. 2014) (where statements that, standing alone, could be puffery contributed to deceptive context of packaging as a whole, finding "these statements cannot be divorced from the specific representations on the . . . packaging . . . that have the potential to deceive and thus remain viable" (citation omitted)); *Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, 2009 WL 2462505, at \*7 (E.D. Cal. 2009) ("[W]here at least some actionable statements have been pled, a claim cannot be dismissed on the ground that some statements constitute mere puffery."). Many courts have rejected Post's assertion that terms that convey health messages on foods are puffery, including Judge Koh in *Hadley. See Hadley II*, 2017 WL 3453391, at \*21-22 ("Based on the fact that the terms 'nutritious,' 'essential nutrients,' and 'wholesome' might cause a reasonable consumer to think that a product is healthy, the Court cannot conclude as a matter of law that no reasonable consumer would rely on these statements").[13]

---

labeling statements suggested the products are healthy *notwithstanding their sugar content*, not that they lack or are low in sugar specifically. *Compare Jones v. Nutiva, Inc.*, 2017 WL 3617104, at \*3 (N.D. Cal. Aug. 23, 2017) (In action challenging claims used in advertising coconut oil, finding defendant's reliance on similar decision "misplaced, in that the court merely found it 'implausible' that a reasonable consumer would interpret a true statement, such as 'fat free,' to communicate further, unstated and unrelated health benefits. . . . Here, however, Defendant's product labels—such as characterizing coconut oil as 'nourishing' and a 'superfood'—contribute to the impression that the product is healthy.").

[13] *See also Coe v. General Mills, Inc.*, 2016 WL 4208287, at \*6 (N.D. Cal. Aug. 10, 2016) (declining to dismiss as puffery challenge to "Great Start" claims on *Cheerios Protein* because claims plausibly

24

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Nor should the Court find Post's cereal-specific arguments compelling.

***Great Grains* products:** Citing *Great Grains*' many references to "less processed nutrition," including through the cereals' inclusion of "wholesome" and "nutritious" ingredients, Post argues this is puffery because "there is no objective way to answer the questions, "*how much* less processed *than what*?" (Mot. at 23.) The answer, however, is obvious: Post is claiming the products are less processed than other cereals and processed breakfast food options consumers believe are unhealthy. In any event, plaintiffs allege these statements, in the context of the labeling as a whole, lead reasonable consumers to believe the products are healthy when, due to their high added sugar content, they demonstrably are not.[14] *See Chacanaca*, 752 F. Supp. 2d at 1126 (no puffery where "Plaintiffs argue the [representation] is . . . designed to make highly processed foods appear as healthful as unprocessed foods." (internal quotations and record citation omitted)).

***Honey Bunches of Oats*:** Post contends that "touch of honey," and "4 Wholesome ☺ Grains" are puffery. (Mot. at 23-24.) Plaintiffs allege that "reasonable consumers would expect a cereal supposedly sweetened with just a 'touch' of honey to be relatively low in sugar." (SAC ¶ 266.) Contrary to Post's assertion that the depiction of a honey dipper "swamp[s]" the "impact" of the "touch of honey" claim (Mot. at 24), it actually reinforces the false claim that the product contains just a small amount of sweetener, since it shows a single drop of honey falling from the dipper. At a minimum, the extent to which "touch of honey" on these products conveys a concrete message to consumers is an issue of fact precluding dismissal at this stage on puffery grounds. Although Judge Koh found "touch of honey" was puffery because "[a] reasonable consumer would not be able to determine what is meant by a 'touch' of golden honey . . . and thus would not expect any specific amount of honey," *Hadley II*, 2017 WL 3453391, at *25, consumers need not "expect a[]

---

"contribute to the alleged 'deceptive context of the packaging as a whole,'" where plaintiff alleged that, due to product's added sugar content, "the implied claims of healthfulness on the . . . label are . . . misleading" (internal quotation marks and citations omitted)); *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014) ("Nutrition for Healthy Growth & Natural Immune Support" not puffery); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. Oct. 14, 2010) (declining to dismiss "wholesome" as puffery because "[t]he insistence that a product with (allegedly) dangerous additives is nonetheless 'wholesome' . . . arguably *could* mislead a reasonable consumer."); *id.* at 1126 ("smart choices made easy" on food label not puffery); *Bietsch v. Sergeant's Pet Care Prods., Inc.*, 2016 WL 1011512, at *1, *4 (N.D. Ill. Mar. 15, 2016) ("nutritious" in pet food ad not puffery).

