UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEBBIE KROMMENHOCK, et al.,

          Plaintiffs,

      v.

POST FOODS, LLC,

         Defendant.

Case No. 16-cv-04958-WHO

**ORDER ON PENDING MOTION**

Re: Dkt. No. 95

Plaintiffs challenge a variety of health and wellness claims that defendant Post Foods, LLC (Post) makes on its cereal packages, arguing that those claims are rendered false and misleading by the amount of added sugar included in Post's products. On a prior motion, I dismissed with prejudice some of the claims asserted by plaintiffs, dismissed others with leave to amend, and denied the motion as to some. Dkt. No. 88. Plaintiffs filed a Second Amended Complaint (SAC), and Post moves to dismiss again, seeking a second bite at the apple on the un-dismissed claims and arguing that plaintiffs have failed to adequately amend their remaining claims. Dkt. No. 95. For the reasons described below, Post's motion is GRANTED in part, as a few of the challenged statements are preempted nutrient content claims or non-actionable puffery, and DENIED as to the remaining claims.

## BACKGROUND

As detailed in the FAC and alleged again in the SAC, Post is the third largest cereal manufacturer in the United States, and produces, markets, and sells the 34 cereal products at issue in this case.[1] SAC ¶¶ 110, 118. Plaintiffs Debbie Krommenhock and Stephen Hadley are

---

[1] Plaintiffs challenge labeling claims made on 34 different Post cereal products that Post markets and sells under four main cereal lines:
    (1) "Post Great Grains Cereals": Blueberry Morning; Cranberry Almond Crunch; Banana Nut Crunch; Raisins, Dates & Pecans; Crunchy Pecans; Blueberry Pomegranate; Protein

California residents and consumers of Post's cereal products. SAC ¶¶ 4-5, 324, 344. Plaintiffs allege that Post falsely and misleadingly labels its high-sugar cereals[2] with health and wellness statements that "suggest its cereals are healthy food choices" when in fact these cereals contain high amounts of added sugar, "such that their regular consumption is likely to contribute to excess added sugar consumption and, thereby, increased risk for and contraction of chronic disease." *Id*. ¶¶ 113, 114. Plaintiffs allege that Post employs its "longtime practice of intentionally and strategically marketing high-sugar cereals with health and wellness claims that both deceptively suggest the products are healthy, and deceptively omit the dangers of consuming the products" to "artificially and fraudulently inflate" the price and market demand for its high-sugar cereals. *Id*. ¶¶ 312, 336.

As background for their allegations, plaintiffs cite numerous scientific studies and medical publications to show that excess sugar intake is associated with various adverse health conditions and diseases including metabolic syndrome, type 2 diabetes, cardiovascular disease, liver disease, and obesity. SAC ¶¶ 41-104. When purchasing Post's high-sugar cereals, plaintiffs read and relied on Post's deceptive labeling claims suggesting that its cereals were healthy, and as a result, plaintiffs suffered monetary damages and "bodily injury in the form of increased risk of CHD, stroke, and other morbidity." *Id*. ¶¶ 342, 371. One of the main sources of support for plaintiffs is the American Heart Association's recommendation of a daily recommended value ("DRV") of 5 percent total calories from added sugar. *Id*. ¶ 26. According to plaintiffs, sugar in excess of this

---

Blend: Honey, Oats & Seeds; and Protein Blend: and Cinnamon Hazelnut.
(2) "<u>Post Honey Bunches of Oats Cereals</u>": Honey Roasted; With Almonds; Raisin Medley; With Pecan Bunches; With Cinnamon Bunches; With Vanilla Bunches; With Apples & Cinnamon Bunches; With Real Strawberries; Fruit Blends – Banana Blueberry; Fruit Blends – Peach Raspberry; Tropical Blends – Mango Coconut; Whole Grain Honey Crunch; Whole Grain with Vanilla Bunches; Greek Honey Crunch; Greek Mixed Berry; Honey Roasted Granola; Raspberry Granola; Cinnamon Granola; and Protein Granola with Dark Chocolate.
(3) "<u>Post Shredded Wheat</u>": Honey Nut; and Crunch!.
(4) "<u>Single-Variety Post Cereals</u>": Raisin Bran; Bran Flakes; Alpha-Bits; Honeycomb; and Waffle Crisp.
SAC ¶ 121.

[2] Plaintiffs define "high-sugar cereals" as "those that contribute significantly more than 5 percent of calories from sugar, and thus whose regular consumption is likely to contribute to increased risk of illness." SAC ¶ 116.

amount is not safe and impacts the health of the liver among other organs.  *Id.* ¶¶ 23-30.

After describing the dangers of consumption of high amounts of sugar and identifying the challenged marketing claims for each of the 34 products, plaintiffs assert that Post violates California law by making false or misleading statements regarding their products by using the phrases "nutrition," nutritious," "wholesome," "healthy," "no high fructose corn syrup," "less processed," "good for you," "good for your health," "good for your family," "balance," and "balanced" on their packaging.  SAC ¶ 118 & Appendix 1; *see also* SAC ¶¶ 124-233.

