| | |
|---|---|
| **FAEGRE BAKER DANIELS LLP** <br> TARIFA B. LADDON (SBN 240419) <br> *tarifa.laddon@faegrebd.com* <br> 11766 Wilshire Boulevard, Suite 750 <br> Los Angeles, CA  90025 <br> Telephone:     +1.310.500.2090 <br> Facsimile:     +1.310.500.2091 <br> SARAH L. BREW (admitted pro hac vice) <br> *sarah.brew@faegrebd.com* <br> AARON D. VAN OORT (admitted pro hac vice) <br> *aaron.vanoort@faegrebd.com* <br> COURTNEY A. LAWRENCE (admitted pro hac vice) <br> *courtney.lawrence@faegrebd.com* <br> NICHOLAS J. NELSON (admitted pro hac vice) <br> *nicholas.nelson@faegrebd.com* <br> 90 South Seventh Street, Suite 2200 <br> Minneapolis, MN 55402-3901 <br> Telephone:     +1.612.766.7000 <br> Facsimile:     +1.612.766.1600 <br><br> ***Attorneys for Defendant Post Foods, LLC*** | **THE LAW OFFICES OF JACK FITZGERALD, PC** <br> JACK FITZGERALD (SBN 257370) <br> *jack@jackfitzgeraldlaw.com* <br> TREVOR M. FLYNN (SBN 253362) <br> *trevor@jackfitzgeraldlaw.com* <br> MELANIE PERSINGER (SBN 275423) <br> *melanie@jackfitzgeraldlaw.com* <br> Hillcrest Professional Building <br> 3636 Fourth Avenue, Suite 202 <br> San Diego, CA  92103 <br> Telephone:     +1.619.692.3842 <br> Facsimile:     +1.619.362.9555 <br><br> *Attorneys for Plaintiffs and the Putative Class* |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE KROMMENHOCK and STEPHEN HADLEY, on behalf of themselves, all others similarly situated, and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> POST FOODS, LLC, <br><br> Defendant. | Case No. 3:16-CV-04958-WHO <br><br> Hon. William H. Orrick <br><br><br> **DISCOVERY DISPUTE JOINT SUBMISSION REGARDING PLAINTIFFS' MEDICAL INFORMATION** <br><br><br> Action Filed: August 29, 2016 <br> Trial Date: None Set |

The parties disagree over whether Plaintiffs Debbie Krommenhock and Stephen Hadley ("Plaintiffs") must produce information related to their medical history, conditions, and treatment under Rule 26(b).

**Background**

On April 4, 2018, Defendant Post Foods, LLC ("Post") served Interrogatories #12, 13, and 14 on Plaintiffs, requesting information about whether Plaintiffs have been diagnosed with any of the medical conditions discussed at length in their Second Amended Complaint ("SAC"), any health care providers Plaintiffs have consulted for treatment of such conditions, and any health care providers Plaintiffs have consulted since January 1, 2008. (*See* Ex. A-B, Defendant Post's First Set of Interrogatories to Plaintiff Stephen Hadley and Plaintiff Debbie Krommenhock). Post also served Plaintiffs with Requests for Production #10, 11, and 12, asking for documents related to Plaintiffs' diagnosis of and treatment for any of the conditions discussed in the SAC, and any medical treatment or advice Plaintiffs obtained since January 1, 2008. (*See* Ex. C-D, Defendant Post's First Set of Requests for Production of Documents to Plaintiff Stephen Hadley and Plaintiff Debbie Krommenhock). Post's Requests for Production attached healthcare records authorization for execution and return by Plaintiffs.

On May 21, 2018, Plaintiffs served objections and responses to Post's discovery requests. Plaintiffs objected to Interrogatories #12, 13, and 14 as calling for information not relevant to their claims, information protected by plaintiff's right to privacy, and (for Interrogatory #14) information outside the relevant time period. (*See* Ex. E-F, Plaintiff Stephen Hadley's and Plaintiff Debbie Krommenhock's Objections and Responses to Post's First Set of Interrogatories). Plaintiffs objected to Requests for Production # 10, 11, and 12 as overbroad, unlimited in temporal scope, seeking matters not relevant to the claims or defenses, unduly burdensome, harassing, and seeking information protected by plaintiff's right to privacy. (*See* Ex. G-H, Plaintiff Stephen Hadley's and Plaintiff Debbie Krommenhock's Objections and Responses to Post's First Set of Requests for Production). Plaintiffs did not execute the healthcare records authorizations.

The parties met and conferred on August 7, 2018 by phone for an hour regarding Plaintiffs' responses to Post's discovery requests. The parties were unable to reach a resolution

regarding the Interrogatories and Requests related to medical information. The parties now submit this joint submission in accordance with the Court's Standing Order for Civil Cases.

