**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

DEBBIE KROMMENHOCK and STEPHEN HADLEY, on behalf of themselves, all others similarly situated, and the general public,

     Plaintiffs,

       v.

POST FOODS LLC,

     Defendant.

Case No. 3:16-cv-04958-WHO (JSC)

**PLAINTIFFS' OPPOSITION TO POST'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 163)**

Judge:     Hon. William H. Orrick
Date:      October 9, 2019, 2:00 p.m.
Location:   Courtroom 2, 17th Floor

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

BACKGROUND ................................................................................................................ 1

    I.      THE CLASS'S CLAIMS ....................................................................................... 1

          A.      Post's Harmful Behavior ............................................................................ 1

          B.      Plaintiffs' Injuries ..................................................................................... 4

          C.      The Class's Causes of Action .................................................................... 4

          D.      Relevant Law ............................................................................................. 5

               1.      The Reasonable Consumer Test for False Advertising ................... 5

               2.      The UCL's "Unfair" Prong ............................................................. 9

               3.      The UCL's "Unlawful" Prong ........................................................ 9

    II.     POST'S MISCHARACTERIZATION OF THE CLASS'S CLAIMS &
          CALIFORNIA LAW ............................................................................................ 9

          A.      Post Persistently Mischaracterizes the Class's Claims ............................. 9

          B.      Post Relies on Invented Legal Standards Bearing no Relation to California
               Law ........................................................................................................... 11

ARGUMENT ..................................................................................................................... 13

    I.      THE FIRST AMENDMENT DOES NOT PROTECT POST'S MISLEADING
          SPEECH ............................................................................................................... 13

    II.     THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT ON
          PREEMPTION ..................................................................................................... 16

i

A.      Some of Post's Preemption Arguments are Procedurally Improper and Legally Barred ................................................................................................ 16

B.      Post's Remaining Preemption Arguments are Wrong on the Merits ........................ 18

III.    PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF FOR THE CLASS ............................................................................................................................. 21

IV.     PLAINTIFFS HAVE ADDUCED SUFFICIENT EVIDENCE TO SUPPORT COMPENSATORY AND PUNITIVE DAMAGES CLAIMS ........................................... 23

A.      Compensatory Damages ........................................................................................... 23

B.      Punitive Damages ..................................................................................................... 23

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) ................................................................................................ 14

*Arizona v. California*,
460 U.S. 605 (1983) ................................................................................................ 17

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ................................................................................... 23

*Ass'n of Nat'l Advertisers, Inc. v. Lungren*,
809 F. Supp. 747 (N.D. Cal. 1992) ................................................................... 15, 16

*Astiana v. Hain Celestial Group, Inc,.*,
783 F.3d 753 (9th Cir. 2015) ................................................................................... 17

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ..................................................................................... 8

*Bolger v. Youngs Drug Pros. Corp.*,
463 U.S. 60 (1983) .................................................................................................. 15

*Brockey v. Moore*,
107 Cal. App. 4th 86 (2003) ...................................................................................... 9

*Bruton v. Gerber Prods. Co.*,
703 Fed. Appx. 468 (9th Cir. 2017) .......................................................................... 9

*Cason v. Federated Life Ins. Co.*,
2011 WL 2462567 (N.D. Cal. June 20, 2011) ......................................................... 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................ 13

*Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) .......................................................................................... 15, 16

*Chabner v. United of Omaha Life Ins. Co.*,
225 F.3d 1042 (9th Cir. 2000) ................................................................................... 6

*Chapman v. Skype, Inc.*,
220 Cal. App. 4th 217 (2013) .................................................................................... 6

*Chavez v. Bank of Am. Corp.*,
2012 WL 1594272 (N.D. Cal. May 4, 2012) ........................................................... 17

iii

*Clemens v. v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2018) ................................................................................. 9

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (2006) ......................................................................... 7, 8, 9

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ................................................................................................. 8

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ....................................................................... 21, 22, 23

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ............................................................................... 6

*Davis v. United States*,
   2016 WL 6997168 (N.D. Cal. Sept. 6, 2016) ...................................................... 17

*Day v. AT & T Corp.*,
   63 Cal. App. 4th 325 (1998) ......................................................................... 6, 8, 12

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ................................................................................. 7, 8

*Estate of McNeil v. Freestylemx.com, Inc.*,
   177 F. Supp. 3d 1260 (S.D. Cal. 2016) ............................................................ 24, 25

*Fletcher v. Sec. Pac. Nat'l Bank*,
   23 Cal. 3d 442 (1979) ............................................................................................. 6, 8

*Folex Golf Indus., Inc. v. O-TA Precision Indus. Co., Ltd.*,
   700 Fed. Appx. 738 (9th Cir. 2017) ................................................................... 17

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012) ......................................................................... 7

*Gutierrez v. Carmax Auto Superstores Cal.*,
   19 Cal. App. 5th 1234 (2018) ............................................................................... 12

*Hadley v. Kellogg Sales Co.*,
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................ 5, 9

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2017) ............................................................... 8

*Hawkins v. Kroger Co.*,
   2019 WL 1506845 (S.D. Cal. Apr. 4, 2019) ...................................................... 9

iv

*Henderson v. Gruma Corp.*,
   2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)....................................................23

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011)..............................................................7, 8

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013).................................................................7

*Holley v. Techtronic Indus. N. Am., Inc.*,
   2018 WL 6460276 (N.D. Cal. Dec. 10, 2018) ..............................................14

*In re NJOY, Inc. Consumer Class Action Litig.*,
   2015 WL 12732461 (C.D. Cal. May 27, 2015) .............................................11

*In re Nuveen Funds/City of Alameda Sec. Litig.*,
   2011 WL 3890227 (N.D. Cal. Sept. 1, 2011)................................................16

*In re Rainbow Magazine, Inc.*,
   77 F.3d 278 (9th Cir. 1996)...................................................................17

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)....................................................................6, 7, 8

*Ingalls v. Spotify USA, Inc.*,
   2017 WL 3021037 (N.D. Cal. July 17, 2017) ..............................................23

*Interstate Fire & Cas. Co. v. Archdiocese of Portland in Or.*,
   899 F. Supp. 498 (D. Or. 1995)..............................................................17

*Jefferson v. Chase Home Fin.*,
   2008 WL 1883484 (N.D. Cal. Dec. 14, 2007) ...............................................9

*Jeffries v. Wood*,
   114 F.3d 1484 (9th Cir. 1997).................................................................17

*Johnson & Johnson v. Super. Ct.*,
   192 Cal. App. 4th 757 (2011).................................................................24

*Johnson v. California*,
   543 U.S. 499 (2005) ...........................................................................23

*Johnson v. Gen. Mills, Inc.*,
   2011 WL 13225105 (C.D. Cal. Mar. 3, 2011) ..............................................12

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002)....................................................................6, 15

*Korolshteyn v. Costco Wholesale Corp.*,
 755 Fed. Appx. 725 (9th Cir. 2019) ................................................................. 13

*Kraus v. Trinity Mgmt. Servs., Inc.*,
 23 Cal. 4th 116 (2000) ....................................................................................... 6

*Krommenhock v. Post Foods, LLC*,
 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) ............................... 13, 15, 18, 19

*Krommenhock v. Post Foods, LLC*,
 255 F. Supp. 3d 938 (N.D. Cal. 2017) .............................................................. 10

*Kwikset Corp. v. Super. Ct.*,
 51 Cal. 4th 310 (2011) ..................................................................................... 6, 7

*Lavie v. Procter & Gamble Co.*,
 105 Cal. App. 4th 496 (2003) .......................................................................... 7, 8

*Lilly v. Jamba Juice Co.*,
 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .................................................. 22

*Lovette v. Zale Del., Inc.*,
 2019 WL 2492503 (S.D. Cal. June 13, 2019) ..................................................... 6

*Lozano v. AT&T Wireless Servs., Inc.*,
 504 F.3d 718 (9th Cir. 2007) .............................................................................. 9

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) .......................................................................................... 13

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
 97 Cal. App. 4th 1282 (2002) ............................................................................. 8

*Merrifield v. Miner's Inn Rest. & Lounge*,
 2006 WL 4285241 (E.D. Cal. Sept. 25, 2006) .................................................. 24

*Miller v. Ghirardelli Chocolate Co.*,
 912 F. Supp. 2d 861 (N.D. Cal. 2012) .............................................................. 12

*Mullins v. Premier Nutrition Corp.*,
 178 F. Supp. 3d 867 (N.D. Cal. 2016) ................................................................ 8

*Musacchio v. United States*,
 136 S. Ct. 709 (2016) ........................................................................................ 17

*Ogden v. Bumble Bee Foods, LLC*,
 2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ......................................................... 20

*Pac. Gas & Elec. Co. v. Super. Ct.*,
  24 Cal. App. 5th 1150 (2018) ............................................................................ 24

*Park v. Cytodyne Techs, Inc.*,
  2003 WL 21283814 (Cal. Super. Ct. May 30, 2003) ........................................... 7

