**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE KROMMENHOCK and STEPHEN HADLEY, on behalf of themselves, all others similarly situated, and the general public,<br><br>    Plaintiffs,<br><br>        v.<br><br>POST FOODS, LLC,<br><br>    Defendant. | Case No. 3:16-cv-04958-WHO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE TESTIMONY OF DR. DOMINIQUE M. HANSSENS**<br><br>Judge:      Hon. William H. Orrick<br>Hearing Date:  October 9, 2019, 2:00 p.m.<br>Location:    Courtroom 2, 17th Floor |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

NOTICE OF MOTION ............................................................................................................... 1

INTRODUCTION TO THE MOTION ....................................................................................... 1

    I.      PLAINTIFFS' CASE THEORIES & DAMAGES MODELS ............................................... 1

    II.     DR. DOMINIQUE M. HANSSENS' TESTIMONY ........................................................ 2

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... 4

MEMORANDUM OF POINTS & AUTHORITIES................................................................... 4

    I.      ARGUMENT ................................................................................................................... 4

         A.     The Court Should Exclude Dr. Hanssens' Price Premium Opinions.......................... 4

             1.     The Court Should Exclude Dr. Hanssens' Supply Side Opinion................... 4

             2.     The Court Should Exclude Dr. Hanssens' External Validity Opinion ......................................................................................................... 10

         B.     The Court Should Exclude Dr. Hanssens' Lack of Evidence Opinions ................. 11

    II.     CONCLUSION............................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Abaxis, Inc. v. Cepheid*,
   2012 WL 2979019 (N.D. Cal. July 19, 2012) ..........................................................16

*Allen v. ConAgra Foods, Inc.*,
   --- F.R.D. ----, ----, 2019 WL 3302821 (N.D. Cal. July 22, 2019) ...........................5

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ...............................................................................13

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014) ...................................................................................12

*Bradach v. Pharmavite, LLC*,
   735 F. App'x 251 (9th Cir. 2018) ........................................................................13, 14

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ...................................................................................13

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ...................................................................................14

*Cook v. Sw. Airlines Co.*,
   2003 WL 25668023 (C.D. Cal. Oct. 28, 2003) ..........................................................10

*Crow Tribe of Indians v. Racicot*,
   87 F.3d 1039 (9th Cir. 1996) .....................................................................................16

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .....................................................................................................1

*Davidson v. Apple, Inc.*,
   2018 WL 2325426 (N.D. Cal. May 8, 2018) ................................................................5

*Dzielak v. Whirlpool Corp.*,
   2017 WL 1034197 (D.N.J. Mar. 17, 2017) ..................................................................5

*Ehret v. Uber Techs., Inc.*,
   148 F. Supp. 3d 884 (N.D. Cal. 2015) ..................................................................12, 17

*Englebrick v. Worthington Indus., Inc.*,
   2016 WL 6637712 (C.D. Cal. Mar. 11, 2016) ............................................................16

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,
   2018 WL 3126385 (N.D. Cal. June 26, 2018) ..............................................................5

ii

*Gilbert v. MoneyMutual, LLC*,
   2016 WL 7785453 (N.D. Cal. Feb. 8, 2016)........................................................................12

*Guido v. L'Oreal*,
   2014 WL 6603730 (C.D. Cal. July 24, 2014) .......................................................................5

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ........................................................................4, 5, 6

*Hasemann v. Gerber Prod. Co.*,
   --- F.R.D. ---, 2019 WL 1434263 (E.D.N.Y. Mar. 31, 2019) ........................................13, 14

*Hughes v. Uumprovident Corp.*,
   2008 WL 4452140 (N.D. Cal. Oct. 3, 2008)........................................................................16

In re ConAgra Foods, Inc.,
   302 F.R.D. 537 (C.D. Cal. 2014) ........................................................................................13

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015)...................................................................................13

*In re Dial Complete Mktg. and Sales Practices Litig.*,
   320 F.R.D. 326 (D.N.H. 2017).............................................................................................5

*In re Lenovo Adware Litigation*,
   2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ......................................................................5

*In re MyFord Touch Consumer Litig.*,
   291 F.Supp.3d 936 (N.D. Cal. 2018) ....................................................................................5

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)...................................................................................11, 12, 14, 15

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002)..........................................................................................................8

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) .........................................................................................5

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011)........................................................................................................11

*Martin v. Monsanto Co.*,
   2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ...................................................................12

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)........................................................................................14, 15

iii

*McHugh v. United Serv. Auto. Ass'n*,
   164 F.3d 451 (9th Cir. 1999) ............................................................................................. 16

*Microsoft Corp. v. Baker*,
   137 S. Ct. 1702 (2017) ..................................................................................................... 12

*Miller v. Fuhu Inc.*,
   2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) .................................................................... 4

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
   823 F.3d 948 (9th Cir. 2016) ........................................................................................... 14

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ......................................................................................... 16

*Odyssey Wireless, Inc. v. Apple Inc.*,
   2016 WL 7644790 (S.D. Cal. Sept. 14, 2017) .................................................................. 5

*Pulaski v. Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ...................................................................................... 12, 13

*Rogers v. Epson Am., Inc.*,
   648 Fed. App'x 717 (9th Cir. 2016) ................................................................................ 13

*RSI Corp. v. Int'l Bus. Machs. Corp.*,
   2013 WL 1087468 (N.D. Cal. Mar. 13, 2013) ................................................................ 16

*State Farm v. Super. Ct.*,
   45 Cal. App. 4th 1093 (1996) .......................................................................................... 12

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) .................................................................................... 13

*Todd v. Tempur-Sealy Int'l, Inc.*,
   2016 WL 5746364 (N.D. Cal. Sept. 30, 2016) ............................................................... 12

*United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare*
   *Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142 (N.D. Cal. 2017) ...................... 5, 10, 17

*Waymo LLC v. Uber Techs., Inc.*,
   2017 WL 6887043 (N.D. Cal. Nov. 14, 2017) ................................................................ 16

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................................................ 8, 12

*Zakaria v. Gerber Prod. Co.*,
   2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) ................................................................ 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................................11

Cal. Bus. & Prof. Code § 17203 ........................................................................................12

Cal. Bus. & Prof. Code § 17500 ........................................................................................11

**Rules**

Fed. R. Evid. 702 ................................................................................................................1

**Other Authorities**

Federal Judicial Center, Reference Manual on Scientific Evidence (3d ed. 2011) ........................................6

*Krommenhock v. Post Foods, LLC*, No. 16-cv-4958-WHO
MOTION TO EXCLUDE THE TESTIMONY OF DR. DOMINIQUE M. HANSSENS

**NOTICE OF MOTION**

On October 9, 2019, at 2:00 p.m., Plaintiffs will move to exclude the testimony of Dr. Dominique M. Hanssens, including as set forth in his expert reports. *See* Dkt. No. 170-2, Hanssens Class Cert. Report; Dkt. No 170-3, Hanssens Report.

