UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DEBBIE KROMMENHOCK and STEPHEN
HADLEY, on behalf of themselves, all others
similarly situated, and the general public,

Plaintiffs,

v.

POST FOODS LLC,

Defendant.

Case No. 3:16-cv-04958-WHO (JSC)

Declaration

of

**COLIN B. WEIR**

April 24, 2019

MAY REFERENCE MATERIALS DESIGNATED "CONFIDENTIAL" OR "HIGHLY

CONFIDENTIAL -- ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 15th Floor, Boston, Massachusetts 02108.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I. QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.   I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I received a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to food products, household appliances, herbal remedies, health/beauty care products, electronics, furniture, and computers.  My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony, is attached hereto as Exhibit 1.  This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition.

2.    Contained in Exhibit 1 is a list of numerous litigations in which I have participated in the design, execution and/or determination of the economic suitability of conjoint surveys, or have been found by the court to have expertise in conjoint analysis.  These cases include, but are not limited to *Jones v. Nutiva; Hunter v. Nature's Way; Sanchez-Knutson v. Ford Motor Company; Belfiore v. Procter and Gamble; Kurtz v. Kimberly Clark; In re Scotts EZ Seed Litigation; In re: ConAgra Foods; In re: Arris Cable Modem;* and *Hadley vs. Kellogg.*



Declaration of Colin B. Weir
April 24, 2019
Page 2 of 35

3.    I received graduate level training in conjoint analysis as part of my MBA.  I take continuing education in advanced conjoint design, execution, and analysis through Sawtooth Software, a leading provider of conjoint analysis software.

## II.  ENGAGEMENT

4.    I provide this declaration in connection with the case filed by Debbie Krommenhock and Stephen Hadley ("Plaintiffs") against Post Foods LLC ("Defendant" or "Post").  I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts and opinions set forth herein.

5.    I have been advised by Counsel for Plaintiffs that individuals purchased certain cereals manufactured by Post[1] which were sold bearing various health claims ("the Claims" or "Health Claims") despite the inclusion of high amounts of sugar in the Products.[2]  I have been further advised that Plaintiffs allege the Claims are deceptive, false or misleading to reasonable consumers, unlawful, or in breach of warranty, and therefore should not have been made, or in the alternative should have been accompanied by a disclosure.  I have been asked by Counsel for Plaintiffs to ascertain whether it would be possible to determine damages on a class-wide basis using evidence common to Class members, and, if so, to provide a framework for the calculation of damages suffered by the class as a result of the allegedly false and misleading Claims.

6.    ETI is being compensated at the rate of $675 per hour for my work on this case.  The opinions expressed in this declaration are my own, and my compensation is not dependent upon the substance of these opinions or the outcome of the litigation.

---

[1] Various sizes and flavors of: Great Grains, Honey Bunches of Oats, Raisin Bran, Bran Flakes, Alpha Bits, Honey Comb, and Waffle Crisp (the "Cereals," or collectively "Post Products").

[2] *See, generally,* Second Amended Complaint, filed September, 14, 2017 ("Complaint").

 ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
April 24, 2019
Page 3 of 35

7.     The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report and in Exhibit 2, attached hereto.  In addition, I have relied upon my educational background and more than 15 years of experience.

## III.  SUMMARY

8.     After a review of documentary evidence, background research (including research as to the Defendant and retailers of the Post Products), and a review of economic literature, I believe that it is possible to determine damages[3] stemming from Defendant's behavior, which as Plaintiffs allege, involves the sale of Post Products with various Health Claims that misled and deceived consumers.

9.     The Health Claims, as misrepresented to consumers, appear to have been a product differentiator.  Thus, the correct measure of damages in this situation is either Price Premium damages, wherein consumers would receive the difference in market value between what they were promised (a Product labeled as being healthy) and what they received (a Product that is not healthy as promised); or Change in Demand Restitution, wherein the class would receive the amount of additional purchases (increased demand) they were induced to make by Post's use of the Health Claims without a disclosure, representing the advantage Post realized at the hands of the class through that practice.

10.    Below I discuss a method for calculating such price premiums: conjoint analysis; and a method for calculating changes in demand: a Demand Model consumer survey.  Steven Gaskin has calculated both myriad price premium factors as well as changes in demand that result from Defendants' Misrepresentations and omissions.  These results are statistically significant.

---

[3] In this report, I use the term "damages" in a colloquial and/or economic sense to refer to the concept of harm to the Class or gain by the Defendant and not in a legal sense.



Declaration of Colin B. Weir
April 24, 2019
Page 4 of 35

11.   When combined with the sales data analysis that I have performed, and assuming that Plaintiffs are successful in establishing liability for all of their claims, for all products, and for all of the date ranges identified below in Table 2, total price premium damages would be $69,316,353.92.  Total change in demand damages would be $140,417,315.41.

## IV.  THE ALLEGED MISREPRESENTATIONS

12.   Plaintiffs' allegations center on Health Claims made on the Products.  Plaintiffs allege that that the Products contain high amounts of sugar, yet also contain Health Claims. These Health Claims "are deceptive because they are incompatible with the dangers of the excessive sugar consumption to which these foods contribute."[4]

13.   I understand that Plaintiffs seek certification of a Class of purchasers of the challenged Post's Products, from at earliest, August, 2012 to, at the latest, the present, as set forth below in Table 2.[5]

**Product Differentiation**

14.   In economics, the concept of product differentiation can be summarized as the introduction of product attributes or features that allows the consumer to differentiate between otherwise similar products, with the goal of increasing sales and profits.[6]  The Health Claims appears to be such a differentiator.

15.   Post appears to actively attempt to differentiate its Products using Health Claims. Bruce Silverman, Plaintiffs' marketing expert, identifies the following examples of research identifying health issues as differentiating factors.

---

[4] The Complaint.

[5] My analysis as described below can be tailored to any specific date range.

[6] Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009, at 305-316, 449.



Declaration of Colin B. Weir
April 24, 2019
Page 5 of 35

16.   For example, a 2011 Post Great Grains On-boarding and Innovation Session report stated that "Health-oriented consumers choose cereal based on health first, then taste appeal/fruit."[7]

17.   A 2012 Great Grains On-Boarding and Innovation Session report stated that the prototypical consumer for the brand was willing to pay more for cereals that offer specific health benefits, and believes that "Cereals that are fortified with fiber and protein are a convenient way to manage my health."[8]

18.   Post's FY15 Annual Shopper Marketing Plans for Walmart included a chart headed "Cereal Purchase Considerations and Drivers." "Health and nutritional attributes such as high fiber and protein," was a top ranked consideration factor.[9]

19.   In 2016, Post commissioned NMI (a market research firm) to conduct a study to better understand what attributes are important to consumers when choosing a cereal. The report indicated that the top two attributes were taste and "good for health/wellness."[10]

20.   Another NMI study included in its top two tiers of attributes most important to consumers who use ready to eat cereals as "Tastes good," "Good for my health and wellness," "Contains whole grain," "High in fiber," "All natural," "No high fructose corn syrup," "Fortified with vitamins/minerals," and "Good for the Money."[11]

21.   Yet another Post study reported that "Boomer Women ages 40 to 59 are at the stage when eating healthy is paramount." "These days, you're trying to put more nutritious and natural

---

[7] Silverman Report, April 24, 2019, at para 91.

[8] *Id.*, at para 66.

[9] *Id.*, at para 77.

[10] *Id.*, at para 75.

[11] *Id.*, at para 76.



Declaration of Colin B. Weir
April 24, 2019
Page 6 of 35

food into your body, so the last thing you want is a lot of artificial sweeteners, synthetic nutrients and additives. They don't want their efforts sabotaged."[12]

22.   A segmentation study for Post's Great Grains brand reported that consumers defined as "Mindful Balancers" want "healthy," "high in fiber" and "minimally processed cereal." In fact, the top demand driver from both Image/Emotive and Functional standpoints for this group was "Healthy."[13]

23.   Defendant appears to understand that the Health Claims constitutes a product feature that will differentiate the Post Products with the Health Claims from competitors, allowing Defendant to charge a premium for this attribute and derive higher revenues and profits therefrom.

## V.  FRAMEWORK FOR DAMAGES

24.   As a threshold matter, it is my opinion that it is possible to determine class-wide damages in this case tailored to Plaintiffs' theories of liability using Defendant's own available business records, third-party records, and industry resources.

25.   Below, I propose the use of conjoint analysis to calculate Price Premium Damages (measured as the value of the price premium they paid solely attributable to the misrepresentations as to the Health Claims).  In this litigation, price premium damages for the Class are the portion of the market price of the Post Products solely attributable to Defendant's misrepresentations, or in other words, the difference in market value between what was promised, and what was delivered.  I also propose the use of demand modeling to measure Change in Demand damages (wherein the class would recover the amount of additional

---

[12] *Id.*, at para 49.

[13] *Id.*, at para 143.



Declaration of Colin B. Weir
April 24, 2019
Page 7 of 35

purchases --increased demand -- the Class made as a result of Post's use of the Health Claims
without a disclosure).

26.   The methodologies proposed below are flexible, and can determine the damages for
any prescribed time period, and for any specific geographies.

## VI.  CALCULATION OF THE PRICE PREMIUM:
### CONJOINT ANALYSIS

27.   Conjoint analysis is a representative survey technique that permits an economist to
analyze the value of various product attributes.[14]

**Conjoint Analysis: Overview of the Methodology**

28.   Conjoint analysis was initially developed in the 1960s and continues to evolve as an
economic tool.  Conjoint analysis is used to determine market preferences and price/attribute
information for a given product.

29.   Conjoint analysis is founded on rigorous statistical and economic principles.[15]
Indeed, conjoint analysis has been successfully used in litigation contexts to calculate damages
for years.[16]

---

[14] Conjoint analysis as a discipline is quite broad, and can be used to facilitate many other sorts of research beyond the specific application that I discuss here.

[15] *See, e.g.*, Sawtooth Software technical papers, available online at http://www.sawtoothsoftware.com/support/technical-papers; *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013) http://www.analysisgroup.com/assessing_false_advertising_claims.aspx

[16] *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*; *See, e.g., Khoday v. Symantec Corp.*, 2014 WL 1281600, at *10 (D. Minn. March 13, 2014); *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015); *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014); *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014);  *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *In re Arris Cable Modem Consumer Litig.*, 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018); *Hadley*



Declaration of Colin B. Weir
April 24, 2019
Page 8 of 35

30.   In a typical conjoint analysis, survey panelists are confronted with various choices of product attributes and prices, and asked either to rank their preferences, or to choose the most preferred attribute or combination thereof.

31.   Through conjoint analysis, by systematically varying the attributes of the product and observing how respondents react to the resulting product profiles, one can statistically measure information about the individual attributes.

32.   Statistical methods (including regression analysis) are then applied to the survey responses to calculate attribute value.[17]

33.   Conjoint analysis has a long history of use in industry and is widely accepted and relied upon by enterprises such as Procter & Gamble, Microsoft, General Motors, Ford, and Google.[18]  Conjoint is also widely respected by academics and is a regular part of the curriculum at universities world-wide, such as Duke, Ohio State, Northeastern, University of South Australia, NYU, and University of California.  It appears that Post also relies upon conjoint analysis in the ordinary course of its business.[19]

34.   The use of conjoint analysis to evaluate consumer products is too extensive to document exhaustively here.  But, conjoint analysis can, and indeed has, been used to analyze the value and importance of product claims, such as the Health Claims.  One recent study used conjoint analysis to determine "whether health claims (claims of health-promoting effects) of food products positively influence product price and consumer choices."[20]  Prior to conducting

---

*v. Kellogg Sales Co*., 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019).

[17] *See, e.g.*, *Getting Started With Conjoint Analysis: Strategies for Product Design and Pricing Research*, Bryan K. Orme, Research Publishers 2014 ("Getting Started With Conjoint").

[18] *Id.*

[19] *See, e.g.*, Krom-POST00008305 *et seq*.

[20] *Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis*, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013.



Declaration of Colin B. Weir
April 24, 2019
Page 9 of 35

the conjoint survey, the study finds that "[i]n general, consumers consider health and wholesomeness as important aspects of food quality." The study then uses choice-based conjoint analysis to measure the effects of various product attributes on the price of a single product, green tea. The study examines only four product attributes: health claim, country of origin, the size of the product, and price. The study finds that the health claim on green tea is a positive, statistically significant purchase driver, and results in a price premium of approximately 20%.