[14] If the Court nevertheless finds the Complaint inadequately alleges *Great Grains*' "less processed nutrition" messaging is sufficiently concrete to consumers to avoid dismissal as puffery, plaintiffs would request leave to amend, as Post has produced documents strongly supporting their claims, so amending would not be futile.

specific amount" of honey for this labeling statement to convey a concrete message. The MacMillian Dictionary defines "touch" as "a very small amount of a substance."[15] Consumers understand that honey is a sweetener, and that less sweetener is generally healthier than more. Plaintiffs allege the products contain so much sugar that their regular consumption is likely to increase risk of chronic disease. It is entirely plausible that consumers who found out a product contained so much sugar as to increase risk of heart disease would feel misled by the claim that the product contains only a "touch of honey," even if the same consumers might find it difficult to articulate exactly how much honey they would expect. Notably, Judge Koh found that Kellogg's claim that its cereals are "lightly sweetened" was not puffery. *Hadley II*, 2017 WL 3453391, at *25 ("[T]he Court cannot conclude that no reasonable consumer would rely on statements like 'Lightly Sweetened' and 'lightly frosted' and conclude that the amount of sugar in the product is, at the very least, not so high that the product is unhealthy."). The *Hadley* court's distinction between "lightly" and "with a touch of" is one without a sufficient difference to justify dismissing the latter as puffery at this stage, and this Court should decline to do so here.[16] Finally, although Post argues there is no way to measure the "wholesomeness" of its grains (Mot. at 24), the clear import of this prominent, front-of-box claim is that the product is a healthy choice. Because it contributes to that concrete message, that claim is not puffery.

**Raisin Bran**: Post asserts that statements on *Raisin Bran* that the product "harmon[izes]" taste and nutrition, and provides a "natural advantage" in the absence of HFCS, are puffery. (Mot. at 24.) However, these statements individually and especially in the context of the packaging as a whole convey a concrete message that the product is healthy—and especially notwithstanding its sweet ("delicious") taste, that is, its sugar content. Moreover, consumers *do* plausibly form consistent impressions from the *Raisin Bran* word search game, as the clear import is to find words that supposedly relate to the product. Thus, Post's message is that the product is "healthy" and "nutritious," even if conveyed in the form of a back-of-box game.

**Honeycomb**: Post argues the phrase "Nutritious Sweetened Corn Oat Cereal" is puffery because it "do[es] not suggest any objective way to assess how 'nutritious' the product was." (Mot. at 25.) However, that is not the measure of puffery. The relevant question is whether "Nutritious . . . Cereal" plausibly

---

[15] https://www.macmillandictionary.com/us/dictionary/american/touch_2#touch_2__4.

[16] This argument applies to similar statements on *Honey Bunches of Oats Greek* cereals and *Honey Bunches of Oats Granolas*. (*See* Mot. at 25.)

conveyed a sufficiently concrete message that consumers would rely on it. When a labeling statement claims a food is healthy, it need not expressly suggest "how healthy" to induce reliance, as implicit in any health claim is the notion that the food is not *unhealthy*. If plaintiffs are correct that consuming Post's cereals causes increased risk of disease, then reasonable consumers certainly would be misled by a "Nutritious . . . Cereal" claim. *Cf. Hadley II*, 2017 WL 3453391, at *22 ("nutritious" claims not puffery); *In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *11 (C.D. Cal. May 27, 2015) ("The implied assertion that NJOY King e-cigarettes are healthier and safer than traditional cigarettes concerns a product characteristic of importance to consumers. Whether the NJOY King is safer or healthier than normal cigarettes . . . is capable of verification through comparative research . . . . Consequently, the court cannot conclude as a matter of law that the advertisement is mere puffery.").

**Other *Honey Bunches of Oats* Products:** Post makes similar arguments about other HBO cereals and granolas (Mot. at 25-26), but they suffer the same defects: if statements like "good for your family," "good for you," "important for moms-to-be and growing children," "Starting your day with a bowl of HBO Whole Grain Cereal is a smart step toward eating a balanced diet," "Wholesome nutrition," "Goodness . . . in every bowl," "wholesome goodness," and "Fuel Your Body with Sustained Energy" would plausibly lead reasonable consumers to believe the product is healthy, especially in the context of the full label, plaintiffs' claims cannot be dismissed as challenging mere puffery.

***Shredded Wheat Honey Nut*:** Statements that *Shredded Wheat Honey Nut* is "simple," that it's ingredient list is "easy to understand," and "so good" that Post has "nothing to hide," that the consumer will be "confident about [her] choice," and that the cereal will make her "feel good each day," contribute to the concrete impression that product is healthy. These statements are not puffery.