On June 1, 2017, I granted in part and denied in part defendant's motion to dismiss plaintiffs' First Amended Complaint.  June 2017 Order, Dkt. No. 88.  I denied it on the basis of preemption under the Federal Food, Drug, and Cosmetic Act ("FDCA"), except to the extent that plaintiffs attempted to rely on FDA-approved nutrient content statements in support of their false and misleading claims.  *Id.* at 22.  I dismissed with prejudice plaintiffs' stand-alone claim based on disclosed protein content.  *Id.* at 29.  I denied it with respect to plaintiffs' CLRA and UCL claims based on fraudulent or misleading health and wellness claims, but required plaintiffs to address the analysis of Judge Koh in a substantially similar case (brought by plaintiff Hadley against Kellogg); specifically the need to disclose how much added sugar is in the challenged products.  *Id.* at 29, n.29.[3]  Finally, I dismissed with leave to amend plaintiffs' warranty claims and injunctive relief claims.  I concluded that the warranty claims were deficient because the FAC did not adequately identify which specific statements on specific products formed the basis of those claims.  *Id.* at 35.  I granted plaintiffs leave to amend to "identify what express warranties they are claiming as to each product" and the "exact representations that allegedly form a warranty for each product."  *Id.*  I also concluded that the FAC did not allege facts supporting standing to seek injunctive relief (*e.g.*, plausible allegations that plaintiffs intended to buy Post products in the future) in a way that was connected with the injunctive relief they sought through this case.  *Id.* at

---

[3] I denied Post's motion to dismiss statements that it contended were mere "puffery" on the grounds that defendant did not adequately raise or brief the issue in a manner in which I could resolve it given the context of the challenged statements.  *Id.* at 33.  However, I noted that defendant could re-raise this argument (if plaintiffs filed a SAC) in a subsequent motion to dismiss.  *Id.*

37.[4]

Plaintiffs subsequently filed their SAC and Post moves again to dismiss. It raises a new argument, based in part on a Ninth Circuit opinion issued after my June 1st Order, in an attempt to knock out the whole action – that plaintiffs are attempting to regulate Post's commercial speech in violation of the First Amendment. Post also re-raises its preemption argument, contending that the use of the term "healthy" is a labeling statement approved by the FDA, and more narrowly, making essentially renewed challenges to a host of alleged "nutrient" content claims. Finally, as allowed by my prior Order, Post makes more targeted challenges to statements it believes are "mere puffery" and not actionable, and asserts that plaintiffs have not cured the deficiencies in their warranty claims identified in my prior Order.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint "does not need detailed factual allegations," but instead only needs enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012). If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

---

[4] I also rejected Post's "primary jurisdiction" argument; asking me to stay the case pending the FDA's completion of rulemaking on added sugar and health and wellness claims. *Id*. at 38.

**DISCUSSION**

**I.    FIRST AMENDMENT AND COMMERCIAL SPEECH**

Post argues that because many of the statements plaintiffs rely on to support their false or misleading argument are, standing alone, true, the statements are absolutely protected by the First Amendment.  Post is correct that plaintiffs do not dispute that many of the discrete statements on the labels at issue are true; *e.g*., contains "No High Fructose Corn Syrup," "4 Wholesome Grains," "nutritious blueberries," or "wholesome Almonds."  However, that does not mean that those statements cannot be found to convey a false or misleading impression concerning the *overall* health or nutrition benefit of the product when read together with the other challenged statements found on the same label and *in light of* the allegedly excessive amount of added sugar in those products.  *See, e.g., Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008) ("[t]he California Supreme Court has recognized that these laws prohibit not only [statements] which are false, but also [statements] which, although true, [are] either actually misleading or which ha[ve] a capacity, likelihood or tendency to deceive or confuse the public."  *Id*. (quotation marks and brackets omitted)).

In making its protected speech argument (presumably to justify bringing it up for the first time on its second motion to dismiss) Post relies heavily on the Ninth Circuit's opinion in *American Beverage Association v. City and County of San Francisco*, 871 F.3d 884 (9th Cir. 2017).  That reliance is misplaced.  Since this motion has been under submission, the Ninth Circuit has voted to rehear the case *en banc*.  Accordingly, the case may not be cited as precedent.  *See American Beverage Association v. City and County of San Francisco*, 880 F.3d 1019, 1020 (9th Cir. 2018).

Even if the panel opinion is considered on its merits, it would not carry Post where it wants to go.  In *American Beverage*, the court struck down an ordinance forcing advertisers of "sugar-sweetened beverages" (SSBs) to include a prominent warning regarding sugar consumption on their advertisements.[5]  Applying a long-line of compelled speech case law, the court struck down

---

[5] The required statement was: "WARNING: Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay. This is a message from the City and County of San

the ordinance as violative of the First Amendment.  The court did so because the compelled disclosure was – under the applicable *Zauderer*[6] framework – "controversial" in that it was "unqualified" and conveyed that the consumption of SSBs contribute to the identified health issues regardless of quantities consumed or other lifestyle choices, and did not more accurately identify the problem as "overconsumption" of SSBs or sugar that "may" contribute to the identified disease conditions.  *Id*. at 895.

The court also found the mandated warning "misleading" because it was not required on other products with equal or greater amounts of sugar, and instead singled-out just one product. *Id*. at 895-96.  In the part of the opinion heavily relied on by Post, the court also found the mandated warning deceptive because "[a]ccording to the FDA, 'added sugars, including sugar-sweetened beverages, are no more likely to cause weight gain in adults than any other source of energy' . . . .  The American Dental Association has similarly cautioned against the 'growing popularity of singling-out sugar-sweetened beverages' because 'the evidence is not yet sufficient to single out any one food or beverage product as a key driver of dental caries.'" *Id*. (internal citations omitted).  Because the warning implied that SSBs were "uniquely or inherently" unhealthy, without scientific support, the warning was misleading under *Zauderer*.

Post argues that because the *American Beverage* opinion recognized that there is a dispute over the health effects of sugar, at least with respect to SSBs, Post's various health and wellness claims are absolutely protected despite the assertion that its products contain excessive amounts of sugar.  In essence, Post is attempting to rewrite decades of consumer protection law to impose a new burden on plaintiffs; namely, for a consumer protection claim to survive, plaintiffs must plead *and prove* at the pleading stage that a defendant's allegedly misleading speech is false "beyond reasonable debate."  Reply at 3.  That is not plaintiffs' burden here, and despite Post's creative efforts, *American Beverage* cannot be stretched that far.[7]

---

Francisco." *Id*. at 888.

[6] *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985).