**Post's Position**

Plaintiffs' own allegations demonstrate that their medical information and records are directly relevant to their claims and allegations in this case. Plaintiffs bring claims for violations of the Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act, as well as claims for breach of warranty. Each of these claims requires Plaintiff to show that Post made a false or misleading representation or omission that caused Plaintiffs injury. *See, e.g.*, *Linares v. Costco*, 2013 WL 5434570, at *2, 4 (S.D. Cal. Mar. 7, 2013); *Rubenstein v. The Gap, Inc.*, 222 Cal. Rptr. 3d 397, 403-407 (Cal. Ct. App. 2017). In their SAC, Plaintiffs allege that Post labeled its cereals as "healthy," and that this representation was false because the added sugar in Post's cereals causes a wide range of diseases, from metabolic syndrome and obesity to dementia and some cancers. (SAC ¶¶ 43-104). Plaintiffs claim that at the time they purchased Post cereals they were unaware of the extent to which consuming high amounts of added sugar increases risk of CHD, stroke, or other morbidity. (*Id.* ¶¶ 333, 362). Plaintiffs further claim that, "as a result of Post's practices," they have "suffered bodily injury in the form of increased risk of CHD, stroke, and other morbidity." (*Id.* ¶¶ 342, 371).

Plaintiffs who allege bodily injury as the result of false advertising place their medical history and condition at issue. Plaintiffs have alleged bodily injury here. (*Id.*) Moreover, Plaintiffs' alleged economic injury hinges on whether Post's cereals cause or increase the risk of disease (and thus are falsely labeled as "healthy"). Multiple consumer fraud cases premised on similar allegations that a product is falsely labeled due to its negative health effects (or failure to provide health benefits) have concluded that plaintiffs' medical records are relevant, discoverable, and not protected by patient-doctor privilege or a right to privacy. *See, e.g.*, *Townsend v. Monster Beverage Corp.*, 2017 WL 4063536 (C.D. Cal. Sept. 13, 2017) (ordering production of plaintiffs' medical records where plaintiffs alleged defendant misleadingly implied its product was safe and that plaintiffs suffered physical harm from consuming the products); *Winans v. Emeritus Corp.*, 2014 WL 3421115 (N.D. Cal. July 14, 2014) (ordering production of plaintiff's medical records

1 where plaintiff alleged defendant misrepresented staffing levels at its residential care facility, thus
2 putting plaintiff at risk of physical injury); *Linares*, 2013 WL 5434570 (ordering production of
3 plaintiff's medical records when plaintiff alleged defendant's product was falsely advertised to
4 improve joint mobility and function). The result in this case should be the same. Plaintiffs allege
5 that Post's cereals are falsely labeled as "healthy" because they cause a broad range of diseases
6 and increased Plaintiffs' risk of these diseases. By making these allegations, Plaintiffs have placed
7 their medical condition directly at issue and waived any doctor-patient privilege or right to
8 privacy.

9       In addition to being directly relevant to the merits of their claims, Plaintiffs' medical
10 information is relevant to class certification issues, including typicality, adequacy, and
11 predominance. *See Plumlee v. Pfizer, Inc.*, 2014 WL 690511, *4 (N.D. Cal. Feb. 21, 2014); *Rikos*
12 *v. Procter & Gamble Co.*, 2013 WL 4714239, *1 (S.D. Ohio Aug. 30, 2013).

13       The Court should therefore order Plaintiffs to respond to Post's Interrogatories #12, 13,
14 and 14, and to produce documents responsive to Post's Requests for Production # 10, 11, and 12.
15 Alternatively, the Court should order more formal briefing on the issue.

16       **Plaintiffs' Position**

17       Post's interrogatory nos. 12-14 and request for production nos. 10-12 are not relevant either
18 to class certification issues or the merits of plaintiffs' claims. Post's "unpersuasive argument appears
19 to stem from a mistaken assumption that the injury that Plaintiff[s] [are] seeking to redress in the
20 instant case is physical in nature." *See Hadley v. Kellogg Sales Co.*, --- F. Supp. 3d ----, 2018 WL
21 3954587, at *10 (N.D. Cal. Aug. 17, 2018). Although plaintiffs allege that "[a]s a result of Post's
22 practices, [they] ha[ve] suffered bodily injury in the form of increased risk of CHD, stroke, and other
23 morbidity" (SAC ¶¶ 342, 371), they seek no redress for this injury, and the case could proceed just
24 as easily without this allegation. Rather, plaintiffs' alleged injury for which they seek recovery is an
25 *economic* one because, in reliance on Post's false and misleading advertisement of its sugary cereals
26 as healthy, plaintiffs "altered [their] positions and suffered damages in an amount equal to the amount
27 [they] paid for the products," and thus "lost money as a result of Post's deceptive claims and practices
28 in that [they] did not receive what [they] paid for when purchasing the Post cereals and granola." (*Id.*

¶¶ 340-41, 369-70; *see also id.* ¶ 411 (prayer for relief seeking "[a]n Order requiring Post to pay restitution to restore funds that may have been acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the UCL, FAL, or CLRA.").) *See also Hadley*, 2018 WL 3954587, at *10 ("[T]he instant action does not seek redress for any physical harms caused by Kellogg's packaging statements. Instead, Plaintiff 'is seeking to recover for the *economic* injury caused by Kellogg representing that its . . . foods are healthy." (citing *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010))).