*Peel v. Attorney Registration & Disciplinary Comm'n of Ill.*,
  496 U.S. 91 (1990) ...................................................................................... 14, 15

*People v. Super. Ct.*,
  34 Cal. App. 5th 376, 392 (2019) ...................................................................... 14

*Pepper v. United States*,
  562 U.S. 476 (2011) ........................................................................................... 17

*Pulaski Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ............................................................................... 6

*Richardson v. L'Oreal USA, Inc.*,
  991 F. Supp. 2d 181 (D.D.C. 2013) ................................................................... 22

*Ries v. Ariz. Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ....................................................................... 22

*Roybal v. Equifax*,
  2008 WL 4532447 (E.D. Cal. 2008) ................................................................... 25

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ............................................................................. 9

*Sonner v. Schwabe N. Am., Inc.*,
  911 F.3d 989 (9th Cir. 2018) ............................................................................. 13

*State Farm v. Super. Ct.*,
  45 Cal. App. 4th 1093 (1996) .............................................................................. 7

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ............................................................................. 8

*Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) .............................................................................. 7

*Thomas v. Bible*,
  983 F.2d 152 (9th Cir. 1993) ............................................................................. 17

*United States v. Alexander*,
  106 F.3d 874 (9th Cir. 1997) ............................................................................. 17

*United States v. Phillips*,
  367 F.3d 846 (9th Cir. 2004) ................................................................................ 17

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) ............................................................................................. 14

*Vasquez v. Super. Ct.*,
  4 Cal. 3d 800 (1971) .............................................................................................. 8

*Waller v. Hewlett-Packard Co.*,
  295 F.R.D. 472 (S.D. Cal. Sept. 29, 2013) ........................................................... 7

*Weidenhamer v. Expedia, Inc.*,
  2015 WL 1292978 (W.D. Wash. Mar. 23, 2015) ................................................. 22

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................ 6, 7, 12, 22

*Willis v. Buffalo Pumps Inc.*,
  34 F. Supp. 3d 1117 (S.D. Cal. 2014) ............................................................ 24, 25

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) ................................................................... 9


**Rules**

N.D. Cal. Civ. L.R. 7-9(b) ......................................................................................... 16


**Statutes**

21 U.S.C. § 343(a) ................................................................................................. 4, 5

21 U.S.C. § 343(r) ..................................................................................................... 20

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ................................................................... 4

Cal. Bus. & Prof. Code § 17200 ................................................................................. 5

Cal. Bus. & Prof. Code § 17203 ................................................................................. 7

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ................................................................... 4

Cal. Bus. & Prof. Code § 17500 ................................................................................. 5

Cal. Civ. Code §§ 1750 *et seq.* .................................................................................. 5

Cal. Civ. Code § 1760 .................................................................................................................24

Cal. Civ. Code § 1770(a) ...............................................................................................................6

Cal. Civ. Code § 1780 .................................................................................................................23

Cal. Civ. Code § 3294 .......................................................................................................23, 24, 25

Cal. Com. Code § 2313 ..................................................................................................................5

Cal. Com. Code § 2314 ..................................................................................................................5

**Regulations**

21 C.F.R. § 1.21 ............................................................................................................................5

21 C.F.R. § 1.21(a) .....................................................................................................................4, 5

21 C.F.R. § 101.13(b) ..................................................................................................................19

21 C.F.R. § 101.14 .......................................................................................................................20

21 C.F.R. § 1.14(d)(2) ...................................................................................................................4

21 C.F.R. § 1.14(e) ........................................................................................................................4

**INTRODUCTION**

It is easier for a camel to pass through the eye of a needle than for the Class to prove its case—at least according to Post, which has coined as a mantra for its June 28 filings the assertion that "Plaintiffs are advancing an unusual theory that is unusually difficult to prove." Mot. at 1; *accord id.* at 5 ("We frankly do not see how any damages expert *could* thread this eye of the needle."). But each of Post's motions, and its opposition to class certification, rely on its persistent mischaracterization of the Class's claims and invocation of erroneous legal standards. Properly characterized in the context of actual California law, there is overwhelming evidence the Class's claims should be certified and tried.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Where Plaintiffs have offered evidence on which a factfinder could determine the challenged Post labeling claims were likely to mislead a reasonable consumer, were more harmful than informative, or violated federal food labeling regulations, is Post's First Amendment argument premature and impertinent since, if a jury finds the challenged claims are misleading, they will enjoy no First Amendment protection, whereas if a jury finds the challenged claims are not misleading, Post will have won on the merits?

2.      Are Post's preemption arguments procedurally barred and wrong on the merits?

3.      Where Plaintiffs and the Class may be harmed in the future, do Plaintiffs have standing to seek injunctive relief?

4.      Do Plaintiffs offer competent evidence of compensatory and punitive damages?

**BACKGROUND**

**I.      THE CLASS'S CLAIMS**

**A.      Post's Harmful Behavior**

Plaintiffs allege Post "us[ed] various labeling statements to suggest its cereals are healthy food choices," even though "[m]any . . . contain high amounts of sugar, such that their regular consumption is likely to contribute to excess added sugar consumption, and thereby, increased risk for and contraction of disease." Dkt. No. 92, Second Am. Compl. ("SAC") ¶¶ 113-14. Thus, Post "actively maintains a policy and practice of labeling high-sugar cereals[,] those that contribute significantly more than 5% of calories from added sugar . . . [,] with various health and wellness claims that suggest the cereals are healthy, when they are not." *Id.* ¶ 116; *see also id.* ¶¶ 124-233. "This strategy is based on sophisticated consumer marketing

1

research," for "the purpose of increasing the prices, sales, and market share of its cereals." *Id.* ¶ 314.

Plaintiffs allege Post's use of health and wellness claims comprised *six* harmful practices.

***First***, Post "directly represents" its cereals "are healthy," *id.* ¶ 236, "affirmatively misrepresent[ing] that some high-sugar cereals are 'healthy,' 'nutritious,' or 'wholesome[.]'" *Id.* at 104.[1] Consumers interpret these words "to mean the same thing as, or to be euphemisms for, 'healthy,'" and "Post . . . intends consumers to interpret 'nutritious' and 'wholesome' to mean healthy." *Id.* ¶¶ 234-35; *see also id.* ¶ 236(a)-(r) (identifying claims using this language). One statement challenged on Great Grains also uses the phrase "good for you." *See, e.g.*, *id.* ¶ 126(c). These statements "are false, or at least highly misleading, because, due to their high added sugar content, consumption of these cereals is decidedly *unhealthy*," *id.* ¶ 237.

***Second***, "Post affirmatively misrepresents that consuming" some cereals "will promote bodily health, prevention of disease, or weight loss," *id.* at 107; *see also id.* ¶¶ 239, 243-44, which is "false, or at least highly misleading because the cereals contain . . . more than 300% [of] the [American Heart Association's] recommended maximum of 5% of calories from added sugar." *Id.* ¶ 240. "[R]egular consumption" is thus "highly likely to contribute to excess added sugar consumption, and thereby increased risk for, and actual contraction of, chronic disease," and "is likely to promote weight *gain*, not weight loss." *Id.* ¶¶ 241-42.

***Third***, "even when not stating so expressly, Post strongly suggests its high-sugar cereals are healthy[.]" *Id.* at 108. That is, "[b]esides direct, express claims that some of its cereals are 'healthy,' 'nutritious,' and 'wholesome,' Post also conveys this same idea through suggestion" *id.* ¶ 245, for example:

• "'[C]alling out' the supposedly beneficial aspects of its cereals, and particularly their whole (or multi) grain, fiber, or 'real' ingredient content," *id.* ¶ 246.

• Using the Whole Grains Council stamp "to bolster claims that foods are supposedly healthy, by suggesting that an independent, perhaps governmental authority has determined a food is healthy or otherwise sanctioned its health and wellness claims" when, in reality, the Whole Grains Council is an industry group, *id.* ¶¶ 249-50; *see also id.* ¶¶ 252-53.

• "[L]everag[ing] consumer confusion to obscure the dangers of the added sugar in its cereals" by "representing that many of its high-sugar cereals contain 'No High Fructose Corn Syrup,'" *id.* at 110.

---

[1] Header capitalization disregarded throughout.

"[B]y touting the absence of that ingredient," Post "deceptively suggest[s] that its cereals are healthier because HFCS is absent." *Id.* ¶ 254. "This strategy leverages consumer confusion over the relative dangers of different forms of sugar, inasmuch as many consumers incorrectly believe that HFCS is a substantially more dangerous form of added sugar than other forms." *Id.* ¶ 255. "In reality, added sugar in virtually any form . . . has essentially the same detrimental health effects . . . . Thus, even if literally true, Post's 'no high fructose corn syrup' representations are highly misleading." *Id.* ¶ 257.