The motion will request that some of Dr. Hanssens' testimony be barred as inadmissible under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702, and is based upon this notice of motion, the below memorandum, the concurrently-filed Omnibus Declaration of Jack Fitzgerald ("Omnibus Fitzgerald Decl.") and all relevant exhibits thereto,[1] and all pleadings and proceedings in this action.

**INTRODUCTION TO THE MOTION**

**I.    PLAINTIFFS' CASE THEORIES & DAMAGES MODELS**

Plaintiffs allege Post made both affirmative misrepresentations and deceptive omissions relating to the healthfulness of its sugary cereals, causing market distortions that injured consumer Class Members in the form of both increased prices and sales volume. Although it might be possible to measure either a price or volume effect due to either an affirmative misrepresentation or deceptive omission, in consultation with survey and economic experts, Plaintiffs, on behalf of the Class, elected in this case to test (1) the price premia associated with challenged labeling claims (dubbed the "Consumer Impact Model" in Plaintiffs' certification motion, *see* Dkt No. 141 ("Cert. Mot.") at 23), and (2) the change in demand associated with Post's omission of material information (dubbed the "Advantage Realized Model," *see id.* at 24).

To measure price premia, survey expert Steven Gaskin conducted a series of conjoint analyses. *See id.* at 23-24; Dkt. No. 146, Gaskin Report ¶¶ 10-50. To measure the increased sales volume caused by Post's omissions, Mr. Gaskin conducted two "demand surveys," using the test-and-control method to test the effect of a disclosure on consumption, and thereby purchase frequency. *See* Cert. Mot. at 24-25; Gaskin Report ¶¶ 51-72. Economist Colin B. Weir then used Mr. Gaskin's price premia and change-in-volume results to calculate the Class's damages by applying them to the challenged products' retail sales. *See* Dkt. No. 147, Weir Report ¶¶ 55-78 & Tables 1-4. He recently updated his calculations. *See* Ex. 11, Suppl. Weir Decl.

---

[1] All "Ex. __" references herein are to the Omnibus Fitzgerald Declaration.

## II.     DR. DOMINIQUE M. HANSSENS' TESTIMONY

Dr. Domonique M. Hanssens is a marketing professor whose "research focuses on strategic marketing problems, to which [he] appl[ies] expertise in data-analytic methods, such as surveys, econometrics, and time-series analysis." Hanssens Class Cert. Report ¶¶ 1-2. Post retained him "to review and respond to the Silverman Merits Report, the Gaskin Merits Report, and the Weir Merits Report as it relates to the reliability of Mr. Gaskin's conjoint survey." Hanssens Report ¶ 2; *see also* Hanssens Class Cert. Report ¶ 15 ("Counsel for Post asked me to review and respond to Mr. Silverman's and Mr. Gaskin's reports and to Mr. Weir's report as it relates to the reliability of Mr. Gaskin's conjoint analysis to estimate market premia.").

Dr. Hanssens opines on both the Class's Consumer Impact (or alternatively "Price Premium") model, anchored by Mr. Gaskin's conjoint analyses, and its Advantage Realized model, supported by Mr. Gaskin's test-and-control demand surveys. Hanssens Report ¶¶ 7-9, 28-122. In addition, he opines that "Mr. Silverman's opinions regarding consumers' exposure to, reliance on, and interpretation of the challenged claims are unreliable, unsupported, and inconsistent with plaintiff's theory of harm." *Id.* at 4;[2] *see also id.* ¶¶ 6, 11-27; Hanssens Class Cert. Report ¶¶ 24, 74-135.

With respect to the Class's ***Price Premium*** model, Dr. Hanssens offers six opinions, ***two*** of which are relevant to the current motion.[3]

***First***, he opines that "Mr. Gaskin's framework for estimating the reduction in economic value due to the challenged claims is inconsistent with Plaintiffs' theory of damages, unreliable, and overstates damages by design," Hanssens Report at 13, because his conjoint analysis "in no way accounts for all the relevant supply factors that could affect prices in the but-for world," *id.* ¶ 43; *see also id.* ¶¶ 43-45, and so "is not

---

[2] Header capitalization omitted throughout.

[3] Three of Dr. Hanssens' other Price Premium opinions relate to Dr. Gaskin's selection of attributes included in his conjoint analysis, namely that "Mr. Gaskin's conjoint survey yields inflated estimates due to improper selection of attributes," Hanssens Report at 23, that "the omission of non-challenged claims and health and nutrition attributes renders Mr. Gaskin's conjoint survey incapable of isolating the impact of the challenged claims," *id.* at 28, and that "the 'labels' attribute is mis-specified and overemphasized, leading to inflated [willingness-to-pay] estimates for labels," *id.* at 32. Dr. Hanssens' remaining price premium opinion is that "Mr. Gaskin's market simulation is not robust," *id.* at 40, because "[i]n some instances, the market simulation predicts price premiums that are several times higher than the price premiums that Mr. Gaskin selects," *id.* ¶ 101; *see also id.* ¶ 100. While Plaintiffs disagree with Dr. Hanssens, they recognize he is qualified to opine on the weight that should be afforded to Mr. Gaskin's testimony, and accordingly, Plaintiffs do not move to exclude these opinions.

even aimed at estimating the difference between the market price in the actual world and the market price in the but-for world," *id.* ¶ 29; *see also id.* ¶¶ 30-42, and instead "measure[s], at best, a difference in consumer willingness to pay, not a market premium," *id.* at 19; *see also id.* ¶¶ 46-51. We refer to this as the "Supply Side Opinion."