35.   In light of proposed FDA standardized front-of-pack nutrition labeling standards, another study sought "to estimate the relative contribution of declared amounts of different nutrients to the perception of the overall 'healthfulness' of foods by the consumer."[21] The study determined that claims such as "this product has no saturated fat," "this product is fat free," and "this product is low in total fat" were among the 22 most important nutrient content claims. The study concludes that "Conjoint analysis can lead to a better understanding of how consumers process information about the full nutrition profile of a product, and is a powerful tool for the testing of nutrient content claims."

36.   An application of conjoint analysis to orange juice was used to evaluate which attributes of orange juice consumers value most. Results of the study showed that vitamin C content was the most important purchase driver besides price, and the minimum price premium for vitamin C was approximately 17%.[22]

37.   Conjoint analysis, as a survey tool, does not rely on an existing data set for its analysis because it relies on data generated through the survey process. Common conjoint analysis software permits the administration of a representative sample survey, and the analysis of the results therefrom.

---

[21] *Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis*, Drewnowski, Adam *et al*., Public Health Nutrition: 13(5), 688–694.

[22] *Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation*, Gadioli, I. L. et al., Journal of Sensory Studies 28 (2013):57-65.



Declaration of Colin B. Weir
April 24, 2019
Page 10 of 35

38.  No individualized analyses, or Class-Member-specific inquiry will be required.  All relevant data needed to complete the conjoint analysis will be common evidence.

**Price Premium: The Gaskin Conjoint Survey**

39.  I have been provided with, and have reviewed, the Expert Report of Steven Gaskin.[23] Mr. Gaskin is a Principal at Applied Marketing Science, Inc.  He has worked in the field of market research and marketing science models since 1982.  Mr. Gaskin is an award-winning, published practitioner of conjoint analysis.  I understand that Mr. Gaskin was, amongst other things, assigned to design and execute a conjoint survey to measure the price premium that Plaintiffs and the Class experienced as a result of the Health Claims.

40.  The Gaskin Report describes this conjoint analysis and the resulting price premiums resulting from the Health Claims.

41.  I worked with Mr. Gaskin to develop parts of the survey.

42.  Gaskin has measured the price premium (measured in dollars and/or percentage terms) at the time and point of sale solely attributable to the Health Claims through the use of a "Labels" attribute[24] and price attribute[25] along with several distractor attributes.  Gaskin's survey includes actual market-based price points derived, in part, from market research presentations produced by Defendant, and sales data produced by Defendant and IRI, which I have also reviewed.[26]  I analyzed this sales data and consulted with Gaskin as to the market-based price points for use in his survey.  Gaskin also considered information about the Products when selecting the other attributes and levels for inclusion in the conjoint.[27] Gaskin has also taken into

---

[23] Expert Report of Steven P. Gaskin, April 24, 2019 ("Gaskin Report").

[24] *See, e.g.*, Gaskin Report, at paras 18, 22, and 36.

[25] *Id.*, at paras 18-19, 21 and 36.

[26] *Id.*, at para 21.

[27] *Id.*



Declaration of Colin B. Weir
April 24, 2019
Page 11 of 35

account the fact that the number of Products sold is a known fact, and is fixed as a matter of history.[28]

43.   Gaskin's Labels attribute draws its levels from second amended complaint, discussions with Plaintiffs' Counsel, label proofs, and an understanding of Plaintiffs' stated theory of liability.[29]

44.   In addition to these factors that influenced Gaskin's survey design, after the completion of the survey, the results were calculated using Hierarchical Bayes regression.[30]  The use of Hierarchical Bayes regression provides for, among other factors, the ability to estimate better market-level results from a conjoint survey.

45.   After reviewing the Gaskin Report, the methodology underlying Gaskin's conjoint survey, and the documentary evidence relied upon by Gaskin and incorporated into the survey design, it is my opinion that Gaskin's conjoint survey is properly designed to measure the price premium solely attributable to the Health Claims.  The survey is especially economically suitable given Gaskin's use of market-based prices, and considerations given as to the fixed quantity of Products sold that are part of the Class Definition.

**Supply Side Considerations**

46.   I understand that Mr. Gaskin considered and accounted for supply side factors in the determination of his survey design and calculation of price premiums.[31]

47.   I have also considered supply side factors in my determination of price premium damages.  First, unlike in a Lanham Act or intellectual property litigation, where a but-for

---

[28] *Id.*, at para 19.

[29] *Id.,* at para 21-22.

[30] *Id.*, at paras 13, 15-16, 40.

[31] *Id.*, at paras 14, 18-19, 21 and 36.



Declaration of Colin B. Weir
April 24, 2019
Page 12 of 35

quantity of sales may need to be determined, in this litigation, the historic number of units sold is a fact, and for purposes of analyzing price premium damages, it would be illogical that the quantity supplied be anything other than the actual number of units sold by Defendant.

48.   Moreover, it is the retailers and not Defendant that set the price for the Products, and do so in a competitive environment.

49.   Furthermore, if one were to assume, *arguendo*, that Defendant did set prices and would not have lowered its price in concert with demand (indicating that Defendant priced above the market clearing price), then the economic outcome would be that many or all of the purchases would not have taken place at all.  As such, the price premium developed by Mr. Gaskin will be an inherently conservative measure.

50.   I worked closely with Mr. Gaskin to ensure that his survey was appropriately designed to measure the true market price premium solely attributable to the Health Claims.

51.   Mr. Gaskin and I had several discussions concerning the design of his survey where I provided input based upon economic concepts, and sales and market data.  We also had several discussions concerning how the ultimate results of his survey would be interpreted and applied.

52.   One of the most important and most frequent topics of discussion between Mr. Gaskin and me was the data on actual sales of the Products in the real-world marketplace during the relevant time period. These real-world transactions occurred at prices that *already* reflect the supply side factors then extant in the marketplace.  I understand that Mr. Gaskin relied upon these historical data in setting the prices used in his conjoint survey.  We also discussed that variability in pricing at the retail level showed that retailers' pricing was responsive to changing market forces.

53.   Another important supply-side factor that Mr. Gaskin and I discussed was that, as I discuss below, the market for the Products was an "ordinary" market, subject to competitive pressures that both Defendant and retailers identified as risks to their business.



Declaration of Colin B. Weir
April 24, 2019
Page 13 of 35

54.   Many major retailers for the Products in this litigation identify a willingness to adjust prices in response to changing economic conditions and consumer preferences.

- Walmart

  ***We face strong competition from other retailers and wholesale club operators (whether through physical retail, digital retail or the integration of both), which could materially adversely affect our financial performance.***

  The retail business is highly competitive. Each of our segments competes for customers, employees, store and club sites, products and services and in other important aspects of its business with many other local, regional, national and global retailers and wholesale club operators, as well as other national and international internet-based retailers and retail intermediaries.

  Where necessary, to compete effectively with competitors who price merchandise at points lower than the prices we set under our EDLP philosophy, we will lower our prices on goods for sale. A failure to respond effectively to competitive pressures and changes in the retail markets could materially adversely affect our financial performance.[32]

- Kroger:

  **COMPETITIVE ENVIRONMENT**

  The operating environment for the food retailing industry continues to be characterized by intense price competition, aggressive expansion, increasing fragmentation of retail and online formats, entry of non-traditional competitors and market consolidation.  We have developed a strategic plan that we believe provides a balanced approach that will enable us to meet the wide-ranging needs and expectations of our customers in this challenging economic environment.  However, the nature and extent to which our competitors implement various pricing and promotional activities in response to increasing competition, including our execution of our strategic plan, and our response to these competitive actions, can adversely affect our profitability.  Our profitability and growth have been, and could continue to be, adversely affected by changes in the overall economic environment that affect consumer spending, including discretionary spending.[33]

---

[32] Wal-mart Stores, Inc., 2016 10-K Annual Report filed with the US Securities and Exchange Commission.

[33] The Kroger Co. 2016 10-K Annual Report filed with the US Securities and Exchange Commission.



Declaration of Colin B. Weir
April 24, 2019
Page 14 of 35

- Publix:

*Increased competition and low profit margins could adversely affect the Company.*

The retail food industry in which the Company operates is highly competitive with low profit margins. The Company's competitors include national and regional supermarket chains, independent supermarkets, supercenters, membership warehouse clubs, mass merchandisers, dollar stores, drug stores, specialty food stores, restaurants, convenience stores and online retailers. The Company's ability to attract and retain customers is based primarily on quality of goods and service, price, convenience, product mix and store location.

As a result of the highly competitive environment, traditional supermarkets, including the Company, face business challenges. There has been a trend in recent years for traditional supermarkets to lose market share to nontraditional competitors. The Company's ability to retain its customers depends on its ability to meet the business challenges created by this highly competitive environment. There can be no assurance that the Company will be able to meet these challenges. In addition, the Company believes it will face increased competition in the future from existing and potentially new competitors and its financial condition and results of operations could be impacted by the pricing, purchasing, advertising or promotional decisions made by its competitors as well as competitor format innovation and location additions.[34]

- Safeway:

*Competitive Industry Conditions*

We face strong competition from traditional grocery retailers, non-traditional competitors such as supercenters and club stores, as well as from specialty and niche supermarkets, drug stores, dollar stores, convenience stores and restaurants. Increased competition may have an adverse effect on profitability as the result of lower sales, lower gross profits and/or greater operating costs.

Our ability to attract customers is dependent, in large part, upon a combination of location, quality, price, service, selection and condition of assets. In each of these areas, traditional and non-traditional competitors compete with us and may successfully attract our customers to their stores by aggressively matching or exceeding what we offer. In recent years, many of our competitors have increased their presence in our markets. Our responses to competitive pressure, such as additional promotions and increased advertising, could

---

[34] Publix Super Markets, Inc. 2016 10-K Annual Report filed with the US Securities and Exchange Commission.

ETI ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
April 24, 2019
Page 15 of 35

adversely affect our profitability.  We cannot guarantee that our actions will succeed in gaining or maintaining market share.  Additionally, we cannot predict how our customers will react to the entrance of certain non-traditional competitors into the grocery retailing business.

Because we face intense competition, we need to anticipate and respond to changing consumer demands more effectively than our competitors.  We strive to achieve and maintain favorable recognition of our unique private-label brands, effectively market our products to consumers, competitively price our products and maintain and enhance a perception of value for consumers.  Finally, we need to source and market our merchandise efficiently and creatively.  Failure to accomplish these objectives could impair our ability to compete successfully and adversely affect our growth and profitability.[35]

- SuperValu:

**Competition**

Wholesale and Retail each operate in a highly competitive environment.

Wholesale competes directly with a number of traditional and specialty grocery wholesalers and retailers that maintain or develop self-distribution systems.  Supervalu believes it competes in this business on the basis of price, quality, assortment, schedule and reliability of deliveries and services, service fees and distribution facility locations.

Principal competition for Supervalu's Retail segment comes from traditional grocery retailers, including regional and national chains and independent grocery store operators, and non-traditional retailers, such as supercenters, membership warehouse clubs, specialty supermarkets, hard discount stores, dollar stores, online retailers, convenience stores, drug stores and restaurants.  Supervalu's ability to differentiate itself from its competitors and create an attractive value proposition for its customers is dependent upon a combination of price, quality, customer service, convenience, e-commerce offerings, assortment, in-stock levels, brand perception, store location and conditions, in-store marketing and merchandising and promotional strategies.

Supervalu believes that the success of its Wholesale and Retail segments is dependent upon the ability of its own stores, as well as the stores of wholesale customers it supplies, to compete successfully.  Supervalu also competes to attract and maintain licensed and franchised operators to operate stores to which it provides wholesale distribution and services. This competition

---

[35] Safeway Inc. 2015 10-K Annual Report filed with the US Securities and Exchange Commission.



generally takes the form of alternative investment formats, such as a potential or existing licensee's investment in fast food restaurants, dollar stores, specialty supermarkets, drug stores and other potential investments.

Recent and ongoing consolidation within the grocery industry has resulted in, and is expected to continue to result in, increased competition, including from some competitors that have greater financial, marketing and other resources than Supervalu.[...]

**Supervalu faces intense competition.**

The grocery business is intensely competitive, and the recent and ongoing consolidation within the grocery industry is expected to result in increased competition, including from some competitors that have greater financial, marketing and other resources than Supervalu.  The grocery industry is characterized by relatively small operating margins, and as competition in certain areas intensifies and as the industry continues to consolidate, Supervalu's results of operations may be negatively impacted through a loss of sales and reductions in gross margins.  See "Business—Competition" for a discussion of the competitive environment.

If Supervalu is unable to appropriately respond to competition and execute on its initiatives to improve the competitive position or profitability of Supervalu, and differentiate Supervalu's offerings, Supervalu's sales, financial condition and results of operations may be adversely affected.[...]