# V.   PLAINTIFFS MAY ASSERT A CLAIM UNDER THE UCL'S "UNLAWFUL" PRONG BASED ON POST'S FALSE STATEMENT THAT *SHREDDED WHEAT HONEY NUT* CONTAINED "NO ADDED SUGAR"

Post asks the Court to dismiss plaintiffs' claims regarding the "printer error" *Shredded Wheat Honey Nut* packaging that stated "No Added [ ] Sugar" and "0 grams of sugars per serving" despite that the product actually contains 12g per serving. (Mot. at 27.) Post argues that the label "presents a very different reasonable-consumer analysis than the other challenged statements" (*id.*), but plaintiffs challenge these

27

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
PLAINTIFFS' OPPOSITION TO POST'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

statements as *unlawful*, "in violation of 21 C.F.R. § 101.13." (SAC ¶ 292.) A sister court recently held that a plaintiff could pursue such claims on a product he did not purchase because "claims that these products are misbranded can be resolved without a context-specific analysis of each product's label and the fact that the products bearing the challenged label may be different—or that the labels themselves are different in other respects—is immaterial to the determination of whether the label is in fact illegal." *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *5 (N.D. Cal. Sept. 22, 2016) (internal quotation marks and citation omitted).

## VI.   PLAINTIFFS' WARRANTY CLAIMS ARE PROPERLY PLED

Plaintiffs allege Post made affirmations of fact and product descriptions with respect to 32 products (SAC ¶ 399), and that "Post breached its express warranties by selling products that do not meet [those] affirmations and product descriptions because they are not healthy, and not heart healthy, but in fact detrimentally affect health, increasing risk of CHD, stroke, and other morbidity" (*id.* ¶ 400). These allegations state a claim for breach of express warranty. *See Hadley II*, 2017 WL 3453391, at *32 (representations that cereals were, *inter alia*, "heart healthy," "nutritious," and "good for you"); *Jones*, 2016 WL 5210935, at *9 (plaintiff adequately alleged "superfood," "world's most nourishing foods," "better than butter" and "nutritious substitute in baking" representations "constitute an affirmative fact or promise" to state breach of warranty claims); *Ferrero*, 794 F. Supp. 2d at 1118 (representation that product was "a healthy and balanced breakfast"); *Boswell v. Costco Wholesale Corp.*, 2016 WL 3360701, at *10 (C.D. Cal. June 6, 2016) (representation that coconut oil was "healthful" and provided "health benefits"); *Hunter v. Nature's Way Prods., LLC*, 2016 WL 4262188, at *8-9 (S.D. Cal. Aug. 12, 2016) (representation that coconut oil was "healthy"); *c.f. Allen v. ConAgra Foods, Inc.*, 2013 WL 4737421, at *11 (N.D. Cal. Sept. 3, 2013) ("fat free" and "calorie free" were warranties).

Previously, the Court distinguished *Ferrero*, *Jones*, and *Allen* on grounds that those cases "deal[t] with at most a few discrete labelling statements plaintiffs contend created express warranties." *Krommenhock*, 255 F. Supp. 3d at 966 n.34. But—as is evident now that plaintiffs have separated the 60 statements they currently challenge as breached warranties—that is the case here, too.

| Product | # Claims Challenged |
|---|---|
| GG Blueberry Morning | 3 |
| GG Cranberry Almond Crunch | 4 |
| GG Banana Nut Crunch | 4 |

| Product | # Claims Challenged |
|---|---|
| GG Raisins, Dates & Pecans | 3 |
| GG Crunchy Pecans | 3 |
| GG Blueberry Pomegranate | 3 |
| GG Protein Blend: Honey, Oats & Seeds | 5 |
| GG Protein Blend: Cinnamon Hazelnut | 5 |
| HBO – Honey Roasted, With Almonds, Raisin Medley, With Pecan Bunches, With Cinnamon Bunches, With Vanilla Bunches, With Real Strawberries, Fruit Blends: Banana Blueberry, and Fruit Blends: Peach Raspberry | 3 |
| HBO – Tropical Blends: Mango Coconut | 1 |
| HBO – Whole Grain Honey Crunch and With Vanilla Bunches | 4 |
| HBO – Greek Honey Crunch & Greek Mixed Berry | 1 |
| HBO Granola – Honey Roasted, Raspberry, and Cinnamon | 1 |
| HBO Protein Granola with Dark Chocolate | 1 |
| Shredded Wheat Honey Nut | 7 |
| Shredded Wheat Crunch! | 2 |
| Raisin Bran | 4 |
| Bran Flakes | 4 |
| Alpha Bits | 1 |
| Honey-Comb | 1 |

As a review of paragraph 399 demonstrates, the statements plaintiffs challenge as warranties are the most express and explicit health and wellness terms used on the products: claims like "good for you," "nutritious," "supports a healthy metabolism," "heart healthy," and "wholesome," to name a few. (*See* SAC ¶ 399.) Following the Court's decision on Post's first motion to dismiss, Judge Koh upheld similar warranty claims. *See Hadley II*, 2017 WL 3453391, at *29-33. Post nevertheless urges the Court to dismiss all of plaintiffs' warranty claims—with prejudice—because "since the labels varied over time," plaintiffs' warranty allegations in paragraph 399 occasionally "end up mixing and matching statements that never appeared together." (Mot. at 28.) Such a drastic sanction as Post requests is unwarranted.