[7] Post also relies on *American Beverage* to argue that the First Amendment imposes more stringent requirements on attempts to prohibit speech, than on attempts to compel speech (at issue in

At bottom, the question in this case is whether defendant's cereals can be considered healthy or nutritious in light of the allegedly excessive sugar.[8] Because plaintiffs have cited significant evidence linking consumption of excessive sugar to significant health problems, they survive the motion to dismiss. As I noted in ruling on the prior motion to dismiss, at this juncture plaintiffs simply need to plead that some significant evidence supports their theory that overconsumption of cereals with excessive added sugar is unhealthy, which they have done. June 1, 2017 Order at 30.[9] Whether or not Post's cereals are healthy – and whether their health and wellness statements are false or misleading – are questions that *cannot* be resolved at motion to dismiss stage, but may be resolved under a more stringent and evidentiary-based review at

---

*American Beverage*). Mot. at 5; Reply at 6. Post is correct but omits that the more stringent standard applies to efforts to prohibit commercial speech that is not misleading. *American Beverage*, 871 F.3d at 891 (discussing cases). Whether or not Post's speech is misleading when considered in context has not been and cannot be determined at this juncture.

[8] Post argues that whether speech is misleading is a question of law, relying on *Peel v. Attorney Registration and Disciplinary Com'n of Illinois*, 496 U.S. 91, 108 (1990). Reply at 3. *Peel* held that "[w]hether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law" for de novo review. *Id*. at 108. *Peel* does not address the situation here, where speech is alleged to be misleading based on what defendant characterizes as disputed science. That question – whether defendant's cereals are unhealthy because of the level of added sugar – is not a question of law. If they are, then whether Post's statements are misleading may be more akin to a question of law, or as the *American Beverage* court described it, "a constitutional question of fact" to be reviewed de novo. *American Beverage*, 871 F.3d at 895.

[9] This is not, contrary to Post's characterizations, a lack of substantiation case under California's consumer protection statutes. Mot. at 12-13; *see also Kwan v. SanMedica International*, 854 F.3d 1088, 1096 (9th Cir. 2017) (lack of substantiation cases can only be brought by the government). Plaintiffs bear the burden of pleading (and ultimately proving) the falsity or misleading nature of defendant's statements and they have done so (at this stage) by pointing to the studies identified. *See* June 1, 2017 Order at 30; *see also Reed v. NBTY, Inc*., 2014 WL 12284044, at *12 (C.D. Cal., Nov. 18, 2014) (granting summary judgment where plaintiffs "did not met their burden of providing evidence that Defendants' advertising claims are false or misleading."). I acknowledge that in cases alleging that a defendant's product's efficacy statement is false, there is a split in authority on how plaintiffs must prove falsity. *See Korolshteyn v. Costco Wholesale Corporation*, 2017 WL 3622226, at *5 (S.D. Cal., Aug. 23, 2017) (discussing the different approaches). I need not address the issue now, as plaintiffs allege both falsity and misleading statements and as the claims in this case arise in a different context; not whether cereals have health benefits generally – consistent with Post's claims – but whether the added sugar undermines those health benefits or otherwise makes the products unhealthy. I have also made note of Judge Alsup's recent decision in *Becerra v. Coca-Cola Company*, No. C 17-05916 WHA, 2018 WL 1070823 (N.D. Cal., Feb. 27, 2018), but it does not help on this issue. The problem in *Becerra* was plaintiff's overstatement of what the cited studies showed. I will not revisit the issue of the quality or quantity of plaintiffs' scientific evidence on this motion, as that issue was resolved in my prior Order.

1    summary judgment.

2    **II.    HEALTHY CLAIMS PERMITTED BY THE FDA**

3            Post also re-raises the preemption argument that brought it partial but limited success on its

4    prior motion.  It reframes the argument to assert that anytime Post uses the term "healthy" on its

5    labels, it is making an implied nutrient claim that is protected by the FDA under 21 C.F.R. §

6    101.65(d)(2).  That regulation governs "implied nutrient claims and related label statements."  21

7    C.F.R. § 101.65.  Subparagraph (d) "covers labeling claims that are implied nutrient content

8    claims because they: (i) Suggest that a food because of its nutrient content may help consumers

9    maintain healthy dietary practices; and (ii) Are made in connection with an explicit or implicit

10   claim or statement about a nutrient (e.g., 'healthy, contains 3 grams of fat')."  21 C.F.R. §

11   101.65(d).  Subsection 101.65(d)(2) allows a manufacturer "to use the term 'healthy' or related

12   terms (e.g., 'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' 'healthiest,' 'healthily,'

13   and 'healthiness') as an implied nutrient content claim on the label or in labeling of a food that is

14   useful in creating a diet that is consistent" with other FDA-mandated dietary recommendations.

15           As opposed to the argument made on its first motion to dismiss, this time around Post

16   makes a very broad argument that its use of "healthy" anywhere on its packaging constitutes an

17   "implied" nutrient claim even absent a direct or connected reference to a governed nutrient.  But

18   Post provides no authority to stretch the regulation to cover uses of the term "healthy" that are not

19   combined with direct references to a governed nutrient.  The example provided in the regulation

20   shows the required, direct connection; "healthy, contains 3 grams of fat."  That each Post product

21   that uses the term "healthy" or related terms on their labels otherwise meet the nutritional content

22   regulations imposed by the FDA for fat, cholesterol, sodium, and 10% of certain nutrient DRVs

23   does not make the use of "healthy" on its own an implied nutrient claim governed by the FDCA

24   and preempted from attack as false or misleading under California law.[10]

25

26

27

28   _____

     [10] I address Post's narrowed nutrient content claims, ones that actually connect health terms to
     regulated nutrients, below.