The only relevance of the ailments mentioned in the Second Amended Complaint is that the challenged health and wellness claims are rendered false and misleading because consumption of excessive sugar, like the amounts present in the challenged Post products, leads to increased risks of those diseases. But whether the challenged claims are false and misleading is evaluated from the standpoint of the *objective* reasonable consumer, and is not based on the individual circumstances of plaintiffs or other class members. *See Hadley*, 2018 WL 3954587, at *10.

In granting class certification in a similar action by Mr. Hadley against Kellogg, the Honorable Lucy H. Koh rejected Kellogg's argument that whether plaintiff and class members suffered physical injury was relevant to whether the challenged claims were false, and that individual issues would predominate because the health impact of consuming the challenged cereals "varies person-by-person, depending on, inter alia, a person's 'age, gender, metabolism, general eating habits, activity level, genetic factors, and other health conditions.'" *Hadley*, 2018 WL 3954587, at *9 (record quotation omitted). Judge Koh found Kellogg's argument "not well-taken" because "under the FAL, CLRA, and the 'fraudulent' prong of the UCL, the issue of whether a particular statement on a product's packaging or labeling is false, deceptive, or materially misleading is evaluated according to an objective 'reasonable consumer' standard." *Id.* at *10 (citations omitted). Thus, the court held that "contrary to Kellogg's view, the actual physical 'impact' of the products at issue on any 'specific [class member's] health' has *no bearing* on whether the challenged health statements are false, deceptive, or materially misleading under the FAL, CLRA, or the 'fraudulent' prong of the UCL." *Id.* (record citation omitted and emphasis added).

The same is true here—"the falsity or deceptiveness of the challenged health statements on the products at issue will be determined based *solely* on whether the health statements are likely to deceive or mislead a hypothetical *reasonable consumer* in light of the amount of added sugar that [Post] puts into those products." *See id.* (first emphasis added). Accordingly, "there [is] no need to inquire into each class member's 'unique [medical] circumstances.'" *See id.* (record citation omitted).

Even if plaintiffs' medical information and records were relevant, though, Post's requests are grossly overbroad. For example, Interrogatory Nos. 12-13 and Requests for Production Nos. 10-11 have no temporal limit, and thus ask about diagnosis of the listed ailments (sometimes as many as seventeen) over the course of plaintiffs' entire lifetimes. (Ex. A at 6; Ex. B at 6; Ex. C at 6; Ex. D at 6.) Interrogatory No. 14 asks plaintiffs to "IDENTIFY each HEALTH CARE PROVIDER[1] with whom [they] have consulted for *any* health reason since January 1, 2008." (Ex. A at 7; Ex. B at 7 (emphasis added).) This request thus covers health issues that have absolutely no relation to the action including such things as appointments with optometrists, psychiatrists, podiatrists, dermatologists, and gynecologists. Request for Production No. 12 is even broader, seeking "ALL DOCUMENTS and records evidencing medical and health treatment or advice from HEALTH CARE PROVIDERS [plaintiffs] identified in response to Interrogatories 12-14 since January 1, 2008," thus covering all documents relating to "*any* health reason." In essence, Post seeks the entirety of plaintiffs' medical histories and records—some of the most personal and sensitive information possible to obtain—since 2008, four years before the class period began, without limitation.

Health and medical information is among the most personal and sensitive data that exists, and the law grants strong protections for it. This highly sensitive information Post seeks is neither relevant nor proportional to the needs of the case, especially given the overbreadth of the requests, which renders them pure fishing expeditions. Accordingly, the Court should sustain Plaintiffs' objections and deny Post's motion.

---

[1] Defined as "any physician, physician's assistant, nurse, nutritionist, other medical staff or professional, or any alternative medicine provider, who provides or supports patient health" and "also includes any hospital, clinic, health system, or physician group that provides patient health care, and any technical or medical staff or professionals employed by or practicing at or for that organization." (*E.g.*, Ex. A at 2.) Given the inclusion of "alternative medicine provider," these requests also cover things like chiropractors, naturopaths, and acupuncturists.

DATED: August 27, 2018                **FAEGRE BAKER DANIELS LLP**

*/s/ Sarah L. Brew*
SARAH L. BREW
Attorneys for Defendant Post Foods, LLC


DATED: August 27, 2018                **LAW OFFICE OF JACK FITZGERALD PC**

*/s/ Jack Fitzgerald*
JACK FITZGERALD
Attorneys for Plaintiffs


### **FILER'S ATTESTATION**

Pursuant to L.R. 5-4.3.4(a)(2)(i), I, Sarah L. Brew, attest that all other signatories listed, and on whose behalf this document is submitted, concur in the document's content and have authorized its filing and the placement of their electronic signatures above.


*/s/ Sarah L. Brew*
Sarah L. Brew