• "[M]arket[ing] some of its high-sugar cereals as 'simple,' 'whole foods' that are 'less processed[.]'" *Id.* at 111. Although Post uses these descriptions "[t]o capitalize on increasing consumer preference for fresh, unprocessed, 'whole' foods," *id.* ¶ 258, the "statements are false or at least highly misleading" because the cereals "are sweetened with . . . highly-processed forms of sugar," *id.* ¶ 262. And "because these statements suggest [the] cereals are healthy food options, the statements are false, or at least highly misleading, due to the cereals' high added sugar content." *Id.* ¶ 263.

• "[U]s[ing] certain words and phrases to falsely suggest [the cereals'] sugar content is low," which is "false and misleading because the products' added sugar content is high, not low." *Id.* ¶¶ 265, 267. Moreover, "[s]uch statements are likely to confuse even consumers aware of health issues regarding sugar, because they suggest any such health issues, in any event, do not pertain to these cereals," *id.*

**Fourth**, "Post deceptively omits, intentionally distracts from, and otherwise downplays the cereals' high added sugar content[.]" *Id.* at 111. That is because, "[i]n marketing its cereals with health and wellness claims, Post regularly and intentionally omits material information regarding the amount and dangers of the added sugar in its products." *Id.* ¶ 264; *see also id.* ¶ 247 ("In emphasizing the supposedly beneficial . . . aspects of its cereals, Post necessarily and intentionally also de-emphasizes, hides, obscures, and otherwise omits material information regarding the products' detrimental nutrient content . . . ."). Plaintiffs allege:

> Post is under a duty to disclose this information to consumers because (a) Post is revealing *some* information about its products—enough to suggest they are healthy—without revealing additional material information, (b) Post's deceptive omissions concern human health, and specifically the detrimental health consequences of consuming its products, (c) Post was, and is, in a superior position to know of the dangers presented by the sugars in its cereals, as it is a global food company whose business depends upon food science and policy, and (d) Post actively concealed material facts not known to plaintiff and the class.

*Id.* ¶ 264.

**Fifth**, "Post immorally markets some high-sugar cereals to children, who are the most vulnerable to the dangers of excess added sugar consumption," *id.* at 112, including "egregiously market[ing]" Waffle Crisp "to children even though [it] contain[ed] artificial trans fat," *id.* at 114; *see generally id.* ¶¶ 268-282.

**Sixth**, "Post violates FDA and state food labeling regulations[.]" *Id.* at 115. These violations encompass two types. First, Plaintiffs allege Post violates several statutory provisions or regulations that prevent false, misleading, or incomplete labeling claims. *See id.* ¶¶ 288-91 (alleging violations of 21 U.S.C. § 343(a) and 21 C.F.R. §§ 1.21(a) & 101.14(d)(2)). Second, Plaintiffs allege some statements are unauthorized health claims, violating 21 C.F.R. § 101.14(e). *See* SAC ¶¶ 293-94, 297-98.

Finally, Plaintiffs allege these practices are "especially harmful because consumers generally eat more than one serving of cereal at a time," *id.* at 133, and so "Post high-sugar cereals are especially dangerous to the health of those who regularly consume them," *id.* ¶ 323; *see generally id.* ¶¶ 317-23.

## B.   Plaintiffs' Injuries

Plaintiffs relied on the challenged health and wellness claims in deciding to purchase Post's cereals and granolas. *See id.* ¶¶ 324-30, 343-59; Dkt. No. 148, Hadley Decl. ¶¶ 2-15; Dkt. No. 160-1, Krommenhock Decl. ¶¶ 2-5. They were "seeking products that were healthy to consume," and "[a]t the time of purchase" were "unaware of the extent to which consuming high amounts of added sugar in any form affects blood cholesterol levels and increases risk of [cardiovascular heart disease], stroke, and other morbidity, or what amount of sugar might have such an effect." *See* SAC ¶¶ 331, 333, 360, 362. Plaintiffs "would not have purchased Post cereals and granola if [they] knew that their labeling claims were false and misleading in that the products were not as healthy as represented." *Id.* ¶¶ 335, 364; *compare id.* ¶¶ 337, 366 (Plaintiffs "paid more for the [products], and would only have been willing to pay less, or unwilling to purchase them at all, absent the misleading labeling statements complained of herein."). The products "would have cost less absent the misleading health and wellness claims," and "[i]f Post were enjoined from making the misleading claims, the market demand and price for its cereals and granola would drop, as it has been artificially and fraudulently inflated due to Post's use of deceptive health and wellness labeling." *Id.* ¶ 336.

## C.   The Class's Causes of Action

Plaintiffs bring class claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), False Advertising Law, *id.* §§ 17500 *et seq.* ("FAL"), and Consumers Legal

Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), as well as for breach of express and implied warranties pursuant to Cal. Com. Code §§ 2313 & 2314. *See* SAC ¶¶ 381-410.

They allege Post's affirmative misrepresentations and deceptive omissions are actionable under the FAL, CLRA, and UCL's fraudulent prong because they are likely to mislead a reasonable consumer, *see id.* ¶¶ 383, 387, 392; and under the UCL's "unfair" prong because, *inter alia*, Post's harmful behavior was "not outweighed by benefits to consumers or competition," *id.* ¶ 395.

Plaintiffs allege *all* of Post's misrepresentations and omissions are actionable under the UCL's "unlawful" prong because they violate 21 U.S.C. § 343(a) and 21 C.F.R. §§ 1.21(a) & 101.14(d)(2). *See* SAC ¶¶ 287-291, 396(c)-(d). However, because these provisions prohibit false, misleading, or incomplete labeling claims, despite being separately actionable under the UCL's unlawful prong, they effectively merge with the Class's false advertising claims. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017) ["*Hadley I*"] ("[T]o the extent that the Court found above that Plaintiff's CLRA, FAL, and fraudulent prong UCL causes of action survive, Plaintiff's unlawful prong UCL cause of action under [21 U.S.C.] § 343(a) also survives."); *see also id.* at 1097-98 ("[T]he Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss Plaintiff's unlawful prong UCL cause of action based on [21 C.F.R.] § 1.21 to the same extent that the Court granted and denied Defendant's Motion to Dismiss Plaintiff's CLRA, FAL, and fraudulent prong UCL causes of action."). Plaintiffs also allege that some challenged claims violate the UCL's "unlawful" prong because they are authorized health claims. *See* SAC ¶¶ 293-94, 297-98, 396(c)-(d).

Finally, Plaintiffs allege certain challenged claims breached Post's express and implied warranties because they constituted "affirmations of fact or promises" or "descriptions of goods" that the products were healthy, but the products did not conform to those promises, affirmations, and descriptions. *See* SAC ¶¶ 398-400, 405, 408. Like the Class's claims under the UCL's "unlawful" prong, though nominally separate, these causes of action merge with the Class's false advertising claims. *See, e.g., Hadley I*, 273 F. Supp. 3d at 1093.

### D.   Relevant Law

#### 1.   The Reasonable Consumer Test for False Advertising

The UCL's "fraudulent" prong prohibits "any . . . fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200. The FAL prohibits "untrue or misleading" statements in the course of business. *Id.* § 17500. The language of these statutes is "broad" and "sweeping" to "protect both consumers and competitors

5

by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011) ["*Kwikset*"]; *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) ("[S]ection 17200 defines 'unfair competition' very broadly, to include anything that can properly be called a business practice and that at the same time is forbidden by law." (internal quotation marks and citation omitted)); *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126 (2000). The CLRA similarly prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer," Cal. Civ. Code § 1770(a). The Legislature has directed that the CLRA be "liberally construed and applied to promote its underlying purpose," which is "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection," *id.* § 1760. "The substantive right extended to the public" by these statutes is "protection from fraud, deceit, and unlawful conduct," *see In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009) (internal quotation marks and citation omitted). They accordingly "focus on the defendant's conduct, rather than the plaintiff's damages, in service of the[ir] larger purpose of protecting the general public against unscrupulous business practices," *see id.* at 312 (citing *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 453 (1979)).

"[T]he false advertising standard under the UCL, FAL and CLRA is the same." *Lovette v. Zale Del., Inc.*, 2019 WL 2492503, at *2 (S.D. Cal. June 13, 2019) (citing *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 230 (2013)). "It is necessary only to demonstrate that consumers 'are likely to be deceived.'" *Id.* (quoting *Tobacco II Cases*, 46 Cal. 4th at 312); *accord Pulaski Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) ["*Pulaski*"]. "[T]hese laws 'prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public,'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002)). "Consequently, even '[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable,'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (quoting *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998)).

Whether a representation or omission is deceptive is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population," *Lavie v. Procter &*

*Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003), is "not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture," *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006), and is not "expected to look beyond misleading representations on the front of the box to discover the truth from the . . . small print," *Williams*, 552 F.3d at 939. The reasonable consumer "need not be 'exceptionally acute and sophisticated' and might not 'necessarily be wary or suspicious of advertising claims.'" *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (quotation omitted).