**Second**, Dr. Hanssens opines that "Mr. Gaskin's [price premium] estimates have no external validity," *id.* at 39, because "the real-world market data does not corroborate" them, *id.* ¶ 96. *See also id.* ¶¶ 95-99. We refer to this as the "External Validity Opinion."[4]

Responding to Mr. Silverman's opinions regarding messaging and materiality, Dr. Hanssens offers **four** opinions, all relating to the sufficiency of the evidence on which Mr. Silverman relied.[5] He opines that Mr. Silverman "does not provide evidence" (1) that "all or most consumers were exposed to the challenged claims," Hanssens Class Cert. Report at 33; *see also id.* ¶¶ 79-85; (2) that "all or most consumers relied on the challenged claims in their purchase decisions and perceived them to communicate healthiness generally," *id.* at 36; *see also id.* ¶¶ 86-114; (3) that "generic healthiness is material to cereal purchasers," *id.* at 50; *see also id.* ¶¶ 122-27, which Dr. Hanssens explains is because the evidence Mr. Silverman cites supposedly relates to "specific health claims," *id.* at 48, which are "irrelevant to Plaintiffs' theory of harm," *id.* ¶ 119; *see also id.* ¶¶ 118-21; and (4) that "consumer behavior is likely to be impacted by the proposed disclosure,"

---

[4] With respect to the Class's Advantage Realized model (or "demand model" in Dr. Hanssens' parlance), Dr. Hanssens offers three opinions: (1) that "Mr. Gaskin's 'demand modeling survey' fails to assess future changes, if any, in aggregate consumption of the at-issue products," *id.* at 42, because he "does not survey children, who are responsible for a significant share of cereal consumption," *id.* ¶ 107; *see also id.* ¶¶ 105-110; (2) that "Mr. Gaskin's 'demand modeling survey' cannot reliably estimate the impact of a hypothetical warning" *id.* at 44, because he "does not provide a realistic marketplace setup," *id.* ¶ 111; *see also id.* ¶¶ 111-15; and (3) that "Mr. Gaskin's 'demand modeling survey' cannot reliably measure cereal consumption because of survey design limitations," *id.* at 46, that "ignore[ ] heterogeneity in the cereal consumption process," *id.* ¶ 120, and thus do not account for the various ways in which consumers eat cereal in the real world, *see generally id.* ¶¶ 116-22. Just as with some of Dr. Hanssens' Price Premium opinions, while Plaintiffs disagree with these opinions, they do not move to exclude this testimony under *Daubert*, recognizing that Dr. Hanssens is qualified to opine on the weight to be afforded to Mr. Gaskin's testimony.

[5] The bulk of Dr. Hanssens' opinions regarding Mr. Silverman are contained in his March 2019 report, *see* Hanssens Class Cert. Report at 32-54; his later, May 2019 report states that his "opinions regarding Mr. Silverman's opinions remain unchanged," and addresses only "a sample of the new documents cited in Mr. Silverman's Merits Report," which he opines have "the same severe limitations [he] described in [his] [March] class certification report." Hanssens Report ¶ 15 *see also id.* ¶¶ 11-27. Plaintiffs thus cite to Dr. Hanssen's Class Cert. Report for analysis relating to Dr. Hanssens' criticisms of Mr. Silverman's opinions.

*id.* at 52; *see also id.* ¶¶ 128-35. We refer to these collectively as the "Lack of Evidence Opinions."

## STATEMENT OF ISSUES TO BE DECIDED

### *Opinions Related to Plaintiffs' Price Premium Damages Model and Conjoint Analyses*

1.      Should Dr. Hanssens' Supply Side Opinion be excluded as unreliable, irrelevant, and contrary to law because it categorically rejects conjoint analysis as an appropriate method for calculating a price premium in consumer fraud cases, and is premised on a but-for world that improperly denies liability in contravention of accepted economic principles?

2.      Should Dr. Hanssens' External Validity Opinion be excluded as unreliable because it relies on Dr. Strombom's wholly unreliable before-and-after sales analysis that used demonstrably false assumptions about the data, and failed to control for any factors that might affect price other than the challenged claims?

### *Lack of Evidence Opinions*

3.      Should Dr. Hanssens' Lack of Evidence Opinions be excluded as irrelevant and improper legal opinion that is he not qualified to offer because it is contrary to law in opining that Class Members must have viewed and relied on the challenge claims?

## MEMORANDUM OF POINTS & AUTHORITIES

## I.      ARGUMENT

### A.      The Court Should Exclude Dr. Hanssens' Price Premium Opinions

#### 1.      The Court Should Exclude Dr. Hanssens' Supply Side Opinion

"[C]onjoint analysis is *widely-accepted* as a reliable economic tool for isolating price premia," *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal. 2018) (emphasis added), and thus "numerous courts," including this one, "have accepted . . . [choice-based conjoint] . . . as [a] reliable methodolog[y] for calculating price premiums on a classwide basis in consumer class actions," *Miller v. Fuhu Inc.*, 2015 WL 7776794, at *21 (C.D. Cal. Dec. 1, 2015) (citations omitted). As this Court explained in quoting *Hadley*:

> [I]n cases where price premia are the relevant measure of damages, courts have repeatedly rejected conjoint analyses that only measure demand-side willingness-to-pay. However, courts have also found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect actual market prices that prevailed during the class period; and (2) the quantities used (or

1   assumed) in the statistical calculations reflect the actual quantities of products sold during
2   the class period.

3   *Allen v. ConAgra Foods, Inc.*, --- F.R.D. ----, ----, 2019 WL 3302821, at \*23 (N.D. Cal. July 22, 2019)

4   (Orrick, J.) (quoting *Hadley*, 324 F. Supp. 3d at 1105);[6] *see also Hadley*, 324 F. Supp. 3d at 1105-106

5   (discussing *In re Dial Complete Mktg. and Sales Practices Litig.*, 320 F.R.D. 326, 334-36 (D.N.H. 2017)

6   ["*Dial*"]; *In re MyFord Touch Consumer Litig.*, 291 F.Supp.3d 936, 969-71 (N.D. Cal. 2018) ["*MyFord*

7   *Touch II*"]; *Davidson v. Apple, Inc.*, 2018 WL 2325426, at \*22 (N.D. Cal. May 8, 2018); *Fitzhenry-Russell*

8   *v. Dr. Pepper Snapple Group, Inc.*, 2018 WL 3126385, at \*8 (N.D. Cal. June 26, 2018); *In re Lenovo Adware*

9   *Litigation*, 2016 WL 6277245, at \*21 (N.D. Cal. Oct. 27, 2016)).