**Competitive Environment**

The United States grocery business is highly competitive and management expects operating results will continue to be impacted by the effects of operating in a highly competitive and price-sensitive marketplace.  In fiscal 2017, Supervalu's Retail segment was impacted to a greater degree than anticipated by price competition, competitive store openings and a challenging sales and operating environment.  This environment contributed to lower sales from identical retail stores, which impacted gross profit and operating earnings.  These factors affecting the Retail segment are expected to impact fiscal 2018 as well.[36]

---

[36] SuperValu Inc. 2016 10-K Annual Report filed with the US Securities and Exchange Commission.

Declaration of Colin B. Weir
April 24, 2019
Page 17 of 35

- Ahold Delhaize (Stop & Shop):

**Competitive environment and economic conditions (S)**

Changes to the competitive landscape and a weak macroeconomic climate without appropriate response could threaten Ahold Delhaize's ability to achieve its strategic objectives

Key risk Drivers

• Consumer value perception (price, assortment, quality)

• Changing customer behavior (e.g., online shopping) and competition

• Lack of distinctiveness

• Consumer purchasing power under pressure

• Inflationary forces impacting cost of goods sold

• Pressure on margin[37]

- Post

***We operate in categories with strong competition.***

The consumer food and beverage, sports nutrition and sports supplement categories are highly competitive. Competition in these categories is based on, among other things, product quality, price, effective promotional activities and the ability to identify and satisfy dynamic, emerging consumer preferences. Our competitors may have substantial financial, marketing and other resources. Increased competition can reduce our sales due to loss of market share or the need to reduce prices to respond to competitive and customer pressures. Competitive and customer pressures, as well as industry supply and market demand, also may limit our ability to increase prices, including in response to cost increases. In most product categories, we compete not only with widely advertised branded products, but also with private label and store brand products. A strong competitive response from one or more of our competitors to our marketplace efforts, or a shift in consumer preferences to competitors' products, could result in us reducing prices, increasing marketing or other expenditures or losing market share. Our profits could decrease if a reduction in prices or increased costs are not counterbalanced with increased sales volume.

---

[37] Ahold Delhaize Annual Report 2016.

Declaration of Colin B. Weir
April 24, 2019
Page 18 of 35

***We must identify changing consumer and customer preferences and develop and offer products to meet these preferences.***

Consumer and customer preferences evolve over time. The success of our products depends on our ability to identify these changing preferences and to offer products that appeal to consumers and customers. Consumer preference changes include dietary trends, attention to different nutritional aspects of foods and beverages, concerns regarding the health effects of certain foods and beverages, sourcing practices relating to ingredients and animal welfare concerns. Any significant changes in consumer preferences or our inability to anticipate or react to such changes could result in reduced demand for our products and negatively impact our financial condition, results of operations and cash flows.

***Loss of, a significant reduction of purchases by or bankruptcy of a major customer may adversely affect our financial condition, results of operations and cash flows.***

A limited number of customer accounts represents a large percentage of our consolidated net sales. Our largest customer, Walmart, accounted for approximately 13% of our net sales in fiscal 2018. Walmart also is the largest customer of our Post Consumer Brands segment, accounting for approximately 29% of Post Consumer Brands' net sales in fiscal 2018.

The success of our businesses depends, in part, on our ability to maintain our level of sales and product distribution through high-volume food distributors, retailers, club stores, super centers and mass merchandisers. The competition to supply products to these high-volume stores is intense. Currently, we do not have long-term supply agreements with a substantial number of our retail customers, including our largest customers. These high-volume stores and mass merchandisers frequently reevaluate the products they carry. A decision by our major customers to decrease the amount of merchandise purchased from us, sell another national brand on an exclusive basis or change the manner of doing business with us could reduce our revenues and materially adversely affect our financial condition, results of operations and cash flows.

***Our results may be adversely impacted if consumers do not maintain favorable perceptions of our brands.***

Maintaining and continually enhancing the value of our brands is critical to the success of our business. Brand value is based in large part on consumer perceptions. Success in promoting and enhancing brand value depends in large part on our ability to provide high-quality products. Brand value could diminish significantly due to a number of factors, including adverse publicity



Declaration of Colin B. Weir
April 24, 2019
Page 19 of 35

    about our products, packaging or ingredients (whether or not valid), our failure
to maintain the quality of our products, the failure of our products to deliver
consistently positive consumer experiences, concerns about food safety, our
products becoming unavailable to consumers or consumer perception that we
have acted in an irresponsible manner.[38]

## VII.  TABULATION OF THE TOTAL RETAIL SALES
## OF THE POST PRODUCTS

    55.   The data necessary to tabulate sales of the Products in this litigation is already
available, or can easily be obtained.[39]  Such data comes from one of several sources: Defendant's
own business records (*e.g.*, pricing data, product attributes, sales volumes) or industry resources
and independent market research (*e.g.*, pricing and product attribute information from data
sources such as IRI).

    56.   I have been provided with the necessary and available sales and other data, as
described below.

    57.   Counsel for Plaintiff subpoenaed, and obtained sales data from Information
Resources Inc.[40]  This data set contains monthly (4 Week Periods) sales data of cereal products,
from August 2012 through December 2018, for the state of California.[41]  The data contains
information, by product/UPC, the Dollar and Unit Sales, as well as brand and size.  This data is
broken down into normal sales, and so-called "merchandized" or promotional sales--or what
might commonly be described as data for products "on sale" vs "not on sale."  This allows for the

---

[38] Post Holdings, Inc., 10-K Annual Report filed with the US Securities and Exchange Commission, November 16, 2018.

[39] I understand that Counsel for Plaintiff has issued a subpoena to Costco for additional sales data.  I intend to supplement this Declaration should such data become available.

[40] IRI data.

[41] A seven week period from August into October 2018 was omitted from the Production.  I have forecasted sales for this period.



Declaration of Colin B. Weir
April 24, 2019
Page 20 of 35

analysis to account for couponing and discount promotional sales such as 50% off or Buy One Get One ("BOGO").

58.   Defendant regularly uses and relies upon third party market research data of this kind.[42]

59.   Total dollar and unit sales of the Post Products were calculated from the IRI through-the register sales data as the basis for the total sales of the Post Products during the Class period: August 29, 2012 through the present (unless specified below in Table 2).  I conducted a Newey-West time series regression forecast with seasonal controls to project sales for the period January-March 2019.[43]

60.   I have summarized dollar/unit sales of the Post Products at retail below in Table 1.

_____

[The remainder of this page intentionally left blank.]

_____

[42] *See, e.g.,* Krom-POST00000629, Krom-POST00000819, Krom-POST00001448.

[43] Prior to trial, I would expect to supplement this forecast with additional IRI data, or an updated forecast to bring the estimate of sales to the final date of the class period.



Declaration of Colin B. Weir
April 24, 2019
Page 21 of 35

| TABLE 1. Sales Data Summary[44] | | | |
|---|---|---|---|
| **Product** | **Claim[45]** | **Unit Sales** | **Dollar Sales** |
| Waffle Crisp | No Fructose | ▮ | ▮ |
| Waffle Crisp | Iron & Zinc | ▮ | ▮ |
| Honey Comb | Nutritious | ▮ | ▮ |
| Honey Comb | Council Stamp | ▮ | ▮ |
| Alpha Bits | Fructose, Nutritious | ▮ | ▮ |
| Alpha Bits | Council Stamp | ▮ | ▮ |
| Bran Flakes | Fiber/Weight, No Fructose, Whole Grain | ▮ | ▮ |
| Bran Flakes | Fiber/Digestive, Council Stamp | ▮ | ▮ |
| Raisin Bran | No Fructose | ▮ | ▮ |
| Raisin Bran | Healthy, Nutritious, Fiber | ▮ | ▮ |
| Raisin Bran | Council Stamp | ▮ | ▮ |
| HBO Granola | Wholesome | ▮ | ▮ |

[44] The sales data in Table 1 reflect the relevant sales of the Post Products, by individual claim, where the sales data correspond with the date range data for each such claim and Cereal below in Table 2. Ultimately, the sales data used to calculate damages will be based upon the results of the Gaskin conjoint surveys, the Court's decisions as to class certification, and an ultimate finding of liability. For example, there are two claims relating to the Waffle Crisp cereal. In this instance, the date ranges for the No Fructose claim are a subset of the dates for the Iron & Zinc claim. If liability is found only with respect to the No Fructose claim, only the sales data for the No Fructose Claim would come into the damages analysis. If liability is found for both claims, it may be the case that a premium relating to both claims would apply to the sales during which both claims were present, and then a separate premium solely attributable to the Iron & Zinc claim would apply to the net remaining sales. For some cereal/claims/date ranges, more than two sales figures may need to be netted against one another. This netting of the sales for the same cereal will ultimately be determined by both Gaskin's results and the Court/Jury.

[45] Claims are abbreviated for brevity. See the Complaint for a full list of detailed claims.



Declaration of Colin B. Weir
April 24, 2019
Page 22 of 35

| TABLE 1.<br>Sales Data Summary[44] | | | |
|---|---|---|---|
| **Product** | **Claim[45]** | **Unit Sales** | **Dollar Sales** |
| HBO Granola | Council Stamp | ▮ | ▮ |
| HBOWholeGrain | All | ▮ | ▮ |
| HBO | No Fructose | ▮ | ▮ |
| HBO | Four Grains | ▮ | ▮ |
| HBO | Council Stamp | ▮ | ▮ |
| HBO | Wholesome | ▮ | ▮ |
| Great Grains | Less Processed | ▮ | ▮ |
| Great Grains | Why Less Processed | ▮ | ▮ |
| Great Grains | Council Stamp | ▮ | ▮ |
| Great Grains | Field to Bowl | ▮ | ▮ |
| Great Grains | Metabolism | ▮ | ▮ |

Source: IRI Data.  UPCs and date ranges used to generate measures of relevant sales correspond to those in Table 2 below.

[The remainder of this page intentionally left blank.]


ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
April 24, 2019
Page 23 of 35

<table>
<tr><th colspan="4">TABLE 2.<br>Date Range Summary</th></tr>
<tr><th>Product</th><th>UPC</th><th>Claim[46]</th><th>Date Range[47]</th></tr>
<tr><td>Waffle Crisp</td><td>0884912103703</td><td>No Fructose</td><td>8/29/2012  - Discontinued</td></tr>
<tr><td>Waffle Crip</td><td>0884912103703</td><td>Iron & Zinc</td><td>8/29/2012 – 10/23/2016</td></tr>
<tr><td>Honey Comb</td><td>0884912111715<br>0884912111814<br>0884912003942<br>0884912006769</td><td>Nutritious</td><td>8/29/2012 - 1/8/2017<br>8/29/2012 - 1/8/2017<br>8/30/2012 - 1/8/2017<br>4/2/2016 - 1/8/2017</td></tr>
<tr><td>Honey Comb</td><td>0884912111715<br>0884912111814</td><td>Council Stamp</td><td>8/29/2012  - 1/8/2017</td></tr>
<tr><td>Alpha Bits</td><td>0884912025098<br>0884912003584</td><td>Fructose,<br>Nutritious</td><td>8/29/2012 - 3/28/2013<br>3/29/2013 - 12/31/2018</td></tr>
<tr><td>Alpha Bits</td><td>0884912025098<br>0884912003584</td><td>Council Stamp</td><td>8/29/2012 - 3/28/2013<br>3/29/2013 - 3/31/2019</td></tr>
<tr><td>Bran Flakes</td><td>0884912113139</td><td>Fiber/Weight,<br>No Fructose,<br>Whole Grain</td><td>1/1/2013 – 3/31/2019</td></tr>
<tr><td>Bran Flakes</td><td>0884912113139</td><td>Fiber/Digestive,<br>Council Stamp</td><td>10/1/2012 – 3/31/2019</td></tr>
<tr><td>Raisin Bran</td><td>0884912114600<br>0884912114709</td><td>No Fructose</td><td>8/29/2012  - 3/24/2015</td></tr>
<tr><td>Raisin Bran</td><td>0884912114600<br>0884912114709</td><td>Healthy,<br>Nutritious, Fiber</td><td>1/9/2013 - 1/11/2017<br>1/10/2013  - 1/11/2017</td></tr>
<tr><td>Raisin Bran</td><td>0884912114600<br>0884912114709</td><td>Council Stamp</td><td>8/29/2012  - 3/31/2019</td></tr>
<tr><td>HBO Granola</td><td>0884912002020<br>0884912003416<br>0884912003423</td><td>Wholesome</td><td>3/26/2014 – 3/31/2019</td></tr>
<tr><td>HBO Granola</td><td>0884912002020<br>0884912003416<br>0884912003423</td><td>Council Stamp</td><td>2/3/2014 - 3/31/2019<br>5/4/2013 - 3/31/2019<br>3/28/2013 -  3/31/2019</td></tr>
<tr><td>HBOWholeGrain</td><td>0884912017864<br>0884912005632</td><td>All</td><td>9/16/2014 - 10/20/2015<br>9/16/2014 - Discontinued</td></tr>
</table>

---

[46] Claims are abbreviated for brevity.  See the Complaint for a full list of detailed claims.