First, Post elevates form over substance. By depicting and detailing each products' labels, changes thereto, and the time each was in use (*see* SAC at pp. 44-104), the Complaint provides all the information Post pretends is lacking, as amply demonstrated by Post parsing out the warranty claims as used on different label versions of Honey Bunches of Oats and Raisin Bran (Mot. at 28).

Second, Post makes no showing that this supposed issue affects any products beyond the two examples it gives, yet asks the Court to prejudicially dismiss plaintiffs' warranty claims with respect to all 32 products. While Post chides plaintiffs for supposedly failing "to explain how these statements *could* be combined to form warranties" (*id.* at 29), that is the exact nature of paragraphs 399-400. To the extent Post

1  believes plaintiffs have failed plausibly to do so, it is *Post's* burden to show that the claims should be
2  dismissed, not plaintiffs' burden on a Rule 12 motion to demonstrate that they should remain.

3        Third, even if the Complaint was so unclear as to necessitate further specificity, since it would not be
4  futile to do so, plaintiffs should, rather than having their claims dismissed, be given leave to amend to separate
5  the challenged warranty statements in paragraph 399 both by product and label versions, rather than product
6  only (a requirement Judge Koh, incidentally, did not impose on Mr. Hadley). Here, "justice [would]
7  require[]" such leave, *see* Fed. R. Civ. P. 15(a)(2), because, in comparison to engaging in this ministerial task
8  that would not prejudice Post in the least, if plaintiffs' express and implied warranty claims were dismissed
9  wholesale with prejudice, they and the putative class might lose potential remedies not available under other
10 causes of action. *See Vaccarino v. Midland Nat. Life Ins. Co.*, 2014 WL 572365, at *9-10 (C.D. Cal. Feb. 3,
11 2014) (distinguishing between benefit-of-the-bargain damages available for contract-based claims and out-
12 of-the-pocket damages model available for claims under the UCL).

13       Finally, Post argues that plaintiffs' implied warranty claims should be dismissed pursuant to Cal.
14 Comm. Code § 2316(3)(b), because, "[u]nder California law, a food label that 'discloses the presence of an
15 [allegedly] unhealthy ingredient precludes liability under the implied warranty of merchantability.'" (Mot.
16 at 29 (Post's alteration) (quoting *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 931 (2015)).) This provision
17 applies, however, to implied warranty claims based on a product lacking fitness for ordinary use, *see Backus*,
18 122 F. Supp. 3d at 931; *see also Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1026 (S.D. Cal.
19 2013) (Suit alleged defendants "breached the implied warranty of merchantability, because the Contested
20 Pizzas are 'not safe for human consumption,' their ordinary purpose." (record citation omitted)). Here,
21 plaintiffs allege Post breached the implied warranty of merchantability by "not conform[ing] to the promises
22 and affirmations made on the container or label of the goods" (SAC ¶ 408); plaintiffs "do not rely on the
23 alternate theory for breach of implied warranty; goods not fit for the ordinary purposes for which such goods
24 are used." *Krommenhock*, 255 F. Supp. 3d at 967 n.35 (citing *Jones*, 2016 WL 5210935, at *9).

**CONCLUSION**

26       The Court should deny Post's motion to dismiss. To the extent the Court is inclined to dismiss any
27 claim that could be profitably amended, plaintiffs would respectfully request leave to amend.

28

Dated: December 1, 2017                    Respectfully Submitted,

                                           /s/ Jack Fitzgerald

                                           **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                           JACK FITZGERALD
                                           *jack@jackfitzgeraldlaw.com*
                                           TREVOR M. FLYNN
                                           *trevor@jackfitzgeraldlaw.com*
                                           MELANIE PERSINGER
                                           *melanie@jackfitzgeraldlaw.com*
                                           Hillcrest Professional Building
                                           3636 Fourth Avenue, Suite 202
                                           San Diego, California 92103
                                           Phone: (619) 692-3840
                                           Fax: (619) 362-9555

                                           ***Counsel for Plaintiffs and the Putative Class***