8

### III.    TRUE STATEMENTS

#### A.    No High Fructose Corn Syrup

Post argues that plaintiffs cannot attack Post's use of "No High Fructose Corn Syrup" on its labels as false or deceptive, because the products at issue do not contain HFCS.  Post points out that Judge Koh concluded that "No High Fructose Corn Syrup" was not actionable standing on its own because the "statement that the product lacks high fructose corn syrup is not false and does not misrepresent the contents of the product."  *Hadley v. Kellogg Sales Company*, 273 F.Supp.3d 1052, 1081 (N.D. Cal. 2017) (*Hadley II*).  In reaching her conclusion, Judge Koh relied on *Delacruz v. Cytosport, Inc.*, 2012 WL 2563857, at \*8 (N.D. Cal. June 28, 2012).  There, the plaintiff alleged that a statement that a product contains "0g trans fat" was misleading because "the statement distracts consumers from the product's unhealthy fat and saturated fat content."  *Id*. at \*8.  The court rejected that argument and held that "[t]he alleged distraction, however, does not amount to a false statement or misrepresentation."  *Id*.

There are differences between this case and *Hadley II* and *Delacruz*.  Unlike *Delacruz*, the plaintiffs here are not simply challenging a stand-alone claim (there "0g trans fat").  The challenged claim, "No High Fructose Corn Syrup," is only *part* of the basis of the false and misleading claim given its context; *e.g.*, in relation and in addition to the other statements appearing on Post's labels.  In addition, in dismissing the no HFCS claim in *Hadley II*, Judge Koh noted, "[p]laintiff makes no allegations that Defendant's labels state that the lack of high fructose corn syrup in Defendant's products causes Defendant's products to be healthier."  *Hadley II*, 2017 WL 3453391, at \*20.  Here, however, that is what plaintiffs implicitly (if not expressly) allege in light of the location of the no HFCS statements on Post's labels.  This claim will not be dismissed at this juncture.

#### B.    Accurate Identification of Ingredients

Post also argues that plaintiffs cannot rely on a variety of other accurate descriptions of ingredients in support of their false and misleading theories.  Those include that the various products contain "nutritious blueberries" (and other fruits) and "wholesome Almonds" (and other nuts). Mot. at 16 (citing SAC ¶¶ 126b, 130b, 130c, 134b, 134c, 134f, 137b, 137c, 141b, 144b,

9

148b, 148c, 152b, 152c, 152g).

As above, plaintiffs point out that they are not challenging the truth of these statements standing alone, but that in context of additional statements, the statements convey that the products are healthy and nutritious when they are not.[11]  I have previously recognized that plaintiffs' "omissions-type" claims – where otherwise truthful statements convey a misleading impression in light of non-disclosed or non-emphasized information regarding sugar content – survive. June 1, 2017 Order at 17, 29-30; *see also Hadley II*, 273 F.Supp.3d at 1097 ("to the extent that Defendant's products contain statements that misleadingly imply the health benefits of Defendant's products and are not preempted or otherwise non-actionable statements, the Court finds that those statements may give rise to an omission claim.").  I stand by that ruling.

## IV.    NUTRIENT CONTENT AND HEALTH CLAIMS

In my prior Order, I addressed the one "healthy" nutrient content statement expressly challenged by Post in its motion.  I did not reach additional "healthy" nutrient content statements identified in an appendix, but explained that my analysis (dismissing the healthy implied nutrient content claim as to the Honeycomb product) would apply to similar claims. June 1st Order at 20, n. 19. I instructed the parties to meet and confer "to agree to the universe of permitted nutrient claims that are subject to preemption and may not form the basis of plaintiffs' claims going forward." *Id*.  The parties apparently met and conferred, but Post contends the SAC continues to include FDA-permissible nutrient content claims.[12]  In my discussion, I will quote the claims at issue, indented, and then address them underneath the quote.

---

[11] This is not a case where plaintiffs allege that one, true statement regarding an ingredient implies the absence of another.  *See Delacruz v. Cytosport, Inc*., 2012 WL 2563857, at *8 (N.D. Cal., June 28, 2012, No. C 11-3532 CW (rejecting argument that "'0g Trans Fat' statement distracts consumers from the product's unhealthy fat and saturated fat content" because "the alleged distraction [] does not amount to a false statement or misrepresentation and, thus, is not an actionable claim.").   It is more akin to *Jones v. Nutiva, Inc.*, 2017 WL 3617104, at *3 (N.D. Cal., Aug. 23, 2017, No. 16-cv-00711 HSG).  In that case, the court allowed the consumer protection claims to proceed based on the theory that "[d]efendant's product labels—such as characterizing coconut oil as 'nourishing' and a 'superfood'—contribute to the impression that the product is healthy."

[12] As on the prior motion, I will only consider challenges to statements identified in Post's motion, and not challenges raised only in an appendix.

- Why less processed? Quite simply, because it's good for you! We gently crack the whole wheat berry and add a mix of grains to our flakes, while some of the competition add artificial sweeteners and flavors along with isolated fiber to their flakes. We then add in nutritious fruits and nuts and balance them with our grains for a great taste that's irresistible. <u>The result? A crispy, delicious, less processed whole grain cereal that's high in natural fiber</u>. SAC ¶¶ 126c-d, 130d-e, 134d-e, 148e-f, 152e-f; Ohrt Decl., Exs. 2-3, 7-8.[13]

- Why less processed? Quite simply, because it's good for you! We gently steam, roll and bake our whole grains to help maintain the full flavor and nutrition of our flakes, while some of the competition add artificial sweeteners and flavors along with isolated fiber to their flakes. We then add in nutritious fruits and nuts and balance them with our grains for a great taste that's irresistible. <u>The result? A crispy, delicious, less processed whole grain cereal that's high in natural fiber</u>. SAC ¶¶ 137d-e, 141d-e, 144c-d; Ohrt Decl., Exs. 4-6.[14]

Post argues that all statements in these two paragraphs are protected implied nutrient claims by focusing on the underlined text (which the parties agree *is* an implied-nutrient content claim). Mot. at 19. That underlined text, however, is not relied on by plaintiffs and not included in the SAC. Plaintiffs argue that Post cannot protect all of these statements because of the addition, at the end, of a nutrient content claim that they do not challenge ("high in natural fiber"). Post responds that the preemptive-effect of the implied nutrient content language must be applied to essentially all statements on the package, pointing out (in reply) that the FDA itself considers labels as a whole in determining whether permissible implied nutrient content claims are being made. Reply at 9; citing 59 Fed. Reg. 24,232-01.[15]

---

[13] Made on the following products' labels: GG Blueberry Morning, Cranberry Almond Crunch, Banana Nut Crunch, Protein Blends (Honey Oats Seeds, and Cinnamon Hazelnut).