Satisfying the reasonable consumer test "requires more than a mere possibility that [defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie*, 105 Cal. App. 4th at 496). "Materiality is part of the 'reasonable consumer' standard . . . in that reasonable consumers are not deceived by immaterial claims." *Park v. Cytodyne Techs, Inc.*, 2003 WL 21283814, at *2 (Cal. Super. Ct. May 30, 2003) ; *cf. Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012) ("damages may result 'through the materiality' of an alleged omission" (citation omitted)). A "representation is 'material' . . . if a reasonable consumer would attach importance to it *or* if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (quoting *Kwikset*, 51 Cal. 4th at 333).

But the reasonable consumer test does *not* require proof of actual deception. "[T]he language of section 17203 with respect to those entitled to restitution—'to restore to any person in interest any money or property, real or personal, which *may have been acquired*' [] by means of the unfair practice—is patently less stringent than the standing requirement for the class representative," *Tobacco II Cases*, 46 Cal. 4th at 320 (quoting Cal. Bus. & Prof. Code § 17203 and adding emphasis). "This language, construed in light of the 'concern that wrongdoers not retain the benefits of their misconduct' has led courts repeatedly and consistently to hold that relief under the UCL is available without individualized proof of deception, reliance, and injury." *Id.* (citations omitted); *accord State Farm v. Super. Ct.*, 45 Cal. App. 4th 1093, 1105 (1996) (UCL violation "can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage"); *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 476 (S.D. Cal. 2013) ("there are no reliance and causation elements to a UCL claim in the first instance"); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010) ("once the named plaintiff" shows injury, "no further individualized proof of

injury or causation is required"). Similarly, because of "the UCL's focus on the defendant's conduct, rather than the plaintiff's damages" to "protect[ ] the general public against unscrupulous business practices," none of the elements of a common law fraud claim—actual falsity, knowledge of falsity, reliance, and damages—"'are required to state a claim for injunctive relief' under the UCL," *Tobacco II Cases*, 46 Cal. 4th at 312 (quoting *Day*, 63 Cal. App. 4th at 332, and citing *Fletcher*, 23 Cal. 3d at 453).

Thus, "California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury," *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.13 (9th Cir. 2011), *overruled on other grounds*, *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). And although the CLRA "requires that plaintiffs . . . show not only that a defendant's conduct was deceptive but that the deception caused them harm," at trial, this element "'is commonly proved [classwide] more likely than not by materiality,'" *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1292 (2002) (quoting *Blackie v. Barrack*, 524 F.2d 891, 907 n.2 (9th Cir. 1975)), since, "if . . . material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class," *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 814 (1971).

In sum, "the reasonable consumer standard requires a *probability* 'that a significant portion of the general consuming public . . . acting reasonably in the circumstances, *could* be misled.'" *Ebner*, 838 F.3d at 965 (emphasis added) (quoting *Lavie*, 105 Cal. App. 4th at 496); *see also Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003)  (a representation is misleading if it presents "a *likelihood* of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." (emphasis added)); *Hill*, 195 Cal. App. 4th at 1304 (the reasonable consumer test "requires a plaintiff to show *potential* deception of consumers acting reasonably in the circumstances" (emphasis added)).

Accordingly, "California courts have explicitly 'rejected the view that a plaintiff must produce extrinsic evidence such as expert testimony or consumer surveys to prevail on a claim that the public is likely to be misled by a representation under the FAL, CLRA, or UCL.'" *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2017) (internal quotation marks and alterations omitted) (quoting *Colgan*, 135 Cal. App. 4th at 681-82). "[W]hile '[s]urveys and expert testimony regarding consumer assumptions and expectations may be offered,' they are not required to prove consumers held a false belief communicated by the advertisements." *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 890 (N.D. Cal. 2016) (quoting

8

*Clemens v. v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2018)). Instead, "the primary evidence in a false advertising case is the advertising itself," *Brockey*, 107 Cal. App. 4th at 100, and "[t]he 'misleading character' of a given representation 'appears on applying its words to the facts.'" *Jefferson v. Chase Home Fin.*, 2008 WL 1883484, at *17 (N.D. Cal. Dec. 14, 2007) (quoting *Colgan*, 135 Cal. App. 4th at 679).

### 2. The UCL's "Unfair" Prong

"While California law is unclear on how exactly to define unfairness . . . the Ninth Circuit has instructed that the court must 'balanc[e] the harm to the consumer against the utility of the defendant's practice.'" *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018) (Orrick, J.) (quoting *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735-36 (9th Cir. 2007)); *see also Hawkins v. Kroger Co.*, 2019 WL 1506845, at *5 (S.D. Cal. Apr. 4, 2019) (practice unfair if is "substantially injurious" and "outweighs the utility to the defendant" (citing *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir. 2010))).

### 3. The UCL's "Unlawful" Prong

Deception is not an element of claims under the UCL's "unlawful" prong, as the Class need only show Post violated the law. *See Bruton v. Gerber Prods. Co.*, 703 Fed. Appx. 468, 472 (9th Cir. 2017) ("reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation"); *Hadley I*, 273 F. Supp. 3d at 1098 (defendant's "argument that Plaintiff was required to plead a violation of the reasonable consumer test rather than a 'bare technical violation' fails").

## II. POST'S MISCHARACTERIZATION OF THE CLASS'S CLAIMS & CALIFORNIA LAW

### A. Post Persistently Mischaracterizes the Class's Claims

Throughout its June 28 briefing, Post paints a picture of the Class's claims favorable to Post in its supposed complexity, but divorced from factual and legal reality. *See*, *e.g.*, Mot. at 1-2; *see* Dkt. No. 162, Opp. to Mot. for Class Cert. ("Class Cert. Opp.") at 1 (same). The Class's theory is actually much simpler than Post describes: it alleges that Post's labeling claims stating expressly or suggesting that its cereals are healthy are likely to mislead a reasonable consumer because the cereals have a high proportion of sugar, and the scientific evidence demonstrates that foods high in sugar are unhealthy. In sum, "applying [Post cereals'] words to the [scientific] facts," the "'misleading character' of a given representation 'appears,'" *Jefferson*, 2008 WL 1883484, at *17 (quotation omitted). Post's self-serving description of the case suffers many flaws. First, it lumps every challenged claim together, pretending they are all literally true statements about

the cereal's ingredients, wholly ignoring the express health claims Plaintiffs challenge. Post repeatedly refers to what it calls "truthful" statements about its cereals' "ingredients *and attributes*." On page 14, it provides a table identifying what it characterizes as an "incomplete" list of "cereal attributes consumers care about." Mot. at 14. The table identifies some statements that tout ingredients or nutrients, though the statements never identify *only* an ingredient or nutrient, always using a modifier to characterize it as healthy (e.g., "*wholesome* Almonds," "Iron and Zinc *for Growth*"). Many statements Post identifies as "truthful" "ingredient" claims actually represent that the cereal is healthy without even mentioning its ingredients or nutrients (e.g., "wholesome start to your day!," "Makes a Smart Snack!," "WHOLESOME NUTRITION," "Nutritious," "Healthy," "Heart Healthy," "it's good for you!"). *See id.*; *compare Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 946-48 (N.D. Cal. 2017) (Orrick, J.) (unlike Post, parsing Plaintiffs' claims in detail).

Nevertheless, Post argues—incredibly—that "this Court should hold that Post's challenged statements were not misleading . . . because they conveyed . . . truthful information about *specific* ingredients and nutritional attributes . . . ***and did not make a claim about the healthiness of the cereal as a whole***." Mot. at 13 (bolded emphasis added). Post further contradicts itself when it argues the challenged claims "communicated a . . . viewpoint . . . that nutrient-dense cereal containing some added sugar can be part of a healthy diet." *Id.* at 11. Post's argument that the challenged statements are truthful, not misleading, and constitutionally-protected because they do not communicate anything about health, *and* constitutionally protected because they communicate Post's view that the cereals are healthy, is literal nonsense.

Contrary to Post's claims, Plaintiffs do not, and have never "admit[ted] the [challenged] statements were true." Mot. at 1 (citing nothing); *see also* Class Cert. Opp., Dkt. No. 162, at 3 ("Plaintiffs concede that the express statements they challenge were all true." (citing nothing)). The example Post repeatedly provides—"4 Wholesome Grains" on Honey Bunches of Oats (HBO)—is illustrative. Plaintiffs agree HBO contains grains, and agree in principle that the grains it contains could, in some forms, be "wholesome," *i.e.*, healthy. But Plaintiffs' evidence shows that the processing of the whole grains used in HBO has ruined their fiber matrices, substantially reducing their benefits. Accordingly, Plaintiffs wholly *disagree* that HBO contains "4 Wholesome Grains." The same is true of claims like "Fiber is good for digestive health." That might be true, in some sense, as an abstract proposition; but when used to describe Post's cereal it is misleading—not only because it implies the cereal as a whole is healthy—but also because the fiber in Post's

cereals is *not* good for digestive health, since its processing has ruined the fiber's matrix.