10          Dr. Hanssens nevertheless opines that "conjoint analysis is not even aimed at estimating a market

11  price premium," Hanssens Report at 13; *see also id.* ¶¶ 7, 9, 29-42, so that "you can *never* get a price premium

12  out of a conjoint," Ex. 5, Hanssens Tr. 27:21-22 (emphasis added). Because "[c]onjoint analysis has won

13  acceptance from courts and legal commentators," *Dzielak v. Whirlpool Corp.*, 2017 WL 1034197, at \*6

14  (D.N.J. Mar. 17, 2017) (citations omitted),[7] Dr. Hanssens' categorical rejection of the method is contrary to

15  law, and should be excluded. *Cf. United Food & Commercial Workers Local 1776 & Participating*

16  *Employers Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1183 (N.D. Cal. 2017)

17  ["*United Food*"] (Orrick, J.) ("[E]xclusion of opinions that are irrelevant as a matter of law or contrary to the

18  law is appropriate through the *Daubert* process." (citation omitted)).

19

20

21  [6] Just as Dr. Hanssens opines here, in *Hadley*, Kellogg argued "that Gaskin's proposed conjoint analysis
22  measures consumers' subjective willingness to pay for the challenged statement[s]—or in other words,
    consumer demand—without considering the supply side of the equation," and so, "according to Kellogg,
23  the conjoint analysis cannot possibly calculate the price premium . . .  the ultimate price of a product is a
    combination of market demand and market supply." *Id.* at 1104 (internal quotation marks and record
24  citations omitted). *Compare* Hanssens Report ¶¶ 28-51; Hanssens Class Cert. Report ¶¶ 136-59.

25  [7] *See also Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 551 (E.D.N.Y. 2017) (conjoint analysis "ha[s]
    previously been approved in consumer class actions as [a] reliable methodolog[y] available for calculating
26  the price premium attributable to a product characteristic" (citations omitted)); *Guido v. L'Oreal*, 2014 WL
    6603730, at \*11-12 (C.D. Cal. July 24, 2014) (approving conjoint analysis damages model under *Comcast*);
27  *Odyssey Wireless, Inc. v. Apple Inc.*, 2016 WL 7644790, at \*9 (S.D. Cal. Sept. 14, 2017) ("Further, a conjoint
    analysis is a generally accepted method for valuing the individual characteristics of a product." (citations
28  omitted)).

Here, "Gaskin's proposed conjoint analysis adequately accounts for supply-side factors and does not merely measure demand-side willingness-to-pay." *Hadley*, 324 F. Supp. 3d at 1106. "Like the conjoint analyses in [*Hadley*, ] *Dial*, *MyFord Touch II*, *Davidson*, *Fitzhenry-Russell*, and *Lenovo Adware*, Gaskin's proposed conjoint analysis (1) utilizes prices that 'mirror[ ] those actually observed in the market,' and that are 'based on actual sales data,'" *see id.* (quoting Gaskin Decl.); *compare* Gaskin Report ¶ 21; "and (2) holds quantity constant—by using the quantities of the challenged products that were actually sold during the class period—in order to 'account[ ]' for 'the fact that the number of [products] . . . purchased is fixed as a matter of history, which is to say that their sale is a matter of historical fact.'" *Hadley*, 324 F. Supp. 3d at 1106 (quoting Gaskin Decl.); *Compare* Gaskin Report ¶ 19; *see also* Opposition to Post's Motion to Exclude Steven Gaskin and Colin Weir at 18-21 (explaining in detail how Gaskin's model accounts for supply side factors). Those "measures adequately account for supply-side market factors because 'all the factors that affect[ ] [a company's] willingness to sell'—i.e., supply—'during the class period, like cost of goods, are reflected in the sales [quantity] and prices that were actually extant in the market during that time.'" *Hadley*, 324 F. Supp. 3d at 1106 (record citation omitted); *Compare* Gaskin Report ¶ 19 & n.14; Ex. 3, Gaskin Tr. 28:1-22. Dr. Hanssens agreed "that for the historical sales . . . all supply information is baked into those sales[.]" Hanssens Tr. at 170:12-17; *see also* Omnibus Weir Decl. ¶ 26.

Even if Dr. Hanssens opinion were not contrary to law, however, the Court should still exclude it as irrelevant and unreliable because by Dr. Hanssens own testimony, his proposed "but for world"—the hypothetical world he opines would exist had Post not committed the unlawful act, and against which he measures Mr. Gaskin's conjoint analyses in forming his opinions, *see* Hanssens Report ¶¶ 7-8, 28-49 (criticizing Mr. Gaskin's conjoint analysis as supposedly not being based on what he believes is the proper "but-for world"); Hanssens Class Cert. Report ¶¶ 25-26, 136-57 (same)—is not the appropriate measure of damages here.

Dr. Hanssens opines that the appropriate standard for determining the relevant "but-for" scenario is laid out in the *Reference Guide on Estimation of Economic Damages*,[8] Hanssens Report ¶ 31, which provides:

---

[8] Federal Judicial Center, Reference Manual on Scientific Evidence at 432 (3d ed. 2011) ["Reference Manual"]

*Krommenhock v. Post Foods, LLC*, No. 16-cv-4958-WHO
MOTION TO EXCLUDE THE TESTIMONY OF DR. DOMINIQUE M. HANSSENS

The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event. In most cases, the analysis considers the difference between the plaintiff's economic position if the harmful event had not occurred and the plaintiff's actual economic position.

***In almost all cases, the damages expert proceeds on the hypothesis that the defendant committed the harmful act and that the act was unlawful.*** The characterization of the harmful event begins with a clear statement of what occurred. The characterization also will include a description of the defendant's proper actions in place of its unlawful actions and a statement about the economic situation absent the wrongdoing, with the defendant's proper actions replacing the unlawful ones (the but-for scenario). Damages measurement then determines the plaintiff's hypothetical value in the but-for scenario. Economic damages are the difference between that value and the actual value that the plaintiff achieved.

Ex. 12, Reference Manual at 432 (emphasis added). In quoting the above passage, however, Dr. Hanssens omitted the bolded sentence, not because he disagrees with it, but because he believes it to be "self-evident." *See* Hanssens Tr. at 310:25-311:8. This omitted "self-evident" proposition with which Dr. Hanssens agrees, however, supports Mr. Gaskin's approach, rather than Dr. Hanssens' Supply Side Opinion.