[47] Where the date range for the claim begins before the class period, a beginning date of September 1, 2012 was used.  Where a product was discontinued with a challenged label, all sales data from the date of discontinuation was considered.

ETI ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
April 24, 2019
Page 24 of 35

| TABLE 2. Date Range Summary | | | |
|---|---|---|---|
| **Product** | **UPC** | **Claim**[46] | **Date Range**[47] |
| HBO | 0884912014252 | No Fructose | 8/29/2012 – 3/31/2019 |
| | 0884912014276 | | 8/29/2012 – 3/31/2019 |
| | 0884912006813 | | 3/25/2016 – 3/31/2019 |
| | 0884912014306 | | 8/29/2012 – 3/31/2019 |
| | 0884912003911 | | 5/28/2013 – Discontinued |
| | 0884912249265 | | 4/14/2016 – 3/31/2019 |
| | 0884912001863 | | 8/29/2012 – 3/31/2019 |
| | 0884912014283 | | 8/29/2012 – 12/6/2016 |
| | 0884912005649 | | 9/2/2014 – 3/31/2019 |
| | 0884912012791 | | 8/29/2012 – 3/31/2019 |
| | 0884912012784 | | 8/29/2012 – 3/31/2019 |
| | 0884912002174 | | 8/29/2012 – Discontinued |
| | 0884912002334 | | 8/29/2012 – Discontinued |
| | 0884912014245 | | 8/29/2012 – 3/31/2019 |
| | 0884912014269 | | 8/29/2012 – 3/31/2019 |
| | 0884912006806 | | 3/25/2016 – 3/31/2019 |
| | 0884912014290 | | 8/29/2012 – 3/31/2019 |
| | 0884912003928 | | 5/28/2013 – 3/31/2019 |
| | 0884912249272 | | 4/14/2016 – 3/31/2019 |
| | 0884912001870 | | 8/29/2012 – 3/31/2019 |
| | 0884912014467 | | 8/29/2012 – 11/31/2016 |
| | 0884912003560 | | 4/9/2013 – Discontinued |
| | 0884912003218 | | 4/9/2013 – Discontinued |
| | 0884912003492 | | 3/11/2013 – Discontinued |
| | 0884912003645 | | 3/13/2013 – Discontinued |
| | 0884912001832 | | 8/29/2012 – 3/31/2019 |
| | 0884912001856 | | 8/29/2012 – 3/31/2019 |
| | 0884912002181 | | 8/29/2012 – Discontinued |
| | 0884912002327 | | 8/29/2012 – Discontinued |
| | 0884912001542 | | 12/3/2012 – Discontinued |
| | 0884912032171 | | 11/26/2012 – Discontinued |
| | 0884912112212 | | 11/20/2012 – 3/31/2019 |
| | 0884912004376 | | 8/20/2013 – 3/31/2019 |
| | 0884912017864 | | 12/3/2012 – 9/15/2014 10/21/2014 – 3/31/2019 |
| HBO | 0884912014252 | Four Grains | 11/30/2012 - 12/17/2014 4/2/2015 - 4/25/2016 |
| | 0884912014276 | | 10/12/2016 – 3/31/2019; |
| | 0884912001863 | | 11/30/2012 - 12/10/2012 11/4/2013 - 2/1/2015 |
| | 0884912014306 | | 2/13/2015 - 4/28/2016 10/12/2016 – |
| | 0884912014283 | | 3/31/2019; |
| | 0884912006813 | | 12/27/2012 - 3/31/2019 |
| | 0884912012791 | | 8/29/2012 - 3/31/2019 |
| | 0884912012784 | | 8/29/2012 - 12/6/2016 |
| | 0884912002174 | | 3/25/2016 - 3/31/2019 |
| | 0884912002334 | | 2/7/2013 - 3/31/2019 |
| | 0884912014245 | | 11/29/2012 - 3/31/2019 |
| | 0884912001870 | | 3/7/2013 - Discontinued |
| | 0884912014290 | | 3/7/2013 - Discontinued |

Declaration of Colin B. Weir
April 24, 2019
Page 25 of 35

<table>
<tr><th colspan="4" align="center"><strong>TABLE 2.</strong><br>Date Range Summary</th></tr>
<tr><th>Product</th><th>UPC</th><th>Claim[46]</th><th>Date Range[47]</th></tr>
<tr><td></td><td>0884912014467<br>0884912014269<br>0884912006806<br>0884912001832<br>0884912001856<br>0884912002181<br>0884912002327<br>0884912001542<br>0884912032171<br>0884912112212<br>0884912004376<br>0884912017864<br>0884912308382</td><td></td><td>11/9/2012 - 6/12/2013 10/13/2014 - 4/28/2016<br>10/12/2016 – 3/31/2019;<br>12/27/2012 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>8/29/2012 - 11/31/2016<br>11/29/2012 - 4/28/2016 10/12/2016 –<br>3/31/2019;<br>3/25/2016 - 3/31/2019<br>3/13/2013 - 3/31/2019<br>3/13/2013 - 3/31/2019<br>3/7/2013 - Discontinued<br>3/7/2013 - Discontinued<br>12/3/2012 - Discontinued<br>11/26/2012 - Discontinued<br>12/18/2014 - 4/20/2016<br>8/20/2013 - 3/31/2019<br>12/3/2012 - 6/1/2014<br>9/10/2018 - 3/31/2019</td></tr>
<tr><td>HBO</td><td>0884912014252<br>0884912014276<br>0884912006813<br>0884912014306<br>0884912003911<br>0884912249265<br>0884912001863<br>0884912014283<br>0884912005649<br>0884912012791<br>0884912012784<br>0884912002174<br>0884912002334<br>0884912014245<br>0884912014269<br>0884912006806<br>0884912014290<br>0884912003928<br>0884912249272<br>0884912001870<br>0884912014467<br>0884912003560<br>0884912003218<br>0884912003492<br>0884912003645<br>0884912001832<br>0884912001856<br>0884912002181<br>0884912002327</td><td>Council Stamp</td><td>8/29/2012 - 3/31/2019<br>11/30/2012 - 3/31/2019<br>3/25/2016 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>5/28/2013 - Discontinued<br>4/14/2016 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>9/2/2014 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>8/29/2012 - Discontinued<br>8/29/2012 - Discontinued<br>8/29/2012 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>3/25/2016 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>5/28/2013 - Discontinued<br>4/14/2016 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>1/21/2013 - Discontinued<br>10/25/2012 - Discontinued<br>3/11/2013 - Discontinued<br>3/13/2013 - Discontinued<br>8/29/2012 - 3/31/2019<br>8/29/2012 - 3/31/2019<br>8/29/2012 - Discontinued<br>8/29/2012 - Discontinued</td></tr>
</table>

ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
April 24, 2019
Page 26 of 35

| Product | UPC | Claim[46] | Date Range[47] |
|---|---|---|---|
| **TABLE 2.** <br> **Date Range Summary** | | | |
|  | 0884912001542 <br> 0884912032171 <br> 0884912112212 <br> 0884912004376 <br> 0884912017864 <br> 0884912308382 |  | 12/3/2012 - Discontinued <br> 11/26/2012 - Discontinued <br> 11/20/2012 - 3/31/2019 <br> 8/20/2013 - 3/31/2019 <br> 12/3/2012 - 9/15/201410/21/2015 – 3/31/2019; <br> 9/10/2018 - 3/31/2019 |
| HBO | 0884912003560 <br> 0884912003218 <br> 0884912003492 <br> 0884912003645 | Wholesome | 1/21/2013 - Discontinued <br> 10/25/2012 - Discontinued <br> 3/11/2013 - Discontinued <br> 3/13/2013 - Discontinued |
| Great Grains | 0884912002372 <br> 0884912116505 <br> 0884912126115 <br> 0884912126016 <br> 0884912001818 | Less Processed | 8/29/2012 - 3/8/2017 <br> 8/29/2012 - 3/8/2017 <br> 8/29/2012 – 10/17/2016 <br> 8/29/2012 – 10/17/2016 <br> 8/29/2012 - Discontinued |
| Great Grains | 0884912002372 <br> 0884912116505 <br> 0884912126115 <br> 0884912126016 <br> 0884912001818 <br> 0884912002624 <br> 0884912002266 | Why Less Processed | 8/29/2012 - 3/8/2017 <br> 8/29/2012 - 3/8/2017 <br> 8/29/2012 – 10/16/2013 11/6/2014 – 10/17/2016; <br> 8/29/2012 – 10/17/2016 <br> 8/29/2012 - Discontinued <br> 8/29/2012 - 3/20/2013 <br> 8/29/2012 - 3/20/2013 |
| Great Grains | 0884912002372 <br> 0884912116505 <br> 0884912126115 <br> 0884912126016 <br> 0884912001818 <br> 0884912002624 <br> 0884912004574 <br> 0884912002266 <br> 0884912004567 <br> 0884912126153 | Council Stamp | 8/29/2012 - 3/31/2019 <br> 8/29/2012 - 3/31/2019 <br> 8/29/2012 - 3/31/2019 <br> 8/29/2012 - 3/31/2019 <br> 8/29/2012 - Discontinued <br> 8/29/2012 – 8/20/2013 <br> 8/21/2013 - Discontinued <br> 8/29/2012 – 8/20/2013 <br> 8/21/2013 - Discontinued <br> 8/13/2018 - 3/31/2019 |
| Great Grains | 0884912002372 <br> 0884912116505 <br> 0884912126115 <br> 0884912126016 <br> 0884912001818 <br> 0884912002624 <br> 0884912004574 <br> 0884912002266 <br> 0884912004567 | Field to Bowl | 8/29/2012 - 3/8/2017 <br> 8/29/2012 - 3/8/2017 <br> 8/29/2012 – 10/16/2013 11/6/2014 – 10/17/2016; <br> 8/29/2012 – 10/17/2016 <br> 8/29/2012 - Discontinued <br> 8/29/2012 – 8/20/2013 <br> 8/21/2013 - Discontinued <br> 8/29/2012 – 8/20/2013 <br> 8/21/2013 - Discontinued |
| Great Grains | 0884912002624 <br> 0884912004574 <br> 0884912002266 <br> 0884912004567 | Metabolism | 8/29/2012 – 8/20/2013 <br> 8/21/2013 – Discontinued <br> 8/29/2012 – 8/20/2013 <br> 8/21/2013 – Discontinued |

ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
April 24, 2019
Page 27 of 35

## VIII.  CALCULATION OF PRICE PREMIUM

## DAMAGES

61.  After completing all of the work described above, calculating total price premium damages in this litigation is straightforward.

**Gaskin Conjoint Results**

62.  The Gaskin Declaration sets forth the results of the conjoint analysis performed by Gaskin.  Gaskin has identified myriad price premiums for individual claims and products.[48] These statistically significant price premia are set forth in Table 3 below.  Gaskin has affirmed that these factors "appl[y] across all varieties of that brand of the cereal or granola at issue in the class."[49]

**Price Premium Damages**

63.  With the price difference due to the Claim determined on a percentage basis, the calculation of class-wide damages for any Post Products will be:

$$\%Price\ Premium\ Factor : Claim \times \$Units\ Sold\ = Damages$$

64.  In this calculation, *$Units sold* can be either the total sales at retail to consumers, or total wholesale sales made by Post.  These calculations can be performed on a class-wide basis, across different geographies, and for any defined time period, including the proposed Class Period(s) in this litigation.

---

[48] Gaskin Report, at para 48.

[49] *Id*.