[14] Made on the following products' labels: GG Raisins Dates & Pecans; GG Crunchy Pecans; GG Blueberry Pomegranate.

[15] The FDA guidance relied on by Post, issued in connection with the "healthy" labeling rule in 1994, recognizes that determining "whether the use of the term alone or in a brand name conveys a message about the usefulness of the food in achieving dietary recommendations because of its nutrient content is appropriately made on a case-by-case basis. Simply moving 'healthy' from a claim elsewhere on the label to the brand name does not necessarily change the context in which the claim is made or cause the term not to be an implied claim. For example, the statement 'low in

11

Post stretches its preemption argument too far. As noted above, an implied nutrient content statement is permissible (and therefore protected under federal law) where the statement is that a product is "healthy" because of the presence of a certain level of a nutrient. The use of "healthy" (or a synonym) does not need to be directly adjacent to the discussion of a nutrient to create an implied nutrient content claim, but there must be connection given the words, their placement, and their context. In this instance, the underlined statement is not connected by context to the other representations. It is also not relied on by plaintiffs as an allegedly misleading or false statement, and Post cannot show that the "high in natural fiber" statement turns the *other* alleged health representations (stemming from the use of "less processed," "good for you," lack of artificial sweeteners, and presence of nuts and grain) into protected statements.

- Fiber: Consume fiber. Diets rich in fiber help keep you fuller longer which is important for weight management. Great Grains Protein Blend can help keep you satisfied with the staying power of an <u>excellent source of</u> fiber. SAC ¶¶ 148i, 152j; Ohrt Decl., Exs. 7-8.
- Start your day with the less processed whole grain nutrition of Great Grains Protein Blend to help jumpstart your metabolism. SAC ¶¶ 148i, 152j; Ohrt Decl., Exs. 7-8.
- <u>As a good source of protein</u>, Great Grains Blend can actually help enhance your metabolism! SAC ¶¶ 148i, 152j; Ohrt Decl., Exs. 7-8.[16]

As to the first series of statements regarding fiber, plaintiffs note they do not challenge the "excellent source of fiber" statement. However, this whole paragraph is focused on "fiber" and that the product is an "excellent source" of that fiber. Plaintiffs cannot excise the "excellent source" of fiber, which is integral to the whole paragraph *about fiber*, to avoid preemption as an implied nutrient content statement.

Plaintiffs, however, raise an additional argument about these claims, contending instead

---

fat' on the label of a food with the brand name 'Healthy Bites' would place the term 'healthy' into a nutritional context and subject it to the provisions of section 403(r) of the act. Likewise, the statement 'high in oat bran,' that implies that the food is high in fiber, on the label of a food bearing the term 'healthy' in the brand name would place the term into a nutritional context." 59 Fed. Reg. 24,232-01.

[16] Made on the following products' labels: GG Protein Blends (Honey Oats & Seeds, and Cinnamon Hazelnut).

that the references constitute illegal health claims because they link fiber to weight management. Oppo. at 18, n.5. On this point, Post reiterates the arguments it made on the prior motion to dismiss; that statements regarding metabolism, digestive health, and weight management are not health claims because "disease or health-related condition means damage to an organ, part, structure, or system of the body such that it does not function properly (e.g., cardiovascular disease), or a state of health leading to such dysfunctioning (e.g., hypertension)." 21 C.F.R. § 101.14(a)(5). I did not resolve that issue in the prior Order. June 1, 2017 Order at 24-25. On this round of briefing, plaintiffs do not explain why Post's statements about metabolism, digestive health, or weight management qualify as health claims.

Judge Koh in *Hadley II*, rejected the argument that linking fiber to "digestive health" turned the statement into a health claim. *Hadley II*, 273 F.Supp.3d at 1077. Here too, plaintiffs have failed to show why any mention of digestive health, metabolism, or weight management create health claims, much less unauthorized health claims. Instead, in *Hadley II* Judge Koh analyzed similar phrases linking fiber to "digestive health" as implied nutrient claims and found them preempted to the extent the statements implied something positive or beneficial about the amount of fiber. *Id*. at * 17-18. I will do the same and find the statements in the first bullet point preempted as implied nutrient content claims. .

Regarding the term "less processed," there is no implied nutrient claim connected to this statement. It is not preempted.[17]

As to the final bullet point, the mention of a good source of protein followed immediately by the metabolism comment, makes it a protected implied nutrient claim. Plaintiffs cannot excise the mention of protein from the same sentence, given the context, to argue that this is not an implied nutrient claim.

- 4 grams of fiber: Fiber fills you up, helps keep you satisfied, and is important to help maintain digestive health. SAC ¶¶ 199d, 201d; Ohrt Decl., Exs. 20-21.
- Whole Grains—good for your family, good for your health,

---

[17] And therefore it remains potentially actionable, despite plaintiffs' failure to show that mentions of metabolism turn nutrient-claims into health claims.

good for you. SAC ¶¶ 199c, 201c; Ohrt Decl., Exs. 20-21.