Post makes the self-serving assertion that plaintiffs have "admitted" that "all" of the challenged claims are "true" throughout its June 28 briefing, but the assertion is almost always unsupported. *See* Class Cert. Opp. at 1 (citing nothing); Dkt. No. 172 at 1 (same). Nevertheless, in one place, Post asserts that Plaintiffs "broadly acknowledged that they are not claiming ***any*** of the challenged statements were false," and that Plaintiffs and Dr. Lustig "specifically agreed with the truth of many of the particular statements," *see* Mot. at 4-5 & nn.14-22 (emphasis in original). The Court should reject these contentions. Much of the testimony on which Post relies does not say what Post claims. *See*, *e.g.*, Mot. at 4 (citing Krommenhock Tr. 260:21-24 ("no reason to dispute" accuracy of "10g" in Whole Grains Council stamp). Moreover, Post mostly cites responses of these lay witnesses to questions that objectionably called for legal conclusions. The Court should sustain these objections because Post's questioning falsely suggested a legal difference between "truthful/misleading" statements and "false/misleading" statements. Finally, even in the face of Post's attempt to confuse them, Plaintiffs *rejected* its suggestion that literally true statements cannot be misleading. *See* Ex. 13, Krommenhock Tr. 289:4-290:17 (Testifying, "[t]he overall conclusion to looking at this package is that this is a healthful and wholesome product that is good for you," and Post's counsel responding, "Okay. But you can't point me to any specific statement on this package that is false.").

**B.    Post Relies on Invented Legal Standards Bearing no Relation to California Law**

Post contends that "the Court must guard against two analytical errors that Plaintiffs invite," Mot. at 15. But it is Post which errs in arguing that (1) "it is irrelevant whether the 'context' itself—meaning the other, unchallenged statements—"conveyed the message that Plaintiffs challenge," Mot. at 15, and (2) "it is not enough . . . to prove that consumers understood Post to say that the cereal contained a certain ingredient, . . . then drew their own conclusion that the cereal was healthy because it contained [that ingredient]," but instead "must prove [ ] that *Post conveyed the message, through the specific challenged statements*, that the cereal was healthy as a whole," *id.* at 16. These assertions are contrary to settled law.

First, Post's argument rejects the premise that context can and does inform the message consumers receive from challenged statements. But the law is clear: "the court *must* determine whether a reasonable consumer could find the advertisement misleading *by considering it as a whole*." *In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *13 (C.D. Cal. May 27, 2015) (emphasis added) (citing *Johnson*

11

*v. Gen. Mills, Inc.*, 2011 WL 13225105, at *2 (C.D. Cal. Mar. 3, 2011)). So "assessing a label's deceptiveness *requires* evaluating label statements *in context*," *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012) (emphasis added, citing *Williams*, 552 F.3d at 938); *see also id.* ("[A]ssessing a label's deceptiveness requires evaluating label statements in context. . . . Reading this label as a whole . . . the court cannot say, as a matter of law, that no reasonable consumer would be deceived by the baking chips label." (internal quotation marks and citations omitted)). Context is thus not only relevant, it is crucial. Post argues "it is irrelevant whether the 'context' itself . . . conveyed the [health] message," but that "[c]ontext matters" where "it ma[k]e[s] the challenged statements convey," a health message. *See* Mot. at 15-16. This is a distinction without a difference. Determining what "the 'context' itself . . . conveyed," is often a pre-curser to whether that same context "ma[k]e[s] the challenged statements convey" a message.

Second, in arguing that Plaintiffs' claims fail if consumers "drew their own conclusion that the cereal was healthy" from reading the challenged statements, *see* Mot. at 15-16, Post rejects the premise that statements are actionable, even if there is some element of truth, where they convey a misleading impression. Contrary to Post's assertion, a statement is actionable under the FAL, CLRA, and UCL if it is "false"; if "although true, [it] is actually misleading"; or if it "has a capacity . . . to deceive or confuse," *see Williams*, 552 F.3d at 938. While "statements can have an implied meaning," this "simply refers to the fact that the meaning of some statements must be ascertained through a chain of inferences." *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1267 (2018) (Poochigian, J., concurring in part and dissenting in part). A "statement" that is "[i]dentif[ied] as misleading" through "inferential steps" is still a "misrepresentation[]," *see id.* Thus, a "perfectly true statement" is actionable when "couched in a manner that is likely to mislead or deceive the consumer," *Day*, 63 Cal. App. 4th at 332-33.

Post also argues Plaintiffs "fail[]" to "prove [ ] that Post conveyed" a health message "through the specific challenged statements," Mot. at 16 (emphasis omitted), because there are supposedly "three problems" with the testimony of the Class's marketing expert, Bruce Silverman: (1) he "made no attempt to isolate the message conveyed just by the challenged statements," *id.*;[2] (2) he "failed" to "show that the statements claimed the cereal was healthy as a whole," rather than "that the particular ingredients were

_____

[2] This argument also relies on Dr. Van Liere's study, *see* Mot. at 16, but that testimony is irrelevant and unreliable and should therefore be excluded. *See* Pls.' Mot. to Exclude Testimony of Dr. Kent D. Van Liere.

12

healthy," *id.* at 16-17; and (3) he "has no factual basis for any opinion, since he conducted no consumer research," *id.* at 17. Plaintiffs address these erroneous arguments in opposition to Post's *Daubert* motion.

## ARGUMENT

## I.   THE FIRST AMENDMENT DOES NOT PROTECT POST'S MISLEADING SPEECH

"[A]ny . . . matter on which the plaintiff bears the burden of proof" must be "supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In previously moving to dismiss Plaintiffs' First Amended Complaint, Post "attempt[ed] to rewrite decades of consumer protection law to impose a new burden on plaintiffs; namely, for a consumer protection claim to survive, plaintiffs must plead *and prove* at the pleading stage that a defendant's allegedly misleading speech is false 'beyond reasonable debate.'" *Krommenhock v. Post Foods, LLC*, 2018 WL 1335867, at *4 (N.D. Cal. Mar. 15, 2018). The Court, of course, recognized "[t]hat is not plaintiffs' burden," which at that stage was instead "to plead that some significant evidence supports their theory that overconsumption of cereals with excessive added sugar is unhealthy," *id.*

Although the case has advanced, Plaintiffs still have no burden to *prove* their case at this juncture. "Under California law, the plaintiff has the burden of proving by a preponderance of the evidence that a challenged advertisement is false or misleading under the UCL and CLRA." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) (citations omitted). "Therefore, to defeat summary judgment, [Plaintiffs] need only produce evidence of a genuine dispute of material fact that could satisfy the preponderance burden at trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986)). "If the plaintiff's evidence suggests that the products do not work as advertised and the defendant's evidence suggests the opposite, there is a genuine dispute of material fact for the fact-finder to decide." *Id.* at 993; *accord Korolshteyn v. Costco Wholesale Corp.*, 755 Fed. Appx. 725, 726 (9th Cir. 2019) ("[T]he district court erred in granting summary judgment by failing to apply the appropriate substantive evidentiary standard of a preponderance to claims brought under California's consumer protection laws." (citing *Sonner*, 911 F.3d at 992)).

At the Rule 12 stage, the Court held that "[w]hether or not Post's speech is misleading when considered in context has not and cannot be determined at this juncture," as the parties had not yet adduced any evidence. *See Krommenhock*, 2018 WL 1335867, at *4 n.7. Evidence has now been developed, but on summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Thus, unless Post can demonstrate "the absence of a genuine issue of material fact with respect to an essential element of" Plaintiffs' claims," *see Holley v. Techtronic Indus. N. Am., Inc.*, 2018 WL 6460276, at *1 (N.D. Cal. Dec. 10, 2018) (Orrick, J.), the Court's Rule 12 holding remains true today.

It is thus simple to see why Post's First Amendment argument is still legally wrong. Post does not dispute that false or misleading commercial speech enjoys no First Amendment protection. It does not dispute that California law deems even literally true speech misleading if it has the capacity to deceive, and that this does not offend the Constitution. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) (First Amendment does not interfere with a "State's dealing effectively" with "deceptive or misleading" commercial speech, even when it is "not provably false, or even wholly false"); *cf. People v. Super. Ct.*, 34 Cal. App. 5th 376, 392, 406 n.18 (2019) (in holding that Cal. Bus. & Prof. Code § 17501 does not violate the First Amendment, assuming § 17500 does not). If Plaintiffs win this case, they will have shown that the challenged statements are false or misleading. Any such statements enjoy no First Amendment protection. If, on the other hand, Post shows the challenged claims are *not* deceptive, it will have won the case on the merits, and any First Amendment protection will be redundant. *But that requires a trial* (unless Post can demonstrate there is no dispute of material fact on Plaintiffs' claims, which it cannot). That is why Post's motion relies entirely on cases involving inapposite *prior legislative restraints*, embarrassingly devoid of any First Amendment jurisprudence in the false advertising context (as will its reply inevitably be).

Post does not argue that Plaintiffs fail to raise a genuine dispute of material fact, nor could it; to the contrary, it characterizes the relevant science as a "debate." *See* Mot. at 17-18; Dkt. No. 165, Not. of Constitutional Question ("NCQ") at 1 ("The health effects of added sugar are a matter of ongoing scientific and public debate."). Moreover, as detailed in Plaintiffs' Opposition to Post's Motion to Exclude the Testimony of Robert Lustig and Michael Greger, and in their Motion to Exclude the Testimony of Roger A. Clemens, Post's claims about what "mainstream science" says are entirely wrong.