Dr. Hanssens agrees that the "harmful act" that Plaintiffs allege to be unlawful is "making the [challenged] statement," *id.* 314:6-11; *see also id.* 93:14-17, 94:3-8, 312:18-25. And that "the but-for world is the world that exists the way the plaintiff wants it," *id.* at 92:12-13. Thus, the appropriate "but-for" world is one where the challenged claims are removed from the packaging because they are presumed to be unlawful. *See id.* 316:20-23 ("agree[ing]" that "for the affirmative misrepresentations theory . . . the proper behavior might be to remove the affirmative misrepresentation"). In fact, Dr. Hanssens testified that "to do a damages analysis under the reference guide, you have to proceed on the hypothesis that Post made the [challenged] statement, . . . and making the statement was unlawful," *id.* 314:6-11. *See also id.* 311:9-17 ([a]gree[s] that "[d]amages quantification operates on the premise that the defendant is libel [sic] for the defendant's harmful act"). Dr. Hanssens further agrees that "in the but-for world, at least one thing that should be different is the conduct that's alleged to be unlawful," *id.* 96:20-23.

Yet Dr. Hanssens nevertheless opines that some (or all) statements would *not* need to be removed in the "but-for" world because "[i]f it is true. . . then that claim is not unlawful." *Id.* 312:12-13; *see also id.* 313:4-6 ("if it is indeed true . . . then it's not unlawful").[9] Dr. Hanssens incorrectly opines that this is so

---

[9] That the challenged statements are supposedly true and thus not unlawful is also an inadmissible legal conclusion and contrary to well settled law holding that California's consumer protection statutes "'prohibit

because Plaintiffs do not allege that the challenged statements are not factually true, *see id.* 87:8-9—an assertion that Plaintiffs dispute and address more fully elsewhere, *see* Pls.' Opp. to Post's Mot. for Sum. J. at 9-11—and so, Dr. Hanssens asserts, making the statement itself isn't unlawful, but only "creates an impression that is false because of its context," Hanssens Tr. 313:22-23; *see also id.* 312:2-313:20.

Because he believes that "[i]t is perfectly lawful to make a claim that is true," *id.* 33:17-18, he opines that removing the statement is only "one possibility" in the "but for" world, *id.* 97:4-10. He then theorizes other ways in which the label could be changed in the but-for world based on this mistaken premise, admitting that "in application," Post's "proper actions in place of its unlawful actions differ[ ] depending on the claim," requiring one "to scrutinize [each] statement," *id.* 315:8-19. By insisting that the challenged claims are "factually true," *id.* 87:11; Hanssens Report at ¶ 74; Hanssens Class Cert. Report ¶¶ 65, 87, 152, and that making true statements is "not unlawful," Hanssens Tr. 312:12-13, Dr. Hanssens is rejecting the "self-evident" proposition that he admits is necessary "to do a damages analysis under the reference guide," *id.* 314:6-11—the source he opines embodies the "widely accepted" method "among economists" for "estimat[ing] . . . the difference between the market price (retail price) each class member paid for the at-issue product and the market price that would have prevailed if Post had not made the challenged label claims," Hanssens Report ¶ 31. Dr. Hanssens' "but-for" world—on which he bases his criticisms of Mr. Gaskin's conjoint analysis—is thus the wrong counter-factual scenario for a damages analysis. His critiques of Mr. Gaskin's work premised on this incorrect "but-for" world should therefore be excluded.

Moreover, Dr. Hanssens' proposed approach is entirely theoretical and, as his testimony makes clear, completely unworkable. First, as already discussed, Dr. Hanssens' approach requires one to "scrutinize [each] statement" in its context in order to determine the proper "but-for" world for each statement individually. *See*, *e.g.*, Hanssens Tr. 315:8-19. The determination would be entirely subjective, yet could have a significant impact on the other market reactions (such as inventory decisions), which Dr. Hanssens insists must also be taken into account in the "but-for" world. *See*, *e.g.*, Hanssens Report ¶ 44; Hanssens

---

not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public,'" *see Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (internal quotation marks removed)). Dr. Hanssens opinion should thus be excluded on these additional grounds as well.

Class Cert. Report ¶ 152. Plaintiffs theory of harm, however, is identical with regard to each claim, and thus the "unlawful" conduct would be the same as to each claim—its absence in the but-for world.

Dr. Hanssens also opines that a variety of "inventory management" decisions by Post must be taken into account in the appropriate "but-for" world, Hanssens Tr. 149:21, "because there's existing inventory out there that is now less valuable," and so manufacturers "might do a sales promotion, lower the price and pay the retailer the difference in margin . . . [or] an advertising campaign on completely different attributes," and "[t]here's various things that they can do" to manage the inventory. *See id.* 149:20-150:8. This is "just [the] short-term reaction. . . . [t]hat may be good for a week or two." *Id.* 150:12-13. But, according to Dr. Hanssens, because "this is a class period over several years," the "but-for" scenario must also look at the fact that "the company . . . needs to make a production decision going forward[,] [a]nd once again, there's different possibilities." *Id.* 150:13-19.

Post could "make less of" the cereal," "do[ ] more sales promotions," or "work on marketing communications and reposition the product," and "[t]hose are just a few" of the possible reactions by Post. *Id.* 150:19-151:6. "[O]n top of that," according to Dr. Hanssens, the proper "but-for" world would also account for "what's happening to competition[,] . . . . [b]ecause, . . . it's possible that now other cereal makers are starting to worry . . . even though they're not the subject of the [litigation]," so they may "lower the price," or decide it "is Post's problem." *Id.* 151:6-16. And each of these potential decisions by Post and its competitors has different pricing and volume implications that Dr. Hanssens opines must also be taken into account in formulating the "but-for" world as he sees it. *See id.* 148:15-151:19. Thus, according to Dr. Hanssens, in order to calculate damages in a false advertising case, one must look well beyond the act alleged to be unlawful to account for a series of hypothetical decisions by both the retailer and its competitors, over the course of several years into the future.

Unsurprisingly, Dr. Hanssens offers no suggestions for how to implement what he believes to be the appropriate "but-for" world, likely because it is impossible. Indeed, despite indicating that one can still predict the appropriate "but-for" world by "mak[ing] an assumption . . . that manufacturers act in their own best interest" to "maximize profits," *id.* 319:10-14, Dr. Hanssens admits he "cannot predict," some of the outcomes he believes must be included, *id.* 151:16-17. He also admits that scenarios can and do occur in the

real world that would go against this assumption, for example "when you take a claim [off] a label, the price can decrease, but the volume can go up," *id.* 175:8-23, or "stay steady," *id.* 178:2-9.