Declaration of Colin B. Weir
April 24, 2019
Page 28 of 35

| | | | TABLE 3. | |
| | | | Price Premium Damages | |
| Product | Claim[50] | Dollar Sales | Price Premium (%) | Damages |
| --- | --- | --- | --- | --- |
| Waffle Crisp | No Fructose | ██████ | 7.40% | ████ |
| Waffle Crisp | Iron & Zinc | ████ | 6.31% | ████ |
| Honey Comb | Nutritious | ██████ | 0.75% | ████ |
| Honey Comb | Council Stamp[51] | ██████ | 12.2% | ██████ |
| Alpha Bits | Fructose | █████ | 10.7% | █████ |
| Alpha Bits | Nutritious | ████ | 15.0% | █████ |
| Alpha Bits | Council Stamp | █████ | 29.7% | █████ |
| Bran Flakes | Fiber/Digestive | ██████ | 9.16% | █████ |
| Bran Flakes | No Fructose | ██████ | 7.67% | █████ |
| Bran Flakes | Whole Grain | ██████ | 7.67% | █████ |
| Bran Flakes | Council Stamp | ██████ | 12.5% | █████ |
| Bran Flakes | Fiber/Weight | ██████ | 8.10% | █████ |
| Raisin Bran | No Fructose | ██████ | 7.03% | █████ |
| Raisin Bran | Healthy | ██████ | 2.34% | █████ |
| Raisin Bran | Nutritious | ██████ | 2.13% | █████ |
| Raisin Bran | Fiber | ██████ | 2.55% | █████ |

---

[50] Claims are abbreviated for brevity.  See the Complaint for a full list of detailed claims.

[51] I understand that Gaskin has set forth a conservative alternative to the Price Premia calculated for the use of the Whole Grains Council Stamp.  The damages above could be recalculated using this alternative measure.



Declaration of Colin B. Weir
April 24, 2019
Page 29 of 35

| | | **TABLE 3.** **Price Premium Damages** | | |
|---|---|---|---|---|
| **Product** | **Claim**[50] | **Dollar Sales** | **Price Premium (%)** | **Damages** |
| Raisin Bran | Council Stamp | ■■■■■ | 8.10% | ■■■■ |
| HBO Granola | Wholesome | ■■■■ | 4.53% | ■■■■ |
| HBO Granola | Council Stamp | ■■■■ | 9.30% | ■■■■ |
| HBOWholeGrain | Balanced Diet | ■■■■ | 3.27% | ■■■■ |
| HBOWholeGrain | Nutritious | ■■■■ | 3.68% | ■■■■ |
| HBOWholeGrain | Whole Grain | ■■■■ | 4.29% | ■■■■ |
| HBOWholeGrain | No Fructose | ■■■■ | 3.47% | ■■■■ |
| HBOWholeGrain | Council Stamp | ■■■■ | 10.4% | ■■■■ |
| HBO | No Fructose | ■■■■■ | 4.26% | ■■■■■ |
| HBO | Four Grains | ■■■■ | 2.55% | ■■■■ |
| HBO | Council Stamp | ■■■■ | 7.67% | ■■■■■ |
| HBO | Wholesome | ■■■■ | 2.34% | ■■■■ |
| Great Grains | Less Processed | ■■■■■ | 0.00% | ■■ |
| Great Grains | Why Less Processed | ■■■■■ | 1.78% | ■■■■ |
| Great Grains | Council Stamp | ■■■■■ | 6.90% | ■■■■■ |
| Great Grains | Field to Bowl | ■■■■■ | 5.79% | ■■■■■ |
| Great Grains | Metabolism | ■■■■ | 1.33% | ■■■■ |
| Source: IRI Data.  Gaskin Declaration. | | | | |

ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
April 24, 2019
Page 30 of 35

65.  If Plaintiffs successfully establish liability for all claims and all products during the time periods shown above in Table 2, total price premium damages would be $69,316,353.92.

## IX.  CALCULATION OF CHANGE IN DEMAND DAMAGES

**Gaskin Change in Demand Survey**

66.  I understand that Plaintiffs allege that the Products contain statements or labels stating or implying that they are healthy, but omit information regarding the dangers of excessive sugar consumption.   I understand that Mr. Gaskin has been tasked with conducting a market research survey and analysis that measures the effect of the omitted information regarding the dangers of sugar consumption (hereafter "omissions") on respondents' prospective consumption of the Cereals, and in turn, their volume of purchases.

67.  Mr. Gaskin's approach uses a test and control experimental design.[52]  Respondents are randomly assigned to the Test Group or the Control Group.  Respondents in the test group were shown the Health Claims.  Respondents in the control group were shown the same statements with the addition of "Warning: due to its high added sugar content, consumption of [the cereal being tested] may lead you to exceed the USDA's recommended daily added sugar maximum, which can cause type 2 diabetes, heart disease, fatty liver disease, and tooth decay." In the survey, the only difference between the Test and Control experience is this warning, therefore any difference observed in responses between the two groups is due to this warning.[53]

---

[52] Gaskin Report, at para s 53-54, 61.

[53] *Id.*, at para 54.



Declaration of Colin B. Weir
April 24, 2019
Page 31 of 35

68.  Because when a consumer consumes less cereal, he or she buys less (i.e., needs to "refill" less frequently), this change in demand reflects sales that otherwise would not have occurred had Defendant provided a disclosure (e.g., as used in the survey) as to the health risks of high added sugar.

**Gaskin Change in Demand Results**

69.  The Gaskin Declaration sets forth the results of the demand model performed by Gaskin.  Gaskin has identified that consumers would have consumed at least 26.3% less Great Grains and 28.1% less Honey Bunches of Oats had a disclaimer been made.[54,55]  Gaskin has affirmed that these factors "appl[y] across all varieties of Great Grains and Honey Bunches of Oats cereal at issue in the class.  Moreover, given the similarity of the results, and their high statistical significance, I believe it is reasonable to assume that a similar change in demand would apply to the remaining Class products.  To be conservative, I would estimate the demand change for the remaining products as the lower of the two survey results, i.e., the 26.3% observed with respect to Great Grains."[56]

**Change in Demand Damages**

70.  With the change in demand resulting from a disclosure determined on a percentage basis, the calculation of class-wide damages for any Post Products will be:

$$\%Change\ in\ Demand \times \$Units\ Sold\ = Damages$$

---

[54] Gaskin Report, at paras 52, 71-72.

[55] Gaskin also offers a conservative alternative to these figures.  *See, id.*  Either set of figures can be used in the damages framework set forth below.

[56] *Id.*, at para 52, 71-72.  As per Gaskin's recommendation, I apply the 26.3% reduction in demand to the remaining class Products, though any adjusted figure could be used in its place.



Declaration of Colin B. Weir
April 24, 2019
Page 32 of 35

71.   These calculations can be performed on a class-wide basis, across different geographies, and for any defined time period, including the proposed Class Period(s) in this litigation.

72.   In this calculation, *$Units sold* is the total purchases made at retail by consumers. The retail purchase method would measure the total increase in purchases that Post induced consumers to make in the absence of a disclosure.

73.   Table 4 below sets forth the calculation of Change in Demand damages.  The dollar sales figures are drawn from Table 3 above.

_____

[The remainder of this page intentionally left blank.]

Declaration of Colin B. Weir
April 24, 2019
Page 33 of 35

| TABLE 4.<br>Change in Demand Damages[57] | | | |
|---|---|---|---|
| **Product** | **Dollar Sales** | **Change in Demand (%)** | **Damages** |
| HBO Granola | █████ | 28.1% | █████ |
| HBOWholeGrain | █████ | 28.1% | █████ |
| HBO | █████ | 28.1% | █████ |
| Great Grains | █████ | 26.3% | █████ |
| Waffle Crisp | █████ | 26.3% | █████ |
| Honey Comb | █████ | 26.3% | █████ |
| Alpha Bits | █████ | 26.3% | █████ |
| Bran Flakes | █████ | 26.3% | █████ |
| Raisin Bran | █████ | 26.3% | █████ |
| TOTAL | | | █████ |
| Source: IRI Data.  Gaskin Declaration. | | | |

## X.  INDIVIDUAL INQUIRY IS NOT REQUIRED

**Variations in purchase price do not alter the calculation of total, class-wide damages**

74.   Variations in purchase price do not prevent the calculation of class-wide damages.

Such variations in price are captured in the sales data used for analysis and price variations are

---

[57] If narrower date ranges are adopted, the sales figures shown here can be replaced by alternate sales figures from Table 3 above, or recalculated to match the class period to be certified.


ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
April 24, 2019
Page 34 of 35

an element of both hedonic regression and conjoint surveys. Such variations are also inapposite to the calculation of class-wide damages, because the ultimate method of distribution or allocation of damages to individuals during claims administration or a settlement does not alter the calculation of total, class-wide damages.

75. Class-wide damages under a price premium model can be calculated from the bottom up as the sum of individual damages (as defendants often assert), or can be calculated from the top down, without individual inquiry, by finding the percentage price difference resulting from a given Claim and then multiplying the premium by the dollars sold (as discussed in detail above). As outlined above, I propose to use the latter technique, obviating the need for individual inquiry.

76. Ultimately, no matter the method by which damages are distributed, it does not affect the calculation of, or the total amount of class-wide damages in this litigation.

**Individual behavior or use of the Products is irrelevant to the determination of class-wide damages**

77. Calculating a price premium does not depend on individual behaviors or uses of the Products. If the market price for the Products was higher as a result of the Claims, then ALL consumers will have paid a higher price than if the Claims had not been made. How any individual consumer uses the Product will not impact the market price or the market price premium, which will be paid by all consumers.

**Individual reasons for purchase do not change the price, or price premium paid by an individual**

78. Individual reasons for purchase are irrelevant in this case, because a consumer's individual reasons for purchase do not change the price paid by that individual. As I have discussed above, if there is a market price premium included in the price of the Products as a



Declaration of Colin B. Weir
April 24, 2019
Page 35 of 35

result of the Health Claims and a consumer buys such a Product, he will pay that premium regardless of his reasons for purchase, because his individual reasons for purchase do not change the price he will pay.

79.  Even if a consumer bought a Product with the intention to immediately throw that Product in the garbage, the consumer has been harmed because she paid more for the Product than she would have but for the Health Claims.


## XI.  RESERVATION OF RIGHTS

80.  My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial.  I therefore reserve the right to amend or modify my testimony.


### VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that this declaration was executed at Boston, Massachusetts, this 24th day of April, 2019.

Colin B. Weir



# Exhibit 1

# Statement of Qualifications
## of

# COLIN B. WEIR

**Statement of Qualifications**

**COLIN B. WEIR**

Colin B. Weir is Vice President at Economics and Technology, Inc.  Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis.  Such analysis often involves analysis of databases, call detail records, and other voluminous business records.  Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software.  Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations.  Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels.  Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue,  Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation,  Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University.  He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, a business member of the Boston Bar Association, serves on the Board of Trustees of the Waring School, and serves as the comptroller for the Sybaris Investment Partnership.

ECONOMICS AND TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.


Mr. Weir has submitted the following testimony:

**United States District Court, Central District of California, Western Division,** *Jennifer Reitman and Carol Shoaff, individually and on behalf of a class of similarly situated individuals, v. Champion Petfoods USA, Inc. and Champion Petfoods LP*, Case: 2:18-cv-01736-DOC-JPR, on behalf of Gustafson Gluek PLLC, Declaration submitted on April 8, 2019.

**United States District Court, Central District of California, Western Division,** *Barry Braverman, et al., v. BMW of North America, LLC, et al.*, Case No. 8:16-cv-00966-TJH-SS, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on March 29, 2019.

**United States District Court, Southern District of Florida, West Palm Beach Division,** *Judith Marilyn Donoff on behalf of herself and all others similarly situated, v. Delta Air Lines, Inc.*, Case No. 9:18-cv-81258-DMM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted on March 26, 2019.

**United States District Court, Western District of Washington,** *Jacob Beaty and Jessica Beaty on, behalf of themselves and all others similarly situated, v. Ford Motor America*, Case No. 3:17-CV-05201-RBL, on behalf of Simmons Hanly Conroy LLC; Declaration submitted on February 22, 2019; Deposition on March 29, 2019.

**United States District Court, Southern District of New York,** *Nicholas Parker, on behalf of himself and all others similarly situated, v. United Industries Corporation*, Case No. 1:17-cv-05353, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2019; Declaration submitted March 21, 2019.

**United States District Court, Northern District of California,** *Debbie Krommenhock and Stephen Hadley, on behalf of themselves, all others similarly situated, and the general public, v. Post Foods, LLC,* Case No. 3:16-cv-04958-WHO (JSC), on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted January 11, 2019; Deposition on March 1, 2019.

**United States District Court, Southern District of New York,** *Leona Hunter and Anne Marie Villa, on behalf of themselves and all others similarly situated, v. Time Warner Cable Inc.*, Case No. 15-cv-06445-JPO (JLC), on behalf of Bursor & Fisher, P.A. Declaration submitted on November 30, 2018; Deposition on December 21, 2018; Reply Declaration submitted on February 27, 2019.