- <u>Over 2/3 of your day's whole grain</u>: Whole grains are an important part of a balanced diet, but on average, Americans eat less than 1 serving of whole grains per day." SAC ¶¶ 199d, 201d; Ohrt Decl., Exs. 20-21.
- Rich in nutrients: Honey Bunches of Oats Whole Grain Cereal is rich in nutrients <u>such as iron and folic acid</u>—important for moms-to-be and growing children." SAC ¶¶ 199d, 201d; Ohrt Decl., Exs. 20-21.[18]

The first challenged statement is an implied nutrient content statement that is protected; plaintiffs cannot ignore the "4 grams of fiber" that is part of that sentence.

As to "whole grains," plaintiffs in opposition drop their reliance on "good for your health" but maintain that the "good for your family" and "good for you" statements are actionable and not protected implied nutrient content claims. I agree.

Finally, the third and fourth statements regarding whole grain and nutrients are protected implied nutrient claims. Plaintiffs cannot ignore the words within these sentences which specifically identify both the nutrients and the amounts.

- Natural source of fiber: <u>Every bowl contains 6 grams of natural fiber from whole grain wheat. Never artificial fiber</u>. SAC ¶ 215h; Ohrt Decl., Ex. 27.
- THE BISCUIT OF BENEFITS / Post Shredded Wheat Honey Nut is made with 100% whole grain wheat, for a natural source of fiber. <u>It is also low in fat and sodium and cholesterol free</u>. So what does this mean in terms of health benefits for you? They are so plentiful, the cereal could be renamed Biscuit of Benefits! SAC ¶ 215k; Ohrt Decl., Ex. 27.
- Digestive Health: Diets rich in fiber have many benefits and are important for maintaining digestive health. SAC ¶ 215m; Ohrt Decl., Ex. 27.
- We make it easy to understand what is in your food—it's just the (or, "we start with the") wholesome goodness of whole grain wheat. SAC ¶ 215de; Ohrt Decl., Ex. 27.[19]

As above, the "natural source of fiber" must be considered in connection with the remainder of the sentence, which makes it clear that it is a protected implied nutrient claim.

Regarding the "Biscuit of Benefits" statements, Post is discussing two separate health

---

[18] Made on the following products' labels: HBO Whole Grain Honey Crunch; HBO Whole Grain Vanilla Bunches.

[19] Made on Shredded Wheat Honey Nut labels.

benefits; fiber and "low to no" fat/sodium/cholesterol levels. While plaintiffs, for obvious reasons, omit the fat/sodium/cholesterol statement, that omission removes critical context from the alleged "benefits" statement. When considered on their own, the first fiber statement and the last two health benefit statements are not implied nutrient content claims because they do not characterize the level of fiber. There is, therefore, no preemption, but defendant will be allowed to argue that the *context* (including the specific statements about fat/sodium/cholesterol) prevents this sentence from being misleading or false.

As to "Digestive Health," plaintiffs have failed to show how this is a regulated (and impermissible) health claim. It is also, however, not an implied nutrient content claim because it does not indicate a specific level of fiber.

Similarly, as to wholesome goodness of whole grain wheat, this is not a regulated nutrient content claim because there is no indication of what level or how much whole grain wheat is included.

- Post Shredded Wheat CRUNCH combines bite sized 100% natural whole grain wheat with granola cluster crunch for delicious heart healthy satisfaction. Goodness you can taste! SAC ¶ 217b; Ohrt Decl., Ex. 28.[20]

As to heart healthy, plaintiffs contend that this is an impermissible health claim. However, as noted in my prior Order, the FDA allows "claims that draw a connection between whole grains and the risk of heart disease." June 1, 2017 Order at 23 & n.23. Plaintiffs do not address what makes this claim different from the ones they withdrew (as allowed by the FDA) on the prior motion. Plaintiffs cannot rely on this statement as an impermissible health claim.

- Fiber is good for digestive health. SAC ¶ 222g; Ohrt Decl., Ex. 29.[21]

As above, this statement has not been shown to be a health claim. However, the mere mention of fiber, with nothing more indicating its presence in *the product at issue* in a specific of generally "healthful" amount, does not create a protected implied nutrient content claim.

_____

[20] Made on Shredded Wheat Crunch! labels.

[21] Made on Raisin Bran labels.

- Dietary Fiber to Help Maintain Digestive Health. SAC ¶ 224a; Ohrt Decl., Ex. 30.
- The Importance of Whole Grain and Fiber. Whole Grains for Your Healthy Lifestyle. Whole grains provide fiber and other important nutrients to keep you healthy. SAC ¶ 224c-e; Ohrt Decl., Ex. 30.
- Getting enough fiber in your diet helps naturally regulate your digestive system. Choose a diet rich in a variety of fiber containing foods such as whole grain cereals, breads, and pastas and fruits and vegetables. SAC ¶ 224f; Ohrt Decl., Ex. 30.
- Fiber to Help with Weight Management. Experts recommend diets rich in fiber to help keep you satisfied while you exercise and cut calories to lose weight. Diets rich in fiber are usually lower in calories and larger in volume than low fiber diets, and require more chewing which helps promote a feeling of fullness and satisfaction after eating.30 SAC ¶ 224gh; Ohrt Decl., Ex. 30.[22]

These series of statements (about Dietary Fiber, Whole Grain and Fiber, getting enough fiber, and fiber to help with weight management) are neither health nor implied nutrient content claims. While plaintiffs have not shown that they are health claims, in context they do not appear to be preempted implied nutrient content claims either. There are no direct statements about the contents of the products at issue, much less an implication that the products at issue contain specific levels (or healthful levels of specific nutrients).

To sum up the discussion in this Section, the nutrient content claims and permitted health claims identified in the preceding six pages *cannot* be relied on as support for plaintiffs' false and misleading theory.[23]

## V.     PUFFFERY

In my prior Order, I rejected Post's attempt to argue that many, if not most, of the challenged statements were mere puffery because Post failed to identify and argue about each challenged statement in its motion. Instead, it identified the challenged statements only in a 77 page chart. Post did not address the context of those statements in light of their specific surrounding text. June 1 2017 Order at 32. I allowed Post to re-raise this issue, following the

---

[22] Made on Bran Flakes labels.