Perhaps recognizing it is not otherwise entitled to summary judgment, Post cites *Peel v. Attorney Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 108 (1990), asserting that, while "determining whether a statement was misleading may be a fact question for purposes of the merits, it is a legal question under the First Amendment." Mot. at 12. Were the Court to conduct a trial on the pre-trial record and make

a merits determination now, the evidence overwhelmingly favors the Class. But the First Amendment is not an end-run around the well-established summary judgment standards. The Court already held that "*Peel* does not address the situation here, where speech is alleged to be misleading based on what defendant characterizes as disputed science. That question—whether defendant's cereals are unhealthy because of the level of added sugar—is *not* a question of law." *Krommenhock*, 2018 WL 1335867, at *4 n.8 (emphasis added). Moreover, *Peel*, a case about an Illinois statute on attorneys' identifying themselves as "certified" or "specialists," is distinguishable: as "members of a respect profession," lawyers—unlike food companies—are "presum[ed] . . . unlikely to engage in practices that deceive their clients," 496 U.S. at 109.

Post says it is "raising a question regarding the *as-applied* constitutionality of California's" consumer protection statutes. NCQ at 1 (emphasis added). But those statutes' remedies have *not yet been applied* against Post's statements; and they will only be applied if a jury determines Post's speech is misleading. Thus, as Plaintiffs explained in 2018, "[b]ecause misleading speech enjoys no protection, in a false advertising case, this 'first step' naturally collapses into the merits[.]" Dkt. No. 102 at 4.

Finally, Post's argument that its labels represent a "constitutionally protected viewpoint . . . that nutrient-dense cereal containing some added sugar can be part of a healthy diet," Mot. at 11, "falsely assumes that speech cannot properly be categorized as commercial speech if it relates to a matter of significant public interest or controversy." *See Kasky*, 27 Cal. 4th at 964. "Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues." *Ass'n of Nat'l Advertisers, Inc. v. Lungren*, 809 F. Supp. 747, 753 (N.D. Cal. 1992) (quoting *Bolger v. Youngs Drug Pros. Corp.*, 463 U.S. 60, 68 (1983)). Otherwise, "any advertisement which linked a product to a current public debate would perforce be entitled to broad constitutional protection: But many, if not most, products may be tied to public concerns," and advertisers still "enjoy the full panoply of First Amendment protections for their direct comments on public issues. There is no reason for providing similar constitutional protection when such statements are made only in the context of commercial transactions." *Id.* (quoting *Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 n.5 (1980)).

Even to the extent the challenged statements highlight arguably beneficial nutrients, this does not immunize Post against liability. "[T]he [U.S. Supreme] Court has explained that whatever concern the First Amendment has for protecting commercial speech is rooted in the informational function of advertising.

Therefore, the Constitution does not prevent prohibitions on commercial messages which are 'more likely to deceive the public than to inform it.'" *Id.* at 745-55 (quoting *Central Hudson*, 447 U.S. at 563 (citation omitted)). Here, Dr. Lustig opines that "the excess added sugar" in Post's cereals "is more detrimental to health than the fiber and/or vitamins can be considered beneficial." Dkt. No. 144 ¶ 5(a). And Dr. Greger opines that, "[a]lthough the Accused Products contain some fiber and vitamins, the modest benefits these nutrients may provide is significantly outweighed by the detrimental health effects of their substantial added sugar." Dkt. No. 145 at 5. Thus, Plaintiffs have adduced evidence on which a factfinder could determine that the challenged claims—even to the extent some are literally true—are more likely to deceive the public than to provide a reasonable consumer information truly important to their health. Post does not and could not argue that summary judgment in its favor is warranted under the reasonable consumer standard. Since a trial will be necessary to determine whether the challenged statements are misleading, the Court should once again reject Post's attempt to leverage the First Amendment to evade a merits trial and judgment.

## II.  THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT ON PREEMPTION

### A.  Some of Post's Preemption Arguments are Procedurally Improper and Legally Barred

Post argues that six challenged statements are preempted nutrient content claims. Mot. at 19-20. But it acknowledges the Court already ruled on three statements, *id.* at 20, and "requests that the Court reconsider [its] conclusions," *id.* at 21. Post's request runs afoul of both Local Civil Rule 7-9, which prescribes a specific process that involves far more than an offhand request in a brief, and law of the case doctrine.

Because Post "has made no attempt to show that reconsideration is appropriate under the standards laid out in Civil Local Rule 7–9," its request should be denied. *See Cason v. Federated Life Ins. Co.*, 2011 WL 2462567, at *1 (N.D. Cal. June 20, 2011). For example, entitlement to reconsideration depends upon "[t]he moving party . . . specifically show[ing] reasonable diligence in bringing the motion," N.D. Cal. Civ. L.R. 7-9(b). The Order that Post asks the Court to reconsider was issued in March 2018, more than 15 months ago. Thus, Post could not likely show reasonable diligence. *See*, *e.g.*, *In re Nuveen Funds/City of Alameda Sec. Litig.*, 2011 WL 3890227, at *2 (N.D. Cal. Sept. 1, 2011) ("over two months" delay was not reasonable diligence). This is particularly true given the advanced procedural posture. Discovery is closed; Plaintiffs invested time and money to test one of the claims for damages ("Fiber is good for digestive health" on Raisin Bran); expert reports have been exchanged; and Post has moved for summary judgment.

16

Moreover, NLEA preemption is a "purely legal question," *Astiana v. Hain Celestial Group, Inc,.*, 783 F.3d 753, 757 (9th Cir. 2015). Law of the case doctrine "provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)). The doctrine "precludes a court from reconsidering an issue that it has already resolved," meaning "[i]ssues that a district court determines during pretrial motions become law of the case." *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004) (footnotes omitted); *accord Chavez v. Bank of Am. Corp.*, 2012 WL 1594272, at *5 (N.D. Cal. May 4, 2012) ("The law of the case doctrine is . . . designed to protect both the court and the litigants from repeated reargument of issues already decided." (citation omitted)).

A court's discretion not to apply the doctrine "is limited." *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993) (citation omitted)), *overruled on other grounds*, 677 F.3d 383 (9th Cir. 2012). "[A] district court is 'precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case,' unless an exception to depart from the law of the case exists." *Folex Golf Indus., Inc. v. O-TA Precision Indus. Co., Ltd.*, 700 Fed. Appx. 738, 738 (9th Cir. 2017) (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion.")). Under this standard, "[t]he prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Jeffries*, 114 F.3d at 1489 (internal quotation marks omitted) (quoting *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir. 1996) (quotation omitted)).

Ignoring the doctrine, Post fails to show grounds for departure. Accordingly, the Court should hold that its prior Order finding not preempted challenges to the Bran Flakes and Raisin Bran statements Post identifies, is law of the case. *See Davis v. United States*, 2016 WL 6997168, at *6 (N.D. Cal. Sept. 6, 2016) (applying doctrine where party "made no showing that the law of the case should not be followed, and [did] not present[] any new evidence or argue[] that there has been any change in law"); *Interstate Fire & Cas. Co. v. Archdiocese of Portland in Or.*, 899 F. Supp. 498, 502 (D. Or. 1995) (applying doctrine where "[i]t would be prejudicial and unfair" to allow party to "submit evidence five years later" of its new position).

**B.      Post's Remaining Preemption Arguments are Wrong on the Merits**

As it did in moving to dismiss Plaintiffs' SAC, "Post stretches its preemption argument too far." *See Krommenhock*, 2018 WL 1335867, at *7. While the Court held some challenged statements could not be "excise[d]" from preempted statements," *id.*, at *8, Post overstates the holding, insisting categorically that "Plaintiffs 'cannot excise' nutrient content claims that appear in the same sentence or paragraph as the challenged phrases," *see* Mot. at 20. Instead, the Court individually evaluated each claim, finding some were preempted, and some not. For example, the Court held "Digestive Health" is "not an implied nutrient content claim because it does not indicate a specific level of fiber," despite that it was followed by the phrase, "Diets rich in fiber have many benefits and are important for maintaining digestive health," thereby making a distinction between a phrase within the same sentence. *See Krommenhock*, 2018 WL 1335867, at *9. The Court also reasoned that "the mere mention of fiber . . . does not create a protected implied nutrient content claim." *Id.*, at *10. Thus, the Court did not, as Post contends, announce any kind of bright-line rule.