In sum, Dr. Hanssens opines that the appropriate "but-for" world for purposes of calculating damages resulting from Post's affirmative misrepresentations in this case must account for *years'* worth of reactive decisions by Post *and its competitors*, which even he "cannot predict," *id.* 151:17. Truthfully, Dr. Hanssens is "*actually not totally sure what exactly the but-for world would look like*," *id.* 96:7-8 (emphasis added) because it is impossible to determine. At bottom, what Dr. Hanssens actually opines is that it is impossible to determine the but-for world and thus impossible to calculate a price premium. But, as already discussed, this is contrary to well-settled law and must therefore be excluded. *Cf. United Food*, 296 F. Supp. 3d at 1183.[10]

## 2.    The Court Should Exclude Dr. Hanssens' External Validity Opinion

Dr. Hanssens' External Validity Opinion relies on "Defendant's expert Dr. Strombom['s] . . . report," which Dr. Hanssens asserts "analyzes market prices of the at-issue cereals before and after the challenged claims were added or removed from the packaging," Hanssens Report ¶ 97; *see also id.* ¶¶ 95-97; *see also* Hanssens Tr. 363:22-25. But, as explained in detail in Plaintiffs' Motion to Exclude the Testimony of Bruce A. Strombom, Ph.D., Dr. Strombom's before-and-after sales analysis is wholly unreliable, and should be excluded, because he used demonstrably false assumptions about the data, and failed to control for any factors that might affect price other than the challenged claims. Because Dr. Hanssens relies on Dr. Strombom's before-and-after sales analysis and resulting opinions as the basis for his own External Validity Opinion, it must also be excluded as unreliable. *See Cook v. Sw. Airlines Co.*, 2003 WL 25668023, at *1 (C.D. Cal. Oct. 28, 2003) (noting that "because [certain documents] are inadmissible, witness testimony based thereon must also be excluded").[11]

---

[10] The issue of the appropriate "but-for" world to be used for the purpose of calculating damages was also relevant to opposing Post's motion to exclude the testimony of Steven Gaskin and Colin Weir, and so Plaintiffs likewise addressed it there. *See* Pls.' Opp. to Post's Mot. to Exclude the Testimony of Steven Gaskin & Colin Weir at 5-6, 18-20 (discussing the appropriate "but-for" world and explaining why Post's and Dr. Hanssens' proposed "but-for" world is wrong).

[11] The Court should similarly exclude Dr. Hanssens' opinions that are premised on what he refers to as Dr. Van Liere's "test and control survey," Hanssens Report ¶¶ 13, 94; Hanssens Tr. 103:22-104:8, 105:17-108:20, 126:20-127:4, 138:10-21, for the reasons discussed in Plaintiffs' Motion to Strike the Testimony of Dr. Kent D. Van Liere.

Further, "[c]onjoint results do not need to be verified by comparison to external data," in the first instances, because "the reliability of conjoint results can be tested using other methods," Omnibus Weir Decl. at 21; *see id.* ¶¶ 79-82.

**B.     The Court Should Exclude Dr. Hanssens' Lack of Evidence Opinions**

Dr. Hanssens' Lack of Evidence Opinions should be excluded because they are premised on a misunderstanding of the law that renders them irrelevant, and therefore inadmissible.

Dr. Hanssens first opines that "Mr. Silverman does not provide evidence that all or most consumers were exposed to the challenged claims." Hanssens Class Cert. Report at 33. A full reading of his opinion, however, makes clear that Dr. Hanssens is really opining about whether consumers *read* the claims, not whether they were *exposed* to them—two distinct legal (and factual) issues. Because all class members need not have read and relied on the challenged claims, however, Dr. Hanssens testimony regarding whether Mr. Silverman has adequately shown that all class members "viewed" the challenged claims is thus irrelevant. And while Plaintiffs do need to show class-wide *exposure*, Dr. Hanssens agrees they have done so.

In his summary of opinions, Dr. Hanssens opines that in order "[f]or Plaintiffs' claim to hold, it must be likely that all or many of the proposed class members [ ] were exposed to *and viewed* the challenged claims," *id.* ¶ 19 (emphasis added), and then further opines Mr. Silverman has not made such a showing, *see id.* ¶¶ 79-85; *see also id.* ¶¶ 31, 35, 48-49, 79, 82, 87 (discussing whether consumers were "exposed to *and viewed* the challenged claims" (emphasis added)); *id.* ¶¶ 24, 35, 39 (discussing whether class members "saw" or had "seen" the challenged claims). Dr. Hanssens is wrong as a matter of law.

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200. The FAL prohibits "untrue or misleading" statements in the course of business. *Id.* § 17500. This language is "broad" and "sweeping" to "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011) ["*Kwikset*"].

"The substantive right extended to the public by the UCL is the right to protection from fraud, deceit and unlawful conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009) (internal quotation marks and citation omitted). "[I]n service of the statute's larger purpose of protecting the general public against unscrupulous business practices," the UCL "focus[es] on the defendant's conduct, rather than the plaintiff's

damages," *id.* at 312. Thus, "a section 17200 violation . . . can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage," *State Farm v. Super. Ct.*, 45 Cal. App. 4th 1093, 1105 (1996). Instead, "[t]o state a claim under the UCL or FAL 'based on false advertising . . . it is necessary only to show that members of the public are likely to be deceived.'" *Pulaski v. Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th at 312). The public is likely to be deceived by, "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public," *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation omitted). In such cases, the UCL authorizes restitution of any money "which *may have* been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203 (emphasis added).

Although "class certification of UCL claims is available only to those class members who were actually exposed to the business practices at issue," *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017), "in 'cases involving product labels,' courts 'reasonabl[y] . . . infer that the class members were exposed to the allegedly misleading statements at the point of sale.'" *Martin v. Monsanto Co.*, 2017 WL 1115167, at *7 n.1 (C.D. Cal. Mar. 24, 2017) (quoting *Gilbert v. MoneyMutual, LLC*, 2016 WL 7785453, at *8 (N.D. Cal. Feb. 8, 2016)); *see also Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5746364, at *9 (N.D. Cal. Sept. 30, 2016) ("in numerous cases involving claims of false[ ] advertising, class-wide exposure has been inferred because the alleged misrepresentation is on the packaging of the item being sold" because "[i]n such a case, given the inherently high likelihood that in the process of buying the product, the consumer would have seen the misleading statement on the product and thus been exposed to it, exposure on a classwide basis may be deemed sufficient." (quoting *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015))). In other words, because California law requires only that absent class members be vulnerable to, or at risk of being defrauded by a misrepresentation, there is class-wide exposure any time a misrepresentation is uniformly *available to be seen* by every class member.