**United States District Court, Northern District of California,** *Jeremiah Revitch, on Behalf of Himself and all Others Similarly Situated, v. Citibank, N.A.*, Case No. 17-cv-06907-JCS, on behalf of Bursor & Fisher, P.A. Declaration submitted on November 27, 2018; Deposition on



December 28, 2018; Reply Declaration submitted on February 1, 2019; Deposition on February 26, 2019.

**United States District Court, Central District of California,** *Kaylee Browning and Sarah Basile, on behalf of themselves and all others similarly situated, v. Unilever United States Inc.*, Case No. 8:16-cv-02210, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 22, 2018; Deposition on November 1, 2018; Reply Declaration submitted on November 23, 2018.

**United States District Court, Southern District of New York,** *Lori Canale, individually, and on behalf of all others similarly situated, v. Colgate-Palmolive Co.,* Case No. 7:16-CV-03308-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 19, 2018.

**Superior Court for the State of California, In and for the County of San Francisco,** *Michelle Gyorke-Takatri and Katie Silver on behalf of themselves and all others similarly situated, v. Nestlé USA, Inc. and Gerber Products Company,* Case No. CGC 15-546850, on behalf of Stanley Law Group, Declaration submitted on September 7, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc*., Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Declaration submitted on August 15, 2018; Deposition on October 12, 2018; Reply Declaration on December 21, 2018.

**Superior Court of the State of California, For The County of San Francisco,** *Deanna Gastelum and Heather Bryden individually and on behalf of all other persons similarly situated, v. Frontier California Inc.*, Case No. CGC-11-511467, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration submitted on July 31, 2018, Declaration submitted August 13, 2018.

**United States District Court, For the Southern District of New York,** *Suzanna Bowling, individually and on behalf of all others similarly situated, v. Johnson & Johnson and McNeil Nutritionals, LLC*, Case No. 1:17-cv-03982-AJN, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 30, 2018, Deposition on September 6, 2018; Reply Declaration submitted on November 16, 2018.

**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.*, Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 15, 2018; Deposition on August 28, 2018; Reply Declaration submitted on November 21, 2018.



**United States District Court, Northern District of California, San Francisco Division,** *In re: Chrysler-Dodge-Jeep EcoDiesel® Marketing, Sales Practices, and Products Liability Litigation Dorun Bali, et al., v. Fiat Chrysler Automobiles N.V., FCA US LLC, Sergio Marchionne, VM Motori S.p.A., VM North America, Inc., Robert Bosch GmbH, Robert Bosch LLC, and Volkmar Denner,* Case No. MDL 2777-EMC, on behalf of Lieff Cabraser Heimann & Bernstein, Declaration submitted on June 6, 2018, Deposition on July 18, 2018, Reply Declaration submitted on September 4, 2018.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted April 30, 2018, Deposition on May 31, 2018; Reply Declaration submitted June 25, 2018; Declaration submitted on September 20, 2018; Deposition on September 28, 2018.

**United States District Court, Northern District of Illinois, Eastern Division,** *Teresa Elward, Dennis Keesler, Leasa Brittenham, Kathy Beck and Nathaniel Beck, Angelia East, Sarah LaVergne, Tony And Lauren Fitzgerald, Gregory Gray, Bethany Williams, John McLaughlin, Stacy Cisco, and William Ferguson and Cheryl Ferguson, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 1:15-cv-09882-JZL, on behalf of Greg Coleman Law, Declaration submitted April 20, 2018; Reply Declaration submitted on July 13, 2018; Deposition on August 17, 2018.

**United States District Court for the Northern District of California,** *Jackie Fitzhenry-Russell, an individual, on behalf of herself, the general public and those similarly situated v. The Coca Cola Company, and Does 1-50*, Case No. 5:17-CV-00603-EJD, on behalf of Gutride Safier, LLP, Declaration submitted April 16, 2018; Deposition on October 3, 2018.

**United States District Court for the Southern District of New York,** *Josephine James Edwards, individually and on behalf of all others similarly situated, v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT, on behalf of Bursor & Fisher, P.A., Declaration submitted April 16, 2018; Deposition on June 7, 2018.

**United States District Court, Northern District of California,** *Jackie Fitzhenry-Russell, Robin Dale, and Gegham Margaryan, as individuals, on behalf of themselves, the general public and those similarly situated, v. Dr. Pepper Snapple Group, Inc., Dr Pepper/Seven Up, Inc., and Does 1-50*, Case No. 5:17-cv-00564-NC (lead); Case No. 5:17-cv-02341-NC (consolidated); Case No. 5:17-cv-04435-NC (consolidated)*, on behalf of Gutride Safier, LLP, Declaration submitted April 9, 2018; Deposition on April 19, 2018; Reply Declaration submitted June 6, 2018; Supplemental Declaration submitted on November 19, 2018.

**United States District Court for the Western District of Texas, Austin Division,** *Sylvia Morris, on behalf of herself and all others similarly situated, v. Modernize Inc.*, Case No. 17:-cv-963-SS, on behalf of Bursor & Fisher, P.A., Declaration submitted March 13, 2018; Deposition on June 14, 2018.



**United States District Court, Northern District of California, San Jose Division,** *In re: Arris Cable Modem Consumer Litigation*, Case No. 17-cv-1834-LHK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on March 9, 2018; Reply Declaration submitted April 9, 2018; Deposition on April 11, 2018; Declaration submitted June 13, 2018; Declaration submitted January 31, 2019; Deposition on February 14, 2019; Reply Declaration submitted on March 14, 2019.

**United States District Court, Southern District of New York,** *In re: Amla Litigation*, Case No. 1:16-cv-06593-JSR, on behalf of Levi & Korsinsky LLP, Declaration submitted on March 5, 2018; Declaration submitted November 14, 2018; Deposition on November 28, 2018.

**United States District Court, Eastern District of Michigan,** *Toby Schechner, Barbara Barnes, Laura Bliss, Kathleen Jordan, Kathryn Limpede, Louise Miljenovic, Candace Oliarny, Beverly Simmons, Richard Thome And Mary Ellen Thome, V. Whirlpool Corporation,* Case No. 16-cv-12409-SJM, on behalf of Robbins Geller Rudman & Dowd, LLP, Declaration submitted February 12, 2018; Deposition on May 15, 2018; Reply Declaration submitted May 17, 2018.

**United States District Court, Southern District of California,** *Jose Conde, et al., v. Sensa, et al.*, Case No. 14-cv-51 JLS (WVG), on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Declaration submitted February 21, 2019.

**United States District Court, Northern District Of Illinois, Eastern Division,** *Angel Bakov, Julie Herrera, and Kinaya Hewlett, individually and on behalf of all others similarly situated, v.Consolidated World Travel, Inc. d/b/a Holiday Cruise Line, a Florida corporation,* Case No. 15-cv-02980-HDL SEC, on behalf of Bursor & Fisher, P.A., Declaration submitted February 6, 2018; Deposition on April 25, 2018.

**United States District Court, Northern District of Illinois,** *Jennifer Beardsall, Daniel Brown, Jennifer Carlsson, Deborah Cartnick, Amy Connor-Slaybaugh, Phyllis Czapski, Raelee Dallacqua, Autumn Dean, Skye Doucette, Christopher Draus, Gerald Gordon, Alexandra Groffsky, Emma Groffsky, Joyce Ivy, La Tanya James, Michelle Jessop, Joy Judge, Kathy Mellody, Susan Nazari, Megan Norsworthy, Deborah Ostrander, Martina Osley, Dana Phillips, Thomas Ramon, Jr., Nancy Reeves, Matthew Robertson, Shelley Waitzman, Jamilla Wang, and Amber Wimberly, Individually and on Behalf of All Others Similarly Situated, v. CVS Pharmacy, Inc., Target Corporation, Walgreen Co., Wal-Mart Stores, Inc., and Fruit of the Earth, Inc.*, Case No. 1:16-cv-06103, on behalf of Greg Coleman Law, Declaration submitted December 22, 2017; Reply Declaration on May 4, 2018.

**United States District Court, Southern District of New York,** *Jaish Markos, individually and on behalf of all others similarly situated, v. Russell Brands, LLC*, Case No. 16-CV-04362(CS), on behalf of The Sultzer Law Group, Declaration submitted on December 1, 2017, Deposition on January 4, 2018.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of California,** *Siera Strumlauf, Benjamin Robles, and Brittany Crittenden, individually and on behalf of all others similarly situated,  v.  Starbucks Corporation,* Case No. 16-CV-01306-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 31, 2017, Deposition on December 13, 2017.

**United States District Court, Southern District of California,** *Sheila Dashnaw, William Meier, and Sherryl Jones, individually, and on behalf of all others similarly situated, v. New Balance Athletics, Inc., a corporation; and DOES 1 through 50, inclusive,* Case No. 3:17-cv-00159-L-JLB, on Behalf of The Wand Law Firm, Declaration submitted on September 8, 2017; Deposition on October 5, 2017; Rebuttal Declaration submitted December 11, 2017.

**United States District Court, Central District of California,** *Veronica Brenner, on behalf of herself and all others similarly situated, v. Procter & Gamble Co.*, Case No. 8:16-1093-JLS-JCG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 5, 2017; Deposition on October 10, 2016.

**United States District Court, Eastern District of California,** *Joann Martinelli, individually and on behalf of all others similarly situated, v. Johnson & Johnson And McNeil Nutritionals, LLC*, Case No. 2:15-cv-01733-MCE-DB, on behalf of Bursor & Fisher, P.A., Declaration submitted August 28, 2017, Deposition on December 20, 2017; Reply Declaration submitted on January 5, 2018.

**United States District Court, Northern District of California, San Francisco Division,** *Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka, Individually and on Behalf of All Others Similarly Situated, v. Chipotle Mexican Grill, Inc.*, Case No. 3:16-cv-02200-HSG, on behalf of Kaplan Fox & Kilsheimer LLP, Declaration submitted August 11, 2017; Deposition on September 22, 2017.

**United States District Court, Southern District of Ohio,** *Tom Kondash, on behalf of himself and all others similarly situated, v. Kia Motors America, Inc., and Kia Motors Corporation*, Case No. 1:15-cv-00506-SJD, on behalf of Gibbs Law Group, LLP, Declaration submitted July 10, 2017, Deposition on November 29, 2017.

**United States District Court, Northern District of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, v. NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.*, Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Settlement Declaration submitted June 22, 2017; Declaration submitted on August 15, 2018; Deposition on October 12, 2018.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya And Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted May 30, 2017, Declaration submitted August 25, 2017, Declaration submitted on October 16, 2017; Declaration submitted on August 10, 2018; Declaration submitted on November 6, 2018; Declaration submitted on November 12, 2018; Deposition on December 11, 2018.

**United States District Court, Northern District of California,** *Vincent D. Mullins, et al., v. Premier Nutrition Corporation,* Case No. 13-cv-01271-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Reply Declaration submitted May 19, 2017; Deposition on July 20, 2017.

**United States District Court, Southern District of California,** *Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, v. Nutiva Inc.*, Case No. 16-cv-00711 HSG, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted May 9, 2016; Deposition on August 23, 2017; Reply Declaration submitted January 12, 2018; Reply Declaration submitted March 2, 2018.

**United States District Court, Central District of California, Southern Division,** *Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, v. Hyundai Motor America And Hyundai Motor Company*, Case No. 15-cv-02052-DOC-KES, on behalf of Gibbs Law Group, LLP, Declaration submitted May 1, 2017; Deposition on July 27, 2017; Reply Declaration submitted on October 2, 2017; Reply Declaration submitted on October 6, 2017; Declaration submitted on March 23, 2018.

**United States District Court, Southern District of California,** *Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, v. Nature's Way Products, LLC, and Schwabe North America, Inc.,* Case No. 3:16-cv-00532-WQH-BLM, on behalf of Law offices of Jack Fitzgerald, PC, Declaration submitted March 24, 2017; Reply Declaration submitted May 26, 2017; Reply Declaration submitted on July 11, 2017.

**United States District Court, Southern District Of New York,** *Joanne Hart, and Sandra Bueno, on behalf of themselves and all others similarly situated, v. BHH, LLC d/b/a Bell + Howell and Van Hauser LLC*, Case No. 1:15-cv-04804-WHP, on behalf of Bursor & Fisher, P.A., Declaration submitted March 16, 2017; Deposition on January 10, 2018; Supplemental Declaration submitted January 30, 2018; Declaration submitted on March 2, 2018; Supplemental Declaration submitted on March 30, 2018; Supplemental Declaration submitted on November 26, 2018; Deposition on December 20, 2018.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Declaration submitted March 15, 2017; Deposition on April 26, 2017.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of California,** *James P. Brickman, individually and as a representative of all others similarly situated, v. Fitbit, Inc.*, Case No. 3:15-cv-02077-JD, on behalf of Dworken & Bernstein LPA, Declaration submitted February 28, 2017; Deposition on March 8, 2017.