[23] Defendant also challenges plaintiffs' reliance on "Reduced Cancer Risk," SAC ¶ 215n, on Shredded Wheat Honey Nut, but in opposition, plaintiffs' drop their reliance on that statement. Oppo. 16 n.4

United States District Court
Northern District of California

filing of a SAC, "as long as it considers the challenged statements in the context of other related statements on the same labels to show why, in their full context, the statements are mere puffery." *Id*. Post has now done so and each challenged statement will be addressed below.

"Advertisements that amount to 'mere puffery' are not actionable because no reasonable consumer relies on puffery. Factual representations, however, are actionable." *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) (citations omitted). In order to assess whether a statement is mere puffery, it must be considered in the context of the whole label. *See, e.g., Williams*, 552 F.3d at 939 (acknowledging that standing on its own "nutritious" could be considered puffery, but where the "statement certainly contributes, however, to the deceptive context of the packaging as a whole" and "given the context of this statement" motion to dismiss denied); *Coe v. Gen. Mills, Inc.*, No. 15-CV-05112-TEH, 2016 WL 4208287, at *5 (N.D. Cal. Aug. 10, 2016) (considering statements in context of other representations on the package and declining to dismiss "a great start to your day," "start your school day right," and "kick-start your day" as mere puffery); *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016) ("considered in the context of Defendant's entire Virgin Coconut Oil label, this statement could 'certainly contribute [ ] ... to the deceptive context of the package as a whole.'"); *but see Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1317 (E.D. Cal. 2014) (on their own, a "tad" and a "kiss" are "vague and non-specific terms that lack any clear, objective indication of their levels.").

### A. Great Grains: "Less processed nutrition you can see"

Less processed is not, in this context, puffery. On its face, plaintiffs' argument that this implies Great Grains cereals are less processed (and therefore, healthier) than other cereals is plausible and quantifiable.

### B. HBO: "Touch of honey" and "wholesome"

As to "touch of honey," Post notes that in *Hadley II*, Judge Koh concluded that the phrases "just the right amount of sweetness"; "with a Touch of Golden Honey"; "Touch of Sweetness"; and "Drizzled with Honey" were nonactionable puffery because there was no "benchmark for determining whether a product has a 'touch' of honey or sweetness. Instead, that is a subjective determination. A reasonable consumer would not be able to determine what is meant by a 'touch'

17

of golden honey or sweetness, and thus would not expect any specific amount of honey or sweetness." 273 F.Supp.3d at 1087.[24]  Post argues that "touch of honey" here should meet the same fate.  Plaintiffs respond that Judge Koh's distinction between "touch of honey" and "lightly sweetened" is not persuasive, and that when considered in context "touch of honey" implies low sugar content, which is not the case.  Oppo. at 26.  Judge Koh's analysis, however, is persuasive and I will follow it here.

With respect to wholesome, given the context of the statement and plaintiffs arguments, as with the phase "nutritious" considered by the Ninth Circuit in *Williams v. Gerber Products* Co., 552 F.3d 934 (9th Cir. 2008), the "statement certainly contributes, however, to the deceptive context of the packaging as a whole" and will not be dismissed as puffery at this juncture.  *Id*. at 939; *see also Hadley II*, 273 F.Supp.3d at 1083 ("Based on the fact that the terms 'nutritious,' 'essential nutrients,' and 'wholesome' might cause a reasonable consumer to think that a product is healthy, the Court cannot conclude as a matter of law that no reasonable consumer would rely on these statements.").[25]

### C.  Raisin Bran: "where nutritious and delicious live in harmony" and "natural advantage"

As noted above, the Ninth Circuit in *Williams* refused to dismiss "nutritious" as mere puffery when considered in context.  The same applies there.  The fact that nutritious is combined with "delicious," and delicious on its own may be puffery and not independently actionable, does not make this statement as a whole puffery.

Natural advantage, however, is different.  That phrase is untethered to anything concrete.[26] This is not, for example, a case where plaintiffs are alleging the ingredients are not "100% natural."  Natural advantage without context is non-actionable puffery.

---

[24] Although Judge Koh concluded "lightly sweetened" and "lightly frosted" were actionable.  *Id*.

[25] In *Hadley II*, Judge Koh concluded that the addition of exaggerated adjective to "unbelievably nutritious" and "positively nutritious" made those statements puffery.  *Id*. at *23.

[26] This make this phrase unlike the "Great Start" claims at issue in *Coe v. General Mills, Inc*., 2016 WL 4208287, at *1 (N.D. Cal., Aug. 10, 2016, No. 15-CV-05112-TEH).

### D.     Honeycomb: "Nutritious Sweetened Corn Oat Cereal"

Nutritiously sweetened is not mere puffery.  Whether and how the cereal is sweetened is ascertainable and verifiable.

### E.     HBO Whole Grain Products: "Whole Grains—good for your family . . . good for you;"[27] "Rich in nutrients…important for moms-to-be and growing children;" and "Starting your day with a bowl of HBO Whole Grain Cereal is a smart step toward eating a balanced diet."

The phrases "good for your family" and "good for you" when considered in context, imply the same as nutritious and wholesome.  Under the *Williams* analysis, they will not be dismissed at this juncture as puffery.  *See, e.g., Hadley II*, 273 F.Supp.3d at 1085 (refusing to dismiss as puffery "Start with a healthy spoonful," "Invest in your Health invest in yourself," "good for you," and "balanced breakfast").

The "rich in nutrients" and "important" for specific groups statements are likewise not puffery.  Whether the products are rich in nutrients and important for the identified groups are ascertainable, verifiable questions.