**"WHOLESOME NUTRITION"**[3] and **"It's the perfect combination of wholesome goodness and honey-sweet crunch that everyone in your entire family will love."**[4] Post originally argued these claims were "mere puffery," Dkt. No. 116 at 19, because "[n]either th[ese] true statements nor anything else in the context provides any criterion for . . . quantifying 'wholesomeness,' 'nutrition,' or 'goodness,'" Dkt. No. 95 at 25 (HBO Greek claim); *id.* at 25 (HBO Granola claim). The Court, however, upheld Plaintiffs' challenges to these claims. *Krommenhock*, 2018 WL 1335867, at *12. Post now does a one-eighty, arguing it is actually "the context that shows them to be protected," Mot. at 20 (citation omitted). But just as "Post [could] not show that the 'high in natural fiber' statement" on Great Grains "turns the *other* alleged health representations" in the same paragraph "into protected statements," *see Krommenhock*, 2018 WL 1335867, at *7, it also cannot show that analogous protein, fiber, and whole grain statements on HBO Greek and HBO

---

[3] Post adds a colon between "WHOLESOME NUTRITION" and the protein and whole grain statement, *see* Mot. at 20, making it appear part of a single statement. However, these two statements are on separate lines, in a different size, typeface, and color, with no colon separating them.

[4] This claim is part of following paragraph:

> Bring your bunch together, anytime anywhere with delicious Honey Bunches of Oats granola. With 3g of fiber and 34g whole grain per serving, it's the perfect combination of wholesome goodness and honey-sweet crunch that everyone in your family will love.

18

Granola, *see* Mot. at 20 (citing Pls.' Exs. 9, 11, 13, 15, 19), turn the "wholesome nutrition" or "wholesome goodness" representations into protected statements. Further, in response to Post's argument that "[no]thing else in the context provides any criterion for . . . quantifying . . . 'goodness,'" Dkt. No. 95 at 25, the Court dismissed as puffery Plaintiffs' challenge to "GOODNESS AND TASTE IN EVERY BOWL," *Krommenhock*, 2018 WL 1335867, at *12. That claim appears on



HBO Greek directly below, and within the same proximity to the protein and whole grain statements Post asserts transforms "WHOLESOME NUTRITION" into a preempted nutrient content claim. If the accompanying information does not provide sufficient context for quantifying the "goodness" statement, it must also provide insufficient context to transform the "wholesome nutrition" statement into a nutrient content claim.

**"ALPHA-BITS IS A GOOD SOURCE OF NUTRIENTS THAT ARE BUILDING BLOCKS FOR YOUR CHILD'S DEVELOPING BRAIN."** This challenged statement appears on the side panel, *above and apart from* three different colored boxes that call out different nutrients, and goes far beyond stating that Alpha-Bits is a good source of those nutrients. The claim Plaintiffs challenge is really that Alpha-Bits "contains building blocks for your child's developing brain," which is not "[a] claim that expressly or implicitly characterizes the level of a nutrient," 21 C.F.R. § 101.13(b). Nor does representing that Alpha-Bits helps build developing *brains* "[s]uggest that because of [Alpha-Bits'] nutrient content [it] may help consumers



*maintain healthy dietary practices*," *see* Mot. at 19 (emphasis added, quotation omitted). This is instead a structure function claim. *See* Ex. 14, Fearns1e Tr. at 59:13-15, 69:2-6, 70:6-13. Such claims on foods "must be truthful and not misleading under section 403(a)(1) of the [FDCA]," Ex. 15, Substantiation for Structure/Function Claims Made in Infant Formula Labels and Labeling: Guidance for Industry, at 3.

"**Heart Healthy.**" Post asserts this statement is preempted pursuant to 21 C.F.R. § 101.14(d)(2) because it accompanies an unchallenged FDAMA claim. *See* Mot. at 21. But it misreads the statutory scheme. Post's source, an FDA guidance document, does not support its argument. The document states only that "foods bearing [FDAMA health claims] . . . should comply with the provisions of 21 C.F.R. 101.14." Section 101.14(d)(2) provides that, "[w]hen FDA has adopted a regulation *in subpart E* . . . providing for a health claim, firms may make claims based on the regulation in subpart E of this part," if several conditions are met. *See* 21 C.F.R. § 101.14(d)(2) (emphasis added). In other words, even if, under 21 C.F.R. § 101.14(d)(2), "heart healthy" claims may be made under *some* circumstances, that applies *only* to health claims the FDA has formally promulgated *in regulations in subpart E*. *See* 21 C.F.R. §§ 101.54-101.83 ("Subpart E—Specific Requirements for Health Claims"). Section 101.14(d)(2) expressly does *not* apply to health claims permitted under the far less formal FDAMA process. *See id.* [5] Unsurprisingly, none of Post's cases involve FDAMA claims. *See* Mot. at 21-22.



Nor was the "Heart Healthy" language "submitted to and approved by the FDA in 2006," as Post claims. Mot. at 21. It was only the health claim itself, "Diets low in saturated fat and cholesterol, and as low as possible in trans fat, may reduce the risk of heart disease"—which appears outside of the red banner containing the "Heart Healthy" and heart insignia—that was submitted for approval under the FDAMA. *See* Dkt. No. 171-12 at 3. The FDCA only authorizes FDAMA claims where "a manufacturer . . . submit[s] to the FDA '*the exact words used in the claim*,'" 21 U.S.C. § 343(r)(3)(C)(3)(ii) (emphasis added), among other requirements, *see id.* §§ 343(r)(3)(C)(i), (iii), (iv). *Compare Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *8-9 (N.D. Cal. Jan. 2, 2014) (describing FDAMA petition process). "Heart Healthy" was never submitted for review, and so is not an authorized FDAMA claim, but rather an *unauthorized health claim* under 21 C.F.R. § 101.14(e). *See* Dkt. No. 171-12 at 2-3 (noting that "manufacturers may use the claim

---

[5] Post is well aware § 101.14(d)(2) applies only to health claims authorized under subpart E, rather than FDAMA. Plaintiffs briefed this issue in January 2017, in opposing Post's Motion to Dismiss the FAC, *see* Dkt. No. 50 at 19 n.11, arguing it rendered "Heart Healthy" an unauthorized health claim that violated other regulations. *See id.* The Court found Plaintiffs had not pleaded violations of these other regulations but granted leave to amend. Plaintiffs included these allegations in their SAC, Dkt. No. 92-1. In moving to dismiss, Post did not renew its argument. *See* Dkt. No. 95 at 20-21 (identifying claims Post asserted were preempted nutrient content claims). It should be equitably estopped from doing so here.

specified" and identifying "[t]he exact wording of the claim" as only "'Diets low in saturated fat and cholesterol, and as low as possible in *trans* fat, may reduce the risk of heart disease'").

### III.   PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF FOR THE CLASS

"California has decided that its consumers have a right, while shopping in a store selling consumer goods, to rely upon the statements made on a product's packaging." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 961 (9th Cir. 2018). Accordingly, "misled consumers may properly allege a threat of imminent or actual harm sufficient to confer standing to seek injunctive relief," and "[a] consumer's inability to rely on a representation made on a package, even if the consumer knows or believes the same representation was false in the past, is an ongoing injury that may justify an order barring the false advertising." *Id.*

Post argues Plaintiffs nevertheless lack standing to seek injunctive relief because they supposedly disavowed an interest in purchasing cereal in the future, and even if they were interested, could not be harmed in the future because Post discloses in various places the grams of sugar in its cereals. *See* Mot. at 22-23.

Post's first argument misconstrues the record. Neither pages 66 nor 189 of Mr. Hadley's transcript disclaim a future intent to purchase.[6] When Post's counsel asked him a different time, he responded "I don't know." Ex. 16, Hadley Tr. 344:1-5 ("Q. Okay. . . . [I]f the labeling changed in some way, would you purchase them again? . . . A. To be honest, I don't know. I don't know."). Post's counsel then continued to badger Mr. Hadley, testifying and putting words in his mouth until counsel got the desired soundbite. *See id.* 344:6-345:1. This is the testimony on which Post attempt to rely, Mot. at 22, but the questioning was objectionable.

Moreover, Mr. Hadley was an avid cereal consumer virtually his entire life. In his action against Kellogg, he testified it was "possible" he may purchase the cereals again. Ex. 17, Hadley Kellogg Tr. 217:16-21. Plaintiff alleged that if he "could be assured through prospective injunctive relief that Post's cereals are properly labeled (i.e., that they do not contain excess added sugar if they bear health and wellness labeling), [he] would consider purchasing Post cereals bearing such claims in the future." SAC ¶ 120. The record demonstrates genuine issues of fact on this allegation.

Further, Post is not yet required to disclose *added* sugar, so the packaging does *not* contain even *potentially* curative information. Even if Post disclosed added sugar, California law does not require Mr.

---

[6] Because Mr. Hadley has standing to seek injunctive relief and covers the same products, it is unnecessary to address Ms. Krommenhock's standing separately.

Hadley expend time reading fine print to ensure the truth of advertising claims—he is entitled to rely on them. *See Williams*, 552 F.3d at 939; *compare Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 527 (N.D. Cal. 2012) ("Should plaintiffs encounter the denomination 'All Natural' on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence."); *Weidenhamer v. Expedia, Inc.*, 2015 WL 1292978, at *5 (W.D. Wash. Mar. 23, 2015) (Plaintiff "is entitled to rely on the statements made in [the] ad, even if he previously learned that some of those statements were false or deceptive."); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 194–95 (D.D.C. 2013) (finding that "the named plaintiffs, knowledgeable about the misrepresentations, are likely to suffer future harm in the absence of an injunction," because they will be unable "to rely on the [misleading] label with any confidence" and "will have no way of knowing" whether defendants "boost[ed] the label's veracity").