In *In re ConAgra Foods, Inc.*, for example, the court rejected the defendant's argument that "the classes are not ascertainable" because "they include . . . consumers who did not read or notice the '100% Natural' claim," since "*every putative class member has been exposed to the alleged misrepresentation,*

*because every bottle of Wesson Oil sold during the class period was labeled '100% Natural*.'" 302 F.R.D. 537, 567-68 (C.D. Cal. 2014) (emphasis added); *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 971 (C.D. Cal. 2015) (rejecting the same argument when ConAgra raised it a second time), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). And in *Astiana v. Kashi Co.*, a consumer class action challenging defendant's use of "All Natural" and "Nothing Artificial" on food products, 291 F.R.D. 493, 501 (S.D. Cal. 2013), the court found commonality satisfied because "*[b]y definition, all class members were exposed to such representations* and purchased Kashi products, creating a 'common core of salient facts,'" *id.* (emphasis added and quotation omitted).

The Ninth Circuit is in accord. In *Pulaski*, for example, the Ninth Circuit rejected Google's argument that the facts "present[ed] an example of disparate exposure," where "Pulaski's claim rests on allegations of deception through omission and falsehoods via the AdWords sign-up materials, all of which were presented to putative class members through the same online portal," 802 F.3d at 986 n.7. And in *Rogers v. Epson Am., Inc.*, 648 Fed. App'x 717 (9th Cir. 2016), the Court upheld the denial of class certification where "the evidence did not support a determination that all class members saw *or otherwise received* the misrepresentations," *id.* at 719 (emphasis added). *Cf. Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254-55 (9th Cir.), *cert. denied*, 139 S. Ct. 491 (2018) (it was "an error of law" to deny certification on basis that "it would be very difficult to determine whether the putative class members viewed the Heart Health statement as a disease claim or a structure/function claim" because "CLRA and UCL claims . . . 'will not require the court to investigate class members' individual interaction with the product'" (quoting *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012))).

*Hasemann v. Gerber Prod. Co.*, --- F.R.D. ---, 2019 WL 1434263 (E.D.N.Y. Mar. 31, 2019), is also instructive.[12] There, the defendant "argue[d] that Plaintiffs cannot satisfy several Rule 23 requirements

---

[12] Although the relevant portion of *Hasemann* discusses the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), 2019 WL 1434263, at *13, that law is closely analogous to Plaintiffs' California consumer protection claims. "[A]s is the case under the CLRA and UCL," the FDUTPA "require[s] . . . only that the deceptive practice is sufficiently material to deceive an objective reasonable consumer." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1103 (C.D. Cal. 2015). *See also Hasemann*, 2019 WL 1434263, at *14 ("the FDUTPA . . . require[s] that a plaintiff prove that an objective, reasonable person would likely have been deceived by the misrepresentations"). Further, like the statutes at issue here, "the FDUTPA . . . has 'broad remedial goals,'" *id.* at *24, and "does not require a plaintiff to prove actual reliance

because the putative class members were not uniformly *exposed* to the representations at issue," and "all putative class members did not *see* the challenged representations," *id.* at *12 (record citation omitted and second emphasis added). The court distinguished between being exposed to the challenged statement and having actually seen it, noting that "the absence of a reliance requirement means . . . [defendant] is incorrect to suggest that the plaintiffs must prove that every class member saw the" challenged statement. *Id.* *15 (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016)). To hold otherwise would "simply seek a reliance inquiry by another name." *Id.* (quoting *Carriuolo*, 823 F.3d at 985). Thus, the court noted "that actually viewing the representation is not required where," like here, "reliance is not at issue," but found that cases had "nevertheless le[ft] open the question of whether uniform *exposure* is necessary — i.e., *that every single product purchased must contain the representation*." *Id.* (second emphasis added).

Accordingly, even though courts are "more explicit about reading an exposure requirement into the UCL," *id.* at *19, than the FDUTPA, exposure merely means that class members had the *opportunity* to view the claim because it was on the product packaging. To hold otherwise would impermissibly inquire into each class members' interaction with the product and impose an individual reliance requirement.[13] *See id.* at *15; *Bradach*, 735 F. App'x at 254-55 ("courts have explained that CLRA and UCL claims are 'ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.'" (quoting *Tait*, 289 F.R.D. at 480 (internal quotation marks omitted))); *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 964-65 (9th Cir. 2016) ("[W]here the defendant's representations were allegedly made on a uniform and classwide basis, individual issues of reliance do not preclude class

---

on the alleged conduct,'" *id.* at *13 (quoting *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 691 (S.D. Fla. 2014).

[13] The *Hasemann* court also distinguished *Zakaria v. Gerber Prod. Co.*, 2016 WL 6662723 (C.D. Cal. Mar. 23, 2016), on which Post relies to argue that "plaintiffs cannot prove classwide exposure" to the statements "on the back, side or top flap of a box," s*ee* Dkt. No. 162 at 10-12, because "[i]n *Zakaria*, the court found that 'reliance is a necessary component of the class definition,' which is a component that is not required for class certification pursuant to the FDUTPA." *Hasemann*, 2019 WL 1434263, at *19 (quoting *Zakaria*, 2016 WL 6662723, at *18 n.6). This distinction shows the error in *Zakaria*, since, according to Ninth Circuit precedent, "[u]nder California law, class members in CLRA and UCL actions *are not required to prove their individual reliance* on the allegedly misleading statements." *Bradach*, 735 F. App'x at 254 (emphasis added); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("Under California's UCL, restitution is available to absent class members without individualized proof of deception, reliance, or injury." (citing *In re Tobacco II Cases*, 46 Cal. 4th at 320)).

certification." (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) ("non-reliance is not a basis for denial of class certification"))).

Indeed, Dr. Hanssens draws this same distinction, testifying that "viewing is active; being exposed to is passive," Hanssens Tr. 202:23-24, and agrees that class members have been "exposed to [statements] even if they don't read [them]," *id*. 204:6-8.