**United States District Court, Northern District of California,** *Jamie Pettit, an individual, on behalf of herself, the general public and those similarly situated, v. Procter & Gamble Company; and Does 1 Through 50*, Case No. 15-cv-02150-RGS, on behalf of Gutride Safier LLP, Declaration submitted February 14, 2017; Deposition on March 3, 2017; Reply Declaration submitted May 11, 2017.

**United States District Court, Southern District of New York,** *Alan Gulkis, individually and on behalf of all others similarly situated, Zicam LLC and Matrixx Initiatives, Inc.*, Case No. 7:15-cv-09843-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 8, 2017; Deposition on July 14, 2017.

**United States District Court, Central District of California,** *Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, v. Monsanto Company*, Case No. 16-02168-JFW (SPx), on behalf of the Law Office of Jack Fitzgerald, PC, Declaration submitted February 6, 2017; Deposition on February 9, 2017; Reply Declaration on February 27, 2017.

**United States District Court, Southern District of New York,** *Walt Famular, on behalf of himself and all others similarly situated, v. Whirlpool Corporation*, Case No. 16-cv-00944, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2017, Deposition on August 15, 2017, Rebuttal Declaration on March 20, 2018.

**United States District Court, Central District of California,** *In re: 5-Hour Energy Marketing and Sales Practices Litigation*, Case No. 2:13-ml-02438 PSG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 26, 2016; Reply Declaration submitted October 14, 2016; Deposition on October 27, 2016; Declaration submitted on December 22, 2016; Rebuttal Declaration submitted on March 15, 2017.

**United States District Court, Southern District of Florida,** *Benjamin Hankinson, James Guerra, Jeanette Gandolfo, Lisa Palmer, Donald Anderson, Catherine Long, and Lisa Prihoda, individually and on behalf of others similarly situated, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, RTG America, LLC, The Jeffrey Seaman 2009 Annuity Trust, RTG Furniture Corp. of Georgia, d/b/a Rooms to Go, Rooms to Go North Carolina Corp., d/b/a Rooms to Go, RTG Furniture of Texas, L.P., d/b/a Rooms to Go, RTG Texas Holdings, Inc., and R.T.G. Furniture Corp. of Texas*, Case No. 9:15-cv-81139-COHN/SELTZER, on behalf of Cohen Milstein, Declaration submitted September 1, 2016; Declaration submitted October 3, 2016; Deposition on November 4, 2016; Declaration submitted on January 5, 2017.



**Circuit Court Of Cook County, Illinois County Department, Chancery Division,** *Amy Joseph, individually and on behalf of all others similarly situated, Benjamin Perez, individually and on behalf of all others similarly situated, Intervening Plaintiff, v. Monster Inc., a Delaware Corporation, and Best Buy Co., Inc., a Minnesota Corporation*, Case No. 2015 CH 13991, on behalf of Interveners, Declaration submitted August 8, 2016; Supplemental Declaration submitted January 22, 2018.

**United States District Court, Central District of California, Eastern Division,** *Jeff Looper, Michael Bright, Scott Johnson, individuals on behalf of themselves and all others similarly situated, v. FCA US LLC, f/k/a Chrysler Group LLC, a Delaware limited liability company, and DOES 1-100 inclusive*, Case No. 14-cv-00700-VAP-DTB, on behalf of Gibbs Law Group, LLP; Declaration submitted August 7, 2016; Deposition on September 29, 2016.

**United States District Court, Eastern District of California,** *Chad Herron, individually, on behalf of himself and all others similarly situation, v. Best Buy Stores, LP, a Virginia limited partnership*, Case No. 12-cv-02103-TLN-CKD, on behalf of Stonebarger Law, A Professional Corporation; Declaration submitted June 24, 2016; Deposition on July 29, 2016; Supplemental Declaration submitted September 8, 2016.

**United States District Court for the Southern District of Florida,** *Angela Sanchez-Knutson v. Ford Motor Company*, Case No. 14:61344-CIV DIMITROULEAS, on behalf of Kelley Uustal Trial Attorneys; Deposition on June 1, 2016.

**United States District Court, Central District of California,** *Jacqueline Dean, on behalf of herself and all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107, on behalf of Bursor & Fisher, P.A.; Declaration submitted April 29, 2016; Deposition on July 13, 2016; Reply Declaration submitted on May 2, 2017; Declaration submitted on October 2, 2016; Reply Declaration submitted on December 14, 2017.

**United States District Court, District of New Jersey,** *In re: AZEK Decking Marketing & Sales Practices Litigation*, Case No. 12-cv-06627-MCA-MAH, on behalf of Seeger Weiss, LLP; Declaration submitted February 26, 2016; Declaration submitted May 16, 2016; Deposition on July 6, 2016; Reply Declaration submitted August 29, 2016.

**United States District Court. Northern District of California,** *In re: Nest Labs Litigation*, Case No. 5:14-cv-01363-BLF, on behalf of Bursor & Fisher, P.A.; Declaration submitted on January 22, 2016; Deposition on March 2, 2016; Reply Declaration submitted on June 3, 2016.

**United States District Court, Northern District of California,** *Rohini Kumar, an individual, on behalf of herself, the general public and those similarly situated, v. Salov North America Corp.; And Italfoods, Inc.*, Case No. 4:14-cv-02411-YGR, on behalf of Gutride Safier LLP; Declaration submitted on January 19, 2016; Deposition on February 24, 2016; Reply Declaration submitted on May 10, 2016; Declaration submitted on April 11, 2017, Declaration submitted on May 16, 2017.



*Statement of Qualifications – Colin B. Weir*

**United States District Court, Northern District of Ohio, Eastern Division,** *Christopher Meta, On Behalf Of Himself And All Others Similarly Situated v. Target Corporation, et al.*, Case No. 4:14-0832-DCN, on behalf of Tycko & Zavareei, LLP, Declaration submitted January 6, 2016; Deposition on March 15, 2016; Reply Declaration submitted on March 18, 2016.

**United States District Court, District of New Jersey,** *Charlene Dzielak, Shelley Baker, Francis Angelone, Brian Maxwell, Jeffery Reid, Kari Parsons, Charles Beyer, Jonathan Cohen, Jennifer Schramm, and Aspasia Christy on behalf of themselves and all others similarly situated, v. Whirlpool Corporation, Lowe's Home Center, Sears Holdings Corporation, The Home Depot, Inc., Fry's Electronics, Inc., And Appliance Recycling Centers Of America, Inc.,* Case No. 12-cv-0089-KM-JBC, on behalf of Bursor & Fisher, P.A., Declaration submitted December 28, 2015; Deposition on April 22, 2016; Rebuttal Declaration submitted June 10, 2016; Responding Declaration submitted July 6, 2018; Rebuttal Declaration submitted on August 10, 2018.

**United States District Court, District of New Jersey,** *In re: Tropicana Orange Juice Marketing and Sales Practices Litigation,* Case No. 12-cv-7382-WJM-JBC, on behalf of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC.; Declaration submitted on November 6, 2015; Deposition on January 28, 2016.

**United States District Court, Northern District of California**, *Scott Koller, an individual, on behalf of himself, the general public and those similarly situated v. Deoleo USA, Inc. and Med Foods, Inc.*, Case No. 3:14-cv-02400-RS, on behalf of Gutride Safier LLP; Declaration submitted on October 29, 2015; Deposition on December 21, 2015; Reply Declaration submitted on April 3, 2017.

**United States District Court, Eastern District Of New York,** *Patrick Hughes and Nafisé Nina Hodjat, individually and on behalf of others similarly situated, v. The Ester C Company; NBTY, Inc.; and Naturesmart, LLC,* Case No. 12-cv-00041-JFB-ETB, on behalf of Reese LLP and WhatleyKallas LLP; Declaration submitted October 22, 2015; Deposition on December 1, 2015; Reply Declaration submitted on January 28, 2016; Surrebuttal Declaration submitted on April 20, 2016; oral testimony and cross examination on September 20, 2016.

**United States District Court, District Of Connecticut,** *Glen Grayson, and Doreen Mazzanti, individually and on behalf of themselves and all others similarly situated, v. General Electric Company*, Case No. 3:13-cv-01799-WWE, on behalf of Izard Nobel LLP; Declaration submitted October 15, 2015; Deposition on November 17, 2015; Rebuttal Declaration submitted March 23, 2016.

**United States District Court, District of New Jersey,** *Lynne Avram, on behalf of herself and all others similarly situated, v. Samsung Electronics America Inc., and Lowe's Home Centers, Inc.*, Case No. 11-cv-6973-KM-MCA, on behalf of Faruqi & Faruqi LLP; Declaration filed July 15, 2015; Deposition September 29, 2015.


ECONOMICS AND TECHNOLOGY, INC.

**United States District Court, District of Connecticut,** *Heidi Langan, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 3:13-cv-01471-RNC, on behalf of Izard Nobel LLP; Declaration filed June 23, 2015; Deposition on July 21, 2015; Reply Declaration filed October 15, 2015.

**United States District Court, Eastern District of California,** *Yesenia Melgar, on behalf of herself and all others similarly situated, v. Zicam LLC, and Matrixx Initiatives, Inc.*, Case No. 2:14-cv-00160-MCE-AC, on behalf of Bursor & Fisher, PA; Declaration filed June 8, 2015.

**United States District Court, Central District of California, Eastern Division-Riverside** *Michael J. Otto, individually, and on behalf of other members of the general public similarly situated, v. Abbott Laboratories, Inc.*, Case No. 12-01411-SVW(DTBx), on behalf of Baron & Budd; Declaration filed May 25, 2015; Deposition on June 2, 2015; Supplemental Declaration filed July 6, 2015.

**United States District Court, Central District of California,** *Russell Minoru Ono, individually and on behalf of others similarly situated, v. Head Racquet Sports USA, a corp. and Head USA Inc.*, Case No. 13-04222-FMO, on behalf of Baron & Budd; Declaration filed April 24, 2015, Deposition on June 30, 2015; Reply Declaration filed July 2, 2015.

**United States District Court, Southern District of Florida,** *Vanessa Lombardo, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies and Neutrogena Corporation*, Case No. 13-60536-SCOLA, on behalf of Morgan & Morgan; Declaration filed March  31, 2015.

**United States District Court, Eastern District of New York,** *D. Joseph Kurtz, individually and on behalf all others similarly situated, v. Kimberly-Clark  Corporation and Costco Corporation*, Case No. 14-01142-JBW, on behalf of Robbins Geller Rudman & Dowd LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed March 27, 2015.

**United States District Court, Eastern District of New York,** *Anthony Belfiore, on behalf  of himself and all others similarly situated, v. Procter & Gamble*, Case No. 14-04090-JBR, on behalf of  Wolf Popper LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed April 30, 2015.

**United States District Court, Northern District of California,** *Patrick Hendricks, individually and on behalf of all others similarly situated, v. StarKist Co.*, Case No. 13-0729-YGR, on behalf of Bursor & Fisher, PA; Declaration filed January 20, 2015; Deposition on February 10, 2015; Reply Declaration filed April 7, 2015.

**United States District Court, Northern District of California, San Francisco Division,** *Scott Miller and Steve Leyton, individually and on behalf  themselves, the general public and those similarly situated v. Ghirardelli Chocolate Company*, Case No. 12-04936-LB, on behalf of Gutride Safier LLP, Declaration filed January 8, 2015; Reply Declaration filed February 5, 2015.



**United States Bankruptcy Court, Eastern District of New York,** *In re: Kangadis Food Inc., d/b/a The Gourmet Factory, Debtor*, Case No. 14-72649-REG, on behalf of Bursor & Fisher, PA; Declaration filed August 5th, 2014; Oral testimony on November 24, 2014.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Family Management LLC, Aristidia Kangadis a/k/a "Mr. Aris," Andromahi Kangadis a/k/a "Mrs. Mahi," and Themis Kangadis*, Case No. 14-cv-1324-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 5, 2014; Deposition on October 9, 2014.

**United States District Court, Northern District of California, San Francisco Division,** *Erin Allen, on behalf of herself and all others similarly situated, v. Con Agra Foods, Inc.*, Case No. 13-cv-01279-VC, on behalf of Hagens Berman Sobol Shapiro LLP and The Eureka Law Firm; Declaration submitted August 11, 2014; Deposition on September 30, 2014; Declaration submitted July 9, 2018; Deposition on March 7, 2019.