Finally, "smart step towards eating a balanced diet" is not puffery.  When considered in context and in light of plaintiffs' claims, it is actionable.  *See, e.g., Coe v. General Mills*, Inc., 2016 WL 4208287, at *5 (N.D. Cal., Aug. 10. 2016) (statements including "a great start to your day," "start your school day right," and "kick-start your day," with "appealing photographic images depicting healthy and successful kids and parents," not puffery in context where the "arguably contribute to the alleged 'deceptive context of the packaging as a whole.'").

### F.     HBO Greek Products: "A touch of wildflower honey;" "Wholesome nutrition;" and "Goodness and taste in every bowl."

The touch of honey statements, as above, are puffery and not actionable.

"Wholesome nutrition," for reasons described above, is not mere puffery.

For the "goodness and taste" comment, taste is obviously puffery and "goodness" falls also over the line into puffery.

---

[27] In their Opposition, plaintiffs drop their reliance on "good for your health" from this sentence. Oppo. at 14 n.3.

### G. HBO Granolas (except dark chocolate): "It's the perfect combination of wholesome goodness and honey-sweet crunch that everyone in the entire family will love."

For the reasons described above, "wholesome goodness" is not puffery given the use of "wholesome."

### H. HBO Protein Granola with Dark Chocolate: "Helps Fuel Your Body with Sustained Energy;" and "just a touch of wildflower honey."

Whether the product actually "fuels" bodies "with sustained energy" is not puffery; the veracity of that phrase is ascertainable and verifiable.[28]

As for "just a touch," that is, consistent with the analysis above, puffery.

### I. Shredded Wheat Honey Nut: "Post Shredded Wheat is one of the simple things you can do to feel good each day."

As an initial matter, it is unclear whether this phrase appears on products other than Shredded Wheat Honey Nut. If it does not, plaintiffs cannot rely on this phrase for the reasons discussed below. In any event, "feel good" is puffery. Absent evidence that "feel good" is conveyed with respect to health or wellness, by itself it cannot be ascertained or verifiable and is puffery.

## VI. SHREDDED WHEAT HONEY NUT

Post also moves to dismiss two specific claims asserted only against Shredded Wheat Honey Nut; the "No Sugar" and "0g of sugars per serving" claims. Post contends these claims – resulting from "printing errors" – must be dismissed from the case because plaintiffs did not purchase that product and those two claims do not appear on any of the products plaintiffs purchased. Plaintiffs respond that these statements are unlawful under the FDA regulations and that plaintiffs should be allow to pursue them under the analysis of *Jones v. Nutiva, Inc.* 2016 WL 5210935, at *5 (N.D. Cal., Sept. 22, 2016, No. 16-CV-00711-HSG) (allowing plaintiffs to challenge claims made on unpurchased products).

The *Jones* court was applying my analysis in *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182 (N.D. Cal., Mar. 13, 2014, No. 13-CV-01196-WHO), where I held that plaintiffs may

---

[28] The addition of "sustained energy" and the context of this statement leads to a different result than in *Coe v. General Mills, Inc.*, 2016 WL 4208287, where the "Fuel Up" claims were found to be "too general" and exaggerated to be actionable. *Id.* at *6.

pursue mislabeling claims for products which they did not purchase as long as the challenged statements were materially similar to statements made on the products they purchased, even if the products themselves or product labels were otherwise different. *Id*. at *8. Here, plaintiffs did not purchase a product bearing the "No Sugar" or "0g of sugars per serving" labels. Resolution of the challenges to those statements would require a distinct and separate analysis from the analyses applicable to the statements made on the products plaintiffs purchased. Therefore, plaintiffs lack standing and may not pursue the "No Sugar" and "0g of sugars per serving" claims on the Shredded Wheat Honey Nut product.

## VII. WARRANTY CLAIMS

In my prior Order, I dismissed plaintiffs' express and implied warranty claims with leave to amend for two reasons. First, it was unclear which of the 90 statements identified in the FAC were being "stitched together" to claim warranties for specific products. June 1, 2017 Order at 34. Second, the FAC did not adequately identify which specific statements on specific products were the basis of their warranty claims. *Id*. at 35. Plaintiffs, if they amended, were required to "identify what express warranties they are claiming as to each product" and the "exact representations that allegedly form a warranty for each product." *Id*.

Post moves to dismiss the amended warranty claims, asserting that plaintiffs have failed to comply with my express directions. However, as to the statements creating a warranty, plaintiffs have now identified each statement for each product at issue, focusing more narrowly on "healthy" "nutritious" and "less processed" statements. SAC ¶¶ 399a. – 399t. Post argues that plaintiffs' pleading is still deficient because plaintiffs fail to allege that the identified statements appeared on specific product labels at the same time. To support its argument, Post points to two examples – on Honey Bunches of Oats and Raisin Bran – and contends that the challenged statements appeared on different labels at different times or appeared on different parts of the cereal boxes. Mot. at 28-30. Other than this time and placement challenge, Post does not attack any specific set of claims to argue that the statements could not form a warranty.[29] Post's challenge to whether

---

[29] Post also reiterates its arguments that plaintiffs cannot rely on true statements, FDA-approved nutrient content claims, or claims that are mere puffery as support for its breach of warranty claim.

certain statements appeared on the same label in the same timeframe and in the same general location is better resolved on a motion for summary judgment, when plaintiffs will need to show how the statements appeared together to substantiate their warranty claims.

**CONCLUSION**

For the foregoing reasons, plaintiffs' claims based on statements that I have identified as being nutrient content claims or mere puffery are DISMISSED without leave to amend. Plaintiffs' claims based on statements on the Shredded Wheat Honey Nut labels are DISMISSED without leave to amend. Defendant's motion to dismiss is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: March 15, 2018

William H. Orrick
United States District Judge

---

Mot. at 29-30. I disagree with respect to the allegedly "true" statements, for the reasons discussed above, but agree that any FDA-approved nutrient content claims or claims that are mere puffery cannot form the basis of a breach of warranty claim.