Plaintiff's "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Davidson*, 889 F.3d at 969. Rather, Post "may change or reconstitute its product in the future to conform to the representations on the label," but "[u]nless [it] has been enjoined from making the same representation, [Plaintiff] . . . won't know whether it makes sense to spend [his] money on the product." *See Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015). For example, if he sees health claims on Post's cereals in the future, Plaintiff might reasonably assume Post reduced the added sugar—a reduction could be made without reducing total sugar by replacing some added sugars with intrinsic sugars—or inserted an ingredient to counteract the sugar's detrimental effects. Moreover, since in the arena of nutrition science it is at least possible new evidence could emerge regarding the healthfulness of added sugar, there remains a plausible "threat of future harm" absent injunctive relief, because Plaintiff "might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as []he may reasonably, but incorrectly, assume the product was improved," at least in terms of the scientific support for its health claims. *See Davidson*, 889 F.3d at 970. Only with an injunction precluding the challenged health and wellness claims absent valid scientific evidence supporting them could Plaintiff be confident in the future that, if a Post cereal bears a health claim, the claim is true.

The Court should separately find Plaintiffs have standing by virtue of the intrusion of Post's false advertising upon their substantive right under the UCL, FAL, and CLRA to be free from misrepresentation. The *Davidson* court noted but declined to rule on this issue because it was unnecessary. But it suggested the

Ninth Circuit would favor Plaintiffs' position here. *See* 889 F.3d at 970; *compare Henderson v. Gruma Corp.*, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) ("[T]o prevent [plaintiffs] from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws."); *accord Ingalls v. Spotify USA, Inc.*, 2017 WL 3021037, at *6-7 (N.D. Cal. July 17, 2017) (adopting *Henderson* rationale, noting it has been adopted by numerous district courts, and collecting cases).

Finally, Plaintiffs have injunctive relief standing because they are representative of absent class members; even if they for some reason lacked standing for injunctive relief in their *individual* capacities, they have *representative standing* to seek that relief on behalf of Class Members who are ignorant of the claims in this case, and of Post's false advertising.

The *Davidson* court cautioned that, when considering injunctive relief, courts should "be careful not to employ too narrow or technical an approach," and instead "must examine the questions realistically . . . reject[ing] the temptation to parse too finely, and consider instead the context of the inquiry." 899 F.3d at 967 (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)). Here, the Court should permit injunctive relief claims to proceed.

## IV.   PLAINTIFFS HAVE ADDUCED SUFFICIENT EVIDENCE TO SUPPORT COMPENSATORY AND PUNITIVE DAMAGES CLAIMS

### A.   Compensatory Damages

Post's assertion that "Plaintiffs lack evidence to support monetary relief," depends on its Motion to Exclude Gaskin and Weir succeeding. *See* Mot. at 23-24. But that motion should be denied, like this one.

### B.   Punitive Damages

The CLRA allows punitive damages upon clear and convincing evidence of "oppression, fraud, or malice." *See* Cal. Civ. Code §§ 1780(a)(4), 3294(a). Here, Plaintiffs have adduced evidence that Post engaged in malice and fraud. "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1). "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.* § 3294(c)(3).

"[T]he clear and convincing standard" of § 3294(a) "does not impose on a plaintiff the obligation to

23

prove a case for punitive damages at summary judgment." *Johnson & Johnson v. Super. Ct.*, 192 Cal. App. 4th 757, 762 (2011) (internal quotation marks and quotation omitted). Rather, "[i]n the usual case, the question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact," *id.* Thus, summary judgment "is proper only when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression.'" *Id.* (alteration, citation, and quotation omitted). If there are "lingering questions of fact" regarding findings that "could . . . support a jury finding for punitive damages," summary judgment should be denied. *See Estate of McNeil v. Freestylemx.com, Inc.*, 177 F. Supp. 3d 1260, 1276-77 (S.D. Cal. 2016). This is especially true here, in light of the Legislature's admonition that the CLRA is to "be liberally construed and applied." Cal. Civ. Code § 1760.

"With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." *Id.* § 3294(b). Plaintiffs can "satisfy the 'managing agent' requirement through evidence showing the information in the possession of the corporation and the structure of the decisionmaking that permits an inference that the information in fact moved upward to a point where corporate policy was formulated." *Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 3d 1117, 1133 (S.D. Cal. 2014). Circumstantial evidence is sufficient. *Pac. Gas & Elec. Co. v. Super. Ct.*, 24 Cal. App. 5th 1150, 1173 (2018) (citation omitted); *accord Merrifield v. Miner's Inn Rest. & Lounge*, 2006 WL 4285241, at *8 (E.D. Cal. Sept. 25, 2006) (malice "may be proved by circumstantial evidence. . . . such as conduct undertaken in reckless disregard of injurious consequences" (citations omitted)).

In *Willis*, the court denied summary judgment on punitive damages where the plaintiff had cited "evidence of Defendant's knowledge" of the dangers of asbestos "developed as early as the 1930s and further through the 1960s," and had shown that defendant's "personnel supervised the removal and replacement of an asbestos refractory, which generated extensive dust and which [defendant's] personnel failed to warn of, despite OSHA asbestos dust standards requiring employers to provide a warning on jobsites." 34 F. Supp. 3d at 1134. The court found that, "[b]ased on this evidence, a jury could reasonably conclude that Defendant's managing agents initiated and continued the sale of boilers with asbestos components and replacement parts without providing a warning of the dangers of asbestos despite knowing about those dangers, and that Defendant thereby engaged in 'despicable conduct . . . with a willful and conscious disregard for the rights

or safety of others.'" *Id.* (quoting Cal. Civ. Code § 3294(c)). *See also Roybal v. Equifax*, 2008 WL 4532447, at *15-16 (E.D. Cal. 2008) (denying motion for summary judgment on punitive damages under CLRA where "deposition testimony" left open the "possibility that a finder of fact could determine that Defendants acted with malice or engaged in despicable conduct"). Here, as in *Willis*, there is "ample evidence in the record . . . to support a finding that [Post's] managing agents knew about the dangers of [added sugar], but nonetheless failed to provide any warning to [Plaintiffs] and other end users," committing malice and fraud. *See id.* at 1133-34. Plaintiffs have proffered evidence that Post knew long before consumers of the dangers of added sugar consumption, knew consumers were ignorant of those dangers and intentionally obscured them, misleading consumers through both affirmative misrepresentations and deceptive omissions, encouraging Class Members to consume its products, putting their health at risk in pursuit of profit. *See* Dkt. No. 141, Class Cert. Mot. at 13-17. That conduct is both "despicable conduct . . . carried on by [Post] with a willful and conscious disregard of the rights or safety of" Class Members, and "an intentional representation, deceit, or concealment of a material fact known to [Post] with the intention on the part of [Post] of thereby depriving" Class Members "of property or legal rights or otherwise causing injury," so as to constitute both malice and fraud. *See* Cal. Civ. Code §§ 3294(c)(1), (3).

Post does not address the evidence Plaintiffs offered in support of class certification demonstrating that "despite knowing the detrimental effects of the sugar in its cereals, Post deliberately leverages the products' purported healthfulness for profit," knowing that "lay consumers generally do not have a deep or sophisticated understanding of nutrition science," Class Cert. Mot. at 17 (quotation omitted). Instead, it argues that, as a matter of law, its conduct cannot be "despicable" "even if some Post personnel learned . . . that sugar is especially dangerous," because that is supposedly the "minority view," *see* Mot. at 25. Post is wrong about the consensus, but even if it was right, it does not mean Post was justified in ignoring the evidence when deciding to market high-sugar cereals with health and wellness claims. On the other hand, Post's concession that "some Post personnel learned of the minority view of some scientists that sugar is especially dangerous," *id.*, minimally raises facts that "could . . . support a jury finding for punitive damages," so that summary judgment should be denied, s*ee Estate of McNeil*, 177 F. Supp. 3d at 1276-77.

## CONCLUSION

The Court should deny Post's motion for summary judgment.

*Krommenhock et al. v. Post Foods LLC*, No. 16-cv-4958-WHO (JSC)
OPPOSITION TO POST'S MOTION FOR SUMMARY JUDGMENT

Dated: August 9, 2019                    Respectfully Submitted,

_/s/ Jack Fitzgerald_____

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
_jack@jackfitzgeraldlaw.com_
TREVOR M. FLYNN
_trevor@jackfitzgeraldlaw.com_
MELANIE PERSINGER
_melanie@jackfitzgeraldlaw.com_
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Plaintiffs***

_Krommenhock et al. v. Post Foods LLC_, No. 16-cv-4958-WHO (JSC)
OPPOSITION TO POST'S MOTION FOR SUMMARY JUDGMENT