Because exposure does not require that a consumer actually see the challenged representations, it is irrelevant whether Mr. Silverman has shown that consumers "viewed any one of the specific challenged claims," Hanssens Class Cert. Report ¶ 80; *see also id.* ¶¶ 79-85; Hanssens Report ¶¶ 16-17, or that "proposed class members may not have even viewed the challenged health and wellness claims," Hanssens Class Cert. Report at 10, *see id.* ¶¶ 20-21, 29-48; Hanssens Report ¶ 114. Dr. Hanssens' testimony on these points must therefore be excluded.

Further, just as it is improper to indirectly impose a reliance requirement under the guise of classwide exposure, it is improper to impose one directly since, "[u]nder California's UCL, restitution is available to absent class members without individualized proof of deception, reliance, or injury." *Mazza*, 666 F.3d at 595 (citing *In re Tobacco II Cases*, 46 Cal. 4th at 320). Yet this is precisely what Dr. Hanssens opines is required for Plaintiffs to prove their claims—that "for each of the challenged claims" they must show that "proposed class members are likely to have relied on" it. Hanssens Class Cert. Report ¶ 87; *see also id.* ¶¶ 19, 24, 29, 31, 35, 49, 68, 74-75, 78, 87-89, 100, 103, 104 (opinions relating to whether class members relied on the challenged claims); *see also* Hanssens Report ¶¶ 6, 11, 18 (same). Because class members need not show reliance, however, Dr. Hanssens' testimony is irrelevant and should be excluded.

Moreover, despite offering his opinion regarding what Plaintiffs must show to establish liability, and whether Mr. Silverman has made such a showing, Dr. Hanssens admits he "honestly do[es]n't know . . . the legal standard [ ] here," Hanssens Tr. 113:14-15, and is "not the legal expert," *id.* at 313:15, so his opinion "may well be the same as the legal perspective, or it may not be," *id.* 113:15-16. In truth, Dr. Hanssens is simply not qualified to opine on what Plaintiffs must prove to establish liability, nor whether Mr. Silverman has "provide[d] adequate evidence" to make such a showing, because those are lawyer arguments and Dr. Hanssens is a "market research expert." *Id.* 113:17. *See also id.* 92:20-93:3, 113:17-19, 125:16-19, 279:20-21, 297:21-298:15, 313:13-15.

For example, in addition to (incorrectly) opining on the elements Plaintiffs must show to establish liability, Dr. Hanssens offers opinions on the *relevance* of Mr. Silverman's opinion, as well as the documents he relies on, *see, e.g.*, Hanssens Class Cert. Report ¶¶ 116, 118-21. Elsewhere, he argues that Mr. Silverman mischaracterizes or cherry-picks documents. *See, e.g., id.* ¶¶ 122-27. In short, many of Dr. Hanssens' opinions are "nothing more than lawyer argument dressed up as expert opinion," and should thus "be excluded under FRE 403 because [their] danger of confusing the issues, misleading the jury, and causing unfair prejudice substantially outweighs the probative value of its lawyer argument." *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017).

Moreover, [i]t is well-settled that allowing an expert to opine on an issue of law usurps the authority of the court." *Hughes v. Uumprovident Corp.*, 2008 WL 4452140, at *6 (N.D. Cal. Oct. 3, 2008) (citing *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) ("the role of experts is to interpret and analyze factual evidence and not to testify about the law" (citing *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law.")))). Thus, "legal conclusions provided by experts . . . are inadmissible." *Englebrick v. Worthington Indus., Inc.*, 2016 WL 6637712, at *1 (C.D. Cal. Mar. 11, 2016) (citing *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)); *see also RSI Corp. v. Int'l Bus. Machs. Corp.*, 2013 WL 1087468, at *4 (N.D. Cal. Mar. 13, 2013) ("An expert cannot give an opinion on 'an ultimate issue of law.'" (quotation omitted)); *Abaxis, Inc. v. Cepheid*, 2012 WL 2979019, at *3 (N.D. Cal. July 19, 2012) (an expert "cannot offer his opinion on purely legal matters").

But even if one were to apply the (incorrect) exposure standard Post advocates—requiring consumers to have actually viewed the challenged statements, *see, e.g.*, Dkt. No. 162 at 9-12—Dr. Hanssens' testimony still supports a finding of exposure. For example, Dr. Hanssens testified that consumers are exposed to claims on the front panel of each box when they "look[ ] at the box on the shelf," *see* Hanssens Tr. 203:24-204:5, and further that a consumer would have to "[s]lice off the whole top" of the box in order "to open a box of cereal without looking at the top flap," s*ee id.* 230:1-230:9. He also agrees that "habitual" as well as "other consumers" are "exposed to product messaging through advertising at the store and over time at their breakfast tables," *id.* 116:10-20, that "in some cases" consumers "put a cereal box on their table during breakfast, and maybe examine the box while" eating, *id.* 116:21-117:4, and that at least "the use of games

and crossword puzzles and whatnot on the boxes" leads to consumers "review[ing] the boxes over time even if [they] don't read all that stuff in the store," *id.* 124:10-23.[14] This testimony undermines and renders unreliable Dr. Hanssen's opinion that "[o]ne cannot reasonably assume that all or many of the proposed class members viewed the challenged claims." Hanssens Class Cert. Report ¶ 32; *see also id.* ¶¶ 19-21, 29-48, 79-85 (opining that consumers did not or may not have viewed the challenged statements); Hanssens Report ¶ 114 (same). In fact, this is precisely what California law permits here—"in numerous cases involving claims of false-advertising, class-wide exposure has been inferred because the alleged misrepresentation is on the packaging of the item being sold." *Ehret*, 148 F. Supp. 3d at 895. Dr. Hanssens' opinion should thus also be excluded for the independent reason that it is contrary to the law. *See United Food*, 296 F. Supp. 3d at 1183 ("[E]xclusion of opinions that are irrelevant as a matter of law or contrary to the law is appropriate through the *Daubert* process." (citations omitted)).

## II.    CONCLUSION

The Court should exclude Dr. Hanssens' testimony regarding his Supply Side, External Validity, and Lack of Evidence opinions.

Dated: August 9, 2019

Respectfully Submitted,

/s/ Jack Fitzgerald

**THE LAW OFFICE OF
JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, CA 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Attorneys for Plaintiffs***

---

[14] This testimony was in relation to "the children's segments," but the same concept applies to games on adult cereals. *See* Hanssens Tr. 232:22-234:4.