**United States District Court, Eastern District of California,** *Kyle Dei Rossi and Mark Linthicum, on behalf of themselves and those similarly situated, v. Whirlpool Corporation*, Case No. 12-cv-00125-TLN-CKD, on behalf of Bursor & Fisher, P.A.; Declaration filed July 31, 2014, Deposition on August 20, 2014.

**United States District Court, Northern District of Illinois, Eastern Division,** *In re: Southwest Airlines Voucher Litigation.*, Case No. 11-cv-8176, Hon. Matthew Kennelly, on behalf of Siprut PC; Declaration filed June 4, 2014; Oral testimony and cross examination on June 16, 2014.

**United States District Court, Central District of California, Western Division,** *In re: ConAgra Foods, Inc.*, Case No. 11-cv-05379-MMM, MDL No. 2291, on behalf of Milberg LLP and Grant & Eisenhofer, P.A.; Declaration filed May 5, 2014; Deposition on May 23, 2014; Declaration filed June 30, 2014; Declaration filed September 8, 2014; Deposition on September 16, 2014, Declaration filed October 27, 2014; Declaration submitted on March 8, 2019.

**United States District Court, Southern District of New York,** *In re: Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB, on behalf of Bursor & Fisher, PA; Declaration filed March 31, 2014; Deposition on May 21, 2014; Declaration filed on January 8, 2016; Deposition on February 10, 2016; Reply Declaration submitted June 30, 2016; Declaration submitted September 1, 2016; Declaration submitted on October 20, 2016.

**United States District Court, Central District of California,** *Julie Fagan, Michael Fagan, Melissa Pennalatore, Amy Sapeika and Shelley Trinchero, individually and on behalf of all others similarly situated v. Neutrogena Corporation*, Case No. 13-cv-01316-SVW, on behalf of Izard Nobel LLP; Declaration filed March 21, 2014; Deposition on April 3, 2014; Supplemental Declaration filed August 4, 2014; Deposition on August 13, 2014; Declaration filed September 9, 2014.



**United States District Court, Central District of California,** *Enzo Forcellati and Lisa Roemmich, individually and on behalf of all others similarly situated v. Hyland's Inc., Standard Homeopathic Laboratories, Inc. and Standard Homeopathic Company*, Case No. 12-cv-01983-GHK, on behalf of Faruqi and Faruqi; Declaration filed December 13, 2013; Deposition on February 27, 2014.

**United States District Court, Southern District of Florida,** *Adam Karhu, on behalf of himself and all others similarly situated, v. Vital Pharmaceuticals, Inc., d/b/a VPX Sports*, Case No. 13-cv-60768-JIC, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed December 13, 2013; Declaration filed January 6, 2014; Declaration filed March 31, 2014.

**Trial Court of Massachusetts, District of Edgartown,** *Schepici v. JetBlue Airways Corp.,* on behalf of plaintiff; Mediation on December 4, 2013.

**Superior Court of California, County of Alameda,** *In re: Cellphone Termination Fee Cases, Ramzy Ayyad, et al, v. Sprint Spectrum, L.P.,* JCCP No. 4332, Case No. RG03-121510, on behalf of the Executive Committee; Declaration filed September 18, 2013.

**United States District Court, Northern District of California,** *Maria Torres, Gabriel Rojas, and Ian Kerner, individually and on behalf of all others similarly situated v. JC Penney Corporation, Inc.; and JC Penney Company, Inc.,*, Case No. cv-12-01105-RS, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration filed September 13, 2013; Deposition on October 2, 2013.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Foods Inc*, Case No. 13-cv-02311-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 26, 2013; Deposition on October 21, 2013.

**United States District Court, Northern District of California,** *Desiree Moore, on behalf of themselves, the general public, and all those similarly situated, v. Verizon Communications*, Case No. 4:09-cv-01823-SBA, on behalf of David Schachman and Associates PC, Jacobs Kolton Chtd., and Keller Grover, LLP; Declaration filed June 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on March 1, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 20, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 19, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 13, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 7, 2013.



**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 4, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on January 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 12, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 10, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on November 28, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declarations filed October 4, 2012 and November 5, 2012; Oral testimony and cross examination on November 27, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declaration filed April 16, 2012; Oral testimony and cross examination on May 11, 2012.

**United States District Court, District of Massachusetts,** *Marcy Cruz v. Justin Kagan, Arthur Hegarty, Ronald Teachman, and the City of New Bedford*, Case No. 1:09-cv-11793-RGS, on behalf of Marcy Cruz, Expert Report filed February 28, 2011; Oral testimony and cross examination on December 1, 2011.

**United States District Court, Southern District of New York,** *Bursor & Fisher P.A., v. Federal Communications Commission*, Case No. 1:11-cv-05457-LAK, on behalf of Bursor & Fisher P.A., Declaration filed August 17, 2011.

**United States District Court, District of New Jersey,** *In Re: Sprint Premium Data Plan Marketing and Sales Practices Litigation*, Master Case No. 10-6334 (SDW) MDL No. 2228, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed August 11, 2011.

**United States District Court, Northern District of California,** *Patrick Hendricks, on behalf of himself and all others similarly situated, v. AT&T Mobility LLC*, Case No. C11-00409, on behalf of Bursor & Fisher, P.A., Declaration filed August 7, 2011.

**Federal Communications Commission,** *In the Matter of Applications of AT&T Inc. & Deutsche Telekom AG for Consent to Assign or Transfer Control of Licenses and Authorizations*, WT Docket No. 11-65, on behalf of Butch Watson, Declaration filed June 20, 2011.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. O1 Communication, Inc. (U 6065 C), Defendant*, Case No. C.08-03-001, on behalf of the O1 Communications, Inc., Reply Testimony filed November 6, 2009; Oral testimony and cross examination on November 16, 2009.



*Statement of Qualifications – Colin B. Weir*

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Oral testimony and cross examination on November 9, 2009.

**United States District Court, District of New Jersey,** *Judy Larson, Barry Hall, Joe Milliron, Tessie Robb, and Willie Davis, individually and on behalf of all others similarly situated, v. AT&T Mobility LLC f/k/a Cingular Wireless LLC and Sprint Nextel Corporation and Sprint Spectrum L.P. d/b/a Sprint Nextel and Nextel Finance Company, Civ. Act. No. 07-5325 (JLL),* on behalf of PinilisHalpern, LLP and Law Offices of Scott A. Bursor, Declaration filed *under seal* October 19, 2009.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. Pac-West Telecomm, Inc. (U 5266 C), Defendant*, Case No. C.08-09-017, on behalf of the Pac-West Telecomm, Inc., Rebuttal Testimony filed May 1, 2009.

**Illinois Commerce Commission,** Illinois Bell Telephone Company Annual Rate Filing for Non-Competitive Services Under an Alternative Form of Regulation, Ill. C. C. Docket No. 08-0249, on behalf of the People of the State of Illinois, Declaration filed May 2, 2008.

**Federal Communications Commission,** Qwest Petition for Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of AT&T Inc, For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of BellSouth Corporation For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of the Embarq Local Operating Companies for Forbearance Under 47 U.S.C. §160(c) From Application of *Computer Inquiry* and certain Title II Common Carriage Requirements; WC Docket Nos. 06-125 and 06-147, on behalf of the AdHoc Telecommunications Users Committee, Declaration filed October 9, 2007.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Declaration filed January 5, 2007; Deposition on November 13, 2007; Oral testimony and cross-examination on December 19, 2007; Oral testimony on January 9, 2008.

Mr. Weir has served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional publications and testimony at the state, federal, and international levels.



# Exhibit 2

# Documents Reviewed

- Second Amended Complaint, filed September 14, 2017

- Post's Motion to Dismiss

- Expert Report of Steven P. Gaskin, January 11, 2019

- Expert Report of Steven P. Gaskin, April 24, 2019

- Expert Report of Bruce G. Silverman, January 5, 2019

- Expert Report of Bruce G. Silverman, April 24, 2019

- Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009

- *Hedonic Prices and Implicit Markets: Product Differentiation in Pure Competition.* Rosen, Sherwin, The Journal of Political Economy, Vol. 82, No. 1. (Jan. - Feb., 1974)

- *The Expanding Role of Hedonic Methods in the Official Statistics of the United States*, Moulton, Brent R., Bureau of Economic Analysis, U.S. Department of Commerce, June 2001

- *The Use of Hedonic Analysis for Certification and Damage Calculations in Class Action Complaints*, Doane, Michael (Analysis Group) and Hartman, Raymond, Journal of Law, Economics, & Organization, Vol. 3, No. 2 (Autumn, 1987)

- Developing a Hedonic Regression Model For Refrigerators in the U.S. CPI, Shepler, Nicole, October 16, 2001

- *Organic and All Natural: Do Consumers Know the Difference?* Anstine, Jeffrey, Journal of Applied Economics and Policy 26.1 (2007):15-27

- *Hedonic Analysis of Retail Egg Prices*, Karipidis, Philippos I., *et al*, Journal of Food Distribution Research 36.3 (2005)

- *The Value to Consumers of Health Labeling Statements on Breakfast Foods and Cereals,* Muth, Mary K., *et al* Contributed Paper prepared for presentation at the International Associate of Agricultural Economists Conference, Beijing, China, August 2009, on behalf of RTI International and Food and Drug Administration, Center for Food Safety and Applied Nutrition. 10 March 2014

- *Hedonic Prices for a Nondurable Good: The Case of Breakfast Cereals*. Stanley, L. R. and John T. Tschirhart, Review of Economics and Statistics 73.3 (1991):537-541

- http://www.stata.com/products/

- http://www.sawtoothsoftware.com/support/technical-papers

- *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013).

http://www.analysisgroup.com/assessing_false_advertising_claims.aspx

- *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*.

- *Khoday v. Symantec Corp.*, No. 11-180 (JRT/TNL), 2014 WL 1281600, at *10 (March 13, 2014)

- *Sanchez-Knutson v. Ford Motor Company*, Case No. 14-61344-CIV-DIMITROULEAS, Order, October 6, 2015

- *In re: Lenovo Adware Litigation*, Case no. 15-md-02624-RMW (USDC NDC-SJD) DKT 153 (October 27, 2016)

- *Morales v. Kraft Foods Group, Inc.*, Order Re: Plaintiff's Motion for Class Certification, Case No. 14-cv-04387, Dkt. No. 78 (Kronstadt, J.) (C.D. Cal. Jun. 23, 2015)

- *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014)

- *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014)

- *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012)

- *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015)

- *Getting Started With Conjoint Analysis: Strategies for Product Design and Pricing Research*, Bryan K. Orme, Research Publishers 2014

- *Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis*, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013

- *Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis*, Drewnowski, Adam *et al.*, Public Health Nutrition: 13(5), 688–694

- *Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation*, Gadioli, I. L. *et al.*, Journal of Sensory Studies 28 (2013):57-65

- sec.gov/edgar/searchedgar/companysearch.html

- Wal-mart Stores, Inc., 2016 10-K Annual Report filed with the US Securities and Exchange Commission

- The Kroger Co. 2016 10-K Annual Report filed with the US Securities and Exchange Commission

- Publix Super Markets, Inc. 2016 10-K Annual Report filed with the US Securities and Exchange Commission

- Safeway Inc. 2015 10-K Annual Report filed with the US Securities and Exchange Commission

- SuperValu Inc. 2016 10-K Annual Report filed with the US Securities and Exchange Commission

- Ahold Delhaize Annual Report 2016

- Post Fiscal 2018 10-K Annual Report filed with the US Securities and Exchange Commission

- Krom-POST00008305-318

- Krom-POST0000020

- Krom-POST0000030

- Krom-POST0000033

- Krom-POST0000034

- Krom-POST0000035

- Krom-POST0000036

- Krom-POST0000038

- Krom-POST0000045

- Krom-POST0000046

- Krom-POST0000053

- Krom-POST0000061

- Krom-POST0000069

- Krom-POST0000071

- Krom-POST0000072

- Krom-POST0000077

- Krom-POST0000079

- Krom-POST0000083

- Krom-POST0000091

- Krom-POST0000093

- Krom-POST0000112

- Krom-POST0000124

- Krom-POST0000125

- Krom-POST0000129

- Krom-POST0000131

- Krom-POST0000134

- Krom-POST0000135

- Krom-POST0000141

- Krom-POST0000157

- Krom-POST0000166

- Krom-POST0000263

- Krom-POST0000292

- Krom-POST0000296

- Krom-POST0000629

- Krom-POST0000819

- Krom-POST0001448

- Krom-POST0002723

- Krom-POST0002998-3020

- Krom-POST0003900-4

- Krom-POST0004640-7

- Krom-POST0005664-708

- Krom-POST0011644-5

- IRI Data

- Post